# EXHIBIT A

## ANTRAG AUF ZUSTELLUNG EINES GERICHTLICHEN ODER AUSSERGERICHTLICHEN SCHRIFTSTÜCKS IM AUSLAND

REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ÉTRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.

| Bezeichnung und Anschrift der ersuchenden Stelle | Anschrift der Bestimmungsbehörde |
|---|---|
| Identity and address of the applicant | Address of receiving authority |
| Identité et adresse du requérant | Adresse de l'autorité destinataire |
| Stubbs Alderton & Markiles, LLP | Senatsverwaltung für Justiz und |
| Jeffrey F. Gersh , Attorney at Law | Verbraucherschutz |
| 15260 Ventura Blvd., 20th Floor, Sherman Oaks, CA 91403 | Salzburger Strasse 21-25 |
| jgersh@stubbsalderton.com | 10825 Berlin |
| 818-444-4500 | |

Die ersuchende Stelle beehrt sich, der Bestimmungsbehörde - in zwei Stücken - die unten angegebenen Schriftstücke mit der Bitte zu übersenden, davon nach Artikel 5 des Übereinkommens ein Stück unverzüglich dem Empfänger zustellen zu lassen, nämlich:

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e :

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en le priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

(Name und Anschrift)
(identity and address) / (identité et adresse)
Lesson Nine GmbH
Max-Beer-Str. 2
10119 Berlin

| | | |
|---|---|---|
| ☒ | a) | in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a)*) <br> in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention* <br> selon les formes légales (article 5, alinéa premier, lettre a)* |
| ☐ | b) | in der folgenden besonderen Form (Artikel 5 Absatz 1 Buchstabe b)*): <br> in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)*: <br> selon la forme particulière suivante (article 5, alinéa premier, lettre b)*: <br> _____ |
| ☐ | c) | gegebenenfalls durch einfache Übergabe (Artikel 5 Absatz 2)*. <br> by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)* <br> le cas échéant, par remise simple (article 5, alinéa 2)* |

Die Behörde wird gebeten, der ersuchenden Stelle ein Stück des Schriftstücks - und seiner Anlagen* - mit dem Zustellungszeugnis auf der Rückseite zurückzusenden oder zurücksenden zu lassen.

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with the attached certificate

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes* - avec l'attestation ci-jointe.

*Verzeichnis der Schriftstücke*
List of documents / Énumération des pièces

- ERSTE GEÄNDERTE KLAGE, GESCHWORENENPROZESS BEANTRAGT;
- DECKBLATT FÜR ZIVILKLAGEN;
- VORLADUNG IN EINER ZIVILKLAGE - NACH ERSTER ABGEÄNDERTER KLAGESCHRIFT;
- MELDUNG ÜBER DIE EINREICHUNG ODER DEN ENTSCHEID EINER KLAGE BZGL. EINES PATENTS ODER WARENZEICHENS;
- OFFENLEGUNGSERKLÄRUNG DER KLÄGERIN PERSONAL WEB TECHNOLOGIES LLC NACH REGEL 7.1; and
- GESCHWORENENVERHANDLUNG BEANTRAGT

* Wenn zutreffend.
If appropriate / s'il y a lieu

| Ausgefertigt in Sherman Oaks, CA | Unterschrift und / oder Stempel |
|---|---|
| Done at / Fait à | Signature and/or stamp / Signature et / ou cachet |
| am 31. August 2018 | |
| the / le | |

## ZUSTELLUNGSZEUGNIS
### CERTIFICATE
### ATTESTATION

**Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,**
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

☐   **1. dass der Antrag erledigt worden ist\***
  that the document has been served*
  que la demande a été exécutée*

| — am (Datum):<br>tha (date) / le (date) | ——— |
| — in (Ort, Straße, Nummer):<br>at (place, street, number) / à (localité, rue, numéro) | ——— |

— **in einer der folgenden Formen nach Artikel 5:**
in one of the following methods authorised by Article 5:
dans une des formes suivantes prévues à l'article 5 :

☐   *a)*   **in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) \* )**
  in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention*
  selon les formes légales (article 5, alinéa premier, lettre a)*

☐   *b)*   **in der folgenden besonderen Form\*:**
  in accordance with the following particular method*
  selon la forme particulière suivante* :
  ———

☐   *c)*   **durch einfache Übergabe\***
  by delivery to the addressee, if he accepts it voluntarily*
  par remise simple*

**Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:**
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à :

| Name und Stellung der Person:<br>Identity and description of person<br>Identité et qualité de la personne : | ——— |
| Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:<br>Relationship to the addressee (family, business or other):<br>Liens de parenté, de subordination ou autres, avec le destinataire de l'acte | ——— |

☐   **2. dass der Antrag aus folgenden Gründen nicht erledigt werden konnte\*:**
  that the document has not been served, by reason of the following facts*
  que la demande n'a pas été exécutée, en raison des faits suivants* :

☐   **Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im einzelnen angegeben sind, zu zahlen oder zu erstatten\*.**
  In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
  Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*

*Anlagen*
Annexes / Annexes

| Zurückgesandte Schriftstücke:<br>Documents returned:<br>Pièces renvoyées : | ——— |
| Gegebenenfalls Erledigungsstücke:<br>In appropriate cases, documents establishing the service:<br>Le cas échéant, les documents justificatifs de l'exécution : | |

\* Wenn zutreffend
Il appropriate / s'il y a lieu

| Ausgefertigt in _____<br>Done at / Fait à | Unterschrift und/oder Stempel<br>Signature and/or stamp / Signature et / ou cachet |
| am _____<br>the / le | |

Ständiges Büro, Januar 2015

# ACHTUNG

## WARNING
## AVERTISSEMENT

**Name und Anschrift des Empfängers**
Identity and address of the addressee
Identité et adresse du destinataire
Lesson Nine GmbH
Max-Beer-Str. 2
10119 Berlin

## WICHTIGER HINWEIS

DAS ANLIEGENDE SCHRIFTSTÜCK IST EIN RECHTSDOKUMENT UND KANN IHRE RECHTE UND PFLICHTEN BERÜHREN. DIE „ANGABEN ÜBER DEN WESENTLICHEN INHALT DES ZUZUSTELLENDEN SCHRIFTSTÜCKS" ENTHALTEN HINWEISE ZU DER ART UND DEM ZWECK DES SCHRIFTSTÜCKS. SIE SOLLTEN DAS SCHRIFTSTÜCK AUF JEDEN FALL AUFMERKSAM DURCHLESEN UND GEGEBENENFALLS RECHTSRAT EINHOLEN.
WENN SIE NICHT ÜBER AUSREICHENDE FINANZIELLE MITTEL VERFÜGEN, SOLLTEN SIE SICH ERKUNDIGEN, OB DIE MÖGLICHKEIT BESTEHT, IN IHREM LAND ODER IN DEM LAND, IN DEM DAS SCHRIFTSTÜCK AUSGESTELLT WURDE, PROZESSKOSTENHILFE ODER BERATUNGSHILFE ZU ERHALTEN.
ANFRAGEN ZUR GEWÄHRUNG VON PROZESSKOSTENHILFE ODER BERATUNGSHILFE IN DEM LAND, IN DEM DAS SCHRIFTSTÜCK AUSGESTELLT WURDE, KÖNNEN AN FOLGENDE STELLE GERICHTET WERDEN:

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

### TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À



**Es wird empfohlen, die in der Mitteilung vorgedruckten Teile in englischer und französischer Sprache und gegebenenfalls auch in der Amtssprache oder einer der Amtssprachen des Ursprungsstaates abzufassen. Die Eintragungen können in der Sprache des Empfängerstaates oder in englischer oder französischer Sprache gemacht werden.**

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'État où le document doit être adressé, soit en langue française, soit en langue anglaise

## ANGABEN ÜBER DEN WESENTLICHEN INHALT DES ZUZUSTELLENDEN SCHRIFTSTÜCKS
### SUMMARY OF THE DOCUMENT TO BE SERVED
#### ÉLÉMENTS ESSENTIELS DE L'ACTE

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.
(Artikel 5 Absatz 4).

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph)

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Bezeichnung und Anschrift der ersuchenden Stelle:**<br>Name and address of the requesting authority<br>*Nom et adresse de l'autorité requérante* | Stubbs Alderton & Markiles, LLP<br>Jeffrey F. Gersh, Attorney at Law<br>15260 Ventura Blvd., 20th Floor, Sherman Oaks, CA 91403<br>jgersh@stubbsalderton.com<br>818-444-4500 |
| **Bezeichnung der Parteien*:**<br>Particulars of the parties*<br>*Identité des parties* : | PersonalWeb Technologies, LLC (Klägerin), Level 3 Communications, LLC. (Klägerin); Lesson Nine GmbH (Beklagte) |

* Gegebenenfalls Name und Anschrift der an der Übersendung des Schriftstücks interessierten Person.
  If appropriate, identity and address of the person interested in the transmission of the document
  *s'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte*

---

☒ **GERICHTLICHES SCHRIFTSTÜCK \*\***
JUDICIAL DOCUMENT\*\*
*ACTE JUDICIAIRE\*\**

| | |
|---|---|
| **Art und Gegenstand des Schriftstücks:**<br>Nature and purpose of the document:<br>*Nature et objet de l'acte :* | Die Dokumente sollen dem Beklagten einen Anspruch auf Patentverletzung bekannt machen und verlangen eine Antwort innerhalb von 21 Tagen ab dem Datum der Zustellung. |
| **Art und Gegenstand des Verfahrens, gegebenenfalls Betrag der geltend gemachten Forderung:**<br>Nature and purpose of the proceedings and, when appropriate, the amount in dispute<br>*Nature et objet de l'instance, le cas échéant, le montant du litige :* | Der Beklagte betreibt oder hat eine Website betrieben, die sich auf babbel.com befindet und die Patente der Klägerin verletzt hat. |
| **Termin und Ort für die Einlassung auf das Verfahren \*\*:**<br>Date and Place for entering appearance\*\*:<br>*Date et lieu de la comparution\*\** | United States District Court für den östlichen Bezirk von Texas, Paul Brown Gericht der Vereinigten Staaten 101 East Pecan Straße, Sherman, TX 75090<br>Die Frist zur Beantwortung der Beschwerde beträgt 21 Tage ab dem Datum der Zustellung. |
| **Gericht, das die Entscheidung erlassen hat \*\*:**<br>Court which has given judgment\*\*:<br>*Juridiction qui a rendu la décision\*\** | Unzutreffend |
| **Datum der Entscheidung \*\*:**<br>Date of judgment\*\*<br>*Date de la décision\*\** | Unzutreffend |
| **Im Schriftstück vermerkte Fristen \*\*:**<br>Time limits stated in the document\*\*:<br>*Indication des délais figurant dans l'acte\*\** | Die Frist zur Beantwortung der Beschwerde beträgt 21 Tage ab dem Datum der Zustellung. |

\*\* Wenn zutreffend
*if appropriate / s'il y a lieu*

---

☐ **AUSSERGERICHTLICHES SCHRIFTSTÜCK \*\***
EXTRAJUDICIAL DOCUMENT\*\*
*ACTE EXTRAJUDICIAIRE\*\**

**Art und Gegenstand des Schriftstücks:**
Nature and purpose of the document:
*Nature et objet de l'acte :*

**Im Schriftstück vermerkte Fristen **:**
Time-limits stated in the document**:
*Indication des délais figurant dans l'acte** :*

\*\* Wenn zutreffend
*Il approprié / s'il y a lieu*

**BEIM UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION [US-**
BEZIRKSGERICHT FÜR DEN ÖSTLICHEN
BEZIRK VON TEXAS, KAMMER SHERMAN]

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, eine Gesellschaft mit beschränkter Haftung mit Sitz in Texas, und LEVEL 3 COMMUNICATIONS, LLC, eine Gesellschaft mit beschränkter Haftung mit Sitz in Delaware<br><br>        Klägerin<br>./.<br><br><br>LESSON NINE GMBH, eine Gesellschaft mit beschränkter Haftung mit Sitz in Deutschland,<br><br>        Beklagte. | ZIVILKLAGE NR. 4:18-cv-00046-ALM<br><br>**ERSTE GEÄNDERTE KLAGE,**<br><br>**GESCHWORENENPROZESS**<br><br>**BEANTRAGT** |

## ERSTE GEÄNDERTE KLAGE AUF PATENTVERLETZUNG

Die Klägerin PersonalWeb Technologies, LLC („Klägerin" oder „PersonalWeb") erhebt diese erste geänderte Klage auf Patentverletzung gegen die Beklagte Lesson Nine GmbH, („Beklagte"). Die Klägerin PersonalWeb Technologies, LLC behauptet:

## ERSTE STELLUNGNAHME

1.      PersonalWeb und Level 3 Communications, LLC („Level 3") sind Vertragsparteien einer Vereinbarung zwischen Kinetech, Inc. and Digital Island, Inc. vom 1. September 2000 (die „Vereinbarung"). Gemäß dieser Vereinbarung halten PersonalWeb und Level 3 einen ungeteilten Anteil von jeweils fünfzig Prozent (50 %) an den Patenten in diesem Rechtsstreit: US-Patentnummern 6,928,442; 7,802,310, 7,945,544 und 8,099,420 („Streitpatente"). Level 3 hat sich aufgrund ihrer vertraglichen Verpflichtungen im Rahmen der Vereinbarung auf Bitte von PersonalWeb dieser ersten geänderten Klage angeschlossen.

2.      Gemäß der Vereinbarung hat Level 3 neben anderen Rechten bestimmte definierte Rechte zur Nutzung, Anwendung, Lizenzierung, Unterlizenzierung und Durchsetzung und/oder Klageerhebung der Streitpatente im Rahmen eines bestimmten Anwendungsbereichs („Exklusiver Anwendungsbereich für Level 3"). Gemäß der Vereinbarung hat PersonalWeb neben anderen Rechten bestimmte definierte Rechte zur Nutzung, Anwendung, Lizenzierung, Unterlizenzierung und Durchsetzung und/oder Klageerhebung der Streitpatente im Rahmen anderer Bereiche als dem exklusiven Anwendungsbereich für Level 3 („Anwendungsbereich für PersonalWeb").

3.      Alle Anschuldigungen einer Patentverletzung, beschreibende Aussagen über PersonalWeb, beschreibende Aussagen über eine(n) Beklagte(n) (oder Produkte einer/s Beklagten) und alle Aussagen in Bezug auf die Gerichtsbarkeit und den Verhandlungsort sind ausschließlich die von PersonalWeb und nicht von Level 3. PersonalWeb führt an, dass sich die strittigen Patentverletzungen in diesem Fall alle auf den Anwendungsbereich von Personal Web beziehen und darauf beschränkt sind. Demgemäß hat PersonalWeb Level 3 weder gemäß Abschnitt 6.4.1 der Vereinbarung noch anderweitig bekanntgegeben, dass PersonalWeb eine Klage in Bezug auf den exklusiven Anwendungsbereich von Level 3, weder eigens noch im eigenen Auftrag, erheben möchte oder dass PersonalWeb davon Kenntnis hat bzw. vermutet, dass die Beklagte gegen irgendwelche der Rechte von Level 3 an den Patenten verstößt bzw. verstoßen hat.

## DIE PARTEIEN

4.      Die Klägerin PersonalWeb Technologies, LLC ist eine gemäß texanischem Recht ordnungsgemäß anerkannte Gesellschaft mit beschränkter Haftung mit Hauptgeschäftssitz in 112 E. Line Street, Suite 204, Tyler, TX 75702.

5.      Die Klägerin Level 3 Communications, LLC ist eine nach den Gesetzen von Delaware ordnungsgemäß anerkannte Gesellschaft mit beschränkter Haftung mit Hauptgeschäftssitz in 100 CenturyLink Drive, Monroe, Louisiana, 71203.

6.      Die von PersonalWeb erhobenen Anschuldigungen einer Patentverletzung erfolgen ausschließlich von PersonalWeb und fallen nicht in den exklusiven Anwendungsbereich von Level 3. Level 3 erhebt zu diesem Zeitpunkt und in diesem Fall keine Anschuldigungen auf Patentverletzung gegen die Beklagte in Bezug auf den exklusiven Anwendungsbereich von Level 3.

7.      Die Beklagte Lesson Nine GmbH ist nach bestem Wissen und Gewissen eine deutsche Gesellschaft mit beschränkter Haftung mit Hauptgeschäftssitz bzw. regulärem und etabliertem Geschäftssitz in der Max-Beer-Str. 2, 10119 Berlin.

## GERICHTSBARKEIT UND VERHANDLUNGSORT

8.        Das Gericht hat sachliche Zuständigkeit gemäß 28 U.S.C. §§ 1331 and 1338(a), da diese Klage im Sinne des Patentrechts der Vereinigten Staaten von Amerika, 35 U.S.C. §§ 1 *et seq.* erhoben wird.

9.        Dieses Gericht hat persönliche Zuständigkeit über die Beklagte gemäß Regelung (k)(2) der US-Zivilprozessordnung (Federal Rules of Civil Procedure), weil die Beklagte als deutsche Gesellschaft mit beschränkter Haftung in den Vereinigten Staaten von Amerika nicht eingetragen ist und sich der Geschäftssitz der Beklagten nicht in den Vereinigten Staaten von Amerika befindet. Die Beklagte hat ausreichend Kontakte mit den Vereinigten Staaten, so dass die Ausübung der Gerichtsbarkeit gegenüber der Beklagten ordnungsgemäß ist.

10.       Gleichermaßen ist auch der Verhandlungsort in diesem Bundesbezirk entsprechend 28 U.S.C. §§ 1391(b)-(c) und 1400(b) angemessen. Die Beklagte ist in den Vereinigten Staaten von Amerika nicht ansässig.

## HINTERGRUND ZU PERSONALWEB

11.       Die Streitpatente beziehen sich auf wesentliche Aspekte des Cloud-Computing, einschließlich der Kennzeichnung von Dateien oder Daten und des effizienten Abrufs dieser auf eine Weise, bei der Übertragungsbandbreiten und Speicheranforderungen reduziert werden.

12.       Die Fähigkeit, spezifische Daten zuverlässig zu identifizieren und darauf zuzugreifen, ist für jedes Computersystem oder Netzwerk entscheidend. Für einen einzelnen Computer oder innerhalb eines kleinen Netzwerks ist diese Aufgabe relativ einfach und umfasst lediglich die Benennung einer Datei, Identifizierung dieser unter dem Namen und ihrem Speicherplatz auf dem Computer und den Zugriff basierend auf ihrem Namen und Speicherplatz. Frühere Betriebssysteme ermöglichten dies durch standardisierte Benennungskonventionen, Kennungen von Speichergeräten und Ordnerstrukturen.

13.       Die Erfinder der Streitpatente Ronald Lachman und David Farber erkannten, dass die herkömmlichen Methoden der Benennung, Lokalisierung und des Zugriffs auf Daten in Computer-Netzwerken den sich ständig erweiternden, globalen Datenverarbeitungsnetzwerken nicht standhalten konnten. Neue verteilte Speichersysteme verwenden Dateien, die über mehrere Geräte und geografische Standorte verstreut gespeichert sind. Diese verschiedenen Standorte könnten ungleiche Konventionen zur Identifizierung von Speichergeräten und Datenpartitionen verwenden. Gleichermaßen könnten verschiedene Benutzer unterschiedlichen Dateien bzw. Teilen von Dateien identische Bezeichnungen geben, oder identischen Dateien unbewusst unterschiedliche Bezeichnungen. Es gab keine Lösung, mit der sichergestellt werden konnte, dass sich identische Dateinamen auf die gleichen Daten bezogen, und umgekehrt, dass sich unterschiedliche Dateinamen auf unterschiedliche Daten bezogen.

Dies führte bei expandierenden Netzwerken aufgrund von duplizierten Daten nicht nur zu „Verstopfungen", es erschwerte außerdem die Lokalisierung von und Zugangskontrolle zu gespeicherten Daten.

14.     Lachman und Farber entwickelten eine Lösung, indem sie herkömmliche Benennungs- und Speicherkonventionen mit systemweiten „im Wesentlichen eindeutigen" inhaltsbasierten Kennungen ersetzten. Dieser Ansatz wies „Datenelementen" aller Art, d. h. „den Inhalten einer Datei, einem Teil einer Datei, einer Seite im Speicher, einem Objekt in einem objektorientierten Programm, einer digitalen Nachricht, einem digital abgetasteten (gescannten) Bild, einem Teil eines Video- oder Audiosignals oder jeder anderen Einheit, die in einer Folge von Bits dargestellt werden kann, im Wesentlichen eindeutige Kennungen zu. Bei systemweiter Anwendung würde diese Erfindung die Speicherung, Lokalisierung, Verwaltung, Synchronisierung und den Zugriff auf sämtliche Datenelemente mittels ihrer inhaltsbasierten Kennungen ermöglichen.

15.     Für die Erzeugung einer im Wesentlichen eindeutigen, inhaltsbasierten Kennung machten sich Lachman und Farber die Kryptografie zu Nutze. Kryptografische Hash-Funktionen, einschließlich MD4, MD5 und SHA, wurden bereits in Computersystemen verwendet, um die Integrität von abgerufenen Daten zu verifizieren (die eine sogenannte „Prüfsumme" (Checksum)). Lachman und Farber erkannten, dass diese Hash-Funktionen einem entscheidenden neuen Zweck dienlich sein könnten: mit der Anwendung einer kryptografischen Hash-Funktion auf eine Bitfolge (einem „Datenelement") ergab sich ein im Wesentlichen eindeutiger Ergebniswert, nämlich einer, der: (1) bei Änderung des Datenelements praktisch einen anderen Ergebniswert garantiert; (2) mit einer anderen Bitfolge rechnerisch schwer zu reproduzieren ist; und (3) nicht verwendet werden kann, um die ursprüngliche Bitfolge wiederherzustellen.

16.     Diese kryptografischen Hash-Funktionen würden demnach jeder beliebigen Bitfolge lediglich basierend auf dem Inhalt eine im Wesentlichen eindeutige Kennung zuweisen. Lachman und Farber schätzten die Wahrscheinlichkeit, dass diese Hash-Funktionen die gleiche Kennung für zwei unterschiedliche Bitfolgen erzeugen (d. h. die „Kollisionswahrscheinlichkeit") auf 1 von $2^{29}$. Lachman und Farber bezeichneten ihre inhaltsbasierte Kennung als „Wahrer Name" (True Name).

17.     Mit der Verwendung eines „True Name" konzipierten Lachman und Farber verschiedene Datenstrukturen und Methoden zur Handhabung von Daten (wobei jedem Datenelement ein eindeutiger „True Name" zugeordnet wird) in einem Netzwerk — unabhängig von der Komplexität der Daten oder dem Netzwerk. Diese Datenstrukturen sind übersichtlich und ermöglichen ein schnelles Auffinden eines beliebigen Datenelements innerhalb eines Netzwerks durch Vergleich des „True Name" für das Datenelement mit den bereits im Netzwerk

vorliegenden „True Names" für Datenelemente. Im Einsatz ermöglicht die Handhabe von Daten bei Verwendung von „True Names" einem Benutzer, den Speicherort sämtlicher Daten in einem

Netzwerk zu ermitteln, festzustellen, ob Zugangsberechtigung besteht, und speziellen Inhalt selektiv freizugeben, was mit den herkömmlichen Benennungskonventionen nicht möglich ist.

18.     Lachman und Farber reichten ihre Patentanmeldung am 11. April 1995 mit der Beschreibung dieser und anderer Möglichkeiten ein, die Datenverarbeitungssysteme mit inhaltsbasierten „True Names" anderen herkömmlichen Dateibenennungssystemen überlegen machten. Das erste „True Name"-Patent wurde am 2. November 1999 ausgestellt. Das letzte der Streitpatente ist abgelaufen und die hier dargelegten Anschuldigungen beziehen sich auf den Zeitraum vor Ablauf des letzten Streitpatents.

19.     PersonalWeb hat ihre geistigen Eigentumsrechte gegenüber Verletzern erfolgreich geltend gemacht und führt ihre Durchsetzung der Streitpatente weiterhin fort. PersonalWeb hat mit ihrer Geltendmachung Vergleiche erhalten und nicht exklusive Lizenzen hinsichtlich der Streitpatente eingeräumt.

## HINTERGRUND DER BEKLAGTEN

20.     Nach bestem Wissen und Gewissen betreibt die Klägerin schon seit vor Ablauf des letzten Streitpatents eine Webseite unter **babbel.com**. Im Rahmen dieser Webseite wird zugelassenen Benutzern Webseiten-Inhalt in der hier beschriebenen Art und Weise[1] bereitgestellt. Nach bestem Wissen und Gewissen nutzten die Webseiten-Server der Klägerin ein Mitteilungs- und Autorisierungssystem zur Regelung der Verbreitung von Inhalten, d. h. welche Webseiten-Inhalte von Webseiten-Servern und Zwischenspeichern bereitgestellt werden und auf welche Webseiten-Inhalte der Browser eines Benutzers zugreifen darf, um die Webseite(n) der Klägerin darzustellen. Nach bestem Wissen und Gewissen verwenden das System der Klägerin und die damit verbundenen Methoden zur Bereitstellung von Webseiten-Inhalten bedingte GET-Anfragen mit „If-None-Match"-Headers und zugehörigen ETag-Werten für mehrere für die Wiedergabe der verschiedenen Webseiten der Klägerin erforderlichen Index- und/oder Asset-Dateien. Auf diese Weise zwingt das System der Klägerin und das damit verbundene Verfahren sowohl zwischengeschaltete Cache-Server und Endpunkt-Caches zur Prüfung,

---

[1] Obwohl die erste geänderte Klage manchmal in der Gegenwart und der zweiten Vergangenheit verfasst ist und angenommen wird, dass die Systeme und Methoden der Klägerin aktuell in einer im Wesentlichen gleichen Weise betrieben werden, beziehen sich alle spezifischen Anschuldigungen auf den Systembetrieb und die Ausführung des Verfahrens im relevanten Zeitraum.

ob ein Zugriff auf die vorher zwischengespeicherten Webseiten-Dateien der Klägerin noch zulässig ist oder ob zur Wiedergabe der Webseite der Klägerin auf neu autorisierte Inhalte zugegriffen werden muss.

21.     Nach bestem Wissen und Gewissen hat die Beklagte damit die erforderliche Bandbreite und die Menge der von Ursprungsservern oder Zwischenspeicher-Servern auf Benutzeranforderung zur Wiedergabe der Webseiten der Beklagten zuzuführenden Daten reduziert, weil solche Server nur Dateien übertragen müssen, deren Inhalt geändert wurde. So kann eine effiziente Aktualisierung von zwischengespeicherten Daten gewährleistet werden, und nur dann, wenn solche Inhalte geändert wurden. Dabei wird der Transaktionsaufwand reduziert und die Übertragung autorisierter Inhalte vom nächstgelegenen Zwischenspeicher ermöglicht.

22.     Nach bestem Wissen und Gewissen wurde für Ausarbeitung und Zusammenstellung der verschiedenen Webseiten der Beklagten eine „Ruby on Rails"-Architektur verwendet, einschließlich Asset-Dateien, die zur Wiedergabe der Webseiten und zur Erzeugung eines Fingerabdrucks des Inhalts der Asset-Dateien beim Erstellen der Webseiten genutzt wurden. Nach bestem Wissen und Gewissen wurde der Fingerabdruck von einzelnen Asset-Dateien, die Teil des Inhalts der Webseite waren, in die Dateinamen der einzelnen Asset-Dateien miteinbezogen. Nach bestem Wissen und Gewissen wurden die modifizierten Dateinamen dann als Teil des Uniform Resource Identifier („URI" (einheitlicher Bezeichner für Ressourcen)) verwendet, um auf die einzelnen Asset-Dateien über das Internet zuzugreifen. Nach bestem Wissen und Gewissen wurde bei Änderung einer Asset-Datei ein neuer Fingerabdruck erzeugt und in den Dateinamen aufgenommen. Der URI änderte sich damit ebenfalls entsprechend. Nach bestem Wissen und Gewissen wurde der Fingerabdruck der Asset-Datei mithilfe einer „Message-Digest"-Hash-Funktion erzeugt und als Hinweis auf Inhaltsänderungen verwendet. Des Weiteren wurden Asset-Datei-URIs (mit solchen Fingerabdrücken) in Index-Dateien aufgenommen, die bei Änderung eines URI aufgrund einer Fingerabdruckänderung neu erstellt wurden. Das heißt, eine Inhaltsänderung in einer Asset-Datei für eine bestimmte Webseite hätte eine Änderung des Fingerabdrucks, der URI und folglich eine Inhaltsänderung der Index-Datei für diese Webseite zur Folge.

23.     Nach bestem Wissen und Gewissen stand die Beklagte mit Amazon unter Vertrag und verwendete das S3-System von Amazon, um die Webseiteninhalte der Beklagten in deren Auftrag zu speichern und bereitzustellen, einschließlich bestimmter Automatisierungsfunktionen zur Ausführung bestimmter angefochtener Schritte des Verfahrens und zum Betrieb bestimmter angefochtener Teile des Systems in ihrem Auftrag. Nach bestem Wissen und Gewissen hat die Beklagte nach Erstellung und Vervollständigung der Webseitendateien diese als Objekte in ein S3-Hostsystem von Amazon hochgeladen. Nach bestem Wissen und Gewissen hat die Beklagte das Hochladen ihrer Dateien

gesteuert und/oder geregelt sowie auch nachfolgende Schritte, die sich im S3-Hostsystem aufgrund der Entscheidung der Beklagten ergeben, inhaltsbasierte Kennungen zu verwenden, z. B. ETags von Inhalt von Index- und Asset-Dateien, die für die Wiedergabe der Webseiten der Beklagten verwendet wurden, so dass die Beklagte die eigene Inhaltsverteilung unter Verstoß gegen die Streitpatente in der hier geschilderten Art und Weise steuern konnte.

24.     Nach bestem Wissen und Gewissen umfasste der Wert eines Objekts eine Bitfolge und beim Hochladen im Auftrag der Beklagten wurde der mit dem Objekt verbundene ETag-Wert von dem S3-Hostsystem erzeugt, indem eine Hash-Funktion auf die Bitfolge angewendet wurde, wobei zwei Objekte mit identischen Bitfolgen auch identische zugehörige ETag-Werte aufwiesen. So wurde nach bestem Wissen und Gewissen bei Änderung des Inhalts eines Objekts, Hochladen in das S3-Hostsystem und Erzeugung eines neuen zugehörigen ETag-Werts im Auftrag der Beklagten der jeweilige Dienst bzw. die Verwendung des Objektinhalts durch Zwischenspeicher-Server und Endpunkt-Caches, wie beispielsweise Browser-Caches, autorisiert oder verweigert.

25.     Nach bestem Wissen und Gewissen umfassten die Webseiten der Beklagten jeweils eine Index-Datei und eine oder mehrere Asset-Dateien. Die Index-Datei enthielt URIs für Asset-Dateien, die zur Ladung der Webseite erforderlich waren, wobei jede dieser Dateien als individuelles Objekt mit eigenem URI hochgeladen wird.

26.     Nach bestem Wissen und Gewissen wurde bei einer erstmaligen Anforderung einer Webseite der Beklagten durch einen Zwischenspeicher-Server oder Endpunkt-Browser eine Hyper Text Transfer Protocol („HTTP") GET-Anfrage mit der URI der Webseite ausgesendet und der Ursprungsserver der Beklagten oder ein vorgeschalteter Cache-Server reagierte darauf mit der Aussendung einer HTTP-200-Meldung, die die Index-Datei für die Webseite und deren entsprechendes zugehöriges ETag enthielt. Nach bestem Wissen und Gewissen hat der Zwischenspeicher-Server oder ein Endpunkt-Browser dann einzelne HTTP-GET-Anfragen jeweils mit einem in der Index-Datei enthaltenen Asset-URI ausgesendet und der Ursprungsserver der Beklagten oder ein vorgeschalteter Cache-Server reagierte mit der Aussendung individueller HTTP-200-Meldungen, die die angeforderten Asset-Dateien mit deren jeweiligen zugehörigen ETags enthielten. Nach bestem Wissen und Gewissen hat der Zwischenspeicher-Server oder ein Endpunkt-Browser nach Erhalt der HTTP-200-Meldungen die Index- und Asset-Dateien mit deren zugehörigen URIs und zugehörigen ETag-Werten zwischengespeichert und der Browser hat diese zur Wiedergabe der angeforderten Webseite der Beklagten verwendet. Nach bestem Wissen und Gewissen wurden die Zwischenspeicher-Server

und Browser-Caches veranlasst, Datenbanken/Tabellen zu führen, die die URIs der Asset-/Index-Dateien den entsprechenden Antworten und, sofern zutreffend, den zugehörigen „Cache-Control"-Headers und ETags zuordneten.

27.     Nach bestem Wissen und Gewissen enthielten solche HTTP-200-Meldungen in mindestens einem Fall „Cache-Control"-Headers mit „Max-Age"-Direktiven und/oder „Expires"-Headers. Nach bestem Wissen und Gewissen können diese HTTP-200-Meldungen auch „Cache-Control"-Header mit einer Revalidierungsanweisung („must-revalidate"-Direktive) enthalten haben.

28.     Nach bestem Wissen und Gewissen hat die Beklagte durch die Beantwortung einer HTTP-GET-Anfrage nach einer bestimmten Webseite durch Aussenden des Inhalts einer Index-/Asset-Datei mit einem zugehörigen ETag dem Browser-Cache und allen Zwischenspeicher-Servern erlaubt bzw. diese gezwungen, diesen Inhalt beim nächsten Aufruf zu verwenden und das ETag in einer bedingten HTTP-GET-Anfrage mit einem „If-None-Match"-Header zu verwenden, um erneut zu verifizieren, dass diese weiterhin zur Bereitstellung oder Nutzung des Inhalts autorisiert sind oder ob sie zur Verwendung des Inhalts nicht mehr autorisiert sind und neuen Inhalt auf folgende Weise verwenden müssen.

29.     Nach bestem Wissen und Gewissen hatte die Beklagte die Fähigkeit, zu stoppen oder einzuschränken, wann ein zwischengespeicherter Cache oder Endpunkt-Browsers ein ETag zur erneuten Autorisierung der Nutzung von zwischengespeicherten Index-/Asset-Dateien der beklagten Webseitenbesitzerin verwenden konnte oder musste. Nach bestem Wissen und Gewissen hat die Beklagte dies beispielsweise dadurch erreicht, dass „Max-Age"- oder andere Direktiven in „Cache-Control"-Headers in HTTP-Antworten mit Index-/Asset-Dateien einbezogen wurden. Nach bestem Wissen und Gewissen konnte die Beklagte durch die Fähigkeit, die Verwendung des ETag durch den Einsatz solcher Befehle komplett zu umgehen, steuern, ob das erfindungsgemäße System und das erfindungsgemäße Verfahren überhaupt bei der Bereitstellung ihres Webseiteninhalts durch S3 zum Einsatz kamen. Nach bestem Wissen und Gewissen profitiert die Beklagte von der Verwendung der ETags zur Steuerung der Verbreitung ihrer Webseiteninhalte durch Kommunikation an einen nachgeschalteten       Zwischenspeicher       und       einen       Endpunkt-Browser,       welche       der zwischengespeicherten Webseitendateien übertragen/verwendet werden dürfen und welche neu autorisierten Dateien diese erst zur Weitergabe/Wiedergabe der Webseiten der Beklagten erhalten müssen.

30.     Nach bestem Wissen und Gewissen hat ein Endpunkt-Browser bei erneuter Anforderung der Webseite der Beklagten gemäß der vorher mit der Index-Datei der Webseite erhaltenen „Cache-Control"-Headers

eine bedingte GET-„If-None-Match"-Anfrage unter Verwendung des zugehörigen ETag-Werts und dem URI für die Index-Datei gesendet, um informiert zu werden, ob der Browser noch von der Beklagten autorisiert ist, die Webseite mit ihrer lokal zwischengespeicherten Index-Datei für diese Webseite wiederzugeben.

31.     Nach bestem Wissen und Gewissen hat gemäß den „Cache-Control"-Headers ein reagierender Zwischenspeicher-Server mit einem ETag für den URI auf die Anfrage geantwortet und ermittelt, ob der gleiche zugehörige ETag-Wert in dessen Liste von zugehörigen ETag-Werten enthalten war (wenn kein ETag-Wert für den URI vorlag, wurde die Anfrage an einen vorgeschalteten reaktionsfähigen Zwischenspeicher-Server weitergegeben oder an den Ursprungsserver der Beklagten, der dann die Antwort ausführte).

32.     Nach bestem Wissen und Gewissen hat der reagierende Server, wenn dieser über Webseiteninhalte für den URI verfügte und eine Übereinstimmung zwischen dem mit der Anfrage erhaltenen ETag und dem ETag bestand, das aktuell mit dem URI verbunden war, eine HTTP-304-Meldung zurückgesendet; diese Meldung informierte den Browser, dass der gleiche Webseiteninhalt im reagierenden Server vorlag und dass der Browser immer noch autorisiert war, die vorher zwischengespeicherte Index-Datei zur Wiedergabe der Webseite erneut zu verwenden. Nach bestem Wissen und Gewissen hat der Browser nach Erhalt der HTTP-Protokoll-304-Antwort auf die lokal zwischengespeicherte Index-Datei zur Wiedergabe der Webseite zugegriffen.

33.     Nach bestem Wissen und Gewissen hat der reagierende Server, wenn das mit der Index-Datei verbundene und vom Endpunkt-Browser in der „If-None-Match"-Anfrage gesendete ETag nicht mit dem verbundenen ETag übereinstimmte, das beim reagierenden Server (oder anderen vorgeschalteten Zwischenspeicher-Servern oder dem Ursprungsserver) für diesen URI vorlag, eine HTTP-200-Antwort zusammen mit der neuen Index-Datei und deren neuen ETag-Wert zurückgesendet. Die HTTP-200-Antwort wies den Browser darauf hin, dass er nicht autorisiert war, die bisher zwischengespeicherte Index-Datei zu verwenden (bzw. zu übertragen, wenn die HTTP-200-Meldung von einem Zwischenspeicher-Server erhalten wurde). Als Reaktion auf den Erhalt der HTTP-200-Meldung war der Endpunkt-Browser (bzw. ein Zwischenspeicher-Server) gezwungen, seine entsprechenden Caches mit der neuen Index-Datei und dem zugehörigen ETag zu aktualisieren. Der Browser hat die neue Index-Datei gelesen, um die darin enthaltenen Asset-Datei-URIs zu identifizieren.

34.Nach bestem Wissen und Gewissen hat der Endpunkt-Browser für spezielle Asset-Datei-URIs, für die ein Eintrag im Endpunkt-Browser vorlag und dieser Cache-Eintrag einen zugehörigen ETag-Wert gemäß den

vorher mit einer solchen Asset-Datei erhaltenen Cache-Control-Headers enthielt, ebenfalls eine „If-None-Match"-GET-Anfrage mit dem URI und zugehörigen ETag gesendet. Nach bestem Wissen und Gewissen hat der reagierende Server gemäß den „Cache-Control"-Headers, wenn beim reagierenden Server ein ETag-Wert für den URI vorlag, den in der bedingten GET-Anfrage erhaltenen ETag-Wert mit dem zugehörigen ETag für den URI verglichen. Nach bestem Wissen und Gewissen hat der reagierende Server bei einer Übereinstimmung eine HTTP-304-Meldung und einen zugehörigen ETag-Wert gesendet, wodurch der Browser erneut autorisiert wurde, den vorher zwischengespeicherten Inhalt dieser Asset-Datei zur Wiedergabe der Webseite zu verwenden. Bei fehlender Übereinstimmung hat der reagierende Server eine HTTP-200-Meldung mit dem neuen Inhalt für diese Asset-Datei und deren neuen zugehörigen ETag-Wert gesendet. Die HTTP-200-Meldung wies den nachgeschalteten Server oder den Browser darauf hin, dass dieser nicht autorisiert war, auf den vorher zwischengespeicherten Inhalt für diesen URI zuzugreifen, um diesen weiterzugeben oder die Webseite wiederzugeben. Stattdessen hat der Browser als Reaktion auf eine solche Meldung auf den in der HTTP-200-Meldung gelieferten neuen Asset-Datei-Inhalt zur Wiedergabe der Webseite zugegriffen. So haben der End-Cache und die zwischengelagerten Caches im Netzwerk ihre jeweiligen Datenbanken aktualisiert, um den neuen URI dem neuen Inhalt und ETag-Wert zuzuordnen.

35.     Nach bestem Wissen und Gewissen durfte der Browser für bestimmte Asset-Datei-URIs in der Index-Datei, für die eine Eingabe im Cache des Endpunkt-Browsers vorlag und diese Cache-Eingabe keine zugehörigen ETag-Werte enthielt, den Inhalt vorbehaltlich der vorher mit einer solchen Asset-Datei erhaltenen „Cache-Control"-Headers verwenden. Wenn die „Cache-Control"-Headers die Verwendung der zwischengespeicherten Asset-Datei nicht zuließen oder im Zwischenspeicher des Endpunkt-Browsers keine Eingabe für den Asset-Datei-URI vorlag, hat der Browser eine HTTP-GET-Anfrage mit dem Asset-Datei-URI gesendet; und der reagierende zwischengelagerte bzw. Ursprungsserver reagierte auf die GET-Anfrage mit der Aussendung der Asset-Datei für diesen URI und, soweit zutreffend, den entsprechenden „Cache-Control"-Header und/oder das zugehörige ETag in einer HTTP-200-Meldung. Nach bestem Wissen und Gewissen hat der Browser als Reaktion auf den Erhalt der HTTP-200-Meldung die Asset-Datei (soweit zutreffend) zwischengespeichert und deren „Cache-Control"-Header und/oder das zugehörige ETag und die neu erhaltenen Asset-Dateien zur Wiedergabe der Webseiten der Beklagten verwendet. Nach bestem Wissen und Gewissen wurde bei Anforderung einer nochmaligen Wiedergabe der Webseite zu einem späteren Zeitpunkt der obige Prozess durchlaufen, um zu ermitteln, auf welchen Dateiinhalt der nachgeschaltete Zwischenspeicher bzw. der Browser weiterhin Zugangsberechtigung hatte oder ob der nachgeschaltete Zwischenspeicher bzw.

Browser auf anderen autorisierten Inhalt zur Wiedergabe der Webseite über die HTTP-304- und HTTP-200-Meldungen zugreifen musste.

36.     Nach bestem Wissen und Gewissen wiederholte der Browser diesen Prozess für mehrere Asset-Dateien, für die er einen zugehörigen ETag-Wert hatte, sowie für Asset-Dateien mit URIs in der Index-Datei.

37.     Nach bestem Wissen und Gewissen hat die Beklagte auf diese Weise (1) ETag-Werte und (2) Asset-Dateien, die durch URIs mit Fingerabdrücken basierend auf dem Inhalt der Asset-Dateien referenziert wurden, verwertet: um das Verhalten von nachgeschalteten Zwischenspeicher-Servern und Endpunkt-Caches zu steuern und damit sicherzustellen, dass diese nur auf den zuletzt autorisierten Webseiteninhalt der Beklagten zur Weitergabe oder zur Wiedergabe ihrer Webseiten zugreifen konnten.

## ERSTES KLAGEBEGEHREN
### VERLETZUNG VON US-PATENT NR. 6,928,442

38.     PersonalWeb wiederholt und macht Paragraphen 1-37 erneut geltend, als wären diese hier umfassend dargelegt.

39.     Am 9. August 2005 wurde das US-Patent Nr. 6,928.442 (das „'442 Patent") ordnungsgemäß und rechtmäßig für eine Erfindung unter dem Titel „Durchsetzung und Überwachung von lizenziertem Inhalt mittels inhaltsbasierten Kennungen" (Enforcement and Policing of Licensed Content Using Content-Based Identifiers) ausgestellt. PersonalWeb hat einen Eigentumsanteil am '442 Patent durch Abtretung, einschließlich der exklusiven Rechte, das '442 Patent im Patentbereich von PersonalWeb durchzusetzen, und hält diesen Eigentumsanteil am '442 Patent weiterhin.

40.     Die Beklagte hat durch die Herstellung, Verwendung, den Verkauf, den Import und/oder das Angebot von Produkten oder Dienstleistungen zum Verkauf und/oder durch die Steuerung der Verteilung ihres Webseiteninhalts in der hier beschriebenen Art und Weise zumindest gegen Ansprüche 10 und 11 des '442 Patents verstoßen. Die Patentverletzung besteht im Wortlaut und/oder im Äquivalenzbereich und die Beklagte haftet für ihre Verletzung des '442 Patents gemäß 35 U.S.C. § 271.

41.     Anspruch 10 bezieht sich beispielsweise auf „ein Verfahren in einem System, in dem eine Vielzahl von Dateien über eine Vielzahl von Computern verteilt wird." Nach bestem Wissen und Gewissen hat die Beklagte ein Mitteilungs- und Autorisierungssystem zur Verteilung einer Vielzahl von Dateien verwendet. So enthalten die Dateien der Beklagten beispielsweise Inhalt, der zur Wiedergabe ihrer Webseiten über eine Vielzahl von Computern, wie beispielsweise

Produktionsserver, Ursprungsserver, Zwischenspeicher-Server und Endpunkt-Caches, die von Browsern zur Wiedergabe der Webseiten der Beklagten genutzt werden.

42.         Anspruch 10 schildert dann den Vorgang des „Erhalts eines Namens für eine Datendatei, wobei der Name zumindest zum Teil auf einer bestimmten Funktion der Daten basiert und die von der Funktion verwendeten Daten die Inhalte der bestimmten Datei umfassen". Wie oben ausgelegt hat die Beklagte nach bestem Wissen und Gewissen ETags und Fingerabdrücke in URIs für ihre Index- und Asset-Dateien zur Wiedergabe ihrer Webseiten mithilfe einer Hash-Funktion erzeugt oder anderweitig erhalten, wobei das ETag und der Fingerabdruck in dem URI auf den Inhalten der bestimmten Datei basieren. Des Weiteren hat die Beklagte die Zwischenspeicher-Server und Endpunkt-Caches dazu veranlasst, die ETags und URIs (die den Fingerabdruck enthalten) von HTTP-200-Meldungen zu erhalten, die von den Ursprungsservern der Beklagten versendet wurden. Nach bestem Wissen und Gewissen hat die Beklagte Zwischenspeicher-Server und ihre Ursprungsserver dazu veranlasst, ETags und URIs (die den Fingerabdruck enthalten) durch bedingte GET-Meldungen von Endpunkt-Caches und Zwischenspeichern zu erhalten, wie oben beschrieben.

43.         Anspruch 10 schildert dann den Vorgang der „Ermittlung, basierend zumindest auf dem Namen, ob eine Kopie der Datendatei zumindest in einem der Computer vorliegt". Nach bestem Wissen und Gewissen hat die Beklagte, wie oben dargelegt, ihre Ursprungsserver und Zwischenspeicher-Server veranlasst, zwischen einem Endpunkt-Cache und einem ihrer Ursprungsserver als Reaktion auf den Erhalt einer bedingten GET-Anfrage mit einem „If-None-Match"-Header zu ermitteln, ob eine Datei vorlag, die dem URI (das den Fingerabdruck enthielt) in der bedingten GET-Anfrage entspricht, und das ETag in der bedingten GET-Anfrage mit dem ETag für den URI zu vergleichen und zu ermitteln, ob eine Kopie des Inhalts mit diesem ETag vorliegt. Des Weiteren hat die Beklagte Browser am Endpunkt-Cache veranlasst, mithilfe des Fingerabdrucks im URI einer Asset-Datei zu ermitteln, ob eine zwischengespeicherte Kopie der entsprechenden Asset-Datei vorlag.

44.         Anspruch 10 schildert dann den Vorgang der „Ermittlung, ob eine Kopie der Datendatei, die in zumindest einem der besagten Computer vorliegt, eine nicht autorisierte Kopie bzw. eine nicht lizenzierte Kopie der Datendatei ist". Nach bestem Wissen und Gewissen hat der Ursprungsserver bzw. der Zwischenspeicher-Server im Fall einer Übereinstimmung (wie oben dargelegt) und der Feststellung, dass der „Max-Age"-Wert nicht abgelaufen war, und/oder nach einer weiteren im Rahmen von anderen von der Beklagten auferlegten Direktiven erforderlichen Reautorisierungsprüfung über „Cache-Control"-Header ermittelt, dass die Kopie der im nachgeschalteten Zwischenspeicher-Server und/oder im Endpoint-Cache vorliegenden Datei eine autorisierte bzw. lizenzierte Kopie der Datendatei war. Umgekehrt hat der Ursprungsserver bzw. der Zwischenspeicher-Server bei Fehlen einer Übereinstimmung ermittelt, dass die Kopie der im nachgeschalteten Zwischenspeicher-Server und/oder Endpunkt-Cache eine nicht autorisierte bzw. nicht lizenzierte Kopie der Datendatei war. Ebenso hat der Browser bei Feststellung, dass eine Datei mit einem übereinstimmenden URI vorlag, deren „Max-Age"-Wert noch nicht abgelaufen war,

und/oder nach weiteren Reautorisierungsprüfungen, die von der Beklagten im Rahmen anderer Direktiven in „Cache-Control"-Headers gefordert wurden, ermittelt, dass er noch weiterhin zur Verwendung dieser Datei autorisiert war.

45.    Die Patentverletzungshandlungen der Beklagten haben Schaden für PersonalWeb verursacht und PersonalWeb ist berechtigt, von der Beklagten Schadensersatz als Folge der unrechtmäßigen Handlungen der Beklagten in einem vor Gericht nachzuweisenden Betrag einzufordern.

## ZWEITES KLAGEBEGEHREN
## VERLETZUNG VON US-PATENT NR. 7,802,310

46.    PersonalWeb wiederholt und macht Paragraphen 1-37 erneut geltend, als wären diese hier umfassend dargelegt.


47.    Am 21. September 2010 wurde das US-Patent Nr. 7,802,310 (das „'310 Patent") ordnungsgemäß und rechtmäßig für eine Erfindung unter dem Titel „Steuerung des Datenzugangs in einem Datenverarbeitungssystem" (Controlling Access to Data in a Data Processing System) ausgestellt. PersonalWeb hat einen Eigentumsanteil am '310 Patent durch Abtretung, einschließlich der exklusiven Rechte, das '310 Patent im Patentbereich von PersonalWeb durchzusetzen, und hält diesen Eigentumsanteil am '310 Patent weiterhin.

48.    Die Beklagte hat durch die Herstellung, Verwendung, den Verkauf, den Import und/oder das Angebot von Produkten oder Dienstleistungen zum Verkauf und/oder durch die Steuerung der Verteilung ihres Webseiteninhalts in der hier beschriebenen Art und Weise zumindest gegen Ansprüche 20 und 69 des '310 Patents verstoßen. Die Patentverletzung besteht im Wortlaut und/oder im Äquivalenzbereich und die Beklagte haftet für ihre Verletzung des '310 Patents gemäß 35 U.S.C. § 271.

49.    Anspruch 20 bezieht sich beispielsweise auf ein „computerimplementiertes Verfahren, das in einem System bestehend aus einer Vielzahl von Computern ausgeführt werden kann". Nach bestem Wissen und Gewissen hat die Beklagte das erfindungsgemäße computerimplementierte Verfahren durch den Einsatz eines Meldungs- und Autorisierungssystems zur Steuerung der Verteilung von Datenelementen, wie beispielsweise verschiedene Index- und Asset-Dateien, verwendet, die zur Wiedergabe ihrer

Webseiten über eine Vielzahl von Computern, wie beispielsweise Produktionsserver, Ursprungsserver, Zwischenspeicher-Server und Endpunkt-Caches, benötigt wurden.

50.    Anspruch 20 schildert dann die „Steuerung der Inhaltsverteilung von einem ersten Computer an zumindest einen anderen Computer als Reaktion auf eine Anfrage, die ein erstes Gerät im System von einem zweiten Gerät im System erhalten hat, wobei das erste Gerät Hardware mit mindestens einem Prozessor enthält und die Anfrage mindestens einen inhaltsabhängigen Namen eines bestimmten Datenelements, der inhaltsabhängige Name zumindest zum Teil auf einer Funktion von mindestens einigen der Daten, aus denen das bestimmte Datenelement besteht, basiert, wobei die Funktion eine „Message-Digest"-Funktion oder Hash-Funktion umfasst und wobei zwei identische Datenelemente den gleichen inhaltsabhängigen Namen haben". Nach bestem Wissen und Gewissen hat die Beklagte, wie oben dargelegt, nachgeschaltete Zwischenspeicher-Server und Endpunkt-Caches veranlasst, bedingte GET-Anfragen mit „If-None-Match"-Headers und darin enthaltenen ETags zu senden, die von vorgeschalteten Cache-Server oder Ursprungsserver ausgestellt werden. Nach bestem Wissen und Gewissen waren die ETags inhaltsabhängige Namen für ein Datenelement basierend auf dem Hashen der Datenelementinhalte; und wenn sich der Inhalt einer Datei änderte, wurde ein neuer inhaltsabhängiger Name festgelegt. Nach bestem Wissen und Gewissen hat bei dem Verfahren der Beklagten ein erster Computer, wie beispielsweise der Zwischenspeicher-Server oder Ursprungsserver, solche bedingten GET-Anfragen von einem zweiten Computer, wie beispielsweise einem Benutzer-Browser oder anderen Zwischenspeicher-Servern, in Bezug auf Datenelemente, wie beispielsweise Index- oder Asset-Dateien, erhalten, wobei die Anfragen zu den entsprechenden Datenelementen zugehörige ETags enthielten.

51.    Anspruch 20 schildert dann, dass „das erste Gerät basierend zumindest zum Teil auf einem solchen inhaltsabhängigen Namen eines solchen Datenelements (A) die Bereitstellung des oder den Zugriff auf den Inhalt durch den zumindest einen anderen Computer erlaubt, sofern nicht festgestellt wird, dass der Inhalt nicht autorisiert oder nicht lizenziert ist, und andernfalls (B) die Bereitstellung des oder den Zugriff auf den Inhalt durch diesen zumindest einen anderen Computer nicht erlaubt, wenn festgestellt wird, dass der Inhalt nicht autorisiert oder nicht lizenziert ist. Nach bestem Wissen und Gewissen hat der erste Computer, wie beispielsweise ein vorgeschalteter Zwischenspeicher-Server oder Ursprungsserver, eine Vielzahl von mit den Asset- und Index-Dateien der Beklagten verbundenen ETags verwaltet. Nach bestem Wissen und Gewissen wurde das ETag in einer Anfrage mit dem vom ersten Computer verwalteten ETag für das von der Anfrage gesuchte bestimmte Datenelement verglichen, um festzustellen ob der zugehörige im nachgeschalteten Computer vorliegende Inhalt immer noch zur Verwendung/Weitergabe autorisiert war oder ob neuer autorisierter Inhalt dafür bereitgestellt werden muss.

Wenn festgestellt wurde, dass das mit dem erhaltenen ETag verbundene Datenelement noch weiterhin nutzungsberechtigt war, hat der erste Computer eine HTTP-304-Meldung zurückgesendet und damit den nachgeschalteten Zwischenspeicher-Server bzw. Endbenutzer-Cache autorisiert, auf den bereits vorliegenden Dateiinhalt zuzugreifen, um diesen weiterzuleiten oder zur Wiedergabe der Webseite zu nutzen. Nach bestem Wissen und Gewissen hat der erste Computer bei Feststellung, dass das mit dem erhaltenen ETag verbundene Datenelement nicht länger autorisiert war, eine HTTP-200-Meldung zurückgesendet und damit den nachgeschalteten Zwischenspeicher-Server bzw. Endbenutzer-Cache signalisiert, dass dieser nicht autorisiert war, auf den alten Inhalt zuzugreifen, und den neuen autorisierten Dateiinhalt in der HTTP-200-Meldung zur Weitergabe bzw. zur Wiedergabe der Webseite verwenden muss.

52.      Als weiteres Beispiel beschreibt Anspruch 69 ein „System, das in einem Netzwerk von Computern betriebsfähig ist, wobei das System Hardware mit mindestens einem Prozessor und Software in Verbindung mit dieser Hardware umfasst". Nach bestem Wissen und Gewissen hat die Beklagte die Verteilung ihres Webseiteninhalts über ein System gesteuert, das ein Netzwerk von Computern umfasste, wie beispielsweise ihre Produktionsserver sowie auch Ursprungsserver, Zwischenspeicher-Server und Endpunkt-Caches, die alle Hardware einschließlich eines Prozessors umfassten. Nach bestem Wissen und Gewissen hat die Beklagte Software in Verbindung mit dieser Hardware eingesetzt, wie beispielsweise „Ruby on Rails", und Software zur Implementierung des HTTP-Web-Protokolls sowie die von den Amazon S3-Host-Servern verwendete Software, die die Beklagte zur Weiterleitung ihres Inhalts verwendet hat.

53.      Anspruch 69 schildert dann, dass das System „(a) in einem ersten Computer von einem zweiten Computer eine Anfrage in Bezug auf ein Datenelement erhält, dass diese Anfrage zumindest einen inhaltsabhängigen Namen für das Datenelement enthält, dass der inhaltsabhängige Name zumindest zum Teil auf einer Funktion der Daten in dem Datenelement basiert, wobei die von der Funktion verwendeten Daten zur Festlegung des inhaltsabhängigen Namens zumindest einen Anteil der Inhalte des Datenelements umfassen, wobei es sich bei der verwendeten Funktion um eine „Message-Digest"- oder Hash-Funktion handelt und zwei identische Datenelemente den gleichen inhaltsabhängigen Namen haben. Nach bestem Wissen und Gewissen hat die Beklagte, wie oben dargelegt, nachgeschaltete Zwischenspeicher-Server und Endpunkt-Caches veranlasst, bedingte GET-Anfragen mit „If-None-Match"-Headers und darin enthaltene ETags und URIs mit Fingerabdrücken zu senden, die von vorgeschalteten Cache-Server oder Ursprungsserver ausgestellt werden. Nach bestem Wissen und Gewissen waren die ETags und URIs mit Fingerabdrücken inhaltsabhängige Namen für ein Datenelement, die durch Hashen der Dateiinhalte berechnet wurden; und wenn sich der Dateiinhalt änderte, wurde ein neuer inhaltsabhängiger Name festgelegt. Nach

bestem Wissen und Gewissen hat bei dem System der Beklagten ein erster Computer, wie beispielsweise der Zwischenspeicher-Server oder Ursprungsserver, solche bedingten GET-Anfragen von einem zweiten Computer, wie beispielsweise einem Benutzer-Browser, in Bezug auf Datenelemente, wie beispielsweise Index- oder Asset-Dateien, erhalten, wobei mit den Datenelementen verbundene inhaltsabhängige Namen, wie beispielsweise ETags und URIs mit Fingerabdrücken, verwendet wurden.

54.    Anspruch 69 schildert dann, dass „(b) als Reaktion auf eine solche Anfrage: (i) ein Vergleich des inhaltsabhängigen Namens des Datenelements mit einer Vielzahl von Werten veranlasst wurde; und (ii) die Ermittlung erfolgte, ob Zugang zu dem Datenelement basierend auf der Übereinstimmung des inhaltsabhängigen Namens mit zumindest einem der besagten Vielzahl von Werten autorisiert oder nicht autorisiert ist und (iii) basierend auf der Ermittlung, ob der Zugang zu dem Datenelement autorisiert bzw. nicht autorisiert ist, Erlaubnis zur Bereitstellung des Datenelements bzw. zum Zugang dazu durch einen zweiten Computer gewährt wurde, sofern nicht festgestellt wurde, dass der Zugang zu dem Datenelement nicht autorisiert ist". Nach bestem Wissen und Gewissen hat der erste Computer, wie beispielsweise ein vorgeschalteter Zwischenspeicher-Server oder Ursprungsserver, eine Vielzahl von mit den Asset- und Index-Dateien der Beklagten verbundenen URI-Werten verwaltet; die in einer bedingten GET-Anfrage vom zweiten (nachgeschalteten) Computer erhaltenen URI-Werte mit dieser Vielzahl von URI-Werten verglichen; dieser Vergleich hat dem ersten Computer ermöglicht festzustellen, ob der inhaltsabhängige Name in der Anfrage mit einem der Vielzahl von gespeicherten URI-Werten übereinstimmte und ob Zugang zu dem Datenelement weiterhin autorisiert war oder nicht. Nach bestem Wissen und Gewissen hat der erste Computer, insbesondere bei einer Übereinstimmung, ermittelt, ob der im nachgeschalteten Computer vorliegende verbundene Inhalt weiterhin zur Nutzung bzw. Weiterleitung autorisiert war oder ob neuer autorisierter Inhalt dafür bereitgestellt werden muss. Wenn festgestellt wurde, dass das mit dem erhaltenen URI mit Fingerabdruck verbundene Datenelement noch weiterhin nutzungsberechtigt war, hat der erste Computer eine HTTP-304-Meldung zurückgesendet und damit den nachgeschalteten Zwischenspeicher-Server bzw. Endbenutzer-Cache autorisiert, auf den bereits vorliegenden Dateiinhalt zuzugreifen, um diesen weiterzuleiten oder zur Wiedergabe der Webseite zu verwenden. Nach bestem Wissen und Gewissen hat der erste Computer bei Feststellung, dass das mit dem erhaltenen URI und Fingerabdruck verbundene Datenelement nicht länger autorisiert war, eine HTTP-200-Meldung zurückgesendet und damit dem nachgeschalteten Zwischenspeicher-Server bzw. Endbenutzer-Cache signalisiert, dass dieser nicht autorisiert war, auf den alten Inhalt zuzugreifen und den neuen autorisierten Dateiinhalt in der HTTP-200-Meldung zur Weiterleitung bzw. zur Wiedergabe der Webseite verwenden muss.

55.      Die Patentverletzungshandlungen der Beklagten haben Schaden für PersonalWeb verursacht und PersonalWeb ist berechtigt, von der Beklagten Schadensersatz als Folge der unrechtmäßigen Handlungen der Beklagten in einem vor Gericht nachzuweisenden Betrag einzufordern.

## DRITTES KLAGEBEGEHREN
## VERLETZUNG VON US-PATENT NR. 7,945,544

56.      PersonalWeb wiederholt und macht Paragraphen 1-37 erneut geltend, als wären diese hier umfassend dargelegt.

57.      Am 17. Mai 2011 wurde das US-Patent mit der Nr. 7,945,544 (das „'544 Patent") ordnungsgemäß und rechtmäßig für eine Erfindung unter dem Titel „Ähnlichkeitsbasierte Zugangskontrolle für Daten in einem Datenverarbeitungssystem" (Similarity-Based Access Control of Data in a Data Processing System) ausgestellt. PersonalWeb hat einen Eigentumsanteil am '544 Patent durch Abtretung, einschließlich der exklusiven Rechte, das '544 Patent im Patentbereich von PersonalWeb durchzusetzen, und hält diesen Eigentumsanteil am '544 Patent weiterhin.

58.      Die Beklagte hat durch die Herstellung, Verwendung, den Verkauf, den Import und/oder das Angebot von Produkten oder Dienstleistungen zum Verkauf und/oder durch die Steuerung der Verteilung ihres Webseiteninhalts in der hier beschriebenen Art und Weise zumindest gegen Ansprüche 46, 48, 52, und 55 des '544 Patents verstoßen. Die Patentverletzung besteht im Wortlaut und/oder im Äquivalenzbereich und die Beklagte haftet für ihre Verletzung des '544 Patents gemäß 35 U.S.C. § 271.

59.      Anspruch 46 bezieht sich beispielsweise auf ein erfindungsgemäßes „computerimplementiertes Verfahren". Nach bestem Wissen und Gewissen nutzt die Beklagte das erfindungsgemäße computerimplementierte Verfahren durch den Einsatz eines Meldungs- und Autorisierungssystems zur Lokalisierung und Steuerung der Verteilung von Datenelementen, wie beispielsweise verschiedener Index- und Asset-Dateien, die zur Wiedergabe ihrer Webseiten notwendig sind.

60.      Anspruch 46 schildert dann den Vorgang „(A) für jede bestimmte Datei einer Vielzahl von Dateien: (a2) einen speziellen digitalen Schlüssel für die bestimmte Datei festzulegen, wobei die bestimmte Datei einen ersten oder mehrere Teile umfasst." Nach bestem Wissen und Gewissen umfassen alle Webseiten der Beklagten eine oder mehrere Asset- und Index-Dateien, wobei die Index-Datei die URIs mit Fingerabdrücken einer Vielzahl von Asset-Dateien enthält, die die Webseite umfassen, und sobald die Index- und Asset-Dateien erstellt und vollständig sind, lädt die Beklagte sie als Objekte in ein S3-Hostsystem hoch. Nach bestem Wissen und Gewissen, wird der mit der Index-Datei verbundene ETag-Wert

durch die Anwendung eines Hash-Algorithmus auf die Inhalte der Index-Datei erzeugt, wobei zwei beliebige Index-Dateien mit identischem Inhalt identische zugehörige ETag-Werte aufweisen. Nach bestem Wissen und Gewissen hat die Beklagte jedes Mal, wenn eine neue Index-Datei auf einen S3-Server hochgeladen wird oder sich der Inhalt der Index-Datei ändert, die Festlegung eines ETag und die Zuordnung dessen zur Index-Datei zum Zeitpunkt des Uploads veranlasst. Nach bestem Wissen und Gewissen gilt dies auch für ETags von Webseiten, die erzeugt werden, wenn die Index-Datei hochgeladen wird.

61.      Anspruch 46 schildert dann, dass „jeder Teil des besagten ersten oder mehrerer Teile einen entsprechenden Teilwert aufweist, wobei der Teilwert jedes spezifischen Teils eines ersten oder mehrerer Teile auf einer ersten Funktion des Inhalts des spezifischen Teils basiert und zwei identische Teile den gleichen von der ersten Funktion festgelegten Teilwert besitzen und der spezielle digitale Schlüssel für die bestimmte Datei mittels einer zweiten Funktion des einen oder mehrerer Teilwerte des besagten ersten oder mehrerer Teile festgelegt wird". Nach bestem Wissen und Gewissen wird vor dem Hochladen von mehreren Asset-Dateien auf das S3-Hostsystem ein Fingerabdruck für jede dieser Asset-Dateien durch Anwendung einer Hash-Funktion auf die Inhalte der Asset-Datei erzeugt und die Fingerabdrücke werden in die URIs für die entsprechenden Asset-Dateien eingefügt. Nach bestem Wissen und Gewissen wird der ETag-Wert der Webseite durch Anwendung einer zweiten Hash-Funktion auf die Inhalte der Index-Datei erzeugt, die aus den URIs einer oder mehrerer Asset-Dateien bestehen, die die Inhalte der Webseite beinhalten. Nach bestem Wissen und Gewissen ändert sich aufgrund dessen, dass die URIs der entsprechenden Asset-Datei die Fingerabdrücke ihres Inhalts enthalten, der ETag-Wert der Webseite und ein neuer ETag-Wert wird zur Wiedergabe des Webseiteninhalts erzeugt, wenn sich der Inhalt ändert, und zwei identische Webseiten mit identischem Inhalt in deren Index-Dateien erhalten den gleichen ETag-Wert.

62.      Anspruch 46 schildert dann den Vorgang „(a2) des Hinzufügens des speziellen digitalen Schlüssels der bestimmten Datei zu einer Datenbank, wobei die Datenbank eine Zuordnung der digitalen Schlüsseln von Dateien zu Informationen über die entsprechenden Dateien enthält." Nach bestem Wissen und Gewissen hat die Beklagte den Ursprungsserver, Zwischenspeicher und Browser-Caches veranlasst, Datenbanken/Tabellen zu führen, die das ETag der Index-Datei jeder Webseite ihrem URI sowie Informationen über die entsprechende Webseite, wie beispielsweise „Cache-Control"-Informationen für die Webseite, zuordnete.

63.      Anspruch 46 schildert dann „(B) die Festlegung eines Suchschlüssels basierend auf Suchkriterien, wobei die Suchkriterien einen zweiten oder mehrere Teile umfassen, wobei jeder zweite oder mehrere Teile der besagten Suchkriterien einen entsprechenden Teilwert aufweist bzw. aufweisen und der Teilwert jedes speziellen Teils des besagten zweiten oder mehrerer Teile auf der ersten Funktion des Inhalts des speziellen Teils basiert und der Suchschlüssel anhand der zweiten Funktion des einen oder der mehreren Teilwerte des besagten zweiten oder mehrerer Teile ermittelt wird.“ Nach bestem Wissen und Gewissen hat die Beklagte bei erneutem Aufrufen einer Webseite der Beklagten durch einen nachgeschalteten Zwischenspeicher-Server oder Browser diesen veranlasst, eine bedingte GET-Anfrage mit einem „If-None-Match“-Header und dem mit der Webseite verbundenen ETag-Wert zu senden. Nach bestem Wissen und Gewissen wurde der erhaltene ETag-Wert mittels der zweiten Hash-Funktion der Index-Datei der Webseite ermittelt, die URIs mit Fingerabdrücken für eine oder mehrere der Asset-Dateien enthält, die die Inhalte der Webseite umfassen.

64.      Anspruch 46 schildert dann „(C) den Versuch, den Suchschlüssel einem digitalen Schlüssel in der Datenbank zuzuordnen“. Nach bestem Wissen und Gewissen vergleicht der reagierende Server bei Erhalt des ETag-Werts der Webseite in einer bedingten GET-Anfrage mit einem „If-None-Match“-Header den erhaltenen ETag-Wert mit den ETags in seiner Datenbank/Tabelle, die dem URI der Index-Datei der Webseite entsprechen, um zu ermitteln, ob ein übereinstimmender Wert für diese Webseite vorliegt.

65.      Anspruch 46 schildert dann, dass „(D) bei Übereinstimmung des Suchschlüssels mit einem speziellen Schlüssel in der Datenbank Informationen über die dem speziellen digitalen Schlüssel entsprechenden Datei bereitgestellt wird“. Nach bestem Wissen und Gewissen sendet der reagierende Server bei Ermittlung eines übereinstimmenden ETag-Werts für die Index-Datei der Webseite eine HTTP-304-Meldung mit Informationen über die entsprechende Webseite, wie beispielsweise „Cache-Control“-Informationen für die Webseite.

66.      Die Patentverletzungshandlungen der Beklagten haben Schaden für PersonalWeb verursacht und PersonalWeb ist berechtigt, von der Beklagten Schadensersatz als Folge der unrechtmäßigen Handlungen der Beklagten in einem vor Gericht nachzuweisenden Betrag einzufordern.

## VIERTES KLAGEBEGEHREN
### VERLETZUNG VON US-PATENT NR. 8,099,420

67.       PersonalWeb wiederholt und macht Paragraphen 1-37 erneut geltend, als wären diese hier umfassend dargelegt.

68.       Am 17. Januar 2012 wurde das US-Patent Nr. 8,099,420 (das „'420 patent") ordnungsgemäß und rechtmäßig für eine Erfindung unter dem Namen „Zugriff auf Daten in einem Datenverarbeitungssystem" (Accessing Data in a Data Processing System) ausgestellt. PersonalWeb hat einen Eigentumsanteil am '420 Patent durch Abtretung, einschließlich der exklusiven Rechte, das '420 Patent im Patentbereich von PersonalWeb durchzusetzen, und hält diesen Eigentumsanteil am '420 Patent weiterhin.

69.       Die Beklagte hat durch die Herstellung, Verwendung, den Verkauf, den Import und/oder das Angebot von Produkten oder Dienstleistungen zum Verkauf und/oder durch die Steuerung der Verteilung ihres Webseiteninhalts in der hier beschriebenen Art und Weise zumindest gegen Ansprüche 25, 26, 27, 29, 30, 32, 34-36, und 166 des '420 Patents verstoßen. Die Patentverletzung besteht im Wortlaut und/oder im Äquivalenzbereich und die Beklagte haftet für ihre Verletzung des '420 Patents gemäß 35 U.S.C. § 271.

70.       Anspruch 166 bezieht sich beispielsweise auf „ein System bestehend aus Hardware, einschließlich zumindest eines Prozessors, und Software in Verbindung mit der besagten Hardware". Nach bestem Wissen und Gewissen hat die Beklagte die Verteilung ihres Webseiteninhalts über Systeme gesteuert, die Hardware mit einem Prozessor, wie beispielsweise ihre Produktionsserver und Ursprungsserver, Zwischenspeicher-Server und Endpunkt-Caches umfassten; und Software in Verbindung mit solcher Hardware, einschließlich „Ruby on Rails", die zur Erstellung ihrer Webseiten verwendet wurde, Software, die zur Implementierung des HTTP-Web-Protokolls verwendet wurde und die von den Amazon S3-Host-Servern verwendete Software, die die Beklagte zur Weiterleitung ihres Inhalts verwendet hat.

71.       Anspruch 166 schildert dann, dass „(A) für ein bestimmtes Datenelement in einer Reihe von Datenelementen das besagte bestimmte Datenelement eine entsprechende Bitfolge enthält". Nach bestem Wissen und Gewissen hat das System der Beklagten die Verteilung von Asset-Dateien und Index-Dateien gesteuert, die zur Bereitstellung ihrer Webseiten erforderlich sind und bestimmte Datenelemente darstellen, wobei jede dieser Dateien eine entsprechende Bitfolge enthält.

72.      Anspruch 166 schildert dann „(a1) die Festlegung einer oder mehrerer inhaltsabhängiger digitaler Kennungen für das bestimmte Datenelement, wobei jede inhaltsabhängige digitale Kennung zumindest zum Teil auf einer bestimmten Funktion von zumindest einigen der Bits in der bestimmten Bitfolge des bestimmten Datenelements basiert und zwei identische Datenelemente die gleichen digitalen Kennungen aufweisen, wie mittels der besagten bestimmten Funktion festgelegt". Nach bestem Wissen und Gewissen hat das System der Beklagten Hash-Funktionen auf jede der Webseitendateien der Beklagten auf alle Bits des Dateiinhalts angewendet, um sowohl einen Fingerabdruck als auch ein ETag für den Inhalt der Datei festzulegen; wobei zwei identische Datenelemente die gleichen ETag- und Fingerabdruckwerte aufweisen. Nach bestem Wissen und Gewissen war der Fingerabdruck in dem URI der Datei enthalten und der ETag-Wert mit dem URI der Datei verbunden.

73.      Anspruch 166 schildert dann die „(a2) selektive Berechtigung, ein bestimmtes Datenelement zur Bereitstellung an bzw. dem Zugriff durch oder von zumindest einigen Computern in einem Netzwerk von Computern zugänglich zu machen, wobei das Datenelement nicht ohne Genehmigung für den Zugriff verfügbar zu machen oder bereitzustellen ist, was zumindest zum Teil basierend darauf gelöst wurde, ob zumindest eine der besagten einen oder mehreren inhaltsbasierten digitalen Kennungen für das besagte bestimmte Datenelement mit einem Eintrag in einer oder mehreren Datenbanken übereinstimmt, wobei jede der besagten einen oder mehreren Datenbanken eine Vielzahl von Kennungen enthält, jede der besagten Kennungen in jeder der besagten Datenbanken mindestens einem Datenelement von einer Vielzahl von Datenelementen entspricht und die Kennung in jeder der besagten Datenbanken zumindest zum Teil auf zumindest einigen der Daten in einem entsprechenden Datenelement basiert".

74.      Nach bestem Wissen und Gewissen umfasste das System der Beklagten einen oder mehrere Webseiten-Server mit Datenbanken, die mit den verschiedenen URIs für alle für die Wiedergabe ihrer Webseiten erforderlichen Asset- und Index-Dateien verbundene ETag-Werte enthielten; des Weiteren umfasste das System der Beklagten ein System von bedingten GET-Anfragen mit „If-None-Match"-Headers und HTTP-304- und HTTP-200-Meldungen, die die ETags enthielten, wie oben näher ausgeführt, um sicherzustellen, dass nachgeschaltete Caches nur auf autorisierten Dateiinhalt zugreifen, um diesen Dateiinhalt entweder an weitere Nachschaltungen weiterzuleiten oder für die Bereitstellung der Webseiten der Beklagten zu verwenden. Nach bestem Wissen und Gewissen hat das System insbesondere, wie oben ausführlicher beschrieben, das durch eine bedingte GET-Anfrage erhaltene ETag mit den ETags

in der Datenbank verglichen, um selektiv zu ermitteln, ob der anfragende Computer auf den bereits
darin vorliegenden Dateiinhalt zugreifen konnte oder auf neu erhaltenen autorisierten Inhalt
zugreifen musste.

75.     Die Patentverletzungshandlungen der Beklagten haben Schaden für PersonalWeb
verursacht und PersonalWeb ist berechtigt, von der Beklagten Schadensersatz als Folge der
unrechtmäßigen Handlungen der Beklagten in einem vor Gericht nachzuweisenden Betrag
einzufordern.

### KLAGEANTRAG

WESWEGEN die Klägerin PersonalWeb eine gerichtliche Entscheidung zu ihren Gunsten
gegen die Beklagte aus folgenden Gründen beantragt:

a)     Erklärung, dass die Beklagte die US-Patente mit der Nummer 6,928,442, 7,802,310,
7,945,544 und 8,099,420 wie in dieser Klage dargelegt verletzt hat;

b)     Gewährung von Schadenersatz für den sich aus der Patentverletzung der Beklagten
in Bezug auf die US-Patente mit der Nummer 6,928,442, 7,802,310, 7,945,544 und 8,099,420
ergebenden Schaden sowie Zinsen für die Zeit vor und nach dem Urteil in einem dem Nachweis
entsprechenden Betrag;

c)     Zuerkennung der Anwaltskosten gemäß 35 U.S.C. § 285 oder wie anderweitig
gesetzlich zulässig; und

d)     anderer entstandener Kosten sowie sonstige weitere Rechtsmittel und Verfügungen, die
das Gericht als fair und angemessen erachtet.

Datum: 29.5.2018                              Hochachtungsvoll,

                                             /s/ Catherine Bartles
                                             Catherine Bartles
                                             Anwaltskammer Nr. 24104849
                                             Stafford Davis
                                             Anwaltskammer Nr. 24054605
                                             THE STAFFORD DAVIS FIRM, PC
                                             The People's Petroleum Building

                                             102 North College Avenue, 13th
                                             Floor Tyler, Texas 75702
                                             (903) 593-7000
                                             cbartles@stafforddavisfirm.com

                                             STUBBS ALDERTON

- 22 -

& MARKILES, LLP
Michael A. Sherman
Jeffrey F. Gersh
Wesley W. Monroe
Viviana Boero
Hedrick

15260 Ventura Blvd., 20th
Floor Sherman Oaks, CA 91203
(818) 444-4500
masherman@stubbsalderton.com
jgersh@stubbsalderton.com
wmonroe@stubbsalderton.com
vhedrick@stubbsalderton.com

Sandeep Seth
Anwaltskammer Texas Nr. 18043000
SETHLAW
Two Allen Center
1200 Smith Street, Suite 1600
Houston, Texas 77002
(713) 244-5017
ss@sethlaw.com

David D. Wier, IV
Vice President and Asst. General
Counsel Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021
(720) 888-3539
david.wier@level3.com

\

Fall: 4:18-cv-00046 Dokument 3 Eingereicht am 18.1.2018 Seite 1 von 3 Seiten-ID#: 332

## BEIM US-BEZIRKSGERICHT FÜR DEN ÖSTLICHEN BEZIRK VON TEXAS DIVISION SHERMAN

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, eine Gesellschaft mit beschränkter Haftung nach texanischem Recht, und LEVEL 3 COMMUNICATIONS, LLC, eine Gesellschaft mit beschränkter Haftung nach dem Recht des Bundesstaats Delaware, | ZIVILKLAGE NR. 4:18-CV-46 |
| Kläger, | |
| ./. | **GESCHWORENENVERHANDLU BEANTRAGT** |
| LESSON NINE GMBH, eine Gesellschaft mit beschränkter Haftung nach deutschem Recht, | |
| Beklagte | |

## OFFENLEGUNGSERKLÄRUNG DER KLÄGERIN PERSONAL WEB TECHNOLOGIES LLC NACH REGEL 7.1

Nach Regel 7.1 der Federal Rules of Civil Procedure erklärt die Klägerin PersonalWeb Technologies, LLC, dass sie keine Muttergesellschaft hat und dass keine börsennotierte Gesellschaft 10 % oder mehr ihrer Anteile besitzt.

LEVEL 3 COMMUNICATIONS, LLC                    KLÄGERIN
Gesellschaft mit beschränkter Haftung
nach dem Recht des Bundesstaats Delaware

    Level 3 Financing, Inc.                          Muttergesellschaft

    CenturyLink, Inc.                              Holdinggesellschaft (börsennotiert)

Datum: 18. Januar 2018                    Hochachtungsvoll eingereicht,
                                          /Unterschrift/ *Stafford Davis*
                                          Stafford Davis
                                          The Stafford Davis Firm, P.C.
                                          Anwaltskammer Texas Nr. 24054605
                                          The Stafford Davis Firm, P.C.
                                          The People's Petroleum Building
                                          102 North College Avenue, 13th Fl.
                                          Tyler, TX 75702
                                          Tel: (903) 593-7000
                                          Fax: (903) 705-7369
                                          E-Mail: sdavis@stafforddavisfirm.com
                                          IP LAW GROUP, LLP

Michael A. Sherman (Zulassungsantrag einzureichen)
Jeffrey F. Gersh (Zulassungsantrag einzureichen)
Wesley W. Monroe (Zulassungsantrag einzureichen)
15030 Ventura Blvd., #166
Sherman Oaks, CA 91403
Telefon: (818) 444-9270
michaelsherman@iplawllp.com
jeffgersh@iplawllp.com
wesleymonroe@iplawllp.com

Sandeep Seth
Anwaltskammer Texas Nr. 18043000
SETHLAW
Two Allen Center
1200 Smith Street, Suite 1600
Houston, Texas 77002
Telefon: (713) 244-5017
ss@sethlaw.com

David D. Wier, IV
Vizepräsident und
Stellvertretender Leiter der Rechtsabteilung
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021
Telefon: (720) 888-3539
david.wier@level3.com

## ZUSTELLUNGSBESCHEINIGUNG

Ich bescheinige hiermit, dass ich am 18. Januar 2018 das/die oben genannte(n) Dokument(e) beim Urkundsbeamten des Gerichts mittels CM/ECF eingereicht habe, wodurch eine elektronische Mitteilung über diese Einreichung(en) automatisch an alle eingetragenen Rechtsbeistände ergeht.

*/Unterschrift/ Stafford Davis*

Stafford Davis

Fall: 4:18-cv-00046-ALM Dokument 11 Eingereicht am 30.5.2018 Seite 1 von 2 Seiten-ID#: 401

AO 440 (Überarbeitet 06/12) Vorladung in Zivilklage

## BEZIRKSGERICHT DER VEREINIGTEN STAATEN
### für den östlichen Bezirk von Texas

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, eine Kapitalgesellschaft nach texanischem Recht, und LEVEL 3 COMMUNICATIONS, LLC, eine Kapitalgesellschaft nach dem Recht des Bundesstaats Delaware, <br><br> *Kläger,* <br><br> ./. <br><br> LESSON NINE GMBH, eine Gesellschaft mit beschränkter Haftung nach deutschem Recht, <br><br> *Beklagte* | Zivilklage NR. 4:18-CV-00046-ALM |

### VORLADUNG IN EINER ZIVILKLAGE
#### NACH ERSTER ABGEÄNDERTER KLAGESCHRIFT

An: *(Name und Adresse des Beklagten)*

> LESSON NINE GMBH
> Max-Beer-Str. 2
> 10119 Berlin
> Deutschland

Es wurde eine Klage gegen Sie eingereicht.
Innerhalb von 21 Tagen nach Zustellung dieser Vorladung (Tag des Erhalts ausgeschlossen) bzw. innerhalb von 60 Tagen, falls Sie die Vereinigten Staaten bzw. eine Behörde der Vereinigten Staaten oder ein Beamter bzw. Angestellter der Vereinigten Staaten im Sinne von Fed. R. Civ. P. 12 (a)(2) oder (3) sind, müssen Sie dem Kläger eine Klageerwiderung auf die angehängte Klageschrift bzw. den angehängten Antrag gemäß Rule 12 der Federal Rules of Civil Procedure zustellen. Die Klageerwiderung bzw. der Antrag muss dem Kläger oder dem Anwalt des Klägers zugestellt werden, dessen Name und Adresse wie folgt lauten:

> Michael A. Sherman, Esq.
> Stubbs Alderton & Markiles, LLP
> 15260 Ventura Blvd., 20th Floor
> Sherman Oaks, CA 91403
> Telefon (818) 444-4500

Sollten Sie es versäumen, die vorliegende Klage zu beantworten, wird gegen Sie ein Säumnisurteil für die in der Klage ersuchten Rechtsmittel ergehen. Sie müssen Ihre Erwiderung bzw. Ihren Antrag auch beim Gericht einreichen.

| | |
|---|---|
| *(Siegel)* | *URKUNDSBEAMTER* |
| Datum: 30.5.2018 | (Unterschrift) |
| | *Unterschrift des Urkundsbeamten bzw. stellvertretenden Urkundsbeamten* |

Fall: 4:18-cv-00046-ALM Dokument 11 Eingereicht am 30.5.2018 Seite 2 von 2 Seiten-ID#: 402

AO 440 (Überarbeitet 06/12) Vorladung in Zivilklage (Seite 2)
Zivilklage Nr. 4:18-cv-46

## ZUSTELLUNGSBESTÄTIGUNG
*(Dieser Teil ist nicht beim Gericht einzureichen, außer soweit von Fed. R. Civ. P. 4 (1) vorgesehen)*

Diese Vorladung für *(Name und ggf. Titel der Einzelperson)* _____
erhielt ich persönlich am *(Datum)* _____.

☐   Ich habe die Vorladung der Einzelperson persönlich in *(Ort)* _____
_____ am *(Datum)* _____ zugestellt; oder

☐   Ich habe die Vorladung am Wohnsitz bzw. üblichen Aufenthaltsort der Einzelperson folgender
Person *(Name)* _____ übergeben. Bei besagter Person handelt
es sich um eine volljährige, kompetente Person, die an besagter Adresse wohnhaft ist. Die Übergabe fand
am *(Datum)* _____ statt und ich habe eine Kopie an die letzte bekannte Adresse der
Einzelperson gesandt; oder

☐   Ich habe die Vorladung *(Name der Einzelperson)* _____
_____ zugestellt. Besagte Person ist kraft Gesetz dazu berechtigt, gerichtliche
Zustellungen im Auftrag von *(Name der Organisation)* anzunehmen. Die Zustellung fand am *(Datum)* ___
_____ statt; oder

☐   Ich bringe die Vorladung ohne Unterschrift zurück, da _____; oder

☐   Sonstige *(Bitte angeben)*:

Meine Gebühren betragen $____ für Reisekosten sowie $_____ für Dienstleistungen, insgesamt: $ 0.00.

Ich erkläre an Eides statt, dass die hierin gemachten Angaben wahrheitsgemäß sind.

Datum:                                     *Unterschrift des Zustellers*

                                           *Name und Titel in Druckbuchstaben*

                                           *Adresse des Zustellers*

Zusätzliche Informationen zum Zustellungsversuch etc.:

Fall: 4:18-cv-00046 Dokument 2 Eingereicht am 18.1.2018 Seite 1 von 1 Seiten-ID#: 331

AO 120 (Überarbeitet 08/10)

| AN:<br><br>**Mail Stop 8**<br>**Director of the U.S. Patent and Trademark**<br>**Office (Leiter des US-Patentamts)**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **MELDUNG ÜBER DIE EINREICHUNG**<br>**ODER DEN ENTSCHEID EINER KLAGE**<br>**BZGL. EINES PATENTS ODER**<br>**WARENZEICHENS** |
|---|---|

In Übereinstimmung mit 35 U.S.C. § 290 und/oder 15 U.S.C. § 1116 wird Ihnen hiermit mitgeteilt, dass eine gerichtliche Klage beim US-Bezirksgericht Östlicher Bezirk von Texas in Bezug auf die folgenden

☐Markenzeichen oder ☑Patente eingereicht wurde. (☐Die Patentklage bezieht sich auf 35 U.S.C. § 292.):

| AKTENZEICHEN<br>4:18-CV-46 | EINGEREICHT AM:<br>17.1.2018 | US-BEZIRKSGERICHT:<br>Östlicher Bezirk von Texas |
|---|---|---|
| KLÄGER(IN)<br>PERSONALWEB TECHNOLOGIES, LLC und<br>LEVEL 3 COMMUNICATIONS, LLC | | BEKLAGTE(R)<br>LESSON NINE GMBH, eine Gesellschaft mit<br>beschränkter Haftung nach deutschem Recht |
| PATENT- ODER<br>MARKENZEICHENNR. | DATUM DES PATENTS<br>ODER MARKENZEICHENS | INHABER DES PATENTS ODER<br>MARKENZEICHENS |
| 1 US5978791 | 2.11.1999 | PersonalWeb Technologies, LLC/<br>Level 3 Communications, LLC |
| 2 US6928442 | 9.8.2005 | PersonalWeb Technologies, LLC/<br>Level 3 Communications, LLC |
| 3 US7802310 | 21.9.2010 | PersonalWeb Technologies, LLC/<br>Level 3 Communications, LLC |
| 4 US8099420 | 17.1.2012 | PersonalWeb Technologies, LLC/<br>Level 3 Communications, LLC |
| 5 US7945544 | 17.5.2011 | PersonalWeb Technologies, LLC/<br>Level 3 Communications, LLC |

Im oben genannten Fall wurden das/die folgende(n) Patent(e)/Markenzeichen mit einbezogen:

| EINBEZOGEN AM: | EINBEZOGEN PER:<br>☐Abänderung ☐Klageantwort ☐Gegenantrag ☐Anderer Schriftsatz | |
|---|---|---|
| PATENT- ODER<br>MARKENZEICHENNR. | DATUM DES PATENTS ODER<br>MARKENZEICHENS | INHABER DES PATENTS<br>ODER MARKENZEICHENS |
| 1 | Format T/M/JJJJ | |
| 2 | Format T/M/JJJJ | |
| 3 | Format T/M/JJJJ | |
| 4 | Format T/M/JJJJ | |
| 5 | Format T/M/JJJJ | |

Im oben genannten Fall wurde der folgende Beschluss oder das folgende Urteil gefällt:

| BESCHLUSS/URTEIL |
|---|
| |

| URKUNDSBEAMTER | (DURCH) STELLV.<br>URKUNDSBEAMTEN | DATUM |
|---|---|---|

Exemplar 1—Bei Einleitung der Klage, dieses Exemplar an den Leiter senden
Exemplar 2—Bei Einreichung von Dokumenten, durch die (ein) zusätzliche(s) Patent(e) hinzugefügt werden, dieses Exemplar an den Leiter senden
Exemplar 3—Bei Abschluss der Klage, dieses Exemplar an den Leiter senden
Exemplar 4—Exemplar für die Fallakte

Drucken    Speichern als...                                                                                     Neu einstellen

BEIM US-BEZIRKSGERICHT FÜR DEN ÖSTLICHEN BEZIRK VON TEXAS
DIVISION SHERMAN

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, eine Gesellschaft mit beschränkter Haftung nach texanischem Recht, und LEVEL 3 COMMUNICATIONS, LLC, eine Gesellschaft mit beschränkter Haftung nach dem Recht des Bundesstaats Delaware, <br><br> Kläger, <br><br> ./. <br><br> LESSON NINE GMBH, eine Gesellschaft mit beschränkter Haftung nach deutschem Recht, <br><br> Beklagte | ZIVILKLAGE NR. 4:18-CV-46 <br><br><br> **GESCHWORENENVERHANDLUNG BEANTRAGT** |

## ANTRAG AUF GESCHWORENENVERHANDLUNG

Nach Fed. R. Civ. P. 38(b) und Local Rule CV-38 beantragt die Klägerin PersonalWeb Technologies, LLC hiermit eine Geschworenenverhandlung für alle in dieser Klage verhandelbare Ansprüche.

Datum: 18. Januar 2018

Hochachtungsvoll eingereicht,
/Unterschrift/ *Stafford Davis*
Stafford Davis
The Stafford Davis Firm, P.C.
Anwaltskammer Texas Nr. 24054605
The Stafford Davis Firm, P.C.
The People's Petroleum Building
102 North College Avenue, 13th Fl.
Tyler, TX 75702
Tel: (903) 593-7000
Fax: (903) 705-7369
E-Mail: sdavis@stafforddavisfirm.com

IP LAW GROUP, LLP
Michael A. Sherman (Zulassungsantrag einzureichen)
Jeffrey F. Gersh (Zulassungsantrag einzureichen)
Wesley W. Monroe (Zulassungsantrag einzureichen)
15030 Ventura Blvd., #166
Sherman Oaks, CA 91403
Telefon: (818) 444-9270

michaelsherman@iplawllp.com
jeffgersh@iplawllp.com
wesleymonroe@iplawllp.com

Sandeep Seth
Anwaltskammer Texas Nr. 18043000
SETHLAW
Two Allen Center
1200 Smith Street, Suite 1600
Houston, Texas 77002
Telefon: (713) 244-5017
ss@sethlaw.com

David D. Wier, IV
Vizepräsident und
Stellvertretender Leiter der Rechtsabteilung
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021
Telefon: (720) 888-3539
david.wier@level3.com

Fall: 4:18-cv-00046 Dokument 4 Eingereicht am 18.1.2018 Seite 3 von 3 Seiten-ID#: 337

## ZUSTELLUNGSBESCHEINIGUNG

Ich bescheinige hiermit, dass ich am 18. Januar 2018 das/die oben genannte(n) Dokument(e) beim Urkundsbeamten des Gerichts mittels CM/ECF eingereicht habe, wodurch eine elektronische Mitteilung über diese Einreichung(en) automatisch an alle eingetragenen Rechtsbeistände ergeht.

*/Unterschrift/ Stafford Davis*

Stafford Davis

3

Fall: 4:18-cv-00046 Dokument 1-6 Eingereicht am 17.1.2018 Seite 1 von 2 Seiten-ID#: 329

JS 44 (Überarbeitet 12/07)

## DECKBLATT FÜR ZIVILKLAGEN

Das JS 44 Deckblatt für Zivilklagen sowie die darin enthaltenen Informationen sollen das Einreichen und die Zustellung von Klagegesuchen und anderen gesetzlich vorgeschriebenen Dokumenten in keiner Weise ersetzen oder ergänzen, außer dies wird von örtlichen Regelungen des Gerichts so vorgesehen. Dieses von der Judicial Conference of the United States im September 1974 zugelassene Formular ist für den Gebrauch durch den Urkundsbeamten vorgesehen, und zwar mit dem Zweck der Erstellung eines Prozesslistenblattes. (SIEHE ANLEITUNG AUF DER RÜCKSEITE DIESES FORMULARS).

| I. (a) KLÄGER PERSONALWEB TECHNOLOGIES, LLC, eine Gesellschaft mit beschränkter Haftung nach texanischem Recht, und LEVEL 3 COMMUNICATIONS, LLC, eine Gesellschaft mit beschränkter Haftung nach dem Recht des Bundesstaats Delaware | BEKLAGTE LESSON NINE GMBH, eine Gesellschaft mit beschränkter Haftung nach deutschem Recht |
|---|---|
| (b) Landkreis des Wohnsitzes des erstgenannten Klägers: Smith (MIT AUSNAHME VON FÄLLEN, IN DENEN DIE USA KLÄGERIN IST) | Landkreis des Wohnsitzes des erstgenannten Beklagten (NUR BEI US-KLÄGERN) HINWEIS: BEI ENTEIGNUNGSKLAGEN ORT DER BETROFFENEN PARZELLE ANGEBEN |
| (c) Anwälte (Name der Kanzlei, Adresse, Telefonnummer) Stafford Davis, The Stafford Davis Firm, P.C., The People's Petroleum Building, 102 North College Avenue. 13th Floor, Tyler, TX 755702; (903) 593-7000 | Anwälte (falls bekannt) |

### II. GRUNDLAGE FÜR GERICHTLICHE ZUSTÄNDIGKEIT
(Bitte nur ein Kästchen ankreuzen)

__ 1. US-Regierung als Klägerin

__ 2. US-Regierung als Beklagte

X 3. Bundesstaatliche Sache (US-Regierung ist keine Partei in der Klage)

__ 4. Verschiedene Staatsangehörigkeiten (Staatsangehörigkeit der Parteien in III angeben)

### III. STAATSANGEHÖRIGKEIT DER HAUPTPARTEIEN
(Bitte eine Kästchen für den Kläger, ein Kästchen für den Beklagten ankreuzen) (Nur für Fälle mit verschiedenen Staatsangehörigkeiten)

| | Kläger | Beklagter | | Kläger | Beklagter |
|---|---|---|---|---|---|
| Staatsangehöriger dieses Staats | 1 | 1 | Gesellschaft mit Sitz in diesem Staat | 4 | 4 |
| Staatsangehöriger eines anderen Staats | 2 | 2 | Gesellschaft mit Sitz in einem anderen Staat | 5 | 5 |
| Staatsangehöriger eines Auslandsstaats | 3 | 3 | Ausländischer Staat | 6 | 6 |

### IV. VERFAHRENSTYP (Nur ein Kästchen ankreuzen)

**VERTRAGSRECHT**
- ☐110 Versicherung
- ☐120 Schifffahrt
- ☐130 Miller Act
- ☐Verhandelbares Instrument
- ☐150 Rückerstattung Vertragssumme und Urteilsvollstreckung
- ☐151 Medicare Act
- ☐152 Erstattung von säumigen Studentendarlehen (Veteranen ausgeschlossen)
- ☐153 Erstattung von Überbezahlung bei Veteranenleistungen
- ☐160 Klagen von Anteilseignern
- ☐190 Andere Verträge
- ☐195 Produkthaftbarkeit
- ☐196 Franchise

**IMMOBILIEN**
- ☐210 Enteignung
- ☐220 Zwangsvollstreckung
- ☐230 Vermietung und Herausgabeklage
- ☐240 Grundstücksbezogene unerlaubte Handlung
- ☐245 Produkthaftung aus unerlaubter Handlung
- ☐290 Andere Immobiliensachen

**SCHADENSERSATZ**

PERSONENSCHADEN
- ☐310 Flugzeug
- ☐315 Flugzeug Produkthaftbarkeit
- ☐320 Überfall, üble Nachrede und Verleumdung
- ☐330 Beamtenhaftbarkeit
- ☐340 Schifffahrt
- ☐345 Schifffahrt Produkthaftbarkeit
- ☐350 Kraftfahrzeug
- ☐355 Kraftfahrzeug Produkthaftbarkeit
- ☐360 Sonstige Personenschaden

BÜRGERRECHTE
- ☐441 Wahlen
- ☐442 Arbeitsplatz
- ☐443 Unterkunft
- ☐444 Sozialhilfe
- ☐445 Behinderungen – Anstellung
- ☐446 Behinderungen Sonstige
- ☐440 Andere Bürgerrechte

PERSONEN-SCHADEN
- ☐362 Personenschaden – Ärztlicher Kunstfehler
- ☐365 Personenschaden – Produkthaftbarkeit
- ☐368 Asbest Personenschaden Produkthaftbarkeit

SACHBESITZ
- ☐370 Anderer Betrug
- ☐371 Truth-in-Lending
- ☐380 Anderer persönlicher Sachschaden
- ☐385 Sachschaden Produkthaftbarkeit

ANTRÄGE VON HÄFTLINGEN
- ☐510 Antrag auf Aufhebung der Verurteilung Habeas Corpus
- ☐530 Allgemein
- ☐535 Todesstrafe
- ☐540 Mandamus & andere
- ☐550 Bürgerrechte
- ☐555 Haftbedingungen

**BESCHLAGNAHME/SANKTION**
- ☐610 Landwirtschaft
- ☐620 Sonstige Lebensmittel und Arzneien
- ☐625 Beschlagnahme im Zusammenhang mit Drogen 21 USC 881
- ☐630 Alkoholgesetze
- ☐640 Eisenbahn & Lkw
- ☐650 Flugliniereng
- ☐660 Sicherheit/ Gesundheit am Arbeitsplatz
- ☐690 Sonstige

ARBEITSRECHT
- ☐710 Fair Labor Standards Act
- ☐720 Arbeitnehmer-/Arbeitgeberbeziehung
- ☐710 Labor/Mgmt. Reporting & Disclosure Act
- ☐740 Railway Labor Act Act
- ☐790 Sonstige arbeitsrechtliche Klagen
- ☐791 Employee Retirement Income Security Act

EINWANDERUNG
- ☐462 Einbürgerungsantrag
- ☐463 Habeas Corpus – Ausländische Häftlinge
- ☐465 Sonstige Einwanderungsklagen

**KONKURS**
- ☐422 Berufung 28 USC 158
- ☐423 Zurückziehung 28 USC 157

EIGENTUMS-RECHTE
- ☐820 Urheberrecht
- ☒830 Patent
- ☐840 Handelszeichen

SOZIAL-VERSICHERUNG
- ☐861 HIA (1385ff)
- ☐862 Schwarze Lunge (923)
- ☐863 DIWC/DIWW (405(g))
- ☐864 SSID Title XVI
- ☐865 RSI (405(g))

STAATLICHE STEUERN
- ☐870 Steuern (US-Kläger oder Beklagter)
- ☐871 Finanzamt – Drittpartei 26 USC 7609

**SONSTIGE GESETZE**
- ☐400 Staatliche Umverteilung
- ☐410 Kartellgesetz
- ☐430 Banken und Bankwesen
- ☐450 Handel
- ☐460 Abschiebung
- ☐470 Organisierte Wirtschaftskriminalität
- ☐480 Verbraucherkredit
- ☐490 Kabel- und Satellitenfernsehen
- ☐810 Selektiver Service
- ☐850 Börsenhandel
- ☐875 Verbraucherbeschwerden 12 USC 3410
- ☐890 Sonstige gesetzliche Maßnahmen
- ☐891 Landwirtschaft
- ☐892 Economic Stabilization Act
- ☐893 Umwelt
- ☐894 Energy Allocation Act
- ☐895 Informationsfreiheit
- ☐900 Berufung gegen Gebührenfestsetzung unter Gleichstellung gegenüber Gerichtbarkeit
- ☐950 Verfassungsgemäßheit von Staatsgesetzen

### V. HERKUNFT (Bitte nur ein Kästchen ankreuzen)
☒ 1. Erstverfahren  ☐2. Vom staatlichen Gericht weitergeleitet ☐3. Vom Berufungsgericht weitergeleitet ☐4. Wiedereröffnet ☐5. Von einem anderen Bezirk weitergeleitet (angeben)  ☐6. Multi-Bezirksverfahren ☐7. Anrufung des Bezirksrichters vonseiten des Magistratsgerichts

VI. KLAGEGRUND Geben Sie das US-Zivilgesetz an, unter dem Sie Klage einreichen. (Keine Gerichtsbarkeitsstatuten angeben, es sei denn, es handelt sich um einen Fall mit verschiedenen Staatsangehörigkeiten: 35 U.S.C. Section 271 et seq. Kurzbeschreibung des Klagegrunds: Patentverletzung

VII. KLAGEGESUCH: ☐BITTE ANKREUZEN FALLS SAMMELKLAGE UNTER F.R.C.P. 23    FORDERUNG: $
Nur JA ANKREUZEN, falls dies in der Klage gefordert wird: GESCHWORENENVERHANDLUNG ☒Ja ☐Nein

VIII. VERWANDTE(R) FALL/FÄLLE, falls zutreffend: (Anleitung beachten)     RICHTER:       AKTENZEICHEN:
Verwandte Fälle werden zeitgleich mit diesem eingereicht
DATUM: 17. Januar 2018     UNTERSCHRIFT DES PROZESSBEVOLLMÄCHTIGTEN: (Unterschrift) Stafford Davis

NUR FÜR INTERNEN GEBRAUCH     BELEG   BETRAG     IHP ANTRAG   RICHTER   MAGISTRATSRICHTER
Drucken     Speichern als     Als PDF exportieren     Drucken     Neu einstellen

### ANLEITUNG FÜR ANWÄLTE, DIE DAS JS 44 DECKBLATT FÜR ZIVILKLAGEN AUSFÜLLEN

**Geltung des Deckblatts für Zivilklagen.** Das JS 44 Deckblatt für Zivilklagen und die darin enthaltenen Informationen sind weder ein Ersatz noch eine Ergänzung der Einreichungen und Zustellungen von Klageschriften und anderen gesetzlich vorgeschriebenen Dokumenten, insoweit dies nicht von den örtlich geltenden Gerichtsregeln (Local rules of court) vorgesehen ist. Dieses Formular, das von der Judicial Conference of the United States im September 1974 in seiner ursprünglichen Form genehmigt wurde, ist für den Urkundsbeamten notwendig, um die Zivilverfahrensakte anzulegen. Deshalb wird für jede eingereichte Zivilklage beim Urkundsbeamten ein Deckblatt für Zivilklagen eingereicht. Der Anwalt, der einen Fall einreicht, sollte das Formular wie folgt ausfüllen:

**I. a) Kläger-Beklagte.** Namen (Nachname, Vorname, Anfangsbuchstabe des weiteren Vornamens) des Klägers und Beklagten eintragen. Falls es sich beim Kläger oder beim Beklagten um eine Regierungsbehörde handelt, nennen Sie den vollen Namen oder benutzen Sie eine Standardabkürzung. Falls es sich beim Kläger oder beim Beklagten um einen Angestellten bzw. Beamten einer Regierungsbehörde handelt, geben Sie erst die Behörde und dann den Beamten mit Namen und Titel an.

b) Landkreis des Wohnsitzes. Für jede eingereichte Zivilklage, mit Ausnahme von Fällen, in denen die USA Klägerin ist, den Namen des Landkreises (County) eintragen, wo der/die erste Kläger/in zum Zeitpunkt der Einreichung wohnhaft ist. In Fällen, in denen die USA Klägerin ist, geben Sie den Namen des Landkreises an, in denen der/die erste aufgeführte Beklagte zum Zeitpunkt der Einreichung wohnhaft ist. (HINWEIS: Bei Grundbesitzfällen ist der Landkreis des „Beklagten" der Standort des strittigen Grundstücks.)

c) Anwälte. Den Unternehmensnamen, Adresse, Telefonnummer und zuständigen Anwalt eintragen. Bei mehreren Anwälten geben Sie diese in einem Anhang an und tragen Sie in diesem Abschnitt „(siehe Anhang)" ein.

**II. Gerichtsbarkeit.** Die Grundlage für die gerichtliche Zuständigkeit ist in der Zivilprozessordnung, Federal Rule of Civil Procedure 8(a) aufgeführt, die vorsieht, dass Gerichtsbarkeiten in Klageeinreichungen angezeigt werden. Kreuzen Sie eines der Kästchen an. Falls es mehr als eine Grundlage für die gerichtliche Zuständigkeit gibt, gilt die folgende Rangfolge.

US-Regierung als Klägerin. (1)  Die Gerichtsbarkeit basiert auf 28 U.S.C. §§ 1345 und 1348. Klagen von Behörden und Amtsträgern der Vereinigten Staaten gehören zu dieser Kategorie.

US-Regierung als Beklagte. (2) Falls der/die Kläger/in die Vereinigten Staaten, seine Amtsträger oder Behörden verklagt, bitte dieses Kästchen ankreuzen.

Bundesstaatliche Sache (US-Regierung ist keine Partei in der Klage). (3) Dies bezieht sich auf Klagen unter 28 U.S.C. §§ 1331, in denen sich die gerichtliche Zuständigkeit aus der Verfassung der Vereinigten Staaten ergibt, einem Nachtrag zu der Verfassung, einer Anordnung des Kongresses oder eines Abkommens der Vereinigten Staaten. In Fällen, in denen die USA eine Partei ist, gilt jeweils die Kategorie USA als Klägerin oder USA als Beklagte, und Kästchen 1 oder 2 sollten angekreuzt werden.

Verschiedene Staatsangehörigkeiten. (4) Dies bezieht sich auf Klagen unter 28 U.S.C. §§ 1332, in denen die Parteien Staatsbürger verschiedener Staaten sind. Wenn Kästchen 4 angekreuzt ist, muss die Staatsbürgerschaft der verschiedenen Parteien angekreuzt werden. (Siehe Abschnitt III unten, Klagen in bundesstaatlichen Sachen haben Vorrang vor Fällen mit verschiedenen Staatsangehörigkeiten.)

**III. Wohnsitz (Staatsbürgerschaft) der Hauptparteien.** Dieser Abschnitt des JS 44 muss ausgefüllt werden, wenn oben verschiedene Staatsangehörigkeiten angegeben wurden.

**IV. Verfahrenstyp.** Kreuzen Sie das zutreffende Kästchen an. Wenn der Verfahrenstyp nicht ermittelt werden kann, stellen Sie sicher, dass der Klagegrund in Abschnitt VI ausreicht, um es dem Justizangestellten bzw. dem/den statistischen Mitarbeiter/in der Verwaltungsabteilung zu ermöglichen, den Verfahrenstyp festzulegen. Wenn der Klagegrund auf mehr als einen Verfahrenstyp passt, wählen Sie den definitivsten aus.

**V. Herkunft.** Kreuzen Sie eines der sieben Kästchen an.

Erstverfahren. (1) Fälle, die in den US-Amtsgerichten (District Courts) eingeleitet werden.

Vom staatlichen Gericht weitergeleitet. (2) Verfahren, die in einem staatlichen Gericht (State Court) eingeleitet werden, können unter Title 28 U.S.C § 1441 weitergeleitet werden. Wenn der Antrag auf Weiterleitung bewilligt wurde, kreuzen Sie dieses Kästchen an.

Vom Berufungsgericht weitergeleitet. (3) Kreuzen Sie dieses Kästchen an, wenn ein Fall zur Weiterverhandlung an das Amtsgericht weitergeleitet wurde. Das Datum der Weiterleitung gilt als Einreichungsdatum.

Wiedereröffnet. (4) Kreuzen Sie dieses Kästchen an, wenn ein Fall im Amtsgericht wiedereröffnet wird. Das Datum der Wiedereröffnung gilt als Einreichungsdatum.

Von einem anderen Bezirk weitergeleitet. (5) Bei Fällen, die unter Title 28 U.S.C § 1404(a) weitergeleitet wurden. Nicht für Weiterleitungen innerhalb des Bezirks oder Multi-Bezirksverfahren verwenden.

Multi-Bezirksverfahren. (6) Kreuzen Sie dieses Kästchen an, wenn ein Multi-Bezirksverfahren in den Bezirk unter Title 28 U.S.C. § 1407 überwiesen wird. Wenn dieses Kästchen angekreuzt ist, (5) oben nicht ankreuzen.

Anrufung des Bezirksrichters vonseiten des Magistratsgerichts. (7) Dieses Kästchen ankreuzen bei Berufung eines Beschlusses eines Magistratsrichters.

**VI. Klagegrund.** Führen Sie das Zivilgesetz an, das sich direkt auf Ihren Klagegrund bezieht und beschreiben Sie letzteren kurz. **Geben Sie keine Gesetze an, die sich auf Gerichtsbarkeiten beziehen, es sei denn es liegen verschiedene Staatsangehörigkeiten vor.** Beispiel: U.S. Civil Statute 47 USC § 553. Kurzbeschreibung: Unbefugter Empfang von Kabelservice.

**VII. Klagegesuch.** Sammelklage. Kreuzen Sie dieses Kästchen an, wenn Sie eine Sammelklage unter Federal Rule of Civil Procedure 23 einreichen. Forderung. Geben Sie den Betrag in Dollar an, der gefordert wird, oder eine andere Forderung, z. B. eine einstweilige Verfügung. Antrag auf Geschworenenverhandlung: Kreuzen Sie das entsprechende Kästchen an, um anzuzeigen, ob eine Jury beantragt wird oder nicht.

**VIII. Verwandte Fälle.** Dieser Abschnitt des JS 44 wird dazu benutzt, anhängige verwandte Fälle zu finden, falls es zutreffend. Falls es verwandte anhängige Fälle gibt, tragen Sie den/die entsprechende/n Verfahrensnummer/n sowie den Namen des/der Richter ein.

**Datum und Unterschrift des Anwalts.** Das Deckblatt für Zivilklagen datieren und unterzeichnen.

Apparate-Nr.: siehe (ID)
Telefax: (030) 90 23 - 22 23

Postbank Berlin, Konto der Kosteneinziehungsstelle der
Justiz (KEJ), IBAN: DE20 1001 0010 0000 3521 08
BIC: PBNKDEFF
Zusatz bei Verwendungszweck: MI 70 AR I 209/18

Amtsgericht Mitte, Abt. 70, 10174 Berlin

Fahrverbindungen:
U-Bhf. Alexanderplatz (U2, U5, U8), S-Bhf. Alexanderplatz (S5,
S45, S75)
U-Bhf. Klosterstraße (U2)
Bus 100, 148, 200, TXL
Tram M4, M5, M6
(Diese Angaben sind unverbindlich)

Stubbs Alderton&Markiles, LLP Jeffrey F.
Gersh,Attorey at Law
15260 Ventura Blvd.,20 Floor
SHERMAN OAKS, CA
VEREINIGTE STAATEN

Öffnungszeiten der Geschäftsstelle:
Mo. bis Fr. von 9.00 - 13.00 Uhr

**Hinweis:**
**Elektronischer Übermittlungsweg www.berlin.de/erv**
**Hinweise zum Datenschutz unter**
**https://www.berlin.de/gerichte/amtsgericht-**
**mitte/datenschutzerklaerung.704912.php**
**Auf Anfrage erhalten Sie die Erklärungen per Post.**

| Geschäftszeichen | Ihr Zeichen | Bearbeiter/in | Erstellt am: 18.10.2018 | | |
|---|---|---|---|---|---|
| | | | Tel. | Fax | Datum |
| 70 AR I 209/18 | 818-444-4500 | | 1128 | 1169, 1248 | 18.10.2018 |

Sehr geehrte Damen und Herren,

In der Sache

Stubbs Alderton&Markiles, LLP Jeffrey F. Gersh,Attorey at Law ./. Lesson Nine GmbH

erhalten Sie beiliegende(s) Schriftstück(e).

Mit freundlichen Grüßen

Auf Anordnung
Ermel
Justizobersekretärin

Dieses Schreiben wurde mit Hilfe der Informationstechnik gefertigt und ist ohne Unterschrift gültig.

VERSAND

## C E R T I F I C A T E

## A T T E S T A T I O N

Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

☒  1. dass der Antrag erledigt worden ist *)
    that the document has been served *)
    que la demande a été exécutée *)

| - | am (Datum)<br>the (date)<br>le (date) | 28.09.2018 |
|---|---|---|
| - | in (Ort, Straße, Nummer)<br>at (place, street, number)<br>à (localité, rue, numéro) | 10119 Berlin, Max-Beer-Straße 2 |

| | - | in einer der folgenden Formen nach Artikel 5:<br>in one of the following methods authorised by article 5:<br>dans une des formes suivantes prévues à l'article 5: | |
|---|---|---|---|
| ☒ | a) | in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).<br>in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).<br>selon les formes légales (article 5, alinéa premier, lettre a) *). | |
| ☐ | b) | in der folgenden besonderen Form *):<br>in accordance with the following particular method *):<br>selon la forme particulière suivante *): | |
| ☐ | c) | durch einfache Übergabe *).<br>by delivery to the addressee, who accepted it voluntarily *).<br>par remise simple *). | |

Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

| (Name und Stellung der Person)<br>(identity and description of person)<br>(identité et qualité de la personne) | |
|---|---|
| Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum<br>Zustellungsempfänger:<br>relationship to the addressee (family, business or other):<br>liens de parenté, de subordination ou autres, avec le<br>destinataire de l'acte: | |

☐  2. dass der Antrag aus folgenden Gründen nicht erledigt werden konnte *):
    — that the document has not been served, by reason of the following facts *):
    — que la demande n'a pas été exécutée, en raison des faits suivants *):

☐  Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im
    einzelnen angegeben sind, zu zahlen oder zu erstatten *).
    In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses
    detailed in the attached statement *).
    Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure
    au mémoire ci-joint *).

Anlagen / Annexes / Annexes

| Zurückgesandte Schriftstücke:<br>Documents returned:<br>Pièces renvoyées: | **Zustellungszeugnis nebst Doppel des Antrages und Doppel der<br>zuzustellenden Schriftstücke** |
|---|---|
| Gegebenenfalls Erledigungsstücke:<br>In appropriate cases, documents establishing the service:<br>Le cas échéant, les documents justificatifs de l'exécution:<br><br>**AZ: 70 AR I 209/18** | Ausgefertigt in **10179 Berlin, Amtsgericht Mitte, Littenstraße 12-<br>17**       am **17.10.2018**<br>Done at<br>Fait à<br><br>Unterschrift und/oder Stempel.    Dietrich<br>Signature and/or stamp.      Rechtspflegerin<br>Signature et/ou cachet. |

*) Unzutreffendes streichen. / Delete if inappropriate. / Rayer les metions inutiles.



