1 J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
2 SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
3 TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
4 PHILLIP J. HAACK (CSB No. 262060)
phaack@fenwick.com
5 RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
6 CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
7 FENWICK & WEST LLP
Silicon Valley Center
8 801 California Street
Mountain View, CA  94041
9 Telephone:    650.988.8500
Facsimile:    650.938.5200
10
Counsel for AMAZON.COM, INC.
11 and AMAZON WEB SERVICES, INC.

12 UNITED STATES DISTRICT COURT

13 NORTHERN DISTRICT OF CALIFORNIA

14 SAN JOSE DIVISION

15

16 IN RE: PERSONAL WEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION

Case No. 5:18-md-02834-BLF

Case No.: 5:18-cv-00767-BLF

17 AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.,

18
Plaintiffs,
19 v.

20 PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,

21
22 Defendants.

23 PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,
24 Counterclaimants,
v.
25
AMAZON.COM, INC., and AMAZON WEB
26 SERVICES, INC.,

27
Counterdefendants.

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC. ON DECLARATORY JUDGMENT CLAIMS AND DEFENSES UNDER THE CLAIM PRECLUSION AND *KESSLER* DOCTRINES**

Date:        February 7, 2019
Time:        2:00 p.m.
Dept:        Courtroom 3, 5th Floor
Judge:       Hon. Beth L. Freeman
Trial Date:  March 16, 2020

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT-------------------------- 1

MEMORANDUM OF POINTS AND AUTHORITIES--------------------------------------- 1

I.      INTRODUCTION------------------------------------------------------------- 1

II.     FACTUAL BACKGROUND ------------------------------------------- 3

      A.     PersonalWeb asserts the same patents and accuses the same Amazon service that were adjudicated in the earlier Texas case ------------ 3

      B.     Amazon S3 operated the same way when the PersonalWeb patents expired as it did when final judgment was entered in the Texas case ------------------------------------------------------------- 4

III.    ARGUMENT ------------------------------------------------- 7

      A.     Claim preclusion bars PersonalWeb's claims in this case-------------------- 7

      B.     PersonalWeb's arguments to the contrary are meritless --------------------10

      C.     PersonalWeb's claims are independently barred under the *Kessler* doctrine.-----------------------------------------------------------15

CONCLUSION ------------------------------------------------------17

1

# TABLE OF AUTHORITIES

2 *Cases:* *Page(s):*

3

4 *Abbey v. Mercedes Benz of N. Am., Inc.*,
138 F. App'x 304 (Fed. Cir. 2005)------------------------------------------ 9

5 *Adaptix, Inc. v. Amazon.com, Inc.*,
No. 5:14-cv-01379-PSG, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015)---------------*passim*

6

7 *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012)---------------------------------------------- 10

8 *Beard v. Sheet Metal Workers Union, Local 150*,
908 F.2d 474 (9th Cir. 1990) ---------------------------------------------- 8

9

10 *Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014)------------------------------------------------*passim*

11 *Clements v. Airport Auth. of Washoe Cty.*,
69 F.3d 321 (9th Cir. 1995) ---------------------------------------------- 14

12

13 *Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ---------------------------------------------- 10

14

15 *D-Beam v. Roller Derby Skate Corp.*,
316 F. App'x 966 (Fed. Cir. 2008)---------------------------------------- 9

16

17 *Gilead Scis., Inc. v. Natco Pharm. Ltd.*,
753 F.3d 1208 (Fed. Cir. 2014)---------------------------------------- 11, 12

18 *Hallco Mfg. Co. v. Foster*,
256 F.3d 1290 (Fed. Cir. 2001)---------------------------------------------- 7

19

20 *In re Hubbell*,
709 F.3d 1140 (Fed. Cir. 2013)---------------------------------------------- 11

21 *Int'l Union of Operating Eng'rs v. Karr*,
994 F.2d 1426 (9th Cir. 1993) ---------------------------------------------- 7

22

23 *Kearns v. Gen. Motors Corp.*,
94 F.3d 1553 (Fed. Cir. 1996) ---------------------------------------------- 12

24

25 *Kessler v. Eldred*,
206 U.S. 285 (1907)------------------------------------------------------*passim*

26

27 *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
58 F.3d 616 (Fed. Cir. 1995) ---------------------------------------------- 14

28

*Molinaro v. Am. Tel. & Tel. Co.*,
 460 F. Supp. 673 (E.D. Pa. 1978), *aff'd*, 620 F.2d 288 (3rd Cir. 1980) ---------------------- 16

*Nystrom v. Trex Co.*,
 580 F.3d 1281 (Fed. Cir. 2009)------------------------------------------------------------------- 2, 14

*PersonalWeb Techs., LLC v. Amazon.com Inc.*,
 No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011)-------------------------------------------- 3

*Schnitger v. Canoga Elecs. Corp.*,
 462 F.2d 628 (9th Cir. 1972) ---------------------------------------------------------------------- 8

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
 531 U.S. 497 (2001)------------------------------------------------------------------------------ 10, 11

*SimpleAir, Inc. v. Google LLC*,
 884 F.3d 1160 (Fed. Cir. 2018)----------------------------------------------------------------- 11, 12

*SpeedTrack, Inc. v. Office Depot, Inc.*,
 No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014), *aff'd*, 791
 F.3d 1317 (Fed. Cir. 2015) -------------------------------------------------------------------------- 9

*SpeedTrack, Inc. v. Office Depot, Inc.*,
 791 F.3d 1317 (Fed. Cir. 2015)------------------------------------------------------------------- 2, 15

*Tech. Licensing Corp. v. Thomson, Inc.*,
 No. 2:03-1329 WBS PAN, 2010 WL 843560 (E.D. Cal. Mar. 10, 2010)---------------------- 8

*United States v. Tohono O'Odham Nation*,
 563 U.S. 307 (2011)------------------------------------------------------------------------------------ 12

*ViaTech Techs., Inc. v. Microsoft Corp.*,
 No. 17-570-RGA, 2018 WL 4126522 (D. Del. Aug. 28, 2018) -------------------------------- 14

*Young Eng'rs v. U.S. Int'l Trade Comm'n*,
 721 F. 2d 1305 (Fed. Cir. 1983)------------------------------------------------------------------- 10

*Other Authorities:*

Fed. R. Civ. P. 56 ---------------------------------------------------------------------------------------- 1

Fed.R. Civ. P. 41 ------------------------------------------------------------------------------------ 10, 11

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 7, 2019, at 2:00 p.m., at the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, in the courtroom of the Honorable Beth L. Freeman, Amazon.com, Inc., and Amazon Web Services, Inc. (collectively "Amazon") will and hereby do move the Court under Federal Rule of Civil Procedure 56 for an order rendering summary judgment in favor of Amazon and against PersonalWeb Technologies, LLC and Level 3 Communications, LLC (collectively "PersonalWeb"), declaring that PersonalWeb's infringement claims against Amazon and its customers are barred by the doctrine of claim preclusion and the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907).

PersonalWeb previously sued Amazon alleging infringement of the same patents at issue here based on the same technology at issue here. PersonalWeb voluntarily dismissed those claims with prejudice. Now, PersonalWeb seeks to exhume those claims and sue 85 Amazon customers, once again asserting the same patents against the same technology. This vexatious campaign violates both the law of claim preclusion and the *Kessler* doctrine, which together serve to protect prevailing patent defendants from having to defend the same technology in serial lawsuits asserting essentially the same claims.

Amazon bases its motion on this notice, the accompanying memorandum of points and authorities, the supporting declarations of Saina S. Shamilov, Dr. Prashant Shenoy, and Seth Markle, and all pleadings and documents on file in this action, and such other materials or argument as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

PersonalWeb sued Amazon and its customer Dropbox years ago in the Eastern District of Texas, alleging infringement of the same patents by the same technology: Amazon's Simple Storage Service or "S3." PersonalWeb lost—it recovered nothing and dismissed its claims with prejudice.

Since then, PersonalWeb's patents have expired and PersonalWeb has retained new counsel.  Recognizing that any claim involving S3 filed against Amazon proper would be barred by res judicata, PersonalWeb decided instead to bite from the other side of the same apple by suing 85 of Amazon's customers.

But those claims, too, are barred by settled law.  Res judicata, or claim preclusion, bars "the relitigation of a claim, or cause of action, or any possible defense to the cause of action which is ended by a judgment of the court." *Nystrom v. Trex Co.*, 580 F.3d 1281, 1284-85 (Fed. Cir. 2009). And the related *Kessler* doctrine "'bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent.'" *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015) (quoting *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987)).  Either way, "a party who obtains a final adjudication in its favor [enjoys] the right to have that which it lawfully produces freely bought and sold without restraint or interference." *Id.* (internal quotation and citation omitted).

PersonalWeb's attempt to relitigate old claims, now as part of a vastly expanded MDL proceeding, has already created the very harassment that res judicata and the *Kessler* doctrine are supposed to prevent.  "Claim preclusion exists to 'encourage[] reliance on judicial decisions, bar[] vexatious litigation, and free[] the courts to resolve other disputes." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  In a word, these bedrocks of basic judicial fairness preclude "do-over[s]"—exactly what PersonalWeb attempts here. *See id.*  And as the Supreme Court noted more than a century ago, the *Kessler* rule is a critical supplement to claim preclusion because even meritless suits against a prevailing party's customers can inflict real damage on the prevailing party: "No one wishes to buy anything if with it he must buy a law suit." *Kessler*, 206 U.S. at 289.  Amazon therefore requests that the Court grant Amazon summary judgment on its declaratory judgment claims and defenses under the rules of claim preclusion and the *Kessler* doctrine, and bar PersonalWeb from asserting any claim against Amazon or its customers that relates to the use or operation of S3—the very same technology that

PersonalWeb attacked, using the very same patents, in a prior lawsuit that ended in a final judgment on the merits.

## II.      FACTUAL BACKGROUND

### A.      PersonalWeb asserts the same patents and accuses the same Amazon service that were adjudicated in the earlier Texas case.

Seven years ago, PersonalWeb sued Amazon and its customer Dropbox in the Eastern District of Texas, alleging infringement of eight related patents by Amazon's S3 service. *PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011). PersonalWeb later amended its complaint to add Level 3 as a party. (Shamilov Decl., Ex. 1 (Amended TX Compl.).) After the court in Texas issued a claim construction order, PersonalWeb dismissed its claims with prejudice. (Shamilov Decl., Ex. 6 (Dismissal Stip).) The court entered final judgment against PersonalWeb in June 2014. (*Id.;* Shamilov Decl., Ex. 7 (Final Judgment).)

Almost four years later, PersonalWeb commenced this new litigation campaign. Starting in January 2018, PersonalWeb filed what would mushroom into 85 lawsuits against Amazon's customers and eventually would re-allege infringement even by Amazon itself. PersonalWeb's claims are not new; they are the very same claims under the very same patents against the very same technology. In Texas, PersonalWeb asserted eight patents:  Nos. 5,978,791 (the "'791 patent"), 6,415,280 (the "'280 patent"), 6,928,442 (the "'442 patent"), 7,802,310 (the "'310 patent"), 7,945,539, (the "'539 patent"), 7,945,544 (the "'544 patent"), 7,949,662 (the "'662 patent"), and 8,001,096 (the "'096 patent"). (Shamilov Decl., Ex. 1.) Four of those were asserted here:  the '791 patent, the '442 patent, the '310 patent, and the '544 patent. (Case No. 18-cv-767, Dkt. No. 36 ("DJ Compl.") ¶¶ 20-21; *id.*, Dkt. No. 62 ("Answer & Counterclaim"), Answer ¶¶ 20-21.) Although PersonalWeb eventually dropped the '791 patent from its current customer campaign, PersonalWeb continues to deny Amazon's pending declaratory judgment claim of non-infringement of that same patent. (DJ Compl. ¶¶ 49-56; Answer & Counterclaim, Answer ¶¶ 49-56.)

All of these claims—both old and new—are or were directed to S3. In Texas, PersonalWeb alleged that S3 infringed because of its use of something called ETags. (*See* Shamilov Decl., Ex. 9

at 34 (S3 infringes based on using "a digital identifier . . . (an 'ETag')"); *see also id.* at 44 ("S3 uses MD5 digest to calculate the etag for each object that is uploaded . . . ."); *id.* at 46 (S3 uses ETags "[w]hen doing GET, HEAD, PUT/COPY operation [sic] with conditional parameters").) ETags are, in essence, computer-generated fingerprints that tell client computers if a file requested from a remote server has changed or whether the client already has the current version, which, if so, would eliminate the need to download the file again, thereby saving bandwidth and other computing resources. Here, too, PersonalWeb accuses Amazon S3's generation and use of ETags. (*See, e.g.*, Case No. 18-md-2834, Dkt. No. 175 (Second Amended Airbnb Complaint) ¶ 41 (accusing "the S3 server" of infringing by "serv[ing] the S3 asset file with its associated ETag value to HTTP GET requests for the S3 asset file"); Case No. 18-cv-767, Dkt. No. 71 ¶¶ 35-48 (accusing ETags and conditional GET requests).)

The only difference between PersonalWeb's old and new claims is that PersonalWeb has added one other patent (from the same family) to this case, U.S. Patent No. 8,099,420 (the "'420 patent"). But that patent undeniably adds nothing as a factual matter, and thus makes no difference as a matter of law. That patent is a mere continuation of the twice-asserted '442 patent, claims priority to the same parent application as all of the other twice-asserted patents, shares the same specification with all of the other twice-asserted patents, and is limited by a terminal disclaimer because (according to both the Patent Office and PersonalWeb) the patent has essentially the same scope as the previously-asserted '280 patent. (Shamilov Decl., Exs. 2-5 (Asserted Patents), Ex. 13 (Terminal Disclaimer), Shenoy Decl. ¶¶ 17-43.) Especially notable, this additional patent issued before PersonalWeb amended its Texas complaint (Shamilov Decl., Ex. 5), which means PersonalWeb could have asserted this patent against Amazon and Dropbox in the prior case. Had it done so, the patent would have suffered the same fate precisely because it has the same scope as all of the other patents that were the subject of the Texas final judgment.

**B.     Amazon S3 operated the same way when the PersonalWeb patents expired as it did when final judgment was entered in the Texas case.**

S3 operated the same way from the date of the Texas final judgment through the date when

the last of the PersonalWeb patents expired.  (*See* Markle Decl. ¶¶ 6, 9-10.)  S3 launched in March 2006, years before the Texas suit.  (*Id.* ¶ 3.)  Then as now, S3 provides web-based storage; it offers scalable, reliable, fast, and inexpensive data storage infrastructure similar to what Amazon uses to run its own website, www.amazon.com.  (Case No. 18-cv-767, Dkt. No. 42-4 ("Rowe Decl.") ¶ 5.)  Customers—typically businesses with an online presence—access S3 via the web.  (Markle Decl. ¶ 3.)  To do so, they use an Application Programming Interface, or API, that Amazon built according to the Hypertext Transfer Protocol (HTTP) industry standard.  (*Id.* ¶ 4.)

HTTP defines a set of rules that servers follow for communicating with each other over the World Wide Web.  (Shenoy Decl. ¶¶ 44-45; Rowe Decl. ¶ 7.)  HTTP communications consist of messages sent back and forth between a client, like a web browser, and a web server.  (Shenoy Decl. ¶¶ 44-46.)  Request messages include a "method" that conveys the desired action for the server to perform and a "resource" on which the action is performed.  (*Id.*)  For example, when a user visits the Amazon website, his or her web browser (client) will send an HTTP request message that includes something called a "GET" request and the resource "www.amazon.com/."  (*Id.* ¶ 46.)  The server processes the request and returns a response.  (*Id.*)  The response includes a status code that reflects the outcome of the request and, if requested, the content of the requested resource.  (*Id.* ¶¶ 44-45.)  A successful response to the request for the www.amazon.com home page would include the status code "200 OK" and the content of the HTML that comprises the home page of www.amazon.com.  (Rowe Decl. ¶ 12)

Clients access S3 using these conventional HTTP requests and receive conventional HTTP responses.  (Markle Decl. ¶ 4.)  The same HTTP request that a browser sends to a web server to retrieve a web page, a "GET" request, is used to retrieve information from S3.  (*Id.*; *see also* Rowe Decl. ¶ 12.)

Information in S3 is stored as "objects."  (Markle Decl. ¶ 8; *see also* Rowe Decl. ¶ 6.)  S3 organizes these objects into customer-created containers called "buckets."  (*Id.*)  In simple terms, an object is akin to a computer file and a bucket is akin to a directory in which the file is stored.  Clients access S3 objects over the web by specifying the corresponding buckets and object names.  (Markle

Decl. ¶ 8; *see also* Rowe Decl. ¶¶ 6, 12.)   For example, a client requesting an object named "puppy.jpg" in the "johnsmith" bucket would make an HTTP GET request to the URL "http://john-smith.s3.amazonaws.com/puppy.jpg."  (Markle Decl. ¶ 8; *see also* Rowe Decl. ¶ 6.)

Following the HTTP standard, S3 has always used an HTTP header called an "ETag." (Rowe Decl. ¶ 10.)  S3 generates ETags for the objects it stores and provides them to the clients along with the requested objects.  (Markle Decl. ¶ 9; *see also* Rowe Decl. ¶ 10.)  For most objects, S3 generates the ETag value by computing a hash of the object's content with a hash algorithm called MD5. (Rowe Decl. ¶ 10; *see also* Markle Decl. ¶ 9.)  If the object's contents change, the ETag too will change.  (Markle Decl. ¶ 9; Rowe Decl. ¶ 10.)  The use of ETags in S3 is not optional; S3 generates them automatically for each object and sends them automatically in HTTP responses.  (Markle Decl. ¶ 9.)

Clients use ETag headers to determine whether they have the most recent version of a resource such as a file or an S3 object.  (Rowe Decl. ¶ 10.)  As with any web server, when a client receives an object from S3, it can store the object in temporary memory or a "cache."  To determine whether the cached object is current, the client can send to S3 a GET request with an "If-None-Match" header and the object's ETag value to S3.  (*Id.*)  If the received ETag matches the ETag for the object currently stored in S3, S3 responds with a status code, "304 Not Modified," signaling that the client has the same version of the object as S3 and may use the cached object.  (Markle Decl. ¶ 10; *see also* Rowe PI Decl. ¶ 12.)  If the ETags do not match, S3 will send the most recent version of the object to the client.  (Shenoy Decl. ¶ 54.)  In other words, S3 transmits the object itself only when necessary, saving time and network bandwidth.

ETags and the related conditional GET requests were added to the HTTP specification in version 1.1, and have remained unchanged since that specification was finalized in 1997.  (Shenoy Decl. ¶¶ 44, 51, 53.)  S3's generation of ETags, their use, and related functionality have all remained the same since PersonalWeb filed its 2011 lawsuit against Amazon in Texas.  (Markle Decl. ¶ 9)

In both the Texas case and here, PersonalWeb accused the generic use of ETags as described in the HTTP protocol.  (*See, e.g.*, Shamilov Decl., Ex. 9 (Case No. 6:11-cv-00658, Final Texas

Infringement Contentions, '310 Claim Chart) at 16, Ex. 12 (Case No. 18-cv-00767, Plaintiffs' L.R. 3-1, 3-2 Disclosures, Ex. A, '310 claim chart) at 2; *see also* Case No. 18-cv-00767, Dkt. 42-1, ("Shenoy PI Decl.") ¶¶ 50, 54.)  PersonalWeb accused, too, the use of ETags in an S3 operation called "multipart upload."  (Shamilov Decl., Ex. 9 at 13; *see also* Shenoy PI Decl. ¶¶ 51-52.)  The multipart upload feature allows an S3 customer to upload a large object (like a feature film) as a series of parts, where each part is a contiguous portion of the object's data.  (Markle Decl. ¶ 6; Shenoy PI Decl. ¶ 39.)  Once the user uploads all parts, the user can instruct S3 to assemble them into the complete object for storage.  (*Id.*)  When this feature is used, S3 generates ETags for each uploaded part as well as for the completed object.  (Markle Decl. ¶ 9; Shenoy PI Decl. ¶ 39.)

## III.    ARGUMENT

PersonalWeb accused the same Amazon service of infringing the same patents in the earlier Texas case.  That case ended in a final judgment on the merits.  A party to a final judgment, like PersonalWeb, is foreclosed from relitigating the same claims against the same parties and their priv-ies—*e.g.*, a party's customers.  PersonalWeb's new claims are barred as a matter of law.

### A.    Claim preclusion bars PersonalWeb's claims in this case.

Whether a suit is precluded by an earlier litigation is a question of law.  *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001).  In a patent infringement case, courts apply the claim preclusion rules of the regional circuit.  *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014).  In the Ninth Circuit, "claim preclusion bars an action where a prior suit: (1) reached a final judgment on the merits; (2) involved the same parties (or their privies) and (3) involved the same claim or cause of action."  *Adaptix, Inc. v. Amazon.com, Inc.*, No. 5:14-cv-01379-PSG, 2015 WL 4999944, at *5 (N.D. Cal. Aug. 21, 2015) (citing *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2015); *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 997 (N.D. Cal. 2007)).  Each of those conditions is satisfied here.

First, the Texas case was dismissed with prejudice.  (Shamilov Decl., Ex. 6 (Order of Dis-missal with Prejudice).)  A dismissal with prejudice is an adjudication on the merits and triggers claim preclusion.  *Int'l Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993)

("The dismissal of the action with prejudice constitutes a final judgment on the merits . . . ."); *Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 477 n.3 (9th Cir. 1990) ("Federal law dictates that a dismissal with prejudice bars a later suit under res judicata.").

Second, the actions involve the same parties and their privies.  This is undeniably true about the Texas action and Amazon's declaratory judgment action in this Court, which involve the identical parties:  PersonalWeb, Level 3, and Amazon.  (*See, e.g.*, Shamilov Decl., Ex. 1 (Amended TX Complaint); Case No. 18-cv-767, Dkt. No. 36 ("DJ Compl.").)  PersonalWeb's other actions in this district involve Amazon's customers, who were not involved in the Texas case, but who are Amazon's privies.  Under Ninth Circuit law, for purposes of claim preclusion, customers of the accused technology are in privity with the supplier of that accused technology because the customers and their supplier's interests are necessarily aligned.  *See Adaptix*, 2015 WL 4999944, at *6 (finding customers in privity with manufacturer based on "the alignment of interests between parties"); *see also Tech. Licensing Corp. v. Thomson, Inc.*, No. 2:03-1329 WBS PAN, 2010 WL 843560, at *6 (E.D. Cal. Mar. 10, 2010) ("As one of Gennum's customers, Thomson is in privity with Gennum for [issue] preclusion purposes."); *Schnitger v. Canoga Elecs. Corp.*, 462 F.2d 628, 628 (9th Cir. 1972) (earlier judgment is res judicata as to defendant from prior action "and those who obtain the infringing product from him").  The interests of Amazon's S3 customers are indisputably aligned with those of Amazon; they are identically interested in using the accused technology without the threat of molestation by PersonalWeb.  As a sister court explained in *Adaptix*, suits against customers of earlier-vindicated technology are barred because the patentee "was fully aware that customers like [those it sued] existed, were in possession of allegedly infringing [technology] and were operating [that technology] . . . , [and] yet failed to bring claims against them" at the time of the earlier suit.  *Adaptix*, 2015 WL 4999944, at *6.  That is certainly true here.  During the Texas case, PersonalWeb was "fully aware" that Amazon's customers used S3 and even sued one of them—Dropbox.  Yet, PersonalWeb failed to bring any other customer cases.  Just like the patentee in *Adaptix* was barred from suing a vendor's customers, so, too, is PersonalWeb barred from accusing Amazon customers of patent infringement based on their use of the same vindicated technology.

Amazon is in privity with its customers for the additional and independent reason that Amazon is indemnifying its customers in this case: Amazon has expressly assumed the defense of the 60 customers who have sought Amazon's aid, and has not turned away any customer who has asked for it. (Shamilov Decl., Ex. 8 (Rog Resp).) Amazon, therefore, has stepped into the shoes of its customers and shares their interests. *See SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *5-6 (N.D. Cal. May 6, 2014) (finding privity where manufacturer was contractually obligated to indemnify customers against claims for infringement), *aff'd*, 791 F.3d 1317 (Fed. Cir. 2015).

Finally, the cases involve the same causes of action. Because a determination of whether two actions for patent infringement are the same involves questions of substantive patent law, Federal Circuit law applies. *See Brain Life, LLC*, 764 F.3d at 1052. "To determine whether the same cause of action is present for purposes of claim preclusion in the patent infringement context, the Federal Circuit considers two factors: (1) whether 'the same patents are involved in both suits' and (2) whether the accused 'products or processes' in the suits are the same or 'essentially the same.'" *Adaptix*, 2015 WL 4999944, at *6 (quoting *Senju Pharm. Co.*, 746 F.3d at 1349). Here, all of the patents PersonalWeb asserted (save one with identical scope) were asserted in Texas: the '791 patent, the '442 patent, the '310 patent, and the '544 patent. (*See* Shamilov Decl., Ex. 1 (Amended TX Complaint) at 5-6, 8-12, 14-15; DJ Compl. ¶ 20.) And PersonalWeb accuses the same product: Amazon S3. (*Compare* Shamilov Decl., Ex. 1 (Amended TX Complaint) ¶ 14 (accusing "use[] [of] Amazon's . . . S3 storage system to store files"); ¶ 20 (accusing "Amazon Simple Storage Service (S3)"); *with, e.g.*, Case No. 18-md-2834, Dkt. No. 175 (Second Amended Airbnb Complaint) ¶ 41 (accusing "the S3 server" of infringing by "serv[ing] the S3 asset file with the its associated ETag value to HTTP GET requests for the S3 asset file").) When "no new accused device [is] in issue," asking whether the products are "essentially the same" is unnecessary. *D-Beam v. Roller Derby Skate Corp.*, 316 F. App'x 966, 969 (Fed. Cir. 2008); *see also Abbey v. Mercedes Benz of N. Am., Inc.*, 138 F. App'x 304, 307 (Fed. Cir. 2005) (applying claim preclusion in second suit against same product).

But, even were the Court to ask the question, it would reach the same answer.  S3's operation did not change in any relevant way during the period between the final judgment in the Texas case and December 2016, when all of PersonalWeb's patents expired.  (*See* Markle Decl. ¶¶ 6, 9-10.)  During that entire period, S3 generated and used ETags in the same way.  (*Id.* ¶ 9.)  During that entire period, S3 supported and responded to conditional GET requests in the same way.  (*Id.* ¶ 10.)  And during that entire period, S3 used and supported the same HTTP protocol for its communications with web servers and other clients in the same way.  (*Id.*)  *See Adaptix*, 2015 WL 4999944, at *7 (claim preclusion barred second suit where accused devices were "materially unchanged with respect to the plaintiff's infringement contentions").

 For these reasons, PersonalWeb's claims are barred by the doctrine of claim preclusion.  PersonalWeb disagrees based on three arguments.  None has merit.

### B.   PersonalWeb's arguments to the contrary are meritless.

PersonalWeb first argues that, because the Texas action was dismissed with prejudice voluntarily, the Texas final judgment has no preclusive effect.  But it is well settled that by voluntarily dismissing claims with prejudice, "the plaintiff submits to a judgment that serves to bar his claims forever," and that dismissal "operates as an adjudication on the merits."  *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1339-41 (Fed. Cir. 2012) (voluntary dismissal with prejudice precludes patentee from asserting a claim that existed at the time of, or arose after, the earlier-dismissed action); *Young Eng'rs v. U.S. Int'l Trade Comm'n*, 721 F. 2d 1305 (Fed. Cir. 1983) ("[C]laim preclusion . . . operate[s] between the parties simply by virtue of the final judgment . . . even though a judgment results by default, consent, or dismissal with prejudice . . . .").

PersonalWeb relies on *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), but that case is plainly inapposite.  (*See* Case No. 18-cv-767, Dkt. No. 37 at ECF p. 25.)  There, the Supreme Court held that a diversity case dismissed under Rule 41(b) due to expiration of the California state statute of limitations did not preclude a later suit under a different state's laws with a different statute of limitations.  Here, PersonalWeb dismissed its prior action with prejudice under

Rule 41(a), not under Rule 41(b), and not based on a statute of limitations.  That distinction is important.  As the Court explained in *Semtek*, a statute of limitations bars a *remedy*, not a *right*, and thus a remedy barred in one jurisdiction may be available in another.  *See id.* at 504.  Here, however, the *right* itself has been extinguished.  Nothing in *Semtek* supports PersonalWeb's efforts here to exhume a *right* from the ashes of an adverse and final judgment on the merits in a prior proceeding.

PersonalWeb next argues that, because it did not assert the '420 patent in the Texas case, at least that one patent creates a different cause of action.  But claim preclusion applies so long as "the scope of the asserted patent claims in the two suits is essentially the same."  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018).  And here, they undeniably are—according to both the Patent Office and even PersonalWeb during the prosecution of the '420 patent.

The '420 patent's claims are "essentially the same" as the other patents because they are "not patentably distinct" as a matter of law.  The '420 patent is a continuation of the '442 patent, shares the same specification with all of the PersonalWeb patents, and is subject to a terminal disclaimer that limits the patent's term to the expiration of the previously asserted '280 patent.  (Shamilov Decl., Exs. 2-5 (Asserted Patents), Ex. 13 (Terminal Disclaimer), Shenoy Decl. ¶¶ 17-43.)  The terminal disclaimer is of particular importance.  A terminal disclaimer is a voluntary limitation on a patentee's rights to which a patent applicant acquiesces at the insistence of the patent examiner.  A terminal disclaimer restricts the patentee's ability to enforce patents on the same invention in serial litigations.  Because our laws do not allow an inventor to obtain multiple patents on the same invention, the laws require the inventor to limit the term of duplicative continuation patents to that of its parent.  *Gilead Scis., Inc. v. Natco Pharm. Ltd.*, 753 F.3d 1208, 1214-15 (Fed. Cir. 2014); *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013).  As the Federal Circuit noted in *SimpleAir*, a terminal disclaimer is given "considerable weight" in the claim preclusion analysis.  *SimpleAir*, 884 F.3d at 1168.  "[A] terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent."  *Id.*  Here, that "strong clue," *i.e.*, that the examiner and patentee both believed the '420 patent was patentably indistinct, is correct.  The claims of the '420 patent add nothing to the limitations already recited in the other four

1  patents PersonalWeb asserted in Texas.  (Shenoy Decl. ¶¶ 20-41.)

2       At the same time, hornbook claim preclusion law bars both claims that were brought as well

3  as those that *could have been* brought.  *See Brain Life, LLC*, 746 F.3d at 1058; *United States v.*

4  *Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011).  The '420 patent issued before PersonalWeb

5  filed its amended complaint in the Texas case, and thus PersonalWeb could have asserted it there.

6  (Shamilov Decl., Ex. 1 (Amended TX Complaint); Ex. 5 ('420 patent)).  It did not, and is now barred

7  from doing so here.  This is true notwithstanding the Federal Circuit's decision in *Kearns v. Gen.*

8  *Motors Corp*., 94 F.3d 1553 (Fed. Cir. 1996).  *Kearns* suggested that claim preclusion does not apply

9  to patents not previously asserted because "[e]ach patent asserted raises an independent and distinct

10  cause of action."  *Id.* at 1555.  More recently, the Federal Circuit in *SimpleAir* would limit the ruling

11  in *Kearns* to its facts:  where the plaintiff's first case is dismissed for failure to meet court deadlines

12  or other "procedural inadequacies."  *See Simple Air*, 884 F.3d at 1166.  That does not apply here.

13  But even more important, unlike the separate patents at issue in *Kearns*, the '420 patent is part of

14  the same family as the twice-asserted patents and shares their scope.  *See Gilead Scis., Inc.*, 753 F.3d

15  at 1214 (explaining that "a terminal disclaimer 'causes [such] patents to expire together, a situation

16  . . . which is tantamount for all practical purposes to having all the claims in one patent.'") (quoting

17  *Application of Braithwaite*, 379 F.2d 594 (C.C.P.A. 1967)).  Nothing in *Kearns* comes close to en-

18  dorsing the radical rule that a patentee may split his infringement case by serially suing on patents

19  with identical scope from the same family.

20       Finally, PersonalWeb argues that its claims are not precluded because the old Texas case

21  supposedly accused only "multipart upload," while its new campaign is directed to a different feature

22  of S3.  That argument makes no sense.  As an initial matter, multipart upload is a *feature* of S3, not

23  a separate product, and a feature that uses ETags no less so than single-part uploaded files.  (Markle

24  Decl. ¶ 7.)  There is no separate product called "multipart upload"; it is merely a way of uploading

25  large files to S3 for storage using ETags.  (*Id.*)  "Multipart upload" is neither sold nor priced sepa-

26  rately.  (*Id.*)  It is no more a separate product or service than the ability to add attachments to email

27  is a separate product from Google's Gmail, or than a space bar is a separate product from a keyboard.

28

But putting that aside, PersonalWeb in fact accused in Texas the same use of conditional GET and ETags that it accuses here.  PersonalWeb's Texas infringement contentions are plain and unmistakable on this point:

| CLAIM 24 '310 PATENT | Amazon Simple Storage Service (S3) |
|---|---|
| | Similar to performing a multipart upload by copying existing objects, performing a GET of data makes available similar conditional parameters.<br><br>**Amazon Simple Storage Service API Reference**<br>**GET Object**<br><br>| Name | Description | Required |<br>|---|---|---|<br>| *If-Match* | Return the object only if its entity tag (*ETag*) is the same as the one specified, otherwise return a 412 (precondition failed).<br>Type: String<br>Default: None<br>Constraints: None | No |<br>| *If-None-Match* | Return the object only if its entity tag (*ETag*) is different from the one specified, otherwise return a 304 (not modified).<br>Type: String<br>Default: None<br>Constraints: None | No |<br><br>(http://awsdocs.s3.amazonaws.com/S3/latest/s3-api.pdf)<br><br>The HEAD operation retrieves metadata from an object without returning the object itself.  This operation is useful if you're only interested in an object's metadata.  The HEAD operation also has conditional parameters similar to the ones in the pervious discussions. |

(Shamilov Decl., Ex. 9 at 16-17 (annotations added) *compare with id.*, Ex. 12 ('310 patent contentions against Amazon) at 2 (accusing "GET requests ('HTTP GET requests) (e.g., Sec. 9.3), conditional GET requests ('HTTP conditional GET requests') with If None-Match Headers (e.g., Sec. 14.9.4), ETags (e.g., Sec. 14.19)").)  PersonalWeb not only accused these functions in its Texas infringement contentions, but sought related discovery, eliminating any doubt as to whether these functions were at issue.  (Shamilov Decl., Ex. 10 (11/15/2013 Second Amended 30(b)(6) deposition notice) at Topic 43 (seeking testimony on "the process[es] by which Amazon S3 . . . performs operations using 'If-Match' and 'If-None-Match' to make the operation conditional"); *see also* Shamilov Decl., Ex. 11 (Personal Web's First Set of Rogs to Amazon) at Definition No. 15 (defining "HTTP Conditional GET Request" as "a conditional GET request under HTTP 1.1 protocol such as a GET message with an "IF_NONE_MATCH" header with an ETag value"), Rog No. 10 ("Describe in Detail how and why You generated and used Content-Based Etags . . . including in responding to

HTTP GET Requests and HTTP Conditional GET Requests").)

And putting even that aside, the law of claim splitting logically prohibits a party from using the same patents to attack separate features or separate uses of the same product in successive suits, to say nothing of separate theories of infringement directed at the same features. *See, e.g.*, *ViaTech Techs., Inc. v. Microsoft Corp.*, No. 17-570-RGA, 2018 WL 4126522, at *3 (D. Del. Aug. 28, 2018) ("Plaintiff cannot repeatedly assert its patent against different parts of Windows in separate suits, even if one accused part is on the left-hand side of Windows and the other is on the right-hand side, so to speak."). Indeed, the doctrine of claim splitting exists to prevent plaintiffs like PersonalWeb from "split[ting] a cause of action into separate grounds of recovery and rais[ing] the separate grounds in successive lawsuits." *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995); *see also Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) ("A main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'") (citation omitted).

For these reasons, all of PersonalWeb's claims against Amazon S3 are barred by claim preclusion. And those claims are not just barred through the date of the judgment in the Texas case; they are barred also through the expiration of the patents, as late as December 2016. *See Nystrom*, 580 F.3d at 1285 (claim preclusion barred claim for infringement of second generation of accused boards that were released after first case was filed, but remained unchanged with respect to the claim limitations at issue). Though there is currently a conflict among Federal Circuit panel decisions as to whether claim preclusion bars claims based solely on allegedly infringing acts occurring after the date of the first judgment, *see Brain Life, LLC*, 746 F.3d at 1054, *Nystrom* remains and controlling law until the Federal Circuit resolves the conflict *en banc*. *See Adaptix*, 2015 WL 4999944, at *7-8. But if there were any doubt that PersonalWeb's claims related to the use of S3 occurring after the Texas final judgment are barred, the *Kessler* doctrine resolves them.

### C. PersonalWeb's claims are independently barred under the *Kessler* doctrine.

The *Kessler* doctrine originated to "fill the gap" where 100 year-old claim and issue preclusion rules did not apply but fairness dictated that they should. *Adaptix*, 2015 WL 4999944, at *2. It "creates a limited trade right" that allows a product manufacturer that prevails in patent litigation to preclude the patentee from asserting rights against downstream customers and users of the same product. *See SpeedTrack, Inc.*, 791 F.3d at 1325. The doctrine allows courts to protect "an adjudged non-infringer [from] repeated harassment for continuing its business as usual post-final judgment in a patent action." *Adaptix*, 2015 WL 4999944, at *2 (emphasis removed).

As discussed above, modern claim preclusion rules (as they have evolved in the Federal and Ninth Circuits) bars all of the claims here, including claims against Amazon customers for conduct occurring after the date of the Texas judgment. But even under the 100 year-old (and more miserly) view of claim preclusion and privity (which could exclude acts of infringement by customers occurring after the date of the prior judgment), the *Kessler* doctrine filled the gap. Any other outcome would "authorize the type of harassment" *Kessler* prohibited. *Id.* at 1328.

*Kessler* involved an infringement claim brought by Eldred, the patentee, against Kessler, a competing seller of cigar lighters. *Kessler*, 206 U.S. at 285. The district court entered judgment of noninfringement. *Id.* at 285-86. Undeterred, Eldred sued one of Kessler's customers, asserting infringement based on the customer's use of the same Kessler lighters. *Id.* at 286. Kessler indemnified its customer and sought an injunction preventing Eldred from prosecuting any claims for infringement of cigar lighters that Eldred had previously accused. *Id.* While noting that claim and issue preclusion might not protect a customer sued for infringement if a court were to find no identity of parties, the Supreme Court held that Eldred's claims were nonetheless precluded. *Id.* at 288. According to the Court, suits like Eldred's were particularly insidious because "[t]he effect [of such customer suits] . . . would be to diminish Kessler's opportunities for sale," as "[n]o one wishes to buy anything if with it he must buy a law suit." *Id.* at 289. The Court held that the prior judgment of non-infringement, and all the rights that arise from that judgment, "must be recognized in every

way, and wherever the judgment is entitled to respect, by those who are bound by it." *Id.* To give full effect to that judgment, the Court held that Kessler must have "the right to sell his wares freely, without hindrance from Eldred." *Id.*

Here, the dismissal with prejudice of the Texas case triggers rights under the *Kessler* doctrine and precludes PersonalWeb's claims against S3. It does so even in the absence of an explicit finding of non-infringement, as the only court to squarely consider the issue held. *See Molinaro v. Am. Tel. & Tel. Co.*, 460 F. Supp. 673, 676 (E.D. Pa. 1978), *aff'd*, 620 F.2d 288 (3rd Cir. 1980) ("[I]t is clear that the judgment dismissing plaintiffs' complaint 'with prejudice' has the same effect as . . . [a] dismissal 'on the merits.'"). This must be so; it would be inexplicable for a dismissal with prejudice to trigger more liberal modern claim preclusion rules but not the *Kessler* doctrine, when the very purpose of *Kessler* was to extend the benefits of traditional preclusion doctrines to cover later use of the accused product by non-parties and non-privies. The *Kessler* Court created this protection because it understood the destructive potential of the inevitable "multiplicity of suits" that would result in the absence of a remedy. *Kessler*, 206 U.S. at 289. PersonalWeb's claims against Amazon's customers more than a century later show that the Court was right to be concerned. Even if unsuccessful, PersonalWeb's suits "impose upon [Amazon] the expense of defending many suits in order to maintain the right which, by a judgment, has already been declared to exist." *See id.* Allowing PersonalWeb to pursue its claims would "be practically to destroy [Amazon's] judgment right." *See id.* at 289-90. Application of the doctrine in this case thus comports squarely with both the letter and purpose of *Kessler*.

The application of both claim preclusion and the *Kessler* doctrine in *Adaptix* is instructive. There, the plaintiff filed over 35 cases in four "waves" of litigation, each assigned to a single court. *Adaptix*, 2015 WL 4999944, at *2. After the court denied Adaptix leave to amend infringement contentions in its Wave 1 cases, Adaptix filed a new batch of cases, Wave 3, against the Wave 1 defendants asserting infringement of the same patents. In each case, Adaptix asserted patent infringement by 4G LTE products whose baseband processors complied with a portion of the 3GPP LTE standard. *Id.* The court entered judgment of non-infringement in the Wave 1 cases in favor of

1   the defendants.  *Id.* at *3.  In the Wave 3 cases, the defendants then moved to dismiss Adaptix's

2   claims based on claim preclusion and the *Kessler* doctrine.  *Id.*

3        The court granted the motions and rejected the argument that the judgment did not address

4   the specific theories asserted in the later case, holding that the order "bar[red] all other theories that

5   were or could have been brought."  *Id.* at *6.  The court noted that the allegations in both cases

6   related to compliance with LTE standards and the accused products operated the same for purposes

7   of those infringement allegations.  *Id.*  Accordingly, the court held that claim preclusion barred

8   Adaptix's follow-on claims in their entirety.  *Id.*  The court held also that the *Kessler* doctrine inde-

9   pendently barred Adaptix's claims because "[a]ll of the products at issue either were accused in the

10  Wave 1 cases or are 'essentially the same' as those brought in the Wave 1 cases," and "all theories

11  brought in the Wave 3 cases 'were brought or could have been brought in the first suit.'"  *Id.* at *9.

12  The judgment in the Wave 1 case conferred a trade right that gave the Wave 3 defendants "the status

13  of non-infringers and . . . [gave] their products the status of non-infringing products."  *Id.*

14       Here, as in *Adaptix*, PersonalWeb has filed multiple waves of lawsuits that target the same

15  S3 service.  And here, as in *Adaptix*, PersonalWeb brought the current wave of lawsuits "to have a

16  second bite at the apple."  *Id.* at *8.  As in *Adaptix*, the judgment in the earlier Texas case fully

17  resolved all of these claims, whether or not PersonalWeb asserted the same set of patent claims or

18  identical infringement theories.  That judgment created a trade right that conferred upon Amazon

19  and its customers the status of non-infringers and upon S3 the status of a non-infringing product.

20  That right is irrevocable.

## CONCLUSION

22       For the foregoing reasons, Amazon respectfully requests that the Court grant it summary

23  judgment on its declaratory judgment claims and defenses under the claim preclusion and *Kessler*

24  doctrines, and hold that PersonalWeb may not assert claims against Amazon or its customers that

25  arise under any of the patents-in-suit and relate to use of S3.

1

Respectfully submitted,

2

Dated:     November 28, 2018

FENWICK & WEST LLP

3

4

By: */s/ Saina S. Shamilov*
    J. David Hadden (CSB No. 176148)

5

    Saina S. Shamilov (CSB No. 215636)
    Todd R. Gregorian (CSB No. 236096)

6

    Phillip J. Haack (CSB No. 262060)
    Ravi R. Ranganath (CSB No. 272981)

7

    Chieh Tung (CSB No. 318963)

8

Counsel for AMAZON. COM, INC. and
AMAZON WEB SERVICES, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28