1  J. DAVID HADDEN (CSB No. 176148)
   dhadden@fenwick.com
2  SAINA S. SHAMILOV (CSB No. 215636)
   sshamilov@fenwick.com
3  TODD R. GREGORIAN (CSB No. 236096)
   tgregorian@fenwick.com
4  PHILLIP J. HAACK (CSB No. 262060)
   phaack@fenwick.com
5  RAVI R. RANGANATH (CSB No. 272981)
   rranganath@fenwick.com
6  CHIEH TUNG (CSB No. 318963)
   ctung@fenwick.com
7  FENWICK & WEST LLP
   Silicon Valley Center
8  801 California Street
   Mountain View, CA  94041
9  Telephone:    650.988.8500
   Facsimile:    650.938.5200
10
11 Counsel for AMAZON.COM, INC.
   and AMAZON WEB SERVICES, INC.

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16  IN RE: PERSONAL WEB TECHNOLOGIES,        Case No. 5:18-md-02834-BLF
    LLC ET AL., PATENT LITIGATION
17                                            Case No.: 5:18-cv-00767-BLF

18  AMAZON.COM, INC., and AMAZON WEB
    SERVICES, INC.,                          **DECLARATION OF DR. PRASHANT
19                   Plaintiffs,             SHENOY IN SUPPORT OF THE MO-
              v.                             TION FOR SUMMARY JUDGMENT
20                                           OF AMAZON.COM, INC. AND AMA-
    PERSONALWEB TECHNOLOGIES, LLC and        ZON WEB SERVICES, INC. ON DE-
21  LEVEL 3 COMMUNICATIONS, LLC,             FENSES UNDER CLAIM PRECLU-
                     Defendants.             SION AND *KESSLER* DOCTRINES**
22

23  PERSONALWEB TECHNOLOGIES, LLC and
    LEVEL 3 COMMUNICATIONS, LLC,
24                   Counterclaimants,

25            v.

26  AMAZON.COM, INC., and AMAZON WEB
    SERVICES, INC.,
27                   Counterdefendants.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

I, Prashant Shenoy, Ph.D., declare as follows:

## I.     INTRODUCTION

1.      I make this declaration in support of the Motion for Summary Judgment of Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, "Amazon") on Defenses Under Claim Preclusion and *Kessler* Doctrines.  I have personal knowledge of the facts stated herein and if called upon, could and would competently testify thereto.

2.      I have been retained by Amazon as an expert in this case, and have been asked to provide the Court with technological background that will be helpful in evaluating the motion and to offer expert opinion regarding the substantial similarity of the PersonalWeb patents to one another.

3.      I am over 18 years of age, of sound mind, and otherwise competent to make this declaration.  The evidence set out in this declaration is based on my personal knowledge.

4.      I offered a prior declaration in support of Amazon's Motion for a Preliminary Injunction, Dkt. No. 42-1 in 5:18-cv-00767-BLF (the "PI Declaration").

## II.    PERSONAL BACKGROUND

5.      Attached hereto as **Exhibit 1** is a true and correct copy of my curriculum vitae.  I hold a Ph.D. degree in Computer Sciences from University of Texas at Austin.  I am currently a Professor and Associate Dean in the College of Information and Computer Sciences at the University of Massachusetts Amherst.  My research is primarily in the areas of operating and distributed systems.  Over the past several years, I have led research projects on topics such as distributed storage systems, internet content distribution, web performance, and server operating systems.

6.      I have published numerous papers on cloud computing, content distribution, web application performance, and web caching.  In addition, I have taught courses on distributed systems for nearly two decades.  As part of my distributed systems course, I teach about cloud computing technologies. The course includes programming assignments using Amazon Web Services' cloud platform, including the use of Amazon's cloud servers and S3 storage.  In addition, my students and I routinely use cloud platforms such as Amazon Web Services, including Amazon S3 storage, on a day to day basis for our research.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

7.      My research and teachings have also emphasized web application design, web application performance, and web caching.  For example, my research on web caching has involved using conditional GET requests to maintain cache consistency.  I have also conducted research on multi-tier web applications.  In this context, I have programmed and designed applications using Ruby of Rails and have used Ruby on Rail's Model-View-Controller (MVC) framework.

## III.   MATERIALS REVIEWED

8.      I have reviewed U.S. Patent Nos. 6,928,442; 7,802,310; 7,945,544; and 8,099,420.  I have also reviewed U.S. Patent Nos. 5,978,791; 6,415,280; and 7,945,539, which were previously asserted against Amazon and Dropbox in the prior case in the Eastern District of Texas, *Personal-Web Technologies, LLC et al. v. Amazon.com, Inc. et al.*, Civ. No. 6:11-cv-00658 (E.D. Tex.) (the "2011 Texas Case").

## IV.   PERSONALWEB'S PATENTS

9.      In my prior declaration, I described the PersonalWeb patents.  (PI Declaration at ¶¶ 11–21.)  For the convenience of the Court, I have repeated that description below with some elaboration relevant to the discussion below.

10.     The PersonalWeb patents at issue—the '442 patent, the '310 patent, the '544 patent, and the '420 patent—share a specification and each claims priority to an application filed on April 11, 1995.  The patents purport to claim various embodiments of the subject matter of that earlier application.  In these patents, the applicants described what they believed was a fundamental problem with prior art data processing systems at the time:  Data files were identified only "relative to a specific context" such as the file's location in a particular user's file system.  *E.g.*, '442 Patent at 1:66-2:4.  Further, since there was "no direct relationship between the data names and the data item," the "two different contexts may refer to different data items, and two different data names in the same context may refer to the same data item."  *Id.* at 2:13-17.  This context-based approach was purportedly undesirable as file systems often included multiple copies of the same file with different names, thus increasing the amount of data stored and complicating file management.  *Id.* at 2:48-59.  The applicants described their invention in the first sentence of the Summary of the Invention:

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

> This invention provides, in a data processing system, a method and appa-
> ratus for identifying a data item in the system, where the identity of the data
> item depends on all the data in the data item and only on the data in the
> data item. Thus, the identity of a data item is independent of its name,
> origin, location, address, or other information not derivable directly from
> the data, and depends only on the data itself.

*Id.* at 3:30-36.  The applicants called this identifier a "True Name."  The specification refers to it

as such or as a "substantially unique identifier."  The specification describes that the identifiers can

be used for multiple purposes, including 1) to avoid keeping multiple copies of data items, regard-

less of how they are named, 2) to avoid copying items from remote locations when a local copy is

already available, 3) to locate data items by identifier without having to know the actual location

of the item, 4) to ensure that redundant copies are kept in case of system failure, 5) to maintain

inventories of data items, 6) to confirm whether a user has a particular piece of data, regardless of

its name, and 7) to identify licensed files and ensure that they are not used by unauthorized parties.

*Id.* at 3:30-4:43, 32:43-55; *see also, e.g.*, *id.* at 35:56-64.  The specification expressly acknowledges

that all of the embodiments described in the patents use a "True Name."  *Id.* at 13:58-63.

11.     The patents describe creating True Names for two different types of data objects, or

as the patents describe, "data items," a simple data item and a compound data item.  *Id.* at 14:7-43.

A simple data item is one whose size is smaller than some defined size, whereas a compound data

item is greater than that size.  *Id.* at 14:7-9, 16-17.  For a simple data item, the True Name is com-

puted by using a known message digest function (also called a cryptographic hash function), such

as MD4, MD5 or SHA.  *Id.* at 13:13-22.  "A True Name is computed using a function, MD, which

reduces a data block B of arbitrary length to a relatively small, fixed size identifier, the True Name

of the data block, such that the True Name of the data block is virtually guaranteed to represent the

data block B and only data block B."  *Id.* at 12:58-63.  After the digest function has been computed,

the length of the data item or block is appended to the end of the digest value forming the True

Name.  *Id.* at 14:9-15.

12.     Compound data items are split into smaller "segments," and a True Name is calcu-

lated for each segment of the item.  *Id.* at 14:16-26.  To obtain the True Name for the compound

data item, the True Name values for all the segments are concatenated (i.e. strung together one after

the other) to form a new data block and the message digest function is then applied again to that resulting block combined, then the length of the compound data item is appended to end. *Id.* at 14:20-35.

13. The patents emphasize the importance of the substantially unique identifier, i.e. the True Name, being propagated throughout, and persisting in, the system in a variety of data structures so that all parts of the system (servers, CPUs, etc.) can uniquely identify and access every data item that has been assimilated into the True Name system. *See, e.g., id.* at 33:8 – 38:67 ("The System in Operation").

14. The shared specification describes a number of data structures that track the location and other information regarding a data item, and which use a TrueName to locate the information in a table called the True File Registry.

> In operation data items can be accessed by reference to their identities (True Names) independent of their present location. The actual data item or True File corresponding to a given data identifier or True Name may reside anywhere in the System (that is, locally, remotely, offline, etc). If a required True File is present locally, then the data in the file can be accessed. If the data item is not present locally, there are a number of ways in which it can be obtained from wherever it is present. Using the source IDs field of the True File registry table, the location(s) of copies of the True File corresponding to a given True Name can be determined.

'442 patent at 34:35-45; see also Fig 4 (showing a sample table).

15. The claims of the patents are directed to various aspects of what is described in the specification. For example, the first issued patent in the family, the '791 patent, claims "a data processing system" that calculates and uses a data item's True Name to "determine whether a particular data item is in the system." *Id.* at 39:14-23. The '442 and '310 patent claims cover various situations that use the True Name to determine whether the requestor of a file is "licensed" or "authorized" to access that data item. '442 patent at 39:41-53; '310 patent at 37:44-62. The '544 patent claims are directed toward creating and comparing True Names for compound data items. '544 patent at 38:34-39:3. The '420 patent claims are directed to a combination of features of the other patents, but are primarily focused on determining whether a user is authorized to access a data item based on a lookup in a database of True Names. '420 patent at 37:59-38:28; *see also id.* at 56:51-57:13.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## V.   THE '420 PATENT IS NOT PATENTABLY DISTINCT FROM THE OTHER PERSONALWEB PATENTS.

16.    I understand that a whether a patent is patentably distinct from another patent requires comparing the patents' claims to see if the claims have essentially the same scope.  I understand that if the claims of a patent are anticipated or rendered obvious by the claims of an earlier-issued patent from the same entity, it is not patentably distinct and the claims are therefore have essentially the same scope.

17.    The '420 Patent is a continuation of the '442 patent, which is a continuation of the '280 patent, which is a division of the '791 Patent.

18.    During prosecution, the Patent Office determined that the claims of the '420 patent are not patentably distinct from the claims of the '280 patent.[1]  It required the applicants to file a terminal disclaimer limiting the term of the '420 patent to that of the '280 patent in response to a rejection of the claims as obvious in light of the '280 patent.  I understand that the Federal Circuit has said that "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018).

19.    In general, the '420 patent addresses the same subject matter as the other patents asserted in the 2011 Texas Case.  Based on my analysis of the claims, it is my opinion that the claims of the '420 patent have essentially the same scope as the patents at issue in the 2011 Texas Case, including in particular the '442 patent, the '280 patent, and the '310 patent.

20.    I understand that PersonalWeb has identified the following claims as infringed by one or more of Amazon or the customer defendants:  claims 25, 26, 27, 29, 30, 32, 34-36 and 166.  Each of the asserted claims of the '420 patent has essentially the same scope as the claims of each of the related patents.

### A.   The Asserted Independent Claims Are Not Patentably Distinct from the Patents Asserted in the 2011 Texas Case.

21.    The asserted claims include two independent claims, claims 25 and 166, which have

---

[1] The '280 patent itself is subject to a terminal disclaimer based on a rejection of its claims on the grounds that they are not patentably distinct from the '791 patent that is the first-filed and issued patent in the TrueNames family.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

functionally similar limitations.  I have mapped the corresponding sections of each claim in the color coded table below.

| Asserted Independent Claims of the '420 Patent | |
|---|---|
| 25. A computer-implemented method implemented at least in part by hardware in combination with software, the method comprising the steps: | 166. A system comprising hardware, including at least a processor, and software, in combination with said hardware to: |
| (A) hardware in combination with software, determining a first content-dependent name for a particular sequence of bits, at least in part by applying a particular function to at least some of the particular sequence of bits, said particular function comprising a message digest function or a hash function, wherein two identical sequences of bits will have the same content-dependent name as determined using said particular function; | (A) for a particular data item in a set of data items, said particular data item comprising a corresponding particular sequence of bits: (a1) determine one or more content-dependent digital identifiers for said particular data item, each said content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item, wherein two identical data items will have the same digital identifiers as determined using said given function; and |
| (B) ascertaining whether or not said first content-dependent name for the particular sequence of bits corresponds to one of a plurality of identifiers, said plurality of identifiers corresponding to a plurality of data items, each identifier of said plurality of identifiers being based, at least in part, on a first given function of the data that comprise the contents of a corresponding one of the plurality of data items, wherein said first given function comprises the particular function used to determine the first content-dependent name for said particular sequence of bits; and, | (a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without authorization, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item. |
| (C) based at least in part on said ascertaining in step (B), selectively allowing a copy of the particular sequence of bits to be provided to or accessed by or from at least one of the computers in a network of computers, wherein a copy of the sequence of bits is not to be provided or accessed without authorization, as determined, at least in part, based on whether or not said first content-dependent name of the particular sequence of bits corresponds to one of the plurality of identifiers. | |

22.     To summarize briefly, the green limitations require that the method be performed in an environment that includes both hardware and software.   In the yellow steps, the system calculates a true name for one or data items.  In the blue steps, the system compares the calculated true name to a list or database of true names.  Finally, in the orange steps, the system determines based on the comparison made in the blue step whether the data item can be provided to or accessed by a particular computer.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

23.   The green limitations above, which require the use of computer hardware and software, are:

- Claim 25 of the '420 patent: "A computer-implemented method implemented at least in part by hardware in combination with software, the method comprising the steps . . . ."

- Claim 166 of the '420 patent: "A system comprising hardware, including at least a processor, and software, in combination with said hardware to . . . ."

These limitations are essentially the same as similar limitations in almost every claim in the '442 patent, the '280 patent, and the '310 patent.  Even where these claims do not explicitly recite computer hardware and software, every claim of these patents requires a computer system, which in turn would suggest computer hardware and software to one of ordinary skill in the art.  These limitations are disclosed in the '442 patent, the '280 patent, and the '310 patent as shown in the following exemplary limitations:

- '442 patent, claim 1: "In a system in which a plurality of files are distributed across a plurality of computers, a method comprising," as well as claim 45: "In a system in which a plurality of files are distributed across a plurality of computers, at least some of the computers forming a peer-to-peer network . . . ."

- '442 patent, claim 6: "A method, in a system in which a plurality of files are distributed across a plurality of computers, wherein data in a file in the system may represent a digital message, a digital image, a video signal or an audio signal . . . ."

- '442 patent, claim 45: "In a system in which a plurality of files are distributed across a plurality of computers, at least some of the computers forming a peer-to-peer network . . . ."

- '280 patent, claim 1: "In a system in which a set of data files are distributed across a network of servers, at least some of the data files being cached versions of data files from a source server, wherein the source server is distinct from the servers in the network . . . ."

- '280 patent, claim 27: "A content delivery method, comprising: distributing a set of data files across a network of servers . . . ."

- '280 patent, claim 52: "In a network comprising a plurality of processors, some of the processors functioning as servers and some of the processors functioning as clients . . . ."

- '310 patent, claim 1: "A computer-implemented method in a system which includes a network of computers, the method implemented at least in part by hardware comprising at least one processor . . . ."

- '310 patent, claim 20: "A computer-implemented method operable in a system which includes a plurality of computers . . . ."

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- '310 patent, claims 21, 24: "A computer-implemented method implemented at least in part by hardware comprising one or more processors . . . ."

24.     The next steps, highlighted in yellow above, relate to calculating the unique identifier, i.e. a TrueName, with a hash function or message digest function.  One of skill in the art would know that a particular file consists of "a particular sequence of bits," and that the MD5 algorithm is an example of a "message digest or hash function."  These limitations are:

- Claim 25 of the '420 patent: "(A) hardware in combination with software, determining a first content-dependent name for a particular sequence of bits, at least in part by applying a particular function to at least some of the particular sequence of bits, said particular function comprising a message digest function or a hash function, wherein two identical sequences of bits will have the same content-dependent name as determined using said particular function . . . ."

- Claim 166 of the '420 patent:  "(A) for a particular data item in a set of data items, said particular data item comprising a corresponding particular sequence of bits: (a1) determine one or more content-dependent digital identifiers for said particular data item, each said content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item, wherein two identical data items will have the same digital identifiers as determined using said given function . . . ."

These limitations are disclosed in the '442 patent, the '280 patent, and the '310 patent as shown below.

25.     In the '442 patent, nearly every independent claim includes a limitation which requires generating or using a name for a data file that is generated based on the content of the data file using a message digest or hash function, for example:

- '442 patent, claims 1, 7, 10, 45, 56: "obtaining a name for a data file, the name being based at least in part on a given function of the data, wherein the data used by the given function comprises the contents of the data file"

- '442 patent, claim 6: "obtaining a name for a data file, the name having been determined using an MD5 function of the data, wherein the data used by the MD5 function comprises the contents of the data file"

- '442 patent, claim 13: "obtaining a True Name for a data file, the True Name being based at least in part on a given function of the data, wherein the data used by the given function comprises the contents of the particular file"

- '442 patent, claims 22, 54 and 55, which each recite minor variations on the limitation: "obtaining a name for the data file, the name being based at least in part on an MD5 function of the data which comprises the contents of the data file"

Fenwick & West LLP
Attorneys at Law
Mountain View

- '442 patent, claims 23, 39, and 42 recite "file names . . . determined, at least in part, by applying a function to the contents of the corresponding file"

- Further, numerous dependent claims of the '442 patent disclose that the function used to generate the claimed content-dependent names is a hash or message digest function, including claims 15, 27, 32, 41, 43, and 48.

26.     Similarly, many claims, including nearly every independent claim, of the '280 patent require the creation of a unique identifier for a data item created from the item contents with a hash or message digest:

- '280 patent, claims 1, 9, 10, 23, 24, 25, 27, all of which recite minor variations on the limitation:[2] "determining a data identifier for a particular data file [on the source server], the data identifier [being] determined using a given function of the data, wherein said data used by the given function [to determine the data identifier] comprises the contents of the [particular] data file"

- '280 patent, claim 18: "determining another name for the particular data file, the other name including a data identifier determined using a given function of the data, where said data used by the given function comprises the contents of the particular data file"

- '280 patent, claim 26: "wherein the data identifier is determined by applying a message digest function MD5 to the data, wherein said data used by the MD5 function to determine the data identifier is the contents of the particular data file"

- '280 patent, claim 31: "determining an MD5 hash of the contents of a particular data file"

- '280 patent, claim 34: "determining another data identifier for the particular data file, the other data identifier including a data identifier determined using a message digest function of the contents of the particular data file"

- '280 patent, claim 35: "determining a data identifier for a particular data file, the data identifier including a hash of the contents of the particular data file"

Several dependent claims further specify that the identifier is a hash or message digest, such as:

- '280 patent, claims 2, 41, and 45: "wherein the given function is a message digest function or a hash function"

- '280 patent, claims 3, 42, and 46: "function is selected from the functions: MD4, MD5, and SHA"

- '280 patent, claim 5: "wherein, for a particular data file, the given function produces a substantially unique value based on the data comprising the data file"

---

[2] Language which varies among the claims is bracketed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- '280 patent, claim 8: "wherein said data identifier for said particular data file, as determined using said given function, will change when the particular data file is modified."

27. The claims of the '310 patent also disclose creation of a unique identifier. Each independent claim requires obtaining a content-dependent name or receiving a request for a content-dependent name created by applying a hash function or message digest function to the content of the item, as shown in the exemplary limitations below:

- '310 patent, claim 1: "obtaining a content-based name for a particular data item . . . the content-based name being based at least in part on a function of at least some of the data which comprise the contents of the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items will have the same content-based name"

- '310 patent, claim 20: "content-dependent name being based at least in part on a function of at least some of the data comprising the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items will have the same content-dependent name"

- '310 patent, claim 21: "obtaining a list of content-dependent names, one for each of a plurality of data items, wherein, for each particular data item of the plurality of data items, the corresponding content-dependent name for that particular data item is based at least in part on a function of at least some of the contents of the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items have the same content-dependent name on the list of content-dependent names"

28. As discussed above, the next steps, highlighted in blue above, relate to comparing the unique identifier to a set of other unique identifiers. In the case of claim 166, the other unique identifiers are stored in a database. Using a database to compare data items based on an indexed attribute such as a unique identifier was a common technique for looking up values well-known at the time of the invention of the TrueName patents and would be an obvious variation to a claim requiring that a system compare an identifier to set of other identifiers, as would other techniques, such as iterating over a list or a table of values. Indeed, the shared specification notes some of the prior art techniques in the background of the invention. '791 patent at 1:44-49 ("a database management system may group data records (data items) into tables and then group these tables into database files (collections)."); *see also id.* at 39:14-25 (noting that the file system embodiments described in the specification "can be easily modified" to use a database). These limitations are:

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- Claim 25 of the '420 patent: "ascertaining whether or not said first content-dependent name for the particular sequence of bits corresponds to one of a plurality of identifiers, said plurality of identifiers corresponding to a plurality of data items, each identifier of said plurality of identifiers being based, at least in part, on a first given function of the data that comprise the contents of a corresponding one of the plurality of data items, wherein said first given function comprises the particular function used to determine the first content-dependent name for said particular sequence of bits"

- Claim 25: of the '420 patent: "based on whether or not said first content-dependent name of the particular sequence of bits corresponds to one of the plurality of identifiers"

- Claim 166 of the '420 patent:  "as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item."

These limitations are disclosed in the '442 patent, the '280 patent, and the '310 patent as shown below.

29.     Many claims of the '442 patent claim determining how to handle a request for a data item where the request includes an identifier as described above.  One of skill in the art reading the shared specification would know that these limitations describe the process of comparing a True-Name with the stored TrueNames in the licensing table or data structures in the system in order to find the corresponding item.  These limitations include:

- '442 patent, claim 1: "in response to a request for the a [sic] data file, the request including at least the name of the particular file, causing a copy of the file to be provided from a given one of the plurality of computers, wherein a copy of the requested file is only provided to licensed parties"

- '442 patent, claims 13, 22, 23, 39, 42, 54, 55, and 56 each describe determining whether a copy of a file is present and licensed or authorized based on the name, which as described above uses a table or database of licensed entries to perform this function

- '442 patent, claims 23, 31, 35, 39 and 42 describe comparing the TrueName for a data item to a list of names, e.g. "comparing at least some of the contents of the computers to the list of True Names to determine whether unauthorized or unlicensed copies of some of the plurality of data files are present on those computers" (claim 31) and "comparing the True Names of at least some of the contents of a computer to the list of True Names to determine whether unauthorized or unlicensed copies of some of the plurality of data files are present on that computer" (claim 35).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

30.     Similarly, many claims of the '280 patent describe receiving a request for a data item which includes a TrueName and then providing the file.  As taught in the shared specification, one of ordinary skill would know that these claims refer to the use of the TrueName registry to locate the data in the system.  These include:

- '280 patent, claim 1: "responsive to a request for the particular data file, the request including at least the data identifier of the particular data file, providing the particular data file from a given one of the servers of the network of servers, said providing being based on the data identifier of the requested data item"

- '280 patent, claim 9: "responsive to a request for the particular data file, the request including at least the data identifier of the particular data file, causing a copy of the particular data file to be provided from a given one of the servers of the network of servers." Similar limitations are in many other claims, including claims 10, 18, and 23-27.

- '280 patent, claim 31: "in response to a request for the particular data file, the request including at least the MD5 hash of the particular data file, providing the particular data file from a given one of the servers of the network of servers, said providing being based on the MD5 hash of the particular data file"

- '280 patent, claim 34: "in response to a request for the particular data file, the request including the other data identifier of the particular data file, providing the particular data file from a given one of the servers of the network of servers, said providing being based on the other data identifier which was determined using the message digest function"

- '280 patent, claim 35: "in response to a request for the particular data file, the request including at least the data identifier of the particular data file, providing the particular data file from a given one of the servers of the network of servers."

31.     The claims of the '310 patent also disclose these limitations.  First, claims 5 and 60 disclose a database "wherein said database comprises a table or a list comprising said plurality of identifiers," and claims 61 and 62 disclose that the database includes a table.  Further, other claims of the '310 patent disclose comparing the unique identifier to a set of other unique identifiers including via the use of a database, as shown in the exemplary limitations below:

- '310 patent, claim 1: "ascertaining whether or not the content-based name for the particular data item corresponds to an entry in a database comprising a plurality of identifiers." Claim 66 is nearly identical.

- '310 patent, claim 41: "using at least the content-based name of the particular data item and information in the database to determine whether or not to allow the particular data item to be provided to computers in the network of computers."

32.     The final steps, highlighted in orange in the table above, relate to only providing a

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

data item if it is licensed or authorized, where the comparison used in the limitations above  is used to determine whether the item is licensed or authorized.  That is, the limitations are directed to using the license table or database to determine whether the item is licensed and only providing the item if so.  These limitations are:

- Claim 25 of the '420 patent: "based at least in part on said ascertaining in step (B), selectively allowing a copy of the particular sequence of bits to be provided to or accessed by or from at least one of the computers in a network of computers, wherein a copy of the sequence of bits is not to be provided or accessed without authorization"

- Claim 166 of the '420 patent: "(a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers wherein the data item is not to be made available for access or provided without authorization"

These limitations are disclosed in the '442 patent, the '280 patent, and the '310 patent as shown below.

33.     In the '442 patent, many independent claims include a limitation which requires providing access to a data item only if it is either licensed, authorized or both, for example:

- '442 patent, claims 1, 6: "wherein a copy of the requested file is only provided to licensed parties"

- '442 patent, claim 7: "wherein a copy of the requested file is not provided to unli-censed parties or to unauthorized parties"

- '442 patent, claims 8, 9: "wherein the requested file is not provided to unlicensed parties"

- '442 patent, claim 11: "allowing the file to be provided from one of the computers having an authorized or licensed copy of the file"

- '442 patent, claim 14: "causing the contents of the data file to be provided from a computer having a licensed copy of the data file"

- '442 patent, claim 45: "wherein the requested file is only provided to authorized or licensed parties."

34.     Similarly, claim 30 of the '280 patent discloses "ensuring that a data file is not used by an unauthorized party" when responding to a request for a data file including a True Name.

35.     Finally, many claims of the '310 patent include limitations directed to limiting ac-cess to authorized/licensed users when a request is made.  For example,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- '310 patent, claim 1: "based at least in part on said ascertaining in (b), determining whether or not access to the particular data item is authorized"

- '310 patent, claim 2: "causing access to the particular data item to be denied when it is determined that access to the particular data item is not authorized"

- '310 patent, claim 3: "wherein said step (c) of determining comprises: determining whether or not the particular requestor is authorized"

- '310 patent, claim 16: "authorizing access to the particular data item when it is not determined that the data item is unauthorized"

- 310 patent, claim 20: "permitting the content to be provided to or accessed by the at least one other computer if it is not determined that the content is unauthorized or unlicensed, otherwise, (B) if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed by the at least one other computer"

- '310 patent, claim 41: "using at least the content-based name of the particular data item and information in the database to determine whether or not to allow the particular data item to be provided to computers in the network of computers"

- '310 patent, claim 63: "wherein the plurality of identifiers in the database are identifiers of licensed content items"

- '310 patent, claim 67: "based at least in part on said content-dependent name of said particular data item, selectively permit the content to be provided to or from at least one other computer if providing of the content is not determined to unauthorized or unlicensed"

36.    In sum, claims 25 and 166 of the '420 patent are not patentably distinct from the claims of the '442 patent, the '280 patent, or the '310 patent. Further, not only was each limitation of claims 25 and 166 found in the claims of those patents, but the key conceptual steps of the claims were also claimed together in the same way in several claims, including in claim 2 of the '310 patent. Claim 2 depends from independent claim 1 and accordingly includes all of claim 1's limitations. To illustrate this point, I have shown the claim 166 of the '420 patent and claim 2 of the '310 patent below, identifying the corresponding limitations in context.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| Claim 166 of the '420 Patent | Claim 2 of the '310 Patent |
|---|---|
| 166. A system comprising hardware, including at least a processor, and software, in combination with said hardware to:<br>(A) for a particular data item in a set of data items, said particular data item comprising a corresponding particular sequence of bits:<br>(a1) determine one or more content-dependent digital identifiers for said particular data item, each said content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item, wherein two identical data items will have the same digital identifiers as determined using said given function; and<br>(a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without authorization, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item. | 1. A computer-implemented method in a system which includes a network of computers, the method implemented at least in part by hardware comprising at least one processor, the method comprising the steps:<br>(a) at a first computer, obtaining a content-based name for a particular data item from a second computer distinct from the first computer, the content-based name being based at least in part on a function of at least some of the data which comprise the contents of the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items will have the same content-based name;<br>(b) by hardware in combination with software, a processor at said first computer ascertaining whether or not the content-based name for the particular data item corresponds to an entry in a database comprising a plurality of identifiers; and<br>(c) based at least in part on said ascertaining in (b), determining whether or not access to the particular data item is authorized.<br><br>2. A method as recited in claim 1 further comprising:<br>(d) based at least in part on said determining in (c), causing access to the particular data item to be denied when it is determined that access to the particular data item is not authorized. |

**B.   The Asserted Dependent Claims Are Not Patentably Distinct from the Patents Asserted in the 2011 Texas Case.**

37.     PersonalWeb also asserts a number of claims of the '420 patent that depend from claim 25.  These limitations are also present in the previously-asserted TrueNames patents.

38.     Claim 26 of the '420 patent recites, "wherein the plurality of identifiers is in a table comprising said plurality of identifiers."  Claim 27 recites "wherein the plurality of identifiers is in a database comprising said plurality of identifiers." As I explained above, many claims of the '442 patent, the '280 patent and the 310 patent disclose the use of a table, list or database of identifiers. (*Supra* ¶¶ 28–31.)  Although the disclosures discussed above would disclose these limitations to one of ordinary skill in the art, the following limitations specifically teach claims 26 and 27:

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- Claim 31 of the '442 patent: "comparing at least some of the contents of the computers to the list of True Names to determine whether unauthorized or unlicensed copies of some of the plurality of data files are present on those computers"

- Claims 5 and 60 of the '310 patent: "wherein said database comprises a table or a list comprising said plurality of identifiers"

39.    Claims 29 and 30 of the '420 patent describe particular types of identifier.  Namely, claim 29 recites "wherein the first content-dependent name for the particular sequence of bits comprises a digital fingerprint of the particular sequence of bits."  The specification does not define or use the term "fingerprint" outside of the claims.  Given the disclosures of the specification, one of ordinary skill in the art would understand this term to mean a unique identifier data based on its contents, i.e. the same type of identifier discussed throughout the specification.  Similarly, claim 30 of the '420 patent recites, "wherein the first content-dependent name for the particular sequence of bits is a True Name of the particular sequence of bits."  As I discuss above, this disclosure is found throughout the '442, '280 and '310 patents, including in claims 15 and 16 of the '442 patent, which respectively recite "wherein the function is a message digest function or a hash function" and "wherein the function is selected from the functions: MD4, MD5, and SHA."

40.    Claims 34 and 35 of the '420 patent are concerned with the source data for the True Name.  Claim 34 recites "wherein the first content-dependent name for the particular sequence of bits was determined using all of the bits in the sequence of bits" and claim 35 recites "wherein the first content-dependent name for the particular sequence of bits was determined using only bits in the sequence of bits."   These limitations are also found throughout the claims of the '442, '280 and '310 patents.  First, the very purpose of the True Name patents is that "data items are identified by substantially unique identifiers which depend on all of the data in the data items and only on the data in the data items."  '442 patent at 1:16-19.  Nearly every independent claim of the '442 patent requires that the "the data used by the given function to determine the name comprises the contents of the data file" (claim 1) or some similar variation.  The '280 patent also repeatedly discloses these limitations, including in claim 1, which recites in part, "wherein said data used by the given function to determine the data identifier comprises the contents of the particular data file" and in claim 34, which recites "including a data identifier determined using a message digest function of the contents

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of the particular data file." The '310 patent also discloses these limitations, including in claim 11, which recites "wherein the content-based name of the particular data item is based, at least in part, on a function of all of the data which comprise the contents of the particular data item" and claim 26, which recites "wherein the content-based name of the particular data item is based on a function of only the data which comprise the contents of the particular data item."

41. Claim 32 of the '420 patent recites "where said first content-dependent name of the particular sequence of bits corresponds to an identifier of the first plurality of identifiers when said first content-dependent name of the particular sequence of bits exactly matches the identifier of the first plurality of identifiers," when the content-dependent name is equal to the identifier. Given that the purpose of the True Names patents is to accurately identify data items with content-based names, the typical—and only disclosed—manner in which the claimed systems and methods function is where a True Name is compared to other True Names to find a match, as with the registry of True Names described in the specification. Specific claims that spell this out in more detail include claim 35 of the '442 patent, which describes comparing a True Name for a file, created with an MD5 digest of the file contents, to another set of True Names. Because hash or message digest functions like MD5 are designed to be one-way, the output value does not provide information about the input file. Accordingly, the only reason one of ordinary skill in the art would compare MD5 digests is to identify exact matches, which indicate that the input files are the same Accordingly, claim 35 of the '442 patent discloses this limitation. Claim 32 is also disclosed by claim 51 of the '310 patent, which recites in part: "wherein the content-based name for the particular data item corresponds to an entry in the database when the content-based name for the particular data item matches one of the plurality of identifiers in the database."

42. Claim 36 of the '420 patent recites: "wherein particular sequence of bits comprise a file." This limitation, too, is disclosed by each of the '442, '280 and '310 patents. With respect to the '442 patent, every independent claim recites a file for which a True Name is obtained or used, such as claim 1, which recites "obtaining a name for a data file." Similarly, many claims of the '280 patent, including claim 1, recite "determining a data identifier for a particular data file." Finally, the '310 patent also discloses files, including in claim 14, which discloses in part: "wherein

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  the particular data item is selected from the group comprising: a file….”

2      43.      In sum, it is my opinion that the '420 patent has essentially the same claim scope as

3  the other PersonalWeb patents.

4  **VI.      THE HTTP PROTOCOL**

5      44.      Most of the network traffic on the modern World Wide Web (the "web") is sent via

6  the Hypertext Transfer Protocol (HTTP).  HTTP is an application protocol that provides the foun-

7  dation for data communication for distributed and collaborative hypermedia information systems,

8  such as the Web.  **Exhibit 2**, R. Fielding et al, Request for Comments: 2616, Hypertext Transfer

9  Protocol –HTTP/1.1 ("HTTP Spec.") at Abstract.  Version 1.1 of the protocol was standardized

10 over the past 20 years (starting in 1997) under the auspices of the Internet Engineering Task Force

11 (IETF) and the World Wide Web Consortium (W3C) in a series of "Requests for Comment," or

12 "RFCs."  HTTP is used on the web both to access webpages of a website from a web browser and

13 for communicating between the servers and services that power websites.

14     45.      The HTTP specification defines a request–response protocol using a client–server

15 interaction model.  HTTP requests and responses can include special directives called "headers"

16 that provide instructions and information to the receiving system, such as error codes and other

17 status messages, or additional instructions or requests beyond the identity of the requested resource.

18 Request messages include a "method" that conveys the desired action for the server to perform and

19 a "resource" on which the action is performed.  HTTP Spec. at § 5.  For example, when a user visits

20 the Amazon website, his or her web browser (client) will send an HTTP request message that in-

21 cludes the "GET" method and the resource "www.amazon.com/."

22     46.      A common use case of HTTP is for the communication between "web clients" (such

23 as a web browser running on a desktop, laptop, or mobile device) and "web servers" (individual or

24 clusters of computers hosting a website either at an enterprise or in a cloud computing environ-

25 ment).  When visiting a website, the user can click on hyperlinks shown by a web browser to move

26 to a new webpage.  Under the hood, each click of a link causes the web browser to make an HTTP

27 request for a particular resource identified by a Uniform Resource Locator (URL).  The web server

28 receives the request and sends a response which includes the requested content along with various

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

headers.

### A.   HTTP Caching and Content Delivery Networks

47.      Generally speaking, caching is a technique used in computer hardware or software to store data after an initial request so that future requests for that data can be serviced faster than fetching it each time.  That is, copies of a resource are stored locally (as in a web browser cache) or in an otherwise more convenient location (as in the CDN servers described below) in order to speed-up access to future requests for that data.

48.      When a web browser caches an HTTP response, the browser or other client may not need to contact the server for subsequent requests for the requested resource and can instead use the local cached copy to service future requests.

49.      A Content Delivery Network (CDN) is a globally-distributed network of web servers that are used to cache data.  CDN servers are a type of "proxy server," so-called because they act as a proxy to web requests.  That is, a request to a given website might actually be serviced by a server within a CDN.  Requests are directed to CDN servers that can respond to the requesting user faster because they are closer geographically to the requesting user and/or have fewer requests to service than the server hosting the website, which is called the "origin server."  CDN servers typically cache data that they have received from the "origin server" in order to provide faster responses.  If a CDN server receives a request from a user's browser for a resource it does not have in its cache, it will request it from the origin server.  Once received from the origin server, the CDN server will send the requested resource back to the requesting browser and store it in its own cache. CDN servers typically manage their caches using the same HTTP caching mechanisms as a web browser.

50.      The HTTP specification "includes a number of elements intended to make caching work as well as possible."  HTTP Spec. at 47 (§ 13 Caching in HTTP).  HTTP includes several headers related to caching which can be included in either requests or responses.  For example, HTTP cache headers can include a "max-age" parameter that defines the length of time, in seconds, that the response data may be considered "fresh" and therefore reused without further validation. These parameters can be used by both web browsers and CDN servers.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

51.     Another caching-related header that the HTTP specification defines is the Entity Tag, or "ETag." "Entity tags are used for comparing two or more entities from the same requested resource." *Id.* at § 3.11.  ETags let HTTP clients see if an HTTP resource has changed.  By comparing the stored ETag for a cached copy of an HTTP resource to the ETag currently on the server, a cache can determine whether it has the same entity.  HTTP specifically allows for ETags of various kinds, which may or may not be based on the content of the data item. *Id.* at § 3.11.  ETags were added to the HTTP protocol as part of the revisions made from HTTP version 1.0 to version 1.1, and the specified operation of ETags has not changed since then.

52.     There is no requirement that ETags be content-based or identical across different resources.  Indeed, the HTTP specification explicitly cautions against making this assumption. *Id.* at § 3.11 ("The use of the same entity tag value in conjunction with entities obtained by requests on different URIs does not imply the equivalence of those entities.").[3]  An ETag can have a value unrelated to the content of the resource, such as a version number. *Id.* at § 13.3.3 ("One example of a strong validator is an integer that is incremented in stable storage every time an entity is changed.").  Whether to use content-based ETags is up to the organization running the web service.

53.     In order to use ETags to determine whether a cached resource is current, the HTTP specification includes optional request headers called "If-None-Match" and "If-Match." *Id.* at §§ 3.11, 14.24, 14.26.  Using these headers with a request makes the request conditional.  When they are used with GET, it is called a "conditional GET."

54.     Sending the "If-None-Match" header with a GET request asks the server to send the full resource only if none of the supplied ETag values match the current value. *Id.* at § 14.26 ("A client that has one or more entities previously obtained from the resource can verify that none of those entities is current by including a list of their associated entity tags in the If-None-Match header field.").  A client might have multiple saved ETags corresponding to multiple versions of the same cached resource.  If none of the ETags match what is at the server, the current version would be returned.  If an ETag does match, the server sends a response code called "304 (Not

---

[3] A "URI," or Uniform Resource Identifier is an identifier for a resource generally, a URL is a type of URI that specifies the location of the resource, as is the case for web URLs.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Modified)" and includes the current ETag so that the client knows it has the current version of the resource and which cached version is correct. *Id.*

55.    Sending the "If-Match" header with an ETag value or values will fetch the requested data only if one of the ETags in the list is the same as the ETag of the current resource, the server will respond with a success response code and the resource, as if there were no "If-Match" header. If none of the tags match, the server will return an error response code called "412 (Precondition Failed)." *Id.* at § 14.24.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November __28__, 2018 at _____Amherst, MA_____.


_____

Prashant Shenoy