Michael A. Sherman (SBN 94783)
masherman@stubbsalderton.com
Jeffrey F. Gersh (SBN 87124)
jgersh@stubbsalderton.com
Sandeep Seth (SBN 195914)
sseth@stubbsalderton.com
Wesley W. Monroe (SBN 149211)
wmonroe@stubbsalderton.com
Stanley H. Thompson, Jr. (SBN 198825)
sthompson@stubbsalderton.com
Viviana Boero Hedrick (SBN 239359)
vhedrick@stubbsalderton.com
STUBBS, ALDERTON & MARKILES, LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403
Telephone:   (818) 444-4500
Facsimile:    (818) 444-4520

**Attorneys for PersonalWeb Technologies, LLC
and Level 3 Communications, LLC**
[Additional Attorneys listed below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PERSONALWEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | **CASE NO.: 5:18-md-02834-BLF**<br><br>Case No.: 5:18-cv-00767-BLF |
| AMAZON.COM, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PERSONALWEB TECHNOLOGIES, LLC, et al.,<br><br>Defendants. | **DECLARATION OF PATRICK MCCLORY IN SUPPORT OF PERSONALWEB TECHNOLOGIES, LLC AND LEVEL 3 COMMUNICATIONS, LLC'S OPPOSITION TO AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT ON DECLARATORY JUDGMENT CLAIMS AND DEFENSES UNDER THE CLAIM PRECLUSION AND KESSLER DOCTRINE** |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Counterclaimants,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON WEB SERVICES, INC.,<br><br>Counterdefendants. | Date:   February 7, 2019<br>Time:   2:00 PM<br>Dept.:   Courtroom 3, 5th Floor<br>Judge:   Hon. Beth L. Freeman<br><br>Trial Date:   March 16, 2020 |

DECLARATION OF PATRICK MCCLORY
ISO PWEB'S OPPOSITION TO AMAZON'S
MSJ UNDER CP AND KESSLER DOCTRINE

CASE NO: 5:18-md-02834-BLF
CASE NO: 5:18-cv-00767-BLF

4813-1154-0869, V. 3

I, Patrick McClory, declare as follows:

1. I am over the age of 18 and competent to make this declaration. The facts herein are, unless otherwise stated, based upon personal knowledge, and if called upon to do so, I could, and would testify to their truth under oath. I submit this declaration in support of PersonalWeb and Level 3 Communications' Opposition to Amazon.com, Inc., and Amazon Web Services, Inc.'s Motion for Summary Judgment of Declaratory Judgment Claims and Defenses Under the Claim Preclusion and Kessler Doctrine.

2. I was an Amazon Web Services Certified Solutions Architect from 2013 to 2015, an Amazon Web Services Certified Developer from 2014 to 2016, and a Senior Consultant employed by Amazon Web Services from 2013 to 2014. Additionally, I have been consulting to customers on the use of AWS since 2011 and continue to advise customers in their use of this platform both from a strategic and an engineering perspective. I am personally familiar with the Amazon Web Services product called "Simple Storage Service", "Amazon S3" or simply "S3," having consulted on hundreds of projects involving S3. A summary of my experience and qualifications profile is attached hereto as Exhibit A.

3. S3 includes several sub-systems servicing an entire suite of features including: storing objects up to 5 terabytes in size; migrating data; configuring lifecycle policies; creating, updating, and deleting tags for objects; copying objects between buckets; replacing object tag sets; modifying access controls; restoring archived objects from archival subsystems such as Amazon Glacier; implementing version control; replicating objects across AWS Regions; managing access; and applying encryption and controlling access to stored data.. These features are described, for example, in AWS's Frequently Asked Questions and S3 descriptions, true and correct copies of which are attached hereto as Exhibits B-D.

4. I am personally familiar with an S3 functionality called "multipart upload." Multipart upload is a process by which an S3 customer using an S3 interface can upload large objects (up to 5 terabytes) to S3. The process requires a series of transactions in which a customer, sometimes using an AWS-provided tool such as the AWS S3 CLI (Command Line Interface), breaks up an object into smaller parts, uploads each part temporarily to S3, and then instructs S3 to assemble the parts together

to form the multipart object to be stored on S3. The parts are stored temporarily in S3 during a multipart upload, and cannot be accessed by an anonymous browser, *i.e.*, a browser operated by someone who does not have credentials to access the S3 bucket to which the multipart upload is being made. The parts also cannot be accessed by the S3 customer except with the CompleteMultipartUpload command. The parts are only stored long enough to create the aggregate object but are not otherwise accessible once a multipart upload is completed or aborted by the S3 customer.

5. As part of the multipart upload process, an S3 user may generate MD5 hashes for each part that is being uploaded, to be compared to the S3 server-calculated ETag for each respective part. The ETag for a multipart upload part is an MD5 hash of the content of that part. These ETags are generated for each part and used to verify the part did not get corrupted during the upload. Only if the part's content did not get corrupted will it be used by S3 to assemble the parts into the large object for storage when the customer sends a "CompleteMultipartUpload" command. As part of the process, an S3 customer can use S3 specific multipart upload commands to copy an object that they previously had uploaded to S3 and use it as one of the parts that form the final Multipart upload object.

6. I have been informed that PersonalWeb was a plaintiff in *PersonalWeb Technologies LLC and Level 3 Communications v. Amazon.com, Inc, et al.*, Case No. 6:11-cv-00658 in the Eastern District of Texas ("the Texas Action"). I was provided and reviewed the claim charts for the Preliminary Infringement Contentions ("PICs") for the patents asserted in the Texas Action in which PersonalWeb identified aspects of the Amazon Simple Storage Service ("S3") as the accused instrumentality, produced in this current litigation at AMZ_PWT_00005796-5838, AMZ_PWT_00005848-5925, AMZ_PWT_00005941-5986, AMZ_PWT_00005994-6147, AMZ_PWT_00006159-6254, and AMZ_PWT_00006264-6374.

7. Upon reviewing the PICs, I reached the conclusion that they were directed to the multipart upload functionality of S3. I reached this conclusion by reviewing the evidence cited in the charts. For example, the chart for U.S. Patent No. 7,802,310 contains the following statements and citations to evidence:

a. "When performing a multipart upload, Amazon S3 automatically generates a hash to identify and retrieve the data being uploaded."

b. "Objects greater than 5GB in size require the use of the multipart upload API."

c. A description of the use of ETags in multipart uploads, including a graphic of a description of the ETag response header from the S3 API Reference.

d. An excerpt of the S3 Developer Guide stating that "[m]ultipart uploading is a three-step process…"

e. An excerpt of the S3 Developer Guide describing the "Parts Upload Step" for a multipart upload.

f. An excerpt of the S3 Developer Guide describing the "Multipart upload Completion (or Abort)" step for a multipart upload.

g. A description of a sample PUT request from the S3 Developer Guide as including "the upload ID that you get in response to your Initiate Multipart upload request."

h. A description of a sample response to a PUT request from the S3 Developer Guide as including "the ETag header" and a statement that "[y]ou need to retain this value for use when you send the Complete Multipart upload request."

i. An excerpt from the S3 API Reference describing the Complete Multipart upload operation, graphics from the S3 API Reference showing the request and response elements for the operation, sample syntax from the S3 API Reference for a POST request used to carry out the for the Complete Multipart upload operation, and a sample response that "indicates that an object was successfully assembled," including the xml tag "CompleteMultipartUploadResult."

j. Excerpts from the S3 API Reference showing how a PUT request can be used to copy bytes from an existing object to make it a part during a multipart upload operation using the x-amz-copy-source header.

k. Excerpts from the S3 API Reference showing the behavior of conditional headers used with the x-amz-copy-source header during a multipart upload.

8. Based on my experience with the S3 multipart upload functionality, I recognize that the above statements referred to operations performed during multipart upload. They are not referring to operations performed during the service of webpage files to anonymous browsers in response to requests from an anonymous browser. In order to use S3 to serve webpage files to anonymous browsers, an S3 customer has to take affirmative steps to make an S3 bucket available as a website endpoint, as opposed to a REST endpoint which is the normal, default endpoint for a multipart uploaded object, as shown, for example, on pages 87-96 and 338-339 of the S3 Developer Guide produced in this case at AMZ_PWT_00000278. True and correct copies of pages 87-96 and 338-339 of the S3 Developer Guide are attached as Exhibit E hereto. Alternatively, an S3 customer would have to configure an S3 bucket, or a specific object in an S3 bucket, to be publicly accessible, and therefore capable of being referenced in a URI. This public accessibility is not the default configuration.

9. The Preliminary Infringement Contentions also contained excerpts from the S3 API Reference showing how GET and HEAD operations are implemented and how a PUT request can be used to copy an existing object using the x-amz-copy-source header. Conditional HTTP GET requests are not used during Multipart upload. Using the x-amz-copy-source header in a PUT request may be used to copy an object previously stored on S3 but would use the ETag in a different way than a conditional HTTP GET request. The x-amz-copy-source header in a PUT request would be acted on upon an ETag match of uploaded client data, whereas in a conditional HTTP GET request an If-None-Match header would be acted on upon an ETag mismatch of cached server data.

10. All the evidence described in paragraphs 7 and 9 above was recited in support of all the Preliminary Infringement Contentions directed to the Multipart upload feature of S3 for the asserted patents in the Texas Action. Therefore, my conclusions above regarding the '310 Patent Preliminary Infringement Contentions applies to all the Preliminary Infringement Contentions directed to S3 for the asserted patents, *i.e.*, that all are directed to the Multipart upload feature of S3.

11. To summarize, anonymous browsers (meaning browsers without access to AWS account credentials) cannot use the S3 Multipart upload features without additional coordination via an application that has access to an appropriate set of AWS account credentials. The S3 multipart upload series of transactions simply does not involve serving S3 object content using conditional

HTTP GET requests. From the perspective of a network engineer, the S3 Multipart upload system and the website endpoint system involve different network transactions and configurations. They are different processes operating in different ways to provide different functionality to different types of customers using S3 in different ways. In one, the customer uses certain functionalities of S3 to upload large files in order to store them for a given period of time; in the other, the customer uses other functionalities of S3 to control the distribution of webpage content to anonymous browsers and to instruct them when they are re-permitted to re-use previously cached webpage content or must instead get new webpage content in rendering a webpage. These respective distinct functionalities involve different transactions, use ETags in different methods, and are priced differently.

12. I am familiar with an Amazon product called CloudFront, which is a content delivery network, or CDN. A CDN is a server that acts as temporary storage and temporarily stores requests to further downstream servers to optimize bandwidth for end users as well as website operators. They reduce unnecessarily redundant requests for the same resource by serving the same content from the CDN's local and temporary storage rather than making requests to the origin server. CloudFront always was and is a separate product from S3. In my review of the charts for the PICs for the Texas Action, I did not see anything relating to CloudFront as an accused instrumentality.

I declare under penalty of perjury under the laws of the United States of America that the foregoing I true and correct.

Executed on January 9, 2019 in Carlsbad, California.

Patrick McClory