1
2
3          **UNITED STATES DISTRICT COURT**
4          **NORTHERN DISTRICT OF CALIFORNIA**
5          **SAN JOSE DIVISION**
6

7    IN RE: PERSONALWEB                    Case No.  18-md-02834-BLF
     TECHNOLOGIES, LLC, ET AL. PATENT
8    LITIGATION
                                           **ORDER GRANTING IN PART AND**
9                                          **DENYING IN PART AMAZON'S**
                                           **MOTION FOR SUMMARY**
10                                         **JUDGMENT**
11                                         [Re:  ECF 315]
12
13
14        PersonalWeb Technologies LLC and Level 3 Communications, LLC (collectively,

"PersonalWeb") allege patent infringement by Amazon.com, Inc. and Amazon Web Services, Inc.

(collectively, "Amazon"), and separately by dozens of customers of Amazon, related to the

customers' use of Amazon's S3 in connection with downloading files from S3. However,

PersonalWeb previously sued Amazon in the Eastern District of Texas ("the Texas Action") for

infringement of the same patents by the same product.

        Amazon now seeks summary judgment under claim preclusion and the related *Kessler*

doctrine, arguing that PersonalWeb's current lawsuits are barred by the prior action. PersonalWeb

counters that claim preclusion does not apply because the instant litigation involves a different

feature of S3 than what was accused in the Texas Action. PersonalWeb further argues that the

instant litigation does not involve the same parties or their privies and that the previous litigation

did not end in a final judgment on the merits.

        The Court has considered Amazon's motion for summary judgment of Amazon's

declaratory judgment claims and defenses under the claim preclusion and *Kessler* doctrines, ECF

No. 315 ("Mot."), PersonalWeb's opposition, ECF No. 334 ("Opp."), Amazon's reply, ECF No.

350 ("Reply"), and PersonalWeb's sur-reply, ECF No. 354-1 ("Sur-reply").

For the reasons discussed below, Amazon's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

### A.  Procedural Background

Beginning in January 2018, PersonalWeb filed numerous lawsuits against Amazon's customers alleging infringement related to their use of Amazon S3. *See, e.g.*, Case No. 18-cv-00149-BLF, ECF No. 1 ¶ 56 ("Defendant has utilized . . . both hardware and software hosted on the Amazon S3 hosting system."). On February 5, 2018, Amazon filed a complaint for declaratory judgment against PersonalWeb, seeking to preclude PersonalWeb's infringement actions against Amazon's customers. ECF No. 18-cv-767-BLF ("Amazon DJ Action"). On February 27, 2018, PersonalWeb filed a motion for transfer and consolidation of pretrial proceedings before the Judicial Panel on Multidistrict Litigation (JPML). MDL No. 2834, Dkt. No. 1. On June 7, 2018, the JPML transferred and assigned to this Court all then-existing cases comprising this MDL. ECF No. 1. Following consolidation of the MDL, additional cases were related or transferred to this Court. *See* ECF Nos. 23, 42, 44, 158, 160, 311.

On September 26, 2018, this Court ordered that it would proceed with the Amazon DJ Action first. ECF No. 157. At that time, the Court stayed the proceedings in the "customer cases" (any case comprising this MDL other than the Amazon DJ Action). *Id.* On October 3 and 4, 2018, PersonalWeb filed amended complaints in the customer cases and an amended counterclaim in the Amazon DJ Action. ECF Nos. 175-257.

During the November 2, 2018 Case Management Conference, the Court raised the concern that a verdict against Amazon in the Amazon DJ Action may leave unresolved issues as to the liability of the other defendants in the customer cases. ECF No. 300 at 4. After considering the parties' oral and written statements, the Court designated *PersonalWeb v. Twitch*, 18-cv-05619-BLF as a representative customer case. Order Re Representative Customer Case, ECF No. 313. PersonalWeb represented to the Court that PersonalWeb would not be able to proceed against the defendants in the other customer cases if it lost against Twitch. Nov. 2, 2018 Case Mgmt. Conf.,

1   ECF No. 300 at 6. The Court ordered the stay lifted as to Twitch and ordered that Twitch shall

2   participate in all proceedings. Order Re Representative Customer Case, ECF No. 313 at 3.

3   Accordingly, for purposes of discussing Amazon's motion for summary judgment, the Court relies

4   on PersonalWeb's pleadings against Twitch as representative of PersonalWeb's pleadings in the

5   customer cases. ECF No. 198 ("Twitch Compl."). The Court also refers to the operative complaint

6   in the Amazon DJ Action. *See* 18-cv-767-BLF, ECF No. 36 ("DJ Compl.").

7   **B. Factual Background Regarding the Technology**

8   **1. Patents-In-Suit**

9   In the earliest complaints filed in the customer cases, PersonalWeb alleged infringement of

10  U.S. Patent Nos. 5,978,791 (the "'791 patent"), 6,928,442 (the "'442 patent"), 7,802,310 (the

11  "'310 patent"), 7,945,544 (the "'544 patent"), and 8,099,420 (the "'420 patent") (collectively,

12  "patents-in-suit").[1]  *See, e.g.*, Case No. 18-cv-00149-BLF, ECF No. 1 ¶ 1. All five patents share a

13  specification and each claims priority to a patent filed on April 11, 1995. All of the patents-in-suit

14  have expired, and PersonalWeb's allegations are directed to the time period prior to their

15  expiration. Twitch Compl. ¶ 18. PersonalWeb has dropped the '791 patent from the operative

16  complaints in the customer cases and its counterclaim against Amazon; however, Amazon's FAC

17  in the DJ Action still includes the '791 patent. DJ. Compl. ¶¶ 49-56.

18  In its complaint, PersonalWeb represents that the patents-in-suit address the problem of

19  how to efficiently name and identify files on a computer network. Twitch Compl. ¶ 11. The patent

20  specification describes the alleged problem that the patents address: "[t]he same [file] name in two

21  different [folders] may refer to different data items, and two different [file] names in the same

22  [folder] may refer to the same data item." '442 Patent at 2:15-17 (available at ECF No. 315-3).

23  PersonalWeb's complaint explains that the patents-in-suit involve using a cryptographic hash

24  function to produce a content-based "True Name" identifier for a file, which "ensure[s] that

25  identical file names refer[] to the same data, and conversely, that different file names refer[] to

26

27  _____

28  [1] PersonalWeb does not allege infringement of the '544 patent in its counterclaim against Amazon. ECF No. 257. However, Amazon includes the '544 patent in its complaint in the DJ Action. DJ Compl. at 18.

United States District Court
Northern District of California

United States District Court
Northern District of California

1 different data." Twitch Compl. ¶¶ 13, 15-17. For a small file, "[a] True Name is computed using a

2 [hash] function . . . which reduces a data block . . . to a relatively small, fixed size identifier, the

3 True Name of the data block, such that the True Name of the data block is virtually guaranteed to

4 represent the data block B and only data block B." '442 Patent at 12:58-63. Larger files are split

5 into smaller segments. The hash function is applied to each segment, and the resulting values are

6 strung together into an indirect data item. The True Name of this indirect data item is then

7 computed. This becomes the True Name of the larger file. *Id.* at 14:16-35.

8        The summary of the invention describes multiple uses for these True Names, including (1)

9 to avoid keeping multiple copies of a given data file, regardless of how files are named; (2) to

10 avoid copying a data file from a remote location when a local copy is already available; (3) to

11 access files by data name without reference to file structures; (4) to maintain consistency in a

12 cache of data items and allow corresponding directories on disconnected computers to be

13 resynchronized with one another; (5) to confirm whether a user has a particular piece of data,

14 regardless of its name; and (6) to verify that data retrieved from a remote location is the intended

15 data. '442 Patent at 3:49-4:37. The patents-in-suit are directed to various specific aspects of this

16 system.

17       **2.   Background Regarding Website Functions**

18        In both the Twitch case and Amazon DJ Action, PersonalWeb's infringement allegations

19 involve website cache management. PersonalWeb summarizes the following relevant background

20 regarding website functioning in the Twitch Complaint. Typically, a "webpage base file" includes

21 text, formatting, and links to other web content such as images ("asset files") that make up part of

22 the webpage. Twitch Compl. at ¶ 20. An individual's web browser retrieves a webpage base file

23 from a remote web server, and then the individual's web browser retrieves the referenced asset

24 files from the same or different servers. *Id.* at ¶ 22. The web browser retrieves a webpage base file

25 or asset file by making a "GET" request to a web server using the Hypertext Transfer Protocol

26 ("HTTP"). *Id.* The web server may respond to a GET request with a response that includes the

27 requested content and may include other information or instructions. *Id.* In order to improve the

28 speed of retrieving webpages, a web browser can store a webpage base file and related asset files

in a "cache" on the local computer running the browser. *Id.* at ¶ 24. The web browser can subsequently use cached versions of the webpage or asset file, rather than having to download the same files repeatedly over the Internet. *Id.*

In addition to these local caches, files are frequently cached on "intermediate" servers. *Id.* at ¶ 25. When computers communicate on the Internet, they typically do so through a chain of intermediate servers. Like the local cache of a file, an intermediate server can use its cache to deliver files downstream, rather than needing to repeatedly make upstream requests for the same files from the originating server. A webserver can include a "cache-control" header along with an asset file. *Id.* at ¶ 26. This cache-control header tells downstream intermediate servers and web browsers whether and for how long an asset file may be used, and when the asset file should be refreshed.

Typically, website operators want a browser or intermediate server to use cached files as long as the files have not changed. *Id.* at ¶¶ 27-28. By using cached files, downstream individuals can load webpages quicker, and a web server saves bandwidth by not delivering the same data repeatedly. However, website operators want a browser or intermediate server to stop using a cached file as soon as the file has changed. *Id.* The challenge, then, is how to tell a browser when the file has changed such that the browser should download a new version of the file. PersonalWeb alleges that the "True Name" system described by its patents provide a solution to this problem of forcing a browser to download a new version of a file only when the file has changed. That solution is at the heart of the instant litigation.

### 3. Background Regarding Amazon S3

Amazon's Simple Storage Service (S3) provides web-based storage, which customers access using an Application Programming Interface (API) built according to the HTTP specification. Markle Decl., ECF No. 315-18 ¶¶ 3-4. For example, customers use an HTTP "GET" command to request a file and an HTTP "PUT" command to upload a file. *Id.* ¶ 4.

S3 generates "ETag" headers for the objects that it stores. *Id.* ¶ 9. These ETags are essentially extra bits of information that describe a file. For most objects, S3 generates the ETag using the MD5 hash algorithm. This ensures that when a file's contents change, the ETag also

5

changes. *Id.* Clients can use this ETag functionality for cache management. When a client first retrieves an object from S3, it can store it in a local cache. *Id.* ¶ 10. If the client subsequently requests the same file, S3 can compare the ETag for the file stored on S3 with the ETag for the same file stored in the client's cache. If the values are the same, "S3 saves time and network bandwidth by responding with a status code" to inform the client that the file has not been modified. *Id.* ¶ 10. If the ETags do not match, S3 will instruct the client to download the newer version of the file. *Id.* ¶ 10.

Multipart upload ("MPU") is one feature of S3. *Id.* ¶ 6. MPU allows an S3 customer to upload a large object, like a video file, as a series of parts. *Id.* Once all the parts have been uploaded, S3 can assemble them into a single file for storage. *Id.* MPU generates ETags for each uploaded part as well as for the completed object. *Id.* ¶ 9. In the MPU context, S3 uses ETags to verify the integrity of the uploaded data.

### C. The Complaint in the Texas Action

On December 8, 2011, PersonalWeb sued Amazon and its customer DropBox in the Eastern District of Texas, alleging infringement of eight related patents by Amazon's S3 service. *PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011). As discussed further below, the parties do not contest that the Texas Action involved the same patents as the instant MDL.

In the complaint in the Texas Action, PersonalWeb alleged that Amazon infringed PersonalWeb's patents "by its manufacture, use, sale, importation and/or offer for sale of . . . Amazon Simple Storage Service (S3) and Amazon ElastiCache. Amazon further contributes to and induces others to manufacture, use, sell, import, and/or offer for sale these infringing products and services." FAC Texas Action, ECF No. 315-2 ¶ 20. "For PersonalWeb's claims of indirect infringement, Amazon's end-user customers and consultants are direct infringers of the Patents-in-Suit within the PersonalWeb Patent Field." *Id.* ¶ 52. Nowhere in the Texas complaint did PersonalWeb discuss or limit its allegations to any specific features of S3.

Pursuant to the parties' stipulation, on June 9, 2014, the court in the Eastern District of Texas Action issued an order of dismissal with prejudice. ECF No. 315-7. The court entered a

6

1    final judgment dismissing all claims on June 11, 2014. ECF No. 315-8.

2        **D. The Complaints in the Instant Case**

3        PersonalWeb alleges that the instant case revolves specifically around use of ETags for

4    cache management. In its counterclaim against Amazon in the DJ Action, PersonalWeb alleges

5    that S3 uses ETags in response to "conditional" HTTP GET requests to determine whether a

6    customer's browser should reuse its cached data or download a new copy of the data. First

7    Amended Counterclaim ("FACC"), ECF No. 257 ¶¶ 36-38. PersonalWeb alleges that "Amazon

8    thereby reduce[s] the bandwidth and computation required by its S3 web host servers." *Id.* ¶ 39.

9    Specifically, PersonalWeb alleges that S3 can generate ETags for asset files that customers upload

10   to S3. *Id.* ¶ 41. In addition, even if the ETag is generated outside of S3, S3 uses the ETag in

11   response to GET requests to determine whether to send a new version of a file to a browser.

12   PersonalWeb's counterclaim alleges infringement of the '442 patent, '310 patent, and '420 patent.

13   Each of these allegations is specifically in relation to S3's cache control features.

14       The operative complaint in the Twitch case alleges that Twitch "contracted with Amazon

15   to use Amazon's S3 system to store and serve at least some of" Defendant's asset files. Twitch

16   Compl. ¶ 41. The Twitch complaint largely mirrors the counterclaim, including both the

17   background section and the specific infringement allegations. *Compare* Twitch Compl. ¶¶ 54-60

18   *with* FACC, ECF No. 257 ¶¶ 50-56. The Twitch complaint alleges infringement of the three

19   patents included in the Amazon Counterclaim as well as the '544 Patent. Twitch Compl. ¶¶ 71-81.

20       As an example of Twitch's allegedly infringing conduct, the Twitch complaint includes

21   "an asset file served by S3 with a content-based ETag generated by S3 for that asset file." Twitch

22   Compl. ¶ 51. This example relates to what PersonalWeb labels "Category 3" in the infringement

23   contentions (which are auxiliary to the complaint). As discussed in more detail below with respect

24   to the scope of the summary judgment motion, PersonalWeb accuses four categories of infringing

25   activities by Twitch, of which only Category 3 involves use of S3. The infringement allegations in

26   the Twitch complaint largely ascribe the infringing conduct to Twitch's own origin servers rather

27   than to S3 servers. *See, e.g., id.* ¶ 57.

28       In its counterclaim against Amazon, PersonalWeb alleges that the customer defendants

United States District Court
Northern District of California

7

directly infringe PersonalWeb's patents "because for each of the elements of the asserted claims, the website defendants either perform or direct and control the vicarious performance of each claimed element." FACC, ECF No. 257 ¶ 23. Alternatively, PersonalWeb alleges direct infringement by Amazon. *Id.* PersonalWeb sums up the relationship between its complaints against the customer defendants and Amazon as follows:

> In some of these actions, *inter alia*, PersonalWeb alleges that the website defendants infringe certain claims of the True Name patents through their control over and use of certain aspects of Amazon's S3 system to distribute their webpage content so that downstream intermediate caches and end-point browsers only serve/use the latest content authorized by the website defendant. In those actions, PersonalWeb also alleges that the certain website defendants also infringe certain claims of the True Name patents through the combination of their control over and use of these certain aspects of Amazon's S3 system and their control over and use of certain aspects of the website architecture they have used to produce webpages for their websites. FACC, ECF No. 257 ¶ 22.

## II.     LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party has the burden of establishing that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.     DISCUSSION

In its motion for summary judgment, Amazon argues that (1) claim preclusion bars PersonalWeb's claims in this case, and (2) the *Kessler* doctrine independently bars PersonalWeb's

United States District Court
Northern District of California

1   claims. Mot. at 2. For the reasons discussed below, the Court concludes that claim preclusion bars

2   PersonalWeb's claims regarding acts of infringement occurring prior to the final judgment in the

3   Texas Action. The Court concludes that the *Kessler* doctrine bars PersonalWeb's claims accusing

4   S3 regarding acts of infringement after the final judgment in the Texas Action.

5       **A.  Scope of the Motion**

6          As an initial matter, the parties do not dispute that Amazon's motion for summary

7   judgment does not apply to all of PersonalWeb's claims in the Twitch case. PersonalWeb

8   identifies four categories of infringing activities committed by the various customers. *See De la*

9   *Iglesia* Declaration, ECF No. 336 ¶ 6; Twitch Infringement Contentions, ECF No. 340-12.

10  Category 1 infringement involves ETags for webpage base files generated by non-S3 web servers.

11  De la Iglesia Decl., ECF No. 336 ¶ 7. Category 2 infringement involves ETags for webpage asset

12  files generated by non-S3 web servers. *Id.* ¶ 8. Category 3 infringement involves ETags for

13  webpage asset files generated by S3 web servers. *Id.* ¶ 9. Category 4 infringement involves

14  fingerprints for webpage asset files generated by non-S3 web servers. *Id.* ¶ 10. At the hearing,

15  Amazon agreed that Amazon's summary judgment motion cannot reach categories 1, 2, and 4.

16  Trans., ECF No. 376 at 24. The parties also do not dispute that Amazon's motion applies to the

17  Declaratory Judgment Action and PersonalWeb's counterclaims against Amazon.

18         As to Category 3, PersonalWeb alleges that customer infringement in this category

19  involves use of both S3 and CloudFront. Opp. at 3. The parties do not contest that S3 and

20  CloudFront are different products, nor that CloudFront was not accused in the Texas Action;

21  however, Amazon argues that PersonalWeb does not have standing to assert claims related to

22  CloudFront. Reply at 8-10.

23         PersonalWeb's right to assert the patents-in-suit is apparently governed by the agreement

24  between Kinetech, Inc., the predecessor-in-interest to PersonalWeb, and Digital Island, Inc., the

25  predecessor-in-interest to Level 3 (Kinetech-Digital Island Agreement). ECF No. 363-1, Schedule

26  1.2. Under that agreement, Level 3 retains the exclusive right to enforce all of the patents in the

27  field of "the infrastructure services of one or more managed global content delivery networks

28  (CDNs) in which a customer's content is served faster, on average, than if served from the

1  customer's origin server or the CDN can typically serve more users than a customer's origin

2  server alone; where at least some customer content on origin servers is replicated to possibly many

3  alternate servers of the CDN, many of said CDN servers being at [Internet Service Provider (ISP)]

4  sites, and where users' requests for origin content are satisfied by directing them to CDN servers."

5  *Id.*

6         Although PersonalWeb argues that the Kinetech-Digital Island Agreement does not

7  preclude its right to assert these infringement claims against Amazon's CloudFront product, the

8  Court will not analyze and resolve this issue without input from Level 3. Amazon is free to

9  challenge the inclusion of CloudFront in a separate motion and the Court will expect Level 3 to

10  either join in PersonalWeb's opposition or to file a separate opposition.

11        Accordingly, for purposes of the instant motion for summary judgment, in the Twitch case

12  the Court will only consider whether claim preclusion applies to PersonalWeb's Category 3

13  infringement claims based on use of Amazon S3. In its briefing on the motion for summary

14  judgment, PersonalWeb does not argue that its counterclaim against Amazon involves CloudFront.

15  *See, e.g.*, Opp. at 6 (Category 3 involves CloudFront "if the *website operator* separately pays

16  CloudFront to serve its S3 webpage asset files.") (emphasis added). The Court has reviewed the

17  counterclaim against Amazon and the infringement contentions against Amazon, neither of which

18  appear to mention CloudFront anywhere. ECF Nos. 257, 340-2. Nonetheless, the Court notes that

19  its analysis of claim preclusion in the Amazon DJ Action is limited to S3 and does not reach any

20  allegations based on CloudFront.

21    **B.  Claim Preclusion**

22        In a patent infringement case, the Federal Circuit applies the claim preclusion rules of the

23  regional circuit. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014). In the

24  Ninth Circuit, claim preclusion applies where the prior suit: (1) "reached a final judgment on the

25  merits;" (2) "involved identical parties or privies;" and (3) "involved the same claim or cause of

26  action." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citation

27  omitted). "Whether two claims of infringement constitute the same claim or cause of action is an

28  issue particular to patent law" to which Federal Circuit law applies. *Brain Life, LLC*, 746 F.3d at

1052.

### 1. Final Judgment on the Merits

Typically, this element is undisputed. Here, however, PersonalWeb contends that there is no prior final judgment on the merits for purposes of claim preclusion because the contracted stipulation of dismissal in the Texas Action contained express reservations limiting the dismissal's preclusive effect. Opp. at 18.

A dismissal with prejudice "constitutes a final judgment on the merits, and prevents [the plaintiff] from reasserting the same claim in a subsequent action against [the same defendant]." *Int'l Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993). The "parties can draft the terms of a settlement agreement so as to alter the preclusive effect of prior judgments," but the court will not "supply by inference what the parties have failed to expressly provide [in the settlement agreement], especially when that inference would suspend the application of this circuit's principles of res judicata." *Id.* at 1432-33 (citations omitted).

In the Texas Action, the parties' stipulation of dismissal with prejudice provided:

> Now, therefore, it is hereby stipulated, by and among Plaintiffs PersonalWeb Technologies LLC and Level 3 Communications LLC and Defendants Amazon.com, Inc., and Amazon Web Services LLC, that all claims in the above-captioned action shall, in accordance with the concurrently submitted Order of Dismissal, be dismissed with prejudice, that Defendant Amazon.com, Inc. and Amazon Web Services LLC retain the right to challenge validity, infringement, and/or enforceability of the patents-in-suit, via defense or otherwise, in any future proceeding, and that each party shall bear its own costs, expenses and attorneys' fees. ECF No. 340-1.

The stipulation contained no additional language as to the preclusive effect of the dismissal. In the Order of Dismissal with Prejudice, the Texas court specified that Amazon "retain[s] the right to challenge validity, infringement, and/or enforceability of the patents-in-suit via defense or otherwise, in any future suit or proceeding." ECF No. 315-7.

PersonalWeb submits several arguments in opposition. First, PersonalWeb argues that "PersonalWeb retained the right to pursue both the *identical* as well as *additional* patent infringement claims pertaining to the TrueName patents against Amazon, which is the only reason Amazon expressly reserved all future, substantive defense rights." Opp. at 18. However, nothing

United States District Court
Northern District of California

in the stipulation or judgment supports that contention. The stipulation is remarkably and unequivocally one-sided in favor of Amazon. The Court cannot infer that PersonalWeb retained the right to assert future infringement contentions in the absence of express language in the stipulation. *See Karr*, 924 F.2d at 1432-33; *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1346 (Fed. Cir. 2012) ("the parties' decision to depart from the normal rules of claim preclusion by agreement 'must be express'") (citation omitted)).

Second, at the hearing PersonalWeb argued that at the time of the stipulated dismissal, the parties understood that the dismissal would be construed according to *Aspex*. Trans., ECF No. 376 at 58, 69. Specifically, PersonalWeb quoted from *Aspex*: "In order to construe the settlement agreement to reach [new] products that were introduced during the several-month period before the settlement agreement was executed, we would have to conclude that the parties intended to depart from the normal rule that the products at issue in a patent suit are those in existence at the time the suit is filed." 672 F.3d at 1346. *Aspex* has to do with whether a settlement agreement applies to new products and offers no support to PersonalWeb. In this case, the very same S3 at issue in the Texas Action is again at issue here.

Additionally, in its briefing, PersonalWeb cites declarations of PersonalWeb's counsel and PersonalWeb's Non-Executive Chairman stating that the parties to the Texas Action recognized that PersonalWeb retained the right to assert infringement claims involving S3 in the future. Hadley Decl. & Bermeister Decl., ECF Nos. 335, 337. However, at the hearing, PersonalWeb conceded that it does not intend to argue that these declarations should be interpreted to modify the express language of the stipulated dismissal. Trans., ECF No. 376 at 57-58.

Because PersonalWeb did not reserve any rights in the stipulated dismissal in the Texas Action, the Court finds that the dismissal with prejudice in the Texas Action constitutes a final judgment on the merits for purposes of the claim preclusion analysis in the instant case. *See Karr*, 994 F.2d at 1429 (dismissal with prejudice constitutes judgment on the merits for purposes of claim preclusion).

### 2.  Identical Parties or Privies

For the reasons discussed below, there appears to be privity between Amazon and its

United States District Court
Northern District of California

1  customers. However, the Court does not rely solely on this conclusion to bar PersonalWeb's

2  claims. Even if the Court found no privity between Amazon and its customers with respect to

3  claim preclusion, the *Kessler* doctrine would fill the gap and thus preclude PersonalWeb's claims.

4  As discussed further below, the *Kessler* doctrine developed specifically to address customer-

5  manufacturer relationships.

6         There is no question that the Amazon DJ Action involves the identical parties as the Texas

7  Action. As to the customer cases, Amazon argues that the defendants are in privity with Amazon

8  (1) because their interests as customers are identical to Amazon's own interests in the use of S3,

9  and (2) because Amazon is indemnifying the customer-defendants in the instant actions. Mot. at 8-

10  9.

11         In the Ninth Circuit, "privity may exist . . . when there is sufficient commonality of

12  interest" between the parties. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,

13  322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation and citation omitted). Specifically, the

14  Ninth Circuit has concluded that privity exists when the interests of the party in the subsequent

15  action were shared with and adequately represented by the party in the former action. *See Shaw v.*

16  *Hahn*, 56 F.3d 1128, 1131-32 (9th Cir. 1995). Moreover, a "lesser degree of privity is required for

17  a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a

18  later action." *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

19         As to whether the technology provider-customer relationship creates privity, Amazon

20  relies primarily on another case from this district, *Adaptix, Inc. v. Amazon.com, Inc.*, No. 14-cv-

21  01379-PSG, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015). There, the court concluded that privity

22  existed between the manufacturers of 4G LTE-compatible devices and the manufacturers'

23  customers because the patent-holder "was fully aware that customers like the John Does existed

24  [and] were in possession of the allegedly infringing devices . . . yet failed to bring claims against

25  them [in the earlier litigation]." *Id.* at *6. In response, PersonalWeb cites Federal Circuit dicta and

26  a federal practice treatise for the general propositions that a manufacturer "typically is not in

27  privity with a [customer]," and unrelated parties "ordinarily do not have authority to bind each

28  other by litigation with third parties." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298,

United States District Court
Northern District of California

1306 (Fed. Cir. 2007); 18 Wright et al., Federal Practice & Procedure § 4460 (3d ed. 2018). These

authorities state only general propositions that are entirely consistent with this Court's analysis.

*Transclean Corp.* recognizes that privity exists between a manufacturer and customer "when the

parties are so closely related and their interests are so nearly identical that it is fair to treat them as

the same parties for purposes of determining the preclusive effect of the first judgment." 474 F.3d

at 1306 (internal quotations and citation omitted).

The Court agrees with Amazon that the defendants in the customer cases are in privity with

Amazon because they share the same interest in the unfettered use of Amazon's web services, and

Amazon adequately represented this interest in the Texas Action. *See Shaw*, 56 F.3d at 1131-32

(privity exists when the interests of the party in the subsequent action were shared with and

adequately represented by the party in the former action); *see also Mars Inc.*, 58 F.3d at 619 (a

"lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a

plaintiff to bind a new defendant in a later action."); *Adaptix*, 2015 WL 4999944, at *6 (customers

are in privity with manufacturer for purposes of determining preclusive effect of previous non-

infringement judgment against manufacturer). None of PersonalWeb's arguments displace the fact

that in the instant MDL, PersonalWeb sues Amazon's customers for infringement of the same

patents related to use of the same technology as PersonalWeb sued Amazon for in the Texas

Action. Moreover, PersonalWeb's indirect infringement accusations against "Amazon's end-user

customers and defendants" in the Texas Action further support the conclusion that Amazon and its

customers share the same interest in the use of S3.

As to the effect of the indemnification agreement, it is undisputed that: (1) Amazon's

customer agreement has contained an indemnification provision since June 2017, prior to the date

that PersonalWeb filed any of the complaints in the cases comprising this MDL; (2) sometime

following PersonalWeb's filing of complaints in the customer cases, Amazon agreed to indemnify

its customers; and (3) during the alleged infringement period in this case (January 2012 through

December 2016, Opp. at 10), Amazon's customer agreement did not include the indemnification

provision.

In support of its argument that privity flows from the indemnity agreement, Amazon cites a

United States District Court
Northern District of California

case from the Northern District of California with similar facts. *See SpeedTrack, Inc. v. Office Depot, Inc.*, 2014 WL 1813292 (N.D. Cal. May 6, 2014), *aff'd*, 791 F.3d 1317 (Fed. Cir. 2015). In *SpeedTrack*, the court found that the defendant-customers were in privity with the supplier of software for managing defendants' websites, and thus the customer-defendants could assert *res judicata* defensively against SpeedTrack based on the software supplier's previous non-infringement judgment. *Id.* at *6. The court explained that "[b]ecause [the software supplier] is contractually obligated to indemnify defendants for any losses stemming from a finding of infringement, the court finds that the parties are in privity." *Id.* The court reasoned that express limitations in the indemnification agreement, including language stating that "[neither] party is the agent or representative of the other party," merely defined the limits of the indemnification agreement and did not defeat the preclusive effect of the indemnification agreement. *Id.* (emphasis omitted).

For its part, PersonalWeb does not dispute that an indemnification agreement can create privity. Rather, PersonalWeb argues that the indemnification agreement in this case is insufficient to create privity because prior to June 2017 Amazon was not contractually obligated to indemnify its customers for infringement, and the agreement does not apply to claims "arising from infringement by combinations of [Amazon's services], with any other product, service, software, data, content or method." Opp. at 9-10. In addition, PersonalWeb argues that privity is improper because Amazon's customer agreement states that "neither party . . . is an agent of the other for any purpose or has the authority to bind the other." Opp. at 8. PersonalWeb fails to cite any authority in support of its arguments regarding a lack of preclusive effect flowing from the indemnification agreement.

On the specific facts before it, the Court finds that the indemnification agreement provides an additional basis to find that there is privity between Amazon and its customers for the specific "purpose[] of determining the preclusive effect of the first judgment." *Transclean Corp.*, 474 F.3d at 1306. As the court in *SpeedTrack* explained, PersonalWeb's objections regarding the scope of the indemnification agreement "merely set[] an outer limit on the relationship between [Amazon] and defendants." 2014 WL 1813292, at *6. It is undisputed that Amazon's customer agreement

1   included an indemnification provision prior to PersonalWeb's filing of any of the customer cases,

2   and that Amazon expressly assumed the defense of its customers sometime between when

3   PersonalWeb filed complaints in the customer cases and when Amazon filed its First Amended

4   Complaint in the DJ Action. Thus, Amazon assumed the indemnification of its customers prior to

5   the consolidation of the MDL, and Amazon has not turned away any customer who has asked for

6   indemnification.

7        **3.  Same Cause of Action**

8        Federal circuit law applies to the question of whether two actions for patent infringement

9   constitute the same cause of action. *See Brain Life, LLC*, 746 F.3d at 1052. The Federal Circuit

10  considers two factors to determine whether the same cause of action is present for claim

11  preclusion purposes: (1) "whether the same patents are involved in both suits" and (2) whether

12  "the products or processes are essentially the same" in both suits. *Senju Pharm. Co.  v. Apotex*

13  *Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014) (emphasis omitted). "Accused devices are essentially

14  the same where the differences between them are . . . unrelated to the limitations in the claim of

15  the patent." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (internal

16  quotations and citation omitted).

17       As to the first factor, PersonalWeb asserted infringement of the '791, '442, '310, and '544

18  patents in the Eastern District of Texas Action. PersonalWeb did not previously assert

19  infringement of the '420 patent. In its briefing, Amazon argues that the '420 patent "makes no

20  difference as a matter of law" because it is a "continuation of the twice-asserted '442 patent,

21  claims priority to the same patent application as [the other patents-in-suit], shares the same

22  specification with the other [patents-in-suit], and is limited by a terminal disclaimer." Mot. at 4. At

23  the hearing, counsel for PersonalWeb stated on the record that PersonalWeb does not contest that

24  the '420 patent alleges the same claims at issue in the Texas Action. Trans., ECF No. 376 at 75.

25  Accordingly, the Court finds that for purposes of claim preclusion, the scope of the '420 patent is

26  essentially the same as the previously asserted '442 patent. *See SimpleAir, Inc. v. Google LLC*,

27  884 F.3d 1160, 1167 (Fed. Cir. 2018) ("[W]here different patents are asserted in a first and second

28  suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted

United States District Court
Northern District of California

16

1   patent claims in the two suits is essentially the same.").

2        As to the second factor, it is undisputed that the infringement contentions in Category 3

3   involve the use of Amazon S3, the same product in dispute in the Texas Action. However, the

4   parties dispute (1) the scope of the contentions in the previous litigation and (2) whether claim

5   preclusion applies to different features of the same product.

6        **a.   Scope of the Contentions in the Previous Litigation**

7        PersonalWeb argues that claim preclusion does not apply because "[t]he Texas

8   infringement contentions were very specific to the MPU features of S3, not to S3 in general." Opp.

9   at 11. In particular, PersonalWeb argues that the conditional HTTP GET request used in the cache

10  control feature central to the instant MDL is not used in MPU. Opp. at 5. Amazon argues that the

11  complaint in the Texas Action involved the entire S3 product. Reply at 4. Moreover, Amazon

12  argues that PersonalWeb's infringement contentions in the Texas Action included the same use of

13  GET and ETags that it accuses in the instant litigation, and that PersonalWeb sought discovery

14  related to these commands in the Texas Action. Mot. at 13.

15       PersonalWeb's argument regarding the scope of the Texas Action is not persuasive. The

16  complaint in the Texas Action alleged that Amazon infringed "by its manufacture, use, sale,

17  importation and/or offer for sale of . . . Amazon Simple Storage Service." Texas Compl., ECF No.

18  315-2 ¶ 28. The complaint does not discuss any specific features of S3, does not include the words

19  "upload" or "download" anywhere, and does not limit PersonalWeb's allegations to any specific

20  features of S3. This evidence alone is sufficient for this Court to conclude that the allegations in

21  the Texas Action involved all of S3, not just a particular feature. *See Mars Inc.*, 58 F.3d at 619-20

22  (looking to the prior complaint to determine whether two cases related to the same set of

23  transactions for purposes of claim preclusion).

24       Moreover, PersonalWeb's enumerated patent claims in the Texas Action included claims

25  directed to downloading. ECF No. 340-2 at 1. PersonalWeb also made discovery requests in the

26  Texas Action including the use of GET operations related to downloading. ECF No. 350-6

27  (discovery request related to "conditional matching GET Object operation, using an eTag, such as

28  "If-Match" and "If-None-Match."); ECF No. 350-7 at 90:19-23, 91:5-8 (deposition testimony on

United States District Court
Northern District of California

17

1    conditional GET commands). The Court finds that this evidence supports Amazon's argument that

2    the Texas Action included the specific functionality accused in the instant case.

3            At the hearing, PersonalWeb offered two arguments to get around this evidence. First,

4    PersonalWeb argued that there are disputed issues of material fact as to whether the infringement

5    contentions in the Texas Action included use of the HTTP GET command. Trans., ECF No. 376 at

6    51. PersonalWeb cited the declaration of Mr. Hadley, who stated that the use of "conditional

7    HTTP GET requests containing ETags . . . was not a part of the Texas Action and PersonalWeb

8    made no contention that such uses infringed any PersonalWeb patent." Hadley Decl., ECF No.

9    337 ¶ 4. Mr. Hadley explained that "[t]he references to conditional HTTP GET requests in the

10   [Texas] Infringement Contentions" were related to showing that conditional HTTP GET requests

11   are analogous to MPU. Hadley Decl., ECF No. 337 ¶ 4.

12           The Court finds that Mr. Hadley's declaration does not create a genuine dispute of material

13   fact because the declaration is "uncorroborated and self-serving." *Villiarimo v. Aloha Island Air,*

14   *Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Mr. Hadley's recollection of the gravamen of the Texas

15   Action does not dispute the plain meaning of the Texas Complaint, infringement contentions, and

16   discovery requests. Viewing the evidence in the light most favorable to PersonalWeb, the evidence

17   shows that the discovery and infringement contentions in the Texas Action primarily involved

18   MPU but also encompassed the HTTP GET (download) command. No reasonable jury could

19   conclude otherwise. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell

20   two different stories, one of which is blatantly contradicted by the record, so that no reasonable

21   jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

22   motion for summary judgment."). Mr. Hadley's posthoc recollection of his litigation strategy is

23   simply insufficient to place this issue in dispute.

24           Second, PersonalWeb argues that the scope of the Texas Action should be limited to what

25   was included in the infringement contentions, and not the complaint. Trans., ECF No. 376 at 44-

26   45. Even if the Court agreed with PersonalWeb, the Texas infringement contentions included the

27   HTTP GET command, and thus PersonalWeb's argument fails on its own terms. Moreover, the

28   case that PersonalWeb cites does not support its argument. Contrary to PersonalWeb's description,

United States District Court
Northern District of California

18

*Wowza* involved *different versions* of the same product. *See Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 995 (N.D. Cal. 2014). During the prior case in *Wowza*, the court struck Adobe's "RTMP Enhanced" infringement theory because the theory was added to an expert report but was not in the infringement contentions. *Id.* at 991. In the second case, the court held that the RTMP Enhanced theory was not barred by claim preclusion because the "RTMP Enhanced theory [was] asserted against products released after the filing of the infringement contentions in *Wowza I*." *Id.* at 995. Thus, the RTMP Enhanced theory was not barred in *Wowza II* because it related to new products, not as PersonalWeb would have it because the court limited its claim preclusion analysis to the infringement contentions.

In sum, the Court finds that both the complaint and the infringement contentions in the Texas Action indisputably support the Court's conclusion that the Texas Action asserted infringement against all of S3 and was not limited only to MPU.

### b. Different Features of the Same Product

Even if the Texas Action involved all of S3, PersonalWeb argues that claim preclusion does not apply because "the accused *features* of S3 here and in the Texas Action were completely different." Opp. at 12. PersonalWeb argues that "MPU is priced separately from the downloading and serving features of S3." Opp. at 13. Amazon argues that "multipart upload is a *feature* of S3, not a separate product, and a feature that uses ETags no less so than single-part upload files." Mot. at 12.

As an initial matter, the Court finds that there is no genuine dispute of material fact as to whether multipart upload is a feature of S3, not a separate product. The declaration that PersonalWeb cites explains that S3 customers are charged for each individual transaction involving uploading or downloading objects and for retaining storage. Markle Decl., ECF No. 341-11 at 97-99, 101. At most, this evidence shows that Amazon charges individual prices for specific transactions within S3, not that MPU is a separate product.

The Court notes that PersonalWeb does not argue that S3 has changed in any way that is meaningful to PersonalWeb's infringement contentions, and Amazon does not argue that the differences between multipart upload and cache control are "unrelated to the limitations in the

United States District Court
Northern District of California

1    claim of the patent." *Acumed LLC*, 525 F.3d at 1324. Accordingly, the issue before the Court is

2    the legal question of whether claim preclusion applies where the later suit involves different

3    features of the same product as the original suit.

4         Amazon has pointed the Court to a single case involving similar facts. *See ViaTech Techs.,*

5    *Inc. v. Microsoft Corp.*, No. 17-570, 2018 WL 4126522 (D. Del. Aug. 28, 2018). The court there

6    explained:

> Plaintiff accused Windows alone of directly infringing the '567 patent in the First
> Action. Now, reading the Amended Complaint in the manner most favorable to
> Plaintiff, Plaintiff's direct infringement claim in the Second Action includes not
> only Windows, but other items, such as media, as well. Plaintiff has not alleged that
> adding media changes Windows, nor alleged that Windows has changed since the
> First Action. Given that Plaintiff previously asserted that Windows infringed the
> '567 patent, Plaintiff cannot once again accuse Windows of infringing the '567
> patent, but argue that other items, like media, are necessary for infringement.
> Likewise, Plaintiff cannot repeatedly assert its patent against different parts of
> Windows in separate suits, even if one accused part is on the left-hand side of
> Windows and the other is on the right-hand side, so to speak.

14   *Id.* at *3 (internal citations omitted).

15        *ViaTech* is consistent with the doctrine of claim splitting. "It is well established that a party

16   may not split a cause of action into separate grounds of recovery and raise the separate grounds in

17   successive lawsuits." *Mars Inc.*, 58 F.3d at 619. "A main purpose behind the rule preventing claim

18   splitting is to protect the defendant from being harassed by repetitive actions based on the same

19   claim." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) (internal

20   quotation and citation omitted). In the patent infringement context, the Federal Circuit has

21   explained that "claim preclusion bars both claims that were brought as well as those that *could*

22   *have been* brought." *Brain Life*, 746 F.3d at 1053 (emphasis in original).

23        PersonalWeb cites *Young Engineers, Inc. v. U.S. Int'l Trade Comm'n.*, 721 F.2d 1205,

24   1316 (Fed. Cir. 1983), which states the unremarkable proposition that "claim preclusion [does not]

25   apply to conduct of a different nature from that involved in the prior litigation." PersonalWeb

26   argues that "[n]one of Amazon's cases suggest that the commercial packaging of different features

27   or aspects of accused devices has any bearing whatsoever on whether they are part of the 'same

28   transaction' for claim preclusion purposes." Opp. at 13.

PersonalWeb's argument is unpersuasive. PersonalWeb fails to cite any cases that support its contention that infringement allegations related to different features of the same product give rise to separate causes of action. The Court finds nothing in the relevant Federal Circuit precedent to support PersonalWeb's argument. *See, e.g., Acumed LLC*, 525 F.3d at 1324 ("[O]ne of the essential transactional facts giving rise to a patent infringement claim is the structure of the *device* or *devices* in issue. . . . Adjudication of infringement is a determination that a *thing* is made, used or sold without authority under the claim(s) of a valid enforceable patent." (emphasis added) (internal quotations and citations omitted)). The doctrine against claim splitting applies with full force here. Accordingly, the Court concludes that the fact that this suit allegedly involves a different feature of S3 from the Texas Action makes no difference to whether claim preclusion applies.

### 4.  Post-Judgment Claims of Infringement

Having concluded that claim preclusion applies to the instant case, the Court now turns to Amazon's argument that claim preclusion applies "through the expiration of the patents." Mot. at 14. As a fallback, Amazon argues that PersonalWeb's claims are barred at least through the date of final judgment in the Texas Action. Reply at 10. PersonalWeb contends that claim preclusion only applies up to the date of its amended complaint in the Texas Action. Opp. at 15. The Court concludes that claim preclusion bars PersonalWeb's claims through the date of the final judgment in the Texas Action.

Recent Federal Circuit case law is conclusive on this point. In *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1301 (Fed. Cir. 2017) the court held that "claim preclusion does not bar a patentee from bringing infringement claims for acts of infringement occurring after the final judgment in a previous case." The court explained that "for products made or sold after the previous actions, it [does] not matter whether the new products [are] essentially the same as the previously accused products. . . . [T]he patentee *could not* have brought those claims in the prior case." *Id.* at 1299 (internal quotation and citation omitted); *see also Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1365 (Fed. Cir. 2017) (claim preclusion does not apply to post-dismissal conduct, "even if all the conduct is alleged to be unlawful for the same reason"); *Brain Life*, 746

1   F.3d at 1054 (claim preclusion does not bar infringement claims arising from "acts occurring after

2   final judgment was entered in the first suit").

3          Amazon argues that there is an intra-circuit split within the Federal Circuit as to whether

4   claim preclusion bars infringement claims arising from acts occurring after the date of the first

5   judgment. Mot. at 14. Amazon argues that, until the Federal Circuit resolves the alleged conflict

6   *en banc*, *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281 (Fed. Cir. 2009) is the controlling precedent. In

7   *Nystrom*, the Federal Circuit held that claim preclusion barred the patentee's suit as to products

8   that "reached the market after the filing date of the original . . . complaint." *Id.* at 1284. However,

9   the Federal Circuit has since clarified that "[a]lthough the *Nystrom* court characterized its analysis

10  as falling under the general rubric of res judicata or claim preclusion, the principle that the court

11  applied was" that of issue preclusion. *Aspex*, 672 F.3d at 1343. Accordingly, this Court will follow

12  the Federal Circuit's own interpretation of *Nystrom* as not conflicting with more recent Federal

13  Circuit precedent directing that claim preclusion only applies to acts of infringement that pre-date

14  the first judgment.

15         PersonalWeb argues that claim preclusion can only apply up to the date of the amended

16  complaint in the Texas Action because PersonalWeb was not required to assert any cause of action

17  that it acquired during the pendency of the Texas Action, and that any such cause of action is not

18  barred by claim preclusion. Opp. at 16. PersonalWeb submits that *Gillig*, *Aspex*, and *Dow*

19  *Chemical* support its argument. Opp. at 15; Trans., ECF No. 376 at 38-42. PersonalWeb's

20  argument that it was not required to assert any *new* cause of action is true as far as it goes, but that

21  does not help PersonalWeb here. As discussed above, this case involves the same cause of action

22  as the Texas Action. The cases that PersonalWeb cites do not say otherwise.

23         *Gillig*, which did not involve patent infringement claims, states that "The *res judicata*

24  doctrine does not apply to new rights acquired during the action which might have been, but which

25  were not, litigated." *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) (citation omitted).

26  Quoting this language, *Aspex* explains that "[i]n patent cases, this court has applied the general

27  rule that res judicata does not bar the assertion of 'new rights acquired during the action which

28  might have been, but were not, litigated.'" *Aspex*, 672 F.3d at 1345 (quoting *Gilig*, 602 F.3d at

United States District Court
Northern District of California

1363). In *Aspex*, the Federal Circuit concluded that claim preclusion does not apply to products that were not in existence at the time of the filing of the prior complaint. *See id.* Unlike *Aspex*, the instant case does not involve new products that were not in existence at the time of the filing of the prior complaint. Moreover, *Aspex* explicitly held that claim preclusion could apply to new products introduced between the filing of the complaint and the judgment in the previous case, if the patentee elected to have those products included in the previous action. *See id.* Thus, *Aspex* and *Gillig* do not support the conclusion that claim preclusion only applies up to the date of the complaint in the prior action.

At the hearing, PersonalWeb specifically directed the Court to the holding in *Dow Chemical*, Trans., ECF No. 376 at 39, a case it had cited only once in a string cite in its papers, Opp. at 17. In *Dow Chemical*, the Federal Circuit reiterated that "traditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., *post-final judgment*, in a second suit." *Dow Chem. Co. v. Nova Chems. Corp.*, 803 F.3d 620, 627 (quoting *Brain Life*, 746 F.3d at 1056) (emphasis added). In the language quoted by counsel for PersonalWeb, the *Dow Chemical* court applied the general rule on claim preclusion to the specific facts of that case to explain why claim preclusion did not apply from a previous judgment to a period of supplemental damages. *Id.* ("Here, the bulk of the supplemental damages accrued after the [previous judgment], and it is clear that claim preclusion also does not apply to damages accruing after the filing of the complaint and not the subject of the first judgment."). *Aspex* and *Dow Chemical* are both consistent with Federal Circuit precedent instructing that claim preclusion in patent infringement cases applies up to the date of the judgment in the previous case, at least when the same product is involved in both cases.

### 5.  Summary

For the reasons discussed above, the Court finds that claim preclusion applies because the Texas Action ended in a final judgment, involved the same parties or privies, and involved the same cause of action. Claim preclusion applies to PersonalWeb's claims up to the date of the final judgment in the Texas Action.

### C.  *Kessler* Doctrine

United States District Court
Northern District of California

Amazon contends that the *Kessler* doctrine bars all of PersonalWeb's S3 claims, "including claims against Amazon customers for conduct occurring after the date of the Texas judgment." Mot. at 15. Amazon argues that the dismissal with prejudice in the Texas Action "created a trade right [under *Kessler*] that conferred upon Amazon and its customers the status of non-infringers and upon S3 the status of a non-infringing product." Mot. at 17. PersonalWeb argues that *Kessler* is "rooted in . . . issue preclusion," and accordingly requires that the question of infringement was actually litigated in the prior case. Trans., ECF No. 376 at 65; Opp. at 19. Under issue preclusion rules, PersonalWeb argues that the dismissal with prejudice in the previous case is insufficient to trigger preclusion under the *Kessler* doctrine. *Id.* In addition, PersonalWeb argues that *Kessler* does not apply to the cache-busting feature of S3 because that feature has never been "held to be non-infringing by any court." Opp. at 20. For the reasons discussed below, the Court finds that the *Kessler* doctrine bars PersonalWeb's post-judgment infringement claims against Amazon and its customers related to use of S3.[2]

In *Kessler v. Eldred*, 206 U.S. 285, 288 (1907), the Supreme Court held that a prior non-infringement judgment conferred upon the manufacturer "the right to manufacture, use, and sell" the adjudged non-infringing product. Accordingly, the Court concluded that "it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by [the patentee]." *Id.* at 289. The Federal Circuit has recently affirmed the continued vitality of the *Kessler* doctrine, explaining that "the Court granted *Kessler* a limited trade right to continue producing, using, and selling the [adjudged non-infringing product] . . . even when the acts of infringement occurred post-final judgment and even when it was third parties who allegedly engaged in those acts of infringement." *Brain Life*, 746 F.3d at 1056. The Federal Circuit explained that "[t]he *Kessler* doctrine fills the gap between [claim preclusion and issue preclusion] doctrines." *Id.*

---

[2] At the hearing, Amazon acknowledged that they have not seen a case specifically addressing whether *Kessler* applies to claims arising prior to the final judgment in the previous case. Trans., ECF No. 376 at 71. Because this Court concludes that claim preclusion bars PersonalWeb's claims against both Amazon and its customers prior to the previous judgment, this Court does not need to consider whether *Kessler* also applies to that time period.

United States District Court
Northern District of California

The Court finds persuasive the only case that the parties have identified that squarely addresses the applicability of *Kessler* based on a prior dismissal with prejudice. In *Molinaro v. Am. Tel & Tel. Co.*, 460 F. Supp. 673, 675 (E.D. Penn. 1978), the previous suit was dismissed with prejudice as a sanction for failure to comply with discovery orders. The *Molinaro* court explained that the "analysis of the applicability of the Kessler doctrine is not altered by the fact that the infringement question in the instant case was not actually litigated in the [prior] suit." *Id.* at 676. *Molinaro* is consistent with Federal Circuit precedent, which explains that the *Kessler* doctrine applies to claims that "could have been brought"—and were necessary not adjudicated—in the prior action. *See Brain Life*, 746 F.3d at 1059 (method claims were not actually litigated in the prior action and thus were not barred by issue preclusion but were barred by *Kessler*).

PersonalWeb seeks to distinguish *Molinaro* on two grounds, neither of which is persuasive. First, PersonalWeb fails to explain how the fact that *Molinaro* was based on a dismissal entered as a sanction for failure to comply with discovery orders makes any difference to the preclusive effect of the dismissal. Opp. at 19. At the hearing, PersonalWeb argued that a judicial sanction of dismissal should be treated differently than the parties' voluntary stipulation to dismiss the case because of the punitive aspect of the sanction. Trans., ECF No. 376 at 62-63. Other than the emotional appeal of that distinction, PersonalWeb points to no authority or anything rooted in the *Kessler* doctrine to support its argument.

Second, PersonalWeb's characterization of *Molinaro* as "a non-controlling 50 year-old district court case," Opp. at 19, is inconsistent with the Federal Circuit's 2015 opinion citing *Molinaro* approvingly. *See Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1326 (2015). Although *Speedtrack* cited *Molinaro* for the specific proposition that a customer could invoke the *Kessler* doctrine, nothing in *Speedtrack* suggested that the Federal Circuit disagreed with *Molinaro* as to the preclusive effect of a dismissal with prejudice.

In its briefing and at the hearing, PersonalWeb cited numerous additional cases that it argues require actual adjudication of noninfringement in order for *Kessler* to apply. Trans., ECF No. 376 at 68; Opp. at 19. As discussed above, neither *Brain Life* nor *Speedtrack* supports PersonalWeb's argument. In *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir.

25

1987), the Federal Circuit applied *Kessler* as the equivalent of nonmutual defensive issue preclusion. However, nothing in *MGA* limits *Kessler* to the issue preclusion context, and *Brain Life* cites *MGA* approvingly for its discussion of *Kessler*. *See Brain Life*, 746 F.3d at 1056-57. None of the additional cases that PersonalWeb cites support PersonalWeb's argument that *Kessler* requires actual adjudication of non-infringement. *See Mentor Graphics*, 851 F.3d at 1301 (*Kessler* does not apply when previous case ended with grant of a license to the alleged infringer); *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991) (addressing requirements for claim preclusion); *Wowza*, 72 F. Supp. 3d at 996 (concluding that *Kessler* did not apply where earlier case was still pending at time that second case was file).

As to PersonalWeb's attempt to limit *Kessler* to the MPU feature of S3, the Court finds the *Brain Life* opinion instructive. In the first suit, Brain Life dismissed without prejudice their method claims and pursued only their apparatus claims. The Federal Circuit reasoned that the products in question "have acquired the status of noninfringing products as to the [relevant] patent," and accordingly "all claims that were brought or could have been brought in the first suit" were barred under *Kessler* in the second suit. *Brain Life*, 746 F.3d at 1058-59. PersonalWeb fails to identify any authority suggesting that the question of whether this case involves the same product as the prior case should be any different under *Kessler* than under claim preclusion. Accordingly, this Court concludes that the *Kessler* doctrine bars PersonalWeb's current suit as to both Amazon and its customers for all claims related to use of S3 after the prior final judgment.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Amazon's motion for summary judgment is GRANTED with respect to Amazon's DJ Action and PersonalWeb's counterclaim against Amazon. Amazon's motion is GRANTED with respect to the Category 3 allegations involving use of Amazon Simple Storage Service ("S3") in the *Twitch* case.

2. PersonalWeb is barred by claim preclusion from asserting any claim of infringement in any case based on use or operation of S3 and is barred from asserting any patent infringement claim against Amazon or an Amazon customer in which a feature or operation of S3 is

alleged to infringe any claim of U.S. Patent Nos. 5,978,791, 6,928,442, 7,802,310, 7,945,544, and 8,099,420 (the "patents-in-suit"), up to the date of the final judgment in the Texas Action.

3. PesonalWeb is barred, under the *Kessler* doctrine, from asserting any claim of infringement in any case based on use or operation of S3 and is barred from asserting any patent infringement claim against Amazon or an Amazon customer in which a feature or operation of S3 is alleged to infringe any claim of the patents-in-suit.

4. Amazon's motion for summary judgment related to CloudFront is DENIED WITHOUT PREJUDICE. Amazon is free to challenge the inclusion of CloudFront in a separate motion. If Amazon files such a motion, the Court will expect Level 3 to either join in PersonalWeb's opposition or to file a separate opposition.

5. Amazon's requested relief to preclude assertion that S3 meets any limitation of any claim of the patents-in-suit is DENIED as beyond the scope of the motion.

6. The Parties shall advise the Court as to which customer cases are fully adjudicated by this Order, and which claims of the remaining cases are fully adjudicated regarding accused S3 no later than April 3, 2019.

Dated: March 13, 2019

BETH LABSON FREEMAN
United States District Judge