1  MICHAEL A. SHERMAN (SBN 94783)
   masherman@stubbsalderton.com
2  JEFFREY F. GERSH (SBN 87124)
   jgersh@stubbsalderton.com
3  SANDEEP SETH (SBN 195914)
   sseth@stubbsalderton.com
4  WESLEY W. MONROE (SBN 149211)
   wmonroe@stubbsalderton.com
5  STANLEY H. THOMPSON, JR. (SBN 198825)
   sthompson@stubbsalderton.com
6  VIVIANA BOERO HEDRICK (SBN 239359)
   vhedrick@stubbsalderton.com
7  **STUBBS, ALDERTON & MARKILES, LLP**
   15260 Ventura Blvd., 20th Floor
8  Sherman Oaks, CA 91403
   Telephone:     (818) 444-4500
9  Facsimile:     (818) 444-4520

10 **Attorneys for PersonalWeb Technologies, LLC**
   [Additional Attorneys listed below]
11

12                  UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15 | IN RE PERSONAL WEB TECHNOLOGIES, | **CASE NO.: 5:18-md-02834-BLF** |
   | LLC, ET., AL., PATENT LITIGATION | |
16

17 | AMAZON.COM, INC., et., al., | **Case No.: 5:18-cv-00767-BLF** |
18 |              Plaintiffs, | **Case No.: 5:18-cv-05619-BLF** |
19 | v. | **PERSONALWEB TECHNOLOGIES,** |
   | | **LLC'S AMENDED OPENING CLAIM** |
20 | PERSONAL WEB TECHNOLOGIES, LLC, | **CONSTRUCTION BRIEF** |
21 | et., al., | |
   |              Defendants. | |
22

23 PERSONALWEB TECHNOLOGIES, LLC
   and LEVEL 3 COMMUNICATIONS, LLC,
24
                Counterclaimants,
25
   v.
26 AMAZON.COM, INC. and AMAZON WEB
   SERVICES, INC.,
27
                Counterdefendants.
28

1   PERSONALWEB TECHNOLOGIES, LLC, a
    Texas limited liability company, and
2   LEVEL 3 COMMUNICATIONS, LLC,
    a Delaware limited liability company,
3
                    Plaintiffs,
4
    v.
5
    TWITCH INTERACTIVE, INC. a Delaware
6   corporation,
7
                    Defendant.
8

1
2

# TABLE OF CONTENTS

3    I.    INTRODUCTION ..................................................................................................1

4    II.   DISPUTED CONSTRUCTIONS .........................................................................1

5          A.    "Unauthorized or unlicensed" ('310 at Claim 20) ....................................1

6                1.    This claim phrase does not need to be construed because their plain
                       and ordinary meaning suffices. ......................................................1

7                2.    Amazon's proposal erroneously makes the term "unauthorized"
                       synonymous with the term "unlicensed" contradicting the specification

8                      and prosecution history. .................................................................4

9                3.    Collateral Estoppel Does Not Apply ...............................................5

10         B.    "Authorization" ('420 patent, claims 25, 166) ..........................................7

11               1.    This term does not need to be construed because its plain and ordinary
                       meaning suffices. ..........................................................................8

12               2.    Collateral Estoppel Does Not Apply ...............................................9

13         C.    "the request including at least a content dependent name of a particular data
                 item" ('310 at Claim 20) ...........................................................................9

14         D.    "Content-dependent name" ('310, Claims 20, 69; '420 patent, claim 25) ...........12

15               1.    PersonalWeb's construction flows from the claim language. ...................12

16               2.    PersonalWeb's construction is consistent with the specification. .............13

           E.    "Name for a data file" ('442 patent, claim 10) .........................................13

17         F.    "digital key for the particular file" / "file key for each particular file" ('544
                 patent, claims 46, 52) ................................................................................14

18
19         G.    "part" ('544 patent, claims 46, 52) ............................................................15

20         H.    "being based on a first function of the contents of the specific part" ('544
                 patent, claim 46) ........................................................................................17

21               1.    The Court should apply the plain and ordinary meaning of this term. ......17

22               2.    PersonalWeb's alternative construction flows from the claim language ...17

23         I.    "part value" ('544 patent, claims 46, 52) ..................................................18

           J.    "function of the one or more of part values" ('544 patent, claim 46) ..................18

24               1.    Only "part value" should be construed in this term. ................................18

25               2.    Amazon's proposed construction of the phrase improperly rewrites the

26                     claim ...............................................................................................19

27
28

i

**PERSONALWEB'S AMENDED OPENING**            **CASE NO: 5:18-md-02834-BLF**
**CLAIM CONSTRUCTION BRIEF**                 **CASE NO: 5:18-cv-00767-BLF**
                                             **CASE NO.: 5:18-CV-05619-BLF**

1

**TABLE OF AUTHORITIES**

Page(s)

2

3  Cases

4  *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
       64 F.3d 1553 (Fed. Cir. 1995) ..................................................................................... 4

5

6  *Finjan, Inc. v. Secure Computing Corp.*,
       626 F.3d 1197 (Fed. Cir. 2010) ................................................................................... 3

7  *Garcia v. United States*,
       469 U.S. 70 (1984) ...................................................................................................... 4

8

9  *Gonzalez v. Infostream Group, Inc.*,
       Case No. 2:14–cv–906–JRG–RSP, 2015 WL 5604448 (E.D. Tex. Sept. 21, 2015) ....... 4

10 *Hydranautics v. FilmTec Corp.*,
       204 F.3d 880 (9th Cir. 2000) ....................................................................................... 6

11

12 *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
       430 F.3d 1377 (Fed. Cir. 2005) ................................................................................. 12

13 *Libel-Flarsheim*,
       358 F.3d ................................................................................................................... 13

14

15 *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
       244 F.3d 1365 (Fed. Cir. 2001) ................................................................................... 3

16 *Merck & Co. v. Teva Pharms. USA, Inc.*,
       395 F.3d 1364 (Fed. Cir. 2005) ................................................................................... 4

17

18 *O2 Micro Int'l v. Beyond Innovation*,
       *Tech.*, 521 F.3d 1351 (Fed. Cir. 2008) ........................................................................ 3

19 *PersonalWeb Techs., LLC v. Int'l Bus. Machines Corp.*,
       No. 6:12-CV-659 (Dkt. 103), 2016 WL 922880 (E.D. Tex. Mar. 11, 2016) ............... 7,9

20

21 *Phillips v. AWH Corp.*,
       415 F.3d 1303 (Fed. Cir. 2005) ................................................................................... 1

22 *Reiter v. Sonotone Corp.*,
       442 U.S. 330 (1979) ................................................................................................. 4, 5

23

24 *Thorner*,
       669 F.3d ................................................................................................................... 13

25 *United States Surgical Corp. v. Ethicon, Inc.*,
       103 F.3d 1554 (Fed. Cir. 1997) ................................................................................... 3

26

27 *Wasica Fin. GmbH v. Cont'l Auto. Sys.*,
       853 F.3d 1272 (Fed. Cir. 2017) ................................................................................... 4

28

ii

**PERSONALWEB'S AMENDED OPENING**            **CASE NO: 5:18-md-02834-BLF**
**CLAIM CONSTRUCTION BRIEF**                 **CASE NO: 5:18-cv-00767-BLF**
                                             **CASE NO.: 5:18-CV-05619-BLF**

1   Other Authorities

2   *The American Heritage Dictionary of the English Language* (5th Ed. 2019) ………………..2, 8,16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

PersonalWeb's proposed constructions "stay[] true to the claim language and most naturally align[] with the patent's description of the invention [and, therefore,] will be, in the end, the correct construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*).  In contrast, Amazon.com, Inc., Amazon Web Services, Inc., and Twitch's (collectively, "Amazon") proposed constructions: (i) rewrite claims; (ii) improperly read-in additional limitations from the specification that appear nowhere in the claims and significantly lengthen them; (iii) ignore express claim language; and (iv) confuse rather than clarify the meaning of the claims.  Accordingly, PersonalWeb requests the Court adopt its proposed constructions and reject Defendants' constructions.

## II.     DISPUTED CONSTRUCTIONS

In this brief, **bold underline** indicates that a term or phrase has an agreed construction, and ***italicized bold underline*** indicates that a term or phrase has a disputed construction that is part of this *Markman* proceeding.

### A.      "Unauthorized or unlicensed" ('310 at Claim 20)

'310 at Claim 20: "based at least in part on said content-dependent name of said

particular data item, the first device (A) permitting the content to be provided to or

accessed by the at least one other computer if it is not determined that the content is

unauthorized or unlicensed, otherwise, (B) if it is determined that the content is

***unauthorized or unlicensed***, not permitting the content to be provided to or accessed

by the at least one other computer"

Declaration of Stanley H. Thompson, Jr. ("Thompson Decl."), Ex. 1.

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning<br><br>Alternative construction: Not permitted or Not legally permitted | not compliant with a valid license |

#### 1.      This claim phrase does not need to be construed because their plain and ordinary meaning suffices.

The plain and ordinary meaning of "authorize" connotes that something is given permission to perform an action.  Consistent with the plain and ordinary meaning, the specification includes several



examples of certain exemplary embodiments of the inventive system permitting, or not permitting, certain actions to take place on the basis of a given criteria.  For example, the specification discusses that a "region" (directory) can be set as read-only, meaning another computer would not have permission to change the contents of the region:

| Policy | the migration policy to apply to this region. A single region might participate in several |
|---|---|
| 25 | policies. The policies are as follows (parameters in brackets are specified as part of the policy): |
| | region is a cached version from [processor ID]; region is a member of a mirror set defined by [processor ID]. |
| | region is to be archived on [processor ID]. |
| 30 | region is to be backed up locally, by placing new copies in [region ID]. |
| | region is read only and may not be changed. region is published and expires on [date]. Files in this region should be compressed. |

'310 at 10:23-35; *see also* Fig. 5.  The specification also discusses that a file can be locked so that another computer does not have permission to modify it:

| Lock flag | indicates whether a file is locked, that is, it is being modified by the local processor or a remote processor. Only one processor may modify a file at a time. | 25 |
|---|---|---|

'310 at 9:23-26; *see also* Fig. 3.  The flowchart in Fig. 26(a) also discloses in block S422 "PROHIBIT OPEN" that a computer may not be permitted to open a file in a non-read only mode if it is in a read-only directory.  '310 at 20:19-22, Fig. 26(a).  The plain and ordinary meaning of "authorize" is applicable without regard to a concept of licensing.  This intrinsic evidence is confirmed by the dictionary definition of "authorize" which is "to give permission for."  Thompson Decl., Ex. 2, *The American Heritage Dictionary of the English Language* (5th ed. 2019) (https://ahdictionary.com/word/search.html?q=authorize).

A "license," on the other hand, means something narrower.  It is a specific kind of authorization.  The specification discusses licenses in the sense of having legal permission to have a copy of a file.  For example, the specification states that a license table 136 maintains a record of the



1     True Names of "key files in the product (that is, files which are required in order to use the product,

2     and which do not occur in other products)[.]  Typically, for a software product, this would include the

3     main executable image and perhaps other major files such as clip-art, scripts, or online help." '310 at

4     31:17-22.  This demonstrates the specification contemplates having a license is having legal

5     permission to possess things like program executables and images such as clip-art, items that may be

6     the subject, for example, of a copyright license, or a license granted by an End User License Agreement

7     (EULA). The specification also discusses mechanisms for enforcing licenses.  For example, the

8     specification discusses active and passive enforcement of licenses ('310 at 31:9-12), and the license

9     table (LT) 136 in Fig. 1(b) "is a table identifying files, which may only be used by licensed users." '310

10    at 8:60-61.

11        Using the plain and ordinary meaning of a term is often correct.  *See Mentor H/S, Inc. v. Med.*

12    *Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) ("[T]he court properly instructed the jury

13    that ['irrigating' and 'frictional heat'] should receive their ordinary meanings.").  All words have

14    definitions and thus may be rewritten using different words.  This does not mean that all words in a

15    claim should be construed. *See, e.g., O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362

16    (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation

17    present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207

18    (Fed. Cir. 2010) (upholding district court's rejection of defendant's proposed construction, and finding

19    that no construction is necessary).  In other words, claim construction is "not an obligatory exercise in

20    redundancy."  *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

21    Where a term is used in accordance with its plain meaning, the court should not re-characterize it using

22    different language.

23        Thus, because the terms are not confusing to a jury, no further construction of these terms is

24    required.  If the Court believes the terms require construction, PersonalWeb believes "authorized"

25    should be construed as "permitted," and "licensed" should be construed as "legally permitted."

26    Amazon's proposed constructions are inconsistent with the claim language and violate canons of claim

27    construction.

28

3

1
2

## 2. Amazon's proposal erroneously makes the term "unauthorized" synonymous with the term "unlicensed" contradicting the specification and prosecution history.

3    Amazon's proposed construction, taken at face value, represents its contention that the phrase

4  "unauthorized or unlicensed" should be construed as meaning "not compliant with a valid license."

5  But "unlicensed" by itself would mean "not compliant with a valid license," so Amazon's proposal

6  expressly reads "unauthorized" out of the claim.

7    "Canons of construction indicate that terms connected in the disjunctive in this manner be

8  given separate meanings." *Garcia v. United States*, 469 U.S. 70, 73 (1984). *See also Reiter v. Sonotone*

9  *Corp.*, 442 U.S. 330 (1979) (the use of the term "or" indicates an intent to give the nouns their separate,

10 normal meanings); *Gonzalez v. Infostream Group, Inc.*, Case No. 2:14–cv–906–JRG–RSP, 2015 WL

11 5604448, at *17–19 (E.D. Tex. Sept. 21, 2015) (recognizing that "or" is not restricted to mutually

12 exclusive alternatives (A or B, [but not both]) and may be used to denote an inclusive list (A, or B [or

13 both]), depending on context.).   So a proper construction must give meaning to both words in the

14 phrase "unauthorized or unlicensed."   *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364,

15 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all terms of the claim is preferred

16 over one that does not do so."); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed.

17 Cir. 1995) ("We must give meaning to all the words in Exxon's claims.").

18    The separate term "unlicensed" is a specific species of the genus "unauthorized" that connotes

19 something that is not legally permitted under a contract or agreement.   Thus, Amazon's proposed

20 construction is erroneous.   If "unauthorized" were defined in terms of unlicensed, which is what would

21 effectively result from Amazon's proposed construction, then either the presence of "unauthorized" in

22 Claim 20 would be superfluous and/or the word "or" would be construed as "and."   Such a construction

23 would be contrary to law, by disregarding the claim term "or" and its clear, disjunctive meaning.

24    In order to narrow a claim term beyond its normal meaning, there must be clear disavowal of

25 the scope given to a claim term.   *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1281-82

26 (Fed. Cir. 2017) ("It is axiomatic that we will not narrow a claim term beyond its plain and ordinary

27 meaning unless there is support for the limitation in the words of the claim, the specification, or the

28 prosecution history.   If the intrinsic record supports several definitions of a term, the term may be

4

1  construed to encompass all such consistent meanings.   Therefore, absent a clear disavowal or
2  alternative lexicography by a patentee, he or she is free to choose a broad term and expect to obtain
3  the full scope of its plain and ordinary meaning") (internal citations omitted).

4       Amazon cannot point to any such clear disavowal of claim scope for the term "unauthorized."
5  First, there is no discussion in the specification that is inconsistent with the plain and ordinary meaning
6  of the term "unauthorized" and the disjunctive term "or."   Second, the prosecution history also
7  supports separate meanings to "unauthorized" and "unlicensed".   Indeed, the prosecution history of
8  the '442 patent unambiguously shows that the patentee was not using the words "authorized" to mean
9  "licensed", but rather was using the term "authorized" as a broader "genus" term, and the term
10 "licensed" as a narrower "species" term. For example, PersonalWeb amended claim 23 to only recite
11 the term "unauthorized" and moved the term "unlicensed" into a new claim 25 that depended from
12 claim 23:

13
14       23. (Currently amended) A method as in any one of claims 1 to 6 or 9,
15       further comprising:
16              not allowing wherein an unauthorized or unlicensed copy of a file is not
17       allowed to be provided from one of the computers.
18
19       25. (NEW) The method of claim 23 wherein an unlicensed copy of a file is
20       not allowed to be provided from one of the computers.

21 Thompson Decl., Ex. 3 (Response to Final Office Action (Feb. 14, 2010)), at 9-10.  *See also id*. at 14
22 ("Nor does Gardener teach or in any suggest (as per claim 23) that 'an unauthorized copy of a file is
23 not allowed to be provided from one of the computers.'  Nor does Gardner teach or in any way
24 suggest (as per claim 25) that an unlicensed copy of a file is not allowed to be provided from one of
25 the computers." (original emphasis))

26       **3.      Collateral Estoppel Does Not Apply.**
27       It is anticipated that Amazon will argue that collateral estoppel applies for its proposed
28 construction of "unlicensed or unauthorized" because its proposed construction is based upon a prior

1   construction in a case between PersonalWeb and IBM.  In that case, Judge Rodney Gilstrap of the

2   Eastern District of Texas separately construed "licensed," "unlicensed," "authorized," "unauthorized"

3   and "authorization."  Thompson Decl., Ex. 4, Memorandum Opinion and Order (Dkt. 103) at 25, 28,

4   *PersonalWeb Techs., LLC v. Int'l Bus. Machines Corp.*, No. 6:12-cv-00661 (E.D. Tex. Mar. 11, 2016).

5   After that matter was transferred to the Northern District of California, the parties eventually reached

6   a settlement and stipulated to dismiss the case with prejudice.  Thompson Decl., Ex. 5, Order of

7   Dismissal With Prejudice (Dkt. 381), *PersonalWeb Techs., LLC v. Int'l Bus. Machines Corp.*, No.

8   5:16-cv-01266 (N.D. Cal. Aug. 14, 2017).  In another Eastern District case, *PersonalWeb Techs., LLC*

9   *v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011) ("Amazon I"), **which actually**

10  **involved Amazon (in contrast to the IBM ruling upon which Amazon now relies)**, Judge Leonard

11  Davis ruled that no construction of the terms "licensed" and "unlicensed" was needed.  Thompson

12  Decl., Ex. 6, Memorandum Opinion and Order (Dkt. 140) at 26, 47, *PersonalWeb Techs., LLC v.*

13  *Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Aug. 5, 2013). Neither claim construction ruling is

14  binding here.

15      "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its

16  judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

17  involving a party to the first case." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

18  Under both California and federal law, collateral estoppel applies only where it is established that "(1)

19  the issue necessarily decided at the previous proceeding is identical to the one which is sought to be

20  relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against

21  whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Id.*

22      The conditions for collateral estoppel are not met here.  First, neither of the prior Eastern

23  District of Texas claim construction rulings made any determination of the scope or meaning of the

24  identical phrase "unauthorized or unlicensed" at issue in this case.  In other words, the issue of the

25  separation of these words by the disjunctive phrase "or" was never considered and ruled upon.  Second,

26  there was no final judgment that relied upon any claim construction from the IBM case because that

27  case settled and the parties did not have the opportunity to appeal.  Amazon cannot demonstrate that

28  collateral estoppel applies to Judge Gilstrap's decision.  Thus, "unauthorized or unlicensed" should be

1    given its plain and ordinary meaning, which necessarily includes the disjunctive term "or."  If

2    construed, however, the phrase should be construed as "not permitted or not legally permitted."

3    Amazon's proposed constructions are based on a prior construction of individual terms,

4    including "unauthorized" and "unlicensed," that ignored their use in disjunctive phrases that require

5    that they mean something different.  *PersonalWeb Techs., LLC v. Int'l Bus. Machines Corp.*, No. 6:12-

6    CV-659 (Dkt. 103), 2016 WL 922880 (E.D. Tex. Mar. 11, 2016).  As discussed above, collateral

7    estoppel does not apply to Judge Gilstrap's construction, which is not even from *Amazon I*.  Moreover,

8    Judge Gilstrap's decision is different from and in conflict with the construction of Judge Davis (in

9    *Amazon I*).  Judge Davis held the term "authorized" did not require any construction, which is

10   consistent with the plain usage of the term, and the claim language, specification and prosecution

11   history.

12   In the event that Amazon contends that its proposed construction for "unauthorized or

13   unlicensed" is actually "not compliant with a valid license or not compliant with a valid license," then

14   that construction is erroneous, for the reasons discussed above, and also confusing.  It is unclear what

15   an "invalid right" is.  How can something be characterized as a "right" and also be characterized as

16   "invalid?"  Also, if one incorporates Amazon's proposed construction of "unlicensed" into its

17   proposed construction of "unauthorized," then "not compliant with a valid license" becomes "not

18   compliant with a valid right to content."  But this is only another way of stating that access or use of

19   the content is not permitted, which is precisely what PersonalWeb argues "unauthorized" should mean.

20   Indeed, the prior construction does not specify that the right to content derives its validity from a legal

21   and/or contractual source.

22   For these reasons, "unlicensed or unauthorized" should be given their plain and ordinary

23   meaning.  If construed, however, PersonalWeb's proposed constructions should be adopted.  If

24   Amazon's proposed construction is adopted, it should be clarified that "unauthorized" is not limited

25   to the legal and/or contractual sense of the of term "unlicensed."

26   **B.    "Authorization" ('420 patent, claims 25, 166)**

27   '420 at Claim 25: "(C) based at least in part on said ascertaining in step (B), selectively

28   allowing a copy of the particular sequence of bits to be provided to or accessed by or

from at least one of the computers in a network of computers, wherein a copy of the sequence of bits is not to be provided or accessed without ***authorization***, as determined, at least in part, based on whether or not said first content-dependent name of the particular sequence of bits corresponds to one of the plurality of identifiers"

'420 at Claim 166: "(a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without ***authorization***, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item"

Thompson Decl., Ex. 7.

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning<br><br>Alternative construction: "authorization": permission | a valid license |

### 1.   This term does not need to be construed because its plain and ordinary meaning suffices.

The plain and ordinary meaning of "authorization" is "permission." as shown above in the discussion of the phrase "unauthorized or unlicensed," the specification is consistent with the plain and ordinary meaning. This intrinsic evidence is confirmed by the dictionary definition of "authorize" which is "1. The act of authorizing. *See Synonyms at permission*."  Thompson Decl., Ex. 8, *The American Heritage Dictionary of the English Language* (5th ed. 2019) (https://ahdictionary.com/word/search.html?q=authorization) (emphasis added).



1

## 2. Collateral Estoppel Does Not Apply.

2      It is anticipated that Amazon will also argue that collateral estoppel applies for its proposed

3   construction of "authorization" because its proposed construction is based upon a prior construction

4   of that term. *See* Thompson Decl., Ex. 4, Memorandum Opinion and Order (Dkt. 103) at 25, 28,

5   *PersonalWeb Techs., LLC v. Int'l Bus. Machines Corp.*, No. 6:12-cv-00661 (E.D. Tex. Mar. 11, 2016).

6   However, Amazon cannot show that the construction of term "authorization" was in any manner

7   outcome determinative regarding the products in that case and there was no final judgment that

8   necessarily relied upon the construction of "authorization" in that case because it settled and the parties

9   did not have the opportunity to appeal.  Thus, for the reasons above in the discussion of the phrase

10  "unauthorized or unlicensed," collateral estoppel does not apply to this term.

11

## C. "the request including at least a content dependent name of a particular data item" ('310 at Claim 20)

12

13  '310 at Claim 20: "20. A computer-implemented method operable in a system which

14  includes a plurality of computers, the method comprising:

15  controlling distribution of content from a first computer to at least one other computer,

16  in response to a request obtained by a first device in the system from a second device

17  in the system, the first device comprising hardware including at least one processor,

18  ***the request including at least a content-dependent name of a particular data item***, the

19  content-dependent name being based at least in part on a function of at least some of

20  the data comprising the particular data item, wherein the function comprises a message

21  digest function or a hash function, and wherein two identical data items will have the

22  same content-dependent name"

23  Thompson Decl., Ex. 1.

24

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| the request including at least a content dependent name of a particular **data item** | the request including at least a content dependent name of a particular requested **data item** |

25

26

27      PersonalWeb's proposed construction is the claim language itself.  In other words, the plain

28  and ordinary meaning should be used because it is readily understandable without being rewritten.

9



1  Amazon apparently agrees, because for the most part they leave the language of this term in Claim 20
2  untouched.   However, Amazon does change the claim language "a content dependent name *of a*
3  *particular data item*" to "a content dependent name of a particular *requested* data item."  The parties
4  dispute whether the word "requested" should be inserted in the otherwise unmodified claim language.
5  If this alteration makes no difference, then why does Amazon insist on including it?

6        Examining the claim language reveals that Amazon's proposed construction substantively
7  changes it.  Claim 20 reads in relevant part:

8        controlling distribution of content from a first computer to at least one other computer,
9        *in response to a request obtained by a first device in the system from a second device*
10       *in the system*, the first device comprising hardware including at least one processor, the
11       request including at least a content-dependent name of a particular data item
12  Thompson Decl., Ex. 1 (emphasis added).

13       The claim recites that a first device obtains "a request" from a second device.  The claim does
14  not read that a first device obtains "a request *for a data item*."  The only limitation placed on "the
15  request" by the claim language is that it must include a content-dependent name of a particular data
16  item. Amazon's proposed construction inserts a limitation that is not contained in the claim language
17  and is therefore erroneous.

18       PersonalWeb's proposed construction is consistent with the specification which provides
19  examples of an identifier being used in a request that is not a request for a data item. For example,
20  Figure 14 shows the use of an identifier—in this embodiment, a True Name—to link a path to the
21  identifier:

26  / / /
27  / / /
28  / / /

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18  '310 at Fig. 14. The specification explains that "[t]he mechanism to link a path to a True Name

19  provides a way of creating a new directory entry record identifying an existing, assimilated file. This

20  basic process may be used to copy, move, and rename files without a need to copy their contents." '310

21  at 15:6-10. The fact that the system can "copy, move, and rename files without a need to copy their

22  contents" shows that the bits of the file itself do not need to be transferred anywhere as a result of the

23  request. In other words, the request to link a path to a True Name is not a request for the file associated

24  with the True Name itself. The file is *not* a "requested data item."

25       For these reasons, the Court should reject Amazon's proposed construction, and this term

26  should be given its plain and ordinary meaning.

27

28

### D.    "Content-dependent name" ('310, Claims 20, 69; '420 patent, claim 25)

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| an identifier that changes with the content [of the **data item** [sequence of bits] / the sequence of bits of the particular **data item** [sequence of bits]] | an identifier used to locate and access a data item that is generated by processing the sequence of bits |

#### 1.    PersonalWeb's construction flows from the claim language.

Given that the parties agree on a construction for "data item," the actual dispute over this term relates to what a "content-dependent name" is.  PersonalWeb's proposed construction clarifies that a content-dependent name is an identifier that changes when the content of a data item changes. For example, if you alter the content of a file called "puppy.jpg" using Photoshop to alter background in the picture and save it under the same name, the content-dependent name for that file will change because the contents of the file changed.  With this clarification, the claim terms are clear and will not be confusing to a juror.

In contrast, Amazon's proposed construction adds language that is unrelated to the disputed terms.  Their proposed construction includes "used to locate and access" which is unrelated to anything found in the disputed terms.  Instead of explaining what a content-dependent name *is*, Amazon instead proposes to describe what a content-dependent name is purportedly *used for*.  The manner or purpose for which the content-dependent name is used is not recited in the dispute claim terms.

Furthermore, Amazon's proposed construction requires that a content-dependent name "is generated by processing the sequence of bits."  This language is problematic for two reasons.  First, their proposed construction is confusing because it does not explain what kind of "processing" leads to a name or identifier that is "content-based."  Second, the addition of the phrase "is generated" suggests that the processing that creates the identifier is a claimed step that must take place contemporaneously with the performance of the other method steps.  This is inaccurate and confusing because Claim 20 of the '310 Patent and Claim 25 of the '420 Patent recite no such step of generating the content-based name. Claim 69 of the '310 Patent is a system claim, so incorporating a contemporaneous method step into the construction of the second disputed term would improperly convert Claim 69 into a claim to both a system and a method for using that system. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25 recites both a

1   system and the method for using that system, it does not apprise a person of ordinary skill in the art of

2   its scope, and it is invalid under section 112, paragraph 2.").

3            **2.    PersonalWeb's construction is consistent with the specification.**

4            PersonalWeb's proposed construction is consistent with the specification.  One embodiment

5   of a content-based name is a True Name which "can be used to identify a file by contents, to confirm

6   that a file matches its original contents, or to compare two files." '310 at 14:51-53.  More generally,

7   the specification contemplates identifiers for files such that "the identity of a data item is independent

8   of its name, origin, location, address, or other information not derivable directly from the data, and

9   depends only on the data itself." '310 at 3:56-58.  The proposed construction of "a data item identifier

10  that changes with the content of the data item" is consistent with the specification.

11           Amazon's proposed construction incorporating "used to locate and access" improperly

12  incorporates limitations from an exemplary embodiment.  *See Thorner*, 669 F.3d at 1366-67; *Libel-*

13  *Flarsheim*, 358 F.3d at 906.  The specification is broader and provides examples in which a content-

14  based name is not "used to locate and access" a data item.  For example, the "Retire True File"

15  mechanism described in '310 at 24:1-18 "allows a remote processor to indicate that it no longer plans

16  to maintain a copy of a given True File."  In this embodiment, the system uses a content-based name

17  to effect a *lack* of access rather than to access a file. Similarly, the "Cancel Reservation" mechanism

18  described at 24:19-30 "allows a remote processor to indicate that it no longer requires access to a True

19  File stored on the local processor."

20           For these reasons, the Court should construe "content-dependent name of a particular data

21  item" and "content-dependent name for the data item" as "a data item identifier that changes with the

22  content of the data item," and the Court should construe "content-dependent name for a particular

23  sequence of bits" as "a data item identifier that changes with the content of the particular sequence of

24  bits of the particular data item."

25           **E.    "Name for a data file" ('442 patent, claim 10)**

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| an identifier | an identifier used to locate and access a **data file** |



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the same reasons discussed above in connection with phrase "content-dependent name," the "used to locate and access" language in Amazon's proposed construction should be rejected and PersonalWeb's proposed construction adopted.

**F.    "digital key for the particular file" / "file key for each particular file" ('544 patent, claims 46, 52)**

'544 at Claim 46:

"the part value of each specific part of said first one or more parts being based on a first function of the contents of the specific part,

wherein two identical parts will have the same part value as determined by the first function, and

wherein the particular ***digital key*** for the particular file is determined using a second function of the one or more of part values of said first one or more parts"

'544 at Claim 52:

"wherein each file of the plurality of files comprises a corresponding one or more parts, and

wherein each of the one or more parts of each file has a corresponding part value, the part value for each particular part being based on a first hash function of that particular part, wherein two identical parts will have the same part value as determined using the first hash function,

the ***file key*** for each particular file being based on a second hash function of the part values of the one or more parts of that file"

Thompson Decl., Ex. 9.

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| a content-based identifier for [the/each] particular file | unique identifier used to locate [the/each] particular file |

PersonalWeb's proposed construction that a "digital key for the particular file" and a "file key for each particular file" are content-based identifiers is consistent with the claim language and the specification. Claim 46 expressly recites that the digital key is "determined using a second function of the one or more part values of said first one or more parts."  Thompson Decl., Ex. 9. The part values



in Claim 46 are in turn "based on a first function of the contents of the specific part."  Similarly, Claim 52 expressly recites that the file key is "based on a second hash function of the part values of the one or more parts of that file." *Id.*  The part values in Claim 52 are in turn "based on a first hash function of that particular part." *Id.*  Thus, both the digital key and the file key are at least based on the contents of the parts.  They are therefore content-based identifiers.

Amazon's proposed construction that the identifier must be "unique" is inconsistent with the claim language and the specification. Claims 46 and 52 require that "two identical parts will have the same part value."  This requirement is a limitation on the part values, not the digital key and file key. Furthermore, even if the claims required that two digital keys or two file keys be the same if they were calculated using the part values derived from two identical sets of parts, this is not a requirement that the digital keys or file keys must be unique.  The claim requires that the same content yields the same output, not that the output is unique.  The specification explains that although certain methods of calculating content-based identifiers have a high probability of producing different output from different inputs, it is impossible to guarantee that different inputs will always produce different, *i.e.*, unique, outputs. '310 at 12:52-13:9.  Amazon's proposed construction imposes a requirement of uniqueness that the specification explicitly says cannot be guaranteed.  The inclusion of "unique" in Amazon's proposed construction should thus be rejected.

Also, for the same reasons discussed above in connection with the "content-dependent name" terms, the "used to locate" language in Amazon's proposed construction should be rejected and PersonalWeb's proposed construction adopted.

### G.    "part" ('544 patent, claims 46, 52)

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| a separate sequence of bits | a sequence of bits within a file |

Amazon's proposed construction is perplexing given that the parties have already agreed to PersonalWeb's proposed construction elsewhere. Two of the Agreed-Upon constructions are:

| Claim Term | Agreed-Upon Construction |
|---|---|
| "wherein the particular file comprises a first one or more ***parts***" ('544 patent, claim 46) | wherein the particular file is made up of a first one or more **separate sequences of bits** |

| | |
|---|---|
| "wherein each file of the plurality of files comprises a corresponding one or more ***parts***" ('544 patent, claim 52) | wherein each file of the plurality of files is made up of one or more corresponding **separate sequences of bits**<br><br>"plurality" means "two or more" |

In the agreed-upon constructions above, the phrase "separate sequences of bits" is substituted for the word "parts," therefore the singular "part" would be "a separate sequence of bits."

Even ignoring the agreed constructions, the parties at a minimum agree that a part is a sequence of bits.  PersonalWeb further proposes that the construction clarify that a part is a separate sequence of bits.

PersonalWeb's proposed construction is based on the claims, which recite that a "particular file comprises a first one or more parts" (Claim 46) and "each file of the plurality of files comprises a corresponding one or more parts" (Claim 52).  Given the digital context of the invention, the file itself as a whole is a sequence of bits.  PersonalWeb's construction seeks to clarify that it is made up of separate parts.

Furthermore, PersonalWeb's proposed construction is consistent with the specification.  According the specification, a file can be "a named data item." '310 at 5:64.  A data item, in turn, is a sequence of bits, as agreed by the parties.  Joint Claim Construction and Prehearing Statement (5:18-md-02834, Dkt. 380), App'x A.  Therefore, a file is a named sequence of bits.  Because claims 46 and 52 defines a file as including one or more parts, a part is also a sequence of bits, and multiple parts would be separate from each other.

PersonalWeb's construction is also supported by the dictionary definition of "part":

1. A portion, division, piece, or segment of a whole.

….

5. A component that can be separated from or attached to a system; a detachable

piece: spare parts for cars.

Thompson Decl., Ex. 10, *The American Heritage Dictionary of the English Language* (5th ed. 2019) (https://ahdictionary.com /word/search.html?q=part).  Although digital bits are obviously not a car, the core connotation that a part may be separated out from the whole still applies

For these reasons, the Court should construe "part" as "a separate sequence of bits" and reject

|

1    Amazon's proposed construction.

2    **H.    "being based on a first function of the contents of the specific part" ('544 patent, claim 46)**

3    '544 at Claim 46:

4

5    "the part value of each specific part of said first one or more parts ***being based on a***

     ***first function of the contents of the specific part***"

6

7    Thompson Decl., Ex. 9.

8

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | being based on a computation where the input is all of the data in the specific part |
| Alternative construction: being based upon a first computation using the data of the specific part | |

11

12    **1.    The Court should apply the plain and ordinary meaning of this term.**

13    PersonalWeb proposes this term be given its plain and ordinary meaning because it is readily

14    understandable without being rewritten.  In order to justify their proposed construction, Amazon must

15    explain why the claim language itself is unclear or confusing.

16    **2.    PersonalWeb's alternative construction flows from the claim language.**

17

18    If this term is construed, the Court should adopt PersonalWeb's proposed alternative

19    construction because it is consistent with the claim language.  It merely changes "on a first function

20    of" to "upon a first computation using" to be more understandable to jurors, who are unlikely to be

21    familiar with the mathematical use of the word "function." PersonalWeb's use of "first computation"

22    is consistent with the language "first function" in Claim 46 of the '544 Patent, while the competing

23    construction omits the word "first."

24    Amazon's proposed construction goes farther, changing "function of the contents of the

25    specific part" to "computation *where the input is* at least some of the bits."  PersonalWeb fails to see

26    how "where the input is" would be clearer to a jury than "using," or that any difference in meaning is

27    material.

28

1    Amazon's proposed construction also recites "*all of* the data."  This addition is inconsistent

2    with the claim language, which neither recites nor implies a limitation of "all of."  Its inclusion in

3    Amazon's proposed construction is thus erroneous.

4        For these reasons, "being based on a first function of the contents of the specific part" should

5    be given its plain and ordinary meaning.  However, if it is construed, for the foregoing reasons, the

6    Court should construe it as "being based upon a first computation using the data of the specific part."

7    **I. "part value" ('544 patent, claims 46, 52)**

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| a value created by a computation using the sequence of bits that makes up the part | a value created by a computation on the sequence of bits that makes up the part |

10    The dispute between the parties is whether a "part value" is created by "computation *using*"

11   the sequence of bits, or a "computation *on*" the sequence of bits.  This is similar to the dispute discussed

12   above regarding "using" versus "where the input is" regarding Claim 46 of the '544 patent.

13   PersonalWeb fails to see how "on" would be clearer to a jury than "using," or that any difference in

14   meaning is material. "Part value" should be construed as "a value created by a computation using the

15   sequence of bits that makes up the part."

16    **J. "function of the one or more of part values" ('544 patent, claim 46)**

17    '544 at Claim 46:

18    "wherein the particular digital key for the particular file is determined using a second

19    ***function of the one or more of part values***"

20   Thompson Decl., Ex. 9.

| PersonalWeb's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| computation using the one or more of part values | computation where the input is the part values |

23    **1.    Only "part value" should be construed in this term.**

24    PersonalWeb proposes that only the term "part value" within this phrase should be construed.

25   The remainder of this term should be given its plain and ordinary meaning because it is readily

26   understandable without being rewritten.  The proper construction of "part value" is addressed above.

27

28

18

1

       2.      **Amazon's proposed construction of the phrase improperly rewrites the claim.**

2

      Amazon's proposed construction uses the "where the input is" language, which should be

3

rejected for the reasons already discussed above.  Additionally, their proposed construction materially

4

rewrites the claim in a manner that changes its meaning.

5

      Second, Amazon changes "the one or more of part values" in the claim phrase to "the part

6

values."  This would introduce potential confusion as the phrase "one or more parts" is introduced

7

earlier in the claim and thus "the one or more parts" is a reference to the same "one or more parts"

8

used earlier in the claims.  If this is changed to "the part values," it will be unclear whether such "part

9

values" are the "one or more parts" referenced earlier in the claim or some other "part values." In any

10

case, to the extent that Amazon contends that "the part values" has a substantively different meaning

11

than "one or more of part values," PersonalWeb does not know what such a substantive difference is

12

or what the support is for such a change in meaning.

13

      For these reasons, "function of the one or more of part values" should be construed as

14

"computation using the one or more of part values."

15

16

      Respectfully submitted,

17

Dated:   April 12, 2019              STUBBS, ALDERTON & MARKILES, LLP

18

19

                        By: */s/ Michael A. Sherman*

20

                           Michael A. Sherman
                           Jeffrey F. Gersh

21

                           Sandeep Seth
                           Wesley W. Monroe

22

                           Stanley H. Thompson, Jr.
                           Viviana Boero Hedrick

23

                           Attorneys for Patent Plaintiffs

24

                           PERSONALWEB TECHNOLOGIES, LLC

25

26

27

28

PERSONALWEB'S AMENDED OPENING            CASE NO: 5:18-md-02834-BLF
CLAIM CONSTRUCTION BRIEF                            CASE NO: 5:18-cv-00767-BLF
                                              CASE NO.: 5:18-CV-05619-BLF

1 | Dated:   April 12, 2019                    MACEIKO IP

2

3 | By: /s/ Theodore S. Maceiko
         Theodore S. Maceiko (SBN 150211)
4 |      ted@maceikoip.com
         MACEIKO IP
5 |      420 2nd Street
         Manhattan Beach, California 90266
6 |      Telephone:     (310) 545-3311
         Facsimile:     (310) 545-3344
7 |      Attorneys for Plaintiff

8 |      PERSONALWEB TECHNOLOGIES, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28