1   J. DAVID HADDEN (CSB No. 176148)
    dhadden@fenwick.com
2   SAINA S. SHAMILOV (CSB No. 215636)
    sshamilov@fenwick.com
3   TODD R. GREGORIAN (CSB No. 236096)
    tgregorian@fenwick.com
4   PHILLIP J. HAACK (CSB No. 262060)
    phaack@fenwick.com
5   RAVI R. RANGANATH (CSB No. 272981)
    rranganath@fenwick.com
6   CHIEH TUNG (CSB No. 318963)
    ctung@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA  94041
9   Telephone:    650.988.8500
    Facsimile:    650.938.5200
10
    Attorneys for AMAZON.COM, INC., and
11  AMAZON WEB SERVICES, INC.

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                            SAN JOSE DIVISION

15

16
    IN RE: PERSONALWEB TECHNOLOGIES,        Case No.: 5:18-md-02834-BLF
17  LLC ET AL., PATENT LITIGATION,

18  AMAZON.COM, INC., and AMAZON WEB        Case No.: 5:18-cv-00767-BLF
    SERVICES, INC.,
19                                          **RESPONSIVE CLAIM
                     Plaintiffs,            CONSTRUCTION BRIEF OF
20                                          AMAZON.COM INC., AMAZON WEB
          v.                                SERVICES, INC. AND TWITCH
21  PERSONALWEB TECHNOLOGIES, LLC and       INTERACTIVE, INC.**
    LEVEL 3 COMMUNICATIONS, LLC,
22                   Defendants.

23  PERSONALWEB TECHNOLOGIES, LLC and
    LEVEL 3 COMMUNICATIONS, LLC,
24
25                   Counterclaimants,
          v.
26  AMAZON.COM, INC., and AMAZON WEB
27  SERVICES, INC.,

28                   Counterdefendants.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    PERSONALWEB TECHNOLOGIES, LLC, A          Case No. 5:18-cv-05619-BLF
     Texas limited liability company, and
2    LEVEL 3 COMMUNICATIONS, LLC, a
     Delaware limited liability company,
3
                    Plaintiffs,
4
            v.
5
     TWITCH INTERACTIVE, INC. a Delaware
     corporation,
6
                    Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

RESPONSIVE CLAIM CONSTRUCTION          Case No.: 5:18-md-02834-BLF
BRIEF OF AMAZON AND TWITCH             Case No.: 5:18-cv-00767-BLF
                                       Case No.: 5:18-cv-05619-BLF

1

**TABLE OF CONTENTS**

I. INTRODUCTION ------------------------------------------------------------------------1

II. THE TRUE NAME PATENTS------------------------------------------------------------1

III. DISPUTED CONSTRUCTIONS----------------------------------------------------------3

A. The Patents-in-Suit treat "authorization" and "licensing" the same and disclose no alternate meaning for either concept -------------------------------------3

   1. "unauthorized or unlicensed" ('310 patent, claim 20)------------------------------3

   2. "authorization" ('420 patent, claims 25, 166)-----------------------------------3

B. In the True Names patents, a request for a data item includes the name for that data item-------------------------------------------------------------------------9

   1. "the request including at least a content dependent name of a particular data item" ('310 patent, claim 20)----------------------------------------------9

C. The invention uses "names" to locate and verify access to data items ---------------- 11

   1. "content-dependent name" ('310 patent, claims 20 and 69; '420 patent, claim 25) ----------------------------------------------------------------- 11

   2. "name for a data file" ('442 patent, claim 10) ------------------------------- 11

D. The names used by the '544 patent are created by hashing the segments of a data item, then hashing the resulting values, creating a "hash of hashes" ----------- 13

   1. "digital key for the particular file" ('544 patent, claim 46) / "file key for each particular file" ('544 patent, claim 52) ..................................... 13

   2. "part" ('544 patent claims 46, 52) --------------------------------------- 15

   3. "being based on a first function of the contents of the specific part" ('544 patent, claim 46) ----------------------------------------------------------- 18

   4. "part value" ('544 patent, claims 46, 52) -------------------------------- 18

   5. "function of the one or more of part values" ('544 patent, claim 46) ----------- 21

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**TABLE OF AUTHORITIES**

*Cases*                                                   *Page(s)*

*Alloc, Inc. v. Int'l Trade Comm'n,*
   342 F.3d 1361 (Fed. Cir. 2003) ----------------------------------------------------- 20

*Baran v. Med. Device Techs., Inc.,*
   616 F.3d 1309 (Fed. Cir. 2010) ------------------------------------------------------- 6

*EcoNova, Inc. v. DPS Utah,*
   No. 1:12-CV-174, 2013 WL 65460 (D. Utah Jan. 4, 2013)------------------------- 6

*Every Penny Counts, Inc. v. Am. Express Co.,*
   563 F.3d 1378 (Fed. Cir. 2009) ------------------------------------------------------- 5

*Medrad, Inc. v. MRI Devices Corp.,*
   401 F.3d 1313 (Fed. Cir. 2005) ----------------------------------------------------- 22

*MySpace, Inc. v. GraphOn Corp.,*
   672 F.3d 1250 (Fed. Cir. 2012.) ------------------------------------------------------ 8

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.,*
   521 F.3d 1351 (Fed. Cir. 2008) ------------------------------------------------------- 5

*PersonalWeb Techs., LLC v. Amazon.com Inc.,*
   No. 6:11-cv-00658, Dkt. 140 (E.D. Tex. Aug. 5, 2013)----------------------------- 8

*PersonalWeb Techs., LLC v. IBM Corp.,*
   No. 6:12-cv-661-JRG, Dkt. 103 (E.D. Tex. Mar. 11, 2016) -------------------- 6, 8, 19

*Praxair, Inc. v. ATMI, Inc.,*
   543 F.3d 1306 (Fed. Cir. 2008) --------------------------------------------------- 19, 22

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB,*
   820 F.3d 419 (Fed. Cir. 2016)-------------------------------------------------------- 6

*Wi-LAN USA, Inc. v. Apple Inc.,*
   830 F.3d 1374 (Fed. Cir. 2016) ------------------------------------------------------- 8

**Other Authorities:**

Microsoft Computer Dictionary (2nd ed. 1994)-------------------------------------- 15

Newton's Telecom Dictionary (1994) ----------------------------------------------- 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

RESPONSIVE CLAIM CONSTRUCTION
BRIEF OF AMAZON AND TWITCH

ii

Case No.: 5:18-md-02834-BLF
Case No.: 5:18-cv-00767-BLF
Case No.: 5:18-cv-05619-BLF

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   INTRODUCTION

The patents in suit purport to solve the problem of consistently locating files (i.e., "data items") in a computer system, and controlling access to files that contain licensed content to prevent unauthorized sharing.   To accomplish this, files are identified using "True Names"—names computed from the data in the file itself—instead of other less reliable means such as user-provided file names.   According to the patents, this allows a file to be uniquely identified regardless of its context, which in turn allows a system to reliably limit access to the file to authorized or licensed users.

In these cases, PersonalWeb accuses the use of ETags in conditional GET requests on the Web.  But on the Web, URLs with user-provided file names and paths are used to locate and access files, not ETags.   Nor are ETags used to control access to licensed content.   ETags as used in the accused conditional GET requests to determine whether a user already has the latest version of a requested file stored locally.   That determination is anonymous.   No authorization or content license is checked, and no user requesting a file is denied access to it.   If the ETag of the local file matches the ETag of the latest version, the user receives a confirmation that the version of the file is current.   If those ETags don't match, the user receives the current version of the file.   In this scenario, the user also still has and can continue to freely access the earlier version of the file.

PersonalWeb cannot "construe" its patents to cover this basic Web technology that has nothing to do with the purported invention of the patents.   The claim language, the specification, and the prosecution history—including a series of IPRs that were filed during PersonalWeb's past round of litigations—do not allow it.

## II.   THE TRUE NAME PATENTS

The patents address what the inventors saw as a fundamental problem with existing computer systems:  the use of user-provided names and file system directories to identify and access files or other data items.   The purported invention replaced these conventional names with True Names calculated solely from the data in the data item itself:

> This invention provides, in a data processing system, a method and apparatus for identifying a data item in the system, where the identity of the data item depends

1
2
3

> on all the data in the data item and only on the data in the data item. *Thus, the identity of a data item is independent of its name, origin, location, address, or other information not derivable directly from the data, and depends only on the data itself.*

4

('310 patent at 3:52–58 (emphasis added).)

5
6
7
8
9
10
11
12
13

The patents emphasize that in the invention True Names are used by every computer, whether the user's local computer or a remote server, to uniquely identify and access every data item in the system. (*See, e.g.*, *id.* at 31:33–37:3 ("The System in Operation").) The True Names are immune to changes in context like differing computer systems, storage locations, software, or users: if something *other* than the content of the file changes (for example, the file name), the True Name will not change. (Declaration of J. David Hadden in Support ("Hadden Decl."), Ex. 1, '791 File History, Aug. 29, 1997 Amendment, at 9–10.) In other words, the True Name never changes unless the content of the file does. Conversely, if the file itself changes *at all* (*e.g.*, changing even a single character in a document), its True Name will change. (*See, e.g., id.* at 9.)

14
15
16
17
18
19

Several of the patents are directed to using the True Name to control access to licensed content. (*See, e.g.*, '442 patent at Title ("Enforcement and policing of licensed content using content-based identifiers"), '310 patent at Abstract ("Access to and delivery of licensed content is controlled using content names that were determined based on the content").) The purported benefit of using True Names is that users can't hide illegal file-sharing by changing the name of the file, because the True Name depends only on the file content.

20
21
22
23
24
25

Many of the True Name patents were successfully challenged in inter partes review proceedings filed during PersonalWeb's earlier litigation campaign. The Patent Trial and Appeal Board ("PTAB") found claim 1 of the '544 patent and claims 24, 32, 70, 81, 82, and 86 of the '310 patent invalid. The Federal Circuit affirmed the invalidity holding on the '544 patent, and PersonalWeb declined to appeal claim 70 of the '310 patent.[1] The Board also found a number of claims from related patents invalid: claims 1-4, 29-33 and 41 of U.S. Patent No. 5,978,791 (parent

26

_____

27
28

[1] The Federal Circuit reversed the PTAB with respect to the other claims of the '310 patent, and the appeal process is still pending.

FENWICK & WEST LLP
ATTORNEYS AT LAW

to all of the patents-in-suit); claims 36 and 38 of U.S. Patent No. 6,415,280 (parent to all of the patents-in-suit); claims 10, 21, and 34 of U.S. Patent No. 7,945,539 (sibling of the '310 and '544 patents); claim 30 of U.S. Patent No. 7,949,662 (divisional of the '442 patent); claims 1, 2, 81 and 83 of U.S. Patent No. 8,001,096 (sibling of the '310 and '544 patents).  All of those invaliding determinations were affirmed by the Federal Circuit.

## III.   DISPUTED CONSTRUCTIONS

### A.   The Patents-in-Suit treat "authorization" and "licensing" the same and disclose no alternate meaning for either concept.

1.   "unauthorized or unlicensed" ('310 patent, claim 20)

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| Plain and ordinary meaning. Alternative construction: not permitted or not legally permitted | not compliant with a valid license |

2.   "authorization" ('420 patent, claims 25, 166)

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| plain and ordinary meaning. Alternative constructions: permission | a valid license |

Every asserted claim in the '310, '442 and '420 patents requires using a True Name to determine who is authorized to receive or access specific licensed content.  The shared specification describes making this determination using a license table that links the True Name for a data item to the name of a valid licensee.  (*See, e.g.*, '310 patent at 31:3–32.)  The system provides a copy of the file on request, but *only* to licensed parties.  (*See, e.g.*, *id.*, claim 20 ("if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed"); *id.*, claim 69 ("allow the data item to be provided to or accessed by the second computer if it is not determined that access to the data item is unauthorized"); '420 patent, claim 25 ("wherein a copy of the sequence of bits is not to be provided or accessed without authorization"); *id.*, claim 166 ("wherein the data item is not to be made available for access or provided without authorization"); '442 patent, claim 11 ("allowing the file to be provided from one of the computers having an authorized or licensed copy of the file").)

FENWICK & WEST LLP
ATTORNEYS AT LAW

PersonalWeb's infringement theory, however, has nothing to do with licensing or content authorization.  It accuses "conditional" GET requests using If-None-Match headers on the World Wide Web.  These requests use ETag values that can be used to determine whether a user already has a copy of the current object found at a given web location, or URL.  If so, no new object is sent; if not, the current object is sent to the browser.  The process is anonymous.  No user is refused a requested object based on whether they have a valid license.  And nothing forces the user to discard the old object.  The process simply has nothing to do with controlling access to content.  PersonalWeb wants to rewrite its claims to cover determining whether a new version of a file is available, not whether a particular user has a valid license and is thus authorized to access it.

PersonalWeb's representations during prosecution and in numerous inter partes review actions belie its current positions on the scope of the claims.  PersonalWeb told both the PTAB and the Federal Circuit that the notion that a user is "unauthorized" to access an object already possessed because a new version is available was "illogical" and "cannot be done."  (*See* Hadden Decl., Ex. 2, Patent Owner Response to IPR2013-00596 (Paper 15) at 19–20; *id.*, Ex. 3, Brief of PersonalWeb, Case No. 18-1599, Dkt. 15 at 47 (Fed. Cir. May 31, 2018).)  In distinguishing the Woodhill prior art reference, PersonalWeb argued that "[g]iven that the local computer 20 already has the most recent version of the file, as a matter of common sense there would have been no logical reason to . . . check[] whether that same computer is authorized to access the previous version of that same file."  (*See id.*, Ex. 2, Patent Owner Response to IPR2013-00596 (Paper 15) at 19–20; *see also id.*, Ex. 3, Brief of PersonalWeb, Case No. 18-1599, Dkt. 15 at 47 (Fed. Cir. May 31, 2018) ("The Board never explains how an 'unauthorized' user—one without access to the file—could calculate the Binary Object Identifiers that are necessary for Woodhill's backup system to work.  For good reason: it cannot be done.").)  Most important, PersonalWeb expressly distinguished using an identifier to determine whether an object has changed from determining whether access is authorized.  (*Id.*, Ex. 4, Patent Owner Response to IPR2014-00058 (Paper 19) at 3 ("Francisco compares the program identifier with a single value for making sure that the file is authentic (i.e., that it has not changed) . . . . Thus, Francisco's program identifier . . . is not compared to anything for determining whether access is authorized.").)

FENWICK & WEST LLP
ATTORNEYS AT LAW

RESPONSIVE CLAIM CONSTRUCTION
BRIEF OF AMAZON AND TWITCH

4

Case No.: 5:18-md-02834-BLF
Case No.: 5:18-cv-00767-BLF
Case No.: 5:18-cv-05619-BLF

1    This is why the Court cannot just leave the jury to apply its own lay understanding of the

2    terms.  The parties have a clear dispute regarding claim scope, which the Court and not the jury

3    must resolve.  *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362 (Fed. Cir.

4    2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is

5    the court's duty to resolve it."); *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d

6    1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of

7    the patent claims are not left to the jury.") (citing *O2 Micro*, 521 F.3d at 1361–62).

8    Turning to the specifics of the parties' dispute, the patents treat "unauthorized or

9    unlicensed" as a single concept that relates to a fundamental purpose of the claimed invention—

10   policing access to licensed content.  The Court should construe the terms consistent with the

11   patentee's own use of them, and not supplant the patentee's meaning with a vague dictionary

12   definition tailored for PersonalWeb's current infringement theory.  The very title of the '442 patent

13   describes the invention as the "[e]nforcement and policing of licensed content using content-based

14   identifiers."  ('442 patent, Title.) The shared specification of the patents describes how to prohibit

15   *unauthorized* parties from accessing *licensed* files.  ('310 patent at 31:3–32.)  In fact, these portions

16   of the specification that discuss policing *licensing* (the "Track for Licensing Purposes" mechanism

17   and data structures) are the only places in the specification that use *either* the terms "licensed" or

18   "authorized," or any variant thereof.

19   The specification repeatedly treats the concept of "licensed" use of content as

20   interchangeable with whether that use is "authorized."  It describes using a "license table" that

21   stores the True Name for a data item and the "licensee," the "identity of a user *authorized* to have

22   access to it."   (*Id.* at 11:31–45

23   (emphasis added).)  The licensing

24   table records the True Name of "key

25   files" required to use the licensed

26   product along with the identity of the

| Field | Description |
|---|---|
| True Name | True Name of a data item subject to license validation. |
| licensee | identity of a user authorized to have access to this object. |

27   system or user that is "authorized" to access that file.  (*Id.* at 31:17–23; *see also* Hadden Decl., Ex.

28   5, Memorandum Order, *PersonalWeb Techs., LLC v. IBM Corp.*, No. 6:12-cv-661-JRG, Dkt. 103

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

at 24 (E.D. Tex. Mar. 11, 2016) ("Gilstrap Order").)  Both the description of the license table and the table itself use "licensed" and "authorized" interchangeably.  (*Compare* '310 patent, 11:33–35 ("the license table 136 records a relationship between a licensable data item and the **user licensed to have access** to it"), *with id.* at 11:43 ("identity of a **user authorized to have access**") (above right) (emphasis added).)

As important, the patents disclose the *license* table as the sole means of controlling access to content; there is no separate means disclosed in the patents for determining whether content is "*unauthorized*."  The specification recites that "[t]his mechanism ensures that licensed files are not used by unauthorized parties," and then notes that license enforcement is performed for users "who do not have proper authorization."  (*Id.* at 31:4–5, 9–12.)  In the patents, "authorization" refers to a valid license, and "unauthorized" and "unlicensed" refer synonymously to behavior that is not compliant with a valid license.

Given this, the Court should adopt Amazon's constructions despite the general rule that "interpretations that render some portion of the claim language superfluous are disfavored." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429–30 (Fed. Cir. 2016) (citations omitted). "The preference for giving meaning to all terms [] is not an inflexible rule that supersedes all other principles of claim construction."  *Id.*  This is because "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Id.* at 430 (quoting *Phillips v. AWH Corp.*, 415 F.3d 430 1303, 1316 (Fed. Cir. 2005) (en banc)).  Here, where the specification so repeatedly and consistently describes licensing and authorization as the same concept, the doctrine does not apply.  *See Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (applying same meaning to terms "detachable" and "releasable" in a single claim because "the evidence indicates that the patentee used the two terms interchangeably"); *EcoNova, Inc. v. DPS Utah*, No. 1:12-CV-174, 2013 WL 65460, at *13–14 (D. Utah Jan. 4, 2013) (in construing the disjunctive phrase "at or adjacent to the peripheral wall," "conclud[ing] that 'at' is synonymous with 'adjacent' and means 'near' [because] this is simply a case where [patentee] used different words to express similar concepts") (citations omitted).

By contrast, "authorized" is not used in the patents to refer only to any "permitted" action, as PersonalWeb argues.  The two examples of "permissions" PersonalWeb points to in the specification in fact do not even use the term "authorized," and they have nothing to do with authorizing access to content.  (Op. Br. at 2.)  They therefore shed no light on the meaning of "authorized" as it is used in the claims.  The first example is a "region table" that describes part of the file system on which the True Names invention is built.  (*See* '310 patent at 9:62–10:33.)  A region table can identify a region or file as "read-only," which prevents writing changes to it.  (*Id.*)  The only disclosed example of a read-only file is removable media, such as a CD-ROM.  (*See id.* at 27:35–39.)  Banning writing changes to a file using the file system is related to neither locating or accessing a True Name file, nor determining which users are authorized to access the file's content.

The second example is a "lock flag," which, again, has nothing to do with authorizing access to content.  (Op. Br. at 2.)  Instead, it describes a conventional method of handling shared resources in a distributed system.  The lock flag "indicates whether a file is locked, that is, it is being modified by the local processor or a remote processor."  ('310 patent at 9:23–26.)  Because "[o]nly one processor may modify a file at a time," the flag lets processors share resources in an orderly fashion.  (*Id.*)  The specification notes that the use of "appropriate locking techniques" to quarantine access to shared resources was "well understood by ordinarily skilled programmers of distributed applications."  (*Id.* at 8:11–18.)  What PersonalWeb cites describes conventional techniques for preventing computers from making inconsistent changes to the same data at the same time; it has nothing to do with "authorizing" access to content.

PersonalWeb's reliance on these disclosures highlights another problem with its proposed constructions.  Not only does it unmoor the concept of "authorized" from its use in the specification, it also conflates the step of determining whether access to the licensed content is authorized with permitting that content to be accessed or not.  These are separate operations in the claims.  For example, claim 20 of the '310 patent separately requires "permitting the content to be provided to or accessed" based on the determination of whether the content is authorized or licensed.  (*Id.*, claim 20 (39:24–28).)  Authorized cannot mean "permitted" because permitting access is a separate

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   claim step that is performed after, and depends on, first determining whether the content is

2   unauthorized or unlicensed.

3       Judge Gilstrap recognized that licensing and authorization are the same concept in the

4   patents, and provided the correct construction for these terms.  (*Compare* Gilstrap Order at 25

5   (construing "licensed" as "valid rights to content"), *with id.* at 28 (construing "authorized" as

6   "compliant with a valid license"); *see also id.* ("The Court therefore reaches the same conclusions

7   [regarding the "authorization" terms] for substantially the same reasons as for the terms 'licensed'

8   and 'unlicensed.'").)   In his order, Judge Gilstrap quoted the precise language proposed for

9   construction here.  (Gilstrap Order at 25 (quoting the phrase "unauthorized or unlicensed copies"

10  in the '442 patent).)  He also correctly declined to follow Judge Davis's decision not to construe.

11  As he recognized, the dispute before Judge Davis did not address "authorization" at all.  (Gilstrap

12  Order at 23.)   There, with respect to the terms "licensed" and "unlicensed," the parties disputed

13  "whether the license must be to the content of a file or to the system as a whole," and whether a licensed

14  file must be "requested."  (Hadden Decl., Ex. 6, Memorandum Opinion and Order, *PersonalWeb*

15  *Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658, Dkt. 140 at 25–26, 47 (E.D. Tex. Aug. 5,

16  2013).)

17      PersonalWeb contends that the prosecution history supports its position, but this argument

18  fails.  PersonalWeb points to claim amendments made to the '420 patent in 2010[2] as evidence that

19  the applicants intended to treat licensing differently than authorization.  (Op. Br. at 5.)  Even if the

20  claims PersonalWeb identifies were in the issued patent, which they are not, the differences in these

21  claims cannot overcome the clear description of the specification.  *Wi-LAN USA, Inc. v. Apple Inc.*,

22  830 F.3d 1374, 1391 (Fed. Cir. 2016) ("Claim differentiation cannot 'overcome . . . a contrary

23  construction dictated by the written description or prosecution history.'") (citing *Marine Polymer*

24  *Techs., Inc. v. HemCon, Inc.,* 672 F.3d 1350, 1359 (Fed. Cir. 2012).  "An inventor is entitled to

25  claim in a patent what he has invented, but no more." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d

26  _____

27  [2] PersonalWeb describes the amendments as relating to the '442 patent, but the recited excerpts

28  are from the file history of the '420 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1250, 1256 (Fed. Cir. 2012.)  PersonalWeb cannot expand the scope of its invention 15 years after the fact by trying to slice the single concept "unauthorized or unlicensed" into two distinct criteria and thereby expand its claims in ways that were not contemplated by the inventors or described in their specification.

In sum, PersonalWeb is trying to rewrite the access control claims that require determining whether content is "unauthorized or unlicensed" to cover merely providing updated content if the requesting computer does not already have it.  The intrinsic record plainly prevents this.  But apart from that record, PersonalWeb may not do so for another reason.  Claims with that precise scope were found invalid by the PTAB in a final written decision and affirmed by the Federal Circuit.  For example, claim 33 of the '791 patent, now invalid, is directed to using a True Name to "determin[e] . . . whether the data item is present at the destination location" and then "based on the determining whether the data item is present, providing the destination location with the data item only if the data item is not present at the destination."  This is exactly the claim scope that PersonalWeb is aiming for here—claim scope that the PTAB and Federal Circuit have already concluded PersonalWeb is not entitled to remove from the public domain.

**B.**   **In the True Names patents, a request for a data item includes the name for that data item.**

1.   **"the request including at least a content dependent name of a particular data item" ('310 patent, claim 20)**

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| the request including at least a content dependent name of a particular data item / the request including at least a content dependent name for the data item | the request including at least a content dependent name of a particular requested data item |

The entire point of the patents is to identify requested items by their content-based "True Name."  Thus, when the request for a particular data item includes a content-based name it has to be the name of the requested item.  Claim 20, like the other asserted claims of the '310 patent, requires determining whether the requested content is licensed or authorized.  The requested content must be the content named in the request.

This is the core of the present dispute.  Amazon's proposed construction requires that the

FENWICK & WEST LLP
ATTORNEYS AT LAW

content dependent name in the claimed request be the name of the data item that is requested. PersonalWeb's construction is aimed at divorcing the named data item in the request from the item that will be found and returned.  PersonalWeb needs to do so to support its infringement theory, since data is returned in response to a conditional GET request only when the ETag referenced in the If-None-Match header is different from the ETag of the current object.  Not only is the ETag not a name, but the request is for an object with a different ETag—anything but the one included in the request.

PersonalWeb argues that Amazon's construction is unnecessarily limiting because the specification describes using a True Name for purposes that do not require transferring data.  (Op. Br. at 10-11.)  But looking at the full context of claim 20 makes it clear that "transferring data" is exactly what the claim is about.  The claim recites "controlling distribution of content from a first computer to at least one other computer, in response to a request obtained by a first device in the system from a second device in the system."  ('310 patent, claim 20.)  The only real dispute, then, is whether the name in the request must be for the content that is then distributed.  The obvious answer is the correct one; it is.

Every example of requesting data recited in the specification describes a match between the True Name and the data.  (*See, e.g.*, *id.* at 15:34–59 (The "Realize True File from Location" mechanism is "used to try to make a local copy of a True File, given its True Name and the name of a source location."); *id.* at 15:60–16:31 (The "Locate Remote File" mechanism locates "the file with the given True Name."); *id.* at 16:32–63 (The "Make True File Local" mechanism is "used when a True Name is known and a locally accessible copy of the corresponding file or data item is required."); *see also id.* at 22:37–25:10 (describing various "remote mechanisms" for requesting files based on their True Names).)  There is simply no support for an interpretation of the claims where a content-based name is used to identify or request a non-matching data item.

Indeed, the Examiner specifically allowed the '310 patent to issue because it requires a specific relationship between a request for content (including a hash of the content), a licensing check based on that hash, and the response with the data to which the hash corresponds.  (*See* Hadden Decl., Ex. 7, '310 Patent File History, June 24, 2010 Notice of Allowance at 3–4.)  This

FENWICK & WEST LLP
ATTORNEYS AT LAW

obvious reading of the claim is also what PersonalWeb advocated when defending the '310 patent in inter partes review, arguing that "[o]ne of ordinary skill in the art at the time of the invention would have recognized that a 'name' for a data item is used not only to identify that data item, but is also used to refer to that data item, to access that data item, search for that data item, and address that data item, both in this art in general and according to the instant specification."  (*Id.*, Ex. 2, Patent Owner Response to IPR2013-00596 (Paper 15) at 5.)  Amazon's construction is the only proposal that is true to the very purpose of the alleged invention.

### C.   The invention uses "names" to locate and verify access to data items.

1.   **"content-dependent name" ('310 patent, claims 20 and 69; '420 patent, claim 25)**

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
| --- | --- |
| a data item identifier that changes with the content [of the data item / the sequence of bits of the particular data item] | an identifier used to locate and access a data item that is generated by processing the sequence of bits [of the data item / of the particular data item] |

2.   **"name for a data file" ('442 patent, claim 10)**

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
| --- | --- |
| a data file identifier | an identifier used to locate and access a data file |

The parties' dispute over the "name" terms is straightforward.  First, Amazon's construction recognizes that the claimed content-dependent names are identifiers used to locate and access data items in the distributed system.  On this point, the shared specification could not be clearer:  the "invention further provides an apparatus and a method for determining whether a particular data item is present in the system or at a location in the system, by examining only the data identities of a plurality of data items," *i.e.*, the claimed content-dependent names.  ('310 patent at 3:59–62.)  The disclosed system "provides transparent access to any data item by reference only to its identity and independent of its present location, whether it be local, remote, or offline" and "can verify that data retrieved from another location is the desired or requested data, using only the data identifier used to retrieve the data."  (*Id.* at 4:10–12; 4:43–45.)  In other words, a name is used to find and to access content in the distributed system described by the True Names patents.  As PersonalWeb has

Fenwick & West LLP
ATTORNEYS AT LAW

repeatedly argued, using a content-based name in this manner avoids the need for other kinds of location information, such as a file path.  (*See* Hadden Decl., Ex. 8, Brief of PersonalWeb, Case No. 14-1602, Dkt. 29 at 19 (Fed. Cir. Nov. 12, 2014) ("data items are accessed by comparing the True Name against a list of stored True Names, thus eliminating the need for directory path and filename information").)

Further, PersonalWeb has previously argued before the Patent Office and the Federal Circuit that "something is not a 'name' simply because it is an 'identifier.'" (*Id.* Ex. 9, Patent Owner's Preliminary Opposition to IPR2013-00596 (Paper 8) at 33–34.)  PersonalWeb told the Patent Office that, unlike its patents, the Woodhill prior art system does not use its identifiers "as names," but "merely employs a hash to compare same file components to determine whether there has been a change." (*Id.*)  A name does more than a simple identifier because it is used to locate and access corresponding data.

And PersonalWeb told the Federal Circuit the same: "[u]nlike the '310 patent, Woodhill does not use the Binary Object Identifiers to locate or control access to any data item within a network." (*Id.*, Ex. 3, Brief of PersonalWeb, Case No. 18-1599, Dkt. 15 at 10 (Fed. Cir. May 31, 2018); *see also id.*, Ex. 8, Brief of PersonalWeb, Case No. 14-1602, Dkt. 29 at 14 (Fed. Cir. Nov. 12, 2014) ("Unlike True Names, [the prior art] do[es] not use content-based identifiers to locate, identify, access, move, or synchronize all Binary Objects found anywhere on the system (within individual files or across different files.").)  PersonalWeb specifically argued that the claimed invention "uses the content-based True Name, not a user-defined name, to determine if a file exists at a storage location and whether it matches another file stored at a different location." (*Id.*, Ex. 8, Brief of PersonalWeb, Case No. 14-1602, Dkt. 29 at 15.)

PersonalWeb now seeks a construction that contradicts what it told the PTAB and the Federal Circuit to read its claims on ETags that are not used to locate or access data items (that is done on the web using URLs) but, like the Binary Object Identifiers in Woodhill, are used only to determine whether an object (named in a URL) has been changed.

The second dispute between the parties focuses on how the content-dependent name is generated.  Amazon's construction requires an identifier "that is generated by processing the

Fenwick & West LLP
Attorneys at Law

sequence of bits [of the data item / of the particular data item]."  Amazon's proposal requires simply what the patent teaches—that an identifier for a data item should be created from the data in that item.  This is the core requirement of the invention.  (*See* '310 patent at 1:41–48 ("This invention relates to data processing systems . . . wherein data items are identified by substantially unique identifiers which depend on all of the data in the data items and only on the data in the data items.").)

PersonalWeb's construction, in contrast, is open-ended.  It requires only that the identifier "change[] with the content [of the data item / the sequence of bits of the particular data item]."  This construction would allow anything to be part of the content-dependent name as long as it includes something that would change with the data item, such as a name that included a content-derived portion and a path name reflecting the location of the data item.  In this instance, the name would change when the content changes as required by PersonalWeb's construction.  However, the name would also depend on the same "contextual" information that the specification prohibits that "[t]he same data name in two different contexts may refer to different data items, and two different data names in the same context may refer to the same data item."  (*Id.* at 2:41–43.)  The patents teach that a True Name should be based on "only the data in the data item" and should "not rely[] on any sort of context."  (*Id.* at 3:30–35.)  It should be independent of any "information not derivable directly from the data."  (*Id.* at 3:55–58.)  PersonalWeb's proposed construction would not meet these key requirements of the claimed invention.

### D.   The names used by the '544 patent are created by hashing the segments of a data item, then hashing the resulting values, creating a "hash of hashes."

#### 1.   "digital key for the particular file" ('544 patent, claim 46) / "file key for each particular file" ('544 patent, claim 52)

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| a content-based identifier for [the/each] particular file | unique identifier used to locate [the/each] particular file |

Like the other patents, the '544 patent describes applying a function to the contents of a file to generate True Name for the file.  The '544's claims, however, are directed to embodiments dealing with "compound" data files, rather than the "simple" files discussed throughout the specification.  (*See* '544 patent at 5:65–5:67 ("A simple file 120 consists of a single data segment

1   122. A compound file 120 consists of a sequence of data segments 122.").)  Unlike the "content-

2   dependent name" or "name for a data file" used to identify a simple file, the asserted claims use the

3   terms "digital key for the particular file" (*id.*, claim 46) and "file key for each particular file" (*id.*,

4   claim 52) for the True Names of compound files.

5        There are two disputes regarding the claimed "keys" for compound files: 1) are they, like

6   the other content-based identifiers, used to locate a particular file? and 2) must a key be unique?

7   The answer to both is, yes.

8        As discussed above for the terms "content-dependent name" and "name for a data file," the

9   True Name patents use content-based identifiers to locate data items.  *See supra* Section III.C.  The

10  claimed "file key" and "digital key," like the True Names for simple data items, are used to locate

11  data items.  Once a True Name is calculated, whether for a simple or compound data item, the

12  resulting True Name is the identifier for all purposes.  ('310 patent at 13:17-20 ("[T]the invention

13  is described herein using only the True Name of a data item as the identifier for the data

14  item . . . .").)

15       Further, PersonalWeb differentiated generic content-based identifiers found in the prior art

16  from the True Names claimed in the '544 patent.  In response to an inter partes review petition filed

17  against claim 1 of the '544 patent, PersonalWeb argued that the True Names claimed in the '544

18  differed from the hash-based identifiers in the Woodhill prior art because they are "used as a file

19  name or as a substitute for a file name."  (Hadden Decl., Ex. 10, Patent Owner Response to

20  IPR2013-00084 (Paper 9) at 13.)  And when it appealed the determination that claim 1 was invalid,

21  PersonalWeb told the Federal Circuit that the prior art identifiers were different than the claimed

22  True Names of the '544 patent because they are not used to "locate, identify, access, move, or

23  synchronize" the data items in the system.  (*Id.*, Ex. 8, Brief of PersonalWeb, Case No. 14-1602,

24  Dkt. 29 at 14 (Fed. Cir. Nov. 12, 2014).)  The "key" True Names should be construed consistently

25  with the usage in the specification and the PersonalWeb's prior representations:  a key is used to

26  locate a data item.

27       The claimed "keys" are also unique to a given data item.  As discussed above, the whole

28  point of the True Name patents is to identify files solely by their content-based identifiers, not

FENWICK & WEST LLP
ATTORNEYS AT LAW

contextual information like file paths.  (*See, e.g.*, '544 patent at 1:44–49.)  For this to work, the identifier must be sufficiently unique to prevent multiple files from being assigned the same identifier.  (*See id.*)  The asserted claims of the '544 patent require that, after a digital key or file key is created, it is added to a database and mapped to its corresponding file information, i.e. it is a one-to-one correspondence.  (*See id.*, claim 46 ("adding the particular digital key of the particular file to a database, the database including a mapping from digital keys of files to information about the corresponding files"); *id.*, claim 52 ("adding an entry to a database to map said particular file key to information about the particular file").)  Once added to the database, the key is used to later locate the corresponding file in the database.  (*See id.*, claim 46 ("attempting to match the search key with a digital key in the database"); *id.*, claim 52 ("comparing the second key value to key values in the database to ascertain whether or not the one or more particular parts correspond to any of the plurality of files").)

In the context of a database, a "key" represents a unique identifier used to locate a record in a database.  The claimed database mapping of keys to files works only if a single key matches up with a single file.  One of ordinary skill in the art at the time of the invention would have been familiar with this requirement.  (*See* Hadden Decl., Ex. 11, Newton's Telecom Dictionary (1994), "Key: One or more characters or perhaps a field within a data record used to identify the data and perhaps control its use"; *see also id.*, Ex. 12, Microsoft Computer Dictionary (2nd ed. 1994), "key.")  In other words, if a "key" does not uniquely identify a file, then it is not a "key" in the database sense, and the claims will not function.  Amazon's construction is correct.

2.  **"part" ('544 patent claims 46, 52)**

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| a "part" is a separate sequence of bits | a "part" is a sequence of bits within a file |

The '544 patent teaches breaking a large (compound) data item into parts as the first step in calculating its True Name.  ('544 patent at 13:43–44 ("A compound data item is one whose size is greater than the particular given size of a simple data item.").)  Due to its size, the True Name of compound data item is calculated differently than the True Name of a simple data item.  (*See id.* at

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   13:44–61.)  Although the term "part" does not appear in the specification, the claims of the '544

2   patent closely track this compound data item embodiment.  (*Compare id.*, claims 46, 52, *with id.* at

3   13:43–61.)

4         As PersonalWeb explained to the Federal Circuit, the identifiers of the '544 patent are

5   created as a "hash of hashes" by applying a function to parts of a file to create part values and then

6   applying a function to the part values to obtain the key.  (*See* Brief of PersonalWeb, Case No. 14-

7   1602, Dkt. 29 at 72 (Fed. Cir. Nov. 12, 2014) (arguing that claim 1 "requires: (a) separating a 'data

8   item' into a 'plurality of parts'; (b) applying a hash function to each part to obtain a 'value' for each

9   part; and (c) applying a second hash function to the 'value' of each part to obtain a value for the

10  'data item' as a whole").)

11        To calculate its True Name, a compound file is first "partition[ed] . . . into segments." ('544

12  patent, 13:47–50, Fig. 10(b), Step S220.)  Each part is then "assimilated" into the system. (*Id.* at

13  Fig. 10(b), Step S222).  Assimilating is the process of

14  determining the True Name of a data item, determining

15  it exists in the True File Registry and, if not, adding it

16  to the registry.  (*Id.* at 14:4–35.)  The assimilation step

17  includes calculating the True Name for the part by

18  applying a function to its contents to create the claimed

19  "part value."  (*Id.* at 13:50–53; claim 46 ("the part

20  value of each specific part of said first one or more

21  parts being based on a first function of the contents of

22  the specific part").)  Next, the system "create[s] an

23  indirect block consisting of the computed segment

24  True Names (Step S224.  An indirect block is a data

25  item which consists of the sequence of True Names of

26  the segments." (*Id.* at 13:53–56; *see also* 13:44–53,



27  Fig. 10(b), Step S224.)  Finally, the indirect block is also assimilated into the system.  (*Id.* at Fig.

28  10(b), Step 226.)  As before, assimilation includes applying a function to the data of the indirect

FENWICK & WEST LLP
ATTORNEYS AT LAW

block, creating the True Name of the compound file, *i.e.*, the "particular digital key" (*id.*, claim 46) or "file key" (*id.*, claim 52).  (*Id.* at 13:56–57 ("Then, in step S226, assimilate the indirect block and compute its True Name.")).

A "part," then, is one segment within a file.  Amazon's construction describes the same, defining "part" as "a sequence of bits within a file."  PersonalWeb's construction which omits the requirement that a "part" is a "part of the file" would permit *any* sequence of bits to be a "part," even if it is not "a part" of "the particular file" of the claim.  PersonalWeb chose this construction because their infringement contentions accuse as "parts" separate "asset files" (e.g., images) that are not part of the "webpage base file" that it identifies as the "particular file" of the claim.  (*See* Hadden Decl., Ex. 13, PersonalWeb's Infringement Contentions for Twitch, Exhibit D ('544 patent), at 1.)  Because the purported "parts"—the asset files—are admittedly not part of the "webpage base file," PersonalWeb proposes a construction that permits any arbitrary "sequence of bits" to be a "part" even when it is not.

There can be no real dispute that a "part" as used in the '544 patent is a portion of a larger file.  Every independent claim of the '544 patent recites a singular data item comprising parts.  (*See* '544 patent, claim 1 ("a first data item comprising a first plurality of parts" and "a second data item comprising a second plurality of parts"); *id.*, claim 46 ("the particular file comprises a first one or more parts"); *id.*, claim 52 ("wherein each file of the plurality of files comprises a corresponding one or more parts").)  The claims never use the term "part" to describe independent separate data items.[3]  PersonalWeb's own extrinsic evidence supports Amazon's construction.  (Op. Br. at 16 (defining part as "[a] portion, division, piece, or segment of a whole").)

PersonalWeb's citation to the specification confirms that a "part" is "a sequence of bits."  (*See id.*)  Amazon agrees that a part is "a sequence of bits" and included that language in its

---

[3] To the extent that PersonalWeb's inclusion of "separate" is meant to convey only that the parts of a file are non-overlapping, Amazon and Twitch do not object to that limitation on the meaning of "part", which is consistent with the specification.  (*See* '544 patent at 13:44–50 ("To determine the True Name of . . . a compound data item . . ., partition the data item into segments . . . .").)

FENWICK & WEST LLP
ATTORNEYS AT LAW

proposal.  The dispute between the parties is about where the sequences of bits come from (*i.e.*, are they part of "the particular file"), not whether a part is a sequence of bits.   The claim could not be clearer, "the particular file comprises a first one or more parts."  ('544 patent, claim 46.)  For these reasons, Amazon asks the Court to construe "part" as "a sequence of bits within a file."

### 3.  **"being based on a first function of the contents of the specific part"** ('544 patent, claim 46)

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| Plain and ordinary meaning.<br><br>Alternative construction: being based upon a first computation using the data of the specific part | being based on a computation where the input is all of the data in the specific part |

### 4.  **"part value"** ('544 patent, claims 46, 52)

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| a value created by a computation using the sequence of bits that makes up the part | a value created by a computation on the sequence of bits that makes up the part |

The parties' dispute for these terms centers on whether a "part value" can be based on something other than the data of the part.  It cannot.  The '544 patent repeatedly explains that the identifiers, or "part values," must be based on "all of the data in the data items and only on the data in the data items."  (*See id.* at 3:53–59 ("This invention provides, in a data processing system, a method and apparatus for identifying a data item in the system, where the identity of the data item depends on all of the data in the data item and only on the data in the data item."); *id.* at 1:45–49 (same); *id.* at 32:6–13 (same).)

The '544 patent unequivocally teaches that an identifier for a data item should be based solely on its content, and not "its name, origin, location, address, or other information not derivable directly from the data."  ('544 patent at 3:57–59.)  The claims are similarly clear.  A part value is created based on "a first function of the contents of the one or more parts."  The input is the contents of the part.  Nothing else.

Accordingly, Amazon proposes a construction defining "part value" as "a value created by a computation on the sequence of bits that makes up the part."  Likewise, Amazon proposed a construction for "being based on a first function of the contents of the specific part" as "being based

1   on a computation where the input is all of the data in the specific part."

2         PersonalWeb's new constructions for these terms seek to leave the function input open-

3   ended and allow identifiers to be based not only on data in the data item, but literally *anything* else.

4   This would defeat the express purpose of the True Name patents.  *See Praxair, Inc. v. ATMI, Inc.*,

5   543 F.3d 1306, 1324 (Fed. Cir. 2008) (holding that the "claims of the patent must be read in light

6   of the specification's consistent emphasis on this fundamental feature of the invention").  As the

7   patentee told the public:

8         To summarize, if a system determines an identifier using all of the data in a data
          item as well as <u>something else</u>, then that system does <u>not</u> determine the identifier
9         using <u>only</u> the data in the data item. And, if a system determines an identifier using
          <u>only some</u> of the data in a data item, even if it uses nothing else to determine the
10        identifier, that system does <u>not</u> determine the identifier using <u>all</u> the data in the data
          item.
11

12   (*See* Hadden Decl., Ex. 1, File History of '791 patent, August 29, 1997 Response to Office Action

13   at 10) (emphasis in original).)

14         Judge Gilstrap rejected a nearly identical argument from PersonalWeb.  (*See* Gilstrap Order

15   at 15–20.)  There, the court construed the phrase "applying a function to the contents of the

16   corresponding file" ('442 patent, claim 23) as "performing a computation where the input is all of

17   the data in the file, and only the data in the file."  (*See* Gilstrap Order at 21.)  Judge Gilstrap

18   understood exactly what PersonalWeb was trying to do there:

19         The Court therefore hereby expressly rejects Plaintiff's argument that the use of
          the word "comprises" means that there is no limit as to whether the data item
20        identification can be based on information other than the data in the data item. *See,
          e.g., Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998)
21        ("'Comprising' is not a weasel word with which to abrogate claim limitations.");
          *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir.
22        2001) ("The open-ended transition 'comprising' does not free the claim from its
          own limitations.") (citing *Spectrum*); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595
23        F.3d 1340, 1354 (Fed. Cir. 2010) (citing *Spectrum*).
24

25   (Gilstrap Order at 20.)  As Judge Gilstrap recognized, the invention works only when a content-

26   based identifier is based on nothing more or less than the content.  (*See* '544 patent at 1:45–49

27   ("This invention relates to . . . data processing systems wherein data items are identified by

28   substantially unique identifiers which depend on all of the data in the data items and only on the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    data in the data items.").)

2         PersonalWeb needs a part value to be based on data other than the data item because in its

3    Ruby on Rails theory the identifiers and purported "part values" are derived from values other than

4    the data in the data item.  For example, Exhibit 1 to the amended complaint against Twitch accuses

5    an "Asset with Content-Based Fingerprint."  (*See PersonalWeb Techs., LLC. v. Twitch Interactive,*

6    *Inc.*,   No.   5:18-cv-05619-

7    BLF, Dkt. 13, Exhibit 1

8    (N.D. Cal. Oct. 4, 2018).)

9    PersonalWeb    specifically

10   accuses Twitch's use of an

**Asset with Content-Based Fingerprint**

Name: application-1b13569e9620782f423d4cd3ce931750.css
Date Served: 5/9/2014
Seed String: 2.2.2production-1.0
MD5 hash of content prepended with seed string: 1b13569e9620782f423d4cd3ce931750
Host Server: www-cdn.jtvnw.net
Host Server Type: nginx

11   "MD5 hash of content prepended with [a] seed string."  *See id.*  The "seed string" is a value based

12   on the version and environment of the Ruby on Rails software that generates it, *i.e.*, it is explicitly

13   contextual.  The seed string is in no way related to the content of a data item.  With Twitch and

14   other defendants' technology in mind, PersonalWeb seeks a construction of these terms that would

15   permit arbitrary inputs to the function to create an identifier based on information other than "all of

16   the data in the data item and only on the data in the data item."  As repeatedly emphasized

17   throughout the patent and its prosecution history, the content-based identifier—here, "part value"—

18   cannot be based on content other than the data in the data item.  *See Alloc, Inc. v. Int'l Trade*

19   *Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (in construing the claims, "look[ing] to whether the

20   specification refers to a limitation only as a part of less than all possible embodiments or whether

21   the specification read as a whole suggests that the very character of the invention requires the

22   limitation be a part of every embodiment").

23        For these reasons, the Court should construe "part value" as "a value created by a

24   computation on the sequence of bits that makes up the part," and "being based on a first function

25   of the contents of the specific part" as "being based on a computation where the input is all of the

26   data in the specific part."

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

5.      **"function of the one or more of part values" ('544 patent, claim 46)**

| PersonalWeb's Proposal | Amazon and Twitch's Proposal |
|---|---|
| computation using the one or more of part values | computation where the input is the one or more part values |

The dispute for this term parallels the disputes for "being based on a first function of the contents of the specific part" and "part value"—in each case PersonalWeb seeks to include additional inputs to the function. The "first function" uses the data of a part within a file to create a "part value," and the "second function" (the "hash of the hash") creates the identifier for the compound data item, *i.e.*, the "particular digital key" in claim 46 and the parallel "file key" in claim 52, from the part values. (*See supra* p. 16 (discussing the process for creating a True Name of a compound data item).)

As PersonalWeb explained to the Federal Circuit, the '544 patent's two-step process requires "hash[ing] [the] hashes":

> As the elements are arranged, therefore, this claim requires (among other things) applying a first hash function to obtain part values, and then applying a second hash function to those part values to obtain a first value—in short, as the PTAB summarized, it requires a "hash of hashes."

(Hadden Decl., Ex. 8, Brief of PersonalWeb, Case No. 14-1602, Dkt. 29 at 58–59 (Fed. Cir. Nov. 12, 2014).)

As with the other patents in suit, the resulting identifiers depend solely on the data that makes up the data item: no more, and no less. "Part values" are created from the data of the "parts," (*i.e.*, segments of the data item). Thus, applying a function to the "indirect block" of "part values" results in a value for the entire item that is derived entirely from the data of its constituent parts. (*See id.*, Ex. 14, File History of '544 patent, December 30, 2010 Response to Office Action at 17 ("Claim 10 has been amended to clarify its meaning, *i.e.*, that the data item identifier is based on a function of the segment identifiers. For example, a data item may consist of N segments, thereby having N segment identifiers. The data item identifier would, in this case, be a function of the N segment identifiers. One example of this is a hash function of a block formed by the N segment identifiers."); *see also* '544 patent, claims 46, 52.) No other values are used. (*See id.*)

FENWICK & WEST LLP
ATTORNEYS AT LAW

Amazon's proposal is true to the purpose of the purported invention—it results in a content-based identifier where the only inputs are, as the specification describes, "all" of the data in the data item and "only" on the data in the data item.  (*See id.* at 3:53–59.)  This is the only reasonable interpretation in the context of the claims.  (*See id.*, claim 46 ("wherein the particular digital key for the particular file is determined using a second function of the one or more of part values of said first one or more parts"); *id.*, claim 52 ("the file key for each particular file being based on a second hash function of the part values of the one or more parts of that file")); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) (finding it "entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language").

PersonalWeb wants to extend the claims to cover the hash of hashes plus other inputs that are not hashes of anything, much less the parts of the "particular file."  PersonalWeb's infringement contentions against Twitch contend that the input to the second "function of the one or more of part values of said first one or more parts" is not the hashes of the "parts" but is instead the un-hashed HTML that makes up the base webpage file.  (*See* Twitch Infringement Contentions, Exhibit D at 3 ("Twitch's system applies an MD5 hash algorithm [the second function] to the content of the webpage base file, which includes fingerprints of a plurality of asset files [the alleged part values] needed to display the webpage . . . .").)  The Court should reject PersonalWeb's attempt to redraft its patents.  *See Praxair, Inc*, 543 F.3d at 1324 (rejecting patentee's proposed construction that ignored the "fundamental object of the invention").

For these reasons, Amazon respectfully asks the Court to construe "function of the one or more of part values" as "computation where the input is the one or more part values."

//

//

//

//

//

//

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

Respectfully submitted,

2  Dated:    April 22, 2019          FENWICK & WEST LLP

3

4                                   By: */s/ J. David Hadden*
                                        J. David Hadden
5                                       Counsel for AMAZON.COM, INC., and
                                        AMAZON WEBSERVICES, INC.
6

7

8  Dated:    April 22, 2019          Respectfully submitted,

9
                                    FENWICK & WEST LLP
10

11                                  By: */s/ Todd R. Gregorian*
                                        Todd R. Gregorian
12                                      Counsel for TWITCH INTERACTIVE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW