1   MICHAEL A. SHERMAN (SBN 94783)
    masherman@stubbsalderton.com
2   JEFFREY F. GERSH (SBN 87124)
    jgersh@stubbsalderton.com
3   SANDEEP SETH (SBN 195914)
    sseth@stubbsalderton.com
4   WESLEY W. MONROE (SBN 149211)
    wmonroe@stubbsalderton.com
5   STANLEY H. THOMPSON, JR. (SBN 198825)
    sthompson@stubbsalderton.com
6   VIVIANA BOERO HEDRICK (SBN 239359)
    vhedrick@stubbsalderton.com
7   **STUBBS, ALDERTON & MARKILES, LLP**
    15260 Ventura Blvd., 20th Floor
8   Sherman Oaks, CA 91403
    Telephone:     (818) 444-4500
9   Facsimile:     (818) 444-4520

10  **Attorneys for PersonalWeb Technologies, LLC**
    [Additional Attorneys listed below]

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15  IN RE PERSONAL WEB TECHNOLOGIES,        **CASE NO.: 5:18-md-02834-BLF**
    LLC, ET., AL., PATENT LITIGATION
16

17  AMAZON.COM, INC., et., al.,             **Case No.: 5:18-cv-00767-BLF**

18              Plaintiffs,                 **Case No.: 5:18-cv-05619-BLF**

19  v.                                      **PERSONALWEB TECHNOLOGIES,**
                                            **LLC'S REPLY TO AMAZON'S**
20  PERSONALWEB TECHNOLOGIES, LLC,          **OPPOSITION TO CLAIM**
    et., al.,                               **CONSTRUCTION BRIEF**
21
                Defendants.
22

23  PERSONALWEB TECHNOLOGIES, LLC
    and LEVEL 3 COMMUNICATIONS, LLC,
24
                Counterclaimants,
25
    v.
26  AMAZON.COM, INC. and AMAZON WEB
    SERVICES, INC.,
27
                Counterdefendants.
28

                                  1

1  PERSONALWEB TECHNOLOGIES, LLC, a
   Texas limited liability company, and
2  LEVEL 3 COMMUNICATIONS, LLC,
   a Delaware limited liability company,
3
                    Plaintiffs,
4
   v.
5
   TWITCH INTERACTIVE, INC. a Delaware
6  corporation,
7
                                      Defendant.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4848-1422-0692, V. 1

1

# TABLE OF CONTENTS

2

3

I.      INTRODUCTION……………………………………………………………………..1

4

II.     THE INVENTION OF THE PATENTS-IN-SUIT IMPROVED COMPUTER SYSTEMS
        BY ADDING TRUE NAMES, NOT BY ELIMINATING CONVENTIONAL NAMES…...2

5

III.    DISPUTED CLAIM TERMS…………………………………………………………4

6
        A.      Amazon's argument that "authorization" and "licensing" are the same thing is
                circular and ignores the intrinsic evidence………………………….……………..4

7
                1.      The specification shows that authorization and licensing are different and the
8                       claim language does not support Amazon's position…………………………4

9
                2.      PersonalWeb's infringement theory is based on the teachings of the
                        specification………………………………………………………….....5

10
                3.      Amazon mischaracterizes the prior litigation and administrative proceedings
11                      involving the patents-in-suit……………………………………………….6

12
                4       The invention of the patents-in-suit is about improving the operation of a
                        system of networked devices using content-based values to improve its
13                      efficiency……………………………………………………………………6

14
                5.      The currently asserted claims do not have the same scope as invalidated
                        claims in the '791 patent………………………………………….....8

15
        B.      The parties dispute whether a request must be for a data item, as opposed to
16              a request for information about a data item………………………………………..9

17
        C.      Amazon's proposed construction for "content-dependent name" and
                "name for a data file" is based on an erroneously narrow characterization of the
18              inventive system………………………………………………….………………..11

19
        D.      Amazon's proposal for "digital key" and "file key" contradicts the specification…..13

        E       Amazon's proposed inclusion of "within a file" in the construction for "part"
20              improperly incorporates a preferred embodiment………………………………14

21
        F.      "part value" and "being based on a first function of the contents of the
                specific part"……………………………………………………………….....15

22
        G.      "function of the one or more of part values"………………………………………...15

23

24

25

26

27

28

i

PERSONALWEB'S REPLY TO AMAZON'S                  CASE NO: 5:18-md-02834-BLF
OPPOSITION TO CLAIM CONSTRUCTION BRIEF          CASE NO: 5:18-cv-00767-BLF
                                                CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

1

# TABLE OF AUTHORITIES

2

3

**Cases**                                                                                                    **Page(s)**

4

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
    841 F.3d 1334 (Fed. Cir. 2016)..................................................................................... 11

5

*Epistar Corp. v. Int'l Trade Comm'n*,
    566 F.3d 1321 (Fed.Cir.2009)......................................................................................... 1

6

7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)....................................................................................... 14

8

*PersonalWeb Technologies, LLC v. Apple, Inc.*,
    917 F.3d 1376 (Fed. Cir. 2019)....................................................................................... 8

9

10

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005)..................................................................................... 11

11

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................................................... 14

12

13

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006)................................................................................... 1, 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

4848-1422-0692, V. 1

# I.      INTRODUCTION

Amazon's proposed constructions are all cooked from the same recipe. First, propose an unduly narrow characterization of invention in the patents-in-suit. Second, based on that narrow characterization, argue to incorporate only the most limiting preferred embodiment into the constructions of the terms in the asserted claims.

But the invention and claims are not as narrow as Amazon asserts. The invention in the patents-in-suit is about improving the operation of a system of networked devices using several mechanisms to improve its efficiency. The Web is a system of networked devices that benefits from the mechanisms taught in the patents-in-suit. Although the specification provides examples of ways such a system can be constructed, it does not limit the scope of the asserted claims to those examples.

Amazon also repeatedly—and improperly—refers to the accused instrumentalities to bolster its arguments. The law is clear that the Court should reject attempts to fashion claim constructions from the operation of the accused infringing instrumentality, rather than from the language of the claims and teachings of the specification. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330–31 (Fed. Cir. 2006) ("This court, of course, repeats its rule that claims may not be construed with reference to the accused device.") (Citations and internal quotation marks omitted). Because Amazon supports its proposed constructions with misrepresentations about the accused instrumentalities and PersonalWeb's infringement contentions, PersonalWeb will correct those misrepresentations herein, but not engage in infringement and invalidity argument that is beyond the scope of the present claim construction proceedings.

Further, besides repeatedly misrepresenting statements made in the file histories of the patents-in-suit, Amazon improperly relies extensively on these statements without the required showing that by these statements, PersonalWeb *expressly* relinquished claim scope. *See Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1334 (Fed.Cir.2009) ("A heavy presumption exists that claim terms carry their full ordinary and customary meaning, unless it can be shown the patentee *expressly* relinquished claim scope." (emphasis added)).

Adopting Amazon's proposed constructions would be contrary to law and thus they should be rejected.

PERSONALWEB'S REPLY TO AMAZON'S      CASE NO: 5:18-md-02834-BLF
OPPOSITION TO CLAIM CONSTRUCTION BRIEF      CASE NO: 5:18-cv-00767-BLF
                                            CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

## II.   THE INVENTION OF THE PATENTS-IN-SUIT IMPROVED COMPUTER SYSTEMS BY *ADDING* TRUE NAMES, NOT BY ELIMINATING CONVENTIONAL NAMES

The patents-in-suit teach a powerful method for integrating True Names into a computer system to mitigate the problems that result from having multiple names for the same content, or the same name for different content. '310 at 2:41-43. In order to ensure that a True Name will avoid this defect in prior systems, the specification defines the requirements for generating a True Name. '310 at 12:21-46. Moreover, the specification discloses that while the preferred embodiment uses a True Name that was based only upon the data of a data item to track the content, other embodiments could use a content-based identifier that used more than the content of a data item: "While the invention is described herein as using the True Name of a data item as the identifier for the data item, other preferred embodiments used tagged, typed, categorized or classified data items and use a combination of both the True name and the tag, type, category or class of the data item as an identifier." *See* '310 patent at 13:17-22. The inventors were also explicit that "for some less preferred embodiments, lower probabilities of uniqueness may be acceptable, depending on the types of applications and mechanism used." *Id.* at 13:10-13.

The True Names are incorporated into a new layer that complements an existing operating system. *See, e.g.,* '310 at 6:57-63 ("Operating system mechanisms provide typical familiar file system mechanisms, while maintaining the data structures required to offer the mechanisms of the, present invention. Operating system mechanisms are designed **to augment existing operating systems**, **and in this way to make the present invention compatible with, and generally transparent to, existing applications.**").

The new layer did not replace the conventional pathname layer, but rather added a content-based layer on top of existing conventional pathname-based functionality so that the system could track the location of content within the system and perform content-based operations to augment existing systems. The specification teaches that it is at times possible, but not required, for the system to bypass conventional names and paths by using True Name to access a True File registry, which, like the local directory extensions (LDE) table 124, stores a True File ID that includes the "identity or disk location of the actual physical representation of the file or file segment." '310 at 9:55-56. The

2

PERSONALWEB'S REPLY TO AMAZON'S
OPPOSITION TO CLAIM CONSTRUCTION BRIEF

CASE NO: 5:18-md-02834-BLF
CASE NO: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

1   specification goes on to say "[i]t is *sufficient* to use a *filename* in the registration directory *of the*

2   *underlying operating system*" as the identity or disk location. *Id.* at 9:55-58 (emphasis added).

3   "Operating system mechanisms are designed to *augment existing operating systems*, and in this way

4   to make the present invention compatible with, and generally transparent to, existing

5   applications." '310 at 6:57-63. Conventional filenames in conventional operating systems are naturally

6   still used in connection with the invention. If they were "replaced," as Amazon contends, a user would

7   have to browse his or her vacation pictures by examining hashes that look something like

8   "c2a8c4e71b5bde0794395814c8a13e43."

9       Similarly, conventional pathnames are not "replaced":

10          1. Open File
                A mechanism to open a file is described with reference to                                                50
11          FIGS. **26**(*a*) and **26**(*b*). This mechanism is given as input a
            pathname and the type of access required for the file (for
12          example, read, write, read/write, create, etc.) and produces
            either the File ID of the file to be opened or an indication that
13          no file should be opened. The local directory extensions table                                                55
            record **138** and region table record **142** associated with the
14          opened file are associated with the open file for later use in
            other processing functions which refer to the file, such as
            read, write, and close.

15   '310 at 19:50-60. This passage expressly shows that a file is opened by using a pathname as an input.

16       The new data structures provided by Lachman and Farber are "extensions" of the native file

17   system. '310 at 8:27-34 ("The local directory extensions (LDE) table 124 is a data structure which

18   provides information about files 120 and directories 118 in the data processing system 100. The local

19   directory extensions table 124 is indexed by a pathname or contextual name (that is, a user provided

20   name) of a file and includes the True Name for most files. The information in local directory extension

21   table 124 is in addition to that provided by the native file system of the operating system.").

22       Thus, Amazon's statement that "[t]he purported invention replaced these conventional names

23   with True Names calculated solely from the data in the data item itself" (Resp. Br. at 1) is demonstrably

24   false. The functionalities using True Names form an added layer over the "underlying operating

25   system," not a replacement for it. The True Name layer is used to provide enhanced functionality such

26   as how identify the presence of content, track the location, use and transfer of content for accounting

27   purposes, authorize (or deauthorize) access to content, validate the use of licensed content, determine

28   where is the fastest cheapest source of content, replicate and de-duplicate content, and prevent the

3

**PERSONALWEB'S REPLY TO AMAZON'S**            **CASE NO: 5:18-md-02834-BLF**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**       **CASE NO: 5:18-cv-00767-BLF**
                                                  **CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

1    unnecessary transfer of content. *See* '310 at 31:34-38, 31:49-66, 32:1-4, 32:7-28, 32:55:64, 33:8-10,

2    33:50-54, 33:54-34:4, 34:4-17, 34:42-57, 35:1-11, 35:26-38, 36:64-37:3.

3    **III.    DISPUTED CLAIM TERMS**

4            **A.    Amazon's argument that "authorization" and "licensing" are the same
                thing is circular and ignores the intrinsic evidence.**

5
                **1.    The specification shows that authorization and licensing are
6                       different and the claim language does not support Amazon's
                        position.**

7
8        Amazon ignores the specification's teachings that True Names can be used to control access

9    to content such as to prevent a computer from write accessing a file that that owner has only authorized

10   read access to the file, or a computer unauthorizing any other computer from deleting a file. *See* '310

11   at 21:18-22 (describing that a True Name can be used to determine whether a particular True File is

12   in a read only location which would not permit a write access to the file to succeed); *see also*, '310 at

13   34:36-41 (describing that the Reserve True File operation deauthorizes the deletion of content with a

14   specific True Name) and 23:35-50, 24:20-30 (describing how to reserve and cancel the reservation of

15   a True File). Both "lock flag" and "read-only access" permissions are perfect examples of

16   deauthorizing accesses to content. One is an absolute, one is conditional. A "lock flag" precisely

17   deauthorizes accesses to content the contents of a True File requested by its True Name just it would

18   prevent access to a file requested by its pathname, and nowhere does Amazon argue otherwise.

19       The argument that Amazon makes regarding "authorization" is directed to one specific

20   implementation, described at '310 at 31:3-32, in which a table used in conjunction with a True Name

21   to verify whether licensed content is used by "authorized parties." This part of the specification is

22   directed to "a safe way to identify licensed material" and allows "proof of possession of specific files

23   according to their contents" based upon True Name. *Id.* at 31:5-8. Moreover, as described, the

24   enforcement of a license may be active or passive, wherein the True Name may be used to simply

25   record a violation in a license violation table, and not even control access to content. *See, e.g.*, '310 at

26   31:24-26 ("Occasionally compare the contents of each user processor against the licensed table") and

27   at 31:30-32 ("If the user processor is found to have a file that it is not authorized to have, record the

28   user processor and True Name in a license violation table."). A system employing the True Name layer

4

**PERSONALWEB'S REPLY TO AMAZON'S**                                      **CASE NO: 5:18-md-02834-BLF**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**                               **CASE NO: 5:18-cv-00767-BLF**
                                                                        **CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

can certainly use a license table to determine if access to a file is licensed. *See* '310 at 11:33-43. But the part of the specification that Amazon cherry picked in Column 31 is labeled "Track for Licensing Purposes," so it naturally refers to the license table. However, the specification here is describing a feature that the inventive system *can* use, not one that it *must* use.

Finally, Amazon mistakenly (and circularly) argues that "[e]very asserted claim in the '310, '442, and '420 patents requires using a True Name to determine who is authorized to receive or access specific licensed content." Resp. Br. at 3:17-18. The claim language neither requires the identification of a "who" nor requires that the content is "licensed," but rather allows a file to be provided or accessed based upon a determination that the access is either authorized or licensed. The claims do not mention, much less require, determining that a user is authorized.

Amazon also incorrectly argues the language of "claim 20 makes it clear that 'transferring data' is exactly what the claim is about." Resp. Br. at 10:10-13. Amazon is again incorrect. The claim says "controlling distribution" not providing access. In fact, it only requires making a determination whether or not to provide access or to provide a data item. One way of controlling distribution is by not sending something when it is requested, and another is by not providing something that is already there (and just determining whether or not access will be permitted).

Amazon accused PersonalWeb of what Amazon itself is doing, conflating "authorized" with "licensed" notwithstanding that in the specification, being licensed is only one form of being authorized and given that the example Amazon relies upon does not even require disallowing either access to or the sending of any data.

### 2. PersonalWeb's infringement theory is based on the teachings of the specification.

Amazon's analysis of PersonalWeb's infringement theory is both improper and erroneous. First, it is improper because by arguing that "[t]he [accused] process simply has nothing to do with controlling access to content" (Resp. Br. at 4), Amazon is soliciting the Court to refer to the accused instrumentality to construe the claims based on whether it purportedly should not be infringing. *Wilson Sporting Goods*, 442 F.3d at 1330–31. This is contrary to law. Amazon is not merely apprising the Court "of the specific issues presented by the infringement inquiry." *Id.* at 1331.

5

PERSONALWEB'S REPLY TO AMAZON'S
OPPOSITION TO CLAIM CONSTRUCTION BRIEF

CASE NO: 5:18-md-02834-BLF
CASE NO: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

Second, ETags *are* used to control authorized access to content. An ETag match indicates that the content on a user's device is current and the user's device is authorized to use it. An ETag mismatch indicates that the content on a user's device is stale or inaccurate in some way, and the user's device in not authorized to use it and should instead use the new content that the server sends in the case of a mismatch. The asserted claims do not require an affirmative step of "forc[ing] the user to discard the old object" as Amazon suggests. Moreover, most commercial websites have very specific Terms of Service that severely restrict or prohibit use of website assets apart from current webpages of the website.

### 3. Amazon mischaracterizes the prior litigation and administrative proceedings involving the patents-in-suit.

PersonalWeb never argued that a file already on a device cannot be "unauthorized." Amazon erroneously reaches this conclusion by misreading the record in previous proceedings and taking certain statements out of context. In the Patent Owner's Response (Resp. Br., Ex. 2) in an IPR involving the '310 patent, the PersonalWeb stated that "[o]ne would have assumed that the local computer 20 is permitted to access a prior version of a file *if* that computer already has the *current* version of that file." Resp. Br., Ex. 2 at 19 (emphasis added). The statement was made within the context that a computer's version of a file was already assumed to be current. But Amazon is asserting that it applies to a scenario, such as verifying a cached object, in which a system is checking to *determine* whether a file is current. What may be illogical in the first context is entirely reasonable in the second. Similarly, what PersonalWeb argued "cannot be done" on appeal (Resp. Br., Ex. 3) is for a computer to make a calculation of a Binary Object Identifier (in the prior art, a value based on the content of a binary object) when it did not have access to the binary object. Again, this has nothing to do with checking whether a cached object is current.

### 4. The invention of the patents-in-suit is about improving the operation of a system of networked devices using content-based values to improve its efficiency.

Contrary to Amazon's narrow characterization of the invention of the patents-in-suit as only about policing licensed content, the specification teaches how integrating content-based values for objects in a system of networked devices leads to many advantages, some of which were discussed in

**PERSONALWEB'S REPLY TO AMAZON'S**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**

**CASE NO: 5:18-md-02834-BLF**
**CASE NO: 5:18-cv-00767-BLF**
**CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

1   Section II, *supra*. The '442 patent is just one of 10 issued patents in the True Names family of patents,

2   and the only one with a title referring to policing licensed content. Policing licensed content is merely

3   one application of the concepts described in the specification. Also, as shown above, the entire body

4   of the specification belies Amazon's attempt to use 30 lines in Column 31 of the '310 patent to

5   characterize the entire invention.

6        Amazon's reference to the license table is unremarkable because PersonalWeb has not taken

7   the position that a license is not a form of authorization. In fact, PersonalWeb's alternative proposed

8   construction is that a license is a special type of authorization, *i.e.*, legal permission rather than general

9   permission. Just because all licenses grant authorization does not mean that all authorizations are

10  licenses.

11       Amazon's contention that "the patents disclose the license table as the sole means of

12  controlling access to content" (Resp. Br. at 6) is flatly wrong. In the Reserve True File operation a

13  requesting processor sends a message request to "reserve" a file stored at another processor. '310 at

14  23:35-50. That that operation "takes a True Name as input," the True Name being the True Name of

15  the content being "reserved." When that message is received and processed, the True Name in the

16  request is compared to the entries in the True File registry. '310 at 23:40-41 ("Find the True File

17  registry entry record 140 associated with the given True File."). If there is a matching True Name, the

18  associated entry's list of "dependent processors" is updated with the identity of the requesting

19  processor. *See* '310 at 24:47-49; *see also* '310 at 9:52-53. By this operation, the requesting processor

20  is able to prohibit any delete request from being processed for the corresponding content.

21       PersonalWeb also discussed the "Cancel Reservation" mechanism in the Amended Opening

22  Brief. When a processor needs to reauthorize deletion to be able to take place, it sends a "Cancel

23  Reservation" request. *See* '310 at 24:20-30. The Cancel Reservation message again includes the

24  requesting processor ID and True Name of the content which is no longer being prohibited from being

25  deleted. The True Name in the request is compared to the True Names in the True File registry and

26  the matching record's field of dependent processors is altered to remove the identity of the requesting

27  processor thereby removing the prohibition against deletion for the file with that True Name that was

28  created by the processor via the Reserve True File operation described at 23:35-50.

7

4848-1422-0692, V. 1

1    PersonalWeb has not conflated the concept of authorization with the concept of preventing

2    access. In both the region table and lock flag examples, the first step is to determine if the region

3    (directory) or file at issue is read-only or locked, respectively. If the answer is affirmative, then certain

4    actions, such as altering them, are unauthorized. Once that is determined, the second step is preventing

5    access to make unauthorized alterations.

6         **5.    The currently asserted claims do not have the same scope as
               invalidated claims in the '791 patent.**

7

8    Amazon argues that PersonalWeb is trying to recapture the scope of claims that were

9    invalidated in U.S. Patent No. 5,978,791. This is false because the scope of the asserted claims in the

10   patents-in-suit substantively differ from the scope of the invalidated claims, which Amazon

11   characterizes as "determining . . . whether the data item is present at the destination location" and then

12   "based on the determining whether the data item is present, providing the destination location with the

13   data item only if the data item is not present at the destination." Resp. Br. at 9.

14   For example, claims 25 and 166 of the '420 patent require a search of a "plurality of identifiers"

15   which is an element the Federal Circuit expressly found was lacking in the Woodhill reference over

16   which certain claims of the '791 patent were invalidated. *See PersonalWeb Technologies, LLC v.*

17   *Apple, Inc.*, 917 F.3d 1376, 1382 (Fed. Cir. 2019) ("We conclude that the Board's inherency finding

18   derived from column 17 of Woodhill for teaching the 'compared to a plurality of values' limitation

19   lacks substantial evidence."). The asserted claims of the '544 patent require a hash of hashes, which

20   is not an element included in the invalidated claims of the '791 patent. Claim 20 of the '310 patent

21   requires a "a request obtained by a first device in the system from a second device in the system," and

22   claim 69 requires "receiv[ing] at a first computer, from a second computer, a request regarding a data

23   item," which are also not elements included in the invalidated claims of the '791 patent. Lastly, claim

24   10 of the '442 patent differs because it relates to determining whether a copy of a data item is on a

25   computer in the network and determines whether a copy of a data item on a computer is an

26   unauthorized or unlicensed copy of the data item, whereas the invalided claims of the '791 patent

27   provides the destination with data item if the data item is determined not to be present at the

28   destination.

8

**PERSONALWEB'S REPLY TO AMAZON'S
OPPOSITION TO CLAIM CONSTRUCTION BRIEF**

**CASE NO: 5:18-md-02834-BLF
CASE NO: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

**B.**   **The parties dispute whether a request must be *for* a data item, as opposed to a request for information *about* a data item.**

Amazon mischaracterizes the dispute between the parties as whether "the content dependent name in the claimed request [must] be the name of the data item that is requested." Resp. Br. at 9-10. This statement assumes that the request is for a data item, but that requirement is not contained in the claims. *That* is the dispute between the parties.

Amazon's statement that the "entire point of the patents" is to use True Names to identify requested items by their content is both inaccurate and misses the point. As discussed in the Amended Opening Brief, and ignored by Amazon, the specification discloses mechanisms such as "Retire True File" and "Cancel Reservation" that do not include requests for the contents that was used to generate the True Name used in those mechanisms. Amend. Op. Br. at 13. PersonalWeb's proposed construction recognizes that not all requests within the inventive system of the patents-in-suit are requests *for* a data item. There is no dispute that a request includes a content dependent name, because the claim expressly requires that.

Once again Amazon improperly elects to turn *Markman* briefing into a debate about the merits of PersonalWeb's infringement theory. Resp. Br. at 10. Amazon first points to an activity performed by an accused instrumentality—sending content in response to a mismatch of ETags—and asserts incorrectly that it is a requirement of the claim, then argues that the specification does not disclose performing that activity. Amazon's willingness to weave unclaimed activity taking place in the accused instrumentality into the purported scope of the claim for the purpose of then knocking down that strawman highlights why ignoring *Wilson Sporting Goods Co.* and basing claim construction arguments on the accused instrumentalities is problematic. But if one properly focuses on which proposed constructions are most harmonious with the claim language, PersonalWeb's proposed constructions should be adopted.

Claim 20 recites "content-dependent name being based at least in part on a function of at least some of the data comprising the particular data item." Claim 20 further recites "permitting the content to be provided to or accessed by the at least one other computer if it is not determined that the content is unauthorized or unlicensed." The claim *does not* recite that content that is permitted to be provided

PERSONALWEB'S REPLY TO AMAZON'S
OPPOSITION TO CLAIM CONSTRUCTION BRIEF

CASE NO: 5:18-md-02834-BLF
CASE NO.: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

1  to or accessed by the other computer is the particular data item. Amazon's proposal to rewrite the

2  claim as "permitting the *particular data item* to be provided to or accessed by the at least one other

3  computer" should be rejected.

4       Claim 20 does not require transferring data. An unstated premise underlying Amazon's

5  contention is that "controlling distribution of content" is the same as transferring content. This is false.

6  Preventing the transfer of content unnecessarily, when a cache copied is available, for example, is also

7  a form of control over the distribution of content. Just as the specification teaches that a system can

8  "copy, move, and rename files without a need to copy their contents" ('310 at 15:8-10), *i.e.*, without a

9  need to transfer the contents from one place to another, claim 20 includes within its scope a system

10  that grants access to content that is currently in a cache without having to transfer the content again.

11       The specification also teaches how to synchronize directories. '310 patent at 28:30-29:10. One

12  outcome during synchronization is "[i]f the True Name of the local file is the same as the old True

13  Name in the audit file … link the new True Name in the audit file to the local pathname using the Link

14  Path to True Name primitive mechanism." *Id.* at 28:63-67. However, if the local True Name is not the

15  same, *i.e.*, is non-matching, the specification teaches the follow:

16  
17  
18  > (iii) Otherwise, note that there is a problem with the syn-
> chronization by sending a message to the operator or to
> a problem resolution program, indicating the local path-
> name, remote pathname, remote processor, and time of
> change. [5]

19  *Id.* at 29:1-5. Thus, an exemplary mechanism is provided to use True Names to identify which content

20  for a given pathname has changed, *i.e.*, to identify a non-matching data item. The specification belies

21  Amazon's assertion that "[t]here is simply no support for an interpretation of the claims where a

22  content-based name is used to identify or request a non-matching data item." Resp. Br. at 10. And the

23  claim does not require that a content-based name is used to identify or request a non-matching data

24  item as argued by Amazon.

25       Amazon's proposed construction is directed to the wrong claim. Claim 24 of the '310 patent

26  does recite "not allowing *the particular data item* to be provided to or accessed by the second

27  computer." This claim is not asserted and does not include the include the term in dispute.

28       Amazon mischaracterizes the teachings of the specification. The specification teaches that a

**PERSONALWEB'S REPLY TO AMAZON'S**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**

**CASE NO: 5:18-md-02834-BLF**
**CASE NO: 5:18-cv-00767-BLF**
**CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

1  True Name may be used to access a data item, access information *about* a data item, or perform a

2  function related to the data item without accessing the data item. Thus, it is not true that every example

3  of requesting data in the specification requires a match between the True Name and the requested data.

4        Amazon also mischaracterizes the prosecution history relating to the '310 patent. First, there

5  is no mention of a "licensing check" in the Notice of Allowance, as Amazon represents. Second, the

6  statements in a Notice of Allowance do not define the scope of the claims in an issued patent. *See*

7  *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016)

8  ("an examiner's unilateral statement does not give rise to a clear disavowal of claim scope by the

9  applicant"); *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Procter &

10  Gamble does not present any case law that stands for the proposition that an examiner's unilateral

11  statements in a Notice of Allowance constitute a clear and unambiguous disavowal of claim scope.

12  Once again, the applicant has disavowed nothing. *This court refuses to create a rule or presumption*

13  *that the applicant in this case disavowed claim scope by silence.*" (emphasis added)).

14        Amazon also mischaracterizes the record in the IPR involving the '310 patent. The statements

15  that the Patent Owner made about the meaning of "content-dependent name" were about claims 24

16  and dependent claim 32. As noted above, non-asserted claim 24 expressly recites that a "particular

17  data item" is provided or access in response to a request, which is not the case for claim 20.

### C. Amazon's proposed construction for "content-dependent name" and "name for a data file" is based on an erroneously narrow characterization of the inventive system.

20        PersonalWeb does not dispute that the specification teaches that a content-dependent name *can*

21  be used to locate or access the content from which it is derived. What PersonalWeb disputes is

22  Amazon's repeated attempts to take one application of the teachings of the patent and read that

23  embodiment into the claims.

24        In the Amended Opening Brief, PersonalWeb showed where the specification teaches that a

25  content-dependent name can be used for purposes other than "to locate and access," such as in the

26  "Retire True File" and "Cancel Reservation" mechanisms. Amend. Op. Br. at 13. Amazon does not

27  address that fact.

28        Furthermore, the specification quite explicitly shows that pathnames are not eliminated in the

**PERSONALWEB'S REPLY TO AMAZON'S**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**

**CASE NO: 5:18-md-02834-BLF**
**CASE NO: 5:18-cv-00767-BLF**
**CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

1   inventive system, as Amazon suggests. For example, pathnames are used in the "Get True Name from

2   Path" mechanism ('310 at 14:50-15:4), the "Link Path to True Name" mechanism ('310 at 15:5-33),

3   and the "Open File" mechanism ('310 at 19:48-20:34), among others.

4       Amazon's reliance on statements made in the IPR and appeal involving the '310 patent is

5   misplaced. PersonalWeb's proposed construction does not contradict the position it took before the

6   PTAB and Federal Circuit. PersonalWeb's argument distinguishing Langer is that Langer needed a

7   directory path and filename *of the MD5 token*. Resp. Br. Ex. 8 at 19. The patents-in-suit teach that you

8   can reach a True File location using the True File registry by referencing the True Name alone. But as

9   discussed above, the patents-in-suit explain how True Names are use with, and as a layer on top of

10   paths and filenames, rather than disclaim the use of pathnames.

11       PersonalWeb's argument distinguishing Woodhill was that the purported "name" in Woodhill

12   did not satisfy the elements of claim 24. First, claim 24 is not asserted in this case. Second, in the

13   appellate briefing Amazon cites, the Patent Owner argued that the Binary Object Identifiers are not

14   used to "locate *or* control access" (Resp. Br. Ex. 3, at 14), or to "locate, identify, access, move, *or*

15   synchronize" (Resp. Br. Ex. 8, at 14). Thus, these passages are also inconsistent with Amazon's

16   proposed "locate *and* access" language. One deficiency in Woodhill as an invalidating reference was

17   that the Binary Object Identifiers could not be used to determine whether an object with a particular

18   Binary Object Identifiers was located *somewhere* in the system; it was only used to attempt to locate

19   a matching Binary Object Identifiers in comparisons against specific known backup records.

20       Amazon improperly relies on the purported operation of the accused instrumentality in support

21   of its argument and mischaracterizes it in doing so. Using HTTP URLs alone suffers from precisely

22   the problem in conventional systems that the specification identifies: the same URL can refer to many

23   different data items. The system cannot determine just based on a URL alone if a filename in a URL

24   refers to an asset previously sent to a browser or if there is a new asset. It is the combination of a URL

25   and an ETag that allows the system to distinguish two assets with the same name.

26       Amazon's Responsive Brief also clarifies that its proposed construction for "content-

27   dependent name" is misleading. Its proposed construction is that it is "an identifier used to locate and

28   access a data item that is generated by processing the sequence of bits." In reality, Amazon is actually

**PERSONALWEB'S REPLY TO AMAZON'S**          **CASE NO: 5:18-md-02834-BLF**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**        **CASE NO: 5:18-cv-00767-BLF**
                                  **CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

proposing that the identifier is generated by processing *only* the sequence of bits: "The patents teach that a True Name should be based on 'only the data in the data item' … ." Resp. Br. at 13. In other words, Amazon is urging the Court to further construe Amazon's own proposed construction as its proposed construction says nothing of processing *only* the sequence of bits. Nevertheless, as shown above, at Column 12 of the '310 patent the specification expressly sets forth the properties that the identifier-generating function must have, and it includes no such restrictions.

Although a preferred embodiment is "all and only," other embodiments can use other data in generating identifiers as long as the "sufficiently unique" requirement is not violated. In other words, an "identifier must be sufficiently unique to prevent multiple files from being assigned the same identifier." Resp. Br. at 15. For example, this requirement does not exclude adding something to the output of a hash, such as a tag:

> While the invention is described herein using only the True Name of a data item as the identifier for the data item, other preferred embodiments use tagged, typed, categorized or classified data items and use a combination of both the True Name and the tag, type, category or class of the data item as an identifier. Examples of such categorizations are files, [20]

'310 at 13:17-21. The requirement also does not exclude adding something to the data item before hashing it. A person of ordinary skill in the art would know that adding something to the data before hashing will only result in a *more* sufficiently unique identifier if a proper identifier-generating function is used according to the requirements of the specification.

Furthermore, dependent claim 27 of the '310 patent reads "[t]he method of claim 20 wherein the content-dependent name of the particular data item is based on a function of only the data comprising the particular data item." Under the doctrine of claim differentiation, claim 20 should not be interpreted to require the content-dependent name to be based on only the data.

### D. Amazon's proposal for "digital key" and "file key" contradicts the specification.

Although the asserted claims of the '544 patent are directed to a hash of hashes, this fact does not settle the issue, which Amazon does not address, raised by the fact that the specification expressly states that "[i]t is *impossible* to define a function having a unique output for each possible input when the number of elements in the range of the function is smaller than the number of elements in its

13

PERSONALWEB'S REPLY TO AMAZON'S
OPPOSITION TO CLAIM CONSTRUCTION BRIEF

CASE NO: 5:18-md-02834-BLF
CASE NO: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

domain." '310 at 12:52-55 (emphasis added). PersonalWeb's dispute with the Amazon's proposal to include "unique" in the construction of these terms is that it ignores this limit and may mislead the jury into believing that the claim requires what the specification expressly states is impossible.

With regard to Amazon's proposal that the "digital key" and "file key" must be used to locate the particular file, Amazon relies on similar arguments that it did for the "content-dependent name" and "name for a data file" terms. Amazon's proposed construction should be rejected for the same reasons discussed above for those terms.

### E. Amazon's proposed inclusion of "within a file" in the construction for "part" improperly incorporates a preferred embodiment.

The parties do not dispute that the asserted claims of the '544 patent are directed to a "hash of hashes." However, this does not mean that the scope of claims 46 and 52 is limited to the specific embodiment disclosed in the specification. The general concept taught by the specification is that a large, complex digital object is formed from many parts that are themselves digital objects comprised of a sequence of bits. If you take the hash of the parts, and then collectively hash those hashes, the result is a value that is unique (to the degree that is computationally possible) for the whole digital object. This is true whether or not the parts are bound together as segments.

The concept of a segment as a partition of a larger object is a specific teaching of one embodiment in the specification. *See* '310 at 13:48-51. This is what Amazon means by a part being "within a file" in its proposed construction. It improperly incorporates limitations from an exemplary embodiment. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

The claims themselves require a file with "one or more parts." '544 patent, claims 46, 52. The "particular sequence of bits" cannot be "arbitrary" as Amazon argues. The requirement that the file has "one or more parts" adequately defines where the parts come from, and thus does not need to be incorporated in the construction of "part."

Amazon again appeals to the accused instrumentality in support of its proposed construction and mischaracterizes PersonalWeb's infringement theory. The infringement contentions against Twitch for the '544 patent (Resp. Br. Ex. 13) do not name the webpage base file as the "particular

14

**PERSONALWEB'S REPLY TO AMAZON'S**
**OPPOSITION TO CLAIM CONSTRUCTION BRIEF**

**CASE NO: 5:18-md-02834-BLF**
**CASE NO: 5:18-cv-00767-BLF**
**CASE NO.: 5:18-cv-05619-BLF**

4848-1422-0692, V. 1

file" recited in the claims. The infringement contentions state that "Twitch's website includes a plurality of webpages (particular files)." *See, e.g.*, Resp. Br. Ex. 13, at 1.

### F.     "part value" and "being based on a first function of the contents of the specific part"

Amazon's argument that a part value must be based on all of the data in the part and only the data in the part also fails for the same reasons discussed above in connection with the terms "content-dependent name" and "name for a data file." The description of the properties that the True Name-generating MD function must exhibit are reproduced above in that discussion. The requirement do not state that only the data in the processed data item may be used.

Amazon's citation to the prosecution history of the '791 patent is taken out of context. The applicants were responding a rejection of claims that *expressly recited* "all and only" limitations! *See* Resp. Br. Ex. 1 at 1-7. So naturally the applicants used this claimed limitation as one basis to distinguish the prior art.

Amazon also wrongly contends that the invention somehow would not work if anything more than the data in a data item is used. The invention works if content-dependent values uniquely (to the degree that is computationally possible) correspond to the data item on which they are based. An MD function adhering to the requirements taught in the specification produce such content-dependent values even if other data is also included as an input to the function.

### G.     "function of the one or more of part values"

Similarly to the terms addressed immediately above, Amazon argues that the "function of the one or more of part values" must be based on only the part values. For the reasons discussed above, the invention works if other data is also included as an input to an MD function as long as it satisfies the requirements taught in the specification.

Under PersonalWeb's proposed construction the claim still includes two steps, where first part values are generated and then those part values are hashed. The prosecution history cited by Amazon states that "*[o]ne example* of this is a hash function of a block formed by the N segment identifiers." Resp. Br. Ex. 14 (emphasis added). Far from being a disclaimer of broader scope, this excerpt is expressly exemplary.

15

PERSONALWEB'S REPLY TO AMAZON'S                    CASE NO: 5:18-md-02834-BLF
OPPOSITION TO CLAIM CONSTRUCTION BRIEF              CASE NO: 5:18-cv-00767-BLF
                                                   CASE NO.: 5:18-cv-05619-BLF

4848-1422-0692, V. 1

1    Respectfully submitted,

2    Dated:    April 29, 2019                    STUBBS, ALDERTON & MARKILES, LLP

3

4                                               By: /s/ Michael A. Sherman
                                                    Michael A. Sherman
5                                                   Jeffrey F. Gersh
                                                    Sandeep Seth
6                                                   Wesley W. Monroe
                                                    Stanley H. Thompson, Jr.
7                                                   Viviana Boero Hedrick

8                                               Attorneys for Patent Plaintiffs
                                                PERSONALWEB TECHNOLOGIES, LLC
9

     Dated:    April 29, 2019                    MACEIKO IP
10

11

12                                              By: /s/ Theodore S. Maceiko
                                                    Theodore S. Maceiko (SBN 150211)
13                                                  ted@maceikoip.com
                                                    MACEIKO IP
14                                                  420 2nd Street
                                                    Manhattan Beach, California 90266
15                                                  Telephone:    (310) 545-3311
                                                    Facsimile:    (310) 545-3344
16                                                  Attorneys for Plaintiff

17                                              PERSONALWEB TECHNOLOGIES, LLC

18

19

20

21

22

23

24

25

26

27

28

4848-1422-0692, V. 1