EXHIBIT 1

1   J. DAVID HADDEN (CSB No. 176148)
    dhadden@fenwick.com
2   SAINA S. SHAMILOV (CSB No. 215636)
    sshamilov@fenwick.com
3   TODD R. GREGORIAN (CSB No. 236096)
    tgregorian@fenwick.com
4   PHILLIP J. HAACK (CSB No. 262060)
    phaack@fenwick.com
5   RAVI R. RANGANATH (CSB No. 272981)
    rranganath@fenwick.com
6   CHIEH TUNG (CSB No. 318963)
    ctung@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA  94041
9   Telephone:    650.988.8500
    Facsimile:    650.938.5200
10
    Counsel for AMAZON.COM, INC.
11  and AMAZON WEB SERVICES, INC.

12                          UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14                              SAN JOSE DIVISION

15

16  | IN RE: PERSONAL WEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No. 5:18-md-02834-BLF |
    |---|---|
17
    | AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., | Case No.: 5:18-cv-00767-BLF |
18
    |   Plaintiffs, | **FIRST SET OF INTERROGATORIES OF AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC. TO PERSONALWEB TECHNOLOGIES, LLC** |
19  |   v. | |
20  | PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | |
21  |   Defendants. | |
22
    | PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | |
23  |   Counterclaimants, | |
24
    |   v. | |
25
    | AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., | |
26  |   Counterdefendants. | |
27

28

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Amazon.com, Inc. and Amazon Web Services, Inc. (collectively "Amazon") request that PersonalWeb Technologies, LLC ("PersonalWeb") answer the following interrogatories separately and fully, in writing and under oath, within thirty (30) days from the date of service of these interrogatories, at the offices of Fenwick & West LLP, Silicon Valley Center, 801 California Street, Mountain View, CA, 94041. These interrogatories are intended to be continuing in nature and should be supplemented, as required, pursuant to Federal Rule of Civil Procedure 26(e). These interrogatories should be answered in accordance with the definitions and instructions set forth below.

## DEFINITIONS

1.      The terms "you" or "PersonalWeb" means PersonalWeb Technologies LLC, and its predecessors, parents, subsidiaries, divisions, officers, employees, agents, and attorneys, and each person acting or purporting to act on their behalf or under their control.

2.      The term "Amazon" means Amazon.com, Inc. and Amazon Web Services, Inc., including, without limitation, all predecessors, parents, subsidiaries, divisions, officers, employees, agents, and attorneys of Amazon.com, Inc. and Amazon Web Services, Inc., and each person acting or purporting to act on their behalf or under their control.

3.      The term "Level 3" means Level 3 Communications, Inc., and its predecessors, parents, subsidiaries, divisions, officers, employees, agents, and attorneys, and each person acting or purporting to act on their behalf or under their control.

4.      The term "'791 patent" means U.S. Patent No. 5,978,791.

5.      The term "'442 patent" means U.S. Patent No. 6,928,442.

6.      The term "'310 patent" means U.S. Patent No. 7,802,310.

7.      The term "'544 patent" means U.S. Patent No. 7,954,544.

8.      The term "'420 patent" means U.S. Patent No. 8,099,420.

9.      The term "patents-in-suit" means, collectively, the '791 patent, the '442 patent, the '310 patent, the '544 patent, and the '420 patent. Requests referring to "each of the patents-in-suit" (or "each asserted claim in the patents-in-suit") require responsive documents for each of the '791 patent, the '442 patent, the '310 patent, the '544 patent, and the '420 patent.

10.     The term "related patents/applications" means any and all patents, patent applications and/or patent publications concerning subject matter similar to the claimed subject matter of the patents-in-suit; by way of example only, related patents/applications include any patent document that (i) claims priority from any of the patents-in-suit, (ii) is identified as priority for any of the patents-in-suit, or (iii) claims priority to any application to which any of the patents-in-suit claims priority.

11.     The term "asserted claim(s)" means any and all claims of the patents-in-suit that PersonalWeb contends Amazon infringes.

12.     The term "covered product" means any apparatus, product, device, process, method, act, or other instrumentality made, used, sold, offered for sale, or imported by PersonalWeb or any licensee of the Patents-in-Suit that you contend embodies the alleged inventions described in any asserted claim of any of the Patents-in-Suit.

13.     The term "2011 Texas action" means the lawsuit filed by PersonalWeb in the Eastern District of Texas on December 8, 2011 against Amazon, captioned *PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex.).

14.     The term "prior art" means, as of the filing date of the patents-in-suit, any article, poster, abstract, chapter, display, slides, or other printed publication that discloses, or a use, sale, or offer for sale of a system or device disclosed or claimed in the patents-in-suit or that practices or could be used to practice, the alleged inventions or portions of the alleged inventions disclosed or claimed in the patents-in-suit or any other thing or activity which could be or could have been relied on by the United States Patent Office or a Court for an anticipation or obviousness determination of the patents-in-suit, including any and all patents, patent applications and/or publications prepared before the filing date of the patents-in-suit.

15.     The term "named inventor" means one or more of the inventors named on any of the patents-in-suit, including David A. Farber and Ronald D. Lachman.

16.     The term "source code" means computer code instructions, data structures, and data definitions expressed in a form suitable for input to an assembler, compiler, translator, or other data processing module, and associated comments and revision histories.

17.     The term "technical documents" means all technical documents, including without limitation user manuals and guides, installation manuals and guides, reference manuals and guides, data sheets, technical documentation, technical presentations, schematics, specifications, architecture descriptions, release notes, readme files, source code, executable code, engineering notebooks, workbooks, diagrams, blueprints, sketches, flow charts, design requirements, design reviews, bug reports, project plans and papers, test reports, throughput analysis, troubleshooting guides, and bills of materials.

18.     The term "document" has the broadest meaning accorded that term by Fed. R. Civ. P. 34(a) and includes, but is not limited to, all of the items defined in Fed. R. Evid. 1001, and all preliminary and final drafts of any such item.

19.     The term "all documents" means any and all documents that you can locate through a diligent search of all locations likely to contain documents requested herein and through reasonable inquiry of all persons likely to know of the existence of documents requested herein.  A draft or non-identical copy is a separate document within the meaning of this term.  Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

20.     The term "communication" shall refer to all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, press releases, computer mail, e-mail and all other documents evidencing any verbal or nonverbal interaction between persons and/or entities.

21.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

22.     The terms "relate to," "relates to," "related to," "relating to," "referring to," "pertaining to," "pertain to," and "regarding" mean constitute, include, comprise, consist of, refer, reflect, discuss, show, state, explain, contradict, provide context to, evidence, concern or be in any way logically or factually connected with the matter discussed or identified.

23. "Identify," when used with respect to any natural person, means to state the person's full name, present or last-known address, telephone number, position/occupation, and employer.

24. "Identify," when used with respect to any legal entity (such as a corporation, company, or person other than a natural person), means to state the entity's name, the place of incorporation or organization, the principal place of business, and the nature of the business conducted by that legal entity.

25. "Identify," when used with respect to any document, means to state the document's title and subject matter, form (e.g., letter, memorandum, email, etc.), document production number range, date, author(s), addressee(s), recipient(s), and name of its present custodian.

26. The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these requests.

27. The term "any" and "each" should be understood to include and encompass "all."

28. All pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case makes the request more inclusive.

29. The use of a verb in any tense shall be construed as including the use of the verb in all other tenses.

30. The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

## **INSTRUCTIONS**

1. Each Interrogatory shall be answered separately and fully in writing under oath. If you object to any of the Interrogatories, you must state the reasons for the objection and answer to the extent the Interrogatory is not objectionable. *See* Fed. R. Civ. P. 33(b).

2. If you cannot answer an interrogatory fully and completely after exercising due diligence to make inquiry and secure the information to do so, please so state and answer each interrogatory to the fullest extent possible. Specify the portion of the interrogatory you claim you are unable to answer fully and completely, and further specify the facts on which you relied to support your contention that you are unable to answer the interrogatory fully and completely. State what

knowledge, information or belief you have concerning the unanswered portion of the interrogatory, and state fully, completely and in detail the acts done and inquiries made by you to show that you have exercised due diligence to make inquiry and secure the information necessary to answer the interrogatory.

3.       Pursuant to Fed. R. Civ. P. 26(b)(5), if you contend that any information requested herein is privileged or otherwise shielded from disclosure, and the information requested is withheld (in whole or in part) based on a claim of privilege or any other claim of immunity from discovery, (i) describe the factual and legal basis for your claim of privilege or immunity in sufficient detail so as to permit the Court to adjudicate the validity of the claim and (ii) provide all responsive information that does not fall within your claim of privilege.  In addition, to the extent the withheld information is contained within a document, for each document or portion thereof withheld, state the following:  (a) the type of document (*e.g.*, email, letter, memorandum, contract, etc.); (b) its subject line or title, as appropriate; (c) its date; (d) its subject matter; (e) the identity of all persons who authored, drafted, or prepared it; (f) the identity of all persons to whom it was directed, circulated, or copied, or who had access thereto; (g) the grounds on which the document is being withheld (*e.g.*, "attorney-client privilege," "work product immunity," etc.); and (h) its present location.

4.       If a document or information contained in a document is responsive to an interrogatory, but that document subsequently has been destroyed or otherwise lost, describe the document in detail.  Within each description, include the following information:  (a) the type of document (*e.g.*, email, letter, memorandum, contract, etc.); (b) its subject line or title, as appropriate; (c) its date; (d) its subject matter; (e) the identity of all persons who authored, drafted, or prepared it; (f) the identity of all persons to whom it was directed, circulated, or copied, or who had access thereto; (g) the date or approximate date that the document was destroyed or otherwise lost; (h) the identity of all persons who possessed the document at any time; (i) the identity of all persons who destroyed or lost the document; (j) the identify of all persons at whose request or direction the document was destroyed or lost; and (k) the identity of all persons who have or had knowledge of the document's contents.

5.      If a document or information contained in a document is responsive to an interrogatory, and that document is not in your possession, custody or control, identify the persons who have possession, custody or control of such document.  If such document was in your possession, custody or control in the past but is no longer in your possession, custody or control, describe in detail what disposition was made of it, the reasons for such disposition, and identify any persons having any knowledge of, or responsible for, such disposition.

6.      In the event that you object to any interrogatory on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that interrogatory as narrowed to the extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that interrogatory for purposes of your response.

7.      In the event that you object to any interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

8.      If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and answer the interrogatory for the scope or time period you believe is appropriate (including in your answer a specific statement as to why you believe the scope or time period is inappropriate and the time period you used for your response).

9.      In the event you object to any part of an interrogatory on any other grounds and refuse to answer, state your objection and answer the remaining portion of the interrogatory.

10.      Because these interrogatories are continuing, you remain under a duty to supplement or amend any response herein in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, *e.g.*, in the event that you or any of your attorneys, agents, representatives or employees obtains further or different information after the date of your initial answer.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

For each claim of the patents-in-suit, describe in detail the circumstances of its invention, including without limitation:  the earliest claimed date(s) of conception and reduction to practice,

when and where such conception and reduction to practice occurred, all persons involved in or otherwise having knowledge of such conception and reduction to practice, the nature and extent of each individual's involvement in and their relative contribution to such activities, and the identification of all documents and tangible things relating to the earliest claimed date(s) of conception and reduction to practice. If you contend the inventors were diligent in reducing such claim to practice, the full factual and legal basis for that contention, including any basis you contend excuses any period(s) of non-diligence.

**INTERROGATORY NO. 2:**

For each claim of the patents-in-suit, describe in detail all facts and circumstances relating to the first written description, offer for sale, sale, public disclosure, public use, or disclosure to any person other than a named inventor of the claimed invention, including, without limitation, the identity of the person involved in each such event, the date on which each such event occurred, and the identification of each document that reflects or relates to such facts and circumstances.

**INTERROGATORY NO. 3:**

Identify all products and/or services that you contend practice or embody (or have at any time practiced or embodied) any alleged invention described or claimed in each of the patents-in-suit, including without limitation any allegedly practicing products and/or services of PersonalWeb, its licensees, assignees, or any of their subsidiaries, affiliates, predecessors or successors-in-interest.

**INTERROGATORY NO. 4:**

If you contend that there exist any secondary considerations or objective evidence of non-obviousness with respect to each of the claimed inventions of the patents-in-suit, state in detail the full factual and legal basis for your contention, including identifying all persons and documents supporting this contention. Your answer should also identify and explain any nexus you contend exists between the claimed invention(s) and any evidence of secondary considerations or

objective evidence of non-obviousness, including without limitation a claim-by-claim description of the connection between each of the asserted claims and any evidence of commercial success.

**INTERROGATORY NO. 5:**

For each claim of the patents-in-suit, identify, on an element-by-element basis, the portion or portions of the specification that contains the written description of the alleged invention covered by the claim, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and if you contend the specification sets forth the best mode contemplated by any inventor(s) of carrying out his invention, identify the specific portions of the specification setting forth the best mode of the claimed invention.

**INTERROGATORY NO. 6:**

For each of the patents-in-suit, provide all facts and identify all corroborating documents regarding the ownership of any right, title, or interest in or to each patent, including identifying the entity that currently owns the right, title, or interest and a full explanation of the chain of title to any and all rights, title, or interests in or to each patent.

**INTERROGATORY NO. 7:**

Describe in detail each instance of an offer, discussion, negotiation, and/or agreement to sell, buy, acquire, license, sublicense, covenant-not-to-sue, settle any claims, or otherwise convey any right(s) or decline to enforce any rights in any of the patents-in-suit or related patents/applications. Such description should include, without limitation, the date(s) of such offer, discussion, negotiation, or agreement; the identity of any person having knowledge of and/or involvement in the same; the outcome and/or current status of the same; an identification of any resulting agreement(s) and/or license(s); the effective date of any resulting agreement(s) and/or license(s), including whether they are still in effect and whether there has been any allegation of breach; the terms of any resulting agreement(s) and/or license(s) including any fees, payments, royalties or other

consideration and any restrictions, including field of use restrictions; and the identity of any documents (including agreements and licenses) constituting or referring to such offer, discussion, or negotiation.

**INTERROGATORY NO. 8:**

For each claim of the patents-in-suit, identify and describe any investigations, evaluations, communications, or opinions relating to the validity, patentability, and/or enforceability of such claim, whether performed by you or any other entity, and identify all persons with knowledge of such investigations, evaluations, communications, or opinions and all documents related thereto.

**INTERROGATORY NO. 9:**

If you contend that you are entitled to an award of damages by way of any claim in this action, state whether you believe it to be a reasonable royalty, lost profits, or another measure, provide you calculation of damages, describe in detail the factual bases upon which you base your calculation, and identify all persons with knowledge of such factual bases.

**INTERROGATORY NO. 10:**

If you contend that any of the patents-in-suit or any of its claims is entitled to a priority date prior to the actual filing date of that patent, state all factual and legal bases for that contention, including identifying which claims and patents you contend are entitled to which priority dates, which documents support or refute your contentions and if any of the supporting documents are other patent applications or patents, identify where in those patents applications or patents there is written description support to provide the contended priority date.

Respectfully submitted,

Dated:   December 7, 2018                FENWICK & WEST LLP

By: */s/ Saina S. Shamilov*
         Saina S. Shamilov

1

2
Counsel for
AMAZON. COM, INC. and
3
AMAZON WEB SERVICES, INC.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on this 7th day of December, 2018, a true and correct copy of the fore-
going document was served on each party through their counsel of record via email.

3

4
Michael A. Sherman
masherman@stubbsalderton.com

Theodore S. Maceiko
ted@maceikoip.com

5
Jeffrey F. Gersh
jgersh@stubbsalderton.com

MACEIKO IP
420 2nd Street

6
Sandeep Seth
sseth@stubbsalderton.com

Manhattan Beach, CA  90266

7

*Counsel for PersonalWeb Technologies, LLC*

Wesley W. Monroe
wmonroe@stubbsalderton.com

8
Stanley H. Thompson

David Wier
david.wier@level3.com

9
sthompson@stubbsalderton.com

Level 3 Communications, LLC
1025 Eldorado Boulevard

10
Viviana Boero Hedrick
vhedrick@stubbsalderton.com

Broomfield, CO 80021

11
STUBBS ALDERTON & MARKILES, LLP
15620 Ventura Blvd., 20th Floor

*Counsel for Level 3 Communications, LLC*

12
Sherman Oaks, CA  91403

13
*Counsel for PersonalWeb Technologies, LLC*

14

*/s/ Crystal Nwaneri*
Crystal Nwaneri

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Michael A. Sherman (SBN 94783)
    masherman@stubbsalderton.com
2   Jeffrey F. Gersh (SBN 87124)
    jgersh@stubbsalderton.com
3   Sandeep Seth (SBN 195914)
    sseth@stubbsalderton.com
4   Wesley W. Monroe (SBN 149211)
    wmonroe@stubbsalderton.com
5   Stanley H. Thompson, Jr. (SBN 198825)
    sthompson@stubbsalderton.com
6   Viviana Boero Hedrick (SBN 239359)
    vhedrick@stubbsalderton.com
7   STUBBS, ALDERTON & MARKILES, LLP
    15260 Ventura Blvd., 20th Floor
8   Sherman Oaks, CA 91403
    Telephone:     (818) 444-4500
9   Facsimile:     (818) 444-4520

10  **Attorneys for PersonalWeb Technologies, LLC**
    **and Level 3 Communications, LLC**
11  [Additional Attorneys listed below]

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15  IN RE PERSONAL WEB TECHNOLOGIES,        **CASE NO.: 5:18-md-02834-BLF**
    LLC, ET AL., PATENT LITIGATION
16  _____

17  AMAZON.COM, INC., et al.,               **Case No.: 5:18-cv-00767-BLF**

18          Plaintiffs,                     **PERSONALWEB TECHNOLOGIES, LLC**
                                            **RESPONSE TO AMAZON.COM, INC.**
19  v.                                      **AND AMAZON WEB SERVICES, INC.'S**
                                            **FIRST SET OF PROPOUNDING**
20  PERSONALWEB TECHNOLOGIES, LLC, et       **INTERROGATORIES**
    al.,
21
            Defendants.
22  _____  Trial Date:      March 16, 2020

23  PERSONALWEB TECHNOLOGIES, LLC
    and LEVEL 3 COMMUNICATIONS, LLC,
24
            Counterclaimants,
25  v.

26  AMAZON.COM, INC. and AMAZON WEB
    SERVICES, INC.,
27
            Counterdefendants.
28  _____

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, PersonalWeb

2 Technologies, LLC ("PersonalWeb"), by and through counsel, hereby objects and responds to the First

3 Set of Interrogatories of Amazon.com, Inc. and Amazon Web Services, Inc. (collectively "Amazon")

4 as follows:

5                                    **GENERAL OBJECTIONS**

6    1.    The following general objections are stated with respect to each and every interrogatory

7 whether or not specifically identified in response thereto.  To the extent any of these general objections

8 are not raised in any particular response, PersonalWeb does not waive those objections.

9    2.    PersonalWeb objects to each and every instruction and interrogatory to the extent that

10 it seeks to impose duties beyond those required by the Federal Rules of Civil Procedure and the Local

11 Rules of this district.  PersonalWeb's response shall be made only in accordance with the applicable

12 rule(s).

13    3.    PersonalWeb objects to each and every instruction and interrogatory to the extent that

14 it seeks the disclosure of information protected by the attorney-client privilege, the attorney work-

15 product doctrine, or any other applicable privilege, immunity, or protection, as provided by any

16 applicable law.  PersonalWeb does not intend to disclose such privileged or protected information.

17    4.    PersonalWeb's inadvertent disclosure of any such information should not be deemed a

18 waiver of any privilege, immunity, or protection, and PersonalWeb expressly reserves the right to

19 object to the introduction at trial or to any other use of such information that may be inadvertently

20 disclosed.  PersonalWeb objects to discovery of attorney-client privileged communications after the

21 filing of this lawsuit and to discovery of work-product materials generated after the filing of this

22 lawsuit.  Per the parties' Joint Preliminary Pretrial Conference Statement, PersonalWeb will not

23 identify these privileged or protected materials in a privilege log.

24    5.    The responses given herein shall not be deemed to waive any claim of privilege or

25 immunity PersonalWeb may have as to any response, document, or thing, or any question or right of

26 objection as to authenticity, competency, relevancy, materiality, admissibility, or any other objection

27 PersonalWeb may have as to a demand for further response to these or other Interrogatories, or to any

28 objection to the use of such information, documents, or things in any other proceeding filed after the

1

1    production of such information or documents.

2         6.    PersonalWeb objects to each and every definition inasmuch as it purports to define

3    terms used by PersonalWeb in its responses.  PersonalWeb explicitly rejects any of Amazon's

4    purported definitions applying to PersonalWeb's responses, unless specifically stated otherwise.

5         7.    PersonalWeb objects to each and every definition and each and every interrogatory

6    including them as impermissibly vague, ambiguous, overly broad, and uncertain as the purportedly

7    defined terms are not consistently capitalized or otherwise indicated as referring to a use as a

8    purportedly defined term as compared to the use of the purportedly defined term in its ordinary usage.

9         8.    PersonalWeb objects to each and every definition and interrogatory as overly broad,

10   unduly burdensome, and not proportional to the needs of the case because they are not limited to a

11   specific geographic area. PersonalWeb will only provide discovery with respect to the United States.

12        9.    PersonalWeb objects to the definitions of "You," "Your," or "PersonalWeb" because

13   PersonalWeb has no knowledge of the entity "PersonalWeb Technologies LLC."  To the extent that

14   this definition is intended to refer to "PersonalWeb Technologies, LLC", PersonalWeb objects to the

15   definition as it seeks to broaden the scope of allowable discovery and seeks information that is not

16   within the possession, custody, or control of PersonalWeb, but is in the possession of third-parties and

17   non-parties to this lawsuit. PersonalWeb further objects to each and every interrogatory including

18   "PersonalWeb" as impermissibly vague, ambiguous, overly broad, and uncertain as Amazon has given

19   "PersonalWeb" different and inconsistent definitions in the preamble to the interrogatories and in the

20   "Definitions" section of the interrogatories. PersonalWeb further objects to the definition of these

21   terms to the extent it includes PersonalWeb attorneys and patent agents and seeks privileged and

22   attorney-work product information. PersonalWeb will interpret these terms as referring to

23   PersonalWeb Technologies, LLC only.

24        10.   PersonalWeb objects to the definitions of "Amazon" to the extent that it purports to

25   extend to "all predecessors, parents, subsidiaries, divisions, officers, employees, agents, and attorneys

26   of Amazon.com, Inc. and Amazon Web Services, Inc., and each person acting or purporting to act on

27   their behalf or under their control" as broadening the scope of allowable discovery and seeks

28   information that is not within the possession, custody, or control of PersonalWeb as PersonalWeb does

1   not know the identity of such persons and entities or the nature of their legal relationship to Amazon.

2   PersonalWeb further objects to each and every interrogatory including "Amazon" as impermissibly

3   vague, ambiguous, overly broad, and uncertain as Amazon has given "Amazon" different and

4   inconsistent definitions in the preamble to the interrogatories and in the "Definitions" section of the

5   interrogatories.

6       11.    PersonalWeb objects to the definition of "patents-in-suit" because it refers to patents

7   about which there is no case or controversy, particularly the '791 patent. None of PersonalWeb's

8   operative complaints against individual website operators allege infringement of the '791 patent.

9       12.    PersonalWeb objects to the definitions of "all documents" as overly broad, unduly

10   burdensome, and not proportional to the needs of the case because to the extent that is imposes

11   obligations on PersonalWeb beyond those in Fed. R. Civ. P. 326 and 33.

12       13.    PersonalWeb objects to the definitions of "communication" as overly broad, unduly

13   burdensome, and not proportional to the needs of the case because to the extent that is imposes

14   obligations on PersonalWeb beyond those in Fed. R. Civ. P. 326 and 33.

15       14.    PersonalWeb objects to the definitions of "Identify" as overly broad and unduly

16   burdensome, vague and ambiguous, not proportional to the needs of this case, and failing to describe

17   the information sought with reasonable particularity. PersonalWeb will interpret this term as "List the

18   natural person, legal entity, or document.".

19       15.    PersonalWeb objects to the interrogatories to the extent that they seek information

20   equally available to Amazon in the public domain or that is already in the possession, custody, or

21   control of Amazon.

22       16.    PersonalWeb objects to the interrogatories to the extent that they seek information that

23   is in the possession, custody, or control of parties over whom PersonalWeb has no control.

24       17.    Nothing contained herein may be construed as an admission relative to the existence or

25   non-existence of any information, and no response may be construed as an admission with respect to

26   the relevancy or admissibility in evidence of any statement or characterization contained in the

27   interrogatories or respecting the authenticity, competency, relevancy, materiality, or admissibility of

28   any information, document or thing referenced by the interrogatories.

**PERSONALWEB RESPONSES TO AMAZON'S**            **CASE NO: 5:18-md-02834-BLF**
**FIRST SET OF PROPOUNDING INTERROGATORIES**         **CASE NO. 5:18-cv-00767-BLF**
4823-2505-9973, V. 3

1    Discovery in this matter is ongoing and PersonalWeb reserves the right to revise or supplement

2    any response herein.

3    These General Objections are applicable to and are incorporated in each specific response

4    herein without further reference. The inclusion of specific objection(s) in response to any

5    interrogatories shall not be construed as a waiver of such objection(s), or any of these objections, in

6    any other response.

7                            **RESPONSES AND OBJECTIONS**

8    Subject to the foregoing General Objections, which are incorporated by reference as if set forth

9    fully in each and every response, PersonalWeb also specifically responds and objects to the

10   interrogatory as follows:

11   **INTERROGATORY NO. 1:**

12   For each claim of the patents-in-suit, describe in detail the circumstances of its invention,

13   including without limitation: the earliest claimed date(s) of conception and reduction to practice when

14   and where such conception and reduction to practice occurred, all persons involved in or otherwise

15   having knowledge of such conception and reduction to practice, the nature and extent of each

16   individual's involvement in and their relative contribution to such activities, and the identification of

17   all documents and tangible things relating to the earliest claimed date(s) of conception and reduction

18   to practice. If you contend the inventors were diligent in reducing such claim to practice, the full

19   factual and legal basis for that contention, including any basis you contend excuses any period(s) of

20   non-diligence.

21   **RESPONSE TO INTERROGATORY NO. 1:**

22   In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

23   that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

24   together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

25   the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

26   purports to require the disclosure of information that is not within the knowledge, possession, custody,

27   or control of PersonalWeb. Subject to the foregoing objections, PersonalWeb responds as follows:

28   PersonalWeb acquired the Patents-in-Suit from Kinetech, Inc. in July 2011. PersonalWeb was

---

4

1    not involved in the conception and reduction to practice of the claimed inventions. However, both

2    inventors, Ronald Lachman and David Farber, have been deposed and PersonalWeb incorporates by

3    reference their deposition testimony. PersonalWeb also understands that prosecuting attorney Brian

4    Siritzky has been deposed previously on the topic at issue in this Interrogatory. Besides Messrs.

5    Lachman, Farber, and Siritzky, others with potential knowledge regarding "such conception and

6    reduction to practice," include Mr. Swart and Ezra Goldman.

7        PersonalWeb has also obtained documents from Andrew Swart that contain information

8    regarding the conception and reduction to practice of the claimed inventions and diligence in reducing

9    to practice the claimed inventions and has or will be produced those documents in this case. (See

10   production nos. PWEB 070943-071185, hereinafter, reference numbers beginning with "PWEB" or

11   "PersonalWeb" refer to production numbers). These documents support that the inventions were

12   conceived sometime prior to October 1994, and the patent application was filed on April 11, 1995.

13       Mr. Ronald Lachman, one of the two inventors listed on the patents in suit, testified that the

14   verbal dialogues about the problems the True Name patents were designed to solve (namely,

15   redundancy in data storage and transmission [e.g., cache-control] (see Lachman Deposition, January

16   16, 2014 at 91:8- 13)) began in 1994 (id. at 88:12-89:21). These dialogues sparked meetings, further

17   conversations, test gigs, proposals, examinations of various potential solutions, and led Mr. Lachman,

18   along with his co-inventor, Mr. David Farber, to identify certain hashing algorithms which were

19   subject to further research, calculations, and gradual improvement. (Id. at 92:6-16). Months after their

20   initial meeting, Messrs. Lachman and Farber had made "substantive progress" on the ideas embodied

21   in the Patents-in-Suit; by the fall of 1994 the ideas had become concrete, soon after which they retained

22   a patent attorney to bring their ideas to fruition. (Id. at 92:17-25). Prior to the preparation and filing of

23   the first patent application leading to the Patents-in-Suit, the entire process of bringing Messrs.

24   Lachman and Farber's idea to fruition involved "tons of documents," "programs . . . and notes, [and]

25   papers," including "white papers," and measurements and mathematical modeling of data replication.

26   (Id. 94:21-95:14). Ultimately, Mr. Lachman (and Mr. Farber) retained the services of Cushman Darby

27   & Cushman, by whom Brian Siritzky was employed, to prosecute the applications leading to the

28   Patents-in-Suit; Mr. Lachman testified that the retention of Cushman Darby & Cushman, or at least

PERSONALWEB RESPONSES TO AMAZON'S          CASE NO: 5:18-md-02834-BLF
FIRST SET OF PROPOUNDING INTERROGATORIES          CASE NO. 5:18-cv-00767-BLF

4823-2505-9973, V. 3

1    the first contact with Mr. Siritzky for the purposes of preparing a patent application that lead to the

2    Patents-in-Suit under the supervision of Dale Lazar, occurred at least by November 1994. (Id. 158:24-

3    159-4; 161:8-13). Mr. Lachman further testified that he understood the specification of the first patent

4    application leading to the Patents-in-Suit when it was filed on April 11, 1995, having spent "many,

5    many hours invested in reading drafts of [the] patent and commenting on them with [his] attorney and

6    [David Farber]." (Id. 105:11-23). Co-inventor Dave Farber likewise testified that he began to work on

7    the concepts of the True Names patents with Mr. Lachman starting in late summer or fall 1994. (Farber

8    Deposition, February 20-21, 2014, at 46:21-25; 71:3-6). Mr. Farber testified that after leaving his job

9    in September 1994, he contacted Mr. Lachman upon the recommendation of a colleague who said that

10   Mr. Lachman had "interesting ideas to work with"; he was then invited to join Mr. Lachman on a flight

11   from Chicago to Baltimore that October to "talk about ideas", and on this flight, Mr. Lachman shared

12   the ideas that led to the development of the invention described by the True Names patents. (Id. at

13   70:7-9; 71:9-11; 71:14-72:7; see Deposition of David Farber, February 16, 2006, 47:22-49:1, PWEB

14   011101-03.). At some point during their flight, Mr. Lachman shared "the seed of the idea [of the

15   invention in the True Names patents], which is that there would be . . . an algorithm . . . that would

16   reduce any large piece of data to a relatively small piece of data, but still big enough that it would be

17   a huge number, huge enough that every individual item in a particular space would be extremely likely

18   to have a separate value." (Id. at 85:14-23.) Mr. Farber then testified that based on this "seed," he and

19   Mr. Lachman began to talk about the algorithm "as if there was such a thing, [and] all the different

20   ways to use it." (Id. at 85:14-86:2.) During a follow-up conversation in late 1994, Mr. Lachman further

21   discussed his idea of a new way to use hashes—indeed, a special kind of hash—to solve a certain class

22   of problems related to file identification. (Id. at 93:4-20.) Mr. Farber elaborated on Mr. Lachman's

23   seed of an idea by describing particular applications of the idea and helping to specify properties of

24   algorithms necessary to bring their idea to fruition. (Id. 94:1-12.) Mr. Farber also testified that he

25   learned of MD5 and SHA hashes during the time he was working on the True Names patents, while

26   simultaneously becoming aware of the importance of moving and deduplicating big files—something

27   he was "doing a lot of" during the time he and Mr. Lachman were developing the inventions disclosed

28   in the True Names patents. (Id. at 67:15-22; 2006 Farber Depo., 49:21-50:2, PWEB 011103-04.) After

**PERSONALWEB RESPONSES TO AMAZON'S**                          **CASE NO: 5:18-md-02834-BLF**
**FIRST SET OF PROPOUNDING INTERROGATORIES**              **CASE NO. 5:18-cv-00767-BLF**

4823-2505-9973, V. 3

1   further investigation, by late fall 1994, Messrs. Lachman and Farber had invented a way to confidently

2   determine the identity of a particular piece of data merely by having a smaller piece of data, which

3   one may refer to as a "unique identifier." (Id. at 89:10-17; 89:23-90:3.) Once Messrs. Lachman and

4   Farber had realized this invention, sometime in late 1994, they retained Mr. Siritzky, a patent attorney,

5   to help them draft and file a patent application. (Id. 90:13-90:22.). The following documents provide

6   additional support that the inventions were conceived sometime during fall 1994, and the patent

7   application was filed on April 11, 1995:

8       • Dave Farber authored a patent disclosure and review form disclosing the concepts in the

9   Patents-in-Suit on November 15, 1994. [PWEB 070946-47]. His disclosure described the proposed

10  invention in which "files are reduced to a small 'message digest' which can later be used to find an

11  instance of a file with the same content as the original." He outlined various uses for the invention

12  including: (1) "Allow[ing] several users to share backups, keeping only one copy of common files;"

13  (2) "Support[ing] a highly available backup server in a network, making it possible to keep all files

14  online and quickly accessible;" (3) "Support[ing] version control, allowing multiple copies of similar

15  directories with minimal redundancy;" and (4) "Support[ing] fast backups over slow bandwidth

16  communications (e.g. modems) by verifying that common files are known to the backup system

17  without copying them." [PWEB 070946]. He also described the novelty of the invention as: (1) "Using

18  'message digests' to [virtually] uniquely identify files (for any purpose);" (2) "Using this form of

19  identification specifically to control redundancy, as described above;" (3) "Creating a file system

20  which computes stores, and uses message digests as a way to transparently introduce this feature into

21  operating systems without changes to most applications;" and (4) "Breaking a file into segments before

22  hashing as a way to improve this feature when applied to some kinds of file." Id. Finally, his

23  description distinguished the invention over existing art. [PWEB 070947].

24      • Dave Farber updated his November 15, 1994, patent disclosure form on December 31, 1994,

25  and subsequently on January 5, 1995. [PWEB 070951-55]. The revised disclosure described the "True

26  Name" concept: "virtually unique, context-free, universal names for blocks of data." [PWEB 070951].

27  Farber clarified in this disclosure that a True Name provides several important capabilities: (1) "A

28  way to refer to a block of data that is absolutely independent of its location, address, origin, or any

7

1   other property other than the data itself;" (2) "A way to determine whether a block of data on one

2   computer storage system is present in another computer storage system, without having to transmit

3   the entire block between systems;" (3) "A way for the recipient of a block of data to validate that the

4   data received is complete and correct, and has not been tampered with, maliciously or otherwise."

5   [PWEB 070951]. Mr. Farber also describes how the True Names invention solves a data verification

6   problem between remote storage systems by use of message digest functions, algorithms such as MD4,

7   MD5, and SHA. [PWEB 070952]. Farber expressly noted that what is truly unique about the True

8   Name invention is not the message digest algorithm, or the use of such an algorithm in proving the

9   authenticity of a message, but rather its much broader application as the basis of a True Name. Id. In

10  the updated patent disclosure form, Farber listed 11 possible examples of its use, some of which

11  include: (1) "Support fast logical copying of data over slow bandwidth communication by avoiding

12  copying when the destination system already has the data;" (2) "Allow a network of systems storing

13  files or objects to efficiently send them back and forth by avoiding copies when unnecessary;" (3)

14  "Support controlled redundancy in a network of storage servers – for instance, ensure that two or three

15  servers have a copy of every file, or of every recently accessed file;" (4) "Support remote file or object

16  caches in situation where short-term inconsistencies are acceptable. For instance, local file servers on

17  a network may cache files coming from many sources for local use;" (5) "Allow distant or occasionally

18  disconnected computers to maintain identical structures by periodically resynchronizing their

19  contents. Communication is minimized by avoiding copies when unnecessary." [PWEB 070953]. A

20  full listing of the 11 possible (but not exclusive) uses of the True Names invention is available at

21  [PWEB 070953], and PersonalWeb incorporates by references these uses into the response to this

22  interrogatory. In this revised patent disclosure form, Mr. Farber also clarified the range of new or novel

23  features of the True Names invention; such novel features include: (1) "Using 'message digests' to

24  implement True Names, names that uniquely identify data blocks"; (2) "Using True Names as a way

25  to communicate block identifiers among systems which maintain their own True Name Table for

26  blocks of interest"; (3) "Using a True Name Table to control redundancy in networked systems"; (4)

27  "Using True Names to ensure data integrity of stored blocks"; (5) "Using a virtual file system to

28  maintain a True Name table automatically and transparently"; (6) " Using True Names as a means to

1   verify that any stored data object (including scanned photographs, videos, sound clips, etc.) has not

2   been tampered with"; (7) "Breaking blocks into segments before computing their True Names, as a

3   way to increase the sharability of the segments." [PWEB 070954]. As his earlier disclosure form did,

4   the updated form also distinguished the invention over existing art. [PWEB 070954-55]. For related

5   documentary references, see Ex. 10 to Lachman deposition, January 16, 2014 [PWEB 070949-50]

6   (handwritten notes on December 1994 draft of patent disclosure form); see also Ex. 14 to Mr. Farber's

7   deposition in February 2014, which includes: [PWEB 071124-29] (notes on patent disclosure revised

8   as of January 5, 1995); [PWEB 101076] (Farber notes from December 18, 1994); [PWEB 101077]

9   (True Name Project Plan); [PWEB 101078-115] (38-slide deck from February 3, 1995, describing the

10  concepts, benefits, system architecture, potential services, product definitions, development plan, and

11  next steps of the True Names Project); [PWEB 101116-118] (True Name "Phase 1" Project Status

12  Report). Ex. 26 to Mr. Lachman's Deposition on Jan. 17, 2014 [PWEB 009084-86] is an email chain

13  between Messrs. Swart and Farber that provides an approximate timeline of the conception of the True

14  Names inventions taught by the Patents-in-Suit—noting initial discussions of the True Names

15  inventions beginning in late summer or early fall 1994, the subsequent creation of a venture between

16  Messrs. Lachman, Farber, and Swart, the retention of a patent attorney, and the filing in Spring 1995

17  of a patent application. See also February 2006 Deposition of Mr. Farber at 192:2-9 (noting that the

18  May 1995 patent application date reflected in the timeline was inaccurate; April 1995 was when the

19  first of the True Names patents was filed) [PWEB 011246]. In addition, the answer to this interrogatory

20  may be determined by examining the documents that have been or will be produced with

21  PersonalWeb's P.R. 3-1 disclosures and P.R. 3-2 production, as well as other documents produced by

22  PersonalWeb to date. Because the burden of deriving or ascertaining the answer to this interrogatory

23  based on these documents will be substantially the same for either party, PersonalWeb identifies the

24  following   documents:   PWEB_007267;   PWEB_000504;   PWEB_008079;   PWEB_000880;

25  PWEB_008135; PWEB_008191; PWEB_008253; PWEB_008314; PWEB_008375; PWEB_008435;

26  PWEB_008495; PWEB_001260; PWEB_001939; PWEB_010521; PWEB_002833; PWEB_010754;

27  PWEB_003431; PWEB_004069; PWEB_020323; PWEB_032150; PWEB_020488; PWEB_020017;

28  PWEB_008561; PWEB_008829; PWEB_009000; PWEB_009046; PWEB_009051; PWEB_009082;

1  PWEB_009084; PWEB_009087; PWEB_009147; PWEB_009261; PWEB_009380; PWEB_009567;

2  PWEB_009929; PWEB_010163; PWEB_010166; PWEB_010175; PWEB_010178; PWEB_010179;

3  PWEB_010302; PWEB_010500; PWEB_011030; PWEB_011032; PWEB_011047; PWEB_011056;

4  PWEB_011366; PWEB_023769; PWEB_040509; PWEB_040555; PWEB_040755; PWEB_024208;

5  and PWEB_021813.

6      Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

7  PersonalWeb reserves the right to supplement and/or amend this response as further information

8  becomes available.

9  **INTERROGATORY NO. 2:**

10      For each claim of the patents-in-suit, describe in detail all facts and circumstances relating to

11  the first written description, offer for sale, sale, public disclosure, public use, or disclosure to any

12  person other than a named inventor of the claimed invention, including, without limitation, the identity

13  of the person involved in each such event, the date on which each such event occurred, and the

14  identification of each document that reflects or relates to such facts and circumstances.

15  **RESPONSE TO INTERROGATORY NO. 2:**

16      In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

17  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

18  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

19  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

20  purports to require the disclosure of information that is not within the knowledge, possession, custody,

21  or control of PersonalWeb. Subject to the foregoing objections, PersonalWeb responds as follows:

22      PersonalWeb is not aware of the first public use or public demonstration of a system or

23  apparatus containing all the elements of the claimed inventions or, of a demonstration of all the steps

24  set forth in the claimed inventions. Likewise, PersonalWeb is unaware of the first sale or offer for sale

25  in the United States of a system, apparatus, or method containing all the elements of an asserted claim.

26  PersonalWeb has reviewed the deposition transcripts and documents provided by the inventors, the

27  inventors' companies, and original assignee. PersonalWeb does not believe that any sale or offer for

28  sale in the United States of a system, apparatus, or method containing all the elements of an asserted

1  claim was made prior to the filing date of the Application No. 08/425,160 on April 11, 1995. Likewise,

2  while the documents and deposition testimony indicate that computer systems containing the elements

3  of certain claims may have been tested (and thereby reduced to practice) prior to the April 11, 1995

4  filing date, PersonalWeb is unaware of any public use or public demonstration of a system or apparatus

5  containing all the elements of the claimed inventions or, of a demonstration of all the steps set forth in

6  the claimed inventions prior to the April 11, 1995 filing date.

7  Nevertheless, PersonalWeb refers Amazon to the depositions of the TrueName patent

8  inventors, Ron Lachman and David Farber, describing early uses of the patented technology.

9  Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

10  PersonalWeb reserves the right to supplement and/or amend this response as further information

11  becomes available.

12  **INTERROGATORY NO. 3:**

13  Identify all products and/or services that you contend practice or embody (or have at any time

14  practiced or embodied) any alleged invention described or claimed in each of the patents-in-suit,

15  including without limitation any allegedly practicing products and/or services of PersonalWeb, its

16  licensees, assignees, or any of their subsidiaries, affiliates, predecessors or successors-in-interest.

17  **RESPONSE TO INTERROGATORY NO. 3:**

18  In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

19  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

20  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

21  the Federal Rules of Civil Procedure. PersonalWeb further objects to this Interrogatory to the degree

22  that it calls for information protected by the attorney-client privilege or the work-product doctrine.

23  PersonalWeb objects to this Interrogatory to the extent that it purports to require the disclosure of

24  information that is not within the knowledge, possession, custody, or control of PersonalWeb. Subject

25  to the foregoing objections, PersonalWeb responds as follows:

26  PersonalWeb designed and marketed a product called StudyPods that used some of the

27  inventions claimed in the Patents-in-Suit. PersonalWeb's former Chief Technical Officer, Wasef

28

1   Kassis, and a team of software engineers and programmers under Mr. Kassis' direction and
2   supervision, were responsible for the design, development, and testing of the StudyPods product.

3   PersonalWeb is aware of many other companies (including Connected Corporation and Iron
4   Mountain) that have designed and developed products incorporating inventions claimed in the Patents-
5   in-Suit. A number of these companies have received licenses to the Patents-in-Suit. PersonalWeb will
6   produce all such license agreements for the Patents-in-Suit. PersonalWeb is also aware of companies
7   that are infringing the Patents-in-Suit by making, using, selling, and offering for sale products that
8   incorporate the inventions claimed in the Patents-in-Suit. PersonalWeb has filed patent infringement
9   actions in the U.S. District Court for the Eastern District of Texas against some of these companies,
10  including Autonomy, Hewlett Packard Company, NetApp, EMC, Amazon, NEC, Google, Apple,
11  RackSpace, Microsoft, IBM, and Facebook. PersonalWeb has also filed patent infringement suits
12  against the various companies involved in the present MDL cases.

13  PersonalWeb also is aware that prior owners of the patent-in-suit filed patent infringement
14  actions against accused infringers, including StreamCast, Limewire, Overpeer, and others. Besides
15  PersonalWeb, other prior owners or exclusive licensees of the Patents-in-Suit have engaged in
16  licensing activities for the inventions claimed. These entities include Brilliant Digital Entertainment,
17  Altnet, Inc., Kinetech, Inc., Connected Corporation, and Level 3 Communications, Inc.

18  Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.
19  PersonalWeb reserves the right to supplement and/or amend this response as further information
20  becomes available.

21  **<u>INTERROGATORY NO. 4:</u>**

22  If you contend that there exist any secondary considerations or objective evidence of non-
23  obviousness with respect to each of the claimed inventions of the patents-in-suit, state in detail the full
24  factual and legal basis for your contention, including identifying all persons and documents supporting
25  this contention. Your answer should also identify and explain any nexus you contend exists between
26  the claimed invention(s) and any evidence of secondary considerations or objective evidence of non-
27  obviousness, including without limitation a claim-by-claim description of the connection between
28  each of the asserted claims and any evidence of commercial success.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent it seeks information related to the validity of the patents-in-suit. PersonalWeb's patents are presumed valid under 35 U.S.C. §282, and Amazon bears the burden of establishing invalidity by clear and convincing evidence. PersonalWeb further objects to this Interrogatory to the degree that it calls for information protected by the attorney-client privilege or the work-product doctrine. Subject to the foregoing objections, PersonalWeb responds as follows:

The non-obviousness of the Patents-in-Suit's claimed inventions is reflected by the tremendous commercial success achieved by AWS' S3 and CloudFront products and services. Upon information and belief, Amazon's accused products have produced millions of dollars in revenues due in part to its use of the inventions of the Patents-in-Suit.

The non-obviousness of the Patents-in-Suit is also reflected by the commercial success achieved by the other defendants that PersonalWeb has sued and/or parties licensed under the True Names patents, including, but not limited to products referenced in PersonalWeb's Response to Interrogatory No. 3, herein.

Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts. PersonalWeb reserves the right to supplement and/or amend this response as further information becomes available and pending the completion of expert discovery.

**INTERROGATORY NO. 5:**

For each claim of the patents-in-suit, identify, on an element-by-element basis, the portion or portions of the specification that contains the written description of the alleged invention covered by the claim, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and if you contend the specification sets forth the best mode contemplated by any inventor(s) of carrying out his invention, identify the specific portions

1  of the specification setting forth the best mode of the claimed invention.

2  **RESPONSE TO INTERROGATORY NO. 5:**

3  In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

4  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

5  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

6  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent it seeks

7  information related to the validity of the patents-in-suit. PersonalWeb's patents are presumed valid

8  under 35 U.S.C. §282, and Amazon bears the burden of establishing invalidity by clear and convincing

9  evidence. PersonalWeb further objects to this Interrogatory to the degree that it calls for information

10  protected by the attorney-client privilege or the work-product doctrine. Subject to the foregoing

11  objections, PersonalWeb responds as follows:

12  PersonalWeb refers Amazon to the Patents-in-Suit themselves.

13  Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

14  Further, the claim construction process is ongoing.  PersonalWeb reserves the right to supplement

15  and/or amend this response as further information becomes available and pending the completion of

16  expert discovery.

17  **INTERROGATORY NO. 6:**

18  For each of the patents-in-suit, provide all facts and identify all corroborating documents

19  regarding the ownership of any right, title, or interest in or to each patent, including identifying the

20  entity that currently owns the right, title, or interest and a full explanation of the chain of title to any

21  and all rights, title, or interests in or to each patent.

22  **RESPONSE TO INTERROGATORY NO. 6:**

23  In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

24  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

25  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

26  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

27  purports to require the disclosure of information that is not within the knowledge, possession, custody,

28  or control of PersonalWeb. PersonalWeb further objects to this Interrogatory to the degree that it calls

for information protected by the attorney-client privilege or the work-product doctrine. Subject to the foregoing objections, PersonalWeb responds as follows:

PersonalWeb obtained its ownership interest in the Patents-in-Suit on July 15, 2011, when Kinetech, Inc. ("Kinetech"), assigned all its interest in the Patents-in-Suit to PersonalWeb. See PWEB 071332-348. The inventors of the Patents-in-Suit assigned the Patents-in-Suit to Kinetech in June 1995. In addition, the answer to this Interrogatory may be determined, at least in part, by examining PersonalWeb's P.R. 3-1 disclosures including all amendments thereof and P.R. 3-2 production served on October 26, 2018, as well as PersonalWeb's business records that have been or will be produced to Amazon. Because the burden of deriving or ascertaining the answer to this Interrogatory based on these documents will be substantially the same for either party, PersonalWeb identifies the following documents: PWEB_000153–000189; PWEB_000210; PWEB_000227; PWEB_011045; PWEB_021086; PWEB_020315; PWEB_032032; PWEB_033262; PWEB_033278; PWEB_030651; PWEB_032082; PWEB_032085; PWEB_029005; PWEB_029016; PWEB_043657; PWEB_020664; PWEB_029088; PWEB_020668; PWEB_030972; PWEB_030989; PWEB_020941; PWEB_020945; PWEB_020948; PWEB_031588; PWEB_022809; PWEB_023059; PWEB_019636; PWEB_019639; PWEB_019680; PWEB_019687; PWEB_019691; PWEB_019998; PWEB_020000; and PWEB_028293.

In addition, the Patents-in-Suit have been subject to three exclusive license agreements. See PWEB_022810-821; PWEB_028293-315; PWEB_022923-935; and PWEB_028077-090. Iron Mountain LLP at one time held an exclusive license with PersonalWeb's predecessor in interest, but that exclusive license, which covered a limited field of technology not at issue in this case, is now terminated.

Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts. PersonalWeb reserves the right to supplement and/or amend this response as further information becomes available.

**INTERROGATORY NO. 7:**

Describe in detail each instance of an offer, discussion, negotiation, and/or agreement to sell, buy, acquire, license, sublicense, covenant-not-to-sue, settle any claims, or otherwise convey any

15

1    right(s) or decline to enforce any rights in any of the patents-in-suit or related patents/applications.

2    Such description should include, without limitation, the date(s) of such offer, discussion, negotiation,

3    or agreement; the identity of any person having knowledge of and/or involvement in the same; the

4    outcome and/or current status of the same; an identification of any resulting agreement (s) and/or

5    license(s); the effective date of any resulting agreement(s) and/or license(s), including whether they

6    are still in effect and whether there has been any allegation of breach; the terms of any resulting

7    agreement(s) and/or license(s) including any fees, payments, royalties or other consideration and any

8    restrictions, including field of use restrictions; and the identity of any documents (including

9    agreements and licenses) constituting or referring to such offer, discussion, or negotiation

10   **RESPONSE TO INTERROGATORY NO. 7:**

11         In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

12   that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

13   together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

14   the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

15   purports to require the disclosure of information that is not within the knowledge, possession, custody,

16   or control of PersonalWeb. PersonalWeb further objects to this Interrogatory to the degree that it calls

17   for information protected by the attorney-client privilege or the work-product doctrine. Subject to the

18   foregoing objections, PersonalWeb responds as follows:

19         PersonalWeb incorporates by references its response to Interrogatory No. 6.

20         Further, because the burden of deriving or ascertaining the answer to this Interrogatory based

21   on these documents will be substantially the same for either party, PersonalWeb also identifies the

22   following documents:: PWEB_028293-315 (Kinetech and Digital Island);  PWEB_71360-67 (BDE

23   and Streamcast); PWEB_71403-15 (BDE and Limewire); PWEB_71381-91 (Kinetech and GUBA);

24   PWEB_022983-95 (BDE and Internet Gig.com); PWEB_22810-21 (Kinetech and Connected);

25   PWEB_022923-35 (Kinetech and BDE/Altnet); PWEB 71218-71244 and PWEB 71256-71282

26   (PersonalWeb and Caringo); PWEB 71245-71254 and PWEB 71306-71316 (PersonalWeb and

27   Nexsan), PWEB 97716-97727 (PersonalWeb and NEC), PWEB 169667-169684 and PWEB 169661-

28   169666 (PersonalWeb and Hewlett Packard); PWEB 169667-169684 and PWEB 169661-169666

16

1   (PersonalWeb and Autonomy); PWEB 169667-169684 and PWEB 169661-169666 (PersonalWeb and

2   Iron Mountain); PWEB 164945- 164978 (PersonalWeb and Microsoft); PWEB 170112-170129

3   (PersonalWeb and Yahoo); PWEB 170130-17036 (PersonalWeb and Rackspace), and PWEB 182918-

4   182924 (PersonalWeb and IBM) and PERSONALWEB 006775-006787 (PersonalWeb and VigLink).

5   In addition, PersonalWeb has offered a license to other using its technology by providing information

6   on its website regarding the technology, including the Patents-in-Suit, and license availability. For

7   example, PersonalWeb has offered licenses to entities such as EMC Corp., NetApp, Github, Amazon,

8   Google, Facebook, Apple, and VMWare.

9          Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

10  PersonalWeb reserves the right to supplement and/or amend this response as further information

11  becomes available.

12  **INTERROGATORY NO. 8:**

13         For each claim of the patents-in-suit, identify and describe any investigations, evaluations,

14  communications, or opinions relating to the validity, patentability, and/or enforceability of such claim,

15  whether performed by you or any other entity, and identify all persons with knowledge of such

16  investigations, evaluations, communications, or opinions and all documents related thereto.

17  **RESPONSE TO INTERROGATORY NO. 8:**

18         In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

19  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

20  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

21  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

22  purports to require the disclosure of information that is not within the knowledge, possession, custody,

23  or control of PersonalWeb. PersonalWeb further objects to this Interrogatory to the degree that it calls

24  for information protected by the attorney-client privilege or the work-product doctrine. Subject to the

25  foregoing objections, PersonalWeb responds as follows:

26         The answer to this interrogatory may be determined by examining the documents that have

27  been or will be produced to Amazon. Because the burden of deriving or ascertaining the answer to this

28  Interrogatory based on these documents will be substantially the same for either party, PersonalWeb

1   identifies the following documents: PersonalWeb's P.R. 3-1 disclosures and P.R. 3-2 production

2   served on November 26, 2012 and PWEB_010502–011694.

3       In addition, PersonalWeb refers Amazon to the documents filed in the following cases from

4   the Eastern District of Texas: *PersonalWeb Technologies LLC v. NetApp, Inc*., 6:11-cv-00657-LED;

5   *PersonalWeb Technologies LLC v. Amazon Web Services LLC et al*, 6:11-cv-00658-LED;

6   *PersonalWeb Technologies LLC v. Caringo, Inc.*, 6:11-cv-00659-LED; *PersonalWeb Technologies*

7   *LLC v. EMC Corporation et al*, 6:11-cv-00660-LED; *PersonalWeb Technologies LLC v. Autonomy,*

8   *Inc.*, 6:11-cv-00683-LED; *PersonalWeb Technologies LLC v. Google, Inc. et al*, 6:11-cv-00656- LED;

9   PersonalWeb Technologies LLC v. NEC Corporation of America, Inc., 6:11-cv-00655-LED;

10  *PersonalWeb Technologies LLC v. Nexsan Technologies LLC*, 6:11-cv-00657-LED; *PersonalWeb*

11  *Technologies LLC et al v. Yahoo! Inc.*, 6:12-cv-00658-LED; *PersonalWeb Technologies LLC et al v.*

12  *Rackspace US, Inc. et al*, 6:12-cv-00659-LED; *PersonalWeb Technologies LLC et al v. Apple Inc.*,

13  6:12-cv-00660-LED; *PersonalWeb Technologies LLC et al v. International Business Machines*

14  *Corporation*, 6:12-cv-00661-LED; *PersonalWeb Technologies LLC et al v. Facebook Inc.*, 6:12-cv-

15  00662-LED; and *PersonalWeb Technologies LLC et al v. Microsoft Corporation*, 6:12-cv-00663-LED

16  and the following cases from the Northern District of California: *PersonalWeb Technologies LLC v.*

17  *NetApp, Inc*., 5:13-CV-01359-EJD; *PersonalWeb Technologies LLC v. EMC Corporation et al*, 5:13-

18  CV-01358-EJD; *PersonalWeb Technologies LLC v. Google, Inc. et al*, 13-cv-01317-EJD; and

19  *PersonalWeb Technologies LLC et al v. Facebook Inc*., 5:13-cv-01356-EJD.

20      PersonalWeb also refers Amazon to the following *inter partes* review proceedings: 2013-

21  00082 (U.S. Patent No. 5,978,791); 2013- 00083 (U.S. Patent No. 6,415,280); 2013-00084 (U.S.

22  Patent No. 7,945,544); 2013-00085 (U.S. Patent No. 7,945,539); 2013-00086 (U.S. Patent No.

23  7,949,662); and 2013-00087 (U.S. Patent No. 8,001,096).

24      To the extent the answer to this Interrogatory may be determined by documents other than the

25  above-referenced documents, PersonalWeb is still gathering information and will supplement this

26  answer, if necessary. Discovery is ongoing, and PersonalWeb has not yet completed its investigation

27  of the facts. PersonalWeb reserves the right to supplement and/or amend this response as further

28  information becomes available.

**PERSONALWEB RESPONSES TO AMAZON'S**          **CASE NO: 5:18-md-02834-BLF**
**FIRST SET OF PROPOUNDING INTERROGATORIES**          **CASE NO. 5:18-cv-00767-BLF**

4823-2505-9973, V. 3

1  **INTERROGATORY NO. 9:**

2       If you contend that you are entitled to an award of damages by way of any claim in this action,

3  state whether you believe it to be a reasonable royalty, lost profits, or another measure, provide you

4  calculation of damages, describe in detail the factual bases upon which you base your calculation, and

5  identify all persons with knowledge of such factual bases.

6  **RESPONSE TO INTERROGATORY NO. 9:**

7       In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

8  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

9  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

10  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent that it

11  purports to require the disclosure of information that is not within the knowledge, possession, custody,

12  or control of PersonalWeb. PersonalWeb further objects to this Interrogatory to the degree that it calls

13  for information protected by the attorney-client privilege or the work-product doctrine. Subject to the

14  foregoing objections, PersonalWeb responds as follows:

15       PersonalWeb is seeking damages in an amount adequate to compensate it for Amazon's

16  infringement of the Patents-in-Suit, but in no event less than a reasonable royalty pursuant to 35 U.S.C.

17  § 284. PersonalWeb incorporates by reference its upcoming initial damages and expert disclosures,

18  including upcoming reports and disclosures to be provided during expert discovery in accordance with

19  the schedule set forth by the Court. PersonalWeb expects that additional information concerning this

20  interrogatory will be provided during discovery.

21       Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

22  PersonalWeb reserves the right to supplement and/or amend this response as further information

23  becomes available and pending the completion of expert discovery

24  **INTERROGATORY NO. 10:**

25       If you contend that any of the patents-in-suit or any of its claims is entitled to a priority date

26  prior to the actual filing date of that patent, state all factual and legal bases for that contention,

27  including identifying which claims and patents you contend are entitled to which priority dates, which

28  documents support or refute your contentions and if any of the supporting documents are other patent

**PERSONALWEB RESPONSES TO AMAZON'S**        **CASE NO: 5:18-md-02834-BLF**
**FIRST SET OF PROPOUNDING INTERROGATORIES**     **CASE NO. 5:18-cv-00767-BLF**
4823-2505-9973, V. 3

1  applications or patents, identify where in those patents applications or patents there is written

2  description support to provide the contended priority date.

3  **RESPONSE TO INTERROGATORY NO. 10:**

4        In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

5  that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

6  together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

7  the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent it seeks

8  information related to the validity of the patents-in-suit. PersonalWeb's patents are presumed valid

9  under 35 U.S.C. §282, and Amazon bears the burden of establishing invalidity by clear and convincing

10  evidence. PersonalWeb further objects to this Interrogatory to the degree that it calls for information

11  protected by the attorney-client privilege or the work-product doctrine. Subject to the foregoing

12  objections, PersonalWeb responds as follows:

13        The priority date to which each of the Patents-in-Suit is entitled is April 11, 1995, the filing

14  date of U.S. Patent Application No. 08/425,160. PersonalWeb refers Amazon to the Patents-in-Suit

15  themselves, their file histories and the file histories of any patent application in which they claim

16  priority.

17        Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

18  PersonalWeb reserves the right to supplement and/or amend this response as further information

19  becomes available.

20        Respectfully submitted,

21  Dated:   January 22, 2019          STUBBS, ALDERTON & MARKILES, LLP

22

23            By: */s/ Michael A. Sherman*

24             Viviana Boero Hedrick
           Michael A. Sherman

25             Jeffrey F. Gersh
           Sandeep Seth

26             Wesley W. Monroe
           Stanley H. Thompson, Jr.

27             Attorneys for Plaintiffs

28

1
2

## VERIFICATION

3       I have read the foregoing document entitled **PERSONALWEB TECHNOLOGIES, LLC**
4 **RESPONSE TO AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.'S FIRST**
5 **SET OF PROPOUNDING INTERROGATORIES** and know its contents.

6       The matters stated in the foregoing document are true of my own knowledge, except as to
7 those matters which are stated on information and belief, and as to those matters, I believe them to
8 be true.

9       I declare under penalty of perjury under the laws of the United States of America that the
10 foregoing is true and correct.

11       Executed on January 22, 2019, at Westlake Village, California.

12
13
14       Michael Weiss
15
16
17
18
19
20
21
22
23
24
25
26
27
28

22

1

## PROOF OF SERVICE

2

I declare as follows:

3

4

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403.

5

6

7

8

On **January 22, 2019**, I served the documents described as: **PERSONALWEB TECHNOLOGIES, LLC RESPONSE TO AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.'S FIRST SET OF PROPOUNDING INTERROGATORIES** on the interested parties in this action as follows:

9

10

11

12

13

14

15

16

| _**Via Email**_ | **NDCA Case No. 5:18-cv-00767-BLF** |
|---|---|
| J. David Hadden | _Attorney for Amazon.com, Inc. and Amazon_ |
| dhadden@fenwick.com | _Web Services, Inc. and numerous defendants_ |
| c/o Phillip John Haack | _(see Service List)_ |
| phaack@fenwick.com | |
| c/o Saina Sason Shamilov | |
| sshamilov@fenwick.com | |
| c/o Ravi Ragavendra Ranganath | |
| rranganath@fenwick.com | |
| c/o Chieh Tung | |
| ctung@fenwick.com | |
| c/o Melanie Mayer | |
| mmayer@fenwick.com | |
| c/o Todd Gregorian | |
| tgregorian@fenwick.com | |

17

18

☐ **VIA MESSENGER:**  I caused the document(s) listed above to be delivered via messenger to the individual(s) as set forth above.

19

20

21

22

23

☐ **BY U.S. MAIL:  (SEE ATTACHED SERVICE LIST)** By depositing for collection and mailing in the ordinary course of business.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Sherman Oaks, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

24

25

☒ Pursuant to stipulation for email service reached with counsel of record, I served the above documents to the emails listed in the service caption above.  A true and correct copy of the transmittal will be produced if requested by any party or the court.

26

27

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **January 22, 2019**, at Sherman Oaks, California.

28

_/s/ Elizabeth Saal de Casas_
ELIZABETH SAAL DE CASAS

4823-2505-9973, V. 3

1   MICHAEL A. SHERMAN (SBN 94783)
    masherman@stubbsalderton.com
2   JEFFREY F. GERSH (SBN 87124)
    jgersh@stubbsalderton.com
3   SANDEEP SETH (SBN 195914)
    sseth@stubbsalderton.com
4   WESLEY W. MONROE (SBN 149211)
    wmonroe@stubbsalderton.com
5   STANLEY H. THOMPSON, JR. (SBN 198825)
    sthompson@stubbsalderton.com
6   VIVIANA BOERO HEDRICK (SBN 239359)
    vhedrick@stubbsalderton.com
7   **STUBBS, ALDERTON & MARKILES, LLP**
    15260 Ventura Blvd., 20th Floor
8   Sherman Oaks, CA 91403
    Telephone:    (818) 444-4500
9   Facsimile:    (818) 444-4520

10  **Attorneys for PersonalWeb Technologies, LLC**
    [Additional Attorneys listed below]

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

| | |
|---|---|
| IN RE PERSONAL WEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | **CASE NO.: 5:18-md-02834-BLF** |
| AMAZON.COM, INC., et al., | **Case No.: 5:18-cv-00767-BLF** |
| Plaintiffs, | **PERSONALWEB TECHNOLOGIES, LLC SUPPLEMENTAL RESPONSES TO AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.'S FIRST SET OF PROPOUNDING INTERROGATORIES (NO. 5)** |
| v. | |
| PERSONALWEB TECHNOLOGIES, LLC, et al., | |
| Defendants. | Trial Date:    March 16, 2020 |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | |
| Counterclaimants, | |
| v. | |
| AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., | |
| Counterdefendants. | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, PersonalWeb

2   Technologies, LLC ("PersonalWeb"), by and through counsel, hereby amends their responses to the

3   First Set of Interrogatories of Amazon.com, Inc. and Amazon Web Services, Inc. (collectively

4   "Amazon") as follows:

5   **<u>GENERAL OBJECTIONS</u>**

6       1.    The following general objections are stated with respect to each and every interrogatory

7   whether or not specifically identified in response thereto.  To the extent any of these general objections

8   are not raised in any particular response, PersonalWeb does not waive those objections.

9       2.    PersonalWeb objects to each and every instruction and interrogatory to the extent that

10  it seeks to impose duties beyond those required by the Federal Rules of Civil Procedure and the Local

11  Rules of this district.  PersonalWeb's response shall be made only in accordance with the applicable

12  rule(s).

13      3.    PersonalWeb objects to each and every instruction and interrogatory to the extent that

14  it seeks the disclosure of information protected by the attorney-client privilege, the attorney work-

15  product doctrine, or any other applicable privilege, immunity, or protection, as provided by any

16  applicable law.  PersonalWeb does not intend to disclose such privileged or protected information.

17      4.    PersonalWeb's inadvertent disclosure of any such information should not be deemed a

18  waiver of any privilege, immunity, or protection, and PersonalWeb expressly reserves the right to

19  object to the introduction at trial or to any other use of such information that may be inadvertently

20  disclosed.  PersonalWeb objects to discovery of attorney-client privileged communications after the

21  filing of this lawsuit and to discovery of work-product materials generated after the filing of this

22  lawsuit.  Per the parties' Joint Preliminary Pretrial Conference Statement, PersonalWeb will not

23  identify these privileged or protected materials in a privilege log.

24      5.    The responses given herein shall not be deemed to waive any claim of privilege or

25  immunity PersonalWeb may have as to any response, document, or thing, or any question or right of

26  objection as to authenticity, competency, relevancy, materiality, admissibility, or any other objection

27  PersonalWeb may have as to a demand for further response to these or other Interrogatories, or to any

28  objection to the use of such information, documents, or things in any other proceeding filed after the

1

**PERSONALWEB SUPPLEMENTAL RESPONSES**         **CASE NO: 5:18-md-02834-BLF**
**TO AMAZON'S FIRST SET OF PROPOUNDING**      **CASE NO. 5:18-cv-00767-BLF**
**INTERROGATORIES (NO. 5)**

4845-3260-1999, V. 2

1   production of such information or documents.

2       6.      PersonalWeb objects to each and every definition inasmuch as it purports to define

3   terms used by PersonalWeb in its responses.   PersonalWeb explicitly rejects any of Amazon's

4   purported definitions applying to PersonalWeb's responses, unless specifically stated otherwise.

5       7.      PersonalWeb objects to each and every definition and each and every interrogatory

6   including them as impermissibly vague, ambiguous, overly broad, and uncertain as the purportedly

7   defined terms are not consistently capitalized or otherwise indicated as referring to a use as a

8   purportedly defined term as compared to the use of the purportedly defined term in its ordinary usage.

9       8.      PersonalWeb objects to each and every definition and interrogatory as overly broad,

10  unduly burdensome, and not proportional to the needs of the case because they are not limited to a

11  specific geographic area. PersonalWeb will only provide discovery with respect to the United States.

12      9.      PersonalWeb objects to the definitions of "You," "Your," or "PersonalWeb" because

13  PersonalWeb has no knowledge of the entity "PersonalWeb Technologies LLC."  To the extent that

14  this definition is intended to refer to "PersonalWeb Technologies, LLC", PersonalWeb objects to the

15  definition as it seeks to broaden the scope of allowable discovery and seeks information that is not

16  within the possession, custody, or control of PersonalWeb, but is in the possession of third-parties and

17  non-parties to this lawsuit. PersonalWeb further objects to each and every interrogatory including

18  "PersonalWeb" as impermissibly vague, ambiguous, overly broad, and uncertain as Amazon has given

19  "PersonalWeb" different and inconsistent definitions in the preamble to the interrogatories and in the

20  "Definitions" section of the interrogatories. PersonalWeb further objects to the definition of these

21  terms to the extent it includes PersonalWeb attorneys and patent agents and seeks privileged and

22  attorney-work product information. PersonalWeb will interpret these terms as referring to

23  PersonalWeb Technologies, LLC only.

24      10.     PersonalWeb objects to the definitions of "Amazon" to the extent that it purports to

25  extend to "all predecessors, parents, subsidiaries, divisions, officers, employees, agents, and attorneys

26  of Amazon.com, Inc. and Amazon Web Services, Inc., and each person acting or purporting to act on

27  their behalf or under their control" as broadening the scope of allowable discovery and seeks

28  information that is not within the possession, custody, or control of PersonalWeb as PersonalWeb does

2

not know the identity of such persons and entities or the nature of their legal relationship to Amazon. PersonalWeb further objects to each and every interrogatory including "Amazon" as impermissibly vague, ambiguous, overly broad, and uncertain as Amazon has given "Amazon" different and inconsistent definitions in the preamble to the interrogatories and in the "Definitions" section of the interrogatories.

11. PersonalWeb objects to the definition of "patents-in-suit" because it refers to patents about which there is no case or controversy, particularly the '791 patent. None of PersonalWeb's operative complaints against individual website operators allege infringement of the '791 patent.

12. PersonalWeb objects to the definitions of "all documents" as overly broad, unduly burdensome, and not proportional to the needs of the case because to the extent that is imposes obligations on PersonalWeb beyond those in Fed. R. Civ. P. 326 and 33.

13. PersonalWeb objects to the definitions of "communication" as overly broad, unduly burdensome, and not proportional to the needs of the case because to the extent that is imposes obligations on PersonalWeb beyond those in Fed. R. Civ. P. 326 and 33.

14. PersonalWeb objects to the definitions of "Identify" as overly broad and unduly burdensome, vague and ambiguous, not proportional to the needs of this case, and failing to describe the information sought with reasonable particularity. PersonalWeb will interpret this term as "List the natural person, legal entity, or document.".

15. PersonalWeb objects to the interrogatories to the extent that they seek information equally available to Amazon in the public domain or that is already in the possession, custody, or control of Amazon.

16. PersonalWeb objects to the interrogatories to the extent that they seek information that is in the possession, custody, or control of parties over whom PersonalWeb has no control.

17. Nothing contained herein may be construed as an admission relative to the existence or non-existence of any information, and no response may be construed as an admission with respect to the relevancy or admissibility in evidence of any statement or characterization contained in the interrogatories or respecting the authenticity, competency, relevancy, materiality, or admissibility of any information, document or thing referenced by the interrogatories.

PERSONALWEB SUPPLEMENTAL RESPONSES          CASE NO: 5:18-md-02834-BLF
TO AMAZON'S FIRST SET OF PROPOUNDING          CASE NO. 5:18-cv-00767-BLF
INTERROGATORIES (NO. 5)

4845-3260-1999, V. 2

1    Discovery in this matter is ongoing and PersonalWeb reserves the right to revise or supplement

2    any response herein.

3    These General Objections are applicable to and are incorporated in each specific response

4    herein without further reference. The inclusion of specific objection(s) in response to any

5    interrogatories shall not be construed as a waiver of such objection(s), or any of these objections, in

6    any other response.

7    **SUPPLEMENTAL RESPONSES AND OBJECTIONS**

8    Subject to the foregoing General Objections, which are incorporated by reference as if set forth

9    fully in each and every response, PersonalWeb also specifically responds and objects to the

10   interrogatory as follows:

11   **INTERROGATORY NO. 5:**

12   For each claim of the patents-in-suit, identify, on an element-by-element basis, the portion or

13   portions of the specification that contains the written description of the alleged invention covered by

14   the claim, and of the manner and process of making and using it, in such full, clear, concise, and exact

15   terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly

16   connected, to make and use the same, and if you contend the specification sets forth the best mode

17   contemplated by any inventor(s) of carrying out his invention, identify the specific portions

18   of the specification setting forth the best mode of the claimed invention.

19   **ORIGINAL RESPONSE TO INTERROGATORY NO. 5:**

20   In addition to the General Objections, PersonalWeb objects to this Interrogatory on the grounds

21   that it is not a single interrogatory, but instead consists of multiple sub-parts, which, when taken

22   together with Amazon's other interrogatories, exceed the numbers of interrogatories permissible under

23   the Federal Rules of Civil Procedure. PersonalWeb objects to this Interrogatory to the extent it seeks

24   information related to the validity of the patents-in-suit. PersonalWeb's patents are presumed valid

25   under 35 U.S.C. §282, and Amazon bears the burden of establishing invalidity by clear and convincing

26   evidence. PersonalWeb further objects to this Interrogatory to the degree that it calls for information

27   protected by the attorney-client privilege or the work-product doctrine. Subject to the foregoing

28   objections, PersonalWeb responds as follows:

4

PERSONALWEB SUPPLEMENTAL RESPONSES          CASE NO: 5:18-md-02834-BLF
TO AMAZON'S FIRST SET OF PROPOUNDING          CASE NO. 5:18-cv-00767-BLF
INTERROGATORIES (NO. 5)

4845-3260-1999, V. 2

1    PersonalWeb refers Amazon to the Patents-in-Suit themselves.

2    Discovery is ongoing, and PersonalWeb has not yet completed its investigation of the facts.

3    Further, the claim construction process is ongoing.  PersonalWeb reserves the right to supplement

4    and/or amend this response as further information becomes available and pending the completion of

5    expert discovery.

6    **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

7    Based on PersonalWeb's investigation to date, and subject to PersonalWeb's objections, which

8    are incorporated into this response, PersonalWeb further responds to this Interrogatory as follows:

9    PersonalWeb hereby responds to this Interrogatory to the extent that Amazon has included

10   specific allegations of lack of adequate written description or lack of enablement in its Invalidity

11   Contentions served on December 24, 2018. As these Invalidity Contentions do not include any

12   contentions that there is a failure to set forth the best mode contemplated by any inventor(s) of carrying

13   out the invention, PersonalWeb maintains its objection that the patents are presumed valid and no

14   response regarding best mode is required.

15   Many of Amazon's Invalidity Contentions under § 112, ¶ 1 are conditioned by phrases such as

16   "to the extent that … is interpreted by PersonalWeb or construed by the Court as anything other than

17   …." PersonalWeb's responses to this interrogatory do not take such phrases into account as this

18   interrogatory does not ask for PersonalWeb's interpretations of claim terms and the Court has not yet

19   construed any claim terms.

20   This interrogatory asks PersonalWeb to identify portion(s) of the specification that contain the

21   written description of the alleged *invention* covered by the claim or enable the making or using of "the

22   same." The interrogatory also asks PersonalWeb to make such identifications on an "element-by-

23   element" basis, but an element of a claim is not the *invention* claimed. The specification as a whole

24   provides the written description and enablement of the *invention.* Nevertheless, PersonalWeb below

25   identifies portions of the specification that pertain, at least in general, to the claim terms identifies in

26   Amazon's Invalidity Contentions as failing to satisfy the written description or enablement

27   requirements of § 112, ¶ 1.

28

5

Subject to the foregoing:

In claim 10 of the '442 patent, "name for a data file" and "contents of the particular file" is, at least in general, described in and/or enabled by the disclosure at:[1] 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 10 of the '442 patent, "the name being based at least in part on a given function of the data" is, at least in general, described in the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 10 of the '442 patent, "determining whether a copy of the data file that is present on a at least one of said computers is an unauthorized copy or an unlicensed copy of the data file" is, at least in general, described in and/or enabled by the disclosure at: 4:13-16; 4:46-48; 8:60-62; 9:30-31; 10:1-63; 11:33-44; 14:39-45; 18:45-53; 20:23-27; 24:32-37; 24:52-25:9; 26:1-11; 31:4-32; 35:26-67; 37:5-16; 37:28-35; Figs. 1(b), 3, 5, 6, 8, 12, 21, 22, 26(a)-(b).

In claim 11 of the '442 patent, "allowing the file to be provided from one of the computers having an authorized or licensed copy of the file" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-27; 15:12-33; 16:1-63; 17:40- 18:35; 20:43-21:9; 21:38-60; 22:62-24:51; 24:65- 25:10; 28:3-29:9; 30:11-39; 31:4-32; 32:21-31; 32:54-37:35; Figs. 11, 14, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 27(a), 27(b), 28.

In claim 20 of the '310 patent, "controlling distribution of content" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 3:52-4:59; 8:60-62; 9:30- 31; 11:33-44; 14:1-27; 15:12-33; 16:1-63; 17:40- 18:35; 20:43-21:9; 21:38-60; 22:62-24:51; 24:65- 25:10; 28:3-29:9; 30:11-39; 31:4-32; 32:21-31; 32:54- 37:35; Figs. 11, 14, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 27(a), 27(b), 28.

In claim 20 of the '310 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-

---

[1] Citations herein are to the specification of the '310 Patent.

11:45; 12:21-51; 13:10-41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 20 of the '310 patent, "data comprising the particular data item" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 20 of the '310 patent, "the content-dependent name being based at least in part on a function of at least some of the data comprising the particular data item" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 20 of the '310 patent, "if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed by the at least one other computer," is, at least in general, described in and/or enabled by the disclosure at: Abstract; 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-27; 15:12-33; 16:1-63; 17:40-18:35; 20:43-21:9; 21:38-60; 22:62-24:51; 24:65-25:10; 28:3-29:9; 30:11-39; 31:4-32; 32:21-31; 32:54-37:35; Figs. 11, 14, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 27(a), 27(b), 28.

In claim 20 of the '310 patent, "to be provided to or accessed by" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-27; 15:12-33; 16:1-63; 17:40-18:35; 20:43-21:9; 21:38-60; 22:62-24:51; 24:65-25:10; 28:3-29:9; 30:11-39; 31:4-32; 32:21-31; 32:54-37:35; Figs. 11, 14, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 27(a), 27(b), 28.

In claim 69 of the '310 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 69 of the '310 patent, "data in the data item" is, at least in general, described in and/or enabled by the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45;

12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 69 of the '310 patent, "the name being based at least in part on a given function of the data in the data item" that Amazon alleges lacks adequate written description does not appear in claim 69. To the extent that Amazon intended to refer to "the content-dependent name being based at least in part on a function of the data in the data item," this is, at least in general, described in the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 69 of the '310 patent, "wherein the data used by the function to determine the content-dependent name comprises at least some of the contents of the data item" is, at least in general, described in the disclosure at: Abstract; 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 69 of the '310 patent, "a plurality of values" is, at least in general, described in and/or enabled by the disclosure at: 8:27-35; 14:1-31; 15:12-33; 15:34-16:63; 18:12-59; ; 20:43-21:9; ; 20:43-21:9; 21:15-60; 22:61-23:67; 30:11-39; 31:3-32; 32:1-20; 33:11-28; 34:13-35; 35:12-38; 35:45-63; 37:17-27; Figs. 1(b), 14, 15, 16(a), 16(b), 17(a), 17(b), 21, 22, 27(a), 27(b), 28.

In claim 69 of the '310 patent, "to determine if access to the data item is authorized or unauthorized based on whether or not the content-dependent name corresponds to at least one of said plurality of values," is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 69 of the '310 patent, "based on whether or not it is determined that access to the data item is authorized or unauthorized to allow the data item to be provided to or accessed by the second computer if it is not determined that access to the data item is unauthorize" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31;

32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 69 of the '310 patent, "to be provided to or accessed by" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 25 of the '420 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "particular sequence of bits" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "determining … at least in part by applying a particular function to at least some of the particular sequence of bits" is, at least in general, described in the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "corresponds to one of a plurality of identifiers" is, at least in general, described in and/or enabled by the disclosure at: 8:27-35; 14:1-31; 15:12-33; 15:34-16:63; 18:12-59; ; 20:43-21:9; ; 20:43-21:9; 21:15-60; 22:61-23:67; 30:11-39; 31:3-32; 32:1-20; 33:11-28; 34:13-35; 35:12-38; 35:45-63; 37:17-27; Figs. 1(b), 14, 15, 16(a), 16(b), 17(a), 17(b), 21, 22, 27(a), 27(b), 28.

In claim 25 of the '420 patent, "plurality of identifiers" is, at least in general, described in and/or enabled by the disclosure at: : 8:27-35; 14:1-31; 15:12-33; 15:34-16:63; 18:12-59; ; 20:43-21:9; ; 20:43-21:9; 21:15-60; 22:61-23:67; 30:11-39; 31:3-32; 32:1-20; 33:11-28; 34:13-35; 35:12-38; 35:45-63; 37:17-27; Figs. 1(b), 14, 15, 16(a), 16(b), 17(a), 17(b), 21, 22, 27(a), 27(b), 28.

9

PERSONALWEB SUPPLEMENTAL RESPONSES          CASE NO: 5:18-md-02834-BLF
TO AMAZON'S FIRST SET OF PROPOUNDING          CASE NO. 5:18-cv-00767-BLF
INTERROGATORIES (NO. 5)

4845-3260-1999, V. 2

In claim 25 of the '420 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "data that comprise [sic] the contents of a corresponding one of the plurality of data items" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "each identifier of said plurality of identifiers being based, at least in part, on a first given function of the data that comprise the contents of a corresponding one of the plurality of data items" is, at least in general, described in the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 25 of the '420 patent, "selectively allowing a copy of the particular sequence of bits to be provided to or accessed by …" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 25 of the '420 patent, "wherein a copy of the sequence of bits is not to be provided or accessed without authorization" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 25 of the '420 patent, "corresponds to one of the plurality of identifiers" is, at least in general, described in and/or enabled by the disclosure at: 8:27-35; 14:1-31; 15:12-33; 15:34-16:63; 18:12-59; ; 20:43-21:9; ; 20:43-21:9; 21:15-60; 22:61-23:67; 30:11-39; 31:3-32; 32:1-20; 33:11-28; 34:13-35; 35:12-38; 35:45-63; 37:17-27; Figs. 1(b), 14, 15, 16(a), 16(b), 17(a), 17(b), 21, 22, 27(a), 27(b), 28.

In claim 29 of the '420 patent, "wherein the first content-dependent name for the particular sequence of bits comprises a digital fingerprint of the particular sequence of bits" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 30 of the '420 patent, "True Name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 32 of the '420 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 34 of the '420 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 35 of the '420 patent, "content-dependent name" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 166 of the '420 patent, "content-dependent digital identifiers" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 166 of the '420 patent, "particular sequence of bits of the particular data item" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 166 of the '420 patent, "content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item" is, at least in general, described in by the disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

In claim 166 of the '420 patent, "selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 166 of the '420 patent, "wherein the data item is not to be made available for access or provided without authorization" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 166 of the '420 patent, "corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items" is, at least in general, described in and/or enabled by the disclosure at: 3:52-4:59; 8:60-62; 9:30-31; 11:33-44; 14:1-31; 15:12-33; 15:34-16:63; 17:40-18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(b), 11, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b), 28.

In claim 166 of the '420 patent, "content-dependent digital identifiers" and "plurality of identifiers" is, at least in general, described in and/or enabled by the disclosure at: 1:53-60; 2:26-31; 3:52-4:59; 6:12-17; 8:53-62; 9:30-31; 10:65-11:45; 12:21-51; 13:10- 41; 14:1-31; 14:50-16:63; 17:40- 18:59; 20:43-21:9; 21:38-60; 22:61-24:51; 30:11-39; 31:3-32; 32:1-31; 32:54- 37:35; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 11, 13, 14, 15, 16(a), 16(b), 17(a), 17(b), 19(a), 19(b), 20, 21, 22, 27(a), 27(b),

1   28.

2      In claim 166 of the '420 patent, "identifiers in each said database being based, at least in part,

3   on at least some of the data in a corresponding data item" is, at least in general, described in the

4   disclosure at: 1:53-60; 2:26-31; 3:55-58; 6:12-17; 8:53-62; 10:65-11:45; 12:21-51; 13:10- 41; 14:50-

5   15:33; 24:1-30; 35:48-63; 37:23-27; Figs. 1(a), 1(b), 4, 7, 8, 9, 10(a), 10(b), 13, 14.

6

7                                          Respectfully submitted,

8   Dated:    April 23, 2019              STUBBS, ALDERTON & MARKILES, LLP

9

10                                        By:    /s/ Wesley W. Monroe

11                                              Viviana Boero Hedrick
                                                Michael A. Sherman
12                                              Jeffrey F. Gersh
                                                Sandeep Seth
13                                              Wesley W. Monroe
                                                Stanley H. Thompson, Jr.
14                                              Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4845-3260-1999, V. 2

1

### VERIFICATION

2    I have read the foregoing document entitled **PERSONALWEB TECHNOLOGIES, LLC**

3    **SUPPLEMENTAL RESPONSES TO AMAZON.COM, INC. AND AMAZON WEB**

4    **SERVICES, INC.'S FIRST SET OF PROPOUNDING INTERROGATORIES (NO. 5)** and

5    know its contents.

6    The matters stated in the foregoing document are true of my own knowledge, except as to

7    those matters which are stated on information and belief, and as to those matters, I believe them to

8    be true.

9    I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.

11   Executed on April 23, 2019, at Westlake Village, California.

12

13

14   _____
     Michael Weiss

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I declare as follows:

3

4      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403.

5

6      On **April 23, 2019**, I served the documents described as: **PERSONALWEB TECHNOLOGIES, LLC SUPPLEMENTAL RESPONSES TO AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.'S FIRST SET OF PROPOUNDING INTERROGATORIES (NO. 5)** on the interested parties in this action as follows:

7

8

| ***Via Email*** | **NDCA Case No. 5:18-cv-00767-BLF** |
|---|---|
| J. David Hadden | *Attorney for Amazon.com, Inc. and Amazon* |
| dhadden@fenwick.com | *Web Services, Inc. and numerous defendants* |
| c/o Phillip John Haack | *(see Service List)* |
| phaack@fenwick.com | |
| c/o Saina Sason Shamilov | |
| sshamilov@fenwick.com | |
| c/o Ravi Ragavendra Ranganath | |
| rranganath@fenwick.com | |
| c/o Chieh Tung | |
| ctung@fenwick.com | |
| c/o Melanie Mayer | |
| mmayer@fenwick.com | |
| c/o Todd Gregorian | |
| tgregorian@fenwick.com | |

9

10

11

12

13

14

15

16

17

18      ☐   **VIA MESSENGER:**  I caused the document(s) listed above to be delivered via messenger to the individual(s) as set forth above.

19      ☐   **BY U.S. MAIL:  (SEE ATTACHED SERVICE LIST)** By depositing for collection and mailing in the ordinary course of business.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Sherman Oaks, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

20

21

22

23

24      ☒   Pursuant to stipulation for email service reached with counsel of record, I served the above documents to the emails listed in the service caption above.  A true and correct copy of the transmittal will be produced if requested by any party or the court.

25

26      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **April 23, 2019**, at Sherman Oaks, California.

27

28

/s/ *Elizabeth Saal de Casas*
ELIZABETH SAAL DE CASAS

15

PERSONALWEB SUPPLEMENTAL RESPONSES
TO AMAZON'S FIRST SET OF PROPOUNDING
INTERROGATORIES (NO. 5)

CASE NO: 5:18-md-02834-BLF
CASE NO. 5:18-cv-00767-BLF

4845-3260-1999, V. 2