J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:      650.938.5200

Counsel for AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONAL WEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No.: 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., <br><br> Plaintiffs. <br><br> v. <br><br> PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Defendants. | Case No. 5:18-cv-00767-BLF <br><br> **NOTICE OF MOTION AND MOTION OF AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC. FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** <br><br> Date: November 15, 2019 <br> Time: 9:00 a.m. <br> Dept: Courtroom 3, 5th Floor <br> Judge: Hon. Beth L. Freeman <br> Trial Date: March 16, 2020 |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Counterclaimants, <br><br> v. <br><br> AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., <br><br> Counterdefendants. | |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ------------------------- 1

MEMORANDUM OF POINTS AND AUTHORITIES ----------------------------------------- 1

I.    INTRODUCTION ------------------------------------------------------------------------ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ------------------------------------- 2

III.    ARGUMENT ---------------------------------------------------------------------------- 5

    A.    PersonalWeb Failed to Prosecute Its Claims on the '544 and '791 patents --------- 5

    B.    PersonalWeb Failed to Put Forth Any Evidence to Meet Its Burden of Proof of Infringement on the Remaining Three Patents ------------------------------- 6

    C.    No Evidence Can Show that Amazon Technology Infringes Any of the Asserted Claims ------------------------------------------------------------------- 8

    D.    PersonalWeb Lacks Standing to Assert Any Claim Against CloudFront Based on the Patents-in-Suit ------------------------------------------------------- 13

CONCLUSION ------------------------------------------------------------------------------ 14

# TABLE OF AUTHORITIES

**Cases:**                                                                                   **Page(s):**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................... 6

*AquaTex Indus., Inc. v. Techniche Sols.*,
   479 F.3d 1320 (Fed. Cir. 2007) ................................................................... 7

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ................................................................... 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................... 6

*Centricut, LLC v. Esab Grp., Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004) ................................................................... 8

*Forest Labs., Inc. v. Abbott Labs.*,
   239 F.3d 1305 (Fed. Cir. 2001) ................................................................... 8

*Implicit Networks Inc. v. F5 Networks Inc.*,
   No. C10-3365 SI, C 10-4234 SI, 2013 WL 1007250 (N.D. Cal. Mar. 13, 2013) ........................................................................................................... 7

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) ................................................................... 7

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
   No. 5:13-cv-01708 HRL, 2014 WL 3074296 (N.D. Cal. July 3, 2014) ....... 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................... 6

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   571 U.S. 191 (2014) .................................................................................... 6

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ................................................................... 6

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ................................................................... 6

*PersonalWeb Techs., LLC v. Apple, Inc.*,
   917 F.3d 1376 (Fed. Cir. 2019) ................................................................. 13

*PersonalWeb Techs., LLC v. IBM*,
   No. 16-cv-01266-EJD, 2017 WL 2180980 (N.D. Cal. May 9, 2017) .......... 7

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on November 15, 2019, at 9:00 a.m., at the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, in the courtroom of the Honorable Beth L. Freeman, Amazon.com, Inc., and Amazon Web Services, Inc. (collectively "Amazon") will and hereby do move the Court under Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment in favor of Amazon and against PersonalWeb Technologies, LLC and Level 3 Communications, LLC (collectively "PersonalWeb") because (1) Amazon does not infringe the asserted claims of U.S. Patent No. 5,978,791 ("the '791 patent"), 6,928,442 ("the '442 patent"), U.S. Patent No. 7,802,310 ("the '310 patent"), U.S. Patent No. 7,945,544 ("the '544 patent"), and U.S. Patent No. 8,099,420 ("the '420 patent") (collectively, the "patents-in-suit") and (2) PersonalWeb lacks standing to assert any claim of the patents-in-suit against Amazon CloudFront.

Amazon bases its motion on this notice, the accompanying memorandum of points and authorities, the supporting declaration of Saina S. Shamilov, all pleadings and documents on file in this action, and such other materials or argument as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Amazon seeks a declaration that it does not infringe five PersonalWeb patents. While PersonalWeb denied Amazon's declaratory judgment claims and asserted counterclaims of infringement, it failed to produce any expert opinion in support of its positions. Having thus failed to meet its burden of production, PersonalWeb cannot, as a matter of law, meet its burden of persuasion. This is fatal to its case.

But even if PersonalWeb had tried to muster expert testimony to support its counterclaims, its case would still be fatally flawed. It abandoned its infringement allegations for two of the patents-in-suit when it omitted them from its infringement contentions. And the remaining three patents are directed to policing access to licensed content, which the accused Amazon technology, the CloudFront content delivery network, does not do, whether on its own or in combination with

1  any other technology. Given this, Amazon's technology does not meet multiple limitations of the
2  asserted claims, and the Court should enter summary judgment of noninfringement. PersonalWeb
3  also lacks standing to assert claims against CloudFront because Level 3 Communications, LLC has
4  the exclusive right to use and license the patents-in-suit in the field of content delivery networks.

5  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

6  In January 2018, PersonalWeb initiated a widespread patent litigation campaign asserting
7  that Amazon's customers infringe related patents relating to methods of governing access to con-
8  tent. Shortly thereafter, to protect its customers and technology, Amazon filed an action for declar-
9  atory judgment of noninfringement of the five patents-in-suit and PersonalWeb responded by bring-
10 ing infringement counterclaims against Amazon on four of the five patents and denying that Ama-
11 zon does not infringe the fifth patent. (Dkt. 257.) At PersonalWeb's request, the United States
12 Judicial Panel on Multidistrict Litigation centralized the declaratory judgment action and the cus-
13 tomer cases before this Court. (Dkt. 1.) To promote judicial efficiency, the Court stayed all cus-
14 tomer cases pending resolution of the declaratory judgment action and a representative customer
15 case against Twitch Interactive, Inc. *PersonalWeb Techs., LLC v. Twitch Interactive, Inc.*, No.
16 5:18-cv-05619-BLF (N.D. Cal.); (Dkt. 313.)

17 On October 29, 2018, PersonalWeb served its infringement contentions. In those conten-
18 tions, PersonalWeb did not allege infringement of the '791 patent or the '544 patent. It alleged that
19 Amazon's S3 and/or CloudFront Content Delivery Network infringes the '442, '310, and '420 pa-
20 tents because each can respond to conditional GET requests with ETags as specified in the HTTP
21 protocol. On March 13, 2019, the Court granted summary judgment finding that PersonalWeb's
22 claims against S3 are precluded. (Dkt. 381.) PersonalWeb's claims against CloudFront remained.

23 The parties do not dispute that the HTTP protocol governs communications between web
24 browsers and web servers on the World Wide Web; all websites comply with it. (Shamilov Decl.,
25 Ex. 2 (Weissman Rep.) at ¶ 26; Shamilov Decl., Ex. 1 (de la Iglesia Rep.) at ¶ 18; Shamilov Decl.,
26 Ex. 3 (RFC 2616, HTTP 1.1 standard) at §§ 1.1, 1.3.) As shown by the de la Iglesia expert report
27 in the Twitch case, the parties also do not dispute how the HTTP protocol functions. (Amazon cites
28 Mr. de la Iglesia's Twitch report at various points in this brief to show the parties' agreement about

FENWICK & WEST LLP
ATTORNEYS AT LAW

these functions.)

HTTP communications consist of messages sent back and forth between a client, *e.g.*, a web browser, and a web server. (*Id.*) Request messages include a "method" specifying the action for the server to perform and a "resource" on which the action is performed. (Weissman Rep. at ¶ 30; de la Iglesia Rep. at ¶ 22.) For example, to display the Amazon website, a web browser will send an HTTP request message to Amazon servers specifying the "method" as "GET" and the "resource" as "www.amazon.com." (Weissman Rep. at ¶ 29; de la Iglesia Rep. at ¶ 22.) The resource is identified in the request by a URL (Uniform Resource Locator) or a URI (Uniform Resource Identifier), such as www.amazon.com; both are specified in the HTTP protocol and are akin to file pathnames. (*See* Weissman Rep. at ¶ 27; de la Iglesia Rep. at ¶ 20 (citing RFC 2616 at § 3.2, pp. 14-15).) The server processes the request and returns a response—in this example, Amazon's homepage. (*See* Weissman Rep. at ¶ 33; de la Iglesia Rep. at ¶ 22.)

The HTTP protocol specifies that web browsers can store copies of resources locally in their cache. (Weissman Rep. at ¶¶ 37, 39; de la Iglesia Rep. at ¶ 25 (citing RFC 2616 at § 13, p. 47).) As used in reference to web browsers, a "cache" refers to a resource downloaded from an origin server and stored locally on the user's computer. By storing a resource, a browser can serve future requests for the same resource faster by retrieving the resource from local storage instead of downloading it anew. (Weissman Rep. at ¶¶ 40, 95; de la Iglesia Rep. at ¶ 25.) When a web browser first requests a resource (*e.g.*, an image or other object) from a server, the server sends a message that includes the resource, and may in some cases include an ETag corresponding to the resource, and a "max-age" or "expires" header. (Weissman Rep. at ¶ 40.) According to the HTTP protocol, the ETag uniquely identifies a version of the resource. (Weissman Rep. at ¶ 43 (citing RFC 2616 at § 3.11); de la Iglesia Rep. at ¶ 28.) The accompanying header tells the web browser the amount of time (*e.g.*, number of seconds) after the resource is requested that the resource is considered fresh or current. (*Id.*) If, based on the header, the resource has not expired, the web browser uses the version of the resource stored locally in cache without making another request to the origin server. (*Id.*)

If, however, the "max-age" has been exceeded, a web browser checks whether the locally-

FENWICK & WEST LLP
ATTORNEYS AT LAW

stored cache copy is current before displaying it; to accomplish this, the HTTP protocol specifies use of a conditional GET request with an If-None-Match header. (Weissman Rep. at ¶¶ 45-46; de la Iglesia Rep. at ¶ 32 (citing RFC 2616 at § 14.26, pp. 81-82.) This conditional GET request asks the server whether the locally-stored copy has changed, requesting that the origin server compare the ETag of the resource stored locally in the user's cache with the ETag of the current version of the resource on the origin server. (Weissman Rep. at ¶¶ 42, 45-46; de la Iglesia Rep. at ¶¶ 32-33.) The server will respond to a conditional GET request by sending one of two messages: (1) a 304 Not Modified message, if the two ETags matched, telling the web browser that the locally-stored cached copy is current; or (2) a 200 OK message, if the two ETags did not match, telling the browser that the server has a new version of the resource, and including a copy of that new version. (*Id.*)

Neither the HTTP protocol nor Amazon's servers prevent access to old resources stored locally in cache after those resources are no longer current. (Weissman Rep. at ¶¶ 53-54.) In fact, the HTTP protocol specifies that a user can view cached content, whether it is stale or not, by hitting the "back" button in the browser or by viewing the browser's history. (Weissman Rep. at ¶¶ 56, 95; RFC 2616 at § 13.13 ("User agents often have history mechanisms, such as 'Back' buttons and history lists, which can be used to redisplay an entity retrieved earlier in a session. . . . [A] history mechanism is meant to show exactly what the user saw at the time when the resource was retrieved.").) The HTTP protocol also does not specify that the ETag be implemented in a particular way. (Weissman Rep. at ¶¶ 43, 65, 113; de la Iglesia Rep. at ¶¶ 28, 33, 47.)

On August 16, 2019, the Court issued a claim construction order. (Dkt. 485). In that order, the Court explained that the "patents-in-suit generally relate to methods for identifying data items in a data processing system." (*Id*. at 2.) The patents' "(shared) specification" states that prior art systems suffered from several problems, including that "'the same file name in two different folders may refer to different data items, and two different file names in the same folder may refer to the same data item.'" (*Id*.) To solve this problem, the patents "produce a content-based 'True Name' identifier for a file or other particular data item, in an effort to ensure that identical file names refer to the same data, and conversely, that different file names refer to different data." (*Id*.) In other words, as the Court acknowledged, "the invention provides an identity for a given data item that

'depends on all of the data in the data item and only on the data in the data item'" and computes the data item's True Name using a hash function. (*Id.*) According to the patents, True Names may be used to police access to licensed data items. To do so, the specification "describes a 'license table' that 'records a relationship between a licensable data item and the user licensed to have access to it.'" (*Id.* at 8.) "Each record in the license table includes . . . a 'True Name'—the 'True Name' of a data item subject to license validation' . . . and [] a 'licensee'—the 'identity of a user authorized to have access to this object.'" (*Id.*) The specification describes a tracking "'mechanism to ensure that licensed files are not used by unauthorized parties." (*Id.*) Accordingly, the Court construed the claim term "unauthorized or unlicensed" as "not compliant with a valid license" and the claim term "authorization" as "a valid license." (Dkt. 485 at 12, 33.)

On August 23, 2019, PersonalWeb served an expert report on infringement. In that report, PersonalWeb's expert, Mr. Erik de la Iglesia, addresses PersonalWeb's allegations against Twitch. He does not address PersonalWeb's infringement contentions against Amazon and does not opine, analyze, or conclude that any of Amazon's technology infringes any of the patents-in-suit. (*See generally* de la Iglesia Rep.) The report's caption does not identify the Amazon's declaratory judgment action. PersonalWeb served no other report on infringement

On October 2, 2019, pursuant to Rule 54(b), PersonalWeb filed a motion seeking a partial final judgment of noninfringement in favor of Amazon "in order to seek appellate review of this Court's Claim Construction Order" and "the forthcoming entry of final judgment of non-infringement." (Dkt. 538 at 2-3.) The motion remains pending.

### III. ARGUMENT

Amazon requests the Court enter summary judgment on the grounds set forth below. The Court's reasoned opinion explaining the bases for its ruling and judgment will—unlike the judgment requested by PersonalWeb in its Rule 54(b) motion—help clarify the scope of appeal and any further proceedings in the event of a remand.

#### A. PersonalWeb Failed to Prosecute Its Claims on the '544 and '791 patents.

PersonalWeb failed to include any infringement allegations for the '544 and '791 patents in its infringement contentions as required by the patent local rules of this district. (*See generally*

Shamilov Decl., Ex. 5 (Inf. Cont.).) This failure entitles Amazon to summary judgment of noninfringement and the Court should enter one in Amazon's favor. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369-70 (Fed. Cir. 2006) (affirming grant of summary judgment for non-infringement where patentee's infringement theory was not disclosed in accordance with N.D. Cal. patent local rules).

### B.  PersonalWeb Failed to Put Forth Any Evidence to Meet Its Burden of Proof of Infringement on the Remaining Three Patents.

For the remaining three patents in this case, PersonalWeb failed to put forth any evidence of infringement and it thus cannot overcome summary judgment of noninfringement on those patents. Indeed, when a party has failed to "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," the Court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This is no less true in patent cases: "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). PersonalWeb bears the burden of proof on infringement, both with respect to its infringement counterclaims and Amazon's declaratory judgment claims of noninfringement. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198-99 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee. . . . [I]n a licensee's declaratory judgment action, the burden of proving infringement should remain with the patentee.").

To meet its burden, PersonalWeb must put forth enough evidence to enable a reasonable jury to reach a decision in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."). And that in turn requires expert testimony establishing that the accused products meet each limitation of each asserted claim:

> To satisfy the summary judgment standard, a patentee's expert must

> set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant.

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (affirming summary judgment of noninfringement where patentee's expert did not sufficiently identify the claim limitation in the accused device); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (same); *see also IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708 HRL, 2014 WL 3074296, at *3 (N.D. Cal. July 3, 2014) (attorney argument in lieu of evidence "entirely insufficient to create a material issue of fact") (citing *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995)).

PersonalWeb has no such evidence. The de la Iglesia report in the Twitch case, served at the deadline for PersonalWeb to disclose all expert opinion testimony on infringement, does not assert any infringement theory against Amazon. Without such evidence, the factfinder lacks any technical guidance to understand PersonalWeb's purported mapping of patent claims to Amazon's technology, and has no foundation on which to base a decision in PersonalWeb's favor. *See, e.g., AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007) ("Even where literal infringement is involved, expert infringement testimony is generally required in cases involving complex technology."); *Implicit Networks Inc. v. F5 Networks Inc.*, No. C10-3365 SI, C 10-4234 SI, 2013 WL 1007250, at *13 (N.D. Cal. Mar. 13, 2013) (stating that the plaintiff had a burden in a "technically complex" case "to show by expert testimony how the accused products actually work"); *PersonalWeb Techs., LLC v. IBM*, No. 16-cv-01266-EJD, 2017 WL 2180980, at *19-20 (N.D. Cal. May 9, 2017) ("[B]ecause PersonalWeb's expert report only covers claim 166 of the '420 [*sic*], it has no evidence upon which it can rely to prove infringement as to these other claims. Accordingly, IBM is entitled to summary judgment of noninfringement for those claims.").

For its part, Amazon served the expert report of Dr. Jon Weissman establishing that Amazon and its technology do not infringe the three patents that PersonalWeb included in its infringement contentions. "[W]here the accused infringer offers expert testimony negating infringement, the

patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004). Accordingly, there can be no genuine dispute as to any material fact with respect to noninfringement by the Amazon technology and the Court should enter summary judgment of noninfringement on Amazon's declaratory judgment claims.

> C.  **No Evidence Can Show that Amazon Technology Infringes Any of the Asserted Claims.**

Even if PersonalWeb put forth expert testimony to attempt to support its counterclaims of infringement, it still would not be able to meet its burden of proof. To show infringement, PersonalWeb must show that the Amazon CloudFront, alone or in combination with Amazon's S3, as it alleged in its infringement contentions, meets each and every limitation of the asserted claims. *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) ("A patentee claiming infringement must present proof that the accused product meets each and every claim limitation."). It cannot do so for any of the three patents it included in its infringement contentions.

***There is no determination of license compliance.*** As construed by the Court, the asserted claims require a determination that a data item complies with a valid license before permitting access to that data item. For example, asserted claim 20 of the '310 patent requires:

> (A) permitting the content to be provided to or accessed by the at least one other computer if it is not determined that the content is unauthorized or unlicensed, otherwise, (B) if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed by the at least one other computer.

Likewise, claim 69 of the '310 patent recites a determination of whether "access to the data item is authorized or unauthorized." Asserted independent claims 25 and 166 of the '420 patent similarly require "selectively allowing a copy of the particular sequence of bits to be provided to or accessed by . . . , wherein a copy of the sequence of bits is not to be provided or accessed without authorization" and "selectively permit the particular data item to be made available for access and to be provided to or accessed by . . . , wherein the data item is not to be made available for access or provided without authorization," respectively. The Court construed "unauthorized or unlicensed"

FENWICK & WEST LLP
ATTORNEYS AT LAW

in claim 20 of the '310 patent to mean "not compliant with a valid license," and "authorization" in independent claims 25 and 166 of the '420 patent to mean "a valid license." (Dkt. 485 at 6, 12.)

Asserted independent claim 10 of the '442 patent similarly requires "determining whether a copy of the data file that is present on a at least one of said computers is an unauthorized copy or an unlicensed copy of the data file" and the parties do not dispute that the Court's constructions of "unauthorized or unlicensed" and "authorization" apply to the asserted claims of the '442 patent. (*See* de la Iglesia Rep. at ¶ 63 (acknowledging that the Court's constructions apply to the asserted claims of the '442 patent).) Accordingly, as construed by the Court, all asserted claims require either a determination of compliance with a valid license or denial of access to a data item without a valid license.

In its infringement contentions, PersonalWeb has not identified any license, a determination of compliance with a valid license, or refusal to grant access without a valid license by CloudFront, alone or in combination with S3, or the HTTP protocol that CloudFront supports. (*See generally* Inf. Cont.; Weissman Rep. at ¶ 87.) Nor can PersonalWeb identify such a license determination, as the Amazon servers do not check for any license when responding to conditional GET requests. (*Id.* at ¶ 94.) The servers merely compare the ETag in the request with the ETag of the requested resources at the server to determine if the content of the resource has changed. (Weissman Rep. at ¶¶ 45-46.) They do not determine whether the content complies with any license.

**There is no permitting content to be provided or accessed.** Claim 20 of the '310 patent requires "permitting" or "not permitting the content to be provided to or accessed" after the determination of whether the content "is unauthorized or unlicensed." Claim 25 of the '420 patent similarly recites "wherein a copy of the sequence of bits is not to be provided or accessed without authorization," and claim 166 of the '420 patent recites "selectively permit the particular data item to be made available for access and to be provided to or accessed . . . wherein the data item is not to be made available for access or provided without authorization." Claim 11 of the '442 patent similarly requires "allowing the file to be provided from one of the computers having an authorized or licensed copy of the file." As Dr. Weissman explains in his report, CloudFront, alone or in combination with S3, does not prohibit or grant access to content already cached by a web browser,

whether based on a determination of compliance with a license or otherwise.  (Weissman Rep. at ¶¶ 64, 94, 100, 104).

In its infringement contentions, PersonalWeb's infringement theory was as follows.  A web browser with a locally cached object sends to a web server a conditional If Not Modified Get request with an ETag of the locally stored object.  (*See, e.g.*, Inf. Cont. Ex. A Claim 20 at 3, Ex. B at 2-3, Ex. C Claim 25 at 3.)  The web server compares the ETag in the GET request with the ETag associated with the version of the object stored at the server.  (*See, e.g.*, Inf. Cont. Ex. A Claim 20 at 6, Ex. B at 3, Ex. C Claim 25 at 3.)  If the ETags do not match, the server responds with a 304 Not Modified message indicating to the web browser that the version stored there is still current.  (*See, e.g.*, Inf. Cont. Ex. A Claim 20 at 6, Ex. C Claim 25 at 4.)  PersonalWeb argues that this 304 Not Modified response *permits* the web browser to use the locally stored resource.  (*See, e.g.*, Inf. Cont. Ex. A Claim 20 at 6, Ex. C Claim 25 at 4.)  If the ETags don't match and the web server sends the 200 OK message with the new version of the resource, PersonalWeb argues that in this case the web server *prohibits* the web browser from using the locally cached copy of the object.  (*See, e.g.*, Inf. Cont. Ex. A Claim 20 at 6, Ex. B at 4, Ex. C Claim 25 at 4.)

This is wrong.  Neither the CloudFront servers nor the HTTP protocol prohibits or prevents a user from accessing and viewing old expired content previously cached by his or her browser.  (*See* Weissman Rep. at ¶¶ 96, 100.)  Indeed, the HTTP standard itself specifies that the web browser *must* display expired content when, for example, the user requests to see the browser history or uses the browser's "back" button.  (*See* Weissman Rep. at ¶¶ 56, 100; RFC 2616 at § 13.13 (back buttons and history lists "can be used to redisplay an entity retrieved earlier in a session . . . [which should be] exactly what the user saw at the time when the resource was retrieved).)  According to the standard, "[i]f the entity is still in storage, a history mechanism SHOULD display it even if the entity has expired." (*Id.*)  Amazon does not override these requirements of the standard nor does it prevent or prohibit such access.  (*See* Weissman Rep. at ¶¶ 53-54.)

This is because, but for certain authentication features not at issue in this case, the HTTP protocol, which CloudFront implements and on which PersonalWeb bases its infringement allegations, assumes that content requested from a server is freely distributable to any requesting browser.

(Weissman Rep. at ¶¶ 50, 91.) Accordingly, neither HTTP generally nor the specific accused use of conditional GET requests with ETags prohibits or prevents users from accessing content that they have already received and cached, regardless of whether that content is current or expired. (Weissman Rep. at ¶¶ 55-56, 95-100; RFC 2616 at § 13.13.) Nor do they distinguish licensed from unlicensed content or do anything to ensure license compliance. (Weissman Rep. at ¶¶ 55, 90-92, 94.) To the contrary, the HTTP protocol specifies that browsers should explicitly ignore expiration dates and display old cached content when users access their browser history. (Weissman Rep. at ¶ 56; RFC 2616 at § 13.13.) This is so users can view the exact content they viewed before, rather than an updated version of that content or webpage. (*Id.*) And the HTTP protocol further specifies that web browsers can ignore expiration dates of cached objects to allow offline browsing. (Weissman Rep. at ¶¶ 97, 152, 179, 189; RFC 2616 at §§ 13.1.1, 13.1.4.) For example, anyone can access the front page of the New York Times, or another website, and continue reading it offline on a plane or elsewhere while the live website changes in the interim. This is expected behavior required by the HTTP protocol. Amazon's CloudFront follows this protocol and provides users with the same freedom to access expired content from their browser caches that the HTTP protocol requires. Thus, the Amazon technology does not and cannot infringe asserted claim 11 of the '442 patent, claim 20 of the '310 patent, and claims 25-27, 32, 34-36, and 166 of the '420 patent. The Court should enter summary judgement of noninfringement on this independent basis, which does not depend on its constructions of the "unauthorized or unlicensed" and "authorization" terms.

***There is no determining whether a copy of the data file is present using the name.*** In addition, Claim 10 of the '442 patent requires "determining, using at least the name, whether a copy of the data file is present on at least one of said computers." As with all the other claims, PersonalWeb maps the "name" of this claim to an ETag received in the conditional GET request from the web browser at the server. But, as Dr. Weissman explains, ETags are not used by CloudFront to locate files or to determine if they are present. (Weissman Rep. at ¶ 115.)

PersonalWeb alleges the following in its infringement contentions:

> The S3 website host server or CloudFront PoP server compares the ETag value obtained in the request with stored ETag values to determine whether the received ETag value matches the current ETag

FENWICK & WEST LLP
ATTORNEYS AT LAW

> value for the content of the object referenced in the request. If there was not a matching ETag value for the content of an object referenced in the request, the S3 website host server or CloudFront PoP server determines that the content of the copy of the object referenced in the request stored (present) on the other computer is not the same as the copy present on the server and is not an authorized copy for the purposes of the request, and serves an HTTP 200 response message to the other computer.

(Inf. Cont. Ex. B at 3.)  In other words, PersonalWeb equates a comparison of two ETags to the claimed determination that a file is present in a computer system.  But before the ETags can be compared, the files must *already* have been located, and are thus deemed present.  The comparison of ETags determines only if two files match, not whether the files are present in any computer system.  (Weissman Rep. at ¶¶ 46, 86, 132; de la Iglesia Rep. at ¶ 24 ("The ETag value may be used for comparison with other entities from the same resource") (citing RFC 2616 at § 14.19, p. 78).)  Indeed, as specified in the HTTP standard, and as implemented by CloudFront, the files are located by their assigned URI/URL locators.  (*See* Weissman Rep. at ¶¶ 27, 115, 161; de la Iglesia Rep. at ¶¶ 20 (citing RFC 2616 at § 3.2, pp. 14-15), 141 ("the Accused Instrumentality will read the MD5 ETag value *and the URL* in the conditional GET request, *look up the URL* in its list of URLs, read the current ETag value *for the matching URL*, and see if that current ETag value for the URL matches the ETag value received in the request.").)  ETags are not used to identify, locate, or retrieve files.  (Weissman Rep. at ¶¶ 115, 161.)  The Court should enter summary judgment of noninfringement of claim 10 of the '442 patent on this additional ground.

**There is no comparison to a plurality of identifiers.**  Asserted claims 25 and 166 of the '420 patent and claim 69 of the '310 patent also each require that the received content-dependent name is compared to a plurality of identifiers or values.  (Dkt. 406-2 at 43:57-58; Dkt. 406-8 at 40:20-39; 56:65-57:13.)  CloudFront responds to a conditional GET request by comparing the received ETag, which PersonalWeb equates with the claimed content-dependent identifier, with the ETag of the file stored on the server.  (*See* Weissman Rep. at ¶¶ 119-122; Inf. Cont. Ex. A Claim 69 at 3-4, Ex. C Claim 25 at 2-3, Ex. C Claim 166 at 3-4.)  CloudFront does not compare the received ETag with *multiple* ETags as the claims require; it performs a one-to-one comparison. This one-to-one comparison cannot meet the requirement of the one-to-many comparison recited

FENWICK & WEST LLP
ATTORNEYS AT LAW

in the asserted claims. Indeed, the Federal Circuit reversed a decision of the Patent Trial and Appeal Board in an *inter partes* review proceeding invalidating claims of the '310 patent based on this very reason. *PersonalWeb Techs., LLC v. Apple, Inc.*, 917 F.3d 1376, 1382 (Fed. Cir. 2019) (reversing the final written decision due to a lack of substantial evidence showing that the prior art taught the "compared to a plurality of values" limitation). The Court should therefore enter summary judgment of noninfringement of claims 25 and 166 of the '420 patent, and claim 69 of the '310 patent for this reason as well.

### D. PersonalWeb Lacks Standing to Assert Any Claim Against CloudFront Based on the Patents-in-Suit.

To avoid any dispute about waiver or preservation, Amazon also moves for summary judgment on the alternative ground that PersonalWeb lacks standing to assert claims against CloudFront. PersonalWeb's rights to the patents in this case are governed by the Agreement between Kinetech, PersonalWeb's predecessor, and Digital-Island, the predecessor of Plaintiff Level 3 Communications, Inc. PersonalWeb pled in the complaints that it was not asserting any claim in Level 3's exclusive field of use, defined in the Kinetech-Digital Island Agreement as follows:

> [T]he infrastructure services of one or more managed global content delivery networks (CDNs) in which a customer's content is served faster, on average, than if served from the customer's origin server or the CDN can typically serve more users than a customer's origin server alone; where at least some customer content on origin servers is replicated to possibly many alternate servers of the CDN, many of said CDN servers being at ISP sites, and where users' requests for origin content are satisfied by directing them to CDN servers.

(Shamilov Decl., Ex. 6 (Agreement) at § 1.2 & Schedule 1.2.) The Court indicated it would deny Amazon's related motion for judgment on the pleadings (Dkt. 413) on the basis that it required extrinsic evidence to interpret the exclusive field, as well as evidence that CloudFront is a CDN in this field. There is no genuine dispute as to either.

First, while the agreement is not a model of clarity, the only reasonable interpretation of it is that Level 3's exclusive field is content delivery networks. The remainder of the exclusive field provision gives an exemplary description of CDN functions and infrastructure, such as the "average" speed of content service, "typical" number of users served, and possible replication of the

content to "many" servers, some of which may be at ISP sites. Indeed, PersonalWeb's own witness—Ronald Lachman, a named inventor *who negotiated the agreement*—testified that the provision meant to cover CDNs generally. (Shamilov Decl., Ex. 7 (Jan. 17, 2014 Lachman Depo.) at 270:15-16 (testifying the field was "[s]pecifically and only and limited to the field of CDNs, content delivery networks").)

Second there is no genuine dispute that CloudFront is a CDN within this field. (Weissman Rep. at ¶¶ 59-60.) PersonalWeb itself has made numerous admissions to this effect. (*See* Dkt. 414, Request for Judicial Notice, Ex. 3 (PersonalWeb's summary judgment opposition brief) at 4:1-2, Ex. 4 at ¶ 12 ("I am familiar with an Amazon product called CloudFront, which is a content delivery network, or CDN."), Ex. 5 at ¶ 17 ("AWS describes CloudFront as 'a fast content delivery network (CDN) service . . . .' I understand that CloudFront's operation during the relevant timeframe for infringement was substantially the same as that description.").)

## CONCLUSION

PersonalWeb cannot meet its burden of proof on infringement without expert testimony, and has no evidence of infringement under any theory. Accordingly, there can be no genuine dispute as to any material fact with respect to noninfringement by the Amazon technology and the Court should enter summary judgment of noninfringement on Amazon's declaratory judgment claims.

Dated:   October 4, 2019           FENWICK & WEST LLP


                                    By: /s/ J. David Hadden
                                        J. David Hadden

                                    Counsel for AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.