| | |
|---|---|
| J. DAVID HADDEN (CSB No. 176148) | MICHAEL A. SHERMAN (SBN 94783) |
| dhadden@fenwick.com | masherman@stubbsalderton.com |
| SAINA S. SHAMILOV (CSB No. 215636) | JEFFREY F. GERSH (SBN 87124) |
| sshamilov@fenwick.com | jgersh@stubbsalderton.com |
| TODD R. GREGORIAN (CSB No. 236096) | SANDEEP SETH (SBN 195914) |
| tgregorian@fenwick.com | sseth@ stubbsalderton.com |
| MELANIE L. MAYER (*pro hac vice*) | WESLEY W. MONROE (SBN 149211) |
| mmayer@fenwick.com | wmonroe@stubbsalderton.com |
| RAVI R. RANGANATH (CSB No. 272981) | STANLEY H. THOMPSON, JR. (SBN 198825) |
| rranganath@fenwick.com | sthompson@stubbsalderton.com |
| CHIEH TUNG (CSB No. 318963) | VIVIANA B. HEDRICK (SBN 239359) |
| ctung@fenwick.com | vhedrick@stubbsalderton.com |
| FENWICK & WEST LLP | STUBBS ALDERTON MARKILES, LLP |
| Silicon Valley Center | 15260 Ventura Boulevard, 20TH Floor |
| 801 California Street | Sherman Oaks, CA  91403 |
| Mountain View, CA  94041 | Telephone:    (818) 444-4500 |
| Telephone:    650.988.8500 | Facsimile:    (818) 444-4520 |
| Facsimile:    650.938.5200 | |
| | Attorneys for PERSONALWEB |
| Attorneys for AMAZON.COM, INC., | TECHNOLOGIES, LLC |
| AMAZON WEB SERVICES, INC., and | [Additional Attorneys listed below] |
| TWITCH INTERACTIVE, INC. | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PERSONALWEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | Case No. 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC. | Case No. 5:18-cv-00767-BLF |
| | Case No. 5:18-cv-05619-BLF |
| Plaintiffs and Counterdefendants, | |
| v. | |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | **JOINT STATEMENT ON THE COURT'S ORDER RE SUMMARY JUDGMENT (DKT. 580)** |
| Defendants and Counterclaimants | |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | |
| Plaintiffs, | |
| v. | |
| TWITCH INTERACTIVE, INC., | |
| Defendant | |

| | |
|---|---|
| JOINT STATEMENT ON COURT'S | CASE NO.: 5:18-md-02834-BLF |
| ORDER RE SUMMARY JUDGMENT | CASE NO.: 5:18-cv-00767-BLF |
| | CASE NO.: 5:18-cv-05619-BLF |

On February 3, 2020, the Court granted summary judgment of non-infringement as to Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, "Amazon") and Twitch Interactive, Inc. ("Twitch") in this multidistrict litigation ("MDL") (Dkt. 578). The Court ordered the parties to provide their views on whether the Court should enter summary judgment in the remaining cases (Dkt. 580). Amazon, Twitch and PersonalWeb Technologies, LLC provide this joint statement in accordance with that order. The following parties join Amazon and Twitch's Statement: Airbnb, Inc.; Atlas Obscura, Inc.; Atlassian, Inc.; BDG Media, Inc.; Bitly, Inc.; Blue Apron, LLC; Braze, Inc.; Brooklyn Brewery Corporation; Capterra, Inc.; Cars.com, LLC; Centaur Media USA, Inc.; Cloud 66, Inc.; Cloud Warmer, Inc.; Curebit, Inc.; Curious.com, Inc.; Dollar Shave Club, Inc.; Doximity, Inc.; E-consultancy.com, Ltd.; Fab Commerce & Design, Inc.; Fandor, Inc.; FanDuel, Inc.; FanDuel Ltd.; Fiverr International Ltd.; Food52, Inc.; Goldbely, Inc.; GoPro, Inc.; Heroku, Inc.; Hootsuite Inc.; Imgur Inc.; Intuit Inc.; Karma Mobility Inc.; Kongregate Inc.; Leap Motion, Inc.; Lesson Nine Gmbh; Match Group, Inc.; Match Group, LLC; Mavenlink, Inc.; Melian Labs, Inc.; Merkle, Inc.; My Fitness Pal, Inc.; NRT LLC; NRT New York LLC; Optimizely, Inc.; Panjiva, Inc.; Peek Travel, Inc.; Quotient Technology Inc.; Reddit, Inc.; RetailMeNot, Inc.; Roblox Corporation; ShareFile LLC; Shopify, Inc.; Shopify (USA) Inc.; Slack Technologies, Inc.; Spokeo, Inc.; Spongecell, Inc.; Square, Inc.; StartDate Labs, Inc.; Stitchfix, Inc.; Tastytrade, Inc.; Teespring, Inc.; Tophatter, Inc.; Treehouse Island, Inc.; Trello, Inc.; TripAdvisor LLC; UpWork Global, Inc.; Urban Dictionary, LLC; Valassis Communications, Inc.; Vimeo, Inc.; Webflow, Inc.; Wedding Wire, Inc.; WeWork Companies, Inc.; Yotpo Ltd.; Ziff Davis, LLC; and Zoom Video Communications, Inc.

**PersonalWeb's Statement:**

The Court has ordered the parties to advise the Court of their views on whether the Court's summary judgment order (ECF 578, "Order") should be entered as to all remaining customer cases and judgment as to them. ECF 580. PersonalWeb Technologies, LLC's ("PersonalWeb") view is that judgment of non-infringement should be entered in all the remaining customer cases. However, for the reasons detailed below, even though there is at least one ground for finding non-infringement as to all the remaining customer defendants, not all grounds of the summary judgment order as it

relates to Twitch Interactive, Inc. ("Twitch") are applicable to the remaining customer cases as set forth below.

PersonalWeb is cognizant of the Court's expectation and mindful of the representation of PersonalWeb's counsel that the Twitch case would serve as a representative test case: "THE COURT: If I were to bring in either Twitch or Centaur Media, and there were a verdict against Personal Web that no infringement was found, would you agree that none of the customer cases could go forward because there would be findings in each of the buckets? MR. SHERMAN: Yes." Case Management Conference (Nov. 2, 2018) Trans., 6:17-22. The Court later stated, "This gives me better hope that with a verdict, in an Amazon and customer case, that it leads you to a mediator who takes care of the case for us. I mean, that's all a bellwether ever does. A bell weather isn't binding on anybody else, I don't even think of this as a bell weather, actually, but you know, because that name means lots of different things." *Id*. at 10:10-15.

PersonalWeb acknowledges that as there were findings of non-infringement for each of the four categories, judgments of non-infringement should be entered in all the remaining customer cases. Those findings for which judgments of non-infringement should be entered in favor of all customers include the Order's findings of (1) Twitch's non-infringement of the '544 patent (Section III.C. of the Order (p. 12)), and (2) permitting or allowing content to be provided or accessed and determining whether a copy of the data file is present using the name, which turn solely on the undisputed operation of computers complying with the HTTP 1.1 specification (Sections III.E.1-2 of the Order (pp. 14-21)). PersonalWeb does not oppose entry of such judgments.

There were other findings in the Order that do not turn solely on the undisputed operation of computers complying with the HTTP 1.1 specification. The Court construed "unauthorized or unlicensed" as "not compliant with a valid license" and "authorization" as "a valid license." Order re Claim Construction (ECF 485), at 33. As reflected in Section III.D. of the Order, the limitations including these terms as construed could not be met in the Twitch case because the license provisions of Twitch's Terms of Service in effect during the relevant timeframe were not included in the infringement contentions against Twitch or in the expert report regarding Twitch's infringement. As

the Court may recall, the Magistrate Judge refused to permit amendment of the infringement contentions to include the license provisions of Twitch's Terms of Service – a specific procedural circumstance that may not be applicable in any other case involving any other customer. The licensed nature of the website operator's content is an issue of fact that is independent of the operation of computers complying with the HTTP 1.1 specification. As the Court noted, PersonalWeb's non-opposition to the entry of judgment of non-infringement based on claim construction was based on the concession that the licensed nature of Twitch's website content was not at issue *in the Twitch case*. Summary Judgment Order (ECF 578), at 13. PersonalWeb proffers that other website operator defendants *did* have terms of service or terms of use governing licenses in effect during the relevant timeframe providing the regulation of license[d] content consistent with the Court's construction of "unauthorized or unlicensed" and "authorization" that could not be found to be present in the Twitch case. This is the type of fact particular to each individual case for which PersonalWeb's counsel noted that there might be "some need for some limited and or focused/targeted discovery of some other website operator defendants." Case Management Conference (Nov. 2, 2018) Trans., 11:1-4. Accordingly, Section III.D. of the Order should not be applied to the remaining customer defendants.

Another determination in the Court's summary judgment order that does not turn on the undisputed operation of computers complying with the HTTP 1.1 specification is Section III.E.3, in which the Court's ruled that Twitch's web server does not perform a comparison to a plurality of identifiers. Order at 21-23. This portion of the ruling relied on the undisputed operation of the "CloudFront/Twitch server" which involved more than the way all computers complying with the HTTP 1.1 specification operate. In Twitch, PersonalWeb's expert examined source code for the NGINX web server, one of the types of servers used by Twitch. To the extent a customer defendant's web server operations were performed by S3, PersonalWeb agrees that the Court's determination regarding Twitch applies to those customer defendants. However, there are thirteen customer defendants who served asset files with content-based ETags outside of S3 (Category 2 defendants). ECF 295. At the time of the CMC on November 2, 2018 where the Court suggested the parties identify the representative case, PersonalWeb's understanding was that Twitch served assets without

using S3, and thus was a Category 2 defendant. Moreover, Amazon and Twitch agreed that the Twitch case covered all categories. During subsequent discovery, however, PersonalWeb learned that this was not the case. Rather, Mr. Richard of Twitch testified that the assets that Twitch appeared to the public to be served without S3 were actually served by S3 in the background. James Richards Deposition, July 26, 2019 at 184:11-17. In other words, what appeared to be Category 2 activity by Twitch was actually Category 3 activity. Mr. Richard also testified that there would have been no way for a member of the public to determine that these assets were actually served by S3. As to those defendants that in fact serve assets without using S3 (what PersonalWeb believes, and continues to believe, to be the actual Category 2 defendants), there is no evidence in the record that their servers determined a match or non-match in the same way that Twitch did, *i.e.*, a one-to-one comparison. For that reason, the summary judgment order determination regarding a comparison to a plurality of identifiers as applied to Twitch may not apply to the thirteen other customers who had been identified Category 2 defendants. These defendants are: Bitly, Dollar Shave Club, Centaur Media, Imgur, Intuit, Kongregate, Reddit, RetailMeNot, Slack Technologies, Stack Exchange, TripAdvisor, Vimeo, and MWM My Wedding Match.

The issue discussed in Section III.E.3 of the Order is Twitch's *noninfringement* theory that is based on the specific way the Twitch servers operated behind the scenes, raised for the first time in its summary judgment motion filed on October 4, 2019. This noninfringement theory is *not* based on anything in the HTTP 1.1 specification. The HTTP 1.1 specification states that a comparison is made, but not how it is made—and Twitch's noninfringement argument is entirely based on how a comparison is made. Twitch criticizes PersonalWeb's position here on the basis that PersonalWeb's infringement theory is based on servers operating according to the HTTP 1.1 specification. While this is true as far as it goes, Twitch's *noninfringement* theory in its moving papers and the Court's discussion in Section III.E.3 do not discuss PersonalWeb's infringement theory or HTTP 1.1. *See* ECF 540-3 at 12-13, ECF 562 at 5.

Twitch also criticizes PersonalWeb for not informing the Court earlier that Twitch disclosed in discovery that it did not perform any Category 2 activity. This is simply because there has not

been an issue before the Court between July 2019 to which this has been germane. Indeed, Twitch has not identified and PersonalWeb is not aware of anything that would have changed had PersonalWeb found a way in July 2019 to bring this to the Court's attention. Twitch's Motion for summary judgment of noninfringement was based on what Twitch *did*, not what it *did not* do. Further, the issue of how the Twitch servers internally carry out the HTTP 1.1 specification is an issue that Twitch raised for the very first time in its summary judgment motion. It is precisely that issue on which there has been no discovery—whether the thirteen identified defendants do what Twitch did or not.

**Statement of Amazon, Twitch, and Remaining Defendants Identified Above:**

Amazon, Twitch, and the remaining defendants agree that the Court should enter the summary judgment order of non-infringement (Dkt. 578) in all remaining cases. The Court stayed those cases while a single representative case, against Twitch, resolved all asserted infringement theories. PersonalWeb asserted the same patent claims in the remaining cases that it asserted against Twitch. *See* Exhibit A.

PersonalWeb agreed to use the Twitch case as the representative case. It *repeatedly* stated that its infringement theories in each of the remaining cases are the same as those asserted in the Twitch case. For example, in the Preliminary Joint Case Management Statement filed September 13, 2018, PersonalWeb stated that "there are four categories of website operator activity involved in the infringement" and specifically identified which category of the four it was asserted against each defendant. Dkt. 96 at 5-6; Dkt. 96-1 (Appendix A). On October 26, 2018, after the Court questioned whether the same MDL should include all the customer cases, PersonalWeb reaffirmed that all of the customer cases involved the same infringement theories:

> [E]ach of the defendant website operators were accused of using the same basic infringing method of using content-based ETags and certain of the same elements of the HTTP 1.1 protocol to provide notifications and authorizations in order to ensure that a browser only uses the latest authorized content in rendering their webpages. The common steps of this basic method are the same across all of the cases, which only differ in the instrumentality the website operator chooses to use to generate and serve the ETag and the notifications.

Dkt. 271 at 5. Based on this representation, the Court identified the Twitch case as the representative

customer case. *See* Order re Representative Customer Case, Dkt. 313 ("As agreed to by the parties, Twitch seems to be an ideal exemplar. Twitch involves all four categories of infringement identified by PersonalWeb"). But before doing so, the Court made sure that both sides agreed on the record that a judgment in the Twitch case would also apply in the remaining cases. As PersonalWeb acknowledges, its counsel agreed that if the Twitch case culminated in "a verdict against Personal-Web that no infringement was found," "none of the customer cases could go forward." Nov. 2, 2018 CMC Hrg. Tr. at 6:17-22. Accordingly, the summary judgment of non-infringement in the Twitch case resolves PersonalWeb's claims against the other defendants, and the Court's judgment should be entered in those cases as well.

PersonalWeb agrees that summary judgment of non-infringement should be entered in all the remaining cases and on each of its four asserted infringement theories. But it also argues that two rulings in the summary judgment order—Sections III.D ("unauthorized or unlicensed") and III.E.3 (plurality of identifiers)—do not apply to all cases. PersonalWeb arguments for excluding these two rulings from the remaining cases both fail.

With respect to Section III.D, PersonalWeb argues that it should get to re-do its infringement theory for the "unauthorized/unlicensed" limitation in all of the remaining cases because "the Magistrate Judge refused to permit amendment of the infringement contentions to include the license provisions of Twitch's Terms of Service." PersonalWeb moved to amend its infringement contentions to reference the Terms of Service, purportedly in response to defendants' proposed claim constructions. (Dkt. 448). Judge van Keulen denied amendment because she found that PersonalWeb was not diligent in requesting leave: PersonalWeb was well aware of the issue raised by defendants' claim construction proposal before it even filed these cases, and thus could and should have addressed it in the original infringement contentions. Dkt. 481 at 9. PersonalWeb's failure to advance all of its available infringement theories in the Twitch case applies to all other pending cases. The case against Twitch was chosen as representative; its entire point was to resolve all of PersonalWeb's infringement theories. PersonalWeb does not get yet another do-over to escape Judge van Keulen's

order and concoct another set of infringement theories for the remaining cases.[1]

With respect to Section III.E.3, PersonalWeb suggests that the Court should not enter summary judgment based on the "plurality of identifiers" as to 13 defendants that allegedly might have used servers that operate differently than Twitch's with respect to this claim limitation. First, PersonalWeb's infringement theory for both Category 2 (Non-S3 Assets with Content-Based Etag) and Category 3 (S3 Assets with Content-Based Etags) is based on standard HTTP operations. PersonalWeb tries to distinguish between these categories based on the server that serves the web asset. But the server makes no difference to PersonalWeb's infringement theory because they all function (and are alleged to function) the very same way: according to the HTTP standard. Categories 2 and 3 are indistinguishable for purposes of PersonalWeb's infringement theories. Moreover, as the party asserting infringement, PersonalWeb must bear the responsibility for any failure of proof as to its Category 2 infringement theory.[2]

More important, according to PersonalWeb, it learned as early as *July 2019* that its Category 2 infringement allegation against Twitch was purportedly wrong. Yet PersonalWeb stayed silent, briefed summary judgment motions, and only complained that Twitch might not be a representative case after losing. Presumably had there been a verdict of infringement PersonalWeb would never have suggested that Twitch was not a proper representative case. PersonalWeb cannot use this misconduct to unravel the work the parties have done in the representative case.

In any event, PersonalWeb's arguments do not affect the question currently before the Court since the parties agree that the Court should enter judgment of non-infringement in all the remaining cases because at least one basis for the Court's summary judgment order applies to each of the four infringement theories asserted against all remaining defendants.

---

[1] Indeed, PersonalWeb told Magistrate Judge van Keulen that its proposed amendment was not even necessary. July 24, 2019 Hrg. Tr. at 14:5-7 ("frankly, you know, we're not sure that we even need to have this amendment"; PersonalWeb is only asking for it "out of an abundance of caution").

[2] For example, in the Twitch case, a Level 3 (not S3) server served some portion of the web assets at issue during the infringement period.

JOINT STATEMENT ON COURT'S ORDER
RE SUMMARY JUDGMENT

8

CASE NO.: 5:18-md-02834-BLF
CASE NO.: 5:18-cv-00767-BLF
CASE NO.: 5:18-cv-05619-BLF

Respectfully submitted,

Dated:   February 17, 2020    STUBBS, ALDERTON & MARKILES, LLP

By: */s/ Michael A. Sherman*
       MICHAEL A. SHERMAN

Counsel for PERSONALWEB TECHNOLOGIES, LLC

Dated: February 17, 2020    FENWICK & WEST LLP

By: */s/ Melanie L. Mayer*
       MELANIE L. MAYER

Counsel for AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AIRBNB, INC.; ATLAS OBSCURA, INC.; ATLASSIAN, INC.; BDG MEDIA, INC.; BITLY, INC.; BLUE APRON, LLC; BROOKLYN BREWERY CORPORATION; CENTAUR MEDIA USA, INC.; E-CONSULTANCY.COM, LTD.; CLOUD 66, INC.; CLOUD WARMER, INC.; CUREBIT, INC.; CURIOUS.COM, INC.; DOLLAR SHAVE CLUB, INC.; DOXIMITY, INC.; FAB COMMERCE & DESIGN, INC.; FANDOR, INC.; FANDUEL, INC.; FANDUEL LTD.; FIVERR INTERNATIONAL LTD.; FOOD52, INC.; GOLDBELY, INC.; GOPRO, INC.; HOOTSUITE INC.; IMGUR INC.; INTUIT, INC.; KARMA MOBILITY INC.; KONGREGATE INC.; LEAP MOTION, INC.; LESSON NINE GMBH; MATCH GROUP, INC.; MATCH GROUP, LLC; MAVENLINK, INC.; MELIAN LABS, INC.; MY FITNESS PAL, INC.; NRT LLC; NRT NEW YORK LLC; OPTIMIZELY, INC.; PANJIVA, INC.; PEEK TRAVEL, INC.; QUOTIENT TECHNOLOGY INC.; ROBLOX CORPORATION; SHAREFILE LLC; SPOKEO, INC.; SPONGECELL, INC.; SQUARE, INC.; STITCHFIX, INC.; TASTYTRADE, INC.; TEESPRING, INC.; TOPHATTER, INC.; TREEHOUSE ISLAND, INC.; TRELLO, INC.; TRIPADVISOR LLC; VIMEO, INC.; URBAN DICTIONARY, LLC; WEBFLOW, INC.; WEDDING WIRE, INC.; WEWORK COMPANIES, INC.; YOTPO LTD.; ZIFF DAVIS, LLC; AND ZOOM VIDEO COMMUNICATIONS, INC.

| | | |
|---|---|---|
| 1 | Dated: February 17, 2020 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By: */s/ Todd R. Gregorian*<br>TODD R. GREGORIAN |
| 4 | | Counsel for TWITCH INTERACTIVE, INC. |
| 5 | Dated: February 17, 2020 | KASOWITZ BENSON TORRES LLP |
| 6 | | |
| 7 | | By: */s/ Marcus Barber*<br>MARCUS BARBER |
| 8 | | Counsel for REDDIT, INC. |
| 9 | Dated: February 17, 2020 | PERKINS COIE LLP |
| 10 | | |
| 11 | | By: */s/ Daniel T. Shvodian*<br>DANIEL T. SHVODIAN |
| 12 | | Counsel for BRAZE, INC. |
| 13 | Dated: February 17, 2020 | KING & SPALDING LLP |
| 14 | | |
| 15 | | By: */s/ Brent P. Ray*<br>Brent P. Ray |
| 16 | | Counsel for UPWORK GLOBAL, INC., RETAILMENOT, INC., VALASSIS COMMUNICATIONS, INC., SHOPIFY, INC., SHOPIFY (USA) INC. |
| 17 | | |
| 18 | | |
| 19 | Dated: February 17, 2020 | PIERCE ATWOOD LLP |
| 20 | | By: */s/ Robert H. Stier*<br>Robert H. Stier |
| 21 | | |
| 22 | | Counsel for STARTDATE LABS, INC. |
| 23 | Dated: February 17, 2020 | ARNOLD PORTER |
| 24 | | |
| 25 | | By: */s/ Michael Berta*<br>Michael Berta |
| 26 | | Counsel for HEROKU, INC. |
| 27 | | |
| 28 | JOINT STATEMENT ON COURT'S ORDER<br>RE SUMMARY JUDGMENT | 10   CASE NO.: 5:18-md-02834-BLF<br>CASE NO.: 5:18-cv-00767-BLF<br>CASE NO.: 5:18-cv-05619-BLF |

| | | |
|---|---|---|
| 1 | Dated: February 17, 2020 | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP |
| 2 | | |
| 3 | | By: */s/ Robert McCauley*<br>   Robert McCauley |
| 4 | | Counsel for CAPTERRA, INC., MERKLE, INC. |
| 5 | | |
| 6 | Dated: February 17, 2020 | WHITE & CASE LLP |
| 7 | | By: */s/ Bijal Vakil*<br>   BIJAL VAKIL |
| 8 | | |
| 9 | | Counsel for SLACK TECHNOLOGIES, INC. |
| 10 | Dated: February 17, 2020 | MARSHALL, GERSTEIN & BORUN LLP |
| 11 | | By: */s/ Robert Gerstein*<br>   Robert Gerstein |
| 12 | | |
| 13 | | Counsel for CARS.COM, LLC |