J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
MELANIE L. MAYER (admitted *pro hac vice*)
mmayer@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
TJ FOX (CSB No. 322938)
tfox@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC., and
TWITCH INERACTIVE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONAL WEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No.: 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.,<br><br>Plaintiffs<br><br>v.<br><br>PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Defendants, | Case No.: 5:18-cv-00767-BLF<br><br>Case No.: 5:18-cv-05619-BLF<br><br>**DECLARATION OF TODD R. GREGORIAN IN SUPPORT OF MOTION OF AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS** |
| PERSONALWEB TECHNOLOGIES, LLC, a and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TWITCH INTERACTIVE, INC.,<br><br>Defendant. | Date: June 4, 2020<br>Time: 9:00 a.m.<br>Dept: Courtroom 3, 5th Floor<br>Judge: Hon. Beth L. Freeman |

I, Todd R. Gregorian, declare as follows:

1. I am counsel to Amazon.com, Inc., Amazon Web Services, Inc. (collectively, "Amazon"), and Twitch Interactive, Inc. ("Twitch") in this matter. I have personal knowledge of the facts set forth herein. My colleague Chieh Tung and I conferred with counsel for PersonalWeb regarding this motion on March 10, 2020.

**AMAZON'S AND TWITCH'S LEGAL TEAM AND HOURLY RATES**

2. Fenwick & West LLP is a firm of over 350 attorneys which specializes in providing legal services for leading technology companies, start-ups, and others on the edge of innovation. Fenwick enjoys a reputation as one of the preeminent technology and intellectual property firms in the United States. I am a partner at Fenwick & West and have been a practicing attorney for 15 years, specializing in intellectual property litigation.

3. A number of attorneys and paralegal staff performed significant work on this matter over the more than two years it has been pending. As detailed below, the hourly rates charged by the attorneys who worked on this matter are consistent with the prevailing market rates for attorneys with comparable skill, qualifications, experience, and reputations. The hourly rates charged by the paralegals are also consistent with the prevailing market rates for paralegals with comparable skill, qualifications, and experience. The labor of these individuals contributed to the final attorney work product billed to the client.

4. The attorneys and paralegals who worked more than a nominal amount on this matter are each identified below, along with a summary of their experience and qualifications. Additionally, copies of the attorneys' biographies as they appear on the Fenwick website and in Fenwick's marketing materials, including lists of representative engagements, are attached as **Exhibit 1**.

a. **J. David Hadden** is a partner at Fenwick and lead counsel for Amazon and Twitch in this matter. His practice focuses on intellectual property litigation and counseling. He has practiced law in the State of California since 1995 and is a member in good standing with the California State Bar. He has repeatedly been ranked as a "Super Lawyer" by Northern California Super Lawyers and was honored as one of the top 75 IP litigation attorneys in California by the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Daily Journal. He is ranked by IAM Patent 1000 and described as "a hugely experienced litigator and trial attorney who leads teams to excellent results on time and within budget," "well prepared and appropriately focused," and able to "keep[] a global perspective on the merits and impact of a dispute." He is also admitted to practice before the U.S. Patent & Trademark Office. His rate on this matter was $915 per hour for all work performed in 2018 and $1,120 per hour for all work performed in 2019. Mr. Hadden's responsibilities on this case included managing client relationships, directing litigation strategy, motion practice, and directing fact and expert discovery.

b. **Saina S. Shamilov**: Ms. Shamilov is a partner at Fenwick, specializing in intellectual property litigation and counseling. She is a member in good standing with the California State Bar and has practiced law in the State of California since 2001. She has a B.S degree in computer science from the University of California, Davis, and is admitted to practice before the U.S. Patent & Trademark Office. She has repeatedly been recognized by Northern California Super Lawyers and is ranked by IAM Patent 1000. Her hourly rate on this matter was $730 per hour for all work performed in 2018 and $950 for all work performed in 2019. Ms. Shamilov's responsibilities on this case included directing litigation strategy, managing client relationships, coordinating and reviewing associate work, and managing expert discovery.

c. **Melanie Mayer:** Ms. Mayer is a Partner at Fenwick. She is a member in good standing with the Washington State Bar and has practiced intellectual property in the State of Washington since 2005. Her rate on this matter was $790 per hour for all work performed in 2018, $900 per hour for all work performed in 2019, and $1065 for all work performed in 2020. Ms. Mayer's responsibilities on this case included case management including coordinating the many customer defendants in the MDL, reviewing associate work, and managing fact discovery.

d. **Todd R. Gregorian:** I am currently a partner at Fenwick and served as the lead Fenwick associate on this matter from 2018 through 2019. I am a member in good standing with the California State Bar and have practiced law in the State of California since 2005. I was recognized as a "Rising Star" by Northern California Super Lawyers for 2013-2019. My rate on this matter was $680 per hour for all work performed in 2018, $795 per hour for all work performed in 2019, and $920 for all work performed in 2020. My responsibilities on this case included

devising litigation strategy, coordinating and reviewing associate work, managing fact discovery, and motion practice.

e. **Phillip Haack:** Mr. Haack, a former litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2009. Mr. Haack was a software engineer at multiple technology companies before becoming an attorney. Mr. Haack's rate on this matter was $680 per hour for all work performed in 2018 and $795 per hour for all work performed in 2019. Mr. Haack's responsibilities on this case included investigating the accused technology, motion practice, invalidity contentions and claim construction, and expert discovery.

f. **Ravi Ranganath:** Mr. Ranganath, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2010. Mr. Ranganath's rate on this matter was $630 per hour for all work performed in 2018 and $795 per hour for all work performed in 2019. Mr. Ranganath's responsibilities on this case included case management, motion practice, and fact discovery.

g. **Allen Wang:** Allen Wang, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2011. Mr. Wang's rate on this matter was $795 per hour for all work performed in 2019. Mr. Wang's responsibilities on this case included motion practice and expert discovery.

h. **Elizabeth Hagan:** Elizabeth Hagan, a litigation associate at Fenwick, is a member in good standing with the Washington State Bar and has practiced intellectual property litigation in the State of Washington since 2013. Ms. Hagan's rate on this matter was $620 per hour for all work performed in 2018 and $775 per hour for all work performed in 2019. Ms. Hagan's responsibilities on this case included case management, motion practice, and fact discovery.

i. **Shannon Turner:** Ms. Turner, a litigation associate at Fenwick, is a member in good standing with the California State Bar and New York State Bar and has practiced

intellectual property litigation since 2014. Ms. Turner's rate on this matter was $535 per hour for all work performed in 2018, $775 per hour for all work performed in 2019, and $850 for all work performed in 2020. Ms. Turner's responsibilities on this case included case management, motion practice, and fact discovery.

j. **Chieh Tung:** Ms. Tung, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2017. Ms. Tung's rate on this matter was $385 per hour for all work performed in 2018, $550 per hour for all work performed in 2019, and $655 for all work performed in 2020. Ms. Tung's responsibilities on this case included case management, motion practice, and fact discovery.

k. **Crystal Nwaneri:** Ms. Nwaneri, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2017. Ms. Nwaneri's rate on this matter was $370 per hour for all work performed in 2018 and $550 per hour for all work performed in 2019. Ms. Nwaneri's responsibilities on this case included case management and fact discovery.

l. **TJ Fox:** Mr. Fox, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2018. Mr. Fox's rate on this matter was $425 per hour for all work performed in 2018, $450 per hour for all work performed in 2019, and $590 for all work performed in 2020. Mr. Fox's responsibilities on this case included motion practice, invalidity contentions and claim construction, and expert discovery.

m. **Kwan Chan:** Mr. Chan, a patent litigation attorney at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2007. Mr. Chan's rate on this matter was $340 per hour for all work performed in 2019. Mr. Chan's responsibilities on this case included expert discovery.

n. **Patrick Doyle:** Mr. Doyle, a patent litigation attorney at Fenwick, is a member in good standing with the California State Bar and Illinois State Bar and has practiced

intellectual property litigation since 2017. Mr. Doyle's rate on this matter was $340 per hour for all work performed in 2019. Mr. Doyle's responsibilities on this case included expert discovery.

o. **Robert Winant:** Mr. Winant is a litigation paralegal at Fenwick with over 28 years of legal experience. His rate on this matter was $350 per hour for all work performed in 2018, $420 per hour for all work performed in 2019, and $440 for all work performed in 2020. Mr. Winant assisted with review and coding of documents in discovery, document production, deposition preparation, and motion practice.

p. **Lawrence Gallwas:** Mr. Gallwas is a litigation paralegal at Fenwick with 15 years of legal experience. His rate on this matter was $350 per hour for all work performed in 2018, $420 per hour for all work performed in 2019, and $440 for all work performed in 2020. Mr. Gallwas assisted with review and coding of documents in discovery, document production, deposition preparation, and motion practice.

5. Effective **rates and explanation of discounts:** Amazon receives certain fee discounts from Fenwick, and Amazon is only requesting fees that it incurred after applying these discounts. Therefore, the standard hourly rates discussed above are higher than the effective rates Fenwick charged for this matter. Relevant to this request, the discounts were applied in two stages. The chart below reflects the effective hourly rate of each timekeeper on this matter *after* the first stage, but *before the final discount*. Further information about this discount is provided below at paragraph 18. Finally, 2020 rates are included for attorneys that have January 2020 time entries included in the fee request.

| Billing Attorney / Paralegal | Hours Billed on Matter | Average Effective Rate | | | 2018-2020 Combined Average Effective Rate | Years Experience (2020) |
|---|---|---|---|---|---|---|
| | | 2018 | 2019 | 2020 | | |
| J. David Hadden, Partner | 728.1 | $859.96 | $929.60 | N/A | $905.95 | 25 years |
| Saina Shamilov, Partner | 1303.5 | $685.25 | $788.50 | N/A | $748.60 | 18 years |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Billing Attorney / Paralegal | Hours Billed on Matter | Average Effective Rate | | | 2018-2020 Combined Average Effective Rate | Years Experience (2020) |
|---|---|---|---|---|---|---|
| | | 2018 | 2019 | 2020 | | |
| Melanie Mayer, Partner | 1454.1 | $646.43 | $744.23 | $883.95 | $699.82 | 15 years |
| Todd Gregorian, Partner | 903.3 | $634.00 | $659.85 | $763.60 | $649.27 | 15 years |
| Philip Haack, Associate | 1208.1 | $639.87 | $659.25 | N/A | $648.27 | 10 years |
| Ravi Ranganath, Associate | 1153.4 | $601.37 | $658.18 | N/A | $625.92 | 9 years |
| Allen Wang, Associate | 130.6 | N/A | $659.85 | N/A | $659.85 | 9 years |
| Elizabeth Hagan, Associate | 585 | $574.71 | $643.25 | N/A | $577.55 | 7 years |
| Shannon Turner, Associate | 453.3 | $560.05 | $643.25 | $705.50 | $618.28 | 6 years |
| Chieh Tung, Associate | 948.6 | $357.67 | $456.50 | $543.63 | $406.85 | 3 years |
| Crystal Nwaneri, Associate | 570.1 | $359.26 | $456.50 | N/A | $430.06 | 3 years |
| TJ Fox, Associate | 1291.1 | $352.75 | $373.34 | $489.70 | $370.20 | 2 years |
| Kwan Chan, Associate | 527.9 | N/A | $282.20 | N/A | $282.20 | 13 years |
| Patrick Doyle, Associate | 115.3 | N/A | $282.20 | N/A | $282.20 | 3 years |
| Robert Winant, Paralegal | 497.5 | $326.71 | $348.60 | $365.20 | $342.16 | 28 years |
| Lawrence Gallwas, Paralegal | 507 | $333.37 | $348.60 | $365.20 | $344.74 | 15 years |

FENWICK & WEST LLP
ATTORNEYS AT LAW

**REASONABLENESS OF FENWICK'S HOURLY RATES**

6. In my role, I am familiar with Fenwick's business and billing practices, and I am generally familiar with the rates comparable firms charge for patent litigation in the Northern District of California. Fenwick sets its hourly billing rates to be competitive with rates generally charged by other full-service law firms for attorneys of similar experience. Fenwick attorneys routinely appear in patent litigation matters in the Northern District of California, including high-stakes patent litigation like this multidistrict litigation. Printouts from Docket Navigator showing appearances by Fenwick in patent litigation matters in the Northern District of California since 2015 are attached as **Exhibit 2**. In my opinion, the billable rates charged by the specific attorneys and paralegals on this case are reasonable for their respective levels of expertise and as compared to other law firms with similar experience in the San Francisco Bay Area.

7. Fenwick provides comprehensive legal services to national and international technology and life sciences companies. Fenwick has over 350 attorneys practicing in offices in Mountain View, San Francisco, and Santa Monica, California, in Seattle, Washington, in Boise, Idaho, and in New York, New York. Fenwick is nationally-recognized for its handling of, among other things, intellectual property litigation. For example, this year Fenwick was:

- Selected as a Tech Litigation Department of the Year Finalist by The Recorder (2019);
- Selected as one of the top IP practices nationally as well as in California and New York by Managing Intellectual Property (2019);
- Named a Go-To Firm for Patent Litigation by Lex Machina (2019);
- Ranked among the top firms for patent litigation and patent prosecution (including reexaminations and post-grant proceedings) by The Legal 500 (2019);
- Recommended among the top patent litigation shops in California, New York, and Washington by IAM Patent 1000 (2019);
- Saina Shamilov named to the inaugural list of Top 50 Women in PTAB Trials by the PTAB Bar Association (2019);
- J. David Hadden named among the top 75 IP lawyers by the Daily Journal (2019);

- Fenwick IP Litigators were named among the Best Lawyers in America by U.S. News – Best Lawyers® (2019)

8. Other types of evidence routinely considered by the federal courts in assessing the reasonableness of fees support the conclusion that Fenwick's fees in this matter were reasonable:

a. Multiple California federal courts have found Fenwick's rates to be reasonable for patent and other IP cases of similar or lesser complexity than this MDL proceeding. *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *7 (N.D. Cal. Nov. 6, 2014) (plaintiff conceded Fenwick's rates "were reasonable"); *Netbula, LLC v. Chordiant Software, Inc.*, 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) ("[Fenwick's] rates are comparable to other full service firms in the Bay Area and are reasonable."); *Yue v. Storage Tech. Corp.*, 2008 WL 11256331, at *4 (N.D. Cal. Aug. 6, 2008) (report and recommendation) (same), *adopted by* 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *16-21 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (Fenwick's rates were "reasonable and w[ere] comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation"); *Jones v. Corbis Corp.*, 2011 WL 4526084, at *1-2 (C.D. Cal. Aug. 24, 2011).

b. Fenwick's fees are also in line with the survey conducted by AIPLA. *See Phigenix, Inc. v. Genentech Inc.*, 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) ("In intellectual property cases, federal courts routinely rely on [AIPLA] economic survey results published every other year.") (citations omitted). AIPLA conducts a biennial economic survey that includes a survey of individual billing rates for representative IP law services and total costs of patent infringement litigation inclusive of discovery, motions, and claim construction. Relevant excerpted portions from the 2019 survey are attached hereto as **Exhibit 3** [Tables I-29; I-41; I-42; F-22].

i. Data from the 2019 survey, analyzing 2018 rates, shows that Fenwick's rates charged in this action are consistent with the range of average hourly billing rates for private law firms in the San Francisco Consolidated Metropolitan Statistical Area (CMSA). In 2018, the

average hourly billing rate in the San Francisco CMSA for partners was $665, the median rate was $650, the rate for the third quartile was $826, and the rate for the 90th percentile was $1,023. *Id*. I-29.

ii. Although the survey does not contain data for associate billing rates in the San Francisco CMSA (*see id.* I-41), Fenwick's billing rates for associates also fall within the range of general private firm associate ranges based on years of intellectual property law experience. *See id.* I-42.

iii. Fenwick's fees also fall within the range of overall rates charged for intellectual property litigation. The average minimum billing rate for IP work in the San Francisco CMSA was $402, the median rate was $400, and the rate for the third quartile was $470; the average maximum billing rate for IP work in the San Francisco CMSA was $701, the median rate was $573, and the rate for the third quartile was $1,084. *Id.* F-22.

9. I am familiar with the factors recited in *Gonzalez v. City of Maywood.*, 729 F.3d 1196, 1207 (9th Cir. 2013) that this Court has used to determine the reasonableness of a rate in the context of a fees award or to enhance or decrease a lodestar rate once calculated. These factors are:

- The novelty and complexity of the issues;
- The special skill and experience of counsel;
- The quality of representation; and
- The results obtained.

10. In this case, these factors support the reasonableness of the rates charged. PersonalWeb sued more than eighty defendants in different six judicial districts. This presented both practical challenges and difficult procedural questions. Amazon ultimately asserted a declaratory judgment action against PersonalWeb and sought to protect each of its customers by indemnifying them. To that end, Fenwick had to individually engage dozens of Amazon's customers and coordinate with each customer as to its own case status and strategy. The case also

involved practice before the JPML, with its own set of specialized issues related to multidistrict litigation, and issues of service under the Hague Convention.

11. This case also presented complex legal issues. In addition to questions of infringement and invalidity, Fenwick attorneys needed to apply expertise in the customer suit doctrine and in claim and *Kessler* preclusion because PersonalWeb accused the same technology that it had accused in past litigation against Amazon and its customer Dropbox in the Eastern District of Texas. The fact that PersonalWeb's co-owner in the patents, Level 3, appeared in the case but specifically disclaimed that it was asserting any infringement claim, raised difficult questions regarding standing. Motion practice included a motion for preliminary injunction, motions to stay for the customer cases, a summary judgment motion on claim preclusion and the *Kessler* doctrine, a motion for judgment on the pleadings regarding standing, a motion for "clarification" by PersonalWeb, a second summary judgment motion on non-infringement of Amazon's CloudFront technology, a motion for entry of judgment under Rule 54(b) by PersonalWeb, and various motions to compel discovery. The skill required to defend against these claims was high.

12. Because Fenwick regularly represents Amazon in patent litigation actions, including in the prior Texas action brought by PersonalWeb on the same patents, it could apply its extensive knowledge of Amazon's business and technology and its knowledge of the past PersonalWeb case to lower expenses. The team of Fenwick attorneys and paralegals on this matter also have extensive patent and intellectual property litigation experience and were able to leverage their expertise in efficiently achieving a complete victory for Amazon and Twitch: Fenwick secured a summary judgment order as to the preclusion of PersonalWeb's claims against S3 under claim preclusion and the *Kessler* doctrine, which resolved eight customer cases, and a second summary judgment order as to non-infringement for Amazon and Twitch as to all the asserted patents, resolving the remainder of the MDL. Not only did Amazon prevail on all counts, but it did so efficiently by prevailing on all claims before trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**REASONABLENESS OF FEES INCURRED**

13. In the regular course of business, Fenwick's attorneys, paralegals, and staff keep detailed, contemporaneous time records for all time billed to client matters handled by the firm. Attorneys and paralegals record their time to the nearest tenth of an hour in an electronic time record system. Each timekeeper also identifies the general category of work performed from a pre-set list of task-based categories (e.g., "Dispositive Motions," "Patent Claim Construction," "Fact Discovery," etc.), and then adds a more detailed explanation of the work performed. Fenwick's electronic time record system, common among comparable law firms, enables Fenwick to track all fees incurred by the firm on behalf of its clients and further allows for generation of monthly invoices detailing the hours worked on a particular matter, the nature of the work performed and the fees incurred for that work.

14. On a monthly basis, a preliminary invoice is generated from the computerized records described above. Mr. Hadden personally reviews these preliminary invoices and provides discounts where appropriate. **Exhibit 4** is a copy of all final monthly invoices to Amazon for this matter from January 2018 through January 2020, reflecting the work of each timekeeper at Fenwick who billed to this matter during that time period. Certain descriptions of the work billed reflect attorney-client communications and/or work product; these have been redacted. Also, bank account information required for payment of fees has also been redacted from these invoices. Privileged and confidential redactions are in in black. Certain non-taxable costs that Amazon and Twitch are not seeking are redacted in blue. Finally, my staff has annotated the expenses listed in these invoices: the notation "BOC" identifies expenses that were submitted with the bill of costs and therefore excluded from this motion.

15. The work done by Fenwick attorneys and paralegals as reflected in the invoices and time records was reasonably necessary to the conduct of the case. In fact, this work led to Amazon's and Twitch's complete victory in the case without the need for a trial, let alone 80+ trials against Amazon customers. Fenwick attorneys have represented Amazon in dozens of patent infringement cases and were able to leverage their extensive knowledge of Amazon, its business, and technology to be more efficient and to lower expenses. Moreover, work on this case was assigned to team

members of appropriate seniority. The number of hours partner attorneys billed on this case made up 30.4% of all attorney hours billed and 27.9% of all timekeeper hours billed.

16. PersonalWeb filed several of the cases ultimately consolidated before this Court in the District of Delaware, which required those defendants to retain local counsel at Amazon's expense. To support the overall reasonableness of its request, Amazon has excluded all fees and costs associated with hiring local Delaware counsel, Steven J. Balick and Andrew C. Mayo of Ashby Geddes from this fee request.

17. Because of the complex nature of this case, there were times that Fenwick needed to recruit additional attorneys and staff to accommodate the workload. This work was necessary to the defense of the case. However, to ensure that Amazon and Twitch are not requesting reimbursement for any "ramp up" time or other inefficiencies, they are excluding these timekeepers from their request. There are 29 total timekeepers totaling 556.3 hours and $189,009.85 of work that Amazon and Twitch have excluded from the request for these reasons.

18. Amazon and Twitch are also excluding certain non-taxable costs, including those relating to hiring contract-based employees to assist with fact discovery during the "ramp up," interoffice delivery fees, and other consulting and miscellaneous costs totaling $7,803.21.

19. As a result of PersonalWeb's aggressive pursuit of this case, Amazon and Twitch incurred $6,987,341.17 in fees for Fenwick's work between January 2018, when the case began, through January 2020, based on time billed by the attorneys and paralegals identified above and after applying the write-offs and discounts discussed. These fees were incurred by the client and necessary to the case and therefore are fully recoverable. However, Amazon received additional final discounts related to this matter. Amazon and Twitch are therefore reducing this portion of the request to **$6,100,000.00**, to account for all of the discounts that they received. I believe that this substantial reduction further supports the reasonableness of the request.

20. Amazon and Twitch also incurred **$323,668.06** in non-taxable costs, which they are seeking separately from the bill of costs. These costs are related to litigating this case, such as data hosting fees; copy services and delivery charges for depositions, chambers copies and proof of service; transcript order fees; court call fees; expert witness fees; meals and travel costs for

attending depositions and hearings; graphic and presentation consultant fees; and research vendor fees. The specific charges appear in Fenwick's monthly invoices identified above and submitted with this declaration. A summary of the charges is also included as **Exhibit 5**.

21. Federal Rule of Civil Procedure 54(d)(2)(B)(iii) requires that a movant for fees substantiate or provide a fair estimate of the amount it will seek. I understand that the Ninth Circuit reads this rule to require the movant to estimate its future district court fees at the time of filing. Based on a review of the unbilled entries in Fenwick's timekeeping system, Amazon and Twitch estimate that they have incurred approximately $200,000 in fees for the period between February 1, 2020 and March 17, 2020. Further, they estimate they will incur approximately $250,000 in fees between the filing of this motion on March 18, 2020 and the June 4, 2020 hearing. Amazon and Twitch request the Court award these fees as well, and, if the Court so requests, they will supplement this declaration after the hearing on this motion to substantiate the actual amounts incurred.

22. Per the Court's Standing Order re Civil Cases Rule VII, a chart of each attorney's time for each category of tasks performed in this case is attached as **Exhibit 6**. The chart also includes the effective hourly rate charged for each category. A summary of each category is provided below.

a. "**Case Management**" includes all case management tasks for Amazon, Twitch, and the indemnified Amazon customers. These tasks were different in character and far more involved for this multidistrict litigation than in the typical single defendant patent litigation. They include reviewing local rules and docket management (*i.e.* calendar management and drafting requests for extensions of time); initial court filings (*i.e.* notice of appearances, *pro hac vice* applications, and corporate disclosures/certificates of interest); drafting case management statements and attending case management conferences; and providing status updates to Amazon, Twitch, and each indemnified Amazon customer. These relate not only to the multidistrict litigation before this Court, but also to each of the six judicial districts in which PersonalWeb filed the customer lawsuits before consolidation, the proceedings before the JPML, and the appeal before the Federal Circuit. For each of the indemnified Amazon customers, case management tasks also

include drafting individual engagement letters (including investigating potential conflicts), litigation hold memoranda, and indemnification agreements, and advising on issues concerning service (including service under the Hague Convention for non-U.S. entities) and case strategy. Case management also includes weekly interoffice conferences for the team of Fenwick attorneys and paralegals to assign pending tasks and discuss case strategy.

b. "**Multidistrict Litigation**" includes appearances and substantive filings before the JPML.

c. "**Investigate/Respond to PersonalWeb's Claims**" includes investigating and answering PersonalWeb's complaints against Twitch and Amazon's customers and PersonalWeb's counterclaims against Amazon; investigating the accused technology; and providing technology tutorials to this Court during case management conferences.

d. "**Declaratory Judgment Complaint**" includes all work performed to support Amazon's complaint for declaratory judgment.

e. "**PersonalWeb's Motion to Dismiss**" includes all work performed in responding to PersonalWeb's motion to dismiss Amazon's declaratory judgment complaint.

f. "**Motions to Stay**" includes all work performed to support motions to stay filed on behalf of Amazon's customers pending the Court's resolution of Amazon's declaratory judgment motion.

g. "**Motion for Preliminary Injunction**" includes all work performed to support Amazon's motion for preliminary injunction.

h. "**Summary Judgment on Claim Preclusion/Kessler Doctrine**" includes all work performed to support Amazon's summary judgment motion that PersonalWeb's claims against the Simple Storage Service technology is barred by claim preclusion and the *Kessler* doctrine.

i. "**Motion for Judgment on the Pleadings**" includes all work performed to support Amazon's Rule 12(c) motion for judgment on the pleadings as to PersonalWeb's lack of standing to assert claims against Amazon's CloudFront technology.

j. "**Infringement Contentions**" includes all work performed to review and respond to PersonalWeb's infringement contentions under Local Patent Rule 3, and Amazon's opposition to PersonalWeb's motion to amend infringement contentions.

k. "**Invalidity Contentions**" includes all work performed to support Amazon's invalidity contentions under Local Patent Rule 3.

l. "**Damages Contentions**" includes all work performed under Local Patent Rule 3-8.

m. "**Claim Construction**" includes all work performed under Local Patent Rule 4, including exchanging proposed terms, joint claim construction and prehearing, claim construction discovery, claim construction briefs and the hearing, and responding to PersonalWeb's motion for clarification after the Court's claim construction order.

n. "**Fact Discovery**" includes all work performed to support fact discovery, including written discovery, reviewing and producing documents in response to written discovery, and taking and defending depositions.

o. "**Motions to Compel**" includes all work performed to resolve discovery disputes, including meeting and conferring, written correspondence with opposing counsel, and motions to compel.

p. "**Expert Discovery**" includes all work performed to support expert discovery, including interviewing and retaining experts, reviewing expert reports, and drafting *Daubert* motions.

q. "**Summary Judgment for Non-Infringement**" includes all work performed to support Amazon's and Twitch's motions for summary judgment for non-infringement.

r. "**PersonalWeb's Rule 54(b) Motion**" includes all work performed in opposing PersonalWeb's Rule 54(b) motion for entry of judgment for Amazon.

s. "**Federal Circuit Appeal**" includes all work performed to respond to PersonalWeb's appeal to the Federal Circuit of this Court's entry of judgment in favor of Amazon on its summary judgment motion for claim preclusion and the *Kessler* doctrine.

<u>**PERSONALWEB'S MERITLESS LAWSUIT**</u>

23. PersonalWeb has a history of speculative patent litigation that precedes this case. **Exhibit 7** is a list compiled from Docket Navigator of 23 lawsuits PersonalWeb filed before it began this multidistrict litigation campaign, compiled from Docket Navigator. **Exhibit 8** is a list from Docket Navigator of the 91 cases PersonalWeb filed against Amazon's customers in this case, before these cases were dismissed or consolidated before the Judicial Panel on Multidistrict Litigation ("JPML") and this Court.

24. Claims in three of the asserted patents have already been invalidated years before PersonalWeb filed this case. **Exhibit 9** is a copy of IPR2013-00082, Paper 83, May 15, 2014, invalidating claims 1-4, 29-33, and 41 of U.S. Patent No. 5,978,791; **Exhibit 10** is a copy of IPR2013-00596, Paper 33, March 25, 2015, invalidating claim 70 of U.S. Patent No. 7,802,310; and **Exhibit 11** is a copy of IPR2013-00084, Paper 64, May 15, 2014, invalidating claim 1 of U.S. Patent No. 7,945,544.

25. Judge Davila has since invalidated additional claims of the '310 patent under § 101. *PersonalWeb Techs. LLC v. Google, Inc.*, No. 5-13-cv-01317, Dkt. 367 (N.D. Cal. Jan. 31, 2020) (invalidating claims 24, 31, 81, 82, and 86), *appeal docketed*, No. 2020-1543 (Fed. Cir. Mar. 6, 2020).

26. PersonalWeb publicly announced that it "carefully studied" the technology at issue in these cases for a year before filing suit. **Exhibit 12** is a copy of a Law 360 article titled "FanDuel Latest To Face Cloud Computing Patent Suit," published on January 12, 2018, accessible at https://www.law360.com/articles/1001505/fanduel-latest-to-face-cloud-computing-patent-suit.

27. PersonalWeb began this lawsuit by representing in its pleadings and to the JPML that Amazon's customers infringed the asserted patents by using Amazon S3. **Exhibit 13** is a copy of PersonalWeb's memorandum in law in support of its motion for transfer and consolidation before the JPML, *In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834, Dkt. 1-1.

28. PersonalWeb later changed its characterization of the theory to eliminate its focus on S3 and emphasize customer use of Ruby on Rails. **Exhibit 14** is a copy of the May 31, 2018

hearing before the JPML, *In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834, Dkt. 136, in which PersonalWeb purports to accuse Ruby on Rails. **Exhibit 15** is a copy of this Court's later consent to the assignment of all actions in this matter, *In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834, Dkt. 133.

**PERSONALWEB'S FILINGS ON BEHALF OF LEVEL 3**

29. During the case, Amazon challenged PersonalWeb's purported standing to accuse content delivery networks, like Amazon CloudFront, under the agreement that governed PersonalWeb's and Level 3's respective rights in the patents in suit. Amazon was surprised to see that Level 3 later signed on to PersonalWeb's surreply to Amazon's motion for summary judgment, because that brief took a position on standing that appeared to reduce Level 3's own rights under the agreement.

30. During a phone conversation with Mr. David Wier, counsel to nominal plaintiff Level 3 Communications, LLC that took place in February 2019, Mr. Wier indicated that he had not reviewed or signed off on the surreply. Mr. Wier also indicated that he had not reviewed other submissions to the Court filed under his signature, going back several months. (*See* Dkt. 366 at 1.)

31. Amazon sought an early deposition of Mr. Wier to elicit these facts. (*See* Dkt. 366 at 2.) Following discussions with PersonalWeb and Level 3, Amazon agreed to take the deposition off calendar, and the parties filed a stipulation that clarified Level 3's position regarding the standing issue in the motion. (Dkt. 369.)

32. I took Mr. Wier's deposition on September 5, 2019, in Westlake, California. Mr. Michael Sherman, counsel for PersonalWeb, attended the deposition. Mr. Wier was represented by Mr. Christopher Benson. A true and correct copy of excerpts from the Mr. Wier's deposition is attached as **Exhibit 16**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Francisco, California on this 20th day of March 2020.

Todd R Gregorian

Todd R. Gregorian

FENWICK & WEST LLP
ATTORNEYS AT LAW