# EXHIBIT 16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION ) | |
| AMAZON.COM, INC., AND AMAZON WEB SERVICES, INC., PLAINTIFFS, vs. PERSONALWEB TECHNOLOGIES, LLC AND LEVEL 3 COMMUNICATIONS, LLC, DEFENDANTS. ) | Case No. 5:18-md-02834-BLF -AND- 5:18-cv00767-BLF |
| PERSONALWEB TECHNOLOGIES, LLC AND LEVEL 3 COMMUNICATIONS, LLC, COUNTER-CLAIMANTS, vs. AMAZON.COM, INC., AND AMAZON WEB SERVICES, INC., COUNTER-DEFENDANTS. ) | |

CONFIDENTIAL - ATTORNEYS' EYES ONLY

30(B)(6) AND HIS PERSONAL CAPACITY VIDEOTAPED DEPOSITION OF DAVID WIER, TAKEN ON BEHALF OF PLAINTIFFS AT 30700 RUSSELL RANCH ROAD, SUITE 250, WESTLAKE VILLAGE, CALIFORNIA, COMMENCING AT 12:38 P.M. ON THURSDAY, SEPTEMBER 5, 2019, BEFORE D'ANNE MOUNGEY, CSR 7872.

JOB NO. 3499146-B

PAGES 1 - 148

notice of intent to file within its field of use?

A That is correct.

Q I believe you have Exhibit 37, which is a document entitled "Notice of Errata."

(Whereupon, Plaintiffs' Exhibit 37 was marked for identification by the Court Reporter.)

BY MR. GREGORIAN:

Q Have you seen this document before?

A I don't recall this exact document. 03:53:06

Q Okay. Do you -- well, do you understand what it is?

A Yes, I do.

Q If you look on the second page, the document states: 03:53:49

"PersonalWeb Technologies, LLC and Level 3 Communications, LLC provide notice that the signature block of David D. Wier, counsel for Level 3 03:53:59 Communications, LLC, was erroneously included within the sur-reply deemed filed by the court at docket number 354-1."

And the sentence continues on. 03:54:13

A Uh-huh.
Q Was your signature erroneously included on the sur-reply?
A Yes.
Q When did you first discover that? 03:54:27
MR. SHERMAN: Counsel, before Mr. Wier answers that question, in docket number 366, the filing on the second supplemental case management statement by Fenwick & West on this case, February 21st. 03:54:53
MR. GREGORIAN: Is there an objection to the question?
MR. SHERMAN: Yes. You have represented to the court that you will not be pursuing this line of inquiry and now you are pursuing this line of 03:55:02 inquiry.
In docket number 366, you stated, among other things -- when I say "you," your office stated, among other things, you recently became aware that PersonalWeb represented positions to the 03:55:16 court on behalf of Level 3 without first having obtained Level 3's consent, and it goes on and on and on.
You mentioned -- with all the details that you were then aware of -- purportedly aware of, you 03:55:28

indicate to the court then on February 21, 2019, that it's for that reason that you are seeking to take David Wier's deposition.

And thereafter, thereafter, on February 26, 2019, docket number 369, Amazon withdraws its February 15, 2019, notice of deposition of counsel for Level 3, but reserves its right to seek a deposition of Mr. Wier as a percipient witness for other topics relevant to the case. 03:55:59

MR. GREGORIAN: Right. 03:56:22

MR. SHERMAN: This stipulation resolves the issues raised in Amazon's second supplemental case management statement docket 366.

MR. GREGORIAN: Which was the alleged Rule 11 violation. Now I'm asking about this as the foundation of the dispute between Level 3 and PersonalWeb about the field of use provision. 03:56:33

MR. SHERMAN: Counsel, representations were made to the court. You represented to the court that you withdraw the notice of deposition and you reserved your right to seek a deposition of Mr. Wier as a percipient witness for other topics. 03:56:47

Okay? The topics that were therein included, include exactly the question of: When did you first discover that, which was the pending 03:57:10

question.

MR. GREGORIAN: Right. Which now relates to a different topic.

MR. SHERMAN: What topic?

MR. GREGORIAN: Which is when a dispute arose in which PersonalWeb and Level 3 were adverse, such that the common interest doesn't apply. 03:57:19

MR. SHERMAN: Okay. So with that back and forth as a predicate, let's make sure that we keep that in mind in your asking of this or any other follow-on questions. 03:57:36

So the question was: When did you first discover that?

MR. BENSON: Why don't you read the question back because I'm lost. Sorry. 03:57:50

BY MR. GREGORIAN:

Q When did you first discover that your signature was erroneously included on the sur-reply?

A It would have been early February 2019.

Q And did you communicate that fact to PersonalWeb? 03:58:05

THE WITNESS: I just want to make sure I can answer the question, because I know you guys have a dispute.

Is Mr. Sherman okay with me answering that 03:58:29

question?

MR. SHERMAN: With a yes or a no.

THE WITNESS: Okay.

Yes.

BY MR. GREGORIAN: 03:58:37

Q And was it around that same time?

A Yes.

Q Shortly thereafter you sought your own separate counsel for this litigation?

A Yes. 03:58:49

Q Do you recall, sitting here, when it was that you retained that separate counsel?

A I do.

Q When was that?

A It was between at the time that I received 03:59:00 notice regarding the signature from an associate in your office to this date, which would be February 19th, 2019.

I had some personal things going on in my life at the time that resulted in me having to take 03:59:29 a leave of absence and I needed another law firm to handle this.

My son was in intensive care for a week and then in the hospital for the entire month with heart problems and pneumonia, so I was not performing my 03:59:44

duties in February as much as I normally would be, given I was in the hospital 15 to 16 hours a day.
Q Sure. And I'm not seeking to get into the reasons why --
A Okay. That's when I hired my counsel 04:00:06 Foley & Lardner.
Q And Stubbs, Alderton withdrew as Level 3's counsel shortly thereafter; correct?
MR. SHERMAN: Was it March 2019?
THE WITNESS: Yeah, it was in March 2019. 04:00:25
BY MR. GREGORIAN:
Q That's your recollection?
A That's my recollection. It was somewhere around there, yeah.
I think the docket might give an exact 04:00:35 date, I think.
MR. SHERMAN: Yeah.
MR. GREGORIAN: Mark this as 38.
(Whereupon, Plaintiffs' Exhibit 38 was marked for identification by the Court Reporter.)
BY MR. GREGORIAN:
Q So Exhibit 38 is a document entitled "Declaration of Sandeep Seth in Support of PersonalWeb's Administrative Motion for Relief to

File a Sur-reply to Amazon.com, Inc., and Amazon Web Services, Inc.'s Motion for Summary Judgment on Declaratory Judgment Claims and Defense under the Claim Preclusion and Kessler Doctrines."

Have you seen this document before? 04:01:37

A Yes.

Q And when did you first become aware of this document?

A In early February 2019, at the same time that the associate from Fenwick & West called me. 04:01:52

Counsel, you might have to switch out exhibits. This one seems to have attorney work product on it.

MR. GREGORIAN: Sorry. Can we --

MR. BENSON: Is there some on this one or 04:02:17 is that just your copy?

MR. GREGORIAN: I think I just notated this one or circled something.

BY MR. GREGORIAN:

Q So this document contains an attachment, 04:02:38 Exhibit 1, that is the draft -- well, that is the sur-reply brief.

Do you see that?

A I do, yes.

Q On page 2 of the sur-reply at line 25, this 04:02:59

brief says --

MR. BENSON: Hold on. I'm sorry. Okay.

BY MR. GREGORIAN:

Q (Reading):

"As Level 3's is an ISP, Internet service provider, its exclusive field does not extend generically to all CDNs as argued by Amazon, but is expressly limited to CDNs deployed at ISPs." 04:03:12 04:03:25

Quote:

"Many of said CDN servers being at ISP sites," close quote.

"This limitation is critical because no evidence is presented that CloudFront operates as an ISP." 04:03:37

Does Level 3 agree with that statement?

A Level 3 does not agree with that statement in totality. Instead, Level 3 believes that Level 3's field of use is set forth in the wording of section schedule 1.2 to Exhibit 26. 04:03:51

Q And Level 3 reads: "That Schedule has not limiting its field of use to CDNs deployed at ISPs"; 04:04:16

correct?

A Level 3 reads -- the language of section 1.2 as it -- as it states in that paragraph there where -- particularly with regard to ISPs, many have said CDN servers being an ISP site is only a portion 04:04:39 of the overall statement. There are further words.

And Level 3 believes that the entire statement should be taken into account when defining the field of use.

Q Okay. And taking into account how, as a 04:04:57 limitation?

A Just taking into account as a whole.

Q So looking at that field of use provision in Exhibit 26, is it Level 3's position that its field of use is limited to CDNs in which a 04:05:20 customer's content is served faster on average than if served from the customer's origin server?

MR. SHERMAN: That misstates the witness's testimony.

THE WITNESS: No. That is not Level 3's 04:06:03 position, because there's more to the statement than that.

BY MR. GREGORIAN:

Q So --

A The statement then reads: "Or the CDN can 04:06:16

typically serve more users than a customer's origin server alone, or at least some customer -- it's all -- I'll just say that the -- let the record reflect that Level 3 believes that the entire statement is defining of the Level 3 field of use. 04:06:34

MR. SHERMAN: "Statement" meaning 1.2?

THE WITNESS: Schedule 1.2, yeah.

BY MR. GREGORIAN:

Q Okay. But turning back to the sur-reply brief -- 04:06:50

A Yeah.

Q -- you testified that Level 3 does not agree its field of use is expressly limited to CDNs deployed at ISPs; correct?

A I did testify in that manner, yes. 04:06:59

MR. SHERMAN: Counsel, you represented 15 minutes ago that this line of inquiry was designed to learn, quote, "when PersonalWeb and Level 3 were adverse such that the common interest privilege does not apply," close quote. You seem to 04:07:18 be ignoring that representation.

BY MR. GREGORIAN:

Q So at least as of the date of this filing, Level 3 and PersonalWeb had a dispute over the field of use provision because Level 3 disagrees with what 04:07:32

PersonalWeb said in this brief; correct?
A Level 3 took its name off this because Level 3 did not agree or disagree with that statement. Level 3 believes that the exclusive field is defined in schedule 1.2. And if this would 04:07:51 have quoted schedule 1.2 in its entirety, Level 3 would have agreed.
So expressly limiting it to CDNs deployed at ISPs is not what schedule 1.2 says.
Q Is a CDN that is not deployed at ISPs 04:08:10 within Level 3's field of use?
MR. SHERMAN: Let me object to that question on the grounds that the information sought seeks the mental impressions and work product of Level 3's legal counsel and -- 04:08:37
MR. GREGORIAN: I mean, do you represent Level 3 in this deposition?
I think that's for Mr. Benson.
MR. SHERMAN: I represented Level 3 up to March 2019, Counsel. 04:08:49
MR. GREGORIAN: Right.
MR. SHERMAN: Please don't interrupt me. I have not interrupted you.
And so moreover, to the extent that answering this question would divulge any 04:09:02

communications made between Level 3 and PersonalWeb in the pursuit of the matters in common interest, then we would assert the common interest privilege, and to that extent, instruct the witness not to answer. 04:09:22

MR. GREGORIAN: Sure. Just for the record, since you've done it several times, you don't represent Level 3 and so our view is you don't have a right to object on behalf of Level 3. Your common interest privilege objection is well taken. 04:09:32

THE WITNESS: Yeah. Level 3 has stated in the hearing back in late July does not have a position on these arguments and had mentioned that to the judge in the case. And so that's -- from a corporate perspective, that is Level 3's answer 04:09:59 still today as what was told to the judge back in July and also what was filed in a statement about a month before that.

BY MR. GREGORIAN:

Q Okay. And does Level 3's failure to agree 04:10:14 with the statement in the sur-reply form the basis of an accusation from PersonalWeb that it failed to cooperate in the litigation?

MR. SHERMAN: I'm going to object to that question in that it expressly seeks communications 04:10:31

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) ss.

I, D'Anne Moungey, C.S.R. No. 7872 in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was { } was not required.

I further certify that I am not interested in the event of the action.

Witness my hand this 11th day of September, 2019.

D'Anne Moungey, C.S.R. No. 7872