1  MICHAEL A. SHERMAN (SBN 94783)
   masherman@stubbsalderton.com
2  JEFFREY F. GERSH (SBN 87124)
   jgersh@stubbsalderton.com
3  SANDEEP SETH (SBN 195914)
   sseth@stubbsalderton.com
4  WESLEY W. MONROE (SBN 149211)
   wmonroe@stubbsalderton.com
5  STANLEY H. THOMPSON, JR. (SBN 198825)
   sthompson@stubbsalderton.com
6  VIVIANA BOERO HEDRICK (SBN 239359)
   vhedrick@stubbsalderton.com
7  **STUBBS, ALDERTON & MARKILES, LLP**
   15260 Ventura Blvd., 20th Floor
8  Sherman Oaks, CA 91403
   Telephone:    (818) 444-4500
9  Facsimile:    (818) 444-4520

10  **Attorneys for PersonalWeb Technologies, LLC**

11  UNITED STATES DISTRICT COURT

12  NORTHERN DISTRICT OF CALIFORNIA

13  SAN JOSE DIVISION

14  IN RE PERSONAL WEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION

15

| | |
|---|---|
| 14  IN RE PERSONAL WEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | **CASE NO.: 5:18-md-02834-BLF** |
| 16  AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., | **CASE NO.: 5:18-cv-00767-BLF** |
| Plaintiffs, | **CASE NO.: 5:18-cv-05619-BLF** |
| v. | **PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS** |
| PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC, | |
| Defendants. | |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, | Date:    August 6, 2020 |
| Counterclaimants, | Time:    9:00 a.m. |
| v. | Dept.:    Courtroom 3, 5th Floor |
| AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., | Judge:    Hon. Beth Labson Freeman |
| Counterdefendants. | |
| PERSONALWEB TECHNOLOGIES, LLC, a | |

1   Texas limited liability company, and
    LEVEL 3 COMMUNICATIONS, LLC, a Dela-
2   ware limited liability company

3                       Plaintiffs,

4   v.

5   TWITCH INTERACTIVE, INC. a Delaware
    corporation,
                        Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION AND BRIEF SUMMARY OF APPLICABLE LAW .............................. 1

II.     STATEMENT OF FACTS ........................................................................................... 2

      A.      Plaintiff PersonalWeb's Extensive Prefiling Investigation and Reliance on
            Technical Experts in the Relevant Field Demonstrated to It that Its Claims Had
            Merit, Were Not Baseless and Had Substantive Strength ........................................ 2

      B.      Multiple Prefiling Legal Opinions Show the Substantive Strength of
            PersonalWeb's Position that No Preclusion Doctrines Barred These Cases............. 3

      C.      PersonalWeb Never Accused the Entire Web of Infringing Its Patents. ................... 4

      D.      PersonalWeb's Reliance on the Operation of HTTP/1.1 Conditional GET
            Requests to Meet the "Permitting" Claim Limitations Was Technically and
            Legally Reasonable and Shows Its Cases' Substantive Strength. .............................. 5

      E.      Amazon Makes No Argument That PersonalWeb's '544 Patent Claim was
            Baseless From the Start. ........................................................................................... 7

      F.      PersonalWeb's Infringement Theory Remained Consistent Through the Entire
            Case, and Was Presented Consistently Throughout. ................................................. 7

            1.      Amazon Is Dishonest in Its Assertion that PersonalWeb Impermissibly or
                  Unreasonably Changed Its Positions on Infringement. .................................. 10

            2.      PersonalWeb Did Not Change Its Infringement Theory After the Markman
                  Hearing.......................................................................................................... 12

            3.      PersonalWeb Acted Reasonably with Respect to the '791 and '544
                  Patents........................................................................................................... 12

      G.      Throughout this Litigation PersonalWeb Sought to Avoid Needless Motion
            Practice, Demonstrating the Reasonable Manner in Which It Conducted Itself. ...... 13

            1.      PersonalWeb Sought to Resolve this Case One Business Day After the
                  Adverse Claim Construction Order, and Consistently Thereafter.................. 13

            2.      PersonalWeb Responded Promptly and Transparently to Assertions of
                  Deficiencies by Any Complaining Website Operator/Defense Counsel. ......... 15

      H.      PersonalWeb Never Tried to Unravel the MDL that Amazon Opposed.................... 16

      I.      Amazon Builds Its Motion Around Twin Themes of "Extracting Nuisance
            Settlements" and "Sham Declarations" Knowing that PersonalWeb Never
            Conducted Itself in that Manner. ............................................................................. 17

III.   APPLYING THE FACTS TO THE LAW SHOWS THAT AMAZON FALLS FAR SHORT OF PROVING THAT PERSONALWEB 'S CONDUCT WAS "SO 'EXCEPTIONAL' AS TO JUSTIFY AN AWARD OF FEES". *OCTANE*, 555. ............................ 19

    A.   The Subject Lawsuits Had Been Extensively Researched and Infringement Was Verified by Qualified Expert Opinions, Showing Both Substantive Strength and PersonalWeb Being Poised to Engage Only in Reasonable Litigation Conduct. ....................................................................................................................... 19

    B.   None of Claim Preclusion, "Basic HTTP," and a Subsequent Loss in Claim Construction Made the Causes of Action Not Substantively Strong. .............................. 20

    C.   There Was Nothing Sham About the Bermeister/Hadley Declarations. ................... 21

    D.   Nothing About PersonalWeb's Asserted Infringement Theory Is Sanctionable. ...... 22

    E.   PersonalWeb's Conduct Post-Claim Construction Is a Model of Reasonable Litigation Conduct. ................................................................................................... 23

    F.   PersonalWeb Never Demanded a Nuisance Settlement from Any Defendant, and Argument to the Contrary is Outrageous. ........................................................... 23

    G.   Amazon Brings Its Motion with Unclean Hands ...................................................... 23

IV.   IF THE COURT FINDS THIS CASE EXCEPTIONAL, THE REASONABLENESS AND SCOPE OF AMAZON'S FEES SHOULD BE DETERMINED SEPARATELY ........................................................................................................................ 25

V.   CONCLUSION ..................................................................................................................... 25

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                                                          **Page(s)**

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008) ................................................................................ 22

*AdjustaCam, LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017)........................................................................... 23, 24

*Andersen Manufacturing Inc. v Wyers Products Group Inc.*,
   2019 WL 4007772 (D. Colo.) ................................................................................ 23

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
   932 F.3d 1371 (Fed Cir. 2019)............................................................................... 21

*Bayer CropScience AG v. Dow AgroSciences LLC*,
   851 F.3d 1302 (Fed. Cir. 2017)............................................................................. 20

*Bovino v Levenger Company*,
   2016 WL 1597501 (D. Colo.) ............................................................................... 22

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
   2015 WL 4396201 (N.D. Cal. July 17, 2015)................................................... 22, 23

GET requests, HTTP,
   200 or ................................................................................................................ 20

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
   2016 WL 4242216 (N.D. Cal. Aug. 11, 2016) ...................................................... 25

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012)............................................................................. 25

*Hockeyline, Inc. v. STATS LLC*,
   No. 13-CV-1446 (CM), 2017 WL 1743022 (S.D.N.Y. Apr. 27, 2017)..................... 2, 5

*In re Protegrity Corporation*,
   2017 WL 747329 (N.D. Cal. Feb. 27, 2017) .......................................................... 20

*Intellectual Ventures II LLC v. FedEx Corp.*,
   U.S. Dist. LEXIS 169673, at *21 (E.D. Tex. Mar. 28, 2019)....................................30

*Location Based Servs., LLC v. Niantic, Inc.*,
   No. 17-CV-04413 NC, 2018 WL 7569160 (N.D. Cal. Feb. 16, 2018)...................... 19

*Lumen View Technology LLC v. Findthebest.com, Inc.*,
   811 F.3d 479 (Fed. Cir. 2016).............................................................................. 20

*Munchkin, Inc. v. Luv n' Care, Ltd.*,
   No. 2019-1454, 2020 WL 3041266 (Fed. Cir. June 8, 2020) (reversing...................... 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)............................................................................................ 1, 2

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Oplus Techs., Ltd. v. Vizio, Inc.*,
　782 F.3d 1371 (Fed. Cir. 2015) ................................................................................. 23

*Pannonia Farms Inc. v. Re/Max Int'l, Inc.*,
　407 F. Supp. 2d 41 (D.D.C. 2005) ............................................................................ 21

*Phigenix, Inc. v. Genentech Inc.*,
　No. 15-CV-01238-BLF, 2019 WL 2579260 (N.D. Cal. June 24, 2019) ..................... 23

*Raylon, LLC v. Complus Data Innovations, Inc.*,
　700 F.3d 1361 (Fed. Cir. 2012) ................................................................................. 21

*SFA Sys., LLC v. Newegg Inc.*,
　793 F.3d 1344 (Fed. Cir. 2015) ............................................................................ 2, 21

*Shipping and Transit, LLC v. 1A Auto, Inc.*,
　283 F. Supp. 3d 1290 (2017) ..................................................................................... 20

*Spineology, Inc. v. Wright Med. Tech., Inc.*,
　910 F.3d 1227 (Fed. Cir. 2018) ................................................................................. 21

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
　892 F.3d 1175 (Fed. Cir. 2018) ............................................................................ 2, 25

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
　726 F.3d 1306 (Fed. Cir. 2013) ................................................................................. 19

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
　2017 WL 1235766, (S.D. Cal. Apr. 4, 2017) ............................................................. 24

*Yufa v. TSI Inc.*,
　No. 09-cv-1315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ...................... 19

**Statutes**

FRCP 54(d)(2)(C) ............................................................................................................ 26

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**

**CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF**

I.      INTRODUCTION AND BRIEF SUMMARY OF APPLICABLE LAW

Defendants Amazon.com, Inc., Amazon Web Services, Inc. (collectively, "AWS") and Twitch Interactive, Inc.'s ("Twitch") (collectively "Amazon") primary attack on the strength of Personal-Web's claims is Judge Gilstrap's prior claim construction, one that is at odds with Judge Davis' claim construction in the prior Texas action, neither of which the Court followed.  Conversely, the strength of PersonalWeb's claims is shown by the multiple prefiling opinions by legal and technical experts PersonalWeb received and relied on.  Further, PersonalWeb had a good faith basis to assert claims that indisputably involved website content with more than ETags – the content also required the website operator to choose to use optional "max-age" directives that tell a browser the term for which it is allowed to cache and use the content. (Declaration of Dr. Samuel H. Russ ("Russ Decl.") at ¶¶ 11-29; Declaration of Sandeep Seth ("Seth Decl.") at ¶¶ 6-9, 13-25.)

Amazon cannot justify a fee award based on "exceptional" status because this case neither lacked "substantive strength" nor was litigated in an "unreasonable manner." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Unable to meet either of those standards, Amazon's fee motion ("Motion") attempts to concoct the illusion of a meritless series of cases litigated in bad faith by stringing together false and misleading representations, out-of-context, non-final Court observations, and unsupported arguments. Knowing the pursuit of nuisance value settlements would be highly relevant in the context of an *Octane* motion, Amazon presents that falsehood as well, in its effort to concoct an exceptional case scenario where none exists.

*Octane* teaches that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555. An exceptional case must actually "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

"As the Supreme Court has cautioned, fee awards are not to be used as a 'penalty for failure to win a patent infringement suit.'" *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1184 (Fed. Cir. 2018) (quoting *Octane*, 572 U.S. at 548). "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive strength of the party's litigating position' that is relevant to an

1   exceptional case determination, not the correctness or eventual success of that position." *SFA Sys.,*

2   *LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). Further, exceptionality is not determined

3   according to "[h]indsight judgment on the merits." *Hockeyline, Inc. v. STATS LLC*, No. 13-CV-1446

4   (CM), 2017 WL 1743022, at *4 (S.D.N.Y. Apr. 27, 2017). Rather, "a case presenting either subjective

5   bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to

6   warrant a fee award," *Octane* at 555, as determined on a "case-by-case" basis and "considering the

7   totality of the circumstances." *Id.* at 554. In making the determination, courts may consider factors

8   such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal compo-

9   nents of the case) and the need in particular circumstances to advance considerations of compensation

10  and deterrence." *Id.* at 554 n.6 (citation omitted).

11      Amazon was required to both present supporting evidence and demonstrate either a lack of

12  "substantive strength" or litigation in an "unreasonable manner." *Id.* at 545. The Opposition that fol-

13  lows and the attached evidence show that despite Amazon's mudslinging, it fails at both.

14  **II.      STATEMENT OF FACTS**

15          **A.      PersonalWeb's Extensive Prefiling Investigation and Reliance on Technical Ex-
                        perts in the Relevant Field Demonstrated to It that Its Claims Had Merit, Were
16                      Not Baseless and Had Substantive Strength.**

17      In 2017 through early 2018 before any complaints were filed, PersonalWeb conducted an ex-

18  tensive and diligent review of the patents, the claims, the prior art, and the potential defendants, aided

19  by multiple outside patent counsel and technical experts, and was provided multiple opinions of va-

20  lidity and infringement. (Declaration of Kevin Bermeister ("Bermeister Decl.") at ¶¶4-10, Ex. 1; Dec-

21  laration of Michael A. Sherman ("Sherman Decl.") at ¶¶ 2-7; Seth Decl. ¶¶ 6-24; Russ Decl. ¶¶ 5-29;

22  Declaration of Dr. Brian Siritzky ("Siritzky Decl.") at ¶¶ 5-13.)

23      PersonalWeb was aided in its investigation by its then-primary outside counsel, Sandeep

24  Seth—a patent litigator with 25 years of experience. He was joined by attorneys Brian Siritzky, PhD

25  (the attorney who wrote the True Name patents) and for certain purposes by Lawrence Hadley (an

26  attorney who had handled the Texas action and provided inputs on its procedural history), and ulti-

27  mately a group of litigators from Stubbs Alderton & Markiles, LLP, headed by Michael A. Sherman,

28  assisted by patent litigators Ted Maceiko and Wesley Monroe. (Sherman Decl. ¶¶ 2-5.)

In late 2016/early 2017, PersonalWeb began curating a list of website operators which it believed were infringing its True Name patents through cache-control operations. Pre-suit investigation in 2017 and early 2018 revealed that some website operators on that list did not engage in infringing activities. This process of creating and winnowing a list of potential defendants resulted in a list that started at thousands of operators, reduced over time to several hundred. (Bermeister Decl. ¶¶ 7-8.)

PersonalWeb's counsel was advised in the latter half of 2017 by Dr. Samuel Russ, a professor of electrical and computer engineering. Dr. Russ investigated whether the True Name patents were infringed by various website operators and verified PersonalWeb's infringement findings, culminating in his written opinions, which included detailed claim charts, regarding validity and that the patents were infringed by website operators that controlled the use of content based identifiers for webpage cache-control. (Russ Decl. ¶¶ 5-29, Ex. 3.)  Dr. Russ was assisted by patent litigation support company Patbak, a team of engineers and computer technologists, who researched and assembled the detailed facts for each website operator believed to infringe, for each patent claim element. (*Id.* at ¶¶ 14-15; Seth Decl. ¶¶ 7, 22, 24.)  Similar opinions were formed by Dr. Siritzky, an attorney with great technical expertise in computer science, distributive computing, and the internet. (Siritzky Decl. ¶¶ 9-13.)

Before filing each of the 55 complaints in January 2018, and in addition to having obtained the expert opinions as to each, PersonalWeb's legal counsel separately confirmed for each defendant, both factually and legally, that the detailed allegations of each complaint stated claims of patent infringement of the patents asserted. (Seth Decl. ¶ 24.) During this pre-suit investigation, legal and engineering professionals expended thousands of hours on the aforementioned activities. (Sherman Decl. ¶¶ 4-5.) This pre-suit investigation is a textbook example of a process that determined substantive strength, demonstrating PersonalWeb's objective reasonableness in pursuing its claims.

### B.    Multiple Prefiling Legal Opinions Show the Substantive Strength of Personal-Web's Position that No Preclusion Doctrines Barred These Cases.

Even before dismissing the Texas action, *PersonalWeb v. Amazon.com, Inc., et al.* No. 6:11-cv-658 (E.D. Tex.), PersonalWeb's counsel in that action had analyzed claim preclusion and had delivered an opinion to Mr. Bermeister, PersonalWeb's Non-Executive Chairman, that post-judgment acts by Amazon would not be precluded from future infringement claims by a dismissal with prejudice.

Recognizing the possibility of a defendant raising preclusion in defense, and with PersonalWeb desiring greatest confidence, prefiling, present legal counsel again conducted that analysis, and concluded it unlikely that either claim preclusion or the *Kessler* doctrine would preclude the claims. PersonalWeb relied on those opinions that demonstrate the substantive strength in proceeding. (Bermeister Decl. ¶ 4, Ex. 1; Sherman Decl. ¶ 6; Monroe Decl. ¶ 25, Ex 2.)

In contrast, Amazon asserts that in the Texas action, "PersonalWeb had no valid claim in that case; it had no choice but to dismiss its complaint with prejudice after claim construction." (Mot. at 1:26-27.) Amazon has not cited a shred of evidence supporting that dismissal was due to the claim construction order. Amazon's persistence in referencing the reasons for dismissal of the Texas action demonstrates the significance of the Hadley and Bermeister declarations that address this issue.

Yesterday's 25-page, precedential opinion of the Federal Circuit affirming this Court's summary judgment order, while adverse to PersonalWeb, illustrates that the reach of *Kessler* had not been a well-settled issue, and that it was reasonable to proceed with these actions, despite resolution of the Texas action. In that decision, the Federal Circuit extended *Kessler* to situations where non-infringement had not previously been adjudicated. (*In re PersonalWeb*, Case No. 19-1918, Dkt. 123.)

## C.     PersonalWeb Never Accused the Entire Web of Infringing Its Patents.

Amazon argues that the claims PersonalWeb filed were baseless because they "accused basic HTTP operations ... purportedly to cover the entire world wide web." (Mot. at 10:5-9.) Not true! Amazon's only support for this aspersion is a *question* the Court posed to PersonalWeb, which PersonalWeb answered, where context disproves Amazon's deceitful argument.  **Court's question**: "So you are going to go after every website in the universe? Is that what you are going to do?":

Mr. Monroe: **No, because they don't all use content-dependent names**.

The Court: Okay. I don't know what percentage do.

Mr. Monroe: Well -- Mr. Sherman: The ones we have asserted claims against, we, through our own prefiling suit determination, concluded did. And those that didn't, we didn't file suit against in those instances where a website operator did approach us and provide some information.

The Court: Okay. **So it's use of a content-dependent name with a maximum age**

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1    **value**, and there was a third thing, Mr. [Monroe]?

2    Mr. Monroe: And used specific aspects of HTTP, basically responding to conditional

3    gets with 304 and 200 messages.

4    The Court: Okay. That's helpful. Okay.

5    (Dkt. 573 at 52:19-53:10 (emphasis added).) PersonalWeb's infringement contentions specify using

6    the combination of HTTP/1.1 cache-control headers (*e.g.*, max-age directives) and a content-based

7    identifier as an ETag for webpage cache-control. (*See, e.g.,* Dkt. 315-13, 340-12, 340-13.)

8    Amazon implies that something in the "publicly available" "basic HTTP" could not possibly

9    infringe the True Name patents, without explaining what "basic HTTP" means. If Amazon's point is

10   that "basic HTTP" came before the True Name patents and "basic HTTP" was public and therefore

11   prior art, it is incorrect. Neither cache-control headers nor ETags were in HTTP/1.0; both were added

12   in HTTP/1.1, *after* the True Name patents.  (Declaration of Erik de la Iglesia ("de la Iglesia Decl.") ¶¶

13   3-6, 12.) Only website operators that used max-age directives and ETags (neither existed in HTTP/1.0

14   and neither are required to be used by HTTP/1.1), along with the use of a content-based identifier as

15   an ETag (not in HTTP *at all*) were accused of infringement—hardly the "entire world wide web." (*Id.*)

16   Likewise, the use of fingerprints in URIs of asset files, which forms part of the infringement accusa-

17   tions for the '544 patent, is wholly outside of the HTTP/1.1 protocol and is another added layer of

18   design choice alleged against the first group of website operator defendants. (*Id*; *see, e.g., Personal-*

19   *Web v. Airbnb*, 5:18-cv-00149, Dkt. 1 ("Initial Airbnb Complaint") at ¶¶ 21, 65.)

20   As to Amazon's references to the number of filed suits, PersonalWeb sued website operators

21   rather than hosting/delivery services (like Amazon S3) because PersonalWeb believed that only the

22   website operators were the direct infringers, not the hosting/delivery services. Some claim limitations

23   were alleged to be met by website operator *choices* in which website hosting service an operator chose

24   and how the operator used that service (*e.g.* its use and setting of max-age values). (Initial Airbnb

25   Complaint ¶¶ 22, 29-33.) As such, the America Invents Act required PersonalWeb to sue each website

26   operator individually, across the country as personal jurisdiction required. (Monroe Decl. ¶ 26.)

27       **D.**    **PersonalWeb's Reliance on the Operation of HTTP/1.1 Conditional GET Re-
     quests to Meet the "Permitting" Claim Limitations Was Technically and Legally**

28   **Reasonable and Shows Its Cases' Substantive Strength.**

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

Amazon also argues that PersonalWeb's infringement case was baseless from the beginning because the operation of HTTP conditional GET requests do not (1) determine if content is licensed or (2) permit or not permit content to be provided or accessed. (Mot. at 2:27-3:9, 9:12, 10:2.) But, other than (1) Judge Gilstrap's prior claim construction order and Amazon having won on claim construction regarding "unauthorized or unlicensed," and (2) Amazon having won on summary judgment regarding permitting/not permitting, Amazon presents no evidence or argument why PersonalWeb's position on either of these issues was unreasonable or baseless in any way.  The supporting evidence shows reasonableness and objective strength of the arguments.

Regarding determining if content is licensed, Amazon does not even attempt to demonstrate by a preponderance of the evidence that PersonalWeb's infringement positions were baseless in light of either Judge Gilstrap's or Judge Davis' claim constructions.  Amazon's only argument why PersonalWeb's infringement position was baseless from the beginning, other than losing on summary judgment, is that Judge Gilstrap's claim construction "made clear that none of the technology accused here infringed." (Mot. at 9:16-17.) But Amazon presents no analysis or support as to why Judge *Gilstrap's* claim construction made anything *in this case* "clear." Nor does Amazon address Judge *Davis' opinion,* which came to the opposite conclusion on this issue in the prior Texas action. (Dkt. 412-7.) That *this Court* ultimately concluded that "neither the Davis Order nor the Gilstrap Order is directly on point with the instant dispute" speaks volumes as to *when* "clarity" was first demonstrated as to these claims and this claim language. (Dkt. 485 at 11:24-27.)

Regarding "permitting/not permitting," Amazon gives no reason why the HTTP specification renders PersonalWeb's infringement position baseless. The Court's summary judgment order does not state or imply that PersonalWeb's position was baseless or unreasonable. PersonalWeb's reading of "permitting/not permitting" claim elements was reasonable because (a) the max-age value received in the original HTTP 200 response set an original time that the content was permitted to be used; and (b) the 304 response gave new permission to use the content for the amount of time set by the max-age value.  (Seth Decl., ¶¶ 9, 14-15, 19.) The elements of a browser having to send a conditional GET request with a content-based identifier ETag for an asset in the browser's cache, and being allowed to use the cached asset if an HTTP 304 response was received from a server, and not being allowed to

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1    use the cached asset if an HTTP 200 response was received, were in the very first complaint filed in

2    January 2018. (Initial AirbnB Complaint, ¶¶ 23-31 ("authority to access"), ¶¶ 58-59 ("to allow the

3    data item to be provided to…", ¶¶ 77-78 ("selectively permits the particular data item to be made

4    available for access…".) If this read was so clearly baseless and unreasonable, why did Amazon not

5    ever raise this issue with PersonalWeb, formally or informally, before including it in responses to

6    contention interrogatories on July 12, *2019*, more than a month after the Markman hearing? And why

7    did Amazon not suggest it would make the case exceptional until filing the instant motion? (Monroe

8    Decl., Ex. 3, 4.) The reasonableness of PersonalWeb's reading of "permitting/not permitting" claim

9    elements is further bolstered by the opinions of Dr. Russ that also included details such as website

10   operator-selected max-age directives in cache-control headers establishing the initial time that website

11   content was allowed to be cached, and when the max-age passed and the content was no longer allowed

12   to be used by a browser, that it must then send a conditional GET request with the content based ETag.

13   (Russ Decl. ¶¶ 11-14, 21-23, 25-27.)

14       **E.    Amazon Makes No Argument That PersonalWeb's '544 Patent Claim was Base-
              less From the Start.**

15

16       PersonalWeb dropped the '544 patent from its counterclaim against Amazon on October 16,

     2018 and it was not in its infringement contentions for Amazon. (Amazon Dkt. 71, 113-2.) Personal-
17
     Web's infringement theory for the '544 patent involves fingerprints in URIs/RoR, which S3 does not
18
     do. (5:18-cv-5619 ("Twitch case"), Dkt. 13, ¶¶ 75, 76, 78; Dkt. 340-13 at 5-6, 12-13.) The '544 pa-
19
     tent was asserted against Twitch, but the infringement accused does not involve authorized/licensed,
20
     or permitting/not permitting.  Further, the Court's claim preclusion order on summary judgement ex-
21
     pressly did not apply because it only applied to infringement solely by S3.  (Dkt. 394.)
22

23       **F.    PersonalWeb's Infringement Theory Remained Consistent Through the Entire
              Case, and Was Presented Consistently Throughout.**

24       From the day PersonalWeb filed its first case, its "infringement theory" was and remained the

25   same. PersonalWeb alleged that websites infringe when they (1) generate a fingerprint of the content

26   of files used in a webpage and including the fingerprint in URIs of the files (*e.g.,* something Ruby on

27   Rails (hereafter "RoR") does), (2) have a unique content-based E-Tag value generated for files in-

28   cluded in webpages (*e.g.,* something that S3 does), and (3) authorize new content and re-authorize

1    what cached webpage files may be used to render their webpages, and communicate those authoriza-

2    tions using HTTP 200 and 304 messages. All three were alleged in (i) the Initial Airbnb Complaint

3    filed January 8, 2018, (ii) PersonalWeb's MDL motion (Dkt 592-14 at 6-7), (iii) PersonalWeb's op-

4    position to Amazon's failed preliminary injunction motion (5:18-cv-767 ("Amazon case"), Dkt. 37 at

5    1, Dkt. 54 at 43:4-44:4), (iv) PersonalWeb's argument to the JMPL (Dkt. 592-15 (MDL Trans.) at

6    3:11-5:20), (v) PersonalWeb's motion to dismiss Amazon's complaint (Amazon case, Dkt. 43 at 4:18-

7    23), and (vi) in the four categories/buckets presented by PersonalWeb at the first CMC (Dkt. 96 at

8    5:14-6:10) (Monroe Decl. ¶¶ 18-19, 23-24.)

9         Amazon feigns outrage that PersonalWeb would change anything about its infringement theory

10   after filing the first complaint, but at the April 2018 preliminary injunction motion hearing, the Court

11   noted that it expected that PersonalWeb's infringement theory would be fleshed out or even modified

12   in its infringement contentions, especially in connection with the RoR allegations:

13           "[C]ertainly either with a preliminary injunction or with a stay, if you were to

14           adequately allege differently in your infringement contentions, that would be

15           grounds to either modify or lift the preliminary injunction or lift the stay. … I

16           really want to see infringement contentions where you have to actually map it."

17   (Amazon case, Dkt. 54 at 10:24-11:17.)

18        Nevertheless, the only substantive "changes" PersonalWeb made to the infringement allega-

19   tions in the original complaints were *factual* and specific to a limited number of individual defend-

20   ants—the "infringement theory" never changed. In the lead up to the preliminary injunction hearing

21   in April 2018, some defendants told PersonalWeb that they did not use RoR. (Sherman Decl. ¶¶ 13-

22   16.) PersonalWeb immediately performed additional technical analysis of all defendants' websites

23   based on the newly disclosed information and found that: (1) some defendants did not use RoR, (2)

24   fingerprints in URIs are sometimes created by programs other than RoR, (3) content-based ETags are

25   sometimes created by servers other than S3, and (4) some of the defendants used content-based ETags,

26   but not fingerprints in URIs. (Monroe Decl. ¶¶ 8-18.) This also led to PersonalWeb amending all of

27   the complaints to remove references to RoR and S3, while retaining the relevant actions performed by

28   each of them or other development platforms or servers, which PersonalWeb alleged infringed (*i.e.*

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1    putting fingerprints in URIs, or having a unique content-based E-Tag). (*Id.* at 12, 15, 20-24.) After

2    receiving this information from those defendants, PersonalWeb determined that five of the original

3    defendants did not use RoR as alleged and immediately dismissed them. (Sherman Decl. ¶¶ 16.)

4         As part of this additional technical analysis, PersonalWeb developed and ran a computer pro-

5    gram that looked deep into the underlying archive.org data for the various defendant websites, re-

6    trieved the HTTP/1.1 headers used in serving the webpage at the time of the archive, downloaded

7    webpage content from archive.org, calculated content-based identifiers using a variety of possible

8    methods, and compared the ETags and hex strings in URIs to the calculated content-based identifiers,

9    and if they matched, it was conclusive proof that the ETags and/or hex strings in URIs were content-

10   based identifiers. (Monroe Decl. ¶ 9-17.) Of the remaining 48 original defendants, the program found

11   conclusive proof that 45 used content-based identifiers as ETags and 42 used fingerprints in URIs. (*Id.*

12   at 18.) As a result of these factual differences, beginning in April 2018, PersonalWeb determined that

13   some individual defendants (1) did not infringe some of the asserted patent claims or (2) did not in-

14   fringe in some of the ways originally included in the complaints.

15        Based on this, beginning in late May 2018 PersonalWeb began amending its complaints against

16   the defendants, as specifically allowed by this Court. (Monroe Decl. ¶¶ 12, 15, 20-21.) However, Am-

17   azon does not even attempt to show where any of the amended complaints contained any "new" in-

18   fringement theories—because the amended complaints only removed some factual allegations and

19   clarified others. (*See* Monroe Decl. Ex. 1 (comparison, filed with the JPML, of the original and

20   amended Airbnb complaint.) This led PersonalWeb, on its own, to drop certain claims of infringement

21   against some defendants. (Monroe Decl. ¶ 8.)

22        Returning to PersonalWeb's prefiling technical investigation, it used industry accepted tech-

23   niques to determine the likelihood that a particular website used RoR and/or served webpage assets

24   with Amazon S3. (Russ Decl. ¶ 18.) PersonalWeb and Dr. Russ only found websites likely to be in-

25   fringing if the heuristic results showed a very high likelihood that the website used RoR or Amazon

26   S3. (*Id.*) The additional technical analysis described above proved that the industry-accepted tech-

27   niques PersonalWeb and Dr. Russ used were 88% accurate for determining the use of fingerprints in

28   URIs and over 94% accurate for determining the use of content-based ETags. (Monroe Decl. ¶ 18.)

PersonalWeb's conclusion, before filing the complaint against Twitch in September 2018, that Twitch used both content-based ETags and content-based fingerprints in the URIs of webpage content, was based on demonstrated outputs obtained from the computer program run as part of additional technical analysis described above, proving said usage. (*Id.* at ¶ 20.)

To illuminate the differences between the Court-permitted amendments that would be made to website operator complaints in October 2018, in its portion of the September 13, 2018 joint statement, PersonalWeb delineated specific subsets of patent infringement allegations into four categories in advance of the upcoming CMC on September 20. (Dkt. 96, 96-1.) The four categories were in no way new infringement theories as Amazon misstates, but rather were all subsets of the same infringement theory that was pleaded in the very first complaint filed against Airbnb. (Monroe Decl. ¶ 19.)

### 1. Amazon Is Dishonest in Its Assertion that PersonalWeb Impermissibly or Unreasonably Changed Its Positions on Infringement.

Amazon distorts that PersonalWeb told the JPML that all its infringement claims were based *solely* on Amazon S3. (Mot. at 3:18-24.) This is not true. Amazon quoted a passage from PersonalWeb's motion to the JPML filed on February 27, 2018 about Amazon S3, but withheld the first sentence of the same paragraph:

> More specifically, each defendant's website is alleged to use a RoR architecture to develop and compile its webpage files that are required to render a webpage, and to generate a fingerprint of the content of each of the files when compiled.
>
> Once each defendant's webpage files have been compiled and are complete, …

(*In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834 ("JPML Action"), Dkt. 1-1 at 6.) Only *after* this statement did PersonalWeb discuss the role of S3. Amazon then juxtaposed their misleading implication that PersonalWeb argued to the JPML that its claims *only* involved S3 by tying a second misleading implication that PersonalWeb argued during Amazon's preliminary injunction motion that *only RoR* and "not Amazon S3" was accused of infringement. PersonalWeb's opposition to the preliminary injunction motion shows otherwise:

> [Amazon] argues that … the defendant website owner/operators because those

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1      actions also regard **only** the S3 service. However, Amazon's Motion entirely

2      ignores the fact that PersonalWeb's current actions are based on the defendant

3      website owner/operators' use of the RoR system architecture, and not just on

4      Amazon's S3 web hosting service.

5  (Amazon case, Dkt. 37 at 1) (emphasis in original).)

6      Amazon then turned to PersonalWeb's motion to dismiss filed April 13, 2018, making the

7  additional false statement that PersonalWeb then argued that "it *had not accused Amazon S3* of in-

8  fringement." (Mot. at 11:9-11 (emphasis in original).) What PersonalWeb *actually* argued was that it

9  had not accused S3 *alone* of infringing, or that *Amazon* was the infringer, directly or indirectly. (Am-

10  azon case, Dkt. 43 at 4:18-5:2.) Rather, PersonalWeb argued that it had accused *the website operators*

11  of infringing through their use of Amazon's S3. (*Id.*) This position is borne out in the counterclaim

12  that PersonalWeb filed against Amazon when it withdrew its motion to dismiss. It specifically alleged

13  in paragraph 23 of its counterclaim, the alternative pleading that if it is found that the website operators

14  are not "the ones directly infringing" then "Amazon is" and thus "pleading direct infringement by

15  Amazon or the website defendants in the alternative." (Amazon case, Dkt. 62.)

16      Amazon also falsified the chronology of events (Mot., 11:9-14), alleging that PersonalWeb's

17  withdrawal of its motion to dismiss was because the Court questioned the grounds for it. However, the

18  evidence Amazon cites for this falsity is the transcript of the hearing on Amazon's preliminary injunc-

19  tion motion of April 27, 2018, which occurred *before* the scheduled hearing on the motion to dismiss

20  and before Amazon filed its opposition to the motion. Further, at the preliminary injunction hearing,

21  this Court stated expressly on multiple occasions that it had not studied PersonalWeb's motion to

22  dismiss and would not be considering issues raised in the motion to dismiss during the preliminary

23  injunction hearing. (Amazon case, Dkt. 54 at 12:20-13:3; 18:23-19:1.)

24      PersonalWeb has consistently argued that its infringement theory includes both fingerprints in

25  URIs, almost all of which were RoR-generated, and content-based ETags, most of which were S3-

26  generated. A vast majority of the defendants do both. As shown above, Amazon tries to paint a differ-

27  ent picture by mentioning only one of these at different times even though the record is unmistakable

28  that PersonalWeb *always* argued both fingerprints in URIs (RoR) and content-based ETags (S3).

---

11

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF**
**AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**

**CASE NO: 5:18-MD-02834-BLF**
**CASE NO: 5:18-CV-00767-BLF**
**CASE NO: 5:18-CV-05619-BLF**

### 2. PersonalWeb Did Not Change Its Infringement Theory After the Markman Hearing.

Amazon also distorts the record in arguing that PersonalWeb "tried to change its infringement theories yet again *after* a poor showing at the Markman hearing." (Mot. at 11) (emphasis added). PersonalWeb sought to amend its infringement contentions more than a month *before* the Markman hearing and *before* Amazon filed its Responsive Claim Construction Brief. On April 18, 2019, PersonalWeb sent its amended contentions for AWS, to Amazon, and asked if they would oppose leave to amend the infringement contentions for both AWS and Twitch. (Dkt 448-4.) The Markman hearing was not until May 24, 2019. Amazon did not inform PersonalWeb that it would oppose leave to amend the infringement contentions until shortly before the Markman hearing. (*Id.*) PersonalWeb filed its Motion for Leave to Amend Infringement Contentions on June 11, 2019. (Amazon case, Dkt. 113.) This timeline confirms that seeking to amend its infringement contentions was not motivated by the Markman hearing, a "poor showing" or otherwise. (Monroe Decl. ¶ 22.)

Nevertheless, the proposed amended infringement contentions continued to have the same core components, *i.e.,* (1) fingerprints in URIs, many of which were RoR-generated, (2) content-based ETags, many of which were S3-generated, and (3) using HTTP 200 and 304 messages to control browsers' use of cached webpage files. (Amazon case, Dkt. 113.)

Although the Magistrate Judge denied PersonalWeb's motion to amend its infringement contentions, it did not rule that PersonalWeb's motion was improperly or unreasonably brought. Rather, the Magistrate Judge applied a "heightened" level of diligence standard and started the diligence "clock" years before the first of the cases was filed—both of which were standards not applied before, to PersonalWeb's knowledge, in any decision under the Patent Local Rules. Instead, Amazon mischaracterizes an argument PersonalWeb made before the Magistrate Judge. PersonalWeb argued that it was unreasonable to expect PersonalWeb to "*address* all of" the issues in hundreds of pages of prior claim construction in its infringement contentions. PersonalWeb did *not* argue that it would be unreasonable for PersonalWeb to have been "aware" of them, as Amazon misrepresents. (Dkt. 476.)

### 3. PersonalWeb Acted Reasonably with Respect to the '791 and '544 Patents. Amazon

contends that after the claim construction order PersonalWeb unduly dragged out the

12

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**   **CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF**

1  litigation or continued with unsupported causes of action of infringement of the '791 and '544 patents.

2  (Mot. at 7-8.) These are frivolous contentions.

3      PersonalWeb never brought a cause of action for infringement of the '791 patent against either

4  Amazon or Twitch. (Amazon case Dkt. 62; Twitch case, Dkt. 1.) PersonalWeb could not have "aban-

5  doned" claims it never made. The only cause of action involving the '791 patent in the non-stayed

6  cases was Amazon's action for a declaratory judgment of noninfringement of the '791 patent. This

7  was based on the '791 being in the original January 2018 complaints, but these claims were all dropped

8  in amended complaints in April-June 2018—before PersonalWeb filed its counterclaim. After the

9  claim construction order, PersonalWeb suggested dismissing Amazon's action for declaratory judg-

10 ment of noninfringement of the '791 patent without prejudice because PersonalWeb had not asserted

11 the '791 patent against Amazon or Twitch. (Dkt. 507-3.)

12     As to the '544 patent, as discussed above, PersonalWeb dropped the '544 patent from its coun-

13 terclaim against Amazon on October 16, 2018.  The only cause of action for infringement of the '544

14 patent before the Court during claim construction was in the Twitch action, and the business day after

15 the claim construction order was issued, PersonalWeb offered to unconditionally dismiss its '544

16 claim against Twitch. (*Id*.) After making this offer, it would have been a waste of both PersonalWeb's

17 and Twitch's resources to include the '544 patent in its expert report served later the same week and

18 Amazon would have included *that* in its current motion.

19     **G.   Throughout this Litigation PersonalWeb Sought to Avoid Needless Motion Prac-
       tice, Demonstrating the Reasonable Manner in Which It Conducted Itself.**

20         **1.   PersonalWeb Sought to Resolve this Case One Business Day After the Ad-
             verse Claim Construction Order, and Consistently Thereafter.**

21

22     The Court issued its Claim Construction Order on Friday, August 16, 2019. The *next business*

23 *day* PersonalWeb's counsel advised counsel for Amazon that it would stipulate to judgment of nonin-

24 fringement for all claims for patent infringement asserted against Amazon's CloudFront and S3 prod-

25 ucts, and all '544 patent claims asserted against Twitch. (Sherman Decl. ¶¶ 24-25.) In PersonalWeb's

26 Motion for Clarification or Supplementation filed on August 26, 2019 (Dkt. 507) it made clear to

27 Amazon and the Court that if it was the Court's opinion that it meant something different in construing

28 the "authorization" terms as other than "valid rights to content" (*i.e.,* a narrower/license instrument-

13

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1   type of meaning), then PersonalWeb would withdraw the report of its technical expert and dismiss all

2   remaining claims against Twitch and all other website operators within the MDL. PersonalWeb con-

3   firmed its position at the hearing of September 4, 2019. (Dkt. 519.) At that September 4 scheduling

4   hearing on the Motion for Clarification this Court specifically recognized "the importance of this issue

5   to [PersonalWeb] … [as] …whatever I decide will cause—gives you—it will require you to act in

6   only a certain way, and it could be case dispositive, at least at the District Court level" an observation

7   that PersonalWeb's counsel acknowledged to be at the foundation of its actions. (Dkt. 519.) Later in

8   September 2019—Amazon never having engaged PersonalWeb on terms of a dismissal as Personal-

9   Web had offered—PersonalWeb sent a draft stipulation of noninfringement to Amazon. (Sherman

10  Decl. ¶¶ 26-27.) This demonstrates one "white flag of surrender" after another during the pending

11  Motion for Clarification, and a concerted effort by PersonalWeb beginning *immediately* following the

12  Claim Construction Order to wind down and/or significantly limit the litigation. (*Id.* at ¶¶ 24-28.)

13          In the Motion at 6:8-7:17, Amazon presents what occurred during this six-week period, in the

14  wake of what PersonalWeb acknowledged was an adverse claim construction, using materially inac-

15  curate characterizations and *ad hominems* unsupported by the record—and in fact contradicted by the

16  record. The Court's Order declining clarification/supplementation of October 1, 2019 expressly found

17  that PersonalWeb's motion was "procedurally proper" and specifically rejected Amazon's objection

18  to PersonalWeb seeking clarification, finding "[t]here is nothing inherently improper in requesting

19  clarification of a court's claim construction." (Dkt. 537.) The day following, on October 2, Personal-

20  Web filed a motion asking that judgment be taken against it—likely something this Court rarely sees—

21  and coupled that with its restatement that it was prepared to withdraw its technical expert report on

22  infringement dated August 23, 2019. (Dkt. 538.) And the next the day, October 3, at the hearing/case

23  management conference in this case, the Court said:

24          "[A]nd to the extent that there's ever an issue of attorney's fees, clearly Mr.

25          Sherman, you've made your record on the conduct of PersonalWeb to mitigate

26          any obligation, if there is any ever. I mean, there may never be, I'm not suggest-

27          ing that. But I know you are looking at the efficiency and the cost issues as well."

28  (Dkt 546, 38:4-10.)

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

It is also absurd for Amazon to liken advocacy differences regarding the contrary positions of opposing what *might* wind up being a potential piecemeal determination of appellate issues with a preference for a summary judgment hearing on *all* issues (Amazon's position) (Dkt. 547 at 1), versus PersonalWeb's position that it was willing to cease all litigation at the District Court level as a result of an adverse claim construction order (*i.e.,* PersonalWeb's filing of its notice of non-opposition (Dkt. 555)), as a "bad faith gambit." (Mot. at 7:7.) Such a difference in advocacy on case management ought not under any circumstances be likened to unreasonable litigation conduct.  Nothing from August 16, 2019 is akin to "unreasonable litigation conduct"—except for *Amazon's* disclosure, for the first time in mid-July 2019 of noninfringement positions it relied on in Summary Judgment (if the infringement defect was so purportedly "basic" why wait a year and half?), *Amazon's* unprincipled opposition to the effort itself, to seek to clarify, and *Amazon's* entrapment by going silent for six weeks on its non-willingness to pursue a dismissal stipulation. Amazon's position is false, hypocritical and baseless.

### 2. PersonalWeb Responded Promptly and Transparently to Assertions of Deficiencies by Any Complaining Website Operator/Defense Counsel.

PersonalWeb was consistently aware that the merits of its proceeding with multiple patent infringement lawsuits was a serious, sensitive matter. In the occasional instances that a defendant or defendant's counsel claimed that the case against them should be dismissed for some factual or legal defect, PersonalWeb diligently responded in a meaningful effort to engage and dialogue with those who disagreed. PersonalWeb never "hid behind the curtain" of a live lawsuit, or the expense associated with patent litigation, but rather exhibited exemplary litigation conduct. (Sherman Decl. ¶¶ 13-24.)

PersonalWeb received letters early in the litigation from two law firms on behalf of seven defendants demanding dismissal and threatening to seek fees. One letter sought dismissal based on preclusion by the Texas action. PersonalWeb responded with a letter detailing the reasons it disagreed. For the other six defendants, the letters asserted that defendants did not use RoR to develop their websites. PersonalWeb immediately re-investigated the allegations regarding each of these defendants (*see* discussion of computer program in section II.E, *supra*), and dismissed the complaints against five of them. As to the sixth, investigation showed that the defendant did use RoR and PersonalWeb sent a letter to defense counsel detailing the exact nature of this use. PersonalWeb did not receive any

15

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**

**CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF**

1  response to this letter. The final results of the computer program did not prove infringement by three

2  other defendants, and in those cases PersonalWeb on its own initiative dismissed the complaints

3  against these defendants in September 2018. (5:18-cv-00196-BLF, Dkt. 42 (Vend, Inc.); 5:18-cv-

4  03461-BLF, Dkt. 26 (LiveChat Software); 5:18-cv-03581-BLF, Dkt. 58 (Group Nine Media, Inc.).)

5        During the life of these cases, every communication received from any defendant inquiring

6  about allegations directed specifically to that defendant, was always responded to, with the goal of

7  PersonalWeb regularly providing information and inviting dialogue. (Sherman Decl. ¶¶ 13-23.)

8        At the September 20, 2018 case management conference, counsel for defendant Heroku stood

9  in the gallery and threatened to file a "Rule 11 motion to dismiss" claiming "there's literally not one

10  fact that's pleaded in there [the Heroku complaint]." (Dkt. 121 at 56:21-24.) Mr. Monroe wrote a three-

11  page letter to Heroku's counsel on September 24, 2018 with an attached zip file containing scores of

12  archived webpages showing Heroku's infringement and outlining the applicability of infringement

13  contentions to Heroku, inviting dialogue. (Sherman Decl. ¶ 19, Ex. 5.) No response was ever received.

14        PersonalWeb likewise acted reasonably in curing any procedural defect relating to the status

15  of an entity sued, and in those instances where any such defects were brought to its attention (*e.g.,* an

16  entity had gone out of business), PersonalWeb promptly dismissed such cases and defendants. (*Id.* at

17  ¶¶ 19-22.) Neither Amazon nor Twitch sent PersonalWeb a Rule 11 or "exceptional case" letter before

18  the claim construction order issued. (*Id.* at ¶ 24.) Nor had their counsel ever called or sent a letter or

19  e-mail to PersonalWeb's counsel explaining why infringement could not be proved.

20        **H.    PersonalWeb Never Tried to Unravel the MDL that Amazon Opposed.**

21        Amazon again misconstrues the record in alleging that after the Court ruled on Twitch's motion

22  for summary judgment, PersonalWeb tried "to unravel the MDL by claiming the Twitch case was no

23  longer representative." (Mot. at 7-8, 11-12.) Not true on multiple counts—rather PersonalWeb's con-

24  duct on this issue epitomizes the reasonableness of its litigation position. It was *PersonalWeb* that

25  pushed to coordinate all the cases in an MDL, achieved over Amazon's *active* opposition. (JPML

26  Action, Dkt. 81; Sherman Decl. ¶ 8.)

27        Amazon's basis for the supposed "unravelling" is that PersonalWeb only recently informed

28  the Court that discovery revealed that Twitch did not actually perform any "category 2" activity

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1    (serving webpage assets with content-based ETags without using S3), but only served webpage assets

2    with content-based ETags using *S3* (category 3). (Mot. at 8:4-10; Dkt. 584 at pp. 4-6, 8.) Amazon then

3    argues that at the November 2, 2018 CMC PersonalWeb represented to the Court that the Twitch case

4    (that *Amazon* proposed to be the representative case) would resolve all customer cases. At that time,

5    PersonalWeb's evidence showed that Twitch engaged in all four categories of infringing activity—

6    such examples included in Exhibit 1 to the Twitch First Amended Complaint (Twitch case, Dkt. 13,

7    October 4, 2018). As it turns out, unbeknownst to PersonalWeb, the example in Exhibit 1 for category

8    2, a specific jpeg file with a host server type listed as "nginx" (not "AmazonS3"), was served by S3,

9    not nginx. PersonalWeb did not find this out until PersonalWeb deposed Twitch's lead engineer on

10   July 26, 2019 and PersonalWeb specifically asked Mr. Richard how the category 2 file in Exhibit 2

11   was served. (Dkt. 543-4.) Mr. Richard also testified that there would have been no way for the public

12   to be able to find that these files were served by S3, despite all outward appearances to the contrary.

13   (*Id.*)

14          Twitch, on the other hand, had everything it needed when it was served with the amended

15   complaint on October 4, 2018 to know that it was only serving its webpage files with content-based

16   ETags using S3, and knew or should have known that as a factual matter, it could not have been in

17   category 2. But Twitch never volunteered this information, neither at the CMC when Amazon pro-

18   posed Twitch as the representative case that purportedly met all four categories nor during the eight

19   months between the CMC and Mr. Richard's deposition. This is unreasonable litigation conduct, and

20   it falls squarely in the laps of Amazon and Twitch.

21   **I.     Amazon Builds Its Motion Around Twin Themes of "Extracting Nuisance Settle-**
22   **ments" and "Sham Declarations" Knowing that PersonalWeb Never Conducted**
     **Itself in that Manner.**

23          The reasonableness of PersonalWeb's litigation conduct is confirmed by Amazon now con-

24   structing their Motion themes around the falsehood of PersonalWeb extracting nuisance settlements.

25   Amazon repeats throughout of PersonalWeb "extracting" or "coercing" "settlements"—which for

26   good measure Amazon equates (in a case cite) to being "nuisance." (Mot. at 10:5-9.) Before these

27   actions were filed, the True Name patents had been licensed extensively to some of the largest com-

28   panies in the world, on market terms, including 15 licenses, including some exclusive licenses within

1    particular fields of use indicating the licensee's ability to use the patents offensively. Many licenses

2    had nothing to do with litigation. *None* of PersonalWeb's licenses were "nuisance" value agreements.

3    They included market-based license payments, with many licenses coming after licensee-invoked IPR

4    proceedings, the antithesis of a "nuisance" settlement. (Bermeister Decl. ¶¶ 11-12.)

5          By contrast, Amazon's "nuisance settlement approach" argument/theme is *devoid* of any evi-

6    dence. For good reason: The evidence *contradicts* it. After January 8, 2018, multiple defendants in-

7    quired about PersonalWeb's interest in settling. In that instance, defense counsel expressly or by strong

8    implication did reference "cost of defense" and/or "nuisance" type payments that the defendant might

9    be willing to pay, and PersonalWeb's response was to reject that approach. In those communications

10   PersonalWeb requested transaction logs (to demonstrate the amount of infringing activity), tailored

11   financial information, and a willingness to enter into a non-disclosure agreement to allow the infor-

12   mation to be supplied. (Sherman Decl. ¶¶ 9-12.) In the communications on this subject, PersonalWeb

13   conveyed a willingness to settle on market-terms for licenses of a similar nature. PersonalWeb never

14   approached any named defendant and intimated or offered anything like a "cost of defense" or "nui-

15   sance"-type settlement approach. (*Id.*) Amazon's argument is specious, and PersonalWeb's settlement

16   activities epitomize reasonable litigation conduct.

17         Another of Amazon's favorite arguments is the "sham declaration"—a phrase appearing no

18   less than six times in Amazon's brief. Repetition does not make the argument any more persuasive or

19   credible. While PersonalWeb acknowledges this Court did not find the Bermeister and Hadley decla-

20   rations (Dkt. 394) enough to overcome summary judgment, Amazon continues in its Motion to make

21   an issue of the reasons surrounding dismissal of the Texas action.  *See* Section II.B, *supra*.

22         Amazon's accusations that PersonalWeb violated any duty of candor "for months" by making

23   representations on behalf of Level 3 "without authorization" is belied by the record in an instance

24   where Amazon is completely reversing its position (Motion, 14:2-8.) Amazon acknowledged in a stip-

25   ulation that Level 3's signature block was "erroneously included within the Sur-Reply" in an instance

26   where PersonalWeb filed a Notice of Errata. (Dkt. 369.)  Amazon also "agree[d] this stipulation re-

27   solves to its satisfaction the issues raised in the second supplemental case management statement (Dkt.

28   366)." (Dkt. 369). The only unreasonable litigation conduct now present is Amazon's re-trade.

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

III.   **APPLYING THE FACTS TO THE LAW SHOWS THAT AMAZON FALLS FAR SHORT OF PROVING THAT PERSONALWEB 'S CONDUCT WAS "SO 'EXCEPTIONAL' AS TO JUSTIFY AN AWARD OF FEES".** *OCTANE,* **555.**

*Octane* cases make clear that "exceptionality" remains the exception, and that a case is not exceptional because a party takes a position that is eventually deemed incorrect. A recent decision from this District may prove useful in surveying the landscape of how courts have assessed the "totality of the factors" directed by *Octane. Location Based Servs., LLC v. Niantic, Inc.*, No. 17-CV-04413 NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018). There, the court observed:

> "Despite the individualistic inquiry, patterns have emerged post-*Octane Fitness.* As to the substantive strength (or weakness) of a party's litigation position, courts in this district tend to award fees when a plaintiff persists with a clearly untenable claim, or adduces no evidence in support of its position. As for litigation misconduct, as relevant here, this district's courts have found litigation behavior exceptionally unreasonable when a party fails to conduct an adequate prefiling investigation that supports its claim."

An objectively baseless or frivolous patent case is one "that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013). Courts have found such objective baselessness when, for example, a plaintiff fails to conduct a proper prefiling investigation of its infringement claims or refuses to dismiss after receiving conclusive evidence of noninfringement in code or schematics. *See Yufa v. TSI Inc.*, No. 09-cv-1315-KAW, 2014 WL 4071902, at *3-5, 8 (N.D. Cal. Aug. 14, 2014).

A.   **The Subject Lawsuits Had Been Extensively Researched and Infringement Was Verified by Qualified Expert Opinions, Showing Both Substantive Strength and PersonalWeb Being Poised to Engage Only in Reasonable Litigation Conduct.**

The amount and type of work, and the resulting work-product including multiple, consistent opinions by technical computer experts and experienced patent counsel, in a lengthy and detailed examination spanning a year prefiling, demonstrated to PersonalWeb's Mr. Bermeister that there was an objectively reasonable basis to proceed with each of the complaints and that they were not precluded. PersonalWeb was also forthcoming and diligently responded to all suggestions/assertions that its claims might not be based on solid ground, and invited objectors to demonstrate why PersonalWeb

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1    was wrong and should dismiss. (II.F.2, *infra*).  That Amazon does not contest any of PersonalWeb's

2    factual allegations of Defendants' use of content-based ETags, max-age values, conditional GET re-

3    quests, HTTP 200 or 304 messages, or fingerprints—in a case of such factual complexity—speaks

4    volumes to the quality of PersonalWeb's prefiling investigation.

5          PersonalWeb's intensive, thorough examination is the antithesis of objective unreasonableness

6    or baselessness; indeed, the prefiling examination *was* exceptional in its rigor, scope and intensity.

7    This is not a case where plaintiff's investigation consisted solely of reviewing Defendant's website,

8    *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1299 (2017), or where a "basic"

9    pre-suit investigation would show the case was not viable. *Lumen View Technology LLC v.*

10   *Findthebest.com, Inc.*, 811 F.3d 479, 481 (Fed. Cir. 2016). Where, as here, there is a record of exten-

11   sive and robust prelitigation investigation, a finding of exceptionality is unsupported. *See Bayer Crop-*

12   *Science AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) (Creating a record of

13   adequate pre-suit investigation is one of the most important ways for a plaintiff to mitigate the risk of

14   a fee award under § 285.); *In re Protegrity Corporation*, 2017 WL 747329 at * 5 (N.D. Cal. Feb. 27,

15   2017) (fees not awarded because of "two-step pre-suit review" by plaintiff's CTO and patent counsel

16   involving preparation of a claim chart and review of dozens of documents.)

17       **B.**    **None of Claim Preclusion, "Basic HTTP," and a Subsequent Loss in Claim Con-**
18               **struction Made the Causes of Action Not Substantively Strong.**

19         "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive *strength* of a

20   party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or

21   eventual success of that position." *SFA Sys., LLC,* 793 F.3d at 1348 (original emphasis). The Federal

22   Circuit then observed: "A party's position on issues of law ultimately need not be correct for them to

23   not 'stand[ ] out,' or be found reasonable." *Id.* Just last week, the Federal Circuit reiterated its admon-

24   ition that the purpose of § 285 is "not to punish a party for losing." *Munchkin, Inc. v. Luv n' Care, Ltd.*,

25   No. 2019-1454, 2020 WL 3041266, at *4 (Fed. Cir. June 8, 2020) (reversing an award of attorney's

26   fees). Objective frivolousness is lacking in criticisms of PersonalWeb's positions on preclusion by the

27   Texas action, its actual infringement theory (and not Amazon's mischaracterized version) and what

28   was ultimately a losing position on claim construction. Nowhere does Amazon ever point to

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF     CASE NO: 5:18-MD-02834-BLF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS     CASE NO: 5:18-CV-00767-BLF
                                                                              CASE NO: 5:18-CV-05619-BLF

1   controlling authorities that PersonalWeb ignored.

2       That the Court's claim construction was unfavorable to PersonalWeb does not convert this case

3   into an exceptional one. *Raylon, LLC v. Complus Data Innovations, Inc.,* 700 F.3d 1361, 1368 (Fed.

4   Cir. 2012) ("Reasonable minds can differ as to claim construction positions and losing constructions

5   can nevertheless be nonfrivolous"); *Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1229

6   (Fed. Cir. 2018) (finding that the rejected claim construction "was not so meritless as to render the

7   case exceptional."). The same holds true for losses at summary judgment. *ATEN Int'l Co. v. Uniclass*

8   *Tech. Co.,* 932 F.3d 1371 (Fed Cir. 2019) (affirming denial of attorney's fees even though patentee's

9   lost profits theory did not withstand summary judgment).

10       Amazon's reliance on *Pannonia Farms Inc. v. Re/Max Int'l, Inc.,* 407 F. Supp. 2d 41 (D.D.C.

11   2005) to argue objectively/baselessly unreasonable in the claim preclusion context is wrong: That case

12   expressly dealt with *issue preclusion*, there finding the plaintiff lacked standing to sue for violations

13   of its intellectual property rights that in the current case were "identical to the issue already contested,

14   submitted, and decided" by the prior court. *Id.* at 44. That is not in any way, the case here.

15       Consideration of the four corners of this Court's rulings on preclusion, claim construction, and

16   noninfringement only demonstrate reasonable differences of opinion and proper, zealous advocacy.

17   Conceding that its construction and infringement positions were unsuccessful before this Court—but

18   *not* stretched, to "merely tak[e] an aggressive stance while positing stretched or unsuccessful infringe-

19   ment theories does not, without more, warrant fee-shifting." *Location Based Servs., LLC* at *1.

20       **C.**    **There Was Nothing Sham About the Bermeister/Hadley Declarations.**

21       Amazon equates the declarations discussed in sections II.B and I as evincing a lack of candor.

22   PersonalWeb believed there were good reasons to include evidence of the circumstances surrounding

23   the dismissal of the Texas action in the summary judgment motion on preclusion. The declarations

24   also supported PersonalWeb's presenting facts showing differences in the transactional facts between

25   the two actions. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008).

26       The issue is not PersonalWeb losing in the district court; the issue is one of good faith, of

27   zealous advocacy, and that reasonable minds could differ regarding the implications of different facts

28   surrounding the Texas action relating to claim preclusion and *Kessler*. While it could be said that

1    aspects of these declarations were "self-serving," the same could be said for just about *any* statement

2    made by a declarant in his/her direct testimony: Every time a declarant testifies (on the witness stand

3    or in a declaration) there is an element of "self-servingness" no different than Amazon's counsel's

4    "self-serving" and uncorroborated effort in the Motion to assert that PersonalWeb had "no choice but

5    to dismiss [the Texas action] ... with prejudice after claim construction."  (Mot. at 1:26-27.)

6         As Judge Orrick observed in a related circumstance, "I would welcome a trial without any

7    evidentiary disputes, but it is not exceptional for parties to dispute the admissibility of evidence im-

8    portant to their case." *France Telecom S.A. v. Marvell Semiconductor Inc.,* 2015 WL 4396201 at *3

9    (N.D. Cal. July 17, 2015). If a Court determination that certain evidence was not persuasive (or certain

10   testimony inadmissible) was the standard by which "unreasonable litigation conduct" is measured,

11   then *Octane* has been perverted to merely equate a sustained objection to a declaration to "subjective

12   bad faith or [an] exceptionally meritless claim[]". *Octane* at 555.

13        Amazon's cite to *Bovino v Levenger Company*, 2016 WL 1597501 (D. Colo.) on the duty of

14   candor is inapt. To compare the gross misrepresentations by the plaintiff found in *Bovino* to this case

15   is disingenuous.

16        **D.      Nothing About PersonalWeb's Asserted Infringement Theory Is Sanctionable.**

17        As demonstrated in section II.E, *supra*, PersonalWeb's underlying theory of infringement re-

18   mained consistent throughout. Some factual details changed regarding the accused instrumentalities,

19   however that is oftentimes the case in large, complex litigation (patent, trade secrets, antitrust, *etc.*),

20   and there is nothing to that dynamic that leads this case to "stand[] out from others" either from sub-

21   stantive strength or litigation conduct. *Octane* at 554. Unlike the plaintiff in this Court's decision in

22   *Phigenix, Inc. v. Genentech Inc.,* No. 15-CV-01238-BLF, 2019 WL 2579260, at *3 (N.D. Cal. June

23   24, 2019), PersonalWeb has not "changed" any of its infringement theories to "skirt" any holdings.

24        Amazon relies on *Andersen Manufacturing Inc. v Wyers Products Group Inc.* 2019 WL

25   4007772 (D. Colo.). There the "shifting *explanations*" referred to plaintiff taking egregiously contra-

26   dicting positions, first opposing a stay because it claimed reexamination could take five years, but

27   then arguing the same reexamination should only take nineteen months to obtain the very stay it pre-

28   viously argued against. *Id.* at *11 (emphasis in original). PersonalWeb never opposed any action

under one guise, just to request that same relief based on a contradicting reason or took any similar inconsistent position in this case. The other cases Amazon cites to support its theory that Personal-Web engaged in "whack-a-mole" litigation tactics misses the mark as the egregious misconduct in those cases did not occur here. *See Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1373 (Fed. Cir. 2015) (holding "Whack-A-Mole" misconduct warrants a fee award where the exceptional conduct included "twist[ing] the Court's instructions and decisions," attempting "to mislead the Court," and "ignor[ing]" that some claim elements "had no evidence of infringement.").

### E.    PersonalWeb's Conduct Post-Claim Construction Is a Model of Reasonable Litigation Conduct.

PersonalWeb's conduct in the wake of the Court's claim construction order on August 16, 2019 was entirely appropriate. PersonalWeb's conduct is in stark contrast with this Court's findings in *Phigenix* where the plaintiff was "unreasonabl[y] determin[ed] to forge ahead with prolonged litigation when it had no tenable theory of infringement." *Id.* at 10–11. *See cf. France Telecom*, *supra* at *3-4 (holding that France Telecom seeking to present evidence that was outside the scope of the Court's prior rulings was the result of good faith zealous advocacy and was not exceptional). Amazon's reliance on *AdjustaCam* to argue that PersonalWeb "unreasonably prolonged" this case is misplaced as in that case, AdjustaCam "continued to press baseless infringement contentions well past an adverse *Markman* order and expert discovery." *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017). No such conduct occurred here.

### F.    PersonalWeb Never Demanded a Nuisance Settlement from Any Defendant, and Argument to the Contrary is Outrageous.

Amazon is not wrong, in the abstract, that bringing suit "without carefully reviewing [one's] claims as a calculated risk that might yield nuisance-value settlements" may lead to a finding of "exceptional" conduct, citing *ThermoLife Int'l, LLC v. Myogenix Corp.*, 2017 WL 1235766, at *6-7, (S.D. Cal. Apr. 4, 2017). But that is not what happened here, not by any stretch of facts or imagination, and the facts of *ThermoLife,* just as those in *AdjustaCam,* 861 F.3d at 1361, also cited by Amazon, where the defendants presented evidence of numerous nuisance value settlements in both cases, (*Id.* at 7) bears no resemblance to the facts before this Court.

### G.    Amazon Brings Its Motion with Unclean Hands.

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

The facts matter. That is why PersonalWeb spent considerable detail in this Opposition and in the supporting evidence of the enormity and type of analysis and opinions that preceded the first filed case as well as the Twitch case, the consistency of PersonalWeb's infringement theory from the beginning, the context of the declarations in opposition to summary judgment, the case procedural history, and the *absence* of nuisance settlements notwithstanding entreaties by defendants to do just that.

The Opposition evidence and argument shows Amazon's motion is based on distorting and misrepresenting facts. PersonalWeb never: asserted its patents covered the entire world wide web; told the JPML its infringement claims were solely based on S3; opposed the preliminary injunction claiming that its infringement claims were solely based on RoR and not S3; or argued in its motion to dismiss that it did not accuse S3 of infringing.  The Court never questioned PersonalWeb's basis for its motion to dismiss; PersonalWeb withdrew its motion to dismiss when it decided to counterclaim. PersonalWeb never tried to first seek to amend its infringement contentions *after* the claim construction hearing and never argued it would be unreasonable to expect PersonalWeb to be "aware" of prior claim constructions. PersonalWeb did cease asserting infringement of the '544 patent after claim construction (contrary to Amazon's assertion, it never asserted the '791 patent) and never violated the Court's claim construction order.  PersonalWeb's motion to clarify was reasonable and sought to avoid unnecessary further litigation and the Court recognized PersonalWeb was "looking at efficiency and cost issues." Twitch's parent Amazon was the party that proposed Twitch as the representative party in all four infringement categories. PersonalWeb rejected any "nuisance" settlement when any defendant sought one. PersonalWeb was never forced to dismiss the Texas action and Hadley and Bermeister declarations were not "shams."  All of these assertions by Amazon were false and could never be supported.

A § 285 motion must be brought with clean hands and can be denied based upon the movant's own conduct. In *Intellectual Ventures II LLC v. FedEx Corp.*, U.S. Dist. LEXIS 169673, at *21 (E.D. Tex. Mar. 28, 2019), the court denied FedEx's attorney's fees motion because its own "bad acts and excessive conduct prevent any award to it of attorneys' fees under § 285." ("Like equity, he who seeks attorneys' fees under § 285 must have clean hands."). Yes, Amazon prevailed in this Court. But that does not give Amazon license to lie.  Amazon cannot construct an *Octane* motion on falsehoods.

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1     Further, a "party cannot simply hide under a rock, quietly documenting all the ways it's been

2   wronged, so that it can march out its 'parade of horribles' after all is said and done." *Stone Basket*

3   *Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (citation omitted) (uphold-

4   ing a denial of fees, factoring in movant's conduct, when the moving party "fail[ed] to provide early,

5   focused, and supported notice of its belief that it was being subjected to exceptional litigation behav-

6   ior.") In waiting to raise the exceptional case issue for the first time until after the claim construction

7   order, especially when Amazon's principal argument is that PersonalWeb "had no viable claim *from*

8   *the beginning*," Amazon hid under a rock. (Mot. at 8.)

9   **IV.   IF THE COURT FINDS THIS CASE EXCEPTIONAL, THE REASONABLENESS
         AND SCOPE OF AMAZON'S FEES SHOULD BE DETERMINED SEPARATELY**

10

11     "A finding of exceptionality based on litigation misconduct ... usually does not support a full

12   award of attorneys' fees." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1316

13   (Fed. Cir. 2012), *vacated on other grounds*, 572 U.S. 559 (2014). Deferring consideration of the

14   amount of requested fees is reasonable because 1) the Court has not yet ruled *whether* Amazon is

15   entitled to a fee award, and 2) if so, during what time period fees are warranted. Even if a Court finds

16   a case exceptional, it need not award fees for the entire case. Amazon's fee request covers the entire

17   period of the litigation. Until the court determines both "exceptionality" and the relevant time period,

18   it is impossible to determine the reasonableness of the requested fees; hence the fee request is prema-

19   ture. *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 4242216 at *1 (N.D. Cal. Aug. 11, 2016) (De-

20   spite providing facts supporting the reasonableness of their fee request, "the Court informed the parties

21   that it would first decide Gilead's entitlement to attorneys' fees and if warranted, would allow the

22   parties to submit further briefing on the amount of attorneys' fees"); *see also* FRCP 54(d)(2)(C) ("[t]he

23   court may decide issues of liability for fees before receiving submissions on the value of services.")

**V.   CONCLUSION**

24     For the foregoing reasons, PersonalWeb respectfully requests that the Court deny Amazon's

25   motion for attorney fees and costs in its entirety.

26     Respectfully submitted,

27

28

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPPOSITION TO MOTION OF
AMAZON AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**

**CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF**

1    Dated:    June 18, 2020                          STUBBS, ALDERTON & MARKILES, LLP

2

3                                          By: */s/ Michael A. Sherman*

4                                              Michael A. Sherman
                                             Jeffrey F. Gersh
5                                              Sandeep Seth
                                             Wesley W. Monroe
6                                              Stanley H. Thompson, Jr.
                                             Viviana Boero Hedrick
7
                                           Attorneys for Plaintiffs
8                                          PERSONALWEB TECHNOLOGIES, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28