# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, | **CASE NO.:** |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| v. | DEMAND FOR JURY TRIAL |
| AIRBNB, INC., a Delaware corporation, Defendant. | |

Plaintiff PersonalWeb Technologies, LLC ("Plaintiff" or "PersonalWeb") files this Complaint for patent infringement against Defendant Airbnb, Inc. ("Defendant").   Plaintiff PersonalWeb Technologies, LLC alleges:

## **PRELIMINARY STATEMENT**

1.     PersonalWeb and Level 3 Communications, LLC ("Level 3") are parties to an agreement between Kinetech, Inc. and Digital Island, Inc. dated September 1, 2000 (the "Agreement"). Pursuant to the Agreement, PersonalWeb and Level 3 each own a fifty percent (50%) undivided interest in and to the patents at issue in this action:   U.S. Patent Nos. 5,978,791; 6,928,442; 7,802,310, 7,945,544 and 8,099,420 ("Patents-in-Suit").   Level 3 has joined in this Complaint pursuant to its contractual obligations under the Agreement, at the request of PersonalWeb.

2.     Pursuant to the Agreement, Level 3 has, among other rights, certain defined rights to use, practice, license, sublicense and enforce and/or litigate the Patents-in-Suit in connection with a particular field of use ("Level 3 Exclusive Field").   Pursuant to the Agreement PersonalWeb has, among other rights, certain defined rights to use, practice, license, sublicense, enforce and/or litigate the Patents-in-Suit in fields other than the Level 3 Exclusive Field (the "PersonalWeb Patent Field").

3.     All infringement allegations, statements describing PersonalWeb, statements describing any Defendant (or any Defendant's products) and any statements made regarding jurisdiction and venue are made by PersonalWeb alone, and not by Level 3.   PersonalWeb alleges that the infringements at issue in this case all occur within, and are limited to, the PersonalWeb Patent Field.   Accordingly, PersonalWeb has not provided notice to Level 3, under Section 6.4.1 of the Agreement or otherwise, that PersonalWeb desires to bring suit in the Level 3 Exclusive Field in its own name on its own behalf or that PersonalWeb knows or suspects that Defendant is infringing or has infringed any of Level 3's rights in the patents.

**FIRST AMENDED** COMPLAINT

**THE PARTIES**

4.      Plaintiff PersonalWeb Technologies, LLC is a limited liability company duly organized and existing under the laws of Texas with its principal place of business at 112 E. Line Street, Suite 204, Tyler, TX 75702.

5.      Plaintiff Level 3 Communications, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 100 CenturyLink Drive, Monroe, Louisiana, 71203.

6.      PersonalWeb's infringement claims asserted in this case are asserted by PersonalWeb and all fall outside the Level 3 Exclusive Field.  Level 3 is currently not asserting patent infringement in this case in the Level 3 Exclusive Field against any Defendant.

7.      Defendant Airbnb, Inc. is, upon information and belief, a Delaware corporation having a principal place of business or regular and established place of business at 888 Brannan Street, San Francisco, California 94103.

**JURISDICTION AND VENUE**

8.      The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

9.      Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant is incorporated in the State of Delaware, and on information and belief, has a regular and established place of business in this District, has done business in this District, and has committed acts of infringement in this District, and continues to commit acts of infringement in this District, entitling PersonalWeb to relief in this District.

10.      This court has personal jurisdiction over Defendant because, in addition to the allegations in above paragraphs, on information and belief, Defendant purposefully directed activities at residents of California, the claims herein arise out of and relate to those activities, and assertion of personal jurisdiction over Defendant would be fair.

## PERSONALWEB BACKGROUND

10.11.  The Patents-in-Suit cover fundamental aspects of cloud computing, including the identification of files or data and the efficient retrieval thereof in a manner which reduces bandwidth transmission and storage requirements.

11.12.  The ability to reliably identify and access specific data is essential to any computer system or network.  On a single computer or within a small network, the task is relatively easy:  simply name the file, identify it by that name and its stored location on the computer or within the network, and access it by name and location.  Early operating systems facilitated this approach with standardized naming conventions, storage device identifiers, and folder structures.

12.13.  Ronald Lachman and David Farber, the inventors of the Patents-in-Suit, recognized that the conventional approach for naming, locating, and accessing data in computer networks could not keep pace with ever-expanding, global data processing networks.  New distributed storage systems use files that are stored across different devices in dispersed geographic locations.  These different locations could use dissimilar conventions for identifying storage devices and data partitions.  Likewise, different users could give identical names to different files or parts of files——or unknowingly give different names to identical files.  No solution existed to ensure that identical file names referred to the same data, and conversely, that different file names referred to different data.  As a result, expanding networks could not only become clogged with duplicate data, they also made locating and controlling access to stored data more difficult.

13.14.  Lachman and Farber developed a solution: by replacing conventional naming and storing conventions with system-wide "substantially unique," content-based identifiers.  Their approach assigned substantially unique identifiers to all "data items" of any type——""the contents of a file, a portion of a file, a page in memory, an object in an object-oriented program, a digital message, a digital scanned image, a part of a video or audio signal, or any other entity which can be represented by a sequence of bits."  Applied system-wide, this invention would permit any data item to be stored, located, managed, synchronized, and accessed using its content-based identifier.

14.15.  To create a substantially unique, content-based identifier, Lachman and Farber turned to cryptography.  Cryptographic hash functions, including MD4, MD5, and SHA, had been used in

1  computer systems to verify the integrity of retrieved data——a so-called "checksum."  Lachman and

2  Farber recognized that these same hash functions could be devoted to a vital new purpose: if a

3  cryptographic hash function was applied to a sequence of bits (a "data item"), it would produce a

4  substantially unique result value, one that: (1) virtually guarantees a different result value if the data

5  item is changed; (2) is computationally difficult to reproduce with a different sequence of bits; and

6  (3) cannot be used to recreate the original sequence of bits.

7       ~~15.~~16.  These cryptographic hash functions would thus assign any sequence of bits, based on

8  content alone, with a substantially unique identifier.  Lachman and Farber estimated that the odds of

9  these hash functions producing the same identifier for two different sequences of bits (i.e., the

10 "probability of collision") be about 1 in 2 to the 29th power.  Lachman and Farber dubbed their content-

11 based identifier a "True Name."

12      ~~16.~~17.  Using a True Name, Lachman and Farber conceived various data structures and

13 methods for managing data (each data item correlated with a single True Name) within a network—

14 no matter the complexity of the data or the network.  These data structures provide a key-map

15 organization, allowing for a rapid identification of any particular data item anywhere in a network by

16 comparing a True Name for the data item against other True Names for data items already in the

17 network.  In operation, managing data using True Names allows a user to determine the location of

18 any data in a network, determine whether access is authorized, and to selectively provide access to

19 specific content not possible using the conventional naming arts.

20      ~~17.~~18.  On April 11, 1995, Lachman and Farber filed their patent application, describing these

21 and other ways in which content-based "True Names" elevated data-processing systems over

22 conventional file-naming systems.  The first True Name patent issued on November 2, 1999.  The last

23 of the Patents-in-Suit has expired, and the allegations herein are directed to the time period before

24 expiration of the last of the Patents-in-Suit.

25      ~~18.~~19.  PersonalWeb has successfully enforced its intellectual property rights against third

26 party infringers, and its enforcement of the Patents-In Suit is ongoing.  This enforcement has resulted

27 in PersonalWeb obtaining settlements and granting non-exclusive licenses regarding the Patents-in-

28 Suit.

4

Case 5:18-md-02834-BLF   Document 608-7   Filed 06/18/20   Page 7 of 29
Case MDL No. 2834-BLF   Document 1202-3   Filed 06/18/20   Page 8 of 28

**DEFENDANT'S BACKGROUND**

~~19.~~20.  On information and belief, Defendant operates or has operated a website located at **airbnb.com**, and has done so since before expiration of the last to expire of the Patents-in-Suit, which has operated to provide webpage content to its authorized users in the manner herein described.[1]  On information and belief, Defendant's webpage servers ~~utilize~~utilized a system of notifications and authorizations to control the distribution of content, *e.g.*, what webpage content may be served from webpage servers and intermediate caches and what webpage content a user's browser is authorized to use to render Defendant's webpage(s).  On information and belief, Defendant's system and its associated method of providing webpage content, ~~use CONDITIONAL~~used conditional GET requests with ~~IF-NONE-MATCH~~If-None-Match headers and associated ~~E-Tag~~ETag values for ~~each file~~ various index and/or asset files required to render ~~a webpage~~various webpages of the Defendant~~, including the index file for that webpage.~~.  In this manner, Defendant's system and associated method ~~force~~forced both intermediate cache servers and ~~end point~~endpoint caches to check whether ~~it is~~they were still authorized to access the previously cached webpage files of Defendant, or whether ~~it must~~they were required to access ~~new~~newly authorized content in rendering Defendant's webpage.

~~20.~~21.  On information and belief, Defendant has thereby reduced the bandwidth required and the amount of data to be served from ~~origination~~origin servers or intermediate cache servers to field user requests to render Defendant's webpages, because such servers only need to serve files whose content has changed.  This has allowed for the efficient update of cached information only when such content has changed, thereby reducing transaction overhead and allowing the authorized content to be served from the nearest cache.

~~21.~~22.  On information and belief, Defendant's website ~~uses~~used a Ruby on Rails architecture to develop and compile ~~its webpage~~ various webpages of the Defendant, including asset files that ~~are required to render a webpage~~were used in rendering the webpages, and to generate a fingerprint of the content of ~~each of the~~asset files when ~~the webpages were~~ compiled.  On information and belief, the

---

[1] While the complaint is sometimes written in the present or present perfect tense, and though it is believed that Defendant's ~~system operates~~systems and methods operate in substantially the same manner currently, all specific allegations are ~~focused on~~directed to the system's operations and the method's performance in the relevant time period.

**FIRST AMENDED COMPLAINT**

1  fingerprint of ~~each file~~ individual asset files that ~~is~~were part of the webpage's content ~~is appended to~~

2  ~~Defendants Uniform Resource Locator ("URL") to make it a~~were included in the filenames of the

3  individual asset files.  On information and belief, the modified filenames were then used as part of the

4  Uniform Resource Identifier ("URI") used to access the ~~file; wherein~~ individual asset files over the

5  Internet.  On information and belief, when ~~the~~an asset file's content ~~changes~~was changed, a new

6  fingerprint ~~is~~was generated and ~~appended to~~included in the filename, its ~~URL.~~URI thus being changed

7  accordingly.  On information and belief, the asset file fingerprint ~~has been~~was generated with a

8  message digest hash function~~.~~ and used to indicate content changes.  Furthermore, asset file URIs

9  (with such fingerprints) were included in index files, which were recompiled when any URI changed

10  due to a fingerprint change.  Thus, a content change in an asset file for a given webpage would result

11  in a change to its fingerprint, its URI, and consequently a content change to the index file for that

12  webpage.

13      ~~22.~~23.  On information and belief, Defendant contracted with Amazon to use Amazon's S3

14  system to store and serve Defendant's webpage content on its behalf, including certain automation

15  features to perform certain accused steps of the method and operate certain accused portions of the

16  system on its behalf.  On information and belief, once Defendant's webpage files ~~have been~~were

17  compiled and are complete, Defendant ~~uploads~~uploaded them to an Amazon S3 host system as objects.

18  On information and belief, Defendant ~~has contracted with,~~ directed and/or controlled the uploading of

19  its files and subsequent actions that occur on the S3 host system due to Defendant's ~~contractual~~choice

20  of using content-based identifiers, e.g., ~~fingerprints~~ETags of content of index and asset files ~~necessary~~

21  ~~to render webpages, as well as~~used in rendering Defendant's ~~relationship with Amazon,~~webpages so

22  that ~~it may~~Defendant could control ~~its~~Defendant's content distribution in an infringement of the

23  Patents-In-Suit in the manner specified herein.

24      ~~23.~~24.  On information and belief, ~~the~~an object's value ~~comprises~~comprised a sequence of bits~~,~~

25  ~~and~~ ~~the object's associated E-Tag value generated,~~ upon upload, on Defendant's behalf, ~~upon~~

26  ~~upload~~an object's associated ETag value was generated by the S3 host system by applying a hash

27  function to the sequence of bits; wherein any two objects comprising identical ~~content have~~sequences

28  of bits had identical associated ~~E-Tag~~ETag values.  Thus, on information and belief, when ~~the~~an

**FIRST AMENDED COMPLAINT**

1 object's content was changed, such as where the overall webpage to be rendered required updated

2 contentuploaded to the S3 host system, and a new associated E-TagETag value was generated, on

3 Defendant's behalf, to authorizeit authorized or disallowdisallowed the respective service or use of

4 the object's content by intermediate cache servers and end pointendpoint caches such as browser

5 caches.

6      24.25.  On information and belief, Defendant's webpages have generally each comprised an

7 index file and one or more asset files and each webpage is represented by an index file.  The index

8 file lists eachcontained URIs for asset filefiles needed to render the webpage to be loaded, where each

9 of these files is uploaded as an individual object with its own URLURI.

10      25.26.  On information and belief, when an intermediate cache server or an end pointendpoint

11 browser has requested a webpage of the Defendant for the first time, it has sent an HyperTexta Hyper

12 Text Transfer Protocol ("HTTP") GET request with the webpage's URLURI and Defendant's

13 originationorigin server hasor an upstream cache server responded by sending an HTTP 200 message

14 containing the index file for the webpage, along with its respective associated ETag.  On information

15 and belief, the intermediate cache server or an endpoint browser then sent individual HTTP Get

16 requests, each with an asset URI that was contained in the index file, and Defendant's origin server or

17 an upstream cache server responded by sending individual HTTP 200 messages respectively

18 containing the index file andrequested asset files necessary to render that webpage, along with their

19 respective associated E-TagsETags.  On information and belief, upon receipt of the HTTP 200

20 messagemessages, the intermediate cache server and end pointor endpoint browser have cached the

21 index and asset files with their associated URI and associated E-TagETag values and the browser has

22 used them in rendering the requested web page of the defendantDefendant.  On information and belief,

23 the intermediate cache servers and browser caches have maintained a database/tablewere caused to

24 maintain databases/tables which mapsmapped the URIURIs of each asset/index filefiles to itstheir

25 respective responses and, if applicable, associated E-Tagcache-control headers and ETags.

26      27.   On information and belief, in at least some instances, such HTTP 200 messages

27 included "cache-control" headers containing "max-age" directives and/or "expires" headers.  On

28

1    information and belief, such HTTP 200 messages may also have included "cache-control" headers

2    containing a "must-revalidate" directive.

3    ~~26.~~28.  On information and belief, by responding to ~~a~~an HTTP GET request for a given

4    webpage by sending down ~~the authorized~~content of an index/asset file ~~content~~ with an associated ~~E-~~

5    ~~Tag~~ETag, Defendant has allowed or has forced the browser cache and all intermediate cache servers

6    ~~to~~ , the next time that they are called to use that content, to use the ~~E-Tag~~ETag in an HTTP

7    ~~CONDITIONAL~~conditional GET request with ~~"IF-NONE-MATCH" protocol~~a "If-None-Match"

8    header to re-verify that they are still authorized to serve or use ~~the content the next time that they are~~

9    ~~called to do so~~that content, or whether they are not still authorized to use that content and must use

10   new content, in the manner as follows.

11   29.      ~~On information and belief, when the user has again requested the Defendant's webpage,~~

12   ~~the user's browser sends a CONDITIONAL GET 'IF-NONE-MATCH' request using the associated~~

13   ~~E-Tag~~On information and belief, Defendant had the ability to stop or limit when an intermediate cache

14   or endpoint browser could have or must have used an ETag to reauthorize its use of cached index/asset

15   files of the Defendant website owner.  On information and belief, Defendant did this, for example, by

16   causing "max-age" or other directives in "cache-control" headers to be included in HTTP responses

17   containing its index/asset files.  On information and belief, because Defendant could bypass the use

18   of the ETag completely through the use of such commands, it controlled whether or not the claimed

19   system and the claimed method were used at all in the service of their webpage content by S3.  On

20   information and belief, Defendant benefits from using the ETags to control the distribution of its

21   webpage content by communicating to a downstream cache and to an endpoint browser which of

22   Defendant's cached webpage files it is reauthorized to serve/use and what newly authorized files it

23   must first obtain in serving/rendering Defendant's webpages.

24   ~~27.~~30.  On information and belief, when an endpoint browser again requested the Defendant's

25   webpage, according to the cache-control headers previously received with the webpage's index file,

26   the endpoint browser sent a conditional GET 'If-None-Match' request using the associated ETag value

27   and the URI for the index file so as to be notified whether the browser still has Defendant's authority

28   to render the webpage with its locally cached ~~asset files~~index file for that webpage.

8

28.31.  On information and belief, a responding intermediate cache server, according to the cache-control headers, having an unexpired E-TagETag for that URL respondsURI responded to the request by determining whether it hashad the same associated E-TagETag value in its list of associated E-TagETag values; (if it had no E-TagETag value for that URLURI, the request was passed up to an upstream intermediate cache server capable of responding or, if none, to the Defendant's originationorigin server which performed the response).

29.32.  On information and belief, if the responding server had webpage content for that URLURI and there was a match between the E-TagETag it received in the request with the E-TagETag it currently had associated for that URLURI, it has sent back an HTTP 304 message; this message notifying the browser that the same webpage content was present at the responding server and that the browser was still authorized to again use the previously cached asset filesindex file to render the webpage.  On information and belief, upon receipt of the HTTP Protocol 304 response, the browser accessed the locally cached asset filesindex file in rendering the webpage.

30.33.  On information and belief, if the index file's associated E-TagETag sent by the endpoint browser in the 'IF-NONE-MATCH'If-None-Match' request did not match the associated E-TagETag maintained at the responding server (or other upstream intermediate cache servers or the origin server) for that URI, the responding server sent back an HTTP 200 response along with the new index file along with its new E-TagETag value.  The HTTP 200 response indicated to the downstream server and/or the browser that it was not authorized to use (or serve, asin the case may beof an intermediate cache server receiving the HTTP 200 message) the previously cached web page content but must acquire some newly authorized content.index file.  In response to receiving the HTTP 200 message, the intermediate cache server andendpoint browser were(or intermediate cache server) was forced to update their respective caches with the new index file and associated E-Tag.ETag.  The browser read the new index file to identify the list ofasset file URIs contained therein.

31.34.  On information and belief, for anyparticular asset file URIURIs for which it already had a cachedthere was an entry in the endpoint browser and the cache entry included an associated E-TagETag value, theaccording to the cache-control headers previously received with such asset file, the endpoint browser likewise sent an 'IF_NONE_MATCH'   CONDITIONAL"If-None-Match"

**FIRST AMENDED COMPLAINT**

1    conditional GET request with the URI and associated ~~E-Tag to the first intermediate cache~~
2    ~~server.~~ETag.  On information and belief, according to the cache-control headers, if the responding
3    server had an ~~unexpired E-Tag~~ETag value for ~~the URL from~~ that URI, the responding server compared
4    the associated ~~E-Tag~~ETag value received in the ~~CONDITIONAL~~conditional GET with ~~its list~~ of the
5    associated ~~E-Tag values~~ETag for ~~the URL from~~ that URI.  On information and belief, if there was a
6    match, then the responding server sent an HTTP 304 message ~~with the new max-age value~~ and
7    associated ~~E-Tag~~ETag value, which reauthorized the browser to use the previously cached content of
8    that asset file to render the webpage.  If there was not a match, the responding server sent an HTTP
9    200 message with the new content for that asset file and its new associated ~~E-Tag~~ETag value.  The
10   HTTP 200 message directed the downstream server or the browser that it was not authorized to access
11   the previously cached content for that ~~URL~~URI to serve it or to render the webpage.  Rather, in
12   response to receiving such a message, the browser accessed the new asset file content provided in the
13   HTTP 200 message in rendering the webpage.  Thusly the end cache and the intermediate caches in
14   the network updated their respective databases to map the new URI to the new content and ~~E-Tag~~ETag
15   value.

16        ~~32.~~    On information and belief, ~~the browser has repeated this process~~ for ~~each~~particular
17   asset file URIs in the index file for which ~~it has~~there was an entry in the endpoint browser's cache and
18   the cache entry did not include an associated ~~E-Tag value.~~

19        ~~33.~~35.  ~~On information and belief, for any asset file for which it did not have cached a~~ETag
20   values, the browser was allowed to use the content, subject to the cache-control headers, previously
21   received ~~associated E-Tag value~~with such asset file.  If the cache-control headers did not allow the
22   cached asset to be used or if there was no entry in the endpoint browser's cache for the asset file's
23   URI, the browser sent an HTTP GET request with the asset file's URI; and the responding intermediate
24   or ~~origination~~origin server responded to the GET request by sending the asset file for that URI and, if
25   any, the corresponding cache-control header and/or associated ~~E-Tag~~ETag with an HTTP 200
26   message.  On information and belief, in response to receiving the HTTP 200 message, the browser
27   cached the asset file, if any, and its cache-control header and/or associated ~~E-Tag~~ETag and used the
28   newly received asset files in rendering Defendant's webpage.  On information and belief, when the

1     downstream intermediate cache or the browser was later required to again render the webpage, it went

2     through the above process to determine which file content it still had authority to access or whether it

3     needed to access different authorized content to render the webpage via the HTTP 304 and HTTP 200

4     messages.

5          36.     On information and belief, the browser repeated this process for various asset files for

6     which it had an associated ETag value and asset files with URIs in the index file.

7          34.    On information and belief, in this manner, Defendant used ~~E-Tag~~(1) ETag values and

8     (2) asset files referenced by URIs with fingerprints based on the asset files' content: to control the

9     behavior of ~~in-network~~downstream intermediate cache servers and ~~end point~~endpoint caches to make

10    sure that they only accessed and used Defendant's latest authorized webpage content to serve or to

11    ~~use.~~

12    ~~35.~~37.   On information and belief, ~~recognizing that some out of network intermediate cache~~

13    ~~servers rendered~~render their ~~own E-Tag by hashing the index or asset file's URI, Defendant appended~~

14    ~~to the URL a content fingerprint that was generated by applying a hash function to the file's content.~~

15    ~~On information and belief, Defendant's appendment of the fingerprint to the URL similarly controlled~~

16    ~~the behavior of such intermediate cache severs by making sure that such intermediate cache servers~~

17    ~~always revalidated whether they are still authorized to serve the cached content or had to access new~~

18    ~~authorized content to serve or use in rendering Defendant's~~ webpages.

19

20                  **FIRST CLAIM FOR RELIEF**

21         **INFRINGEMENT OF U.S. PATENT NO. ~~5,978,791~~**

22    ~~36.     PersonalWeb repeats and realleges paragraphs 1-33, as if the same were fully stated~~

23    ~~herein.~~

24    ~~37.    On November 2, 1999, United States Patent No. 5,978,791 (the "'791 patent") was duly~~

25    ~~and legally issued for an invention entitled "Data Processing System Using Substantially Unique~~

26    ~~Identifiers to Identify Data Items, Whereby Identical Data Items Have the Same Identifiers."~~

27    ~~PersonalWeb has an ownership interest in the '791 patent by assignment, including the exclusive right~~

28

1  to enforce the '791 patent within the PersonalWeb Patent Field, and continues to hold that ownership

2  interest in the '791 patent. A true and correct copy of the '791 patent is attached hereto as Exhibit A.

3  38. Defendant has infringed at least claims 38 and 42 of the '791 patent by its manufacture,

4  use, sale, importation, and/or offer for sale of products or services, and/or controlling the distribution

5  of its webpage content in the manner described herein. Defendant is liable for its infringement of the

6  '791 patent pursuant to 35 U.S.C. § 271.

7  39. For example, claim 38 covers "a method of locating a particular data item at a location

8  in a data processing system." On information and belief, Defendant's website has been a data

9  processing system and has performed the claimed method by using a system of notifications and

10  authorizations to locate and control the distribution of data items necessary to render its webpages

11  such as various index and asset files.

12  40. Claim 38 then recites the act of "(A) determining a substantially unique identifier for

13  the data item, the identifier depending on and being determined using all of the data in the data item

14  and only the data in the data item, whereby two identical data items in the system will have the same

15  identifier." On information and belief, Defendant's website has determined a substantially unique

16  identifier for the data item by calculating a hash fingerprint and E-Tags of the file's contents, and only

17  its contents; for example, each asset file has comprised a sequence of bits and the hash of any two files

18  comprising the identical sequence of bits has had identical substantially unique identifiers, *e.g.*,

19  identical fingerprints and E-Tags. If either the file's content has changed, a new substantially unique

20  identifier has been determined for the index file both during compilation of the file and its upload as

21  an object into Defendant's chosen content distribution system.

22  41. Claim 38 then recites the act of "(B) requesting the particular data item by sending the

23  data identifier of the data item from the requester location to at least one location of a plurality of

24  provider locations in the system." On information and belief, Defendant's use of the E-Tags and

25  fingerprints has controlled how multiple provider locations such as origin or intermediate servers have

26  interfaced with requester locations such as users' browsers to perform this act. On information and

27  belief, for example, by including the E-Tags in the HTTP 200 messages and by appending the

28  fingerprint to the URL, Defendant forced intermediate cache servers and end caches (such as used by

1   a browser) to use CONDITIONAL GET requests with IF-NONE-MATCH headers and associated E-

2   Tag values for each file needed to render Defendant's webpages, and forced the responding upstream

3   servers to respond to the CONDITIONAL GET requests with HTTP 200 and HTTP 304 messages to

4   verify whether they were still authorized to serve or use previously cached file contents needed to

5   render Defendant's webpages, or must access newly provided authorized content to serve or use.

6       42.    Claim 38 then recites the act of "(C) on at least some of the provider locations, (a) for

7   each data item of a plurality of data items at the provider locations, (i) determining a substantially

8   unique identifier for the data item, the identifier depending on and being determined using all of the

9   data in the data item and only on the data in the data item, whereby two identical data items in the

10  system will have the same identifier; and (ii) making and maintaining a set of identifiers of data items."

11  On information and belief, Defendant's origination servers stored URI's (that include appended

12  content fingerprints) mapped to the authorized content and its E-Tag; and by sending the URI and the

13  E-Tag in each HTTP 200 message containing their website content, Defendant forced intermediate

14  cache servers and end-point caches to do the same.

15      43.    Claim 38 then recites "(b) determining, based on the set of identifiers, whether the data

16  item corresponding to the requested data identifier is present at the provider location." On information

17  and belief, by doing so, Defendant has also forced the intermediate cache servers and end point caches

18  to send the URI and E-Tag back in CONDITIONAL GET requests with IF-NONE-MATCH headers;

19  and thereby forced a responding server (origination or intermediate cache server) that received such a

20  CONDITIONAL GET request from a downstream cache server or end point cache, to determine

21  whether the file content corresponding to the received E-Tag, is present on the responding server by

22  comparing it to the E-Tag values identifiers it has in its database to determine whether there is a match.

23  On information and belief, this same process has been used for out-of-network intermediate cache

24  servers that generate their own E-Tag value by hashing the URI.

25      44.    Claim 38 then recites "(c) based on the determining, when the provider location

26  determines that the particular data item is present at the provider location, notifying the requestor that

27  the provider has a copy of the given data item." On information and belief, by using this system,

28  Defendant forced the responding server to issue an HTTP 304 message to the requesting downstream

1  ~~cache when there has been a match between the E-Tag in the CONDITIONAL GET request and the~~
2  ~~E-Tag in the database thereby notifying the requesting location that the same file content is present~~
3  ~~both at the responding and requesting locations and that it was therefore re-authorized to serve/use the~~
4  ~~existing content corresponding to that E-Tag value.~~

5  ~~45.~~1.   ~~Defendant's acts of infringement have caused damage to PersonalWeb, including~~
6  ~~impairment of the value of the '791 patent, and PersonalWeb is entitled to recover from Defendant the~~
7  ~~damages sustained by PersonalWeb as a result of Defendant's wrongful acts in an amount subject to~~
8  ~~proof at trial.~~

9

10  **~~SECOND CLAIM FOR RELIEF~~**

11  **~~INFRINGEMENT OF U.S. PATENT NO.~~ 6,928,442**

12  ~~46.~~38.   PersonalWeb repeats and realleges paragraphs 1 ~~33, -~~37, as if the same were fully stated
13  herein.

14  ~~47.~~39.   On August 9, 2005, United States Patent No. 6,928,442 (the "'442 patent") was duly
15  and legally issued for an invention  entitled "Enforcement and Policing of Licensed Content Using
16  Content-Based Identifiers."  PersonalWeb  has  an  ownership  interest  in  the  '442  patent  by
17  assignment, including the exclusive right to enforce the '442 patent within the PersonalWeb Patent
18  Field, and continues to hold that ownership interest in the '442 patent.  A true and correct copy of the
19  '442 patent is attached hereto as Exhibit ~~B~~A.

20  ~~48.~~40.   Defendant has infringed at least claims 10 and 11 of the '442 patent by its manufacture,
21  use, sale, importation, and/or offer for sale of products or services, and/or controlling the distribution
22  of its webpage content in the manner described herein.  Defendant's infringement is literal and/or
23  under the doctrine of equivalents and Defendant is liable for its infringement of the '442 patent
24  pursuant to 35 U.S.C. § 271.

25  ~~49.~~41.   For example, claim 10 covers "a method, in a system in which a plurality of files are
26  distributed across a plurality of computers."  On information and belief, Defendant has used a system
27  of notifications and authorizations to distribute a plurality of files, *e.g.*, Defendant's files containing
28  content necessary to render its webpages, across a plurality of computers such as production servers,

origin servers, intermediate cache servers and ~~end point~~endpoint caches used by browsers rendering Defendant's webpages.

50.42.  Claim 10 then recites the act of "obtaining a name for a data file, the name being based at least in part on a given function of the data, wherein the data used by the function comprises the contents of the particular file."  As set forth above, on information and belief, Defendant generated or otherwise obtained ~~E-Tags~~ETags and fingerprints in URIs for its index and asset files used to render its webpages using a hash function, wherein the ~~E-Tag~~ETag and fingerprint ~~has been~~in the URI were based on the contents of the particular file.  Moreover, Defendant caused the intermediate caches servers and ~~end point~~endpoint caches to obtain the ~~E-tags~~ETags and URIs (which contain the fingerprint) in HTTP ~~Protocol~~ 200 messages sent from ~~Defendants origination~~Defendant's origin servers.  On information and belief, Defendant caused intermediate cache servers and its ~~origination~~origin servers to obtain ~~E-tags~~ETags and URIs (which contain the fingerprint) in ~~CONDITIONAL~~conditional GET messages from ~~end point~~endpoint and intermediate caches, as described *supra*. ~~On information and belief, by also inserting the fingerprint into the URI for the file, Defendant caused certain out-of-network intermediate cache servers (that obtain their own E-Tag by hashing the URI) to make content based E-Tags, so that when the content of the file has changed, these out-of-network caches were caused to verify that they already had or needed Defendant's latest authorized content in the same manner outlined *supra* for in-network servers via the HTTP 200 and HTTP 304 message system or to notify such caches that they already had and were still authorized to access the previously cached content or to provide such latest authorized content.~~

51.43.  Claim 10 then recites the act of "determining, using at least the name, whether a copy of the data file is present on at least one of said computers."  On information and belief, as set forth above, Defendant has caused its ~~origination~~origin severs and the intermediate cache servers ~~in~~ between an ~~end point~~endpoint cache and one of its ~~origination~~origin servers to, in response to receiving a ~~CONDITIONAL~~conditional GET request with ~~the IF-NONE-MATCH~~an If-None-Match header, determine whether it has a file present that matches the URI (which contained the fingerprint) in the conditional GET and to compare the ~~E-Tag in the CONDITIONAL GET~~ETag in the conditional GET to the ETag for that URI and determine whether a copy of the content having that ETag is present.

1   Moreover, Defendant has caused browsers at the endpoint cache to determine, using the fingerprint

2   the URI of an asset file, whether it had a cached copy of the corresponding asset file.

3   ~~52.   to the E-Tags of files it has present and determine whether a copy of the content~~

4   ~~having that E-Tag is present.~~

5   ~~53.~~44.  Claim 10 then recites the act of "determining whether a copy of the data file that is

6   present on a at least one of said computers is an unauthorized copy or an unlicensed copy of the data

7   file."  On information and belief, as set forth above, if there was a match, ~~the origination~~and it was

8   determined that the max-age value was unexpired and/or after any further reauthorization check

9   required by other directives set by Defendant via "cache-control" headers, the origin or intermediate

10  cache server determined that the copy of the file present at the downstream intermediate cache server

11  and/or the ~~end-point~~endpoint cache was an authorized or licensed copy of the data file.  Conversely,

12  if there was no match, it determined that the copy of the file present at the downstream intermediate

13  cache server and/or the ~~end-point~~endpoint cache was an unauthorized or unlicensed copy of the data

14  file.  Likewise, if the browser determined that it had a file with a matching URI, and its max-age value

15  was unexpired and/or after any further reauthorization check required by Defendant via other

16  directives in "cache-control" headers, the browser determined that it was still authorized to use that

17  file.

18  45.    Defendant's acts of infringement caused damage to PersonalWeb and PersonalWeb is

19  entitled to recover from Defendant the damages sustained by PersonalWeb as a result of Defendant's

20  wrongful acts in an amount subject to proof at trial.

21

22  **SECOND CLAIM FOR RELIEF**

23  ~~54.   **INFRINGEMENT OF U.S. PATENT NO.** , including impairment of the value of the~~

24  ~~'442 patent, and PersonalWeb is entitled to recover from Defendant the damages sustained by~~

25  ~~PersonalWeb as a result of Defendant's wrongful acts in an amount subject to proof at trial.~~

26

27

28

### THIRD CLAIM FOR RELIEF

### INFRINGEMENT OF U.S. PATENT NO. 7,802,310

55.46.  PersonalWeb repeats and realleges paragraphs 1–33,. 37, as if the same were fully stated herein.

56.47.  On September 21, 2010, United States Patent No. 7,802,310 (the "'310 patent") was duly and legally issued for an invention entitled "Controlling Access to Data in a Data Processing System." PersonalWeb has an ownership interest in the '310 patent by assignment, including the exclusive right to enforce the '310 patent within the PersonalWeb Patent Field, and continues to hold that ownership interest in the '310 patent.  A true and correct copy of the '310 patent is attached hereto as Exhibit CB.

57.48.  Defendant has infringed at least claims 20, 69 and 7169 of the '310 patent by its manufacture, use, sale, importation, and/or offer for sale of products or services, and/or controlling the distribution of its webpage content in the manner described herein.  Defendant's infringement is literal and/or under the doctrine of equivalents and Defendant is liable for its infringement of the '310 patent pursuant to 35 U.S.C. § 271.

49.     ForFor example, claim 20 covers a "computer-implemented method operable in a system which includes a plurality of computers."  On information and belief, Defendant used the claimed computer implemented method by using a system of notifications and authorizations to control the distribution of data items, such as various index and asset files, necessary to render its webpages, across a plurality of computers such as production servers, origin servers, intermediate cache servers, and endpoint caches.

50.     Claim 20 then recites "controlling distribution of content from a first computer to at least one other computer, in response to a request obtained by a first device in the system from a second device in the system, the first device comprising hardware including at least one processor, the request including at least a content-dependent name of a particular data item, the content-dependent name being based at least in part on a function of at least some of the data comprising the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items will have the same content-dependent name."  On information and belief, as set

**FIRST AMENDED COMPLAINT**

forth above, Defendant has caused downstream intermediate cache servers and endpoint caches to send conditional GET requests with If-None-Match headers containing ETags that are fielded by upstream cache or origin servers. On information and belief, the ETags were content-dependent names for a data item based on hashing the data item's contents; and when the file's content changed a new content-dependent name was determined. On information and belief, in Defendant's method, a first computer, such as the intermediate cache server or origin server, received such conditional GET requests from a second computer, such as a user browser or other intermediate cache server, regarding data items, such as index or asset files, the requests including ETags associated with the respective data items.

51.    Claim 20 then recites "based at least in part on said content-dependent name of said particular data item, the first device (A) permitting the content to be provided to or accessed by the at least one other computer if it is not determined that the content is unauthorized or unlicensed, otherwise, (B) if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed by the at least one other computer." On information and belief, the first computer, such as an upstream intermediate cache server or origin server, maintained a plurality of ETags associated with Defendant's asset and index files  On information and belief, the ETag in a request and the ETag maintained by the first computer for the particular data item sought by the request were compared to determine whether the associated content present at the downstream computer was still authorized to be used/served or whether new authorized content must be provided thereto. If it was determined that the data item corresponding to the received ETag was still authorized to be used, the first computer sent back an HTTP 304 message authorizing the downstream cache server or end-user cache to access the file content already present in order to serve it or to use it to render the webpage. On information and belief, if it had been determined that the data item corresponding to received E-tag was no longer authorized, the first computer sent back an HTTP 200 message which indicated to the downstream cache server or end-user cache that was not authorized to access the old content and must access the new authorized file content contained in the HTTP 200 message to serve it or to use it to render the webpage.

**FIRST AMENDED COMPLAINT**

1    58.52.  For further example, claim 69 covers a "system operable in a network of computers,

2    the system comprising hardware including at least a processor, and software, in combination with said

3    hardware." On information and belief, Defendant has controlled the distribution of its website content

4    across a system that included a network of computers, such as its production servers as well as origin

5    servers, intermediate cache servers, and end-pointendpoint caches, all comprising hardware including

6    a processor.  On information and belief, Defendant has utilized thesoftware, in combination with such

7    hardware, such as Ruby on Rails code, software utilized in implementing the HTTP web protocol, and

8    both hardware and software hostedused on the Amazon S3 hosting systemhost servers that Defendant

9    usesused to serve its content.

10    59.53.  Claim 69 then recites the system "(a)…) to receive at a first computer, from a second

11    computer, a request regarding a data item, said request including at least a content-dependent name

12    for the data item, the content-dependent name being based at least in part on a function of the data in

13    the data item, wherein the data used by the function to determine the content-dependent name

14    comprises at least some of the contents of the data item, wherein the function that was used is a

15    message digest function or a hash function, and wherein two identical data items will have the same

16    content-dependent name."  On information and belief, as set forth above, Defendant has caused

17    downstream      intermediate      cache      servers      and      end-pointendpoint      caches      to      send

18    CONTIONALconditional GET requests with IF-NONE-MATCHIf-None-Match headers containing

19    E-TagsETags and URIs including fingerprints that are fielded by upstream cache or originationorigin

20    servers.  On information and belief, the E-Tags have beenETags and URIs including fingerprints were

21    content-dependent names for a data item calculated by hashing the file's contents; and when the file's

22    content has changed a new content-dependent name has beenwas determined.  On information and

23    belief, in Defendant's system, a first computer, such as the intermediate cache server or

24    originationorigin server, received CONDITIONALsuch conditional GET requests from a second

25    computer, such as a user browser, regarding data items, such as index or asset files, using content-

26    dependent names (E-tags)such as ETags and URIs including fingerprints associated with the data

27    items.

28

1   60.54.   Claim 69 then recites ""(b) in response to said request: (i) to cause the content-

2   dependent name of the data item to be compared to a plurality of values; and (ii) to determine if access

3   to the data item is authorized or unauthorized based on whether or not the content-dependent name

4   corresponds to at least one of said plurality of values, and (iii) based on whether or not it is determined

5   that access to the data item is authorized or unauthorized, to allow the data item to be provided to or

6   accessed by the second computer if it is not determined that access to the data item is unauthorized."

7   On information and belief, the first computer, such as an upstream intermediate cache server or

8   originationorigin server, has maintained a plurality of E-tagURI values associated with Defendant's

9   asset and index files; has compared the E-tagURI values received in the CONDITIONALa conditional

10   GET request from the second (downstream) computer to that plurality of URI values; that comparison

11   having allowed the first computer to determine whether the content-dependent name in the request

12   corresponded to one of the plurality of stored URI values and to determine whether access to the data

13   item was still authorized or not.  On information and belief, in particular, when there was a match, the

14   first computer determined the associated content present at the downstream computer was still

15   authorized to be used/served or whether new authorized content must be provided thereto.  If it was

16   determined that the data item corresponding to the received E-tagURI including a fingerprint was not

17   still unauthorizedauthorized to be used, the first computer has sent back an HTTP 304 message

18   authorizing the downstream cache server or end-user cache to access the file content already present

19   in order to serve it or to use it to render the webpage.  On information and belief, if it hashad been

20   determined that the data item corresponding to the received E-tagURI including a fingerprint was

21   unauthorizedno longer authorized, the first computer has sent back an HTTP 200 message which

22   indicated to the downstream cache server or end-user cache that was not authorized to access the old

23   content and must access the new authorized file content contained in the HTTP 200 message to serve

24   it or to use it to render the webpage.

25   61.55.   Defendant's acts of infringement have caused damage to PersonalWeb, including

26   impairment of the '310 patent, and PersonalWeb is entitled to recover from Defendant the damages

27   sustained by PersonalWeb as a result of Defendant's wrongful acts in an amount subject to proof at

28   trial.

### THIRD CLAIM FOR RELIEF

~~FOURTH CLAIM FOR RELIEF~~

### INFRINGEMENT OF U.S. PATENT NO. 7,945,544

~~62.~~56.  PersonalWeb repeats and realleges paragraphs 1 ~~33,~~ 37, as if the same were fully stated herein.

~~63.~~57.  On May 17, 2011, United States Patent No. 7,945,544 (the "'544 patent") was duly and legally issued for an invention entitled "Similarity-Based Access Control of Data in a Data Processing System."  PersonalWeb has an ownership interest in the '544 patent by assignment, including the exclusive right to enforce the '544 patent within the PersonalWeb Patent Field, and continues to hold that ownership interest in the '544 patent.  A true and correct copy of the '544 patent is attached hereto as Exhibit ~~D~~C.

~~64.~~58.  Defendant has infringed at least claims 46, 48, ~~49,~~ 52, ~~55~~ and ~~56~~55 of the '544 patent by its manufacture, use, sale, importation, and/or offer for sale of products or services, and/or controlling the distribution of its webpage content in the manner described herein.  Defendant's infringement is literal and/or under the doctrine of equivalents and Defendant is liable for its infringement of the ~~'791~~'544 patent pursuant to 35 U.S.C. § 271.

~~65.~~59.  For example, claim 46 covers a claimed "computer-implemented method."   On information and belief, Defendant uses the claimed computer implemented method by using a system of notifications and authorizations to locate and control the distribution of data items, such as various index and asset files, necessary to render its webpages.

~~66.~~60.  Claim 46 then recites the act of "(A) for each particular file of a plurality of files: (a2) determining a particular digital key for the particular file, wherein the particular file comprises a first one or more parts." On information and belief, each of Defendant's webpages comprises one or more asset files and has an associated index file, the index file ~~lists~~containing the ~~URI's~~URIs having fingerprints of a plurality of asset files comprising the webpage, and once the index and asset files are compiled and complete, Defendant uploads them to the S3 host system as objects.  On information and belief, the ~~object's~~index file's associated ~~E-Tag~~ETag value is generated by applying a hash

1  algorithm to the ~~object's~~index file's contents, wherein any two ~~objects~~index files comprising the

2  identical content will have identical associated ~~E-Tag~~ETag values.   On information and belief,

3  whenever a new ~~object~~index file is uploaded to an S3 server or the ~~object's~~index file's content changes,

4  Defendant ~~determines~~caused an ETag to be determined and ~~associates an E-Tag for the object by~~

5  ~~receiving or identifying the~~ associated ~~E-Tag value generated~~to the index file at the time of upload.

6  On information and belief, this applies also to webpage's ~~E-tag~~ETag, which is generated when its

7  index file is uploaded~~, and this E-Tag value is a search key to contents of the webpage~~.

8       ~~67.~~61.   Claim 46 then recites "each part of said first one or more parts having a corresponding

9  part value, the part value of each specific part of said first one or more parts being based on a first

10 function of the contents of the specific part, wherein two identical parts will have the same part value

11 as determined by the first function, and wherein the particular digital key for the particular file is

12 determined using a second function of the one or more of part values of said first one or more parts."

13 ~~On information and belief, the webpage's E-Tag~~On information and belief, prior to various asset files

14 being uploaded to the S3 host system, a fingerprint is generated for each of these asset files by applying

15 a hash function to the asset file's contents and the fingerprints are inserted into the URIs for the

16 respective asset files.  On information and belief, the webpage's ETag value is generated by applying

17 a second hash function to the index file's contents, which consist of the ~~URI's~~URIs of one or more of

18 the asset files which comprise the webpage's contents.   On information and belief, because the

19 respective asset file's ~~URI's~~URIs include the fingerprints of their content, the webpage's ~~E-Tag~~ETag

20 value will change and a new associated ~~E-Tag~~ETag value is generated to represent the webpage's

21 content, when the content changes and two identical ~~webpage's~~webpages having the identical content

22 represented by their index file will have the same ~~E-Tag~~ETag value.

23       ~~68.~~62.   Claim 46 then recites the act of "(a2) adding the particular digital key of the particular

24 file to a database, the database including a mapping from digital keys of files to information about the

25 corresponding files."   On information and belief, Defendant caused the ~~origination~~origin server,

26 intermediate   caches   and   browser   caches   to maintain   ~~a database/table~~databases/tables   which

27 ~~maps~~mapped the ~~E-Tag~~ETag of each webpage's index file to its URI, ~~storage location~~and information

28 about the corresponding ~~file, and whenever a new index file is uploaded to an S3 server for that~~

1  webpage ~~(e.g. when the webpage's content changers and therefore it's index file's content changes),~~

2  ~~Defendant determines and associates a new E-Tag for the index file by receiving or identifying the~~

3  ~~associated E-Tag value generated at the time of upload. On~~, such as, for example, cache control

4  information ~~and belief, this associated E-Tag is added to the database/table and maps to the~~

5  ~~corresponding file information~~for the webpage.

6       ~~69.~~63.   Claim 46 then recites "(B) determining a search key based on search criteria, wherein

7  the search criteria comprise a second one or more parts, each of said second one or more parts of said

8  search criteria having a corresponding part value, the part value of each specific part of said second

9  one or more parts being based on the first function of the contents of the specific part, and wherein the

10  search key is determined using the second function of the one or more of part values of said second

11  one or more parts."   On information and belief, when a downstream intermediate cache server or a

12  browser again ~~requests~~requested a webpage of Defendant, Defendant caused it ~~sends~~to send a

13  ~~CONDITIONAL~~conditional GET request with ~~IF-NONE-MATCH~~an If-None-Match header with the

14  webpage's associated ~~E-Tag~~ETag value.   On information and belief, the ~~receiving server will~~

15  ~~determine the~~received ~~E-Tag~~ETag value ~~and use it as a search key to check whether~~was determined

16  using the second hash function of the webpage's ~~content has changed~~index file, which includes URIs

17  including fingerprints for one or more of the asset files which comprise the webpage's contents.

18       ~~70.~~64.   Claim 46 then recites "(C) attempting to match the search key with a digital key in the

19  database."   On information and belief, when the responding server receives the webpage's ~~E-Tag~~ETag

20  value in a ~~CONDITIONAL~~conditional GET request with ~~IF-NONE-MATCH~~an If-None-Match

21  header, it compares the received ~~E-Tag~~ETag with the ~~current list of associated E-Tags~~ETags it has

22  maintained in a database/table corresponding to the URI of the webpage's index file to determine if

23  there is matching value for that webpage.

24       ~~71.~~65.   Claim 46 then recites "(D) if the search key matches a particular digital key in the

25  database, providing information about the file corresponding to the particular digital key."   On

26  information and belief, if the responding server has a matching ~~unexpired E-Tag~~ETag value for the

27  ~~webpage,~~ webpage's index file, the responding server sends an HTTP 304 message, which ~~informs~~

28  ~~the downstream server and/or browser that the content of the webpage has not changed, and that the~~

**FIRST AMENDED COMPLAINT**

1   ~~downstream server and/or browser is reauthorized to access all the previously cached content~~

2   ~~necessary to render the webpage. On~~includes information ~~and belief, if there is not a match, the~~

3   ~~responding server sends an HTTP 200 (Modified) message with the new index file~~about the

4   corresponding webpage, such as, ~~for that webpage and its new associated E-Tag value, and the HTTP~~

5   ~~200 message informs the downstream server and/or browser that it is not authorized to access all the~~

6   ~~previously cached asset files need to render that webpage. On~~example, cache control information ~~and~~

7   ~~belief, the receipt of the HTTP 200 message with the webpage's new index file and E-Tag informs the~~

8   ~~downstream server and/or browser that it is authorized to use the new index file provided in the HTTP~~

9   ~~200 message in determining what parts of the webpage it already has cached that it can use and which~~

10  ~~new parts it needs to render the webpage. On information and belief, the end cache and the~~

11  ~~intermediate caches in the content delivery chain also update their respective databases to map the~~

12  ~~new index file URI and contents to the new index content and E-Tag value~~for the webpage.

13      ~~72.    On information and belief, in this manner, the webpage's E-tag value informs the~~

14  ~~downstream cache server or end point cache via the HTTP 304 and HTTP 200 messages whether it is~~

15  ~~authorized to serve/use all of the previously cached parts of the webpage, or must use CONDITIONAL~~

16  ~~GET request(s) with IF-NONE-MATCH header(s) and E-Tags at the asset file level to determine~~

17  ~~which parts of the webpage it is re-authorized to use/serve, and what newly authorized parts of the~~

18  ~~webpage it must first obtain.~~

19      ~~73.~~66.  Defendant's acts of infringement have caused damage to PersonalWeb~~, including~~

20  ~~impairment of the value of the '544 patent,~~ and PersonalWeb is entitled to recover from Defendant the

21  damages sustained by PersonalWeb as a result of Defendant's wrongful acts in an amount subject to

22  proof at trial.

23          ~~**FIFTH CLAIM FOR RELIEF**~~

24

25          **FOURTH CLAIM FOR RELIEF**

26      **INFRINGEMENT OF U.S. PATENT NO. 8,099,420**

27      ~~74.~~67.    ~~71.~~—PersonalWeb repeats and realleges paragraphs 1~~-33,~~. 37, as if the same were

28  fully stated herein.

**FIRST AMENDED COMPLAINT**

75.68. 72.    On January 17, 2012, United States Patent No. 8,099,420 (the "'420 patent") was duly and legally issued for an invention entitled "Accessing Data in a Data Processing System." PersonalWeb has an ownership interest in the '420 patent by assignment, including the exclusive right to enforce the '420 patent within the PersonalWeb Patent Field, and continues to hold that ownership interest in the '420 patent.  A true and correct copy of the '420 patent is attached hereto as Exhibit ED.

76.69. 73.    Defendant has infringed claims 25, 26, 27, 29, 30, 32, 34-36, and 166 of the '420 patent by its manufacture, use, sale, importation, and/or offer for sale of products or services, and/or controlling the distribution of its webpage content in the manner recited herein.  Defendant's infringement is literal and/or under the doctrine of equivalents and Defendant is liable for its infringement of the '420 patent pursuant to 35 U.S.C. § 271.

77.70. 74.    For example, claim 166 covers a "system comprising hardware, including at least a processor, and software, in combination with said hardware."  On information and belief, Defendant's Defendant has controlled the distribution of its website content across a system has comprisedthat included hardware including a processor, such as its webpageproduction servers as well as origin servers, intermediate cache servers, and endpoint caches; and software, in combination with such hardware, including the Ruby on Rails web code used in making its webpages and, software utilized in implementing the HTTP web protocol, and the software used on the Amazon S3 hosting system which have beenhost servers that Defendant used in combination withto serve its hardwarewebpages.

78.71. 75.    Claim 166 then recites "(A) for a particular data item in a set of data items, said particular data item comprising a corresponding particular sequence of bits."  On information and belief, Defendant's system has controlled the distribution of asset files and index files necessary to render its webpage'swebpages which represent particular data items, and each of these files comprise a corresponding sequence of bits.

79.72. 76.    Claim 166 then recites that for the particular data item to "(a1) determine one or more content-dependent digital identifiers for said particular data item, each said content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the

FIRST AMENDED COMPLAINT

particular sequence of bits of the particular data item, wherein two identical data items will have the same digital identifiers as determined using said given function."  On information and belief, Defendant's system has applied hash functions to each of the Defendant's webpage files to all of the bits of the file's content to determine both a fingerprint and an ~~E-tag~~ETag for the file's content; whereby two identical data items have the same ~~E-tag~~ETag and fingerprint values.  On information and belief, the fingerprint was ~~appended to~~included in the file's ~~URL (herein, the URL plus the appended fingerprint is referred to as the~~ URI) and the ~~E-Tag~~ETag value was associated with the file's ~~URL~~URI.

80.73.  ~~77.~~    Claim 166 then recites that for the particular data item "(a2) selectively permits the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without authorization, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item."

81.74.  ~~78.~~    On information and belief, Defendant's system has included one or more webpage servers with databases containing ~~E-tag~~ETag values associated with the various ~~URL's and/or URI's~~URIs for all of the asset and ~~manifest/~~index files necessary to render its webpages; moreover, Defendant's system has used a system of ~~CONDITIONAL~~conditional GET requests with ~~IF-NONE-MATCH header,~~ If-None-Match headers and HTTP 304 and HTTP 200 messages containing the ~~E-Tags~~ETags, as described more particularly *supra*, to ensure that downstream caches only access authorized file content to either serve that file content further downstream or to use it to render Defendant's webpages.  On information and belief, in particular, as more fully described *supra*, the system compared the ~~E-Tag~~ETag received in a given ~~CONDITIONAL~~conditional GET ~~message~~request with the ~~E-Tags~~ETags contained in the database to selectively determine whether the

26

1  requesting computer could access the file content it already had or must access newly received

2  authorized content.

3      ~~82.~~75.  ~~79.~~    Defendant's acts of infringement have caused damage to PersonalWeb~~,~~

4  ~~including impairment of the '420 patent,~~ and PersonalWeb is entitled to recover from Defendant the

5  damages sustained by PersonalWeb as a result of Defendant's wrongful acts in an amount subject to

6  proof at trial.

7

8                    **PRAYER FOR RELIEF**

9      WHEREFORE, Plaintiff PersonalWeb requests entry of judgment in its favor and against

10  Defendant as follows:

11      a)     Declaration that Defendant has infringed U.S. Patent Nos. ~~5,978,791,~~ 6,928,442,

12  7,802,310, 7,945,544 and 8,099,420 as described in this action;

13      b)     Awarding the damages arising out of Defendant's infringement of U.S. Patent Nos.

14  ~~5,978,791,~~ 6,928,442, 7,802,310, 7,945,544 and 8,099,420, together with pre-judgment and post-

15  judgment interest, in an amount according to proof;

16      c)     An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by

17  law; and

18      d)     For costs incurred and such other and further relief as the Court may deem just and

19  proper.

20  ~~///~~

21  ~~///~~

22  ~~///~~

23  ~~///~~

24  ~~///~~

25  ~~///~~

26  ~~///~~

27

28