1  MICHAEL A. SHERMAN (SBN 94783)
   masherman@stubbsalderton.com
2  JEFFREY F. GERSH (SBN 87124)
   jgersh@stubbsalderton.com
3  SANDEEP SETH (SBN 195914)
   sseth@stubbsalderton.com
4  WESLEY W. MONROE (SBN 149211)
   wmonroe@stubbsalderton.com
5  STANLEY H. THOMPSON, JR. (SBN 198825)
   sthompson@stubbsalderton.com
6  VIVIANA BOERO HEDRICK (SBN 239359)
   vhedrick@stubbsalderton.com
7  **STUBBS, ALDERTON & MARKILES, LLP**
   15260 Ventura Blvd., 20th Floor
8  Sherman Oaks, CA 91403
   Telephone:    (818) 444-4500
9  Facsimile:     (818) 444-4520

10 **Attorneys for PersonalWeb Technologies, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PERSONAL WEB TECHNOLOGIES, LLC, ET AL., PATENT LITIGATION | **CASE NO.: 5:18-md-02834-BLF** |
| AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., <br><br>Plaintiffs,<br><br>v.<br><br>PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Defendants. | **CASE NO.: 5:18-cv-00767-BLF**<br><br>**CASE NO.: 5:18-cv-05619-BLF**<br><br>**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER** |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Counterclaimants,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON WEB SERVICES, INC.,<br><br>Counterdefendants. | Date:   November 5, 2020<br>Time:   9:00 a.m.<br>Dept.:  Courtroom 3, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

| | |
|---|---|
| 1 | PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and |
| 2 | LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | TWITCH INTERACTIVE, INC. a Delaware corporation, |
| 6 | Defendant. |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND .................................................................................................2

    A. PersonalWeb's Opposition to the Motion for Attorney Fees Waived Privilege/Protections as to Certain Matters..................................................................2

    B. Amazon and Twitch Have Initiated a Secondary Litigation Over the Opposition Declarations..................................................................................................3

III. LEGAL BACKGROUND .......................................................................................................5

    A. The Court's Intervention Is Needed to Curtail Amazon's Satellite Litigation. ........5

    B. Seeking a Protective Order Is an Appropriate Step In These Circumstance. ..........5

    C. The Scope of an Intentional Waiver Is Not Unbounded. .........................................6

    D. Not All Statements That Reference the Existence of a Communication With a Client Result in a Waiver. .....................................................................................9

IV. THE DOCUMENTS PERSONALWEB HAS ALREADY PROVIDED ADEQUATELY ADDRESS THE FAIRNESS CONSIDERATIONS GOVERNING THE SCOPE OF ITS WAIVER ........................................................................................9

    A. PersonalWeb's Production of All its Pre-Filing Opinions by Its Attorneys and Experts Concerning the Preclusive Effect of the Texas Action and Infringement Strikes a Fair Balance. .........................................................................9

    B. PersonalWeb's Production of Third Party Settlement Communications Strikes a Fair Balance. ...............................................................................................10

    C. There Has Been No Waiver Relating the Claim Construction Order in the Texas Action and in *PersonalWeb v. IBM*. .............................................................11

    D. There Has Been No Waiver Relating to the Motivations for Dismissing the Texas Action. ............................................................................................................12

    E. Amazon and Twitch's Requests Are an Unduly Burdensome Tail Wagging the Dog. ....................................................................................................................12

V. CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human*,
   532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) .......................................................... 5

*City of Burlington v. Dague*,
   505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ............................................................ 5

*DealDash Oyj v. ContextLogic Inc.*,
   2019 WL 1105317 (N.D. Cal. Mar. 11, 2019) .................................................................... 8, 10

*Fort James Corp. v. Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005) ............................................................................................. 6, 7

*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ............................................................... 5

*In re EchoStar Commc'ns Corp.*,
   448 F.3d 1294 (Fed. Cir. 2006) ......................................................................................... 6, 7, 9

*Motorola, Inc. v. Vosi Techs, Inc.*,
   2002 WL 1917256 (N.D. Ill. Aug. 19, 2002) ........................................................................ 5, 6

*United States v. Nobles*,
   422 U.S. 225 (1975) ................................................................................................................... 6

*United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II*,
   546 F.3d 26 (1st Cir. 2008) ................................................................................................ 5, 11

*Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*,
   684 F.3d 1364 (Fed. Cir. 2012) ................................................................................................. 6

Rules

Fed. R. Civ. P. 26(b) ......................................................................................................................... 7

Fed. R. Civ. P. 26(c) ..................................................................................................................... 1, 5

Rule 26(c)(1) ................................................................................................................................. 2, 5

Fed. R. Civ. P. 26(c)(1)(D) ....................................................................................................... 1, 2, 5

Federal Rules of Evidence Rule 502 ............................................................................................. 6, 7

Other Authorities

Civil L.R. 37 ................................................................................................................................. 1, 4

# NOTICE OF MOTION FOR PROTECTIVE ORDER

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 5, 2020 at 9:00 a.m., at the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, in the courtroom of the Honorable Beth Labson Freeman, PersonalWeb Technologies, LLC ("PersonalWeb") will and hereby do move the Court for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. The undersigned counsel for PersonalWeb certifies that the parties met and conferred under Civil. L.R. 37-1(a) about the subject matter of this motion on July 13, 2020.

By this motion Personal Web seeks a protective order limiting discovery by Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, "Amazon") and Twitch Interactive, Inc. ("Twitch") to:

1. Communications containing any settlement offers or terms with third parties other than Amazon and Twitch concerning the at-issue technologies in this MDL;
2. Opinions regarding claim preclusion and *Kessler* in any way concerning the cases in this MDL or in connection with the dismissal of the Texas Action; and
3. Opinions regarding infringement of the at-issue technologies in this MDL.

PersonalWeb further seeks an order closing any further discovery by Amazon and Twitch beyond this subject matter.

PersonalWeb bases its motion on this notice, the accompanying memorandum of points and authorities and declaration filed concurrently, the pleadings and records on file, the argument of counsel, and any other such matters as may be presented to the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In opposition to the Motion for Attorney Fees and Costs ("Motion") (Dkt. 593) filed by Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, "Amazon") and Twitch Interactive, Inc. ("Twitch"), PersonalWeb Technologies, LLC ("PersonalWeb") had the opportunity to either point to the absence of evidence offered by Amazon and Twitch in support of the numerous false statements and assertions in the Motion, or it could waive the attorney-client privilege and work-product protections on certain limited topics and present evidence of what really happened. PersonalWeb opted

1

for the latter, disclosing certain written opinions and limited attorney-client communications in support of its Opposition (Dkt. 608) to the Motion.

Nearly two weeks after receipt of the Opposition, Amazon and Twitch demanded overbroad discovery into areas far beyond what PersonalWeb disclosed. PersonalWeb acknowledges that certain privilege was waived and that certain work product immunity was waived in its Opposition as to certain matters and acknowledges it cannot use the attorney-client privilege and work product protections as both "a sword and a shield." Despite discovery being closed in this action, PersonalWeb has voluntarily disclosed additional documents relating to the specific subject matter for which privileges were waived in the Opposition. But that is not enough for Amazon and Twitch. They want to go on a fishing expedition in the hopes of finding an unspecified document to support baseless allegations in their Motion. The alternative they propose, and perhaps their true motivation, is for PersonalWeb to withdraw the portions of its supporting declarations that shine a light on the liberties that Amazon and Twitch take with the facts.

For the reasons discussed below, good cause exists for granting this motion because PersonalWeb has already searched for and produced documents that fall fairly within the scope of its waiver. PersonalWeb requests that the Court use its authority under Rule 26(c)(1) of the Federal Rules of Civil Procedure to enter a Protective Order defining the scope of the waiver of its privileges so that Amazon and Twitch cannot use PersonalWeb's reasonable refusal to respond to their overly broad requests as a basis for striking PersonalWeb's supporting declarations filed with its Opposition.

## II. FACTUAL BACKGROUND

### A. PersonalWeb's Opposition to the Motion for Attorney Fees Waived Privilege/Protections as to Certain Matters.

This dispute arises out of PersonalWeb's Opposition to the Motion for Attorney Fees, filed on June 18, 2020. (Dkt. 608.) PersonalWeb will not rehash the entirety of the substance of the Opposition, but a substantial portion thereof was directed to exposing the truth behind the many reckless and baseless allegations made by Amazon and Twitch in their Motion regarding PersonalWeb's litigation conduct and pre-filing diligence, and steps PersonalWeb had taken that provided it with confidence as to the substantive merit of its claims.

PersonalWeb submitted declarations detailing its pre-filing investigation in this matter. PersonalWeb disclosed the written opinions of Dr. Samuel H. Russ, an expert who was retained to aid with evaluating infringement, and attached an exemplary claim chart that constituted part of his written opinion that the accused systems in this matter infringed the Patents-in-Suit. (Dkt. 608-11.) PersonalWeb also submitted declarations of attorneys who worked on the pre-filing investigation in which counsel detailed certain of their relevant activities and opinions. (Dkt. 608-3, 608-6, 608-15, 608-16.)

PersonalWeb's supporting declarations also disclosed legal opinions it received regarding the scope of preclusive effects, if any, of the dismissal of the prior Texas Action between PersonalWeb and Amazon. (Dkt. 608-1, 608-6.)

PersonalWeb's supporting declarations also disclosed facts rebutting Amazon and Twitch's unfounded accusations about PersonalWeb's motivation for (a) dismissing the Texas Action—that PersonalWeb had purportedly "lost" the claim construction, and (b) pursuing the current actions—to ostensibly secure "nuisance" settlements. (*Id.*)

**B.  Amazon and Twitch Have Initiated a Secondary Litigation Over the Opposition Declarations.**

On June 30, almost two weeks after PersonalWeb filed the Opposition, counsel for Amazon and Twitch sent what was, in substance, a request for production of documents, including at least 23 requests. (Declaration of Michael A. Sherman ("Sherman Decl."), ¶ 2 & Ex. 1.) Counsel for PersonalWeb responded briefly by e-mail that same day that a full review of the requests and a further response would be forthcoming. (Sherman Decl., ¶ 3.)

Counsel for PersonalWeb later carefully reviewed the "requests" and determined that rather than being focused on the narrow subject matter that PersonalWeb waived, they were instead far ranging and overly broad demands for "all communications" and "all documents" on a plethora of subjects. (Sherman Decl., ¶¶ 3-4.) Responding to the requests would be a massive undertaking involving several individuals at PersonalWeb and at least four law firms. (*Id.*)

Counsel for PersonalWeb responded on July 4, noting that the discovery period is closed and objecting to the requests as overly broad, burdensome, and far exceeding the scope of what Amazon

and Twitch might be entitled to under the limited waived privileges. (Sherman Decl., ¶ 4.) Nevertheless, in an effort to conserve party and judicial resources, PersonalWeb's counsel identified documents that were fairly tied to the subject matter of the waivers that it would produce, to wit: documents relating to (1) counsel's opinion regarding whether a dismissal in the Texas Action would bar later litigation against Amazon under preclusion theories; (2) settlement communications as requested by Amazon and Twitch's in their June 30 letter; and (3) all pre-suit infringement opinions. (*Id.*) PersonalWeb's counsel also asked Amazon and Twitch to meet and confer about the dispute. (*Id.*)

Amazon and Twitch ignored PersonalWeb's request to meet and confer, opting instead to send a letter on July 8 demanding that PersonalWeb either produce documents under the full scope of their vast requests, or disingenuously suggesting that PersonalWeb could alternatively withdraw all portions of its declarations that refer to or rely on privileged communications or work product. (Sherman Decl., ¶ 5.)

Refusing to indulge Amazon and Twitch in their attempt to create satellite litigation on issues of privilege or pander to what appears to be the true motivation, *i.e.*, to keep the Court from seeing how/why PersonalWeb and its counsel went above-and-beyond in pre-suit investigations and the reasonableness of litigation conduct, on July 10, counsel for PersonalWeb responded that it would be producing:

1. Communications containing any settlement offers or terms with third parties other than Amazon and Twitch concerning the at-issue technologies in this MDL;
2. Opinions regarding claim preclusion and *Kessler* in any way concerning the cases in this MDL or in connection with the dismissal of the Texas Action; and
3. Opinions regarding infringement of the at-issue technologies in this MDL.

(Sherman Decl., ¶ 6.) PersonalWeb produced these documents on Monday July 13, with the final remaining set of responsive documents produced on July 21, 2020. (Sherman Decl., ¶ 8.) PersonalWeb's counsel certifies that he is not aware of any documents or communications contradicting the statements and opinions expressed in the documents disclosed to Amazon and Twitch. (Sherman Decl., ¶¶ 8-9.)

4

Recognizing that the parties were at an impasse regarding whether the offered production of documents was adequate, counsel for PersonalWeb also informed Amazon and Twitch that it was seeking a protective order and requested to meet and confer as required by Civil L.R. 37-1(a). (Sherman Decl., ¶ 7.) Counsel for the parties conferred on July 13, 2020. (*Id.*) During that conference, counsel for Amazon and Twitch relayed that his clients were no longer seeking the disclosure of opinions relating to invalidity, but otherwise refused to withdraw any of their overbroad requests, despite PersonalWeb's agreement to produce all documents related to the subject matter for which the privilege was waived. (*Id.*) As that was the full extent of Amazon and Twitch's offer to resolve this dispute without court intervention, PersonalWeb had to seek court intervention via this motion.

Subsequent to the parties' July 13th telephone conference, PersonalWeb produced additional documents that complete production of all infringement opinions, all claim preclusion/Kessler opinions, and all settlement communications with third parties. (Sherman Decl., ¶¶8-9.)

### III.     LEGAL BACKGROUND

#### A.     The Court's Intervention Is Needed to Curtail Amazon's Satellite Litigation.

The Supreme Court has cautioned against allowing a request for attorney fees to spiral into protracted satellite litigation: "We have also stated that '[a] request for attorney's fees should not result in a second major litigation,' *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and have accordingly avoided an interpretation of the fee-shifting statutes that would have 'spawn[ed] a second litigation of significant dimension,' *Garland, supra,* at 791, 109 S.Ct. 1486." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 609, 121 S. Ct. 1835, 1843, 149 L. Ed. 2d 855 (2001). In other words, "ancillary litigation over fees should not be allowed to become the tail that wags the dog." *United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II"*, 546 F.3d 26, 42 (1st Cir. 2008) (citing *City of Burlington v. Dague*, 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

#### B.     Seeking a Protective Order Is an Appropriate Step In These Circumstance.

As a party to this action, PersonalWeb has standing to seek a protective order. Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the

court where the action is pending … ."). Under Rule 26(c), this Court is authorized to issue a protective order upon a showing that good cause exists for protection from the discovery sought. Fed. R. Civ. P. 26(c)(1). Good cause exists when justice requires the protection of a party or person from any annoyance, oppression, or undue burden or expense. *Id.* Upon a showing of good cause, this Court has the authority to issue an order limiting the discovery sought by Defendants. Fed. R. Civ. P. 26(c)(1)(D).

Although the present circumstances of a party demanding discovery after the close of discovery, without requesting to reopen discovery, may be rare, novel, or in the case here even improper, in general it is proper to seek a protective order requesting a court to rule on the scope of an attorney-client privilege or work product waiver. In *Motorola, Inc. v. Vosi Techs, Inc.*, No. 01 C 4182, 2002 WL 1917256 (N.D. Ill. Aug. 19, 2002), the court wrote that it was an "appropriate procedure" for a defendant to seek clarity, in the form of a protective order, about the scope of the waiver that would result if it relied on an advice of counsel defense to willful patent infringement. *Id.* at *1.

### C. The Scope of an Intentional Waiver Is Not Unbounded.

Waiving the attorney-client privilege and work product protections does not open the floodgates to unfettered discovery. Writing about scope of a work product waiver precipitated by a defendant's reliance on an investigator's testimony, the Supreme Court noted that the trial court "authorized no general 'fishing expedition' into the defense files or indeed even into the defense investigator's report. … Rather, its considered ruling was quite limited in scope, opening to prosecution scrutiny only the portion of the report that related to the testimony the investigator would offer to discredit the witnesses' identification testimony." *United States v. Nobles*, 422 U.S. 225, 240 (1975). "The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006). Even when a party waives protection, that does not give the opposing party "unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, 448 F.3d at 1303. Notably, the waiver at issue in the *EchoStar* decision arose pre-trial/pre-judgment in the trial court on a pre-trial issue of willful infringement and advice of counsel – a different procedural posture than now arises in this post-judgment dispute in a

6

motion seeking an award of attorney's fees that the Supreme Court has specifically cautioned should be treated differently than pre-judgment proceedings.

"There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005). The determination of the scope of a waiver must include a consideration of fairness balancing. *See Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1369–70 (Fed. Cir. 2012) ("We conclude that the Ninth Circuit would find fairness balancing to be required. That court has favorably recognized the strong precedent of fairness balancing in the last twenty-five years."). As recognized by the Court in *Wi-LAN*, this concept of fairness is found in Rule 502 of the Federal Rules of Evidence:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502. One consideration that factors into the scope of a waiver is the purpose for which the waived documents or communications are being used. For example, in the context of the advice of counsel defense in a patent infringement case, the Federal Circuit wrote that "[w]ork-product waiver extends only so far as to inform the court of the *infringer's* state of mind. Counsel's opinion is not important for its legal correctness." *EchoStar*, 448 F.3d at 1303 (original emphasis). "Thus, if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine." *Id.* at 1304.

PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S
MOTION FOR PROTECTIVE ORDER

CASE NO: 5:18-MD-02834-BLF
CASE NO: 5:18-CV-00767-BLF
CASE NO: 5:18-CV-05619-BLF

1        Because the scope of the waiver carries within it a commensurate burden of producing documents within that scope, the resulting burden imposed must also be "proportional to the needs of the case,", and discovery of privileged information requires relevancy to a claim or defense. *See* Fed. R. Civ. P. 26(b)(1); *ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 1:13CV-00163-GNS, 2016 WL 3659137, at *5 (W.D. Ky. May 11, 2016) (entitlement to discovery of redacted subject matter depends on its relevancy).

       Waiver and sword/shield cases commonly reference the "concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James,* 412 F.3d at 1349. Here, especially given the satellite nature of this dispute, that judgment has already been entered and the substantive dispute has been concluded at the trial court, and that PersonalWeb's counsel's certification (Sherman Decl., ¶¶8-9) demonstrates an unawareness of any communications or documents that contradict PersonalWeb's positions that (a) it *received* the subject opinions pre-suit, it relied on said opinions, there are no facts that made those opinions not genuine or *bona-fide* held at the time they were given, and (b) PersonalWeb never engaged in any activity in soliciting/negotiating nuisance value or below-market settlements, additional findings of greater waivers are improper either factually or legally.  The precise issues raised by the Opposition papers are that multiple opinions on infringement and claim preclusion/*Kessler* were delivered and relied on, that the opinions were not some pretextual ruse – but rather were real, that a lot of real pre-suit filing work was done by many qualified individuals, and that litigation conduct was reasonable and never included settlement activities with third parties that consisted of the pursuit of nuisance-value settlements.  Here, the burden "outweighs its likely benefit" (Fed.R.Civ.P. 26(b)(1)) and principles of disproportionality weigh heavily.

       There is no reason to construe the waivers nearly as broadly as Amazon asserts as the issues in dispute on this Motion do not implicate every *different* way/method by which reasonable legal counsel *could have* analyzed matters, do not implicate any particular settlement or settlement overture, and from the standpoint of proportionality, what has been produced and counsel's certification demonstrating that nothing contrary is being withheld shows that permitting Amazon's broad-ranging discovery now would go well beyond any waiver and permit a fishing expedition.

### D. Not All Statements That Reference the Existence of a Communication With a Client Result in a Waiver.

Waiving the attorney-client privilege is not an exercise in "gotcha." This Court has recognized that the attorney-client privilege is not waived when a party discusses facts that arose out of an attorney-client communication. In *DealDash Oyj v. ContextLogic Inc.*, No. 18-CV-02353, 2019 WL 1105317 (N.D. Cal. Mar. 11, 2019), the Court considered whether an attorney's statements in a declaration that his client's general counsel had advised him about the timing of the client receiving a cease and desist letter and about the lack of importance of a trademark to the client constituted a waiver of the attorney-client privilege on those subjects. *Id.* at *1. Finding no waiver, the Court noted that there would have been no waiver if the attorney had stated the same exact same facts as attorney argument in a motion instead of in a declaration. *Id.* at *2. The Court also noted that the moving party did not explain "why the form in which counsel presented those facts—a declaration as compared to argument—changes the waiver analysis." *Id.*

## IV. THE DOCUMENTS PERSONALWEB HAS ALREADY PROVIDED ADEQUATELY ADDRESS THE FAIRNESS CONSIDERATIONS GOVERNING THE SCOPE OF ITS WAIVER

### A. PersonalWeb's Production of All its Pre-Filing Opinions by Its Attorneys and Experts Concerning the Preclusive Effect of the Texas Action and Infringement Strikes a Fair Balance.

When the present dispute arose and PersonalWeb's counsel proposed to meet and confer about the parties' positions in an attempt to resolve the dispute, Amazon and Twitch's counsel ignored the request. Only when informed that PersonalWeb would be moving for a protective order did Amazon and Twitch come to the table because they are required to do so by the Local Rules.

As noted above, PersonalWeb has already turned over "opinions regarding claim preclusion and *Kessler* in any way concerning the cases in this MDL or in connection with the dismissal of the Texas Action" and "opinions regarding infringement of the at-issue technologies in this MDL," and communications with PersonalWeb concerning this subject matter. This subject matter falls under Topics 2, 3, and 5 of Mr. Gregorian's June 30 letter, and PersonalWeb produced these documents as it recognizes that fairness dictates that Amazon and Twitch be provided all of these materials in addition to the documents filed with its Opposition.

What is neither fair nor reasonable is Amazon and Twitch's oppressive request for "all documents and communications" concerning the dismissal of the Texas Action and "all documents and communications" concerning PersonalWeb's pre-filing investigation. While Amazon and Twitch are entitled to contrary opinions presented to PersonalWeb on these topics, they are not entitled to "rummage through all of [PersonalWeb's] files." *EchoStar*, 448 F.3d at 1303. In particular, while a party "may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given." *Id.* And what would be the point of authorizing Amazon and Twitch's fishing expedition? The search for and review of documents has not revealed any contrary opinions by the involved lawyers or experts on those topics. (Sherman Decl. ¶ 9.) The only result from indulging Amazon and Twitch's overly broad and oppressive discovery request would be PersonalWeb incurring the substantial expense of gathering documents that must be obtained from numerous custodians and reviewing documents and communications that are not relevant to informing the Court about PersonalWeb's state of mind about those topics. (Sherman Decl., ¶¶ 3, 10.) Therefore, Amazon and Twitch are not entitled to further discovery on this subject.

### B. PersonalWeb's Production of Third Party Settlement Communications Strikes a Fair Balance.

In opposition to Amazon and Twitch's unsubstantiated allegations in the Motion for Attorney Fees that PersonalWeb sought "nuisance value" settlements, PersonalWeb simply submitted declarations of its counsel, the undersigned Michael Sherman, and Mr. Bermeister to correct the record. There arguably has been no waiver with regard to this subject matter. Mr. Bermeister's declaration refers to no communications with counsel on this subject matter, and paragraph 10 of Mr. Sherman's June 18, 2020 declaration refers only to facts about PersonalWeb's policy of not pursuing nuisance settlements that arose out of consultation with Mr. Bermeister. Relating those facts in the form of a declaration does not result in a waiver. *See DealDash*, 2019 WL 1105317, at *2.

Nonetheless, in an effort to conserve resources to the extent that the Court were to find that a waiver has occurred, and because PersonalWeb has nothing to hide on this issue whatsoever given that it never pursued a nuisance settlement, in response to Topic 4 of Mr. Gregorian's June 30 letter,

PersonalWeb preemptively turned over "communications containing any settlement offers or terms with third parties other than Amazon and Twitch concerning the at-issue technologies in this MDL." (Sherman Decl, ¶¶ 6, 8.) PersonalWeb also turned over communications with PersonalWeb regarding the same. (Sherman Decl. ¶ 8.) The search for and review of documents, and counsel's percipient knowledge, has not revealed any contrary internal communications. (Sherman Decl. ¶ 9.)

This strikes a fair balance because the issue in dispute is the truth of whether PersonalWeb pursued a campaign of nuisance value settlements in this case. Turning over all settlement communications in this case provides Amazon and Twitch with the documents relevant to that issue. Therefore, Amazon and Twitch are not entitled to further discovery on this subject.

## C. There Has Been No Waiver Relating the Claim Construction Order in the Texas Action and in *PersonalWeb v. IBM.*

Topic 1 of Mr. Gregorian's June 30 letter seeks discovery of "all documents and communications regarding the claim construction order(s) in the Texas Action and in *PersonalWeb v. IBM.*" There is no waiver under which they are entitled to such an expansive further production, and to any other documents than those already produced relating to the decision to dismiss the Texas action, and its impact on this case. Amazon and Twitch point to page 6 of the Opposition, the Bermeister Declaration (Dkt. 608-1) at ¶ 3, and the Seth Declaration (Dkt. 608-15) at ¶ 19 as the basis for requesting discovery about the Texas claim construction orders. (Sherman Decl., Ex. 1, at 1.)

Taking them each in turn, the discussion of this topic in the Opposition is merely legal argument citing the Motion for Attorney Fees and the respective Texas claim construction orders. No waiver has resulted from this discussion.

Paragraph 3 of the Bermeister Declaration discusses no communication between PersonalWeb and its attorneys and merely states facts about the *state of mind* of the litigation team in the Texas Action. (Dkt. 608-1 at ¶ 3.) Amazon and Twitch's assertion that this is a waiver of the attorney-client privilege or work-product doctrine is pure overreach.

Similarly, paragraph 19 of the Seth Declaration discusses no communication between PersonalWeb and its attorneys and merely states facts about *his understanding* of how the systems under investigation worked and his ultimate conclusion that under those facts infringement could be

11

found. (Dkt. 608-15 at ¶ 19.) As in the *DealDash* case, this attorney argument in the form of a declaration does not constitute a waiver of the attorney-client privilege or work-product doctrine. *DealDash*, 2019 WL 1105317, at *2.

Therefore, Amazon and Twitch are not entitled to further discovery on this subject.

### D. There Has Been No Waiver Relating to the Motivations for Dismissing the Texas Action.

Amazon and Twitch point to paragraphs 3 and 4 of the Bermeister Declaration as the source of the purported waiver of the attorney-client privilege and/or work-product doctrine concerning the subject of PersonalWeb's motivations for dismissing the Texas Action. Neither of those paragraphs nor Mr. Bermeister's prior declaration refers to advice of counsel or to other attorney communications he received that relate to the reasons for dismissing the case. Rather, Mr. Bermeister stated facts pertaining to his state of mind that the case was not financially worthwhile and that the claim construction ruling in the Texas Action was an overall success. This does not constitute a waiver of the attorney-client privilege or work-product doctrine. And PersonalWeb has already conceded that Mr. Bermeister's statements concerning advice and opinions PersonalWeb received about the potential preclusive effects of dismissing the Texas Action did result in a waiver, as discussed above, and those documents, and communications with PersonalWeb about those documents have already been produced. Any other privileged communications and work product relating to the Texas Action dismissal in general were not waived and thus do not need to be produced.

### E. Amazon and Twitch's Requests Are an Unduly Burdensome Tail Wagging the Dog.

PersonalWeb's attorneys and representatives have already spent approximately 150 hours locating and reviewing records to provide Amazon and Twitch with a fair set of responsive documents. (Sherman Decl., ¶ 10.) Responding to the full scope of Amazon and Twitch's requests would require a substantial, additional undertaking. (Sherman Decl., ¶¶ 3, 10.) This case is at its tail end. Discovery is closed. Final judgment has been entered. Reopening litigation in the manner Amazon and Twitch demand will result in the disfavored tail wagging the dog. *See U.S. v. One Star Class Sloop*, 546 F.3d at 42.

Moreover, many categories of Amazon and Twitch's requests are irrelevant, regardless of whether there was a waiver. Amazon and Twitch vaguely request discovery of "Mr. Monroe's 'Python computer program' analysis." Amazon and Twitch have never contested the basic facts of this case: that the customer web sites used MD5 hashes as ETags values and conditional GET requests containing those ETag values were used, the timing of which were governed by max-age values. The Python computer program calculates MD5 hashes of webpage base files and assets found in archived web sites and extracts their ETag and related information, such as the source of a GET response. (Dkt. 608-6, ¶¶ 10-14.) Because those facts are not at issue, Amazon and Twitch's requests directed to the Python computer program work product is irrelevant, not proportional to the needs of the case, and has no benefit that outweighs the burden of its production.

## V. CONCLUSION

For the foregoing reasons, PersonalWeb requests an order limiting discovery by Amazon and Twitch to:

1. Communications containing any settlement offers or terms with third parties other than Amazon and Twitch concerning the at-issue technologies in this MDL;

2. Opinions regarding claim preclusion and *Kessler* in any way concerning the cases in this MDL or in connection with the dismissal of the Texas Action; and

3. Opinions regarding infringement of the at-issue technologies in this MDL.

As PersonalWeb has already produced all documents responsive to these three categories, PersonalWeb further seeks an order closing any further discovery in this action by Amazon and Twitch to put an end to their harassment of PersonalWeb.

Respectfully submitted,

Dated:   July 21, 2020                                      STUBBS, ALDERTON & MARKILES, LLP


By: */s/ Michael A. Sherman*
    Michael A. Sherman
    Jeffrey F. Gersh
    Sandeep Seth
    Wesley W. Monroe
    Stanley H. Thompson, Jr.
    Viviana Boero Hedrick

1 | Attorneys for Plaintiffs
2 | PERSONALWEB TECHNOLOGIES, LLC
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28