United States District Court<br>Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No. 18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., <br><br> Plaintiffs <br> v. <br><br> PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Defendants, | **ORDER GRANTING AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.'S MOTION FOR ATTORNEY FEES AND COSTS; *SUA SPONTE* LIFTING THE STAY ON ALL CUSTOMER ACTIONS** <br><br> [Re: ECF 593] <br><br> Case No.: 5:18-cv-00767-BLF <br> [Re: ECF 184] |
| PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br> v. <br><br> TWITCH INTERACTIVE, INC. a Delaware corporation, <br><br> Defendant. | Case No.: 5:18-cv-05619-BLF <br> [Re: ECF 88] |

In this multidistrict litigation ("MDL"), PersonalWeb Technologies, LLC ("PersonalWeb") alleged patent infringement by Amazon.com, Inc. and Amazon Web Services, Inc., (collectively, "Amazon") and separately by dozens of Amazon's customers, related to the customers' use of Amazon's Simple Storage Service ("S3") and Amazon's CloudFront content delivery network ("CloudFront"). The Court designated PersonalWeb's suit against Twitch Interactive, Inc. ("Twitch") as the representative customer case. Amazon and Twitch prevailed at summary

judgment and now bring the present Motion for Attorney Fees and Costs.[1]  Motion, ECF 593.  The Court heard oral arguments on August 6, 2020 (the "Hearing").  For the reasons stated below, Amazon and Twitch's Motion is GRANTED.

## I.    BACKGROUND

The tale of this patent infringement battle began nearly nine years ago when PersonalWeb sued Amazon and its customer Dropbox, Inc. in the Eastern District of Texas, alleging infringement by Amazon S3.  *See PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011) (the "Texas Action").  After the district court issued its claim construction order in the Texas Action, PersonalWeb stipulated to the dismissal of all its claims against Amazon with prejudice and the court entered judgment.  ECF 315-7; ECF 315-8.

Nearly four years later, starting in January 2018, PersonalWeb filed 85 lawsuits against different Amazon customers in various courts around the country, alleging that those customers' use of Amazon S3 service infringed the same patents at issue in the Texas Action.  *See* ECF 295; ECF 1, Schedule A.  In the earliest complaints filed in the customer cases, PersonalWeb alleged infringement of U.S. Patent Nos. 5,978,791 (the "'791 patent"), 6,928,442 (the "'442 patent"), 7,802,310 (the "'310 patent"), 7,945,544 (the "'544 patent"), and 8,099,420 (the "'420 patent") (collectively, "patents-in-suit" or "True Name patents").  *See, e.g.*, *PersonalWeb Technologies LLC et al v. Airbnb, Inc.*, Case No. 18-cv-00149-BLF (N.D. Cal.), ECF No. 1 ¶ 1.[2]  All five patents-in-suit share a specification and each claims priority to a patent filed on April 11, 1995.  All of the patents-in-suit have expired and PersonalWeb's allegations are directed to the time period prior to their expiration.  *See e.g.*, *PersonalWeb Technologies, LLC et al v. Twitch Interactive, Inc.*, Case No. 5:18-cv-05619 (N.D. Cal.) (the "Twitch case"), ECF 1 ¶ 18.

According to the shared specification of the True Name patents, the goal of the invention was to solve a problem with the way prior art computer networks identified data in their systems because there was "no direct relationship between the data names" and the contents of the data item.

---

[1] This Motion seeks a fee award against PersonalWeb and not Level 3, the Co-Plaintiff.  ECF 630.

[2] PersonalWeb later dropped the '791 patent from its complaints against the customers in the amended complaints filed in April-June 2018.

'310 patent col. 2, ll. 39-43.  The patents purport to solve that problem by claiming a method of naming a computer file with a "substantially unique" identifier created from the contents of the file (*i.e.*, True Name).  *Id.* col. 6, ll. 20-24.  The summary of the invention describes multiple uses for these True Names, including (1) to avoid keeping multiple copies of a given data file, regardless of how files are otherwise named; (2) to avoid copying a data file from a remote location when a local copy is already available; (3) to access files by data name without reference to file structures; (4) to maintain consistency in a cache of data items and allow corresponding directories on disconnected computers to be resynchronized with one another; (5) to confirm whether a user has a particular piece of data according to its content, independent of the name, date, or other properties of the data item; (6) to verify that data retrieved from a remote location is the intended data; and (7) to prove and track possession of a specific data item for purposes of legal verification.  *See id.* col. 4, ll. 1–52.  The patents-in-suit are directed to various specific aspects of this system.

Shortly after PersonalWeb filed the initial lawsuits against Amazon's customers, Amazon intervened and undertook the defense of its customers.  In addition, Amazon filed its own lawsuit against PersonalWeb, seeking an injunction against further litigation against its customers and declarations that PersonalWeb's claims against its customers are barred and that, if not barred, Amazon's technology does not infringe the asserted patents.  *Amazon.com, Inc. et al v. Personal Web Technologies, LLC et al*, 18-5:18-cv-00767-BLF (N.D. Cal. Filed February 5, 2018) (the "DJ Action"), ECF 62.  PersonalWeb counterclaimed for infringement against Amazon.  DJ Action, ECF 62; 71.[3]

PersonalWeb sought to centralize all the customer cases and Amazon's Declaratory Judgment Action in an MDL.  ECF 592-14 at 6-7 (*In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834 ("MDL Action"), Dkts. 1-1, 133).  On June 7, 2018, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") consolidated the customer cases

---

[3] Amazon includes the '544 patent and the '791 patent in its complaint in the DJ Action.  DJ Compl. at 18.  PersonalWeb, however, did not allege infringement of the '791 patent in its counterclaim against Amazon. ECF No. 257.  And PersonalWeb dropped the '544 patent from its counterclaim against Amazon on October 16, 2018.  DJ Action, ECF 71.

United States District Court
Northern District of California

1    and the Amazon DJ Action in this MDL proceeding and assigned the consolidated cases to this

2    Court.  ECF 1.

3        To promote judicial efficiency and based on input from the parties, including PersonalWeb's

4    identification of Twitch as a party charged with infringement under all four of its theories and

5    Twitch's agreement (ECF 96-1 at 2), the Court selected the Twitch case as the representative

6    customer action to proceed in parallel with the Declaratory Judgment action and stayed all other

7    customer cases pending resolution of those two cases.  ECF 313.  PersonalWeb asserted claims

8    against Twitch on four of the five patents (the '442 patent, the '310 patent, the '420 patent, and the

9    '544 patent).  ECF 198.

10       On October 29, 2018, PersonalWeb served its infringement contentions accusing the use of

11   Amazon's S3 and CloudFront.  *See e.g.,* ECF 315-13.  Amazon moved for summary judgment in its

12   Declaratory Judgment Action and in the Twitch case, on the ground that in light of the with-

13   prejudice dismissal of PersonalWeb's action against Amazon in the Texas Action, PersonalWeb

14   was barred from suing Amazon or its customers for infringement based on Amazon's S3 system.

15   *Kessler* Motion, ECF 315.  On March 13, 2019, the Court granted Amazon's motion in part.  *Kessler*

16   Order, ECF 394.  The Court held that claim preclusion barred PersonalWeb's claims of infringement

17   relating to S3 occurring prior to the final judgment in the Texas Action, and that the *Kessler* doctrine,

18   first adopted by the Supreme Court in *Kessler v. Eldred,* 206 U.S. 285, 27 (1907), barred

19   PersonalWeb's claims of infringement relating to S3 after the final judgment in the Texas action.

20   *Id.*  The Federal Circuit affirmed.  *In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020).

21   PersonalWeb's claims relating to the use of CloudFront remained.

22       On August 16, 2019, the Court issued its claim construction order.  Claim Construction

23   Order, ECF 485.  Relevant to this Motion, the Court construed the claim term "unauthorized or

24   unlicensed" as "not compliant with a valid license" and the claim term "authorization" as "a valid

25   license."  *Id.* at 12, 33.  Shortly after the Court issued the Claim Construction Order, Counsel for

26   Amazon/Twitch reached out to PersonalWeb's counsel because Amazon/Twitch believed that

27   PersonalWeb had no viable patent infringement theories in light of the Court's constructions.  ECF

28   507 at 1. In response, PersonalWeb asserted that it understood "licensed/unlicensed" to mean

United States District Court
Northern District of California

"valid/invalid rights to content" and that it intended to apply that understanding to its infringement analysis.   *Id.* at 1-2.  Over Amazon/Twitch's strong objection and threats of sanctions, PersonalWeb's expert did apply that understanding to his infringement analysis in his report, which PersonalWeb served on Twitch on August 23, 2019.  *Id.* at 2.  The following business day, PersonalWeb filed a motion seeking clarification of the Court's construction – specifically, whether the word "license" in the Court's construction "meant something different than 'valid rights to content' (i.e., a narrower/license instrument-type of meaning)."  *Id.*  The Court rejected PersonalWeb's understanding of its Claim Construction Order and determined that the word "license" does not require clarification or supplementation.  ECF 537.

Shortly thereafter, PersonalWeb moved for Entry of Judgment of Non-Infringement. ECF 538.  PersonalWeb argued that the Court's Claim Construction Order has "a dispositive effect on the claims and defenses at issue in this case, and as a consequence thereof, PersonalWeb cannot meet its burden of proving infringement." *Id.* at 1-2.  Amazon opposed that motion because it would not have resolved the claims against Twitch and because Amazon and Twitch sought findings of non-infringement based on additional grounds independent of the Court's claim construction.  *See* ECF 547.  The Court agreed with Amazon and denied PersonalWeb's motion for Entry of Judgment. ECF 559.

Two days after PersonalWeb filed its Motion for Entry of Judgment, in accordance with the case schedule, Amazon and Twitch moved for summary judgment of non-infringement.  ECF 541, 542.  Amazon and Twitch moved for summary judgment based on the Court's claim construction but also on additional grounds, independent of claim construction.  The Court granted summary judgment for Amazon and Twitch on all claims finding: (1) no determination of compliance with a valid license ('310 and '420 patents); (2) no "permitting/allowing content to be provided or accessed" ('442, '310 and '420 patents); (3) no "determining whether a copy of the data file is present using the name" ('442 patent); and (4) no "comparison to a plurality of identifiers" ('420 patent).  Summary Judgment Order, ECF 578.  The Court also granted summary judgment of non-infringement of '544 and '791 patents as to Amazon's Declaratory Judgment Action because PersonalWeb brought forth no infringement contentions related to those patents against Amazon.

*Id.* at 10-11.  Similarly, the Court granted summary judgment of non-infringement of '544 patent as to PersonalWeb's claims against Twitch because PersonalWeb's expert had conceded that there was no infringement.  *Id.* at 12.

Concurrent with the Summary Judgment Order, the Court issued an order inquiring about the parties' respective positions on whether the Summary Judgment Order should be entered as to all remaining (and stayed) customer cases.  ECF 580.  On February 17, 2020, the parties filed a joint statement.  Statement, ECF 584.  Amazon, Twitch, and the remaining customer defendants submitted that the Court should enter the Summary Judgment Order of non-infringement in all remaining cases.  *Id.* at 6.  PersonalWeb, on the other hand, represented to the Court that although at least one basis for the Court's Summary Judgment Order applies to each of the customer defendants (making entry of judgment appropriate in all cases), PersonalWeb now believes that the Twitch case is not representative of all customer cases and thus, not all of the Court's findings of non-infringement apply to the remaining customer cases.  *Id.* at 3.

On March 20, 2020, Amazon and Twitch filed the present Motion for Attorney Fees and Costs.  ECF 593.

## II.   LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  In *Octane Fitness*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period.").  In considering the totality of the circumstances, the Supreme Court suggested that "district courts could consider 'nonexclusive' factors it previously set forth concerning a similar provision in the Copyright Act, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of

United States District Court
Northern District of California

1    the case) and the need in particular circumstances to advance considerations of compensation and

2    deterrence.'" *Octane Fitness*, 572 U.S. at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

3    534 (1994)).   A movant must establish its entitlement to attorneys' fees under § 285 by a

4    preponderance of the evidence. *Id.* at 557.

5         Attorneys' fees are not awarded as "a penalty for failure to win a patent infringement suit."

6    *Octane Fitness*, 572 U.S. at 548. (quotation marks and citation omitted). "The legislative purpose

7    behind § 285 is to prevent a party from suffering a 'gross injustice,'" and not to punish a party for

8    losing. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).

9    **III.   DISCUSSION**

10        Amazon contends that the claims asserted were substantially weak and the case was

11   unreasonably litigated.  Motion at 1-2.  Amazon argues that "PersonalWeb never had a viable claim

12   for relief" because (1) its claims were barred by PersonalWeb's prior litigation against Amazon in

13   Texas and (2) PersonalWeb's infringement theories were baseless.  *Id.* at 8-10.  Amazon also takes

14   issue with PersonalWeb's conduct in litigating this case noting (1) PersonalWeb's repeated change

15   of positions, (2) prolonging the case after claim construction, and (3) PersonalWeb's "[v]iolations

16   of court rules and the duty of candor." *Id.* at 10-14.

17        PersonalWeb responds that it had a "good faith basis" for bringing its claims, its

18   infringement theory remained consistent throughout the case, and its conduct was "a model of

19   reasonable litigation conduct."  *See* PersonalWeb's Opposition to Motion ("Opp'n") at 1, 23, ECF

20   608.

21        **A.   The Strength of PersonalWeb's Claims**

22             **1.  Preclusion**

23        Amazon/Twitch contend that PersonalWeb's claims against Amazon S3 were "baseless"

24   from the start because they were clearly barred by the dismissed Texas Action and should have

25   never been brought.  Motion at 9.

26        There is no question that Amazon prevailed on this issue.  On March 13, 2019, the Court

27   partially granted Amazon's motion holding that claim preclusion barred PersonalWeb's claims

28   regarding acts of infringement occurring prior to the final judgment in the Texas action, and that the

United States District Court
Northern District of California

1   *Kessler* doctrine barred PersonalWeb's claims of infringement relating to S3 after the final judgment

2   in the Texas action. *Kessler* Order.   Consequently, the Court dismissed with prejudice eight

3   customer cases which alleged infringement based on S3 only.  ECF 411.  On June 17, 2020, the

4   Federal Circuit affirmed.  ECF 606.

5          Of course, the goal of 35 U.S.C. § 285 is "not to punish a party for losing." *Munchkin, Inc.*

6   *v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020).  "In *Octane Fitness*, the Supreme Court

7   made clear that it is the 'substantive strength of the party's litigating position' that is relevant to an

8   exceptional case determination, not the correctness or eventual success of that position."  *SFA Sys.,*

9   *LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane Fitness*, 572 U.S. at

10  554).  "In determining whether a case is substantively weak, courts look for objective baselessness

11  or frivolousness[.]" *PersonalWeb Techs. LLC v. EMC Corp.*, No. 5:13-CV-01358-EJD, 2020 WL

12  3639676, at *4 (N.D. Cal. July 6, 2020).  "As to the substantive strength (or weakness) of a party's

13  litigation position, courts in this district tend to award fees when a plaintiff persists with a clearly

14  untenable claim, or adduces no evidence in support of its position." *Location Based Servs., LLC v.*

15  *Niantic, Inc.*, No. 17-CV-04413 NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018).

16         Thus, the task before the Court is to determine whether PersonalWeb's claims related to

17  Amazon S3 were objectively baseless or clearly untenable.  PersonalWeb argues that its claims were

18  not baseless because (1) the precedential opinion of the Federal Circuit affirming this Court's

19  *Kessler* Order, "illustrates that the reach of *Kessler* had not been a well-settled issue" and (2) it

20  relied on opinion of counsel that its claims were not precluded.  Opp'n at 3-4.

21                a.   *Kessler* Doctrine

22         PersonalWeb argues that it was reasonable to proceed with the customer actions, despite

23  resolution of the Texas Action, because the precedential opinion of the Federal Circuit affirming

24  this Court's *Kessler* Order, "while adverse to PersonalWeb, illustrates that the reach of *Kessler* had

25  not been a well-settled issue" and "extended *Kessler* to situations where non-infringement had not

26  previously been adjudicated."  Opp'n at 4 (citing *In re PersonalWeb Techs. LLC*, 961 F.3d 1365

27  (Fed. Cir. 2020)).

28         The Court disagrees with PersonalWeb's characterization of the Federal Circuit's opinion.

While it is true that the Federal Circuit issued a precedential decision affirming this Court's *Kessler* Order, the opinion itself belies PersonalWeb's contention that it had a reasonable belief that the claims against S3 could be brought.   Specifically, the Federal Circuit rejected PersonalWeb's assertion that the *Kessler* doctrine was essentially equivalent to issue preclusion – and did so not by setting new precedent, but by reiterating its existing caselaw and explaining that the *Kessler* doctrine precludes relitigation of claims that were brought *or could have been brought* in the prior action.   *In re PersonalWeb*, 961 F.3d at 1377 (citing *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058-59 (Fed. Cir. 2014)).   The Federal Circuit further explained:

> As *Brain Life*, [*SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015)], and [*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018)] illustrate, we have treated the *Kessler* doctrine as a close relative to claim preclusion, without its temporal limitation, rather than as an early version of non-mutual collateral estoppel, as PersonalWeb characterizes it.

*Id.* at 1377.

Thus, contrary to PersonalWeb's position, the Federal Circuit did not "extend" the reach of the *Kessler* doctrine, but rejected PersonalWeb's arguments based on established precedent noting that "[t]he policy that drove the Supreme Court's decision in *Kessler* would be ill-served by adopting the rule proposed by PersonalWeb."  *Id.* at 1378.

The Court agrees with Amazon/Twitch that PersonalWeb's claims related to S3 were clearly barred based on existing Federal Circuit precedent on the *Kessler* doctrine and thus, were objectively unreasonable when brought.

### b.   Claim Preclusion

Even if some ambiguously existed as to the application of the *Kessler* doctrine to PersonalWeb's claims against Amazon's customers, the law of claim preclusion was straightforward and well-settled when PersonalWeb filed this case.   And PersonalWeb's arguments against the application of claim preclusion were not well founded.

First, PersonalWeb argued that because the Texas case involved only the multipart upload feature of S3, it was free to accuse a different feature of S3 in this action.  *In re PersonalWeb*, 961 F.3d at 1375.   This position was factually and legally untenable.   As the Federal Circuit explained,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  "[c]ontrary to PersonalWeb's assertions, PersonalWeb did not limit its infringement contentions in

2  the Texas case to S3's multipart upload functionality" and to claim otherwise was "at odds with the

3  representations PersonalWeb made in the Texas case." *Id.* at 1376; *see also Kessler* Order at 19

4  ("In sum, the Court finds that both the complaint and the infringement contentions in the Texas

5  Action indisputably support the Court's conclusion that the Texas Action asserted infringement

6  against all of S3 and was not limited only to MPU.").  Moreover, "under well-settled principles of

7  claim preclusion, different arguments or assertions in support of liability do not all constitute

8  separate claims." *In re PersonalWeb Techs. LLC*, 961 F.3d at 1375.  In this case, "[a]t most,

9  PersonalWeb [showed] that it emphasized different facts in support of a different theory of

10  infringement in the prior case" and "that is not enough to avoid claim preclusion." *Id.* at 1376.

11         Second, PersonalWeb argued that even if claim preclusion applied, it would preclude claims

12  based only on conduct before the date of the complaint filing in the Texas Action, and not through

13  final judgment. *See* ECF 334 at 15, *see also* Kevin Bermeister ("Bermeister Decl.") ¶ 4, ECF 608-

14  1.  The Court rejected this argument, which was inconsistent with Federal Circuit precedent

15  establishing that the principles of claim preclusion in patent cases "bar the assertion of infringement

16  of either the method or system claims to the extent the alleged acts of infringement predate the final

17  judgment in the [first litigation]." *Brain Life*, 746 F.3d at 1053; *see also Kessler* Order at 22-23.

18  Unsurprisingly, PersonalWeb elected not to pursue this argument on appeal. *See In re PersonalWeb*,

19  961 F.3d at 1374 n.3.

20         Third, PersonalWeb argued that there was no prior final judgment on the merits for purposes

21  of claim preclusion because the contracted stipulation of dismissal in the Texas Action contained a

22  provision limiting the dismissal's preclusive effect. *Kessler* Order at 11.  Again, "[t]hat [was]

23  plainly not so" because that provision "protects Amazon, not PersonalWeb, and therefore does not

24  in any way qualify the effect of the with-prejudice dismissal of PersonalWeb's claims in the Texas

25  case." *In re PersonalWeb*, 961 F.3d at 1378 n. 5; *Kessler* Order at 12 ("The stipulation is remarkably

26  and unequivocally one-sided in favor of Amazon.").

27         Thus, PersonalWeb's claims related to the use of Amazon S3 were objectively baseless

28  under the well-established principles of claim preclusion and PersonalWeb's arguments to the

10

1    contrary were frivolous.

2                    c.   Reliance on Opinion of Counsel

3          PersonalWeb asserts that its counsel in the Texas Action, Mr. Roderick Dorman, had

4    analyzed claim preclusion and had delivered an opinion to Mr. Bermeister, PersonalWeb's Non-

5    Executive Chairman, that "[a]ny act of infringement occurring after the filing of complaint is not

6    precluded by *res judicata* and can be asserted in a later proceeding."  Exh. 1 to Bermeister Decl.,

7    ECF 608-2 (email from Mr. Dorman to Mr. Bermeister and others, dated May 22, 2014)[4]; Opp'n at

8    3-4.  Moreover, PersonalWeb claims that its "present legal counsel again conducted that analysis,

9    and concluded it unlikely that either claim preclusion or the *Kessler* doctrine would preclude the

10   claims."  Opp'n at 4 (citing Bermeister Decl. ¶ 4, ECF 608-1, Exh. 1 to Bermeister Decl., ECF 608-

11   2; Declaration of Michael A. Sherman ("Sherman Decl.") ¶ 6, ECF 608-16; Declaration of Wesley

12   W. Monroe ("Monroe Decl.") ¶ 25, ECF 608-6, Exh. 2 to Monroe Decl., ECF 608-6 (Mr. Monroe's

13   memorandum titled "Potential Effects of prior Amazon Litigation and Dismissal with Prejudice,"

14   dated January 3, 2018)).[5]

15         Amazon/Twitch argue that the Court should give the submitted declarations "no weight"

16   because "[n]early all of the declarants have an interest in the outcome of this litigation and this

17   motion."  Amazon and Twitch's Reply in Support of Motion ("Reply") at 11, ECF 611-4.  Mr.

18   Bermeister is an officer of PersonalWeb.  Bermeister Decl. ¶¶ 1, 6.  Mr. Monroe and Mr. Sherman,

19   PersonalWeb's counsel of record in this action, are attorneys with Stubbs Alderton & Markiles,

20   LLP.  Monroe Decl. ¶ 1 (of counsel); Sherman Decl. ¶ 1 (partner).  Stubbs Alderton's venture arm,

21   SAM Venture Partners, is a part-owner of PersonalWeb.  *See* ECF 3 of Case No. 5:18-cv-05619-

22   BLF (Certificate of Interested Parties); Bermeister Dep. Tr. at 62:2-10, ECF 611-5; Gregorian Decl.

23

24   ---

[4] PersonalWeb asserts that it did not submit a declaration from Mr. Dorman in support of its
25   opposition to this Motion because he recently passed away.  Bermeister Decl. ¶ 4.

26   [5] By filing these declarations, PersonalWeb waived attorney-client communication and attorney
     work product privileges as to the contents of those declaration.  Amazon/Twitch objected to the
27   Court's consideration of these declarations, arguing that PersonalWeb was withholding other
     "damaging" information by asserting privilege.  Reply at 10-11.  The Court held a case management
28   conference regarding the parties' purported discovery dispute.  ECF 620.  Following that
     conference, Amazon/Twitch withdrew their arguments on this issue.  ECF 618.

Exh. 8.  The Court notes that Amazon/Twitch do not contend that Mr. Dorman ever had an interest in this case.

Although the persuasive effect of PersonalWeb's submitted declarations may be somewhat diminished due the identified bias the declarants bring to this case, the key consideration is that the declarations promote the same baseless arguments PersonalWeb presented (and lost) in opposing the *Kessler* Motion, which were inconsistent with Federal Circuit precedent and the record in the Texas Action.  Specifically, in its opposition to the *Kessler* Motion, PersonalWeb relied on the declaration of its attorney, Lawrence Hadley, who had litigated the Texas Action.  ECF 337.  In granting summary judgment against PersonalWeb, the Court found Mr. Hadley's declaration "uncorroborated and self-serving," misrepresenting the scope of PersonalWeb's own claims in the Texas Action to avoid claim preclusion.  *Kessler* Order at 17-18.

The declarations submitted with PersonalWeb's opposition to this Motion do little to ameliorate the problem caused by Mr. Hadley's declaration that mischaracterized the Texas Action he litigated or the baselessness of PersonalWeb's arguments.  First, Mr. Dorman's email, dated ***before*** judgment was entered in the Texas Action, discusses only the damages period the with-prejudice dismissal of the Texas Action would affect and opines that "[a]ny act of infringement occurring after the filing of complaint is not precluded by *res judicata* and can be asserted in a later proceeding."  ECF 608-2.  The Court rejected this argument in its *Kessler* Order and PersonalWeb did not present it to the Federal Circuit.  *See Kessler* Order at 22-23; *In re PersonalWeb*, 961 F.3d at 1374 n. 3.  Mr. Dorman's email does not address the scope of claims against Amazon S3 in the Texas Action and says nothing about the *Kessler* doctrine.  To the extent PersonalWeb relied on a 4-year-old email that was not drafted for the purpose of this litigation, addresses only one aspect of *res judicata*, and comes to an untenable legal conclusion contrary to the Federal Circuit precedent before filing 85 lawsuits, that reliance was misplaced and unreasonable.

Second, Mr. Monroe's January 3, 2018 memorandum concluded that it was "unlikely" that claim preclusion would apply to PersonalWeb's claims and that *Kessler* doctrine was "less likely than not" to apply.  ECF 608-8 at 2.  But Mr. Monroe's memorandum presents some of the same arguments this Court and the Federal Circuit rejected because they were entirely without merit.

In conclusion, although the Court does not find that PersonalWeb acted in bad faith in bringing the claims related to the use of Amazon S3 (because it relied on its counsel's opinion), Mr. Dorman's email and Mr. Monroe's memorandum do not alter the Court's conclusion that the asserted claims related to the use of Amazon S3 were objectively baseless. The Court notes, however, that the baselessness of PersonalWeb's claims related to the use of S3 plays a limited role in the Court's "totality of circumstances" analysis for finding this case exceptional.  PersonalWeb's unreasonable litigation tactics alone, discussed in detail below, would have been sufficient to find this case exceptional.

> d.  The '544 Patent

PersonalWeb notes that "Amazon makes no argument that PersonalWeb's '544 Patent claims were baseless from the starts" because (1) PersonalWeb dropped the '544 patent from its counterclaim against Amazon on October 16, 2018 and (2) PersonalWeb's infringement theory for the '544 patent against Twitch "involves fingerprints in URIs/RoR, which S3 does not do."  Opp'n at 7.  Accordingly, PersonalWeb argues that the Court's *Kessler* Order did not apply because it only applied to infringement solely by S3.  *Id.*  Amazon does not respond to this argument.  *See generally*, Reply.

PersonalWeb is correct as to the '544 Patent, as far as it goes. The unreasonableness of PersonalWeb's preclusion positions relate solely to infringement claims related to Amazon S3.

****

In conclusion, the Court finds that PersonalWeb's infringement claims related to the use of Amazon S3 were objectively baseless and clearly untenable based on established Federal Circuit precedent and in light of the with-prejudice dismissal of the Texas Action.

> ## 2.  Infringement Theories

Amazon also argues that PersonalWeb's infringement theories were baseless from the start because "PersonalWeb knew that the accused HTTP standard did not meet the plain requirements of the claims because it does not determine license compliance or 'not permit' content to be provided or accessed."  Motion at 9; *see also id.* at 3 ("PersonalWeb accused basic aspects of the HTTP protocol—the publicly available standard that governs how web browsers and web servers

1    communicate—a technology that has *nothing* to do with checking for valid licenses or permitting

2    access to content."  Motion at 3 (citing ECF 540-6 ("Weissman Report") ¶¶ 26, 94; DJ Action, ECF

3    54 at 33:11-19). Amazon bases this argument on (1) Judge Gilstrap's claim construction in a

4    separate PersonalWeb case in Texas (ECF 412-6 at 28 (construing "authorized," "unauthorized,"

5    and "authorization" as "compliant with a valid license," "not compliant with a valid license," and

6    "a valid license")) and (2) this Court's summary judgment order finding non-infringement across

7    the board (ECF 578).

8         In response, PersonalWeb provides several declarations from its attorneys and technical

9    expert regarding its pre-suit investigation into the strength of its infringement claims.  Opp'n at 2-3

10   (citing Bermeister Decl. ¶¶4-10; Sherman Decl. ¶¶ 2-7,  Declaration of Sandeep Seth ("Seth Decl.")

11   ¶¶ 6-24, ECF 608-15; Declaration of Samuel H. Russ ("Russ Decl.") ¶¶ 5-29, 608-11; Declaration

12   of Dr. Brian Siritzky ("Siritzky Decl.") ¶¶ 5-13, 608-3).

13        Regarding Judge Gilstrap's claim construction, PersonalWeb correctly notes this Court's

14   conclusion that Judge Gilstrap's claim construction order was not "directly on point with the instant

15   dispute" and therefore, the merit of PersonalWeb's infringement positions were not clear until after

16   this Court issued its Claim Construction Order.  *See* Claim Construction Order at 10, ECF 485.

17   PersonalWeb     made     reasonable,     albeit     unsuccessful,     arguments     that     the     terms

18   authorized/unauthorized or licensed/unlicensed should be given their plain and ordinary meaning.

19   *See* Claim Construction Order at 6-12.  Although Judge Gilstrap's claim construction order should

20   have put PersonalWeb on notice of the weakness of its claim construction position, the parties

21   presented a different dispute in this case than was before Judge Gilstrap – supporting the Court's

22   conclusion that PersonalWeb's position was not unreasonable.

23        Regarding PersonalWeb's infringement theories, while Amazon has pointed out several

24   meaningful deficiencies in PersonalWeb's contentions, as evidenced by Amazon's complete success

25   at summary judgment, those theories were not baseless or unreasonable from the start.   The

26   declarations submitted by PersonalWeb demonstrate its extensive efforts to investigate the

27   infringement theories prior to bringing these cases and the Court is persuaded that, while

28   unsuccessful, PersonalWeb presented reasonable infringement arguments throughout the case,

United States District Court
Northern District of California

14

including at summary judgment.

In sum, the Court finds that PersonalWeb's infringement positions were not objectively baseless and thus, do not support a finding of an exceptional case.

### B. PersonalWeb's Litigation Conduct

Amazon/Twitch argue that PersonalWeb's conduct makes this case exceptional. Motion at 8. According to Amazon/Twitch, PersonalWeb brought baseless claims, repeatedly changed its positions, unreasonably prolonged the case after claim construction, and failed to follow the Court's rules and was not candid with the Court. *Id.* at 8-14.

The goal of Section 285, unlike that of Federal Rule of Civil Procedure 11, is "not to control the local bar's litigation practices ... but it is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of the litigation or Patent Office misconduct, to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309 n.1 (Fed. Cir. 2012), *vacated on other grounds by*, 572 U.S. 559 (2014); *see also Octane Fitness*, 572 U.S. at 555 ("[S]anctionable conduct is not the appropriate benchmark."). Put differently, "*Octane* liberalized the standard for fee shifting," within the boundaries of "the liberalized standard to 'rare' and 'extreme' cases involving unreasonable conduct." *PersonalWeb Techs. LLC v. EMC Corp.*, 2020 WL 3639676, at *3.

### 1. PersonalWeb's Shifting Infringement Theories

Amazon/Twitch contend that this is an exceptional case because "PersonalWeb repeatedly flip-flopped positions, telling the court whatever was expedient to keep its cases alive at that moment." Motion at 3. PersonalWeb responds that its infringement theories "remained consistent throughout the entire case[.]" Opp'n at 7.

A patent litigant's repeated changes in its litigation positions in a case may support a finding of exceptional conduct. *See Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1377 (Fed. Cir. 2015) (vacating district court's denial of fees where the plaintiff's "litigation positions, expert positions, and infringement contentions were a constantly moving target, a frustrating game of Whac–A–Mole throughout the litigation.") (citation omitted); *see also Source Search Techs., LLC v. Kayak Software*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Corp.*, No. 11-3388(NLH/KMW), 2016 WL 1259961, at *7 (D.N.J. Mar. 31, 2016) (granting fees

2  where plaintiff "changed its positions back and forth to suit the argument of the day.").

3        Amazon argues that "[t]o win centralization, PersonalWeb told the JPML that all its

4  infringement claims were based on the customer defendants' use of Amazon S3" but abandoned that

5  position "to avoid Amazon's declaratory judgment suit and Amazon's motion to enjoin

6  PersonalWeb from proceeding against Amazon's customers" by telling this Court that its claims

7  "were really focused on Ruby on Rails, not Amazon S3."  Motion at 3-4.  PersonalWeb responds

8  that it never accused S3 alone of infringement, but told the MDL Panel the alleged infringement

9  involves the use of Ruby on Rails architecture *and* Amazon S3.  Opp'n at 10-11.

10       PersonalWeb represented to the MDL Panel that

11       each defendant's website is alleged to use a **Ruby on Rails**

12  **architecture** to develop and compile its webpage files that are required to render a webpage, and to generate a fingerprint of the content of each of the files when compiled. Once each defendant's

13  webpage files have been compiled and are complete, each defendant is alleged to **upload them to an Amazon S3 host system** as objects

14  having unique content-based E-Tag values that are used in the allegedly infringing systems and methods to authorize new content

15  and re-authorize what old web page files may be used to render their web pages, and communicate those authorizations using the same part

16  of the internet protocol, namely HTTP 200 AND HTTP 304 messages. **Each defendant is alleged to have contracted with the**

17  **same third party to serve its content on its behalf using the same S3 host system so that it may control its content distribution in an**

18  **infringement of the Patents-in-Suit.** *See, e.g.*, Airbnb Complaint, ¶¶ 21, 22.

19  ECF 592-14  at 6-7 (*In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL

20  No. 2834 ("MDL Action"), Dkt. 1-1) (emphasis added).

21       To the extent that PersonalWeb argues it did not hide the ball as to Ruby on Rails from the

22  MDL Panel, the Court agrees.  That said, PersonalWeb clearly emphasized each Defendant's use of

23  Amazon S3 as a common issue supporting its centralization efforts.  But after the MDL was created

24  and it came time to oppose Amazon's motion for preliminary injunction, PersonalWeb distanced its

25  infringement position from S3 and put its focus on Ruby on Rails.

26       In its opposition to Amazon's motion for preliminary injunction, PersonalWeb argued:

27       […] Amazon's Motion entirely ignores the fact that PersonalWeb's

28  current actions are based on the defendant website owner/operators'

> use of the Ruby on Rails system architecture, and not just on Amazon's S3 web hosting service. … [T]he complaints in PersonalWeb's current actions clearly allege how each defendant's infringing conduct includes its use of the Ruby on Rails system architecture to, independently of S3, generate a fingerprint of each file before the file is uploaded to Amazon's S3 web hosting service, and how that Ruby on Rails-generated fingerprint controls the manner in which content is authorized and delivered to end user browsers to ensure that only the defendants' latest authorized content is provided when rendering webpages. PersonalWeb's Ruby on Rails-based infringement allegations are **wholly independent** of any use of S3. Indeed, there are other infringing websites that are based on Ruby on Rails as used with other, non-Amazon web hosting services.

DJ Action, ECF 37 at 1 (emphasis in original).

PersonalWeb's position became even clearer at the hearing on Amazon's motion for preliminary injunction where PersonalWeb's counsel explained:

> But I think, importantly, the Amazon DJ Action will not resolve claims against the individual defendants because ***PersonalWeb's theory of infringement revolves around Ruby on Rails not S3***, it is the Ruby on Rail website owner that controls and drives the use of ETags.

DJ Action, ECF 54 at 43:24-44:3 (emphasis added).

As further evidence of PersonalWeb's shifting infringement theories, PersonalWeb not only emphasized that this case was not about S3, it represented that the claims against the website operators did not even substantially overlap with PersonalWeb's counterclaims against Amazon's S3:

> PersonalWeb disagrees with the fundamental predicate advanced here that the issues raised in its causes of actions against the Website Operator Defendants are identical to or even substantially overlap with the declaratory judgment[.]

ECF 96 at 11.  Now, in its opposition to this Motion, PersonalWeb claims that it has always had the same infringement theory:

> websites infringe when they (1) generate a fingerprint of the content of files used in a webpage and including the fingerprint in URIs of the files (*e.g.*, something Ruby on Rails [..] does), (2) have a unique content-based E-Tag value generated for files included in webpages (*e.g.*, something that S3 does), and (3) authorize new content and re-authorize what cached webpage files may be used to render their webpages, and communicate those authorizations using HTTP 200 and 304 messages.

Opp'n at 7-8.  This position is, of course, inconsistent with PersonalWeb's earlier representation that there is no substantial overlap between the claims against Amazon S3 and the claims against

website operators.

In addition, on April 13, 2018, PersonalWeb filed a motion to dismiss Amazon's declaratory judgment complaint and argued that the Court lacked subject matter jurisdiction because there was no dispute about infringement (direct or contributory) by Amazon.   DJ Action, ECF 43. PersonalWeb's position was:

> Personal Web has sued the website owners because they use a combination of the Ruby architecture and aspects of the HTTP web protocol in an allegedly infringing manner, not just because they use S3.

DJ Action, ECF 43 at 4.  In its own words, "PersonalWeb argued that it had accused *the website operators* of infringing through their use of Amazon's S3." Opp'n at 11 (emphasis in original).  But PersonalWeb reversed this position, withdrew its motion to dismiss, and filed a counterclaim against Amazon in the Declaratory Judgment Action "pleading direct infringement by Amazon or the website defendants in the alternative."  DJ Action, ECF 62 at 13 ¶ 23.

Importantly, after all that, Ruby on Rails seemingly vanished from the case.  PersonalWeb's expert offered no infringement opinion based on Ruby on Rails and PersonalWeb did not even mention Ruby on Rails in its opposition to Amazon and Twitch's summary judgment motions.  *See generally*, de la Iglesia Report, ECF 520-3; ECF 551; ECF 555.  At the Hearing, PersonalWeb asserted that Ruby on Rails was dropped after and because of the Court's Claim Construction Order issued on August 16, 2019.  Hr'g Tr. at 27:17-21.  That may be true, but PersonalWeb served an infringement expert report on Twitch after claim construction, without any allegations as to Ruby on Rails.  *See* de la Iglesia Report.  If PersonalWeb's infringement theory (which PersonalWeb claims has never changed) "revolve[d] around" the website operators' use of Ruby on Rails (as PersonalWeb represented to this Court), how did that theory survive without Ruby on Rails?  *See* DJ Action, ECF 54 at 43:24-44:3.

Finally, PersonalWeb added allegations against a separate Amazon product, CloudFront, months into the case.  Presumably, because it was clear that the claims related to the use Amazon S3 were to be challenged on preclusion grounds, PersonalWeb included for the first time, infringement allegations against Amazon's CloudFront in its infringement contentions served on

October 29, 2018.  *See* ECF 315-1 ¶ 13; ECF 315-13.  Until then, CloudFront was not accused in the customer cases or in PersonalWeb's counterclaims in the Declaratory Judgment Action.

In sum, the Court agrees with Amazon that PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day.

### 2.  PersonalWeb's Conduct after Claim Construction

On August 16, 2019, the Court issued its Claim Construction Order.  The Court construed the claim term "unauthorized or unlicensed" as "not compliant with a valid license" and the claim term "authorization" as "a valid license."  Claim Construction Order at 12, 33.  On the same day Amazon and Twitch requested that PersonalWeb dismiss all claims against them with prejudice, because the Court's Claim Construction Order "ma[de] clear that PersonalWeb ha[d] no viable infringement claim."  ECF 507-2.  PersonalWeb responded by proposing a stipulation to judgment of non-infringement on all its counterclaims against Amazon.  ECF 507-3.  But as to the claims against Twitch, PersonalWeb offered to stipulate to non-infringement of only one of the asserted patents (the '544 Patent).  *Id.*

When Amazon/Twitch declined the proposed stipulation (which would have kept the case against Twitch alive), PersonalWeb directed its expert, Mr. Erik de la Iglesia, to base his infringement opinions on a substitute claim construction preferred by Personal Web.  Instead of the Court's construction "compliant with a valid license," Mr. de la Iglesia "interpreted" the phrase "valid license" to mean "valid rights to content" and justified this departure from the Court's claim construction by referencing Judge Gilstrap's construction in a separate PersonalWeb case.  de la Iglesia Report ¶ 64.  Specifically, Mr. de la Iglesia declared:

> Consistent with the Gilstrap Order, I will interpret the phrase "valid license" to mean "valid rights to content" in the current constructions "not compliant with a valid license" and "a valid license." Similarly, I will interpret the phrase "valid license" to mean "valid rights to content" when I apply "a copy that is not compliant with a valid license" as the interpretation of "an unauthorized copy or an unlicensed copy."

*Id.*

Based on this misguided attempt at "interpreting" the Court's construction, Mr. de la Iglesia concluded that the Twitch website infringes.  Under the threat of Rule 11 sanctions from

1      Amazon/Twitch, PersonalWeb moved for clarification of the Court's construction.  ECF 507.  The

2      Court denied that motion finding that the word "license" in the Court's construction does not need

3      clarification or supplementation.  ECF 537.

4            The next day, PersonalWeb moved for entry of judgment of non-infringement based on the

5      Court's claim construction.  ECF 538.  Specifically, PersonalWeb sought judgment of non-

6      infringement in favor of Amazon on Amazon's claims for declaratory judgment of non-infringement

7      of the '442 patent, '310 patent, '544 patent, and '420 patent and PersonalWeb's counterclaims of

8      patent infringement of those patents.  *Id.*  PersonalWeb asked the Court to dismiss the '791 patent

9      without prejudice.[6]  *Id.* at 1.  The motion for judgment also did not include the claims against Twitch

10     (other than the claims based solely on the use of S3 subject to the Court's *Kessler* Order).  *See*

11     *generally*, *id.*

12           Two days later, on October 4, 2019, Amazon and Twitch filed their respective motions for

13     summary judgment, in which they sought summary judgment of non-infringement not only based

14     on the Court's claim construction, but also on additional grounds unrelated to the terms the Court

15     had construed.  ECF 541; ECF 542.  On October 16, 2020, Amazon/Twitch filed an opposition to

16     PersonalWeb's Motion for Entry of Judgment and requested that the Court rule on the pending

17     motions for summary judgment because (1) Amazon/Twitch had raised additional non-infringement

18     arguments at summary judgment that were independent from the claim construction, the disposition

19     of which would eliminate the need for multiple appeals, (2) dismissal of Amazon's declaratory

20     judgment claim on the '791 patent without prejudice would allow PersonalWeb to reassert that

21     patent in a new lawsuit, and (3) entering judgment in the Twitch case concurrently with the judgment

22     in the Amazon case would allow the related appeals to proceed in parallel.  ECF 547.  The Court

23     agreed with Amazon and held that there was no "valid reason to deprive Amazon of a ruling on its

24     summary judgment motion" and that "decoupling" the Amazon and Twitch cases would be

25     "contrary to the efficiencies desired by the parties and the Court throughout this MDL."  ECF 559

---

[6] PersonalWeb correctly notes that it had not asserted the '791 Patent against Amazon or Twitch. Opp'n at 13.  Thus, the '791 Patent was a part of this case only in Amazon's Declaratory Judgment Action.

at 3.

The Court finds that some of PersonalWeb's conduct after claim construction was unreasonable.  Specifically, PersonalWeb's attempt to work around the Court's claim construction ruling was egregious and exceptional.  The Court's claim construction order had clearly construed the terms "unauthorized or unlicensed" as "not compliant with a valid license" and "authorization" as "a valid license." Claim Construction Order at 33.  It was improper for Mr. de la Iglesia to "interpret" the Court's construction and apply his "interpretation" to the infringement analysis.  It is true that PersonalWeb sought "clarification" of the Court's Claim Construction Order – a generally proper request – but it only did so *after* it was faced with Amazon/Twitch's threats of sanctions under Rule 11 (ECF 507 at 2) and *after* it instructed its expert to apply the improper "interpretation."  *See Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees where the court's "claim construction foreclosed any reasonable argument [of infringement]" but plaintiff refused to stipulate to non-infringement and instead "filed a conclusory expert report and advanced flawed, nonsensical, and baseless arguments, […] seeking only to re-litigate [the court's claim] construction").

But setting aside the claim construction "clarification" issue, PersonalWeb endeavored to avoid prolonging this case.  Immediately after claim construction and in response to Amazon and Twitch's demand for dismissal, PersonalWeb offered to stipulate to judgment of non-infringement on all its counterclaims against Amazon.  ECF 507-3.  As to its claims against Twitch, PersonalWeb first offered to stipulate to non-infringement of one of the asserted patents (the '544 Patent) – in the hopes, no doubt, that its "interpretation" of the Court's claim construction would stick.  *See id.* Then, in its Motion to Clarify, PersonalWeb offered to withdraw Mr. de la Iglesia's expert report served on Twitch and dismiss all claims, if the Court disagreed with its "interpretation" of the claim construction.  ECF 507 at 2.  And in its Non-Opposition to Twitch's Motion for Summary Judgment of Non-Infringement, PersonalWeb did not oppose summary judgment based on the Court's claim construction.  ECF 551.

Curiously though, after the Court denied PersonalWeb's Motion to Clarify, PersonalWeb's Motion for Entry of Judgment of Non-Infringement was directed at the Amazon case, but not Twitch

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (except as to claims related to S3).  *See* ECF 538.  If PersonalWeb's motion had been granted, the

2   Amazon case would have been decoupled from the Twitch case (and other customer cases) leading

3   to duplicate appeals and unraveling of the MDL.  Amazon/Twitch label PersonalWeb's Motion for

4   Entry of Judgment "another bad faith gambit" because "PersonalWeb wanted the Court to enter

5   judgment on only a single claim construction and only in the Amazon case[.]"  Motion at 7.

6           The Court is not so sure.  It is true that PersonalWeb's Motion for Entry of Judgment did not

7   include what it had promised to do: withdraw its expert report against Twitch and dismiss all claims.

8   But by this time, Amazon and Twitch had already prepared their respective motions for summary

9   judgment of non-infringement (filed two days later), which included several grounds independent

10  of the claim construction.  Amazon/Twitch were no longer interested in a claim construction-only

11  judgment and sought a finding of non-infringement as to all the grounds raised in their motions.  *See*

12  ECF 547.  Amazon and Twitch had good reasons for this approach – they sought to avoid multiple

13  overlapping appeals – but still, the prolongation of the case at that stage did not rest solely on

14  PersonalWeb's shoulders.  *Id.* at 3.  In other words, if Amazon/Twitch wanted to end the case, they

15  could have asked the Court to hold PersonalWeb to its promise to dismiss all claims against Twitch

16  based on the Court's claim construction.  They did not.  Instead, they pushed ahead with summary

17  judgment on additional grounds.

18          In sum, PersonalWeb's reasonable course of action would have been to stipulate to non-

19  infringement in both Amazon and Twitch cases immediately after claim construction when it

20  received Amazon's Rule 11 letter and proceed to appeal.  PersonalWeb "may have filed a weak

21  infringement lawsuit," but this lawsuit "became baseless after the [Court]'s *Markman* order" as to

22  both Amazon and Twitch. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017).

23  Alternatively, PersonalWeb could have immediately sought clarification of the Court's Claim

24  Construction Order ***before*** instructing its expert to "interpret" the Court's construction.  Either

25  approach would have eliminated the need for summary judgment motions altogether.  But once

26  PersonalWeb served its expert report on Twitch, Twitch had no choice but to prepare its summary

27  judgment motion that was due a few days later.  Thus, PersonalWeb's prolongation of the Twitch

28  case after claim construction and its instruction to the expert to apply PersonalWeb's

1   "interpretation" of the Court's claim construction were unreasonable litigation conduct.

2        That said, the Court recognizes that Amazon and Twitch sought, and were granted, summary

3   judgment based on additional grounds independent of the Claim Construction Order.   The fees

4   associated with those independent grounds cannot fairly be attributed to PersonalWeb's conduct.

5   The Court will address this issue at a later time when determining the amount of reasonable fees.

### 3.   PersonalWeb's Positions Regarding Customer Cases

7        In September 2018, PersonalWeb represented to the Court that "there are four categories of

8   website operator activity involved in the infringement of at least one PersonalWeb patent-in-suit."

9   ECF 96 at 5.   PersonalWeb described those four categories as:

> 1) generating and serving webpage base files and content-based ETags outside of S3;
> 2) generating and serving webpage asset files and content-based ETags outside of S3;
> 3) serving webpage asset files from S3 and generating ETags using S3;
> 4) generating content-based fingerprints for asset files and inserting them into the asset file's filename outside of S3.

*Id.*   And PersonalWeb submitted a chart showing the respective activity categories engaged in by

each customer defendant.   ECF 96-1.   Based on PersonalWeb's representation, the Court selected

one customer case (Twitch) as representative because Twitch was accused of infringement in all

four categories.   *See id.* at 2.

On October 26, 2018, in response to the Court's concern as to whether the same MDL should

include all customer cases, PersonalWeb represented that all customer cases involved the same

infringement theories:

> [E]ach of the defendant website operators were accused of using the same basic infringing method of using content-based ETags and certain of the same elements of the HTTP 1.1 protocol to provide notifications and authorizations in order to ensure that a browser only uses the latest authorized content in rendering their webpages. The common steps of this basic method are the same across all of the cases, which only differ in the instrumentality the website operator chooses to use to generate and serve the ETag and the notifications. Some of the website operators also use fingerprints in the URI of certain types of webpage files, which leads to its own category of infringement and the infringement of the '544 patent.

ECF 271 at 5.

United States District Court
Northern District of California

23

Again, at the November 2, 2018 Case Management Conference, PersonalWeb represented to this Court that a finding of non-infringement in the Twitch case would mean that none of the customer cases could go forward:

> **The Court**: If I were to bring in either Twitch or Centaur Media, and there were a verdict against PersonalWeb that no infringement was found, would you agree that none of the customer cases could go forward because there would be findings in each of the buckets?
>
> **Mr. Sherman**: Yes.

ECF 300 at 9:17-22.  As the Federal Circuit aptly explained, "[b]ecause PersonalWeb represented that it would not be able to proceed in the other customer cases if it lost its case against Twitch, the district court relied on PersonalWeb's pleadings against Twitch as being representative of PersonalWeb's pleadings in the other customer cases." *In re PersonalWeb*, 961 F.3d at 1372.  On November 27, 2018, the Court designated the Twitch case as representative because the parties agreed that Twitch involved all four categories of infringement identified by PersonalWeb and stayed all other customer cases pending resolution of the Declaratory Judgment Action and the Twitch case.  ECF 313.

Nearly a year later, Amazon and Twitch filed their respective motions for summary judgment (ECF 541, 542), which the Court granted.  ECF 578.  The Court also issued an order inquiring about the parties' position on whether the Summary Judgment Order should be entered as to all remaining customer cases.  ECF 580.  On February 17, 2020, approximately fifteen months after the Court designated the Twitch case as representative of customer cases and after summary judgment was concluded, PersonalWeb represented to the Court for the first time, that it no longer believed Twitch was representative.  *See generally*, Statement.

    a.   The Parties' Joint Statement Regarding Customer Cases

PersonalWeb presented two arguments as to why the Twitch case is not representative. *First*, PersonalWeb asserted that it is entitled to re-litigate its infringement theory for the "unauthorized/unlicensed" limitation in all of the remaining customer cases because "the Magistrate Judge refused to permit amendment of the infringement contentions to include the license provisions of Twitch's Terms of Service."  Statement at 3-4.  This argument is without merit.

United States District Court
Northern District of California

On June 11, 2019, PersonalWeb moved for leave to amend its infringement contentions "to address the possibility the terms 'unauthorized' and 'authorization' were interpreted by the Court as requested by Amazon." ECF 448 at 1. PersonalWeb contended that limitations requiring "authorization" were infringed when access to a website is governed by "Terms of Service or an End User License." *See* ECF 448-2. Judge van Keulen denied that motion, finding that PersonalWeb was not diligent. ECF 481. Now, PersonalWeb "proffers that other website operator defendants *did* have terms of service or terms of use governing licenses in effect during the relevant timeframe[.]" Statement at 4. That may be so – but Judge van Keulen denied PersonalWeb's motion for leave due to lack of diligence and ***not*** because of what was or was not included in Twitch's terms of service. PersonalWeb's lack of diligence in advancing all of its available infringement theories in the representative Twitch case applies with equal force to all remaining customer cases. And PersonalWeb has articulated no basis for finding otherwise.

***Second***, PersonalWeb argued that it learned during discovery that Twitch is not representative of the thirteen customer Defendants in "category 2." ECF 584 at 4-5. PersonalWeb claims that it became aware of this issue in July 2019 but did not bring it to the Court's attention because it had not been "germane" to any issues before the Court until now. Statement at 5-6. This argument is insincere at best. The Court has clearly communicated to the parties throughout this MDL its strong interest in an efficient resolution of this case – which is why the Twitch case was designated as representative in the first place. PersonalWeb cannot now claim that it believed the unraveling of the MDL (by claiming that the Twitch case is no longer representative) was not "germane" to these proceedings. PersonalWeb waited until the conclusion of summary judgment to inform the Court of a position it admittedly has held since July 2019 and would undo the framework on which this case was managed. Based on PersonalWeb's curious delay, the Court agrees with Amazon/Twitch that "[p]resumably had there been a verdict of infringement PersonalWeb would never have suggested that Twitch was not a proper representative case." Statement at 8.

In sum, the Court finds unpersuasive PersonalWeb's arguments as to why Twitch is no longer representative of all customer cases. The Court also finds PersonalWeb's shifting positions

United States District Court
Northern District of California

1  in a final attempt to unravel the MDL after summary judgment and to keep some of the customer

2  cases in play unreasonable litigation conduct.

3             b.  PersonalWeb's Argument at the Hearing

4      At the Hearing, PersonalWeb argued that its position regarding the customer cases was

5  reasonable because it attempted to amend its infringement contentions "to make the Twitch case

6  completely representative" and once that effort failed, the Twitch case "became less representative."

7  Hr'g Tr. at 34:14-17, ECF 628; *see also id.* at 34:24-35:3 (Mr. Sherman: "And if Magistrate Judge

8  van Keulen had permitted the amendment of the infringement contentions, then clearly there would

9  have been a complete symmetry, a complete bellwetherness or representativeness.  There would not

10  have been any carve out.").

11      But PersonalWeb failed to explain ***how*** infringement contentions based on each website's

12  individual terms of service would have made the Twitch case more representative as opposed to less

13  representative.  In fact, if PersonalWeb had succeeded in amending the infringement contention, the

14  MDL would have been entirely unraveled because the infringement theory would have depended

15  on individual website operators' specific terms of service.

16      This is another clear example of how PersonalWeb attempts to bob and weave its way around

17  the issues in this case.  PersonalWeb's representation at the Hearing directly contradicts the

18  argument it made in its February 17, 2020 Statement.  There, PersonalWeb asserted that its failure

19  to amend its infringement contentions to include each website's terms of service was only applicable

20  to Twitch because it was a "specific procedural circumstance" and the website operators' terms of

21  service was "the type of fact particular to each individual case."  ECF 548 at 4.  This is the same

22  amendment that PersonalWeb argued at the Hearing would have created "complete symmetry"

23  among customer cases.  *See* Hr'g Tr. at 34:24-35:3.  Moreover, if PersonalWeb has known since

24  August 2019 (when Judge van Keulen denied leave to amend the infringement contentions, ECF

25  481), that the Twitch case had become "less representative," why not inform the Court before

26  summary judgment?  *See* Hr'g Tr. at 34-14-17.  Needless to say, the Court is not persuaded.

27                      ***

28      In sum, the Court finds that PersonalWeb took advantage of the MDL status by continuing

United States District Court
Northern District of California

to slice and dice this case in a way that gave it an escape hatch at every turn regarding the customer cases.  Such conduct "stands out from others" as exceptional.  *Octane Fitness*, 572 U.S. at 554.

### 4.  The Court's Rules and Duty of Candor

#### a.  Hadley and Bermeister Declarations

Amazon/Twitch argue that the declarations PersonalWeb submitted in support of its opposition to the motion for summary judgment based on preclusion were "sham."  Motion at 5. According to Amazon/Twitch, PersonalWeb's counsel Mr. Hadley and its Chairman Mr. Bermeister "attempted to manufacture a dispute" because "Mr. Hadley testified that the parties to the Texas case all 'recognized' that PersonalWeb retained the right to assert infringement claims involving S3 in the future, notwithstanding that the dismissal filed with the Texas court said the opposite." *Id.* Moreover, Amazon/Twitch assert that "both witnesses tried to testify, contrary to the pleadings and other records from the Texas case, that PersonalWeb had not accused Amazon S3 of infringement but rather only the multipart upload feature within S3." *Id.* (citing ECF 335, 337).

PersonalWeb acknowledges that "aspects of these declarations were 'self-serving,'" but responds that it "believed there were good reasons to include evidence of the circumstances surrounding the dismissal of the Texas action in the summary judgment motion on preclusion" and that the "declarations also supported PersonalWeb's presenting facts showing differences in the transactional facts between the two actions."  Opp'n at 21-22.

Mr. Bermeister testified:

> I was not aware at the time of the Texas Action that there were S3 website operator customers who were using ETags for an entirely different purpose of controlling browser caches by directing browsers to use conditional HTTP GET requests containing content-based ETags in order to instruct the browsers when they were authorized to reuse previously cached content or when they must get newly authorized content in rendering the website operator's webpages.

Bermeister Decl. ¶ 4, ECF 335.  Similarly, Mr. Hadley testified:

> During the Texas Action, I was not aware that were S3 customers who were using ETags for an entirely different purpose of controlling browser by directing browsers to use conditional HTTP GET requests containing ETags. This was not part of the Texas Action.

Hadley Decl. ¶ 4, ECF 337.  The Court considered Mr. Hadley's declaration and found that it "[did]

1   not create a genuine dispute of material fact because the declaration [was] 'uncorroborated and self-

2   serving.'" *Kessler* Order at 18 (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061

3   (9th Cir. 2002).

4           At the Hearing, Amazon/Twitch identified a May 22, 2014 email submitted by PersonalWeb

5   in opposition to the present Motion (and one that PersonalWeb relies on as opinion of counsel

6   regarding the preclusion issue), where Mr. Roderick Dorman, PersonalWeb's lead patent counsel in

7   the Texas Action, wrote to Mr. Bermeister (among others), copying Mr. Hadley:

8           We ask for $1 million in return for a dismissal with prejudice and a
            paid up license to the PersonalWeb portfolio for the field of use of
9           multi-code uploads ***and conditional gets***.

10  ECF 608-2 (emphasis added); Bermeister Decl. ¶ 4, ECF 608-1.  This email, Amazon/Twitch argue,

11  shows that Mr. Hadley and Mr. Bermeister knew that conditional GET was accused the Texas

12  Action.  *See* Hr'g. Tr. at 15:6-15.

13          The Court is not persuaded that the declarations of Mr. Hadley and Mr. Bermeister were

14  "sham."  Under the Ninth Circuit's "sham affidavit" rule, a "party cannot create an issue of fact by

15  an affidavit contradicting ... prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080

16  (9th Cir. 2012).  Accordingly, "[t]he sham affidavit rule applies only when a party's declaration

17  'contradict[s] his own prior testimony'" and because the record in the Texas Action and Mr.

18  Dorman's email "[are] not [Mr. Hadley or Mr. Bermeister's] testimony, [they] cannot serve as a

19  basis to disqualify [their] declaration[s]." *Aki v. Univ. of California Lawrence Berkeley Nat'l Lab.*,

20  74 F. Supp. 3d 1163, 1174 (N.D. Cal. 2014) (citing *Yeager*, 693 F.3d at 1080).

21          That said, Mr. Hadley and Mr. Bermeister testified that they were "not aware" that

22  conditional GET requests were a part of the Texas Action.  That testimony  is contrary to the record

23  in the Texas Action because "PersonalWeb told the trial court in the Texas case, the accused

24  functionalities of S3 include but are not limited to its 'multipart upload' feature and 'conditional

25  operations.'" *In re PersonalWeb*, 961 F.3d at 1376.  And Mr. Hadley testified that "both Amazon

26  and PersonalWeb recognized that infringement claims involving S3 could be asserted by

27  PersonalWeb in the future."  Hadley Decl. ¶ 8.  This was also "plainly not so" based on the plain

28  language of the dismissal in the Texas Action. *In re PersonalWeb*, 961 F.3d at 1378 n. 5.  Moreover,

United States District Court
Northern District of California

28

the Court finds implausible that Mr. Bermeister relied on Mr. Dorman's email (as to the preclusion issue) before bringing 85 lawsuits, but at the same time was unaware of the involvement of "conditional GET" allegations in the Texas Action, noted in the same email.  *See* Bermeister Decl. ¶ 4.

It is well established that "an attorney has a duty of good faith and candor in dealing with the judiciary."  *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985).  The Court maintains its opinion that Mr. Hadley's declaration related to the involvement of "conditional GET" allegations and the circumstances of dismissal in the Texas Action was "uncorroborated and self-serving" and remains troubled that the testimony was contradicted by the record in the Texas Action and by the newly-submitted email from Mr. Dorman. *See Kessler* Order at 18; ECF 376 at 53:19-22 (The Court: "Mr. Hadley's declaration is troubling to me because I actually think it's contrary to the evidence from his own case.").  The Court is not persuaded, however, that this conduct raises to a breach of duty of candor – which is sanctionable under Rule 11 – because there is no showing of blatant misrepresentation or bad faith.

But "sanctionable conduct is not the appropriate benchmark" in section 285 analysis. *Octane Fitness*, 572 U.S. at 555.   Messrs. Hadley and Bermeister should have been "aware" that conditional GET was part of the Texas Action.  A careful review of the record in the Texas Action and Mr. Dorman's email (received by both declarants), which should have taken place before filing 85 lawsuits, would have made clear that the testimony about the involvement of conditional GET in the Texas Action was inaccurate and should not have been presented to the Court.  Thus, in its discretion, the Court will consider these declarations as one factor in the "totality of the circumstances" related to PersonalWeb's unreasonable conduct in this litigation.  *Octane Fitness*, 572 U.S. at 554.

### b.  Level 3's Signature

Amazon/Twitch argue that PersonalWeb was not candid with the Court because "for months" it "represented positions to the Court on behalf of its co-plaintiff Level 3 without Level 3's consent."  Motion at 14 (citing ECF 366 at 1-2).  PersonalWeb filed an errata stating that it had "erroneously" included Level 3's signature on one document, but did not address the many other

documents that allegedly were filed without Level 3's consent.  ECF 364.  PersonalWeb does not dispute that it used Level 3's signature without authorization on several documents in violation of Civil Local rule 5-1.  PersonalWeb correctly notes, however, that Amazon stipulated that this issue was resolved between the parties.  *See* ECF 369 at 3 ("This stipulation resolves the issues raised in Amazon's second supplemental case management statement (Dkt. 366)").

Although the Court is troubled by PersonalWeb's use of Level 3's signature without authorization, Amazon/Twitch are not entitled to rely on this conduct to collect attorneys' fees after stipulating that the issue was resolved.

### 5.  "Nuisance-Value" Settlements

Amazon/Twitch further argue that this case is "exceptional" because of PersonalWeb's litigation tactics; namely that years after dismissing the Texas Action, PersonalWeb "sued scores of disparate companies in a sprawling MDL over technology—like Amazon S3—that those defendants did not create or supply" in order to collect "nuisance-value settlements."  Motion at 10.  Amazon/Twitch cite to an email from PersonalWeb's counsel Mr. Sandeep Seth, dated January 25, 2018 – shortly after PersonalWeb filed its first round of cases against Amazon customers – describing PersonalWeb's strategy as follows:

> This effort needs to be nimble to take advantage of settlement opportunities quickly while they exist and before Defendants start consolidating their positions. We need to start a settlement chain reaction before that happens.

ECF 611-6; Reply at 12.  Amazon/Twitch also assert that PersonalWeb has "entered numerous cost-of-litigation settlements concerning the asserted patents" and offered a four-figure settlement to one of the Defendants in this case.  Reply at 12-13.

PersonalWeb strongly objects to any assertion that it sought cost-of-defense or nuisance settlements.  Mr. Sherman, "the leader of [PersonalWeb's] litigation team" testifies:

> At all times, pre and post filing, in consultation with Mr. Bermeister, he and I adopted a strict policy of not under any circumstances ever permitting PersonalWeb or any of its representatives to engage in behavior that constituted pursuing "cost of defense" or "nuisance-style" settlements.  Both prefiling and shortly after filing I reached out to an economic consulting firm that had familiarity with the True Name patents through their economic consulting efforts in other True Name patent litigation (Berkeley Research Group), and as a result of

> communications with them and others I became comfortable with any potential, hypothetical settlement number needing to replicate what would otherwise have been an arms-length licensing fee.

Sherman Decl. ¶ 10, ECF 608-16.  Mr. Sherman further testifies that PersonalWeb rejected some "nuisance-value" settlement offers made by customer Defendants.  *Id.* ¶¶ 11-12.

The court agrees with PersonalWeb that the record does not support a finding that PersonalWeb brought these lawsuits to collect "nuisance-value" settlements.  Amazon/Twitch cite to PersonalWeb's "history of settling with multiple parties for relatively small amounts," but not to any actual small settlements in *this case*.  *See* Reply at 13.  Amazon/Twitch suggest that "PersonalWeb's lack of success in securing cost of litigation settlements may have been precisely because Amazon intervened in this case and secured a stay of the customer suits, leaving those defendants with no incentive to settle."  *Id.* at 12-13.  Maybe so – but Amazon *did* intervene.  Mere speculation as to what PersonalWeb might have done absent Amazon's involvement cannot support a finding of an exceptional case – especially when that speculation is contradicted by sworn testimony.  And Mr. Seth's email is not as ominous as Amazon/Twitch make it sound.  Mr. Seth describes a strategy for quick settlements, not "nuisance-value" ones.

The cases Amazon/Twitch cite are distinguishable. The plaintiff in *ThermoLife Int'l, LLC v. Myogenix Corp.* "settled early with many of the defendants in [that] lawsuit for seemingly small dollar amounts."  No. 13CV651 JLS (MDD), 2017 WL 1235766, at *7 (S.D. Cal. Apr. 4, 2017). Here, Amazon/Twitch do not present evidence of early settlements for small dollar amount with defendants *in this case*.  And in *AdjustaCam, LLC v. Newegg, Inc.*, plaintiff "asserted nuisance-value damages against many defendants, settled with them for widely varied royalty rates."  861 F.3d 1353, 1361 (Fed. Cir. 2017).  Amazon's sole evidence on this issue is that PersonalWeb offered to settle with one small company for a percentage of its gross revenues, which added up to a four-figure dollar amount.  Reply at 12-13 (citing ECF 611-9).  But one offer based on a fairly reasonable royalty rate is not litigation misconduct.

In sum, the Court finds that Amazon/Twitch failed to establish PersonalWeb engaged in litigation tactics aimed at "nuisance-value" or "cost-of-litigation" settlements.

### C.   Amazon's Conduct

PersonalWeb argues that Amazon/Twitch bring this Motion with "unclean hands."  Opp'n at 23-24.   The Court has carefully considered PersonalWeb's arguments regarding Amazon/Twitch's conduct and finds them unpersuasive.  While Amazon/Twitch at times failed to provide the full context of the certain cited portions of the record – *e.g.*, PersonalWeb's representation to the MDL panel (Motion at 3) and the colloquy between the Court and PersonalWeb as to whether the patents-in-suit covered the entire Internet (Motion at 10) – none raise to the level of "falsehood" PersonalWeb suggests.  PersonalWeb's "unclean hands" theory is unfounded.

Next, PersonalWeb contends that if Amazon/Twitch believed PersonalWeb "had no viable claim from the beginning," it should not have waited until after the Claim Construction Order to raise the "exceptional case" issue.  Opp'n at 24 (citing Motion at 8; *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (explaining that a "party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done.")).   There is no merit to this argument.  Amazon/Twitch's Motion presents many arguments as to why this case is exceptional.  Some, like Preclusion and *Kessler* issues, are longstanding and PersonalWeb was clearly on notice of them at least since Amazon's motion for preliminary injunction in February 2018.   DJ Action, ECF 15.  And several of Amazon/Twitch's other arguments are based on PersonalWeb's conduct after claim construction (*e.g.*, the misapplication of the Court's Claim Construction Order and PersonalWeb's shifting positions as to the customer cases).  Amazon/Twitch did, in fact, threaten Rule 11 sanctions as to some of this conduct.  Moreover, the Court personally and clearly recalls the interactions between counsel at the earliest status conferences where Amazon's counsel made clear that he believed PersonalWeb's case was frivolous.  PersonalWeb cannot plausibly argue that it was blindsided by this Motion.

### D.   Conclusion

The Court finds that Amazon and Twitch have shown by preponderance of the evidence that under the "totality of circumstances" analysis prescribed by *Octane Fitness*, this case is exceptional such that an award of attorney fees is justified.  572 U.S. at 554.  Taken separately, the fragments

1    of the story might not make PersonalWeb's conduct look exceptional.  The whole tale, however,

2    leads to a different conclusion – that this case both lacked "substantive strength" and was litigated

3    in an "unreasonable manner."  *Id.*  The Court "has lived with the case and the lawyers for an

4    extended period" and has observed first-hand how PersonalWeb repeatedly flip flopped its positions

5    to suit the argument of the day.  *Eon-Net LP*, 653 F.3d at 1324.

6         This case is exceptional because (1) PersonalWeb's infringement claims related to Amazon

7    S3 were objectively baseless and not reasonable when brought because they were barred due to a

8    final judgment entered in the Texas Action; (2) PersonalWeb frequently changed its infringement

9    positions to overcome the hurdle of the day; (3) PersonalWeb unnecessarily prolonged this litigation

10   after claim construction foreclosed its infringement theories; (4) PersonalWeb's conduct and

11   positions regarding the customer cases were unreasonable; and (5) PersonalWeb submitted

12   declarations that it should have known were not accurate.

13   **IV.    AMOUNT OF FEES**

14        In their Motion, Amazon/Twitch requested an award for their full fees and submitted a

15   declaration in support of the requested amount.  Motion at 14-15; Gregorian Decl. ¶¶ 2-22, ECF

16   592-1; ECF 592-7.   PersonalWeb does not challenge the reasonableness of the requested fees in its

17   opposition, but argues that scope of the fees should be decided after the Court makes its

18   exceptionality determination.  Opp'n at 25.  Amazon/Twitch reply that PersonalWeb has waived

19   any objections to the reasonableness of the requested fees by failing to address it in its opposition

20   but acknowledge that the Court has discretion to consider fee entitlement separately.  Reply at 14.

21        The Court agrees with Amazon/Twitch that the correct course of conduct for PersonalWeb

22   would have been to present its arguments regarding the reasonableness of Amazon/Twitch's fees in

23   its opposition to this Motion.  But the Court, in its discretion, allows PersonalWeb to file a

24   supplemental brief and will decide the reasonableness of the requested fees separately.

25   **V.    THE REMAINING CUSTOMER CASES**

26        As noted above, after summary judgment proceedings concluded, the Court inquired about

27   the parties' position on whether the Summary Judgment Order should be entered as to all remaining

28   customer cases.  ECF 580.  The parties filed their joint statement on February 17, 2020.  In that

United States District Court
Northern District of California

1   Statement, PersonalWeb acknowledged that there were findings of non-infringement for each of the

2   four customer categories and therefore judgments of non-infringement should be entered in all the

3   remaining customer cases.  Statement at 3.  PersonalWeb identified the following findings as

4   applicable to all customer cases:

> (1) Twitch's non-infringement of the '544 patent (Section III.C. of the
> [Summary Judgment] Order (p. 12)), and (2) permitting or allowing
> content to be provided or accessed and determining whether a copy
> of the data file is present using the name, which turn solely on the
> undisputed operation of computers complying with the HTTP 1.1
> specification (Sections III.E.1-2 of the [Summary Judgment] Order
> (pp. 14-21)).

9   *Id.*

10   PersonalWeb argued, however, that other findings in the Summary Judgment Order "that do

11   not turn solely on the undisputed operation of computers complying with the HTTP 1.1

12   specification" are not applicable to the customer cases other than Twitch.  For the reasons discussed

13   in section III.B.3. of this Order, the Court rejects PersonalWeb's arguments as to why some aspects

14   of the Court's Summary Judgment Order do not apply to the all customer cases.

15   Accordingly, the Court *sua sponte* lifts the stay on all customer cases in this MDL.  The

16   Summary Judgment Order and final Judgment will be entered in all customer cases.

## VI.   ORDER

For the foregoing reasons,

- Amazon and Twitch's Motion for Attorney Fees and Costs at ECF 593 is GRANTED.

- The Court will determine the reasonableness of the requested fees separately. PersonalWeb may file a supplemental brief, not to exceed ten pages, to address the reasonableness of the fees set forth in Amazon/Twitch's Motion **no later than two weeks** from this Order.  Amazon/Twitch may file a 6-page reply **within one week** of PersonalWeb's submission.

- The stay on all customer cases in this MDL is LIFTED.

**IT IS SO ORDERED.**

United States District Court
Northern District of California

Dated: October 6, 2020

BETH LABSON FREEMAN
United States District Judge