1   MICHAEL A. SHERMAN (SBN 94783)
    masherman@stubbsalderton.com
2   JEFFREY F. GERSH (SBN 87124)
    jgersh@stubbsalderton.com
3   SANDEEP SETH (SBN 195914)
    sseth@ stubbsalderton.com
4   WESLEY W. MONROE (SBN 149211)
    wmonroe@stubbsalderton.com
5   VIVIANA B. HEDRICK (SBN 239359)
    vhedrick@stubbsalderton.com
6   **STUBBS ALDERTON MARKILES, LLP**
    15260 Ventura Boulevard, 20TH Floor
7   Sherman Oaks, CA 91403
    Telephone:    (818) 444-4500
8   Facsimile:    (818) 444-4520

9   Attorneys for **PersonalWeb Technologies, LLC**

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                 SAN JOSE DIVISION

13

14   IN RE PERSONAL WEB TECHNOLOGIES,        **CASE NO.: 5:18-md-02834-BLF**
     LLC, ET AL., PATENT LITIGATION

15                                            **Case No.: 5:18-cv-00767-BLF**
     AMAZON.COM, INC. and AMAZON WEB          **Case No.: 5:18-cv-05619-BLF**
16   SERVICES, INC.,

17                    Plaintiffs,             **DECLARATION OF EXPERT GERALD
                                              G. KNAPTON IN SUPPORT OF**
     v.                                       **PERSONAL WEB TECHNOLOGIES,**
18                                            **LLC'S SUPPLEMENTAL BRIEFING**
     PERSONALWEB TECHNOLOGIES, LLC            **FOR HEARING ON THE**
19   and LEVEL 3 COMMUNICATIONS, LLC,         **DETERMINATION OF THE**
                                              **REASONABLENESS OF ATTORNEYS'**
20                    Defendants.             **FEES AND COSTS REQUESTED BY**
                                              **AMAZON.COM, INC., AMAZON WEB**
21                                            **SERVICES, INC., AND TWITCH**
     PERSONALWEB TECHNOLOGIES, LLC            **INTERACTIVE, INC.**
22   and LEVEL 3 COMMUNICATIONS, LLC,

23                    Counterclaimants,

24   v.

25   AMAZON.COM, INC. and AMAZON WEB
     SERVICES, INC.,

26                    Counterdefendants.

27

28   PERSONALWEB TECHNOLOGIES, LLC, a
     Texas limited liability company, and

1  LEVEL 3 COMMUNICATIONS, LLC, a
   Delaware limited liability company

2                           Plaintiffs,

3  v.

4  TWITCH INTERACTIVE, INC. a Delaware
   corporation,

5                          Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF GERALD G. KNAPTON**

I, Gerald G. Knapton, make this declaration in support of PersonalWeb Technologies, LLC's ("PersonalWeb") Supplemental Briefing for Hearing on the Determination of the Reasonableness of Attorneys' Fees and Costs Requested by Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively, "Amazon") in the Motion for Attorney Fees and Costs (ECF 593) and Bill of Costs (ECF 589) (collectively, "Motion"). PersonalWeb has engaged me to offer my expert opinion on the reasonableness and necessity of the proffered fees, costs and disbursements.  I am making this declaration as an expert witness, based on matter (including my specialized knowledge, skill, experience, training and education) perceived by, or personally known to me, or made known to me that is of a type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which my testimony relates.

## I.
## INTRODUCTION

1.      I was retained by PersonalWeb to assist them with examining the evidence submitted by Amazon in support of Amazon's Motion for Fees and costs filed pursuant to 35 U.S.C. § 285, Rule 54, the Federal Rules of Civil Procedure, Local Rules 54-1 through 54-5, and this Court's order of October 6, 2020 (ECF 636) regarding "exceptional case" fees ("Order"). I have read and examined the Order, including the Court's holding at page 33:6-12:

> "This case is exceptional because (1) PersonalWeb's infringement claims related to Amazon S3 were objectively baseless and not reasonable when brought because they were barred due to a final judgment entered in the Texas Action; (2) PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day; (3) PersonalWeb unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories; (4) PersonalWeb's conduct and positions regarding the customer cases were unreasonable; and (5) PersonalWeb submitted declarations that it should have known were not accurate."

2.      Amazon filed its Motion for fees several months earlier on March 20, 2020--months before that guidance (ECF 593), so it included fees for work that was not found to be for "exceptional" claims. It submitted invoices that total 12,783.2 hours of work done over 25 months by Fenwick & West LLP ("Fenwick"), Amazon's counsel, from January 8, 2018 through February

29, 2020. Amazon seeks fees of $6,100,000.00, and non-taxable expenses of $323,668.06 (ECF 593 at 15:23-25)

3.    In its motion Amazon estimated that they would incur a further $450,000 in fees through June 24, 2020 (ECF 592-1 - Gregorian 13:7-10) although no evidence has been submitted to support such a claim.

## II.
### BACKGROUND OF EXPERT

4.    My qualifications are more fully set out in my qualifications and curriculum vitae attached to this opinion as Exhibit 1.  In sum, I have been an attorney since 1977 and am a senior partner and shareholder at Ropers Majeski, P.C., which has law offices in San Jose, Redwood City, San Francisco, Walnut Creek, Los Angeles, Costa Mesa, New York City, Boston and Paris. I have reviewed well over $4.5 billion dollars in legal fees and related work product.  I have been qualified as an expert witness on the reasonableness and necessity of legal fees and testified in person to arbitrators, courts, and juries more than 59 times, in many parts of the United States, including California, Delaware, and New York.  I have reviewed charges in well over a thousand matters.  I am admitted to practice before this honorable Court (since 1979) and I am a member of the American Intellectual Property Law Association ("AIPLA").  Many of my fee matters have involved determining reasonable legal fees and costs for patent litigation in federal courts and/or the International Trade Commission (ITC).

5.    I subscribe to the Economic Surveys by AIPLA, Lex Machina reports on patent litigation, and the Wolters Kluwer Real Rate Reports on many kinds of litigation including patent litigation. I regularly review invoices and related work product for patent litigation and by this work I have gained an understanding of the reliability of those resources

6.    As a result of this I have developed an understanding of the process and costs of patent litigation in the ITC and in many federal courts including the Northern District of California.

### Documents reviewed and summary of documents created:

7.    I have signed the amended protective order that I am told is controlling in this case

1   (ECF 427), interviewed counsel for PersonalWeb, reviewed the public files and records in this

2   matter and similar matters as well as the relevant patent file wrappers, tutorials, and reference

3   materials.  Based on my review, study and research, my staff and I have compiled several

4   Microsoft® Excel® spreadsheets (Exhibits 2, 3, 4, 6 and 8) to help me quantify my opinions.

5   Exhibit 2 is an Excel spreadsheet that contains all of the information found in Fenwick's invoices

6   at ECF 592-5. Exhibit 3 is an Excel spreadsheet that contains all of the information taken from

7   Amazon's Time Chart at ECF 592-6 with the fees for each timekeeper in each category taken from

8   the "Effective Rate with Final Discount" column. Exhibit 4 is an Excel spreadsheet that compiles

9   the costs listed by Fenwick in each of its invoices. Exhibit 5 is a compilation from the 2019

10  AIPLA Report of the Economic Survey that contain the total amounts and rates for fees charged

11  by patent litigators in Northern California. Exhibit 6 is an Excel spreadsheet that lists all 43

12  timekeepers that billed time, taken directly from the Fenwick invoices at ECF 592-5. Exhibit 7

13  lists each of the Fenwick attorneys that attended the depositions that were noticed in this action.

14  Exhibit 8 is an Excel spreadsheet that summarizes all of the totals from Fenwick's invoices,

15  including the total hours, fees, discounts, costs, and individual invoice totals for each invoice at

16  ECF 592-5, as well as reflects all discounts and adjustments made to each total that appears to

17  form the basis for Amazon's "bottom line" fee request in its Motion.

18          8.      As this Court will determine whether to allow the request for expert witness fees

19  and the other "non-statutory" costs, my analysis assumes, but does not concede, that those

20  amounts are at issue. Based on this it is my opinion that the reasonable and necessary fees that can

21  be awarded to Amazon are **$1,302,947.86** and, if they are of the sort deemed compensable by the

22  Court on an exceptional case theory, reasonable and necessary non-taxable costs are **$203,300.10**.

23  This will be developed in the following sections and supported by the eight exhibits.

24          **There are three discrepancies in the Amazon numbers**:

25          9.      *First*: In the columns on page one of Amazon's compilation of charts, entitled

26  "Fenwick & West LLP Time Accrued and Effective Rates by Category" (ECF 592-7) ("Time

27  Chart"), Amazon lists the "Effective Rate Before Final Discount" side by side with the "Effective

28  Rate With Final Discount" in ECF 592-7 and then it improperly uses the higher of the two rate

1   scenarios to compile the fees totals in the Breakdown of Categories in the eleven pages that follow

2   in the charts. Those total $6,987,341.17 for all categories using the higher rates. That is not the

3   $6,100,000.00 in fees they are seeking in their Motion.  This is a difference of **$887,341.17**.  I

4   have used the "Effective Rate With Final Discount" rates in my Exhibit 3 attached hereto to

5   calculate the face amount of fees for the nineteen categories in ECF 592-7, and that shows a total

6   of $6,099,998.61 in fees at line 342, so I believe that we are starting with the same numbers.

7       10.    ***Second***: There are 43 timekeepers who have time contained in the Fenwick

8   invoices found at ECF 592-5.  These timekeepers are listed by me in Exhibit 6 attached hereto.

9   Mr. Gregorian explains in ECF 592-1 at page 12 that $189,009.85 in fees and 556.3 hours of time

10  by 29 timekeepers[1] is excluded from the total they seek, but he does not say which timekeepers are

11  withdrawn, nor are the invoices marked to indicate which timekeepers are withdrawn.  Based on

12  my review of Fenwick's invoices, this exclusion is apparently what comprises the "Final

13  Discount" that results in the $6,100,000.00 in requested fees.  It appears, based on my review of

14  Mr. Gregorian's declaration that the client requested a thinning of the time by 43 timekeepers that

15  was included in the invoices as a write-off, not a discount (ECF 592-1 at p. 12).

16      11.    ***Third***: Mr. Gregorian provides a narrative summary of what kinds of tasks

17  Amazon is collecting in time and fees for each of the 19 categories in its Time Chart (ECF 592-7,

18  pp. 13-15).  However, there is no way to identify exactly which of the time descriptions in the

19  invoices are collected in many of the categories.  The "Case Management" category is a 2,143.3-

20  hour catchall for sixteen or more different tasks.  Such grouping is unusual in my experience and

21  seems contrary to the standing order in this case requiring itemization.

22      **Four kinds of adjustments are offered in this declaration:**

23      12.    There are four kinds of proposed adjustments in this declaration as summarized in

24  paragraph 19 below.  Once: Ten of the nineteen listed categories are not caused by work determined

25  to be "exceptional" by this Court, so that time and fees is not properly included; Two: Nine

26  specific categories are either included in full or modified to some extent for the reasons shown;

27  Three: There are also three kinds of concerns (discussed in paragraphs 61 *et seq.*) that apply across

28

---

[1] I could find only 27 that were excluded. *See* Exhibit 6.

1   the board to all the categories; and <u>Four</u>: The "non-taxable expenses" are not usually allowed

2   under Federal Circuit guidance for "exceptional" patent cases in my experience, but an analysis of

3   the proffered costs is shown in Exhibit 4 if the Court decides to consider them.

4   **<u>The Court's Order provides guidance in determining a lodestar</u>:**

5        13.     While I am not acting as an advocate, it is my understanding that the award of

6   attorneys' fees under 35 U.S.C. § 285 and applicable case law must be reasonable and could be

7   zero.  I have relied on current Federal Circuit, 9th Circuit, and Supreme Court precedent in

8   formulating my opinions herein. *See e.g. Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344

9   (Fed. Cir. 2001)); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("[t]he 'lodestar' figure

10  has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.")  *Welch v.*

11  *Met. Life Ins. Co*., 480 F.3d 942, 945–46 (9th Cir. 2007) (the party seeking fees bears the initial

12  burden of establishing the hours expended and must provide detailed time records of tasks

13  completed and time spent.) *Hensley v. Eckerhardt*, 461 U.S. at 433-34 (If "documentation of hours

14  is inadequate, the district court may reduce the award" and exclude excessive, redundant, or

15  unnecessary hours).

16       14.     I will recommend specific "hour-by-hour" cuts and also some percentage

17  reductions as this Court explained last year was permissible in a fee application in patent litigation:

18  
19         "[T]here are two means by which a court may determine whether the
20         number of hours is "reasonable." .... First, a court may conduct either an
       "hour-by-hour analysis of the fee request" and exclude those hours for
21         which it would be unreasonable to compensate the prevailing
       party....Second, "when faced with a massive fee application the district
22         court has the authority to make across-the-board percentage cuts either in
       the number of hours claimed or in the final lodestar figure as a practical
23         means of [excluding non-compensable hours] from a fee application." Id.
       (citation omitted). The Ninth Circuit has held that it makes no difference
24         in terms of the final amount to be awarded whether the court applies the
       percentage cut to the number of hours claimed, or to the lodestar figure.
25         Id. Consistent with this principle, the Court proceeds to analyze whether
       an across-the-board percentage cut should be applied to any category."

26  
27  *Phigenix Inc. v. Genentech Inc.* Case no.15-cv-01238-BLF, 2019 WL 2579260 (filed

28  06/24/2019).

**Issues addressed in this declaration:**

15.     The issues that I will address include applying this Court's Order explaining what is deemed "exceptional" and what is not; the lack of linkage between the Court-required charts and the Fenwick invoices; the much lower customary charges for similar litigation; the rates before the final discount; seeking time for work that was excepted from the "exceptional" determination; submitting a list of work done that is different from Amazon's Time Chart; "training" time for less-experienced lawyers; redacted descriptions of work; allocation for S3 case time and other time; the level and amount of staffing, duplication, overhead, and unnecessary time billed; excessive time billed for conferencing and meetings; excludable time billed, top-heavy billing for some tasks, relationship of fees on which Amazon prevailed, block billing, unclear or redacted time entries, "other agenda" issues and the "pending" status of the appeal.

**III.**
**MATERIAL SUBMITTED BY AMAZON**

16.     The Court's May 30, 2019 standing order re civil cases contains limits and requirements for many kinds of motions. The rule for motions for attorney's fee, Section VII reads in part: "The Court is primarily interested in the number of hours spent per task and per attorney, along with the effective billing rate associated with those hours. The total number of hours reflected in this chart must be identical to the number of hours set forth in the fees motion."

17.     Mr. Gregorian's declaration (ECF 592-7 pages 13:18 to 14:5) explains what types of work is included in each chart category. "Case Management" is a broad catchall category for about 16 kinds of work comprising 2,143.3 hours. He explained "Case Management's" makeup:

> "They include reviewing local rules and docket management (i.e. calendar management and drafting requests for extensions of time); initial court filings (i.e. notice of appearances, *pro hac vice* applications, and corporate disclosures/certificates of interest); drafting case management statements and attending case management conferences; and providing status updates to Amazon, Twitch, and each indemnified Amazon customer. These relate not only to the multidistrict litigation before this Court, but also to each of the six judicial districts in which PersonalWeb filed the customer lawsuits before consolidation, the proceedings before the JPML, and the appeal before the Federal Circuit. For drafting individual engagement letters (including investigating potential conflicts), litigation hold memoranda, and indemnification agreements, and advising on issues concerning service

(including service under the Hague Convention for non-U.S. entities) and case strategy. Case management also includes weekly interoffice conferences for the team of Fenwick attorneys and paralegals to assign pending tasks and discuss case strategy."

18.    There is no identifying mark or specific link identified between the time included in each chart category in Amazon's Time Chart and the work descriptions in the foundational Fenwick bills of 694 pages provided in ECF 592-5. The descriptions in the invoices are not labeled or marked as belonging to a particular category in the Time Chart. Because of this, I cannot precisely identify and correlate all of the work summarized in each of the 19 categories in Amazon's Time Chart to each of the 5,656 lines of "hour-by-hour" work descriptions that I gathered from Fenwick's invoices in ECF 592-5 and present in detail in my Exhibit 2. As such, I have relied on the submitted time in the categories in the Time Chart, and prepared a summary of the data shown on the Fenwick invoices in my Exhibit 8, which is a summary of the invoices (the "Invoice Summary"), for as many totals as I could, and to show how I arrived at the starting point/amount of $6,099,998.61 for fees, which Amazon "rounds up" to $6,100,000.00 as their fee request.

**The Exceptional and Not-Exceptional Categories:**

19.    Amazon presents a categories chart, the Time Chart (ECF 592-7), in an attempt to comply with the standing order that shows Amazon's requested hours in 19 categories of work. As is presented in PersonalWeb's brief, ten of the categories are for work listed that was **not** deemed "exceptional" by the Court.  Four are entirely within the scope. Five are only partly within that scope. Some of the work and time listed is objectionable for reasons that will be explained more fully below.

| Overview of claimed totals by listed category | | |
|---|---|---|
| Category (# timekeepers) | Hours submitted | Exceptional? |
| Fact Discovery (14 timekeepers) | 2,753.4 | Yes - only part is reasonable |
| Case Management (16 timekeepers) | 2,143.3 | Yes, in part |
| Expert Discovery (15 timekeepers) | 1,593.1 | Yes, in part |
| Summary Judgment on Claim Preclusion/Kessler Doctrine | 1,050.3 | Yes |

| Overview of claimed totals by listed category | | |
|---|---|---|
| Category (# timekeepers) | Hours submitted | Exceptional? |
| (13 timekeepers) | | |
| Claim Construction | 953.9 | No |
| (12 timekeepers) | | |
| Motions to compel | 554.3 | Yes - only part is reasonable |
| (13 timekeepers) | | |
| Motion for Preliminary Injunction | 454.3 | No |
| (10 timekeepers) | | |
| Investigate/Respond to PersonalWeb's Claims | 410.5 | Yes, in part |
| (13 timekeepers) | | |
| Summary Judgment for Non-Infringement | 370.1 | Yes, in part |
| (13 timekeepers) | | |
| Motion to Stay | 340.4 | No |
| (11 timekeepers) | | |
| Invalidity Contentions | 329.7 | No |
| (13 timekeepers) | | |
| Multidistrict Litigation | 296.8 | No |
| (11 timekeepers) | | |
| Federal Circuit Appeal | 271.1 | No |
| (10 timekeepers) | | |
| Motion for Judgment on the Pleadings | 263.9 | No |
| (13 timekeepers) | | |
| Declaratory Judgment Complaint. | 174.1 | Yes, in part |
| (10 timekeepers) | | |
| Infringement Contentions | 151.7 | No |
| (13 timekeepers) | | |
| PersonalWeb's Motion to Dismiss | 73.4 | Yes |
| (8 timekeepers) | | |
| PersonalWeb's Rule 54(b) motion | 25.8 | No |
| (8 timekeepers) | | |
| Damages Contentions | 22.7 | No |
| (4 timekeepers) | | |
| Totals (ECF 592-7 page 2) | 12,232.8 | |

20.    The Fenwick invoices submitted by Amazon in ECF 592-5 (and as shown in Exhibits 2 and 6) have work by 43 timekeepers from January 8, 2018 to January 31, 2020.  The total is 12,783.2 hours and a total face amount (*i.e.*, pre-discounted) of fees of $8,436,772.50 as totaled in Exhibit 6, and after the first discount, net fees of $7,176,351.02 (Exhibit 8 line 31). (There was apparently another "final" discount of about 13 percent[2] by removing 29 timekeepers).

---

[2] $6,099,998.61 / $6,987,341.17 = .873, so a 13% "final" discount.

1  It is not shown and cannot be determined exactly which of the line entries in the Fenwick invoices

2  is included in the Time Chart for category totals for each category, and what is not.  Exhibit 2 has

3  all the time and all the descriptions from the Fenwick invoices. Exhibit 2 applies a mathematical

4  factor of .85 (in Column G) to reach the net fees for each line of the spreadsheet although the face

5  amount of the discount varies by month from 0% to 17% (as shown in ECF 592-5), and this same

6  mathematical factor is applied in my Exhibit 8 invoice summary. In both, the total reflects a 15%

7  percent discount.

8       21.     The invoiced hours each month vary greatly from 2 hours to 1,791 hours as shown

9  in the invoices, Exhibit 8, and graphically by this hour per invoice chart:



**Objective data on costs and hourly rates for patent litigation:**

22.     The 12,783.2 hours and fees of $8,436,772.50 with 43 timekeepers and rates of up

to $1,120 per hour for a patent case that was resolved on motions is in my expert opinion multiple

times higher than I usually see and higher than what the AIPLA data showed to be usual.

23.     The Report of the Economic Survey by AIPLA and the Real Rate Report by

Wolters Kluwer have data that I have found to be accurate for charges and rates actually paid for

patent litigation. Relevant pages are collected in Exhibit 5 for AIPLA.



24.     The 2019 Report of the Economic Survey for AIPLA provides the above overall costs[3] data at page 58 for Non-Practicing Entities (NPE) with several amounts at risk.

25.     The same page lists the charges by phase for the initial case management, discovery, motions, claims construction, to trial and appeal as well as the cost of mediation for both sizes of NPE matters in all geographic areas:

**Thousands**

|  | 1st Quartile | 3rd Quartile | Median | Mean |  | 1st Quartile | 3rd Quartile | Median | Mean |
|---|---|---|---|---|---|---|---|---|---|
| **$10-$25 million at risk** |  |  |  |  | **More than $25 million at risk** |  |  |  |  |
| Initial case management | $63 | $250 | $125 | $143 | Initial case management | $99 | $400 | $200 | $242 |
| Incl, discovery, motions, claim constr | $613 | $2,000 | $1,500 | $1,375 | Incl, discovery, motions, claim constr | $1,000 | $3,000 | $2,500 | $2,064 |
| Incl, pre to post-trial, & appeal if app | $1,000 | $3,500 | $3,000 | $2,627 | Incl, pre to post-trial, & appeal if app | $1,250 | $5,000 | $4,500 | $3,476 |
| Cost of mediation | $50 | $150 | $90 | $101 | Cost of mediation | $50 | $150 | $100 | $118 |

These totals are set out in more detail in the attached pages I-144, I-145, I-162 and I-163 of the 2019 AIPLA Report in Exhibit 5.

## California Northern District Data for Non-practicing Entity Litigation:

26.     The last few iterations of the AIPLA reports have included information on the

---

[3] Total costs include legal and paralegal fees, local counsel fees, travel, court reporters, copies, courier services, exhibits, analytical testing, expert witnesses, translators, surveys, jury advisors and similar costs (AIPLA Report at page 50).

1  costs of defending claims by location for all matter and for NPE litigation. A comparison of pages

2  I-145, I-162 and I-163 shows that the average costs are about 27 percent lower for NPE matters.

3  ($4,000,000 Page I-145 vs. $2,900,000 Page I-163 for >$25M disputes).

4       27.    The NPE mean/average inclusive of discovery, motions and claim construction for

5  San Francisco is $1,625,000 for $10-$25 million at risk[4] (I-162) and $2,900,000 for more than $25

6  million at risk (I-163).

7       28.    Even the reduced Amazon request for 12,232.8 hours and $6,423,668.06 in fees

8  and costs is an outlier as it is a multiple of respectively either 3.95 times or 2.22 times this NPE

9  data and the litigation by Amazon may be "another agenda" or attorney "training" type of case in

10  which far too many timekeepers were billed and much more than objectively reasonable time is

11  presented for some unexplained reasons, but well beyond what is reasonable for the actual dispute.

12  The heavy staffing by forty-three timekeepers from several offices and weekly team meetings (by

13  as many as eleven timekeepers) and high rates for the standard (i.e., non-patent, less-technical

14  legal work) contributed to this disparity.

15       29.    Based on the data in my Exhibit 2 spreadsheet, with respect to the 12,783.2 hours

16  billed by Fenwick after the initial invoices were discounted, which amounts to $7,166,318.69 in

17  fees, as set forth "on the face of the invoices",  the hours and fees are allocated below over the

18  categories of timekeepers as follows:

| Category | Hours | Net Fees |
|---|---|---|
| Partner/Of Counsel | 4,298.4 | $3,167,502.13 |
| Associate/Staff/Summers | 7,487.3 | $3,651,170.39 |
| Paralegal/Others | 997.5 | $347,646.17 |

24  **Fees and rates by nineteen categories**:

25       30.    The submitted charts (ECF 592-7) have a column titled "Effective Rate With Final

26  Discount" with different rates for each of the nineteen categories. Here is a composite snippet from

27  the start and end of that chart:

28  ---

[4] AIPLA Report at page 11: "'At risk' refers to the financial impact of an adverse judgment."

**Time Accrued and Effective Rates by Category**

| OVERVIEW OF TOTALS | | | |
|---|---|---|---|
| Category | Total Billed Hours | Effective Rate Before Final Discount | Effective Rate With Final Discount |
| TOTALS | 12,232.8 | $6,987,341.17 | $6,100,000.00 |

31.    Since they show a total of $6,100,000.00 at page 2 of the chart and that is the request in the motion by Amazon, I have used those "Effective Rate With Final Discount" average rates to calculate the charges by category in my Exhibit 3 which has this summary by category:

| Category | Hours | Fees |
|---|---|---|
| Case Management | 2143.3 | $ 1,079,001.52 |
| Multidistrict Litigation | 296.8 | $ 145,613.05 |
| Investigate/Respond to Personal/Web's Complaints | 410.5 | $ 212,047.88 |
| Declaratory Judgment Complaint | 174.1 | $ 83,411.31 |
| PersonalWeb's Mot. To Dismiss | 73.4 | $ 33,813.91 |
| Mot. Stay Customer Suits | 340.4 | $ 151,668.62 |
| Mot. For Preminary Injunction | 454.3 | $ 219,985.69 |
| S.J. on Kessler/Claim Preclusion | 1050.3 | $ 592,831.33 |
| Mot. Judgment on Pleadings | 263.9 | $ 147,464.68 |
| Infringement Contentions | 151.7 | $ 72,896.40 |
| Invalidity Contentions | 329.7 | $ 139,924.68 |
| Damages Contention | 22.7 | $ 10,745.50 |
| Claim Construction | 953.9 | $ 520,714.93 |
| Fact Discovery | 2753.4 | $ 1,331,489.17 |
| Mot Compel / Discov. Disputes | 554.3 | $ 307,874.85 |
| Expert Discovery | 1593.1 | $ 687,311.13 |
| Non-Infringement Sum. Judg. | 370.1 | $ 213,777.16 |
| PW's Rule 54(b) Motion | 25.8 | $ 13,705.99 |
| Federal Circuit Appeal | 271.1 | $ 135,720.79 |
| | | |
| Totals for all 19 groups | 12232.8 | $ 6,099,998.61 |

32.    This is fully set out in Exhibit 3, which follows the same order of the categories used by Amazon.  The Time Chart submitted by Amazon has total fees by category on pages 2 to 12 of ECF 592-7 but they use the higher "Effective Rate Before Final Discount" to calculate those totals of $6,987,341.17. This is not helpful. It seems to be an error, or at least is misleading.  The "effective rate with final discount" is $887,342.56 less to reach fees of $6,099,998.61, an approximately 13% further "final discount.[5]" This is shown in Exhibit 8 at lines 31 to 35.

33.    The main timekeepers for each submitted category are the eight timekeepers (some of whom are the main timekeeper for more than one category) shown by a light-blue highlighting

---

[5] Mr. Gregorian at page 12, lines 12 to 23 of ECF 592-1.

in Exhibit 3 and are here sorted by that color and listed in the same order of the categories with the percentages of the time for each of the nineteen categories:

| Timekeeper | Hours | Rates | Fees | Level | Exp | % |
|---|---|---|---|---|---|---|
| Melanie Mayer | 514.8 | $ 503.43 | $ 259,165.76 | Partner | 15 | 24% |
| Saina S. Shamilov | 66.4 | $ 490.61 | $ 32,576.50 | Partner | 18 | 22% |
| Phillip Haack | 133.6 | $ 516.56 | $ 69,012.42 | Assoc | 10 | 33% |
| Todd Gregorian | 38.4 | $ 479.10 | $ 18,397.44 | Partner | 15 | 22% |
| Elizabeth Hagan | 27.1 | $ 460.68 | $ 12,484.43 | Assoc | 7 | 37% |
| Melanie Mayer | 87.4 | $ 445.56 | $ 38,941.94 | Partner | 15 | 26% |
| Phillip Haack | 86.2 | $ 484.23 | $ 41,740.63 | Assoc | 10 | 19% |
| Saina S. Shamilov | 202.9 | $ 564.44 | $ 114,524.88 | Partner | 18 | 19% |
| Todd Gregorian | 84.8 | $ 558.79 | $ 47,385.39 | Partner | 15 | 32% |
| T.J. Fox | 67.0 | $ 480.53 | $ 32,195.51 | Assoc | 2 | 44% |
| Phillip Haack | 118.1 | $ 424.40 | $ 50,121.64 | Assoc | 10 | 36% |
| Chieh Tung | 16.3 | $ 473.37 | $ 7,715.93 | Assoc | 3 | 72% |
| Phillip Haack | 305.3 | $ 545.88 | $ 166,657.16 | Assoc | 10 | 32% |
| T.J. Fox | 390.0 | $ 483.58 | $ 188,596.20 | Assoc | 2 | 14% |
| Melanie Mayer | 133.0 | $ 555.43 | $ 73,872.19 | Partner | 15 | 24% |
| Kwan Chan | 488.5 | $ 431.43 | $ 210,753.56 | Assoc | 13 | 31% |
| Saina S. Shamilov | 106.3 | $ 577.62 | $ 61,401.01 | Partner | 18 | 29% |
| Todd Gregorian | 8.8 | $ 531.24 | $ 4,674.91 | Partner | 15 | 34% |
| Todd Gregorian | 134.1 | $ 500.63 | $ 67,134.48 | Partner | 15 | 49% |

34.     Here are the requested hours and fees by the three categories of timekeepers according to the submitted charts (ECF 592-7 and Exhibit 3):

| Level | Hours | Fees |
|---|---|---|
| Partners | 4,298.4 | $2,171,190.62 |
| Associates | 6,936.9 | $3,436,644.31 |
| Paralegals | 997.5 | $492,163.68 |
| Totals | 12,232.8 | $6,099,998.61 |

35.     The four partners were heavily involved in case management, motions to compel, expert discovery and fact discovery that duplicated the work by the associates that I will explain in detail.  The chart of attendance at depositions (Exhibit 7), shows some staffing that appears to be for the education of less-experienced attorneys:

| Date | Deponent | Fenwick Attorneys |
|---|---|---|
| 2019-07-23 | Matthew Baldwin | Phillip Haack<br>TJ Fox<br>Jonathan Chai (summer associate)<br>Ryan Kwock (summer associate) |
| 2019-07-26 | James Richard | TJ Fox<br>Ravi Ranganath |
| 2019-08-09 | Kevin Lin | Shannon Turner<br>Eugene Marder (Twitch Senior Counsel) |
| 2019-08-22 | Kevin Bermeister | Ravi Ranganath<br>Todd Gregorian |

| Date | Deponent | Fenwick Attorneys |
|---|---|---|
| 2019-08-28 | Michael Comperda | Shannon Turner<br>Todd Gregorian<br>Eugene Marder (Twitch Senior Counsel) |
| 2019-09-06 | Bryan Keith Moore | Crystal Nwaneri<br>Shannon Turner |
| 2019-09-10 | David Farber | TJ Fox<br>Ravi Ranganath |
| 2019-10-01 | James Richard | TJ Fox<br>Todd Gregorian |

**Narrative of events shown in the Fenwick Invoices:**

36.    This table presents the major tasks performed by attorneys at Fenwick each month for legal services as set forth in Fenwick's invoices, which I believe aggregate all attorneys' fees in one billing to Amazon, versus being broken down by each individual defendant or action. The totals are taken from the data and descriptions that I read in the 694 pages of the Fenwick invoices (ECF 592-5):

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| Jan. 2018<br>$106,827.00 | 165.9<br>(2P/4A) | $106,827.00 | $00.00 | P.I. motion; Dec. Judg. Cplnt. |
| Feb<br>$162,328.62 | 283.6<br>(2P/8A/1Par) | $168,132.00<br>Less 5%<br>($8,406.60)<br>$159,725.40 | $2,603.22 | MDL strategy; Venue for Decl. Judg.; P.I.; Mot for stay; Mot. transfer |
| March<br>$396,240.89 | 703.2<br>(3P/7A/2Par) | $438,969.50<br>Less 10%<br>($43,896.95)<br>$395,072.55 | $1,168.34<br>($18.34 redacted) | MDL transfer; PHV; Motions for Stay; Lit hold; Jt. Rep/waiver; Licensing; Indemnification; Answer; FAC; MTD A's Dec. Rel. Complaint.; P.I. |
| March (2nd invoice)<br>$1,798.15 | 2.0<br>(1P/1Par) | $1,158.00<br>Less 10%<br>($115.80)<br>$1,042.20 | $755.95 | Mot to transfer; Enjoin defendants from litigating duplicative customer suits. |
| April<br>$330,068.09 | 582.4<br>(3P/6A/3Par) | $366,074.50<br>Less 10%<br>($36,607.45)<br>$329,467.05 | $601.04 | Opp. MDL transfer; Mot. Enjoin Dup. Customer Suits; Motions for Stay; P.I (ECF 42); MTD (ECF43); Ct. Hearing (4/27 – 6 attys); |
| April (expert only) | ?? | | $9,800.00 | Invoice for Expert Prashant Shenoy for April services (no |

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| $9,800.00 | | | | detail) |
| May $135,080.17 | 249.6 (3P/7A/2Par) | $158,756.50 Less 15% ($23.813.48) $134,943.03 | $137.15 | Oppose MTD FAC; engagement letters; indemnification; Motions to stay; Engage experts; Stipulation re stay; MDL hearing (Chicago-5/31). |
| June $70,547.80 | 134.8 (3P/5A) | $82,680.50 Less 15% ($12,402.08) $70,278.42 | $269.38 (N/C for WL) | Engagement letters; Amended complaints; MDL transfer order to Cal. N. Dist.; MTD PW's counterclaims; Protective order; revise answer to counterclaims; CMC related; |
| July $30,200.11 | 48.1 (1P/5A) | $30,002.50 No discount | $197.61 | CMC related; Stay Stip; customer inquiries; |
| August $115,312.00 | 188.7 (3P/7A/1Spt.) | $115,312.00 No Discount | $0.00 | Confer w/ Amazon customers; Review new customer cases; conflicts related; scheduling; joint defense group related; "tag along cases" related; indemnity related; joint CMC statement; litigation holds; M&C w/ PW |
| September $319,336.73 | 520.9 (3P/7A/2para) | $318,443.00 No Discount | $893.73 | Draft joint CMC statement; Rev Rule 12(c) and SJ motions; corporate disclosure statements; IPR and prior art related; infringement analysis; expert report related; CMC (filed 9/13); CMC on 9/20 (6 attys); review dockets on new matters; (ECF 69 – Ordr term. P.I mot and term. motions for stay); Technical tutorial; |
| October $348,287.45 | 592.7 (3P/8A/2para /4 tech) | $417,006.00 Less 17% discount ($70,891.02) $346,114.98 | $2,172.47 ($450.00 redacted) | Indemnity and customer inquiries related; prior art search; expert related; 10/3 Team meeting (11 timekeepers); Amended complaints related; Discovery requests; Technical tutorial; 10/9 Team meeting (5 timekeepers); Answer to amended counterclaims; Protective order; Discovery objections; Initial disclosures; 10/16 team meeting (9 |

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| | | | | timekeepers); IPR related; experts related; 10/23 team meeting (10 timekeepers); CMC statement;  Tutorial; RFA; Rogs; Docs; 10/30 team meeting (8 timekeepers). |
| November $504,930.86 | 868.2 (3P/9A/3para /3tech) | $592,031.00 Less 17% ($100,645.27) $491,385.73 | $13,545.13 Tutorial vendor Miraviz Trial Consultants $10,538.14 ($977.01 redacted) | Doc production; Tutorial presented at CMC on 11/2 (6 attorneys); res. on claim preclusion/Kessler; MSJ claim preclusion related; 11/6 team meeting (8 attys); claim preclusion; ESI order;  11/13 team meeting (8 attys); court hearing on MSJ 11/14; prep for meet & confer; 11/20 team meeting (5 attys); MSJ filed 11/28; motions under seal related; Doc production; 11/29 team meeting (8 attys); chart prior art; discov. dispute related. |
| December $349,565.54 | 626.9 (3P/9A/2para /3tech) | $417,716.50 Less 17% ($71,011.81) $346,704.69) | $2,860.85 $47.89 redacted for 2 disbursemen ts NOTE: Flat fee for data hosting is a bit higher than the $40/GB/mo. available | Review docs; Seattle deposition of [REDACTED] (12/3; discovery dispute; claim preclusion motion; defend depo of [REDACTED] 12/4; invalidity charts; sanctions related; discovery motion to compel; motion to seal; motion to transfer; defend Seattle depo of [REDACTED] 12/21 re indemnification; 12/18 team meeting (6 attys); Obj to RPD; invalidity contentions; |
| December #2 $10,863.45 | 4.1 (1P) | $4,305.00 Less 17% ($731.85) $3,573.15 | $7,290.30 REDACTE D transcript $2,740.30; Expert Prashant Shenoy $4,550.00 | Review of counter-claim and claim preclusion cases. No detail for expert services. |
| Jan. 2019 $425,722.05 | 670.9 (4P/8A/3Para /2tech) | $508,002.50 Less 17% ($86,360.43) | $4,079.98 | Issue preclusion; Kessler motion; Reply for MSJ; infringement contentions/claims |

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| | | $421,642.07 | | construction; RFAs; Rogs; indemnification; brief sealing; litigation holds; Reply on MTD; 1/22 team meeting (4 attys); redactions; preliminary constructions; 1/29 team meeting (8 attys); hearing prep |
| Feb $251,942.53 | 401.9 (3P/8A/2Para /2 tech) | $301,908.50 Less 17% ($51,324.45) $250,584.05 | $1,358.48 | Invalidity related; hearing prep; hearing continuance; 2/5 team meeting (9 attys); document collection and production; licensing agreement; source code related; 2/12 team meeting (10 attys); redact brief; David Wier depo related including protective order; 2/19 team meeting (9 attys) Doc production concerns; Rogs; Hearing prep.; claim and related IPRs; 2/26 team meeting (9 attys); attend hearing 2/28 (7 attys, in MDL matter 18-md-02834). |
| March $287,112.65 | 515.4 (3P/8A/4 para) | $343,988.50 Less 17% ($58,478.05) $285,510.45 | $1,602.20 $19.00 redacted | Level 3/CloudFront related; Discovery response; Rogs; AZ financial data; PHV; meet & confer re claims construction; 3/5 team meeting (8 attys); MJOP; joint claims construction statement; Daubert search; 3/12 team meeting (5 attys); Level 3 related; 3/19 team meeting (10 attys); collect & review docs; meet & confer re docs and Rogs; CC brief; 3/26 team meeting (8 attys); licensing chart |
| April $384,788.66 | 627.9 (3P/8A/5para /2 tech) | $462,902.00 Less 17% ($78,693.34) $384,208.66 | $580.00 Note: 19.75 GB hosting at flat fee is better now. | AZ production vols 10 & 11; Rogs to Twitch; 4/2 team meeting (8 attys); Opening claims construction brief; MJOP; tutorial; MTD; 4/9 team meeting (9 attys); Cloudfront claims; review wrappers; MTC discovery; CC brief; 4/16 team meeting (6 attys); Rogs; source |

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| | | | | code related; 4/23 team meeting (7 attys); Tutorial; 4/30 team meeting (10 attys). |
| May $295,634.76 | 432.9 (3P/8A/1SA/2para/2 tech) | $320,572.00 Less 17% ($54,497.24) $266,074.76 | $29,560.00 Tutorial demonstratives $19,815.16 5/24 Markman $9,036.17 | CC tutorial to Bd. (5/2); CC hearing related; 5/7 team meeting (11 attys);  MJOP; 5/14 team meeting (9 attys); Markman slides and prep.; Protective order; Kessler appeal; 5/21 team meeting (6 attys); Markman hearing (5/24); 5/28 team meeting (10 attys); appeal related; Twitch docs.; mot intervene. |
| June $276,267.80 | 520.3 (3P/8A/1staff /1Summer/ 3para/3tech) | $331,572.50 Less 17% ($56,367.33) $275,205.17 | $1,062.63 | Appeal Intervene motion; docs prod.; engagement letters; 6/11 team meeting (10 attys); MJOP; 6/18 team meeting (8 attys); Opp. amend infringement contentions; Obj to docs req.; Inventor discovery; 6/25 team meeting (9 attys); obj. discovery; damages res.; expert report; meet & confer; |
| July $616,906.96 | 1,179.6 (3P/7A/1SC/ 2Staff/4sum mers/6para/3 tech) | $740,841.00 Less 17.6% ($130,551.16 6) $610,289.84 | $6,617.12 | Rogs to Twitch obj; ID hot docs; expert report; 7/2 team meeting (8 attys); mot. Amend infringement related; prior art consultants; meet & confer (7/8); 7/9 team meeting (6 attys); Rog responses; MTC; prepare for depo of [redacted]; 7/16 team meeting (5 attys); meet & confer 7/17; defend depo of [REDACTED] on 7/23 (2 attys); 7/23 team meeting (6 atty); Motion hearing (7/24); Ct conference (7/25); defend depo of [redacted] on 7/25 (3 attys); defend depo of [redacted] on 7/26 (2 attys); 7/30 team meeting (7 attys) |
| August | 1,790.8 | $1,040,214.50 | $22,961.55 | Expert report related; discovery |

---

[6] Discounted percentages and amounts are those shown on the face of invoices. The overall discount is 15% for all fees. I understand that an additional discount of about 13% was also provided.

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| $886,339.58 | (3P/8A/4SA/1Summer/6para/3tech) | Less 17.0% ($176,836.47) $863,378.03 | 5 redacted items | motions; defend depo of [redacted] 8/1; Review docs; 8/6 team meeting (8 attys); Hearing on discovery (8/7); Weissman invalidity report; outbound docs; IPRs related; 8/13 team meeting (7 attys); Claims Construction Order (8/16) construing claims in 4 patents; rev PW docs; 8/20 team meeting (7 attys);; 8/26 depo D. Weir; 8/27 depo K. Burmeister; defend M. Comperda depo (2attys) (8/28); 8/28 depo S. Turner; 8/29 team meeting (3 attys); Opp. Mot clarify |
| September $555,298.47 | 94.9 (3P/1OC/8A/1SA/3para/3tech) | $636,341.00 Less 17% ($108,177.97) $528,163.03 | $27,135.44 2 redacted items | MTQ; Opp CC clarification mot; David Farber depo (9/10) related; magistrate hearing (3 attys) (9/3); 9/3 team meeting (7 attys); depo Level 3 (9/5); defend depo of [redacted] (2 attys) 9/6; expert reports; 9/10 team meeting (6 attys); Burmeister depo (9/10); (Discovery hearing ( (9/10; CMC (9/4); 9/17 team meeting (8 attys); expert depos related; MSJ related; Kessler appellate briefs; 9/23 team meeting (6 attys); |
| October $293,626.48 | 357.5 (3P/8A/1SA/2para/1tech) | $264,302.00 Less 17.0% ($44,931.34) $219,370.66 | $74,255.82 OSKR: $20,580.00 OSKR: $43,271.25 Note: data hosting to $10/GB | Defend depo of [Redacted] 10/1(2 attys); MSJ; Mot Entry Judg; Cloud Front Hearing (10/3) (3 attys); expert depo related; sealing; Daubert re McClory; opp R54 mot; appeal brief. Note: no "team meetings" |
| November $370,607.20 | 357.4 (4P/7A/1para) | $257,351.00 Less 17.0 % ($43,749.67) $213,601.33 | $157,005.87 Expert Jon Weissman $148,962.21 | Reply briefs; appeal brief; Daubert mot re Tregellis; prepare for and attend MSJ hearing (11/14) (3attys); depo of [redacted] (11/14; Kessler appeal brief; |

| $ Month /Total (Worked dates) | Hours (Billers) | Invoiced Fees | Costs | Tasks |
|---|---|---|---|---|
| December $6,926.65 | 10.5 (2P/3A/1para) | $6,974.50 Less 17.0% ($1,185.67) $5,788.83 | $1,137.82 One redacted item | Appellate record related; Sealing order; |
| Jan. 2020 $4,402.51 | 6.1 (2P/3A/2para) | $4,388.50 Less 17.0% ($746.05) $3,642.45 | $760.06 | Daubert hearing; PW reply brief; hearing off calendar related; |
| Feb. 2020 | | | | Final judgment |
| March 2020 | | | | Appeal; Fees motion |
| April 2020 | | | | CMC (4/16) |

### Next Steps in the Analysis:

37.     As listed above at paragraph 19, and in detail in the brief, ten of the chart's categories are not properly included in the "exceptional case" scope. Some of the requested time in some categories should also be removed for other reasons. I will now go through certain of the categories and then present a table in paragraph 48 with the amounts that are connected to the finding of "exceptional case" and then in paragraphs 49 to 54 present some general comments about some problems that should, in my expert opinion, reduce the otherwise potentially awardable fees further and reach my opinion for totals.

### The Categories Analysis Narrative:

38.     **Case management**. Amazon/Twitch seek a total of 2,143.3 hours in this category, totaling $1,079,001.52 in fees using the listed "Effective Rate With Final Discount." (ECF 592-7 and as calculated in Exhibit 3.). Using the Exhibit 2 spreadsheet and the search ability of Excel applied to the provided descriptions, here is a table with the time and fees for the listed work in "case management" as well as the time for conferencing, redacted and block-billed time scattered though all categories. Here is what is listed in Case Management:

| Tasks - said to be in Case Management | Hours | Fees at invoice Face rates | Fees *calculated* after 15% and then 13% discounts |
|---|---|---|---|
| Dockets | 205.9 | $149,955.50 | $110,892.10 |
| Calendar management | 25.6 | $13,626.00 | $10,076.43 |

| Tasks - said to be in Case Management | Hours | Fees at invoice Face rates | Fees *calculated* after 15% and then 13% discounts |
|---|---|---|---|
| Local rules | 31.0 | $17,489.50 | $12,933.49 |
| Extensions of time | 61.5 | $43,304.00 | $32,023.31 |
| Notices of appearances | 121.5 | $77,714.50 | $57,469.87 |
| *Pro Hac Vice* related | 14.9 | $10,422.00 | $7,707.07 |
| Corporate Disclosures | 255.8 | $136,164.50 | $100,693.65 |
| Certificates of interest | 54.4 | $38,959.00 | $28,810.18 |
| Case management statements | 189.8 | $119,833.50 | $88,616.87 |
| Case management conference - meetings and attendance | 100.7 | $86,006.00 | $63,601.44 |
| Status updates to Amazon, Twitch and Customers | 428.8 | $291,545.00 | $215,597.53 |
| Engagement letters | 415.0 | $267,809.50 | $198,045.13 |
| Potential conflicts related | 25.6 | $15,978.00 | $11,815.73 |
| Litigation holds | 123.0 | $68,584.00 | $50,717.87 |
| Indemnification agreements | 255.3 | $173,420.00 | $128,244.90 |
| Service issues (+Hague) | 262.5 | $167,013.00 | $123,506.11 |
| All groups - in Ex. 2: | | Fees at face rates: | Discounted: |
| Weekly team meetings / conferences / notes | **1,860.3** | $1,411,880.00 | $1,044,085.26 |
| Redacted in part | **809.6** | $590,847.00 | $436,931.36 |
| Block billed in part | **4,532.9** | $3,231,194.00 | $2,389,467.96 |

39.     The first 16 specific tasks listed above for this case management category are those specified by Mr. Gregorian and quoted above at paragraph 17.  I also calculated the time for three other concerns in the last three categories. Some of these hours are excessive, particularly the incessant conferencing/ team meetings and notes that are contained in this category.  While time by 29 timekeepers is said to have been removed from the charts at Amazon's request, I can only find 27 that were removed (names shown in Exhibit 6). Even if the time has been withdrawn, all 43 timekeepers were present and that added to the conferencing and training time that still remains

for the four partners, ten associates and two paralegals.  There are also concerns raised by

redactions and continuous block billing (by many but not all) that occurs throughout the history of

this litigation, NOT just in this category. The total for the meetings is 15% of the total time. That

is very high. Some sort of adjustment for reasonableness is necessary. There is also an allocation

issue for what is, and what is not, time for the "exceptional" aspects.

40.    Given the **7,202.8** hours of time for the team meetings, redacted descriptions and

block billing, some adjustment to address these concerns needs to be done.  Unfortunately, this

cannot be done with hour-by-hour precision due to Amazon's failure to explain exactly which of

the invoice entries are collected in the Case Management Category and which is somewhere else.

Not all of the time and fees collected in Case Management was caused by or related to the

"exceptional case" but is spread throughout the matter.

41.    Applying the "percentage cut" used in *Phigeniz*, *supra,* at paragraph 14, would be

a good alternative.  Because the overall time is so high, the number of timekeepers is enormous,

and team meetings are so incessant, a 75% adjustment to the requested 2,143.3 hours and fees of

$1,079,001.52 would be an adjustment allowing fees of $269,750.38 and 535.83 hours of time for

Case Management.

42.    **Investigate/Respond to PersonalWeb's Claims.**  410.5 hours are sought, totaling

$212,047.88. (ECF 592-7 and Exhibit 3.)  A review of Amazon's attorney invoices (ECF 592-5

and my Exhibit 2) reveals that Amazon/Twitch spent 84.4 hours and $56,402.50 in fees at face

rates or $41,709.65 at the chain discounted rates, investigating and responding to PersonalWeb's

S3 claims.  Those are identified by an "I" place in column I of the Exhibit 3.  These total the 84.4

hours and fees of $41,709.65 that should fairly be included in this category.

43.    **Summary Judgment on Claim Preclusion/Kessler Doctrine**.  A total of 1,050.3

hours totaling $592,831.33 in fees is sought. (ECF 592-7 and Exhibit 3.)  These fees should be

included in Amazon/Twitch's attorneys' fee award, but only up to the appeal work.

44.    **Fact Discovery**.  Amazon/Twitch request a total of 2,753.4 hours in this category,

totaling $1,331,489.17 in fees. (ECF 592-7.) After the March 13, 2019 order granting in part

Amazon's motion for summary judgment on claim preclusion/Kessler, Fact Discovery did **not**

relate to S3. (Order, 14:25-15:3.)  However, because of the lack of provided specificity of the time in this category, I cannot make an "hour-by hour," line-by-line calculation to exclude non-S3 discovery. Since the S3 claims were not a pervasive part of the fact discovery matter, and because description like "team meeting" are not adequate, redactions obscure what was done, and extensive block billing avoids precise evaluations, an across-the-board cut of 75% would be appropriate. This would result in a fee award to Amazon/Twitch of $332,872.29 for 688.35 hours in this category.

45.    **Discovery Disputes/Motions to Compel**.  Amazon/Twitch request a total of 554.3 hours in this category, totaling $307,874.85 in fees. (ECF 592-7 and Exhibit 3.)  The fees in this category should be handled in the same way as those sought in the Fact Discovery category resulting in a 75% reduction because of the relative paucity of the S3 time.  Applying the same adjustment would result in a fee award to Amazon/Twitch of $76,968.71 for 138.58 hours in this category.

46.    **Expert Discovery**. Amazon/Twitch request a total of 1,593.1 hours in this category, totaling $687,311.13 in fees. (ECF 592-7 and Exhibit 3.)  The Court only award Expert Discovery fees incurred after the August 16, 2019 Claim Construction Order relating to Mr. de la Iglesia, and the time for rebuttal (excluding any expert witness fees).  This would result in a fee award to Amazon/Twitch of $102,275.85 in discounted fees for 210.6 hours in this category as identified by the letters "Ig" and "R" in column K of Exhibit 2.

47.    **Summary Judgment for Non-Infringement.**  Amazon and Twitch seek a total of 370.1 hours in this category, totaling $213,777.16 in fees. (ECF 592-7 and Exhibit 3.) Amazon/Twitch should be granted all of the fees sought in this category, **except** for approximately 25% of the time and fees which are associated with the new grounds of non-infringement. (Order, 22:10-17). Removing those fees would result in a fee award to Amazon/Twitch of the remainder of fees of $160,332.87 for 277.6 hours in this category.

**<u>Summary of the fees for Nine Categories for which some or all the fees are appropriate</u>:**

48.    The below table contains a summary and quantification of fees for each of the nine categories where some or all of the fees are attributable to the exceptional finding:

| Category entirely or partly within "exceptional" scope | Allowable Hours | Allowable Fees |
|---|---|---|
| Case Management | 535.83 | $269,750.38 |
| Investigate/respond to S3 complaints | 84.4 | $41,709.65 |
| Declaratory Judgment | 87.05 | $41,705.66 |
| PersonalWeb's Motion to Dismiss | 73.4 | $33,813.91 |
| S.J. on Kessler/Claim Preclusion | 1,050.3 | $592,831.33 |
| Fact Discovery | 668.35 | $332,872.29 |
| Discovery Disputes | 138.5 | $76,968.71 |
| Expert Discovery | 210.6 | $102,275.85 |
| Summary Judgment non-infringement | 277.6 | $160,332.87 |
| Preliminary Balances | 3,126.03 | $1,652,260.65 |

## IV.
## THE AMOUNT OF FEES FOR THE CATEGORIES OF CLAIMS AND CONDUCT FOUND EXCEPTIONAL ARE UNREASONABLE.

49.     Within the above 3,126.03 hours and fees of $1,652,260.65 in the nine categories of claims and conduct found to be exceptional in whole or in part, Amazon seeks an unreasonable amount of attorneys' fees. Exhibit 2 (column L) shows 809.6 hours of redacted time, and word searches show 4,532.9 hours of block billed time and Exhibit 2 (column J) shows 1,860.3 hours for meetings, conferences and note. That includes some time for reimbursement for fees incurred to train mid-level and junior attorneys, for multiple attorneys' attendance at depositions, for the attendance of numerous attorneys at the same internal meetings, and for discovery work that is mostly for issues other than S3 and was performed by partners that usually is and could have been performed by associates.  Further adjustments should be made for those reasons.

50.     Amazon seeks $1,331,489.17 for 2,753.4 hours spent for 4 partners and 10 associates preparing for, taking, and defending depositions, a number derived from Amazon's general "Fact Discovery" category.  Exhibit 7 lists the staffing at the 15 noticed depositions in this case. The Court should reduce the fees requested for depositions by 10% to account for this

1   duplicative staffing, which is 275.3 hours and fees of $133,148.92 to account for excessive,

2   duplicative, or training time.

3           51.     The time that is wholly or partly redacted is 809.6 hours (shown by an "R" in

4   Exhibit 2, column L) and some of that is for discovery. Much of the time for fact discovery is

5   block billed and much time is billed for the many meetings. A reduction in this category is

6   appropriate.

7           52.     A further reduction should be made in the Fact Discovery category due to the high

8   amount of hours billed in this category by four high-hourly rate partners (Hadden-$1,120 per hour,

9   Shamilov- $950 per hour, Mayer $900 per hour and then-associate, now partner Gregorian- $795

10  per hour), who together account for 602.3 hours and fees of $291,260.23 in Exhibit 3 lines 234 to

11  237.– Partner Melanie Mayer was the highest billing attorney in the Fact Discovery category.  The

12  Court should therefore reduce the total 462.2 hours and $223,510.68 in fees for these two, (from

13  Exhibit 3 lines 235 and 236, columns "C" and "E") by 50% for a reduction of 231.1 hours and a

14  reduction of fees of $111,755.34.

15          53.     A review of Amazon invoices reveals that they seek $1,044,085.26 in the double

16  discounted (less 15% and then less $13%) for 1,860.30 hours spent on internal meetings, memos

17  and calls.  Those are marked with the letter "T" in column "J" of Exhibit 2. Amazon's own bills

18  demonstrate that each attorney on the team—a total of 19 timekeepers—billed for his or her

19  attendance at conferences. Since Amazon's requested hours for meetings and calls is unreasonably

20  duplicative and has only been partly addressed in the various categories, I propose a further 10%

21  reduction, of 186.03 hours and fees of $104,408.53.

22          **Summary of the general reductions:**

23          54.     While Amazon provided charts generally listing 19 categories of fees expended, it

24  failed to provide the necessary specificity to allow PersonalWeb to ascertain what was really being

25  requested. Here is a table that shows the proposed reductions from the preliminary balance for

26  hours and fees shown in the table in paragraph 48:

|                     | Hours    | Fees           | Paragraph |
|---------------------|----------|----------------|-----------|
| Preliminary balance | 3,126.03 | $1,652,260.65  | 70        |

| | Hours | Fees | Paragraph |
|---|---|---|---|
| Less: | | | |
| Training time | (275.3) | ($133,148.92) | 73 |
| Top-Heavy - Apportioned | (231.1) | ($111,755.34) | 72 to 75 |
| Incessant conferences | (186.03) | ($104,408.53) | 76 |
| Balance | 2,433.6 | $1,302,947.86 | |

55.     This results in reasonable fees of **$1,302,947.86** for **2,433.6** hours of work that is tied to the exceptional aspects of this patent litigation in my opinion.

## V.
## COSTS:

56.     A total of $370,412.14 is listed - but some of that is marked "BOC" by Amazon indicting that they were also shown on the Bill of Costs and are not now sought.  Some are for experts that did not do work that was within the "exceptional case" ambit.  Some have only a fully-redacted description.  They are all shown and marked as acceptable or not in Exhibit 4.  The balance of $203,300.10 in typical patent litigation costs might be reasonable, although these non-statutory expenses are not usually shifted under the "exceptional case" theory in patent litigation.

## VI.
## CONCLUSION

57.     It is my opinion that the total of reasonable fees for the legal work to the date of the motion filing that is for the "exceptional case" portion of this litigation is $1,302,947.86.

58.     If the Court allows these kinds of items, reasonable costs total $203,300.10.

59.     The total of reasonable fees and costs is $1,506,247.36 for the legal work presented that falls within the aspects of what this Court has deemed to be an "exceptional" case.

I declare under penalty of perjury according to the laws of the United States of America that the forgoing is true and correct.

Dated this 30th day of October 2020 at Pasadena, California

_____
Gerald G. Knapton