TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
CHRISTOPHER S. LAVIN (CSB No. 301702)
clavin@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MICHAEL J. BARATZ (*PHV*)
mbaratz@steptoe.com
EMMA S. MARSHAK (*PHV*)
emarshak@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202.288.8106
Facsimile: 202.261.0557

Counsel for AMAZON.COM, INC.,
AMAZON WEB SERVICES INC., and
TWITCH INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION, | Case No. 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.,<br>Plaintiffs,<br>v.<br>PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br>Defendants. | Case No. 5:18-cv-00767-BLF<br><br>Case No. 5:18-cv-05619-BLF<br><br>**DECLARATION OF TODD R. GREGORIAN IN SUPPORT OF THE FURTHER SUPPLEMENTAL FEES REQUEST OF AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.** |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br>Plaintiffs,<br>v.<br>TWITCH INTERACTIVE, INC.,<br>Defendant. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW

I, Todd R. Gregorian, declare as follows:

1. I am a partner at the law firm Fenwick & West, LLP, attorneys of record for Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively "Amazon"). I make this declaration in support of Amazon's further request for supplemental fees under 35 U.S.C. § 285. The supplemental fees include the appeal fees that the Court denied without prejudice in its April 19, 2021 Order (Dkt. 656); as well as fees that Amazon has incurred since the date of its last submission. (Dkt. 853.) I have personal knowledge of the facts set forth herein.

**Amazon's and Twitch's Legal Team and Hourly Rates**

2. Fenwick & West LLP is a firm of approximately 500 attorneys which specializes in providing legal services for leading technology companies, start-ups, and others on the edge of innovation. Fenwick enjoys a reputation as one of the preeminent technology and intellectual property firms in the United States. I am a partner at Fenwick & West and have been a practicing attorney for over 18 years, specializing in intellectual property litigation.

3. A number of attorneys and paralegal staff performed significant work on this matter over the two years since Amazon's last fee request. As detailed below, the hourly rates charged by the attorneys who worked on this matter are consistent with the prevailing market rates for attorneys with comparable skill, qualifications, experience, and reputations. The hourly rates charged by the paralegals are also consistent with the prevailing market rates for paralegals with comparable skill, qualifications, and experience. The labor of these individuals contributed to the final attorney work product billed to the client.

4. Fenwick regularly adjusts its rates to keep pace with the markets in which it works. The 2021 and 2022 billing rates reported below reflect pre-invoice discounts from Fenwick's then-current market rates, as well as a percentage discount that Amazon receives on its monthly invoices for this matter. (*See* Dkt. 649, ¶8.)

5. To ensure the reasonableness of the lodestar figure, Amazon has taken the following approach. For timekeepers whose rates the Court reviewed as part of a previous fee request, Amazon is requesting reimbursement for time at the rates that the Court *has already approved* for the 2018-2020 time period. For timekeepers who joined the matter during 2021-2023, Amazon is

requesting reimbursement for time at their *2021 discounted rates*. The result is that Amazon's supplemental fee request is substantially lower than the full amount it reasonably incurred.

6. The Fenwick attorneys and paralegals who worked more than a nominal amount on this matter were previously identified in the Declaration of Todd R. Gregorian in Support of Motion of Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc., for Attorney Fees and Costs (Dkt. 592-1 at 1-5) or, for new timekeepers, are identified below along with a summary of their experience and qualifications. Additionally, copies of the attorneys' biographies as they appear on the Fenwick website and in Fenwick's marketing materials, including lists of representative engagements, are attached as **Exhibit 1**.

a. **Matthew Becker**: Mr. Becker, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2013. Mr. Becker's rate on this matter was $743 per hour for all work performed in 2021, $818 per hour for all work performed in 2022, and $1,075 per hour for all work performed in 2023. Mr. Becker's responsibilities on this case included legal research, appellate work, and motion practice.

b. **Christopher Lavin**: Mr. Lavin, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2014. Mr. Lavin's rate on this matter was $743 per hour for all work performed in 2021, $818 per hour for all work performed in 2022, and $1,075 for all work performed in 2023. Mr. Lavin's responsibilities on this case included case management, legal research, motion practice, appellate work, and fact discovery.

c. **Deena Feit**: Ms. Feit, a litigation associate at Fenwick, is a member in good standing with the bars of the Commonwealth of Massachusetts and Washington State and has practiced intellectual property litigation in the State of Washington since 2022. Ms. Feit's rate on this matter was $714 per hour for all work performed in 2021, $805 per hour for all work performed in 2022, and $1,075 per hour for all work performed in 2023. Ms. Feit's responsibilities on this case included legal research, appellate work, and case management.

d. **Wenbo Zhang:** Ms. Zhang, a litigation associate at Fenwick, is a member in good standing with the New York and Washington State Bars and has practiced intellectual property litigation in the State of New York since 2018, and in the State of Washington since 2022. Ms. Zhang's rate on this matter was $623 per hour for all work performed in 2021, $743 per hour for all work performed in 2022, and $1,030 per hour for all work performed in 2023. Ms. Zhang's responsibilities on this case included case management, legal research, motion practice, and fact discovery.

e. **Su Li:** Ms. Li, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2020. Ms. Li's rate on this matter was $419 per hour for all work performed in 2021, $461 per hour for all work performed in 2022, and $735 per hour for all work performed in 2023. Ms. Li's responsibilities on this case included legal research and motion practice.

f. **Alyssa Crooke**: Alyssa Crooke, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2021. Ms. Crooke's rate on this matter was $419 per hour for all work performed in 2021, $461 per hour for all work performed in 2022, and $735 per hour for all work performed in 2023. Ms. Crooke's responsibilities on this case included legal research, motion practice, and fact discovery.

g. **Adrian Rios:** Mr. Rios, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2021. Mr. Rios' rate on this matter was $419 per hour for all work performed in 2021, $461 per hour for all work performed in 2022, and $735 per hour for all work performed in 2023. Mr. Rios' responsibilities on this case included legal research and motion practice.

h. **Michelle Waziri**: Ms. Waziri, a staff attorney at Fenwick, is a member in good standing with the California State Bar and has practiced commercial complex litigation in the State of California since 2006. Ms. Waziri's rate on this matter was $361 per hour for all work

performed in 2021, $324 per hour for all work performed in 2022, and $560 per hour for all work performed in 2023. Ms. Waziri's responsibilities on this case included fact discovery.

7. As PersonalWeb was frustrating execution on the Court's judgment and then entered receivership, Amazon retained the services of counsel specializing in judgment enforcement, namely Steptoe & Johnson LLP. When PersonalWeb appealed the Court's order on the *Kessler* doctrine to the Supreme Court, Amazon retained the services of counsel specializing in Supreme Court practice, namely Paul Hastings LLP. Details about these firms and the timekeepers who worked on the matter are provided in additional declarations submitted herewith.

**Billing Rates and Timekeepers for the Further Supplemental Fee Request**

8. Amazon below submits a chart listing the timekeepers for this matter, comprising (i) original timekeepers, who billed in this matter between 2018-2021 and whose billing rates were previously submitted to—and approved by—the Court, and (b) new timekeepers, who have not previously billed to this matter between 2018-2021 and whose billing rates have not been previously submitted to the Court.

9. As discussed above, for any original timekeepers, Amazon has used the same billing rate that the Court has previously approved for them in the prior fees submission, even though the billing rates for each original timekeeper has in fact increased year-over-year through the current year 2023. For any new timekeepers, Amazon has used their 2021 discounted billing rate for any hours billed in 2022 or 2023, even though the billing rates for each new timekeeper has increased year-over-year through the current year 2023.

10. The result of this adjustment to the billing rates for both original timekeepers and new timekeepers is that the total amount of fees that Amazon requests is less than what Amazon actually paid or was billed for the work and, thus, the calculations of fees are conservative.

11. In addition to adjusting the billing rates, Amazon has adjusted the timekeepers for which it is seeking fees. Amazon is not seeking fees for any timekeepers that billed less than 30 hours during the 2021-2023 period, further making the calculations of its requested fees conservative. This adjustment eliminated 30 timekeepers billing 175.9 hours for a total of **$117,039.78**.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Billing Attorney | Hours Billed on Matter Excluding Fees Appeal (March 2021-March 2023) | Hours Billed on Fee Appeal (March 2021-March 2023) | Previously Approved Rate (2018-2021) | Requested Rate (2021-2023) | Years of Experience (2023) |
|---|---|---|---|---|---|
| J. David Hadden Partner | 36.6 | 3.3 | $905.95 | $905.95 | 28 years |
| Todd Gregorian Partner | 645.8 | 124.5 | $649.27 | $649.27 | 18 years |
| Michael Baratz Partner | 110.2 | - | - | $955.00 | 21 years |
| Stephen Kinnaird Partner | 121.5 | - | - | $1,500.00 | 29 years |
| Matthew Becker Associate | 89.6 | - | - | $743.00 | 10 years |
| Chris Lavin Associate | 1682.4 | 75.9 | - | $743.00 | 9 years |
| Deena Feit Associate | 166.4 | 138.6 | - | $714.00 | 8 years |
| Emma Marshak Associate | 194.9 | - | - | $745.00 | 7 years |
| Wenbo Zhang Associate | 66.5 | - | - | $623.00 | 6 years |
| Chieh Tung Associate | 125.9 | 35.5 | $406.85 | $406.85 | 6 years |
| Tor Tarantola Associate | 37.7 | - | - | $725.00 | 3 years |
| Su Li Associate | 62 | - | - | $419.00 | 3 years |
| Alyssa Crooke Associate | 287.7 | 41.9 | - | $419.00 | 2 years |
| Adrian Rios Associate | 108.6 | - | - | $419.00 | 2 years |
| Michelle Waziri Staff Attorney | 261.3 | - | - | $361.00 | 17 years |
| Robert Winant Paralegal | 255.3 | 44.2 | $342.16 | $342.16 | 31 years |

| | | | | | |
|---|---|---|---|---|---|
| Lawrence Gallwas Paralegal | 111.1 | 18 | $344.74 | $344.74 | 18 years |

12. Amazon has separated the hours and total billing to the fee award appeal because that appeal is still pending and not been resolved yet. This is a total of 481.9 hours for a total of **$292,505.92** (using previously approved billing rates or 2021 discounted billing rates). Amazon requests that the Court award these fees, but it understands that the Court's previous approach to fees on appeal was to deny the request without prejudice to Amazon requesting those fees again if it succeeds in the appeal. (Dkt. 656 at 2-3.) Amazon has segregated the fees for this purpose.

**Reasonableness of Fenwick's Hourly Rates**

13. The Court has already found Fenwick's billing rates for the original timekeepers to be reasonable and approved them for the previous fees submissions. (*See* Dkt. 648 at 26; Dkt. 592-1 at 5-6.)

14. Further, in my role, I am familiar with Fenwick's business and billing practices, and I am generally familiar with the rates comparable firms charge for patent litigation in the Northern District of California. Fenwick sets its hourly billing rates to be competitive with rates generally charged by other full-service law firms for attorneys of similar experience. Fenwick attorneys routinely appear in patent litigation matters in the Northern District of California, including high-stakes patent litigation like this multidistrict litigation. Printouts from Docket Navigator showing appearances by Fenwick in patent litigation matters in the Northern District of California since 2018 are attached as **Exhibit 2**. In my opinion, the billable rates charged by the specific attorneys and paralegals on this case are reasonable for their respective levels of expertise and as compared to other law firms with similar experience in the San Francisco Bay Area.

15. Fenwick provides comprehensive legal services to national and international technology and life sciences companies. Fenwick has approximately 500 attorneys practicing in offices in Mountain View, San Francisco, and Santa Monica, California, in Seattle, Washington, in Washington, D.C., and in New York, New York. Fenwick is nationally-recognized for its handling

of, among other things, intellectual property litigation. For example, over the past year Fenwick was:

- Selected as one of the top IP practices nationally as well as in California, New York, and Washington by Managing Intellectual Property (2022);
- Ranked among the top firms for patent litigation and patent prosecution (including reexaminations and post-grant proceedings) by The Legal 500 (2022);
- Recommended among the top patent litigation shops in California, New York, and Washington by IAM Patent 1000 (2022);
- Selected as one of the top intellectual property practices in the country by Benchmark Litigation (2023);
- Named The Best Performing Law Firm Representing Defendants by Patexia (2023); and
- Fenwick attorneys J. David Hadden and Todd R. Gregorian were respectively ranked first and second-best individual attorneys on The Best-Performing Patent Litigators Representing Defendants by Patexia (2023).

16. Other types of evidence routinely considered by the federal courts in assessing the reasonableness of fees support the conclusion that Fenwick's fees in this matter were reasonable:

a. Multiple California federal courts have found Fenwick's rates to be reasonable for patent and other IP cases of similar or lesser complexity than this MDL proceeding. *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *7 (N.D. Cal. Nov. 6, 2014) (plaintiff conceded Fenwick's rates "were reasonable"); *Netbula, LLC v. Chordiant Software, Inc.,* 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) ("[Fenwick's] rates are comparable to other full service firms in the Bay Area and are reasonable."); *Yue v. Storage Tech. Corp*., 2008 WL 11256331, at *5 (N.D. Cal. Aug. 6, 2008) (report and recommendation) (same), *adopted by* 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008); *Perfect 10, Inc. v. Giganews, Inc*., 2015 WL 1746484, at *16-21 (C.D. Cal. Mar. 24, 2015) (Fenwick's rates were "reasonable and w[ere] comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation"), *aff'd*, 847 F.3d 657 (9th Cir. 2017); *Jones v. Corbis Corp.*, 2011 WL 4526084, at *1-2 (C.D. Cal. Aug. 24, 2011).

b. Fenwick's fees are also in line with the survey conducted by AIPLA. *See Phigenix, Inc. v. Genentech Inc.*, 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) ("In

FENWICK & WEST LLP
ATTORNEYS AT LAW

intellectual property cases, federal courts routinely rely on [AIPLA] economic survey results published every other year.") (citations omitted). AIPLA conducts a biennial economic survey that includes a survey of individual billing rates for representative IP law services and total costs of patent infringement litigation inclusive of discovery, motions, and claim construction. Relevant excerpted portions from the 2021 survey are attached hereto as **Exhibit 3** [Tables I-37; I-48; I-49; F-26].

i. Data from the 2021 survey, analyzing 2020 rates, shows that Fenwick's rates charged in this action are consistent with the range of average hourly billing rates for private law firms in the San Francisco Consolidated Metropolitan Statistical Area (CMSA). In 2020, the average hourly billing rate in the San Francisco CMSA for partners was $665, the median rate was $595, the rate for the third quartile was $903, and the rate for the 90th percentile was unreported. *Id*. I-37. In 2020, the average hourly billing rate in the San Francisco CMSA for associates was $737, the median rate was $910, the rate for the third quartile was unreported, and the rate for the 90th percentile was again unreported. *Id*. I-49.

ii. Fenwick's fees also fall within the range of overall rates charged for intellectual property litigation. The average maximum billing rate for IP work in the San Francisco CMSA was $850, the median rate was $695, and the rate for the third quartile was $1,240. *Id.* F-26.

**<u>Explanation of the Monthly Invoices</u>**

17. **Exhibit A** is a copy of all monthly Fenwick invoices to Amazon for work performed on this matter from March 2021 through March 2023, reflecting the work of each timekeeper at Fenwick who billed to this matter during that time period. The invoices for January through March 2023 are draft invoices. The time entries and total amounts billed, however, accurately reflect the amount Fenwick expects to bill to the client.

18. Fenwick has made the following redactions from the invoices: (1) bank account information required for payment of fees; and (2) non-taxable costs that Amazon is not seeking as part of its request. Category (1) is redacted in black; category (2) is redacted in blue.

19. In total, Amazon incurred $3,896,112.40 in fees for Fenwick, Steptoe, and Paul Hastings' work between March 2021 and March 2023. However, Amazon requests only $292,505.92 for the pending appeal of the fee award plus $2,838,832.31 for other case work, for a total of **$3,131,338.23**. Between (i) for original timekeepers, using the previously approved lesser billing rates or, for new timekeepers, using the lesser 2021 discounted billing rates (rather than higher 2022 or 2023 billing rates) and (ii) excluding *de minimis* timekeepers, Amazon is reducing its fees incurred and invoiced by $764,774.17. This is an almost 20% voluntary reduction of fees—making Amazon's request conservative.

20. The Court previously declined to award Amazon fees for costs relating to the Federal Circuit appeal on claim construction and non-infringement, but without prejudice to Amazon requesting those fees again if it was successful in the appeal. (Dkt. 656 at 2-3.) The appeal by PersonalWeb on these issues was unsuccessful and this Court's order was affirmed. *See In re PersonalWeb Techs. LLC*, No. 2020-1566, 2021 WL 3557196 (Fed. Cir. Aug. 12, 2021). Accordingly, Amazon renews its request to be compensated for 169.7 hours in work for a total of **$106,291.43**.

21. By way of this submission, Amazon requests in fees: **$3,131,338.23** plus **$106,291.43** of its previous appeal fees, for total fees of: **$3,237,629.66**.

**<u>Chart of Major Tasks and Associated Fees Incurred</u>**

22. A chart of each attorney's time for each category of tasks performed in this case during the March 2021 through March 2023 time period is attached as **Exhibit B**. A summary of each category is provided below.

a. **"Federal Appeals (Fees)"** includes tasks performed defending against PersonalWeb's serial appeals in this matter, including the Federal Circuit appeal of the Court's fee award. They include legal research and preparation of appeal briefs and other court submissions, client correspondence, and related conferences.

b. **"Federal Appeals (Other)"** includes tasks performed defending against PersonalWeb's serial appeals in this matter, including the Federal Circuit and Supreme Court appeals of the Court's preclusion rulings, and the Federal Circuit appeals of the Court's non-infringement summary judgment ruling. They include legal research and preparation of appeal briefs and other court submissions, client correspondence, and related conferences.

c. **"Post-Judgment Enforcement"** includes tasks performed in this Court attempting to enforce the judgment and address PersonalWeb's evasions, including post-judgment discovery, subpoenas to related third-party entities, motion practice, case management conference statements, opposing Stubbs Alderton & Markiles LLP's numerous motions to withdraw as counsel, other pleadings, court appearances, and including team conferences to discuss strategy, correspondence with the clients, review of PersonalWeb and its investors' document productions, and preparation of court submissions.

d. **"State Court Judgment Enforcement"** includes tasks performed at the California Superior Court and Court of Appeal attempting to enforce the judgment, including appeal of the original denial of intervention, petition for writ of supersedeas (motion for stay), preparation of the complaint-in-intervention, preparation of counterclaims, a successful motion to compel the receiver to share information about the receivership with Amazon, and other pleadings, the appellate oral argument and Superior Court appearances, and including team conferences to discuss strategy, correspondence with the clients, document review, and preparation of other court submissions.

e. **"Case Management"** includes team conferences to discuss strategy and correspondence with the clients, Amazon customers, and joint defense counsel that are not clearly allocatable to a single one of the above categories; drafting a joint statement regarding resolution of the matter and a proposed judgment in response to the Court's second summary judgment order; docketing and calendar review; and filing any required forms with the Federal Circuit and responding to notices from the clerk. These fees were necessary to achieve final resolution of this matter for not only Amazon, but all the indemnified Amazon customers and third parties represented by joint defense counsel. The Court has already held that PersonalWeb's conduct in

FENWICK & WEST LLP
ATTORNEYS AT LAW

this highly complex matter "support[s] Amazon's need for significant case management efforts." (Dkt. 648 at 12.)

23. Where time entries that involved more than one task, the team reviewed the entries allocated the time based on their good faith estimate of the time spent per task. At the Court's request, Amazon can provide a copy of the supplemental spreadsheet showing all such allocations.

24. The final amount provided for each category above was calculated by applying the respective timekeeper's previously approved billing rate or 2021 discounted billing rate against each line item on the invoices, resulting at times in fractional cents.

25. Amazon also incurred $**193,605.69** in non-taxable costs. These costs are related to litigating this case, such as data hosting fees (including fees required for hosting and reviewing documents as part of the discovery dispute over the attorney fee motion); chambers copies; transcript order fees; and copying fees. The specific charges appear in Fenwick, Steptoe, or Paul Hastings' monthly invoices identified above with this declaration or the additional declarations submitted herewith. A summary of the costs for which Amazon requests reimbursement is included as **Exhibit C**.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**Amazon's Recoverable Judgment Enforcement Fees Include Fees**
**<u>Incurred Addressing PersonalWeb's Fraudulent State Court Receivership</u>**

26. Amazon seeks fees that it incurred in the parallel California Second District Appellate and California Superior Court actions attempting to enforce the Court's judgment. I provide the following information as background in support of that request. Documentary evidence from which the following facts are drawn appears in the record at Dkt. 871-7.

27. PersonalWeb's principals structured their "investment" in PersonalWeb as secured debt to ensure that they would never have to pay any unwanted creditors. The scheme worked as follows. The investors[1] never capitalized PersonalWeb for its anticipated business. Instead, they paid expenses as they arose, and promptly removed and distributed to themselves the proceeds of

[1] The investors include Brilliant Digital Entertainment, Inc., Claria Innovations, LLC ("Claria"), Europlay Capital Advisors, LLC ("ECA"), and Monto Holdings Pty Ltd., and their principals include Kevin Bermeister, Anthony Neumann, and Murray Markiles, the individuals who personally directed PersonalWeb's litigation against Amazon and its customers.

any litigation settlements. As they did so, they recorded these as increases or decreases to the outstanding loan balance. But they did not expect "repayment," as such. Instead, they repeatedly extended the loan maturity dates so that they would not come due.[2]

28. The result is that the investors could keep PersonalWeb perpetually insolvent—unable to pay creditors unless they specifically chose to do so. The investors could also at any point use their secured loans to claim priority to whatever assets PersonalWeb retained, leaving unsecured creditors with nothing. At the time PersonalWeb sued more than 85 Amazon customers on legally barred claims, PersonalWeb had only $347,000 in the bank yet "owed" these investors $8.2 million. And during the case, PersonalWeb was paying as much as $400,000 *per month* to its lawyers, yet Kevin Bermeister testified that it would not be able pay an attorney fee award without seeking additional "investment" from himself and others.

29. As soon as Amazon inquired about securing this Court's judgment, Mr. Murray Markiles, who is PersonalWeb's corporate counsel *and* a 25% owner of ECA *and* the managing agent for both ECA and Claria, announced "***it begins***." He then began pressing to trigger the asset protection scheme. The investors demanded that PersonalWeb immediately repay the loans in full even though they were not scheduled to mature for over a year. They directed PersonalWeb to "refuse" to pay. Then in California Superior Court they filed to place PersonalWeb in receivership for their benefit and obtain a preliminary injunction that prevented any other creditor from collecting. In their filings, they presented themselves as arms' length creditors, concealing from the Superior Court the fact that they already *own* and *control* PersonalWeb (and thus had personally caused its "refusal" to pay, and had no legitimate need for a receiver to manage the estate for them), and that PersonalWeb had a legitimate $5.4 million creditor in Amazon. *After* the federal judgment, plaintiffs also quickly rewrote their secured loan agreements to specify that the patent litigations against Amazon, its customers, and other prominent technology companies, were all "collateral" *securing the loans*. The resulting receivership allowed thus the investors to continue to fund those litigations against Amazon and others without paying or securing the judgment.

---

[2] These transactions bear other hallmarks of an attempt to defraud creditors. The investors signed an intercreditor *pari passu* agreement, for example, without any apparent reason why supposedly independent parties would agree to equal priority on secured loans provided at different times.

30. Enforcing the Court's judgment thus required Amazon to intervene in the receivership to address the issue of the injunction against PersonalWeb's creditors. My understanding is that there are two grounds on which such fees are recoverable. First, Section 285 authorizes a prevailing defendant to recover fees reasonably incurred in defending an exceptional case. That *includes* work that is performed for an ancillary case or administrative proceeding. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 726 F.3d 1359, 1369-70 (Fed. Cir. 2013) (affirming award of fees for a related ITC action); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1569 (Fed. Cir. 1988) (reversing the trial court's denial of fees for related administrative proceedings because it held that the "entire work product was necessary to the case"); *Drone Techs., Inc. v. Parrot S.A.*, No. 2:14-CV-00111-AJS, 2015 WL 4545291, at *9 (W.D. Pa. July 21, 2015). In this way, Section 285 is consistent with other federal fee-shifting statutes. *See G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 907-08 (9th Cir. 1998), *vacated on other grounds, sub nom. Bradshaw v. G & G Fire Sprinklers, Inc.*, 526 U.S. 1061 (1999); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993).

31. There would have been no state court actions at all "but-for" the PersonalWeb principals' exceptional conduct before the Court, justifying allowing recovery of fees expended for the state court actions. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017); *Fox v. Vice*, 563 U.S. 826, 836 (2011); *see Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (ruling that the prevailing party is entitled to recovery for all work reasonably and necessarily performed for the defense) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

32. Moreover, the Court has noted that PersonalWeb has engaged in "chameleon-like efforts …to make itself judgment proof, amount to a concerted effort to thwart collection of the judgment." (Dkt. 694 at 3-4). This litigation misconduct—which has included refusing baselessly to answer discovery, engineering a fake "conflict" with the Stubbs firm to avoid compliance with Court orders, conducting inadequate document search and production in response to the Court's orders including allowing Mr. Bermeister to hand pick the documents he wished to turn over, filing new state court actions to frustrate the judgment including the fraudulent receivership action—all

FENWICK & WEST LLP
ATTORNEYS AT LAW

provide a further *independent* reason to rule this case exceptional and award the resulting fees under Section 285.

33. Second, Federal Rule of Civil Procedure 69 "requires the court to apply state law to 'proceedings supplementary to and in aid of a judgment' unless there is a federal statute that would apply." *Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007) (quoting Fed. R. Civ. P. 69(a)). In California, the "Enforcement of Judgments Law ('EJL') provides that a 'judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment.'" *Id.* (quoting Cal. Code Civ. P. § 685.040). Recoverable costs, in turn, include attorney fees otherwise allowed by law. Cal. Code Civ. P. § 685.040; *see also Carnes*, 488 F.3d at 1060 (stating that recoverable costs may include attorney fees incurred in enforcing the judgment when the prevailing party was entitled to attorney's fees in the underlying action); *Berti v. Santa Barbara Beach Props.*, 145 Cal. App. 4th 70, 77 (2007) (stating that "Code of Civil Procedure section 685.040 authorizes postjudgment fees provided by law."). "[Section 685.040] provides that attorney fees incurred in enforcement efforts 'are not included in costs collectible under this title unless otherwise provided by law.' Under its provisions, a litigant entitled to costs for successfully enforcing a judgment is entitled to costs, but not attorney fees *unless there is some other legal basis for such an award.* Because [Section 285] provides a legal right to attorney fees, they are a permissible item of costs." *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1141 n.6 (2001) (emphasis in original). The Court has already held that Section 285 and *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) authorize the award of attorneys' fees to Amazon for this exceptional case. (*See* Dkt. 636 at 32-33.) Thus, the Court's award in the underlying action entitles Amazon under the California statute to recover its follow-on fees enforcing the judgment.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Francisco, California on this 5th day of May, 2023.

*/s/ Todd R. Gregorian*
Todd R. Gregorian