# EXHIBIT 1

# United States Court of Appeals
# for the Federal Circuit

_____

**IN RE: PERSONALWEB TECHNOLOGIES LLC,**

-------------------------------------------------

**AMAZON.COM, INC., AMAZON WEB SERVICES, INC.,**
*Plaintiffs-Appellees*

**v.**

**PERSONALWEB TECHNOLOGIES LLC,**
*Defendant-Appellant*

**LEVEL 3 COMMUNICATIONS, LLC,**
*Defendant*

-------------------------------------------------

**PERSONALWEB TECHNOLOGIES LLC,**
*Plaintiff-Appellant*

**LEVEL 3 COMMUNICATIONS, LLC,**
*Plaintiff*

**v.**

**TWITCH INTERACTIVE, INC.,**
*Defendant-Appellee*

_____

2021-1858, 2021-1859, 2021-1860

_____

Appeals from the United States District Court for the Northern District of California in Nos. 5:18-cv-00767-BLF, 5:18-cv-05619-BLF, 5:18-md-02834-BLF, Judge Beth Labson Freeman.

———————————

Decided:  November 3, 2023

———————————

J. DAVID HADDEN, Fenwick & West LLP, Mountain View, CA, for Amazon.com, Inc., Amazon Web Services, Inc, Twitch Interactive, Inc.  Also represented by RAVI RAGAVENDRA RANGANATH, SAINA S. SHAMILOV; TODD RICHARD GREGORIAN, San Francisco, CA.

MICHAEL AMORY SHERMAN, Stubbs Alderton & Markiles LLP, Sherman Oaks, CA, for PersonalWeb Technologies LLC.  Also represented by JEFFREY F. GERSH, WESLEY WARREN MONROE.

———————————

Before LOURIE, DYK, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* REYNA.

Dissenting opinion filed by *Circuit Judge* DYK.

REYNA, *Circuit Judge*.

PersonalWeb appeals a district court award of $5,187,203.99 in attorneys' fees entered against it.  PersonalWeb argues that we should reverse the award because the district court erred in finding that the underlying case was "exceptional" within the meaning of the term under 35 U.S.C. § 285.  PersonalWeb also contends that, even if the case was exceptional and fees are appropriate, the district court erred in its calculation of the overall fee award.  Because the district court did not abuse its discretion in finding this case exceptional or in calculating the total fees awarded, we affirm.

BACKGROUND

This is the third appeal from the same multidistrict litigation ("MDL"). *See In re PersonalWeb Techs., LLC*, 961 F.3d 1365 (Fed. Cir. 2020) ("*PersonalWeb I*"); *In re PersonalWeb Techs., LLC*, No. 20-1566, 2021 WL 3557196 (Fed. Cir. Aug. 12, 2021) ("*PersonalWeb II*"). In 2011, Personal-Web sued Amazon in the Eastern District of Texas (Case No. 6:11-cv-658, referred to as the "Texas Action"), alleging that Amazon's S3 technology infringed PersonalWeb's patents. *PersonalWeb I*, 961 F.3d at 1370. The asserted patents[1] are generally directed to what the inventors termed the "True Name" for data items. *Id.* at 1369–70. After the district court construed the claim terms, PersonalWeb stipulated to dismissal, resulting in the district court dismissing with prejudice the infringement claims against Amazon and entering final judgment against PersonalWeb. *Id.* at 1372.

In 2018, PersonalWeb asserted the True Name patents against eighty-five Amazon customers (the "customer cases") across the country for their use of Amazon S3. *Id.*; Appellant Br. 4. Amazon intervened and filed a declaratory judgment action against PersonalWeb "seeking an order barring PersonalWeb's infringement actions against Amazon and its customers based on [the Texas Action]." *PersonalWeb I*, 961 F.3d at 1372. The customer cases and Amazon's declaratory judgment action were consolidated into an MDL and assigned to the Northern District of California. *Id.* PersonalWeb represented that if it lost its case against Twitch, a customer case, it would not be able to prevail in the other customer cases. *Id.* On that basis, the

---

[1] The asserted patents are U.S. Patent Nos. 5,978,791 (the "'791 patent"); 6,928,442 (the "'442 patent"); 7,802,310 (the "'310 patent"); 7,945,544 (the "'544 patent"); and 8,099,420 (the "'420 patent") (collectively, the "asserted patents" or the "True Name patents").

district court stayed the other customer cases so that only the Twitch customer case and Amazon's declaratory judgment action proceeded in parallel.[2] *Id.*

In the declaratory judgment action, PersonalWeb counterclaimed against Amazon, alleging that Amazon S3 infringed its True Name patents. *Id.* Almost a year into the case, PersonalWeb accused another Amazon product, CloudFront, of infringement. J.A. 1188–1200. Amazon moved for summary judgment.

The district court granted partial summary judgment of non-infringement of the S3 product in favor of Amazon, based on the *Kessler* doctrine and claim preclusion. *PersonalWeb I*, 961 F.3d at 1373. We affirmed in *PersonalWeb I*. *Id.* at 1376–79. The litigation continued as to CloudFront. *PersonalWeb II*, 2021 WL 3557196, at *2. The district court granted summary judgment of non-infringement as to the CloudFront product in favor of Amazon and Twitch because, under the district court's claim construction, PersonalWeb conceded it could not meet its burden of proving infringement. *Id.* at *3, *6. We affirmed in *PersonalWeb II*. *Id.* at *6.

The district court granted Amazon and Twitch's motion for attorneys' fees and costs under 35 U.S.C. § 285,[3] determining that the case was exceptional. The district court found that:

> (1) PersonalWeb's infringement claims related to Amazon S3 were objectively baseless and not reasonable when brought

---

[2]    For convenience, we generally refer to the various cases that proceeded in this MDL as the singular "case."

[3]    35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

> because they were barred due to a final judgment entered in the Texas Action;
>
> (2) PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day;
>
> (3) PersonalWeb unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories;
>
> (4) PersonalWeb's conduct and positions regarding the customer cases were unreasonable; and
>
> (5) PersonalWeb submitted declarations that it should have known were not accurate.

*In re PersonalWeb Techs., LLC*, No. 18-MD-02834-BLF, 2020 WL 5910080, at *20 (N.D. Cal. Oct. 6, 2020) ("*Decision*"). The district court calculated an award of attorneys' fees and costs totaling $5,401,625.06, of which $5,187,203.99 was attorneys' fees. *See In re PersonalWeb Techs., LLC*, No. 18-MD-02834-BLF, 2021 WL 796356, at *18 (N.D. Cal. Mar. 2, 2021) ("*Fees Decision I*") (finding "Amazon is entitled to $4,615,242.28 in fees for 9,263.43 hours of work and $203,300.10 in non-taxable costs"); *In re PersonalWeb Techs., LLC*, No. 18-MD-02834-BLF, 2021 WL 11113167 , at *2 (N.D. Cal. Apr. 19, 2021) ("*Fees Decision II*") (finding "Defendants are entitled to $571,961.71 in fees for 926.92 hours of work and $11,120.97 in non-taxable costs").

PersonalWeb appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. To determine whether a case is exceptional under § 285,

courts consider "the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

We review a district court's exceptional-case determination and award of fees under § 285 for abuse of discretion. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563–64 (2014). "To meet the abuse-of-discretion standard, the moving party must show that the district court has made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1266 (Fed. Cir. 2018) (quoting *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017)). We "give great deference to the district court's exercise of discretion in awarding fees." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1307 (Fed. Cir. 2018) (citation omitted).

## DISCUSSION

PersonalWeb argues that the district court erred in finding this case exceptional under 35 U.S.C. § 285. Alternatively, PersonalWeb contends that, even if the case was exceptional and an award of fees was appropriate, the district court erred in assessing $1,948,987.01 of the total $5,187,203.99 attorneys' fees award. We first address the exceptionality issue.

## I. EXCEPTIONALITY

An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. The district court's exceptional-case determination was based on the five findings discussed above. We review each finding in turn.

## 1. Objectively Baseless

PersonalWeb contends that the district court abused its discretion in finding that this case was objectively baseless. The district court relied on the *Kessler* doctrine and claim preclusion in concluding that "PersonalWeb's infringement claims related to the use of Amazon S3 were objectively baseless and clearly untenable based on established Federal Circuit precedent[s] and in light of the with-prejudice dismissal of the Texas Action." *Decision*, at *8.

PersonalWeb argues that the district court's finding of objective baselessness was in error because *PersonalWeb I*, "while adverse to [it], illustrates that the reach of *Kessler* had not been a well-settled issue" and "extended *Kessler* to situations where non-infringement had not previously been adjudicated." *Decision*, at *5 (citation omitted); *see* Appellant Br. 36–38; Reply Br. 2–3 (PersonalWeb arguing that the Solicitor General was invited to file a brief expressing its views on whether the *Kessler* doctrine should have applied in *PersonalWeb I*). For claim preclusion, PersonalWeb argues that the district court did not address its argument on privity. Appellant Br. 34–36.

We conclude that the district court did not abuse its discretion when considering *Kessler* in its assessment of exceptionality.[4] In *Kessler*, the Supreme Court reasoned that, after a "final judgment" of non-infringement in favor of the accused infringer Kessler, allowing follow-up suits by the patentee against Kessler's customers over the non-infringing product "will be practically to destroy Kessler's

---

[4] PersonalWeb's infringement claims against Amazon S3 that were barred by *Kessler* occurred after the final judgment in the Texas Action, while its infringement claims against Amazon S3 that were barred by claim preclusion occurred before the final judgment of the Texas Action. *See PersonalWeb I*, 961 F.3d at 1373.

judgment right." *Kessler v. Eldred*, 206 U.S. 285, 289–90 (1907); *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (1914) (describing *Kessler* as having gone "no further than to hold it to be a wrongful interference with Kessler's business to sue his customers" over the identical accused infringing product). In *Rubber Tire*, we reasoned that *Kessler* granted a "trade right" that "attaches to" the non-infringing product. 232 U.S. at 419; *see also Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917) (relying on *Kessler* to reason that "rights once established by final judgment of a court . . . shall be recognized by those who are bound by it in every way"); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185–86 & n.5 (1952) (citing *Kessler* to reason that "a judgment in [the accused infringer's] favor bars suits against his customers").

Our case law is consistent with Supreme Court precedent. In *MGA, Inc. v. General Motors Corp.*, we explained that the *Kessler* doctrine "bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent." 827 F.2d 729, 734 (Fed. Cir. 1987); *see id.* (explaining the "limited trade right" that attaches to the non-infringing product). In *Brain Life, LLC v. Electa Inc.*, we explained that the "final judgment" in the first suit entitles a manufacturer to sell its product "without fear of allegations of infringement by [the patentee]— even when the acts of infringement occurred post-final judgment and even when it was third-parties who allegedly engaged in those acts of infringement." 746 F.3d 1045, 1056 (Fed. Cir. 2014).

In *SpeedTrack, Inc. v. Office Depot, Inc.*, we reasoned that the *Kessler* doctrine precludes a patentee who is first "unsuccessful" against the manufacturer from then suing the "manufacturer's customers" for "only those acts of infringement that post-dated the judgment in the first action." 791 F.3d 1317, 1328 (Fed. Cir. 2015); *see also SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed.

Cir. 2018) (explaining that *Kessler* "does preclude asser-
tions of a patent against even post-judgment activity if the
earlier judgment held that 'essentially the same' accused
activity did not infringe that patent" (citation omitted)).

Attorneys' fees under § 285 are not a penalty for losing
a patent infringement suit. *See Octane Fitness*, 572 U.S.
at 548. It is a form of sanction where, for example, a party
advances an argument that is wholly unsupported by the
law. Here, a straightforward application of *Kessler* barred
PersonalWeb's claims.[5] After claim construction in the
Texas Action, PersonalWeb stipulated to dismissal with
prejudice of all of its claims against Amazon and its S3
product, stating that PersonalWeb stipulates "that all
claims" in the Texas Action should "be dismissed with prej-
udice." *Texas Action*, ECF No. 163 (June 6, 2014); *Person-
alWeb I*, 961 F.3d at 1372. The district court then issued
an order dismissing with prejudice "all claims" against Am-
azon and its S3 product, and the district court entered final
judgment against PersonalWeb. *Texas Action*, ECF.
No. 164 (June 9, 2014); *PersonalWeb I*, 961 F.3d at 1372.
It is well-settled that this final judgment operated as an
adverse adjudication on the merits of PersonalWeb's in-
fringement claims. *See Hallco Mfg. Co. v. Foster*, 256 F.3d
1290, 1297 (Fed. Cir. 2001) (stating that "a dismissal with
prejudice[] is a judgment on the merits"); *Hartley v. Mentor
Corp.*, 869 F.2d 1469, 1473 (Fed. Cir. 1989) ("Such a judg-
ment operates as an adverse adjudication on the merits of
a claim."); *see also* 18A Charles A. Wright *et al.*, *Federal
Practice and Procedure* § 4435 (2d ed. 2002) ("A stipulated

---

[5] The district court determined that although the
"baselessness of PersonalWeb's claims related to" Amazon
S3 was one exceptional finding, it only played a "limited
role" in the totality of circumstances analysis because "un-
reasonable litigation tactics alone . . . would have been suf-
ficient to find this case exceptional." *Decision*, at *7.

dismissal with prejudice operates as an adjudication on the merits for claim-preclusion purposes.").

But years later in 2018, PersonalWeb asserted the same patents from the Texas Action—the True Name patents—against the same accused infringing technology from the Texas Action—Amazon S3. *PersonalWeb I*, 961 F.3d at 1372. The only difference was that PersonalWeb accused Amazon's customers of infringement. *Id.* PersonalWeb did so despite the then-existing precedent of *Kessler*, *Rubber Tire*, *MGA Inc.*, *Brain Life*, and *Speed Track* all explaining that, after a "final judgment" of non-infringement, follow-up suits against customers over the same allegedly infringing product, which receives the limited trade right, were precluded. On appeal, we reviewed the Texas Action dismissal and concluded that "PersonalWeb abandoned its claims against Amazon without reservation, explicit or implicit." *Id.* at 1378. Relying on *Kessler* and other precedents, we concluded that "the judgment in the Texas case, pursuant to a with-prejudice dismissal, protected Amazon's S3 product from subsequent infringement challenges, even when those challenges were directed at Amazon's customers rather than at Amazon itself." *Id.* at 1379.

The dissent contends that PersonalWeb is being punished for taking the wrong side of an open argument. Dissent at 2. This is incorrect. PersonalWeb wove the very net in which it now stands. It was PersonalWeb's own broad dismissal with prejudice of "all claims" against Amazon and the Amazon S3 product that led to a final judgment of non-infringement on the merits. And PersonalWeb agreed to the broad dismissal despite the "general principle" that parties may reserve the "right to litigate some or all issues." *Hallco Mfg. Co.*, 256 F.3d at 1295. PersonalWeb sought no such reservation to litigate. Then PersonalWeb sued Amazon's customers, asserting the same True Name patents and accusing the same Amazon S3 technology of infringement. PersonalWeb is not being punished for its lack of success on its *Kessler* argument. Despite the

existence of Supreme Court precedent and our case law, PersonalWeb *previously* lost on infringement and then contravened its broad dismissal in order to wager a second bite of the apple against Amazon S3, an action tantamount to a "wrongful interference" with Amazon's business with its customers. *Rubber Tire*, 232 U.S. at 419. As the Supreme Court has reasoned, PersonalWeb was "bound" by its "final judgment" that PersonalWeb stipulated to, and it is a "rule of fundamental and substantial justice" for courts to recognize and enforce those established rights. *Hart Steel Co.*, 244 U.S. at 299 (citing *Kessler*, 208 U.S. at 289–90).

The dissent also contends that we ultimately treated the issue of *Kessler*'s application to a stipulated dismissal as a matter of "*first impression.*" Dissent at 7 (emphasis added). This is incorrect. At the time we decided *PersonalWeb I*, existing precedents of *Kessler*, *Rubber Tire*, *MGA Inc.*, *Brain Life*, *Speed Track*, and *SimpleAir* all explained that, after a "final judgment" of non-infringement, followup suits against customers over the same infringing product were precluded. In *PersonalWeb I,* we applied our case law to PersonalWeb's own broad stipulation that led to an adverse final judgment of non-infringement. *See PersonalWeb I*, 961 F.3d at 1376–79 ("We have previously addressed whether the *Kessler* doctrine precludes relitigation only of issues that were actually litigated in a prior action, albeit in slightly different contexts."). Nor does it matter that, on appeal to the Supreme Court of *PersonalWeb I*, Solicitor General views were sought.[6] This is a common occurrence. The Supreme Court, however, denied certiorari. *See* Brief for United States as Amicus Curiae, *PersonalWeb Techs., LLC v. Patreon, Inc.*, 2022 WL 1082550, at *8 (April 8, 2022) (No. 20-1394); *PersonalWeb Techs., LLC v. Patreon,*

---

[6]  The record shows that PersonalWeb brought its suits against Amazon's customers before it appealed to the Supreme Court.

*Inc.*, *cert. denied*, 142 S. Ct. 2707 (May 16, 2022) (No. 20-1394). We find no abuse of discretion in the district court's *Kessler* analysis.

We next turn to PersonalWeb's contention that the district court did not address its argument on privity for claim preclusion. Appellant Br. 34–36. Privity, as the Ninth Circuit has concluded, exists when the interests of the party in a subsequent action were shared with and adequately represented by a party in a former action. *See Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995). The district court concluded that "the law of claim preclusion was straightforward and well-settled when PersonalWeb filed this case." *Decision*, at *5. We observed, in *PersonalWeb I*, that PersonalWeb did not dispute two of three elements of claim preclusion: that the "Texas case is a final judgment on the merits" and that "Amazon and its customers are in privity." *PersonalWeb I*, 961 F.3d at 1374. So "[t]he sole basis for PersonalWeb's challenge to the district court's finding on claim preclusion [was] its contention that the Texas action and the customer suits involved different causes of action." *Id.* We rejected this premise, concluding that claim preclusion applies because "the complaints in the customer cases and the complaint in the Texas case relate to the same set of transactions"—alleged acts of infringement related to the Amazon S3 product. *Id.* at 1376.

We hold that the district court did not abuse its discretion in finding PersonalWeb's claims against Amazon S3 were baseless under well-settled claim preclusion precedents. In its summary judgment opinion, the district court rejected PersonalWeb's contrary arguments and held that Amazon and its customers were in privity because they "share the same interest in the unfettered use of Amazon's web services, and Amazon adequately represented this interest in the Texas Action." J.A. 3246. On appeal, PersonalWeb did "not challenge the district court's determination that Amazon and its customers are in privity." *PersonalWeb I*, 961 F.3d at 1374.

When it came to opposing Amazon and Twitch's motion for attorneys' fees, PersonalWeb argued that it diligently sought opinions on preclusion doctrines, not that the district court overlooked its privity argument. *See* J.A. 7884–7908. We decline to consider PersonalWeb's new argument on appeal here. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court."). In any event, the district court has already rejected the argument PersonalWeb makes on appeal, *see* J.A. 3245–55, and we find no reason to disturb that conclusion.

Accordingly, PersonalWeb's claims involving the Amazon S3 product were precluded under the *Kessler* and claim preclusion doctrines and should not have been brought. *See Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (finding infringement allegations "ill-supported" and the lawsuit "baseless"). The district court did not abuse its discretion when it determined that PersonalWeb's arguments were ill-supported and should not have been brought.

### 2. Frequently Changing Infringement Positions

PersonalWeb contends that the district court abused its discretion in finding that PersonalWeb frequently changed its infringement positions. The district court reviewed various pleadings and express statements made by PersonalWeb and concluded that "PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day." *Decision*, at *11.

PersonalWeb argues that the district court abused its discretion because PersonalWeb's conduct constituted zealous advocacy, explaining that its arguments about Amazon S3 and Ruby on Rails (described as a type of architecture for creating websites) "are part of the same argument." Appellant Br. 39–40 (emphasis omitted).

We hold that the district court did not abuse its discretion in concluding that PersonalWeb's position-shifting supported an exceptionality determination. The record shows that PersonalWeb's infringement theories involving Amazon S3 and Ruby on Rails were constantly changing throughout the case, ranging from emphasizing one, or the other, or both. For example, PersonalWeb contended, in its motion for MDL consolidation under 28 U.S.C. § 1407, that "each defendant's website is alleged to use a Ruby on Rails architecture to develop and compile its webpage files" that are then uploaded to the "Amazon S3" system with "unique [] E-Tag[s]." J.A.7734–35. When opposing Amazon's motion for injunctive relief, PersonalWeb asserted that its "Ruby on Rails-based infringement allegations are **wholly independent** of any use of S3." J.A. 9424 (emphasis in original). PersonalWeb moved to dismiss Amazon's declaratory judgment action, contending that it "has sued the website owners because they use a combination of the Ruby architecture and aspects of the HTTP web protocol . . . not just because they use S3." J.A. 9455; *see also* J.A. 9505 (44:1–2) (PersonalWeb representing at a hearing that "PersonalWeb's theory of infringement revolves around Ruby on Rails not S3"). PersonalWeb later offered in its preliminary case management statement four infringement theories, none of which mentioned Ruby on Rails. *See* J.A. 561 (5:19–25). In the case management statement, PersonalWeb also contended that "issues raised" in its suits between Amazon's customers and Amazon were not "identical" and did not "even substantially overlap." J.A. 17 (citing the preliminary case management statement).

PersonalWeb's briefing reflects the same shifts in theories of arguments. *Compare* Appellant Br. 40 ("S3 and [Ruby on Rails] are part of the same argument." (emphasis omitted)), *with* Reply Br. 18–19 ("Ruby on Rails was part of the category 4 infringements" relevant only to the '544 patent), *and id.* at 19 ("Amazon S3 did not use Ruby on Rails."). PersonalWeb defends the "vanishing" of Ruby on

Rails from its infringement theories, contending that it had to drop the '544 patent due to the "practical effect of the district court's claim construction order." Reply Br. 20–21.

We are unconvinced by PersonalWeb's arguments. The record demonstrates that the district court's claim construction order occurred in August 2019, which is almost a year after PersonalWeb had already omitted Ruby on Rails as part of its infringement theories in September 2018. *See* J.A. 561 (5:19–25) (preliminary case management statement); J.A. 5170–5203 (claim construction order). PersonalWeb's position-shifting throughout this case extended to its reply brief on appeal when it sought to minimize Ruby on Rails despite PersonalWeb's unqualified and express emphasis earlier in this case of the importance of Ruby on Rails. J.A. 7734–35; J.A. 9455; J.A. 9505 (44:1–2); *see also Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374–75 (Fed. Cir. 2015) (explaining that party's "infringement contentions were a constantly moving target").

We are not persuaded that PersonalWeb's conduct was zealous representation. Zealous representation is the rule, not an exception. But zealous representation is tempered by the obligation of counsel to assist the court by fully and fairly presenting legal issues relevant to the facts of the case. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1356 (Fed. Cir. 2002) ("Counsel must remember that they are not only advocates for their clients; they are also officers of the court."). Exceptionality cannot hide behind a claim of zealous representation. PersonalWeb's constantly changing infringement theories obfuscated the merits of its case and undermined its trustworthiness and reliability before the district court. This pattern of flip-flopping infringement theories "stands out from others with respect to the substantive strength of [PersonalWeb's] litigating position" and "the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.

On these grounds, the district court did not abuse its discretion when it premised its exceptionality determination on PersonalWeb's frequently changing infringement theories.

### 3. Unnecessarily Prolonged Litigation Post-Claim Construction

PersonalWeb contends that the district court abused its discretion in finding that PersonalWeb unnecessarily prolonged this case after claim construction. The district court reviewed the parties' conduct post-claim construction, concluding that "PersonalWeb's prolongation of the Twitch case after claim construction and its instruction to the expert to apply PersonalWeb's 'interpretation' of the [district court's] claim construction were unreasonable litigation conduct." *Decision*, at *13. We disagree with PersonalWeb.

PersonalWeb argues that the district court abused its discretion because the district court expressly credited PersonalWeb's streamlining efforts post-claim construction and observed that Amazon bore some responsibility for prolonging this case. Appellant Br. 42–46.

We hold that the district court did not abuse its discretion in finding that PersonalWeb engaged in unreasonable conduct post-claim construction that prolonged this case. In August 2019, the district court construed the claim terms (present in all remaining asserted claims) "authorization" as "a valid license" and "unauthorized or unlicensed" as "not compliant with a valid license." *See* J.A. 5175–81; *PersonalWeb II*, 2021 WL 3557196, at *1–2. Because the accused infringing technology does not assess the validity of user licenses, Amazon requested that PersonalWeb dismiss all claims against Amazon and Twitch with prejudice as the district court's claim construction order "ma[de] clear that PersonalWeb ha[d] no viable infringement claim." J.A. 5218.

PersonalWeb offered to stipulate to judgment of non-infringement as to all counterclaims against the Amazon S3 and CloudFront technologies, except for those against Twitch. J.A. 5220. For Twitch, PersonalWeb offered to stipulate to non-infringement only as to the '544 patent because of an alleged ambiguity in the district court's claim construction. J.A. 5220–24. Amazon disagreed with PersonalWeb's effort to keep Twitch in the case and threatened to seek sanctions, explaining that PersonalWeb's attempt to "re-construe" the district court's claim construction was "improper." J.A. 5223. The case continued.

During expert discovery, PersonalWeb's expert opined about Twitch's alleged infringement by relying on the alleged ambiguity (first offered by PersonalWeb's counsel) in the district court's claim construction. J.A. 5298 at ¶ 64. PersonalWeb also filed a motion to clarify the district court's claim construction, which the district court denied. J.A. 5433–37.

Despite "an adverse claim construction," PersonalWeb refused to stipulate to non-infringement and continued to litigate the case despite an obligation to "continually assess the soundness of pending infringement claims." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). PersonalWeb's offering of its expert opinion, relying on the alleged ambiguity in the claim construction, was an unequivocal attempt to re-litigate the district court's claim construction. While it may be said that PersonalWeb took other actions that did not prolong the case, this misconduct unnecessarily prolonged the action—a point expressly made by the district court. *See Decision*, at *13.

As the district court explained, PersonalWeb should have stipulated "to non-infringement in both Amazon and Twitch cases immediately after claim construction when it received Amazon's Rule 11 letter and proceed[ed] to appeal." *Id.* PersonalWeb "may have filed a weak

infringement lawsuit," but it "became baseless after" the district court's claim construction order as to both Amazon and Twitch. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360–61 (Fed. Cir. 2017); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920–21 (Fed. Cir. 2012) (explaining plaintiff "persisted in advancing unfounded arguments that unnecessarily extended this litigation").

We conclude that the district court did not abuse its discretion when it supported its exceptionality determination on PersonalWeb unnecessarily prolonging the case after claim construction.

### 4. Unreasonable Position and Conduct Regarding the Customer Cases

PersonalWeb asserts that the district court abused its discretion in finding that PersonalWeb's conduct and positions regarding the customer cases were unreasonable. The district court found PersonalWeb's shift in position with respect to Twitch to be another example of "unreasonable litigation conduct" as well as a "final attempt to unravel the MDL after summary judgment and to keep some of the customer cases in play." *Decision*, at *15.

According to PersonalWeb, the removal of the Twitch action would not unravel the MDL because whether or not Twitch was representative of the customer cases was a mere belief subject to change by discovery. Appellant Br. 47–50 (citing J.A. 804–05 (7:17–8:8); J.A. 807 (10:10–15); J.A. 838). We disagree.

We hold the district court did not abuse its discretion in finding that PersonalWeb engaged in unreasonable litigation conduct when it reversed its representation about Twitch. In November 2018, PersonalWeb represented to the district court that Twitch was representative of its infringement theories across all customer cases, agreeing that a non-infringement verdict in favor of Twitch would result in "none of the customer cases" being able to "go

forward." J.A. 803 (6:17–22); J.A. 756–97. Based on this input, the district court proceeded with Twitch and stayed the other customer cases. *See PersonalWeb I*, 961 F.3d at 1372; J.A. 838. Thus, the foundation of the district court's case management of the MDL was that Twitch was representative of the other customer cases.

Yet, in February 2020, after the district court granted summary judgment of non-infringement in favor of Amazon and Twitch, PersonalWeb changed horses. It contended for the first time that "not all grounds of the summary judgment order as it relates to Twitch" are "applicable to the remaining customer cases." J.A. 6763–64. According to PersonalWeb, it learned during discovery in July 2019 that Twitch was not representative for a certain category of the customer cases. J.A. 6766. PersonalWeb defended the seven-month delay in raising the issue by asserting that it believed there was no issue before the district court "to which this [would] ha[ve] been germane." J.A. 6766–67.

PersonalWeb bases its arguments on a record that only confirms that judicial efficiency concerns were always germane and at the forefront of the district court's priorities. *See* J.A. 804–05 (7:17–8:8); J.A. 806–07 (9:21–10:16); J.A. 838. For instance, the district court emphasized that its "biggest job" was looking for the "best, most efficient way to move to a resolution of the case." J.A. 804 (7:17–25). We find no support in the record that the district court expected that subsequent discovery might undermine the MDL management structure. As the district court explained at the outset of the case, having different defendants as representative for different categories of customer cases was not "manageable." J.A. 806–07 (9:21–10:16) (describing this as "kick[ing] the can down the road"); *see also* J.A. 667–68 (60:25–61:3) (the district court explaining it has "great concern" over the manner PersonalWeb proposed "to litigate these cases" and "to have four categories of cases is really to have four separate MDL's").

PersonalWeb was obligated to promptly inform the district court of any developments concerning Twitch's status as representative. *See In re Solerwitz*, 848 F.2d 1573, 1577 (Fed. Cir. 1988) ("[T]he attorney's obligations to the court are ongoing at every stage of the litigation and the attorney must continually reevaluate the positions advanced."); *Taurus, IP LLP*, 726 F.3d at 1328 (explaining that a party "must continually assess the soundness of pending infringement claims"). PersonalWeb's failure to do so was another attempt to "slice and dice this case" to give it "an escape hatch at every turn regarding the customer cases." *Decision*, at *16 (describing PersonalWeb's attempt to "bob and weave its way around the issues in this case"). This is unreasonable litigation conduct.

The district court did not abuse its discretion when it supported its exceptionality determination with PersonalWeb's unreasonable position and conduct regarding the customer cases.

### 5. Inaccurate Declarations

PersonalWeb argues that the district court abused its discretion in considering two declarations, submitted by PersonalWeb's attorney and executive in support of PersonalWeb's opposition to Amazon's summary judgment motion, as relevant in its exceptionality analysis. The district court reviewed the record in the Texas Action and found PersonalWeb's declarants' testimony was "contrary to the record in the Texas Action." *Decision*, at *17. The district court concluded that PersonalWeb submitted "inaccurate" declarations and considered this conduct as "one factor in the 'totality of the circumstances' related to PersonalWeb's unreasonable litigation conduct." *Id.* at *18.

PersonalWeb asserts that the declarations should not have been considered in the district court's analysis because its declarants did not testify about whether the conditional technology at issue was involved in the Texas Action. Appellant Br. 50–52; Reply Br. 25–27.

We hold that the district court did not abuse its discretion in considering the inaccurate declarations as part of its exceptionality determination. Prior to its filing of eighty-five suits after the Texas Action, PersonalWeb had an obligation to reasonably investigate the scope of the accused infringing technology in the Texas Action. *See ThermoLife Int'l LLC v. GNC Corp.*, 922 F. 3d 1347, 1356 (Fed. Cir. 2019) (finding plaintiffs "did not conduct an adequate pre-suit investigation into infringement"); *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) ("[T]he exercise of even a modicum of due diligence by [plaintiff], as part of a pre-suit investigation, would have revealed the weaknesses in its litigation position.").

In opposition to Amazon's summary judgment motion, PersonalWeb's declarants testified that the Texas Action "only accused the Multipart Upload functionality" of Amazon's S3 technology of infringement. J.A. 1430 at ¶ 4; *see also* J.A. 1566 at ¶ 9 (declarant testifying that the Texas Action was "based only upon Multipart Upload"). But during the Texas Action in 2014, PersonalWeb had accused two features of Amazon's S3 technology of infringement— the Multipart Upload functionality and a conditional GET HTTP functionality. *See PersonalWeb I*, 961 F.3d at 1376 ("PersonalWeb told the trial court in the Texas case, the accused functionalities of S3 include but are not limited to its multipart upload feature and conditional operations." (quotations omitted)). During the Texas Action, PersonalWeb's counsel had even emailed these same declarants (the attorney and executive) a proposed settlement that referenced the accused infringing technology as including the conditional features in addition to Multipart Upload features. J.A. 7918.

PersonalWeb's arguments that its declarants did not testify about the presence of conditional requests are frivolous. PersonalWeb's declarants used the limiting term "only" to show the presence of Multipart Upload functionality and necessarily exclude conditional functionality. *See*

J.A. 1430 at ¶ 4 (declarant testifying that the Texas Action "only accused the Multipart Upload functionality"); J.A. 1566 at ¶ 9 (declarant testifying that the Texas Action was "based only upon Multipart Upload"). Although the district court did not find that the inaccurate declarations rose to a breach of the duty of candor, *Decision*, at *18, Personal-Web's counsel "excessive[ly] emphas[ized]" its role as "zealous advocates" to the detriment of its role as "officers of the court," *see Allen*, 299 F.3d at 1356.

The district court did not abuse its discretion when it supported its exceptionality determination with Personal-Web's submission of inaccurate declarations.

\*   \*   \*   \*

The district court lived with this case and its counsel for years. It thoroughly reviewed the totality of the circumstances to find that this case both lacked "substantive strength" and was litigated in an "unreasonable manner." *Octane Fitness*, 572 U.S. at 554. We see no clear error in law or fact by the district court in arriving at these conclusions. *See Rembrandt*, 899 F.3d at 1266.

Counsel, as officers of the court, "are expected to assist the court in the administration of justice, particularly in difficult cases involving complex issues of law and technology." *Allen*, 299 F.3d at 1356. We see no clear error in the district court's finding that PersonalWeb litigated this case with "obfuscation, deflection and mischaracterization." *Id.* at 1357. The district court did not abuse its discretion in finding this case exceptional under 35 U.S.C. § 285.

## II. Calculation of Attorneys' Fees

PersonalWeb next asserts that the district court erred in assessing $1,948,987.01 of the total $5,187,203.99 attorneys' fees award. In arriving at the award, the district court reviewed Amazon's billing records for specific categories of fees related to exceptional conduct and performed reductions from the amount of fees sought by Amazon. *See*

*Fees Decision I*, 2021 WL 796356, at *6–18; *Fees Decision II*, 2021 WL 11113167, at *2.

PersonalWeb points to specific categories of alleged non-exceptional fees and argues that the percentage reduction performed by the district court was arbitrary. Appellant Br. 53–61.

We conclude that the district court did not abuse its discretion in attributing the challenged $1,948,987.01 in attorneys' fees to exceptional conduct. For case management fees, the district court reviewed the totality of the circumstances in this case and reasoned that: "PersonalWeb's ever-shifting infringement theories—S3, Ruby on Rails, the late emergence of CloudFront and complete abandonment of Ruby on Rails, and, finally, PersonalWeb's extraordinary declaration that Twitch was not a representative customer case only fifteen months after insisting just the opposite—support Amazon's need for significant case management efforts." *Fees Decision I*, 2021 WL 796356, at *7. The district court also noted that Amazon excluded "billing requests by 29 timekeepers" and applied a 25% reduction from the amount requested by Amazon that "amply addresse[d] any over-billing in this category." *Id.* at *18.

The district court took steps to be fair. For early motion practice, such as the motion to stay and motion for preliminary injunction, the district court recognized the efficiency of these tactics, stating Amazon "would have undoubtedly incurred even more legal fees in actively defending the menagerie of customer cases." *Id.* at *9. As to fees for investigating PersonalWeb's shifting infringement theories, the district court reduced Amazon's requested fees by 25% to account for "otherwise necessary activities" after explaining PersonalWeb's "abandoned infringement theories serially dominated the case, leading to unnecessary work across multiple categories of litigation." *Id.* at *8; *see also id.* at *10 (infringement contentions). Finally, for claim construction conduct, the district court arrived at a 25%

reduction after considering PersonalWeb's egregious re-litigation of the district court's claim construction that led to additional work, while also admitting that the district court "cannot trace all of the requested fees to Personal-Web's misconduct." *Id.* at *11.

The fees analysis by the district court "demonstrates to us a careful exercise of discretion." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 726 F.3d 1359, 1369 (Fed. Cir. 2013). The district court thoroughly analyzed the extensive record, considered conduct that both supported and detracted from its award of attorneys' fees, and explained the award's relation to the misconduct. *See Rembrandt,* 899 F.3d at 1279 (explaining that the district court must "explain th[e] relationship, at least to the extent practicable" between the fee award and "the extent of the misconduct"). The district court's thorough and well-reasoned fee award determinations for the challenged categories are "entitled to substantial deference on appeal" in light of the district court's "superior understanding of the litigation." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017) (citation omitted).

CONCLUSION

We have considered PersonalWeb's remaining arguments and have found them unpersuasive. We affirm the district court's finding that this case was exceptional under 35 U.S.C. § 285 and the total award of $5,187,203.99 in attorneys' fees.

**AFFIRMED**

COSTS

Costs against Appellant.

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: PERSONALWEB TECHNOLOGIES LLC,**

-------------------------------------------------

**AMAZON.COM, INC., AMAZON WEB SERVICES, INC.,**
*Plaintiffs-Appellees*

**v.**

**PERSONALWEB TECHNOLOGIES LLC,**
*Defendant-Appellant*

**LEVEL 3 COMMUNICATIONS, LLC,**
*Defendant*

-------------------------------------------------

**PERSONALWEB TECHNOLOGIES LLC,**
*Plaintiff-Appellant*

**LEVEL 3 COMMUNICATIONS, LLC,**
*Plaintiff*

**v.**

**TWITCH INTERACTIVE, INC.,**
*Defendant-Appellee*

---

2021-1858, 2021-1859, 2021-1860

---

2                    IN RE: PERSONALWEB TECHNOLOGIES LLC

Appeals from the United States District Court for the
Northern District of California in Nos. 5:18-cv-00767-BLF,
5:18-cv-05619-BLF, 5:18-md-02834-BLF, Judge Beth Lab-
son Freeman.

————————————

DYK, *Circuit Judge*, dissenting.

The majority's opinion rests on the remarkable propo-
sition that PersonalWeb's arguments were objectively
baseless (and supported a fee award) despite the Solicitor
General's agreeing that those very same arguments were
correct. The majority's opinion effectively awards fees for
a lack of success, which is not an appropriate use of section
285, and will likely chill legitimate advocacy. *Munchkin,
Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir.
2020); *Pro. Real Est. Invs., Inc. v. Columbia Pictures In-
dus., Inc.*, 508 U.S. 49, 50 (1993). I respectfully dissent.

I

The district court here awarded fees pursuant to sec-
tion 285 on the ground that PersonalWeb (the owner of the
patents at issue) in the underlying infringement action
made baseless arguments that the *Kessler* doctrine did not
apply to bar an infringement action against Amazon's cus-
tomers where there had been a stipulated dismissal with
prejudice of a prior infringement action brought against
Amazon itself.

In *Kessler*, a patent holder sued a manufacturer for in-
fringement, and after trial the court found for the manu-
facturer, holding there was no infringement. *Kessler v.
Eldred*, 206 U.S. 285, 288 (1907). The patent holder then
sued the manufacturer's customers for infringement of the
same patent. *Id.* The Supreme Court held that the patent
holder was barred from bringing suit against the manufac-
turer's customers. *Id.* at 290.

The central question here was whether the *Kessler* doctrine applies to a stipulated dismissal with prejudice or only to a litigated determination of non-infringement (as in *Kessler* itself). In 2019 the California district court held that the doctrine applied to a stipulated dismissal as to the so-called S3 products. PersonalWeb appealed to our court.

Ultimately, we affirmed in a precedential decision (*PersonalWeb I*) holding *Kessler* is "not limited to cases involving a finding of non-infringement that was necessary to the resolution of an earlier lawsuit, but extends to protect any products as to which the manufacturer established a right not to be sued for infringement." *PersonalWeb I*, 961 F.3d at 1379. However, our decision on appeal in no way suggested that the issue had been decided in earlier cases or that PersonalWeb's position on *Kessler* was baseless. *See id.* at 1376–79 (addressing PersonalWeb's *Kessler* arguments at length on the merits).

Following our decision, the California district court awarded fees against PersonalWeb for making the *Kessler* argument during the period of 2018 to 2020, <u>before</u> our decision on appeal, stating that "[w]hile it is true that the Federal Circuit issued a precedential decision affirming this Court's *Kessler* Order, the opinion itself belies PersonalWeb's contention that it had a reasonable belief that the claims against S3 could be brought." *Decision*, 2020 WL 5910080, at *5.

## II

After our decision on the *Kessler* issue PersonalWeb had sought certiorari. The Supreme Court invited the Solicitor General to file an amicus brief, which she did after the district court decision here, agreeing with PersonalWeb that *Kessler* should not have barred PersonalWeb's claims. Brief for the United States as Amicus Curiae, *PersonalWeb Techs., LLC v. Patreon, Inc.* (No. 20-1394), 2022 WL 1082550, at *8. The Solicitor General argued that "[t]he [Federal Circuit] [e]rred [i]n [t]reating *Kessler* [a]s

[c]ontrolling [h]ere." *Id.* at *14. She explained that "[u]ntil this case, the Federal Circuit had relied on *Kessler* only in cases in which the prior judgment embodied a judicial determination of the respective rights and duties of the parties." *Id.* at *15. Thus, "[b]ecause the prior judgment in *Kessler* was premised on a judicial finding of noninfringement, while the Texas judgment at issue in this case was entered after a stipulated dismissal, *Kessler* is not controlling here." *Id.* at *8. Ultimately, the Supreme Court denied certiorari in May 2022. 142 S. Ct. 2707 (May 16, 2022) (No. 20-1394).

## III

The majority now affirms the district court decision on the theory that "[a]t the time we decided *PersonalWeb I*, existing precedents of *Kessler*, *Rubber Tire*, *MGA Inc.*, *Brain Life*, *Speed Track*, and *SimpleAir* all explained that, after a 'final judgment' of non-infringement, follow-up suits against customers over the same infringing product were precluded." Maj. Op. 11.

The majority dismisses the Solicitor General's views apparently on the ground that it is "a common occurrence" for the Supreme Court to solicit such views. Maj. Op. 11. But it is not a common occurrence for the Supreme Court to regard those views as irrelevant, and neither should we. The Solicitor General was addressing exactly the same issue and making the same argument as PersonalWeb. The Solicitor General is not in the habit of making objectively baseless arguments to the Supreme Court. On the majority's theory that we can ignore later developments, if PersonalWeb's *Kessler* argument had been adopted by the Supreme Court itself, the argument would still have been objectively baseless.

And even if the question of objective baselessness depended only on the state of the law at the time the

argument was made,[1] our decision in *PersonalWeb I*, of course, had not been issued when the arguments were made, and the Solicitor General's views as to existing law are just as relevant as our *PersonalWeb I* determination.

The majority even fails to show that there was any binding authority on the *Kessler* issue at the time that PersonalWeb addressed the *Kessler* issue. The cases cited by the majority, as the Solicitor General points out, unlike the present case all involved "cases in which the prior judgment embodied a judicial determination of the respective rights and duties of the parties" (and therefore involved collateral estoppel). Brief for the United States as Amicus

---

[1] It does not. Even if PersonalWeb had been urging a change in the law, such an argument can be appropriate and supported. *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579 (Fed. Cir. 1991) (explaining that a claim is frivolous and thus supports sanctions when the arguments are "contrary to established law and unsupported by a reasoned, colorable argument for change in the law" (internal quotation omitted)); *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010) (noting "sanctions should only be imposed in limited circumstances where the frivolous nature of the claims-at-issue is unequivocal" such as when "the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law").

The denial of certiorari cannot be viewed as approval of our decision particularly since the Solicitor General urged a certiorari denial on an alternative ground. *Brown v. Davenport*, 142 S. Ct. 1510, 1529 (2022) ("The denial of a writ of certiorari in this Court imports no expression of opinion upon the merits of the case." (internal quotations omitted)).

Curiae, *PersonalWeb Techs., LLC v. Patreon, Inc.* (No. 20-
1394), 2022 WL 1082550, at *8.[2]

So too in the case where we decided the *Kessler* issue,
Amazon never argued on appeal that the *Kessler* issue had
been previously decided. Instead, Amazon only pointed to
a 45-year-old non-binding district court case as "[t]he only
court to consider this issue" and urged that this court fol-
low the district court's holding "that *Kessler* preclusion ap-
plies even in the absence of an express finding of non-
infringement." Corrected Response Brief of Defendants-
Appellees and Intervenors at 34, *PersonalWeb I*, 961 F.3d
1365 (Fed. Cir. 2020), 2019 WL 6699258, at *34 (citing *Mo-
linaro v. Am. Tel. & Tel. Co.*, 460 F. Supp. 673, 676 (E.D.
Pa. 1978), *aff'd*, 620 F.2d 288 (3d Cir. 1980)); *see also* Brief
in Opposition to Petition for a Writ of Certiorari at 30, *Per-
sonalWeb Techs., LLC v. Patreon, Inc.*, 142 S. Ct. 2707
(2022), 2021 WL 3773238, at *30. Nor did our decision in
that case suggest that the issue had been directly decided
in our prior cases. At the time of our decision, one of our
prior cases included language that seemed to support Per-
sonalWeb's position, stating that the *Kessler* doctrine "in
its effect may be compared to defensive collateral estoppel"
and that collateral estoppel only applies to a litigated de-
termination of non-infringement. *MGA, Inc. v. Gen. Motors
Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987). Indeed, our de-
cision in *PersonalWeb I* acknowledged that same language
in *MGA*, explaining "we said that 'in its effect,' the *Kessler*
doctrine may be compared to defensive collateral estoppel."

---

[2]    The Solicitor General addressed the same cases as
the majority. *See Rubber Tire Wheel Co. v. Goodyear Tire
& Rubber Co.*, 232 U.S. 413 (1914); *MGA, Inc. v. Gen. Mo-
tors Corp.*, 827 F.2d 729 (Fed. Cir. 1987); *Brain Life, LLC
v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014); *SpeedTrack,
Inc. v. Off. Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015); *Sim-
pleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018).

*PersonalWeb I*, 961 F.3d at 1377.  The finding of objective baselessness on this record is entirely without support.

In short, I am at a loss to understand how making an argument that the Solicitor General agreed was correct and that was a matter of first impression in our court can lead to an award of fees.  The *Kessler* argument was not objectively baseless, and the district court's fee award included fee amounts directed only to the *Kessler* issue.  The portion of the district court's fee award attributable to the *Kessler* argument cannot stand.  While I agree that in other respects a fee award was proper, a remand is appropriate because the district court improperly awarded fees based on PersonalWeb's *Kessler* argument.